# 15

| | |
|---|---|
| | Address One America Square |
| | Crosswall |
| | London |
| | EC3N 2PR |
| 19 April 2007 | Telephone 020 7820 9000 |
| | Fax 020 7320 9111 |
| Our Ref    KCP/RJ/30947 | E-mail lawyers@elbornes.com |
| Your Ref   2090/3159/30875525 | Website www.elbornes.com |
| | DX 1063 London-City |
| **By Fax and Post** | Lloyd's Line 7819-0 |

Herbert Smith LLP
Exchange House
Primrose Street
London
EC2A 2HS

# Elborne Mitchell
SOLICITORS

Dear Sirs

**Our Clients:  Ron Whyte, Julian Samengo-Turner, Marcus Hopkins**
**Re:             Guy Carpenter**

We refer to your letter of 13 April 2007.

We had requested that you provide us with details of the breaches of confidence and/or duty which you have previously intimated against our clients in your letter of 5 April 2007. Your letter of 13 April 2007 does not provide any such details.

You have stated that Mr Samengo-Turner made a call to Mr Newman on or about 3 April 2007 which was overheard by Mr Spiller. However, you do not state what was said during that call, if anything, which might be a cause of concern to your client. Mr Samengo-Turner has been a long standing friend and colleague of Mr Newman during the best part of 20 years and the fact of the call being made is not disputed. However, such contact clearly does not amount to a breach of Mr Samengo-Turner's employee obligations, if that is what is being suggested.

With respect, this matter cannot be left at the level of insinuation and innuendo. If it is being said that Mr Samengo-Turner in some way breached his duties or obligations in the course of the call to Mr Newman please would you specify exactly in what respects it is alleged that he did so.

Your letter also indicates that other facultative brokers at Guy Carpenter have chosen to accept offers at Integro, including one Charles Waddington, but again you have not stated why or in what respects that fact might concern our clients.

It is not acceptable for you to make vague allegations of such a serious nature against our clients without substantiating them or even providing sufficient details of those allegations to

Regulated by the Law Society
Timothy Brcotmall (senior partner)  Timothy Akroyd  Alexandra Booth  Jonathan Bruce  Timothy Goodger

enable our clients properly to address them. This is particularly so when you have used those general assertions of a breach as the platform for very detailed and comprehensive questioning of our clients, including on matters where we regard your client's entitlement to such information to be unfounded, for example, as to the terms of any package which might have been offered by Integro.

We would therefore ask you once again to please clearly set out the basis of the breach of confidence or duty which has been intimated against our clients in the letter of 5 April 2007 so that our clients can deal with those concerns.

We await your response as soon as possible on this matter. With regard to the remainder of your letter of 5 April 2007, we have the following comments: -.

Re 1 and 2) Your letter states that *"It has come to GC's attention that you are intending to work for a competing business, Integro Limited. This would be in flagrant breach of your contractual obligations to GC referred to in the letter to you dated 3 April 2007 and would result in the cancellation and rescission of the awards made to you under the ...Plan"*

Our clients instruct us that they were quite open about their intention to join Integro at the time of their resignation from GC and indeed they themselves informed Lynsey Mansfield, Head of International HR, of this fact on 2 April 2007. Even prior to their resignation, Mr Bromley of GC was informed on 31 March 2007 by Mr Samengo-Turner and Mr Whyte that they were intending to join Integro and he was informed by Marcus Hopkins that he was also intending to do so on 2nd April 2007. This was not a matter which only subsequently came to your client's attention, as might be inferred from your letter. Furthermore, our clients' intention to join a competing business does not, of itself, amount to a breach of their contractual obligations to GC.

As far as the Plan is concerned, we are considering the basis of your client's claim for repayment of awards made to our clients under the Plan. In this regard, please would you provide a breakdown of the amount and dates of the awards paid to each of our clients under the terms of the Plan.

Re 3 and 4) We await your response on the alleged breaches of duties and obligations as sought above.

Re 5 a) We confirm that our clients would be happy to sign written undertakings confirming that they will comply with their garden leave obligations.

Re 5 b) We confirm that our clients do not have any such documents or other property belonging to GC or its clients other than mobile phone handsets which they are happy to return at your request.

We confirm that our clients are aware of their obligations to preserve all documents and records which may relate to this matter. Likewise, we would request that you confirm that your client is aware of its duties in this regard and in particular to retaining the telephone

records evidencing the time and duration of the call apparently made or received by Mr Spiller on or about 3 April 2007.

Yours faithfully

*[signature]*

**Elborne Mitchell**

**16**

Our Ref     KCP/RHJ/30.947
Your Ref    2090/3159/30875525

Address    One America Square
Crosswall
London
EC3N 2PR

Telephone    020 7320 9000
Fax    020 7320 9111
E-mail    lawyers@elbornes.com
Website    www.elbornes.com
DX    1063 London-City
Lloyd's Line    7819-0

**By Fax**

Herbert Smith LLP
Exchange House
Primrose Street
London
EC2A 2HS

# Elborne Mitchell
SOLICITORS

Dear Sirs

**Our Clients:** Ron Whyte, Julian Samengo-Turner, Marcus Hopkins
**Re:** Guy Carpenter

We note that we have heard nothing from you in response to our letter of 19 April 2007, sent some ten days ago, nor even the courtesy of an acknowledgement. We find this remarkable given that your original correspondence to our clients requested their urgent responses on a number of detailed matters and written undertakings within a timeframe of two working days, coupled with notification of your client's rights to damages and/or injunctive relief against our clients. We assume from your silence that the various allegations raised against our clients are not now being pursued however please confirm this to us.

Yours faithfully

**Elborne Mitchell**

**17**

17 May 2007

Our Ref     KCP/RHJ/30.947
Your Ref    2090/3159/30875525

**By Fax 0207 098 5417**

Herbert Smith LLP
Exchange House
Primrose Street
London
EC2A 2HS

| | |
|---|---|
| Address | One America Square Crosswall London EC3N 2PR |
| Telephone | 020 7320 9000 |
| Fax | 020 7320 9111 |
| E-mail | lawyers@elbornes.com |
| Website | www.elbornes.com |
| DX | 1063 London-City |
| Lloyd's Line | 7819-0 |

# Elborne Mitchell
### SOLICITORS

Dear Sirs

**Our Clients:** Ron Whyte, Julian Samengo-Turner, Marcus Hopkins
**Re:** Guy Carpenter

We refer to the previous correspondence between us resting with your letter of 3 May 2007.

Since that letter your clients have of course issued against our clients in the US Federal Court District of New York seeking a mandatory injunction that our clients comply with clause IIE of the Plan and seeking repayment of sums said to be due under the Plan. We should place on record that we do not accept that New York is an appropriate forum for the claims your clients have chosen to bring or that your clients are entitled to the relief sought. Our clients' position is reserved generally in relation to those proceedings and as you are no doubt aware, we have appointed New York attorneys Proskauer Rose to deal with this matter further in New York.

We would comment, however, that we find it remarkable that your clients consider it appropriate to seek relief on an expedited basis in the New York courts, on the basis of alleged breaches by our clients of their contractual obligations, while making no mention of the fact that our clients have offered to provide written undertakings to comply with their garden leave obligations. Indeed, that this offer has been sitting on the table since 19 April 2007 but was not responded to, nor was our letter even acknowledged in any way, until 3 May 2007 (the day before the issue of the New York proceedings) and even then in response to our chasing letter to you.

As the offer has been made and remains open and as you have not put forward the terms of undertakings sought by your client, we set out below the terms of undertakings which we would be prepared to recommend to our clients: -

"I confirm my agreement to remain an employee of Marsh Services Limited ("the Company") until 2 October 2007 and to serve out my notice period on garden leave as requested by the Company. I undertake that while I remain an employee of the Company I will abide by my contractual duty of good faith and fidelity to the Company. I further undertake that during this period of garden leave I will not:

Regulated by the Law Society
Timothy Brentnall (senior partner)  Timothy Akeroyd  Alexandra Booth  Jonathan Bruce  Timothy Goodger
Philip Greig  Rosalind Jones  Roger Miles  Kate Payne  Andrew Pincott  Edmund Stanley  Peter Tribe

(A) Save for the purpose of obtaining legal advice, or save as required or permitted by law, or save with the express permission of the Company:

   (1) disclose or permit to be disclosed to any person, firm or company any confidential information of the Company or of any other member of the Group,

   (2) disclose in any way, or use for my own or another's advantage, any of the data, programmes or manuals, or any of the business methods or information of a confidential nature relating to the affairs of any group Company.

(B) be employed or engaged or otherwise provide services directly or indirectly, except as an employee of the Company, in the business of underwriting or as an insurance, reinsurance, or mortgage broker or agent without having first gained the written consent of the Company.

This undertaking is conditional upon the Company undertaking:

(A) to continue to pay the full remuneration and benefits to which I am entitled under my contract of employment during the remainder of my notice period

(B) not to claim damages from me arising out of any failure on my part to undertake work pursuant to my contract of employment during the remainder of my notice period."

We should be grateful for your confirmation by return that these terms are acceptable to you, whereupon we will try to contact our clients to obtain their instructions although you will appreciate that this may be difficult given that two of our clients are on holiday.

Yours faithfully

*[signature: EM]*

**Elborne Mitchell**