# EXHIBIT A-1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GUY CARPENTER & COMPANY, LLC and MARSH & McLENNAN COMPANIES, INC.,    ) ) ) | Case No. 07 – CV- 3580 (DC) |
| Plaintiffs,    ) ) ) | |
| v.    ) ) | **NOTICE OF MOTION** |
| JULIAN SAMENGO-TURNER, RON WHYTE, and MARCUS HOPKINS,    ) ) ) | **(ECF Case)** |
| Defendants.    ) ) | |

**PLEASE TAKE NOTICE** that, upon the accompanying memorandum of law and

declarations of Ron Whyte and John P. Barry, with exhibits, defendant Ron Whyte will move

this Court, before the Honorable Denise Cote, at the United States Courthouse, 500 Pearl Street,

New York, New York 10007, as soon as counsel can be heard, for an order pursuant to Rules

12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing the complaint.

PROSKAUER ROSE LLP

By:     /s/ *Mark A. Saloman*
        Mark A. Saloman (MS 5764)
        Proskauer Rose LLP
        One Newark Center, 18th Floor
        Newark, New Jersey 07102
        973.274.3200
        973.274.3299 (Fax)
Dated: May 24, 2007       Attorneys for defendant Ron Whyte

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
GUY CARPENTER & COMPANY, LLC and   )
MARSH & McLENNAN COMPANIES, INC.,   )
                                   )        Case No. 07 – CV- 3580 (DC)
        Plaintiffs,                )
                                   )
v.                                 )
                                   )
JULIAN SAMENGO-TURNER, RON         )
WHYTE, and MARCUS HOPKINS,         )
                                   )
        Defendants.                )
_____)

DEFENDANT RON WHYTE'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION TO DISMISS PLAINTIFFS' COMPLAINT DUE TO LACK OF
PERSONAL JURISDICTION AND FORUM *NON CONVENIENS*

John P. Barry (JB 6489)
Mark A. Saloman (MS 5764)
Proskauer Rose LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200
973.274.3299 (Fax)

*Attorneys for defendant Ron Whyte*

Exhibit A   002

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 2

    A.    Defendants Are English Citizens Who Work For An English Company ............... 2

    B.    Defendants' U.K. Contracts Contain Similar Post-Employment Non-Solicitation Provisions As The Bonus Contracts At Issue In The Complaint ............................................................................................................. 3

    C.    Plaintiffs Are Subject To The Laws Of The United Kingdom ............................... 4

    D.    Defendants' Bonus Contracts Are Governed By English Law .............................. 4

    E.    All Of The Defendants' Alleged Misconduct Occurred Within The United Kingdom And Concerns Defendants' Respective Employment Contracts With MSL ............................................................................................................. 5

    F.    Plaintiffs' Anticipated Claims Against Defendants Must Be Pursued In England .................................................................................................................. 6

I.     ARGUMENT ............................................................................................................... 6

    A.    Plaintiffs Have Failed To Establish Long-Arm Jurisdiction Under CPLR Section 302 (a)(1) .............................................................................................. 7

         1.   Defendants do not "transact business" in New York ..................................... 7
         2.   Plaintiffs' claims do not arise out of any acts or omissions performed in New York ..................................................................................................... 9

    B.    The Complaint Also Fails Because Plaintiffs Have Not Demonstrated—And Cannot Demonstrate—That Defendants Have The Requisite "Minimum Contacts" With New York ................................................. 10

II.    APPLICATION OF THE DOCTRINE OF FORUM NON CONVENIENS WARRANTS DISMISSAL OF PLAINTIFFS' COMPLAINT BECAUSE THE ACTION BELONGS IN ENGLAND, NOT NEW YORK ............................................. 11

    A.    England Is An Adequate Alternative Forum As A Matter Of Law ...................... 11

    B.    Plaintiffs' Choice Of Forum Should Be Given No Deference Because They Engaged In Forum Shopping ...................................................................... 12

i

**TABLE OF CONTENTS**

(Cont'd)

Page

1.  Plaintiffs filed suit in New York, rather than London, to avail themselves of the tactical advantage of depositions, which are unavailable in England .................................................................. 12

2.  By seeking to force Defendants to litigate in New York, Plaintiffs have maximized the inconvenience and expense to the Defendants..................... 14

3.  Plaintiffs cannot rely upon the New York forum selection clause in the Bonus Contract because all of their claims against Defendants must be litigated in England as a matter of English law .............................................. 15

    a.  English law mandates that the matter must be addressed in England ...... 16

    b.  The Bonus Contracts mandate that the matter must be addressed in England ................................................................................................. 17

    c.  The ambiguities of the Bonus Contracts mandate that the matter must be addressed in England ......................................................................... 19

C.  The Private And Public Interest Factors Strongly Favor Dismissal ..................... 20

    1.  The private interest factors favor dismissal of Plaintiffs' Complaint.......... 21

        a.  The is no availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses is prohibitive ......................................................................... 21

    2.  The public interest factors favor dismissal of Plaintiffs' Complaint........... 22

CONCLUSION ....................................................................................................... 25

ii

Exhibit A  004

## TABLE OF AUTHORITIES

CASES

*67 Wall St. Co. v Franklin Natl. Bank,*
  37 N.Y.2d 245, 371 N.Y.S.2d 915, 333 N.E.2d 184 (N.Y. 1975)...........................................19

*Anselmo v. Univision Station Group, Inc.,*
  No. 92 Civ. 1471, 1993 WL 17173 (S.D.N.Y. Jan. 15, 1993) ...............................................18

*Arrowsmith v. United Press Int'l,*
  320 F.2d 219 (2d Cir. 1963) (en banc) .......................................................................6

*Base Metal Trading SA v. Russian Aluminum,*
  253 F. Supp. 2d 681 (S.D.N.Y. 2003) ...................................................................... Passim

*Bensusan Restaurant Corp. v. King,*
  126 F.3d 25 (2d Cir. 1997) .................................................................................10

*Bigio v. Coca-Cola Co.,*
  448 F.3d 176 (2d Cir. 2006) ...............................................................................21

*Bozell Group, Inc. v. Carpet Co-op of America Ass'n, Inc.,*
  No. 00 Civ. 1248 (RWS), 2000 U.S. Dist. LEXIS 15088 (S.D.N.Y. Oct 11, 2000)................7

*Calavo Growers Of California v. Generali Belgium,*
  632 F.2d 963 (2d Cir. 1980) ............................................................................23-24

*Carey v. Bayerische Hypo-Und Vereinsbank AG,*
  370 F.3d 234 (2d Cir. 2004) ...............................................................................11

*Conte v. Flota Mercante del Estado,*
  277 F.2d 664 (2d Cir. 1960) ...............................................................................24

*Croman v. Wacholder,*
  2 A.D.3d 140 (N.Y. App. Div. 2003) ......................................................................19

*Cruz v. Maritime Co. of Philippines,*
  549 F. Supp. 285 (S.D.N.Y. 1982), *aff'd*, 702 F.2d 47 (2d Cir. 1983)...................................24

*First Union Nat'l Bank v. Paribas,*
  135 F. Supp. 2d 443 (S.D.N.Y. 2001), *aff'd*, 48 Fed. Appx. 801 (2d Cir. 2002) .............20, 25

*Gilstrap v. Radianz Ltd.,*
  443 F. Supp. 2d 474 (S.D.N.Y. 2006) ...............................................................13, 20, 24-25

iii

*Gulf Oil v. Gilbert,*
    330 U.S. 501 (1947) ..................................................................................11, 21-22, 24

*Hanson v. Denckla,*
    357 U.S. 235 (1958) ..................................................................................7, 9-10

*Hasakis v. Trade Bulkers, Inc.,*
    690 F. Supp. 260 (S.D.N.Y. 1988) ..................................................................23-24

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ..................................................................................10

*Ioannides v. Marika Mar. Corp.,*
    928 F. Supp. 374 (S.D.N.Y. 1996) ..................................................................24

*Iragorri v. United Techs. Corp.,*
    274 F.3d 65 (2d Cir. 2001) (*en banc*) ..................................................... Passim

*Jacobs v. Felix Bloch,*
    160 F.Supp. 2d 722 (S.D.N.Y. 2001) ..................................................................9

*Jacobson v Sassower,*
    66 N.Y.2d 991, 499 N.Y.S.2d 381, 489 N.E.2d 1283 (N.Y. 1985) .........................19

*Jazini v. Nissan Motor Co., Ltd.,*
    148 F.3d 181 (2d Cir. 1998) ..................................................................7

*Johnson Foils, Inc. v. Huyck Corp.,*
    61 F.R.D. 405 (N.D.N.Y. 1973) ..................................................................14

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.,*
    956 F.Supp. 1131 (S.D.N.Y. 1997) ..................................................................9

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.,*
    1997 WL 53184 (S.D.N.Y. Feb. 11, 1997) ..................................................14

*Matter of PaineWebber, Inc. v Webb,*
    155 A.D.2d 938, 548 N.Y.S.2d 120 (N.Y. App. Div. 1989) .................................20

*McGee v. Int'l Life Ins. Co.,*
    355 U.S. 220, 78 S.Ct. 199 (1957) ..................................................................10

*McKee Electric Co. v. Rauland-Borg Corp.,*
    20 N.Y.2d 377 (1967) ..................................................................10

*Milliken v. Meyer,*
    311 U.S. 457 (1940) ..................................................................10

iv

Exhibit A  006

*Muollo v. Crestwood Vill. Inc.,*
    155 A.D.2d 420, 547 N.Y.S.2d 87 (2d Dept. 1989) ............................................8-9

*Murray v. British Broad. Corp.,*
    81 F.3d 287 (2d Cir. 1996) ...............................................................................23

*New York v. Pullman, Inc.,*
    477 F.Supp. 438 (S.D.N.Y. 1979) ...................................................................18

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
    416 F.3d 146 (2d Cir. 2005) .............................................................................11

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).....................................14

*PaineWebber Inc. v. Westgate Group, Inc.,*
    748 F.Supp. 115 (S.D.N.Y. 1990) .......................................................................7

*PaineWebber Inc. v. WHV, Inc.,*
    No. 95 Civ. 0052 (LMM), 1995 U.S. Dist. LEXIS 6514 (S.D.N.Y. May 16, 1995) ...............8

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) .........................................................................................11

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003) ...............................................................................11

*R. Maganlal & Co. v. M.G. Chem. Co., Inc.,*
    942 F.2d 164 (2d Cir. 1991) .............................................................................12

*Savin v. Ranier,*
    898 F.2d 304 (2d Cir. 1990) ...............................................................................6

*Schertenleib v. Traum,*
    589 F.2d 1156 (2d Cir. 1978) ...........................................................................23

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,*
    127 S.Ct. 1184, 167 L.Ed.2d 15 (2007)........................................................11, 25

*U.S. v. Hooker Chemicals & Plastics Corporation,*
    90 F.R.D. 421 (W.D.N.Y. 1981) .......................................................................14

*Well-Made Toy Mfg. Corp. v. Lotus Onda Industrial Co., Ltd.,*
    2002 U.S. Dist. LEXIS 789 Civ. 9605 (DFE) (S.D.N.Y. Jan. 16, 2002) ................13

Exhibit A  007

## PROCEDURAL HISTORY

On May 4, 2007, Guy Carpenter & Company, LLC ("GC") and Marsh & McLennan Companies, Inc. ("Marsh" and collectively "Plaintiffs") filed this action against United Kingdom residents Julian Samengo-Turner, Ron Whyte, and Marcus Hopkins (collectively "Defendants"). *To date, the Complaint has not been served upon Messrs. Samengo-Turner or Hopkins.* Despite Plaintiffs' awareness of this lack of service of process, they filed an Order to Show Cause seeking to compel all Defendants to respond to Plaintiffs' discovery requests and be deposed in New York on an expedited basis.

In his opposition, Defendant Whyte alerted the Court to numerous defects in Plaintiffs' application, including the lack of service of process over the two other Defendants, Plaintiffs' questionable claim of personal jurisdiction over any of the Defendants, and the significant inconvenience and prejudice which Defendants would suffer if forced to litigate in New York. Over these objections, the District Court ruled on May 18, 2007 that all three Defendants comply with expedited discovery and that they present themselves for depositions in England no later than June 15, 2007.

## PRELIMINARY STATEMENT

Dismissal of the Complaint is warranted (i) as this Court does not have personal jurisdiction over Whyte and (ii) pursuant to the doctrine of forum *non conveniens*.[1]

Whyte is a U.K. citizen and resident, he works for a U.K. company in England, and he has no business or clients in New York. Whyte performed the obligations under his U.K. employment contract in the U.K. Significantly, the alleged improper conduct attributed to

---

[1] Defendant Whyte submits this motion to dismiss pursuant to the Court's May 22, 2007 Pretrial Scheduling Order and specifically reserves, and does not waive, any additional grounds for dismissal of this action. A true copy of the Court's Order is annexed as Exhibit 1 to the Declaration of John P. Barry ("Barry Decl."), submitted herewith.

Whyte in the Complaint (solicitation of customers and clients) occurred in the U.K. In short, this Court cannot legitimately exercise personal jurisdiction over Whyte because he has not purposefully availed himself of the laws of the State of New York and he otherwise lacks the requisite minimum contacts to this venue.

This is also a textbook case for dismissal of the Complaint pursuant to the doctrine of forum *non conveniens*. As a preliminary matter, England is an appropriate alternative forum as the parties are amenable to and subject to service of process there. Moreover, Plaintiffs brought this litigation in New York for no purpose other than to gain a tactical advantage and maximize the burden, inconvenience, and cost to the three individual Defendants. This forum shopping is evident because Plaintiffs' seek to exploit the discovery process here to take depositions which are unavailable in the U.K. Further, Plaintiffs cannot rely upon the New York forum selection clause in the employment contracts at issue because all of such claims arising out of Defendants' employment relationships must be litigated in England as a matter of English law. The private and public interest factors also strongly demonstrate that litigation in New York is genuinely inconvenient and suit before the English courts is dramatically preferable.

For these and other reasons more fully explained below, dismissal of the Complaint is appropriate.

## STATEMENT OF FACTS

### A. Defendants Are English Citizens Who Work For An English Company

Messrs. Samengo-Turner, Whyte, and Hopkins are not citizens nor residents of the United States; rather they are citizens and residents of the U.K. (Barry Decl., Exhibit 2: Complaint, ¶¶6-8; Whyte Decl., ¶2).

Defendants have been, and remain to this day, employed by Marsh Services Ltd. ("MSL"), a company incorporated in Great Britain and registered in England and Wales which

2

provides "employee services to certain U.K. companies within the Marsh group" of companies. (Barry Decl., Exhibit 3 at 3; Exhibit 4; Whyte Decl. ¶6 and Exhibit A).  MSL's "immediate parent company" is Marsh U.K. Group Limited, a company also incorporated in Great Britain and registered in England and Wales.  (Barry Decl., Exh. 3 at 20, ¶21).  MSL's "ultimate parent company," is Plaintiff Marsh.  (Barry Decl. Exh. 3 at 4).  Defendants' employment with MSL has been based in London at all times and is governed by employment contracts they received, executed, and performed in the U.K.  (Complaint, ¶11-14).  *See* Barry Decl., Exhibits 5 and 6 and Whyte Decl., Exh. A (collectively referenced as the "U.K. Contracts").

**B.    Defendants' U.K. Contracts Contain Similar Post-Employment Non-Solicitation Provisions As The Bonus Contracts At Issue In The Complaint**

Defendants' U.K. Contracts with MSL include a post-employment non-solicitation provision.  (Barry Decl., Exh. 5 at 6, ¶5; Exh. 6 at 8, ¶3; and Whyte Decl., Exh. A at 7, ¶5).[2] Those contracts were signed by Messrs. Samengo-Turner, Whyte, and Hopkins on 22 December 22 1997, 4 June 2000, and 13 April 2000, respectively.  (Barry Decl., Exh. 5 at 7; Exh. 6 at 10; Whyte Decl., Exh. A at 7).  The terms and conditions of these non-solicit provisions are not governed by New York law nor do they provide for enforcement in a New York court.  (*Id.*)

A second similar non-solicitation clause is contained within an amendment to the Defendants' U.K. Contracts,[3] executed by Messrs. Samengo-Turner and Hopkins on 25 January 2006 and 18 July 2005, respectively.  (Barry Decl., Exhibit 7 at 11; Exhibit 8 at 12).  (Barry Decl., Exh. 7 at 12, ¶1.1(c); Exh. 8 at 13, ¶1.1(c)).  The terms and conditions of these non-solicit

---

[2]   Although Plaintiffs did not rely upon those provisions in their application for expedited discovery, the contracts containing those provisions were previously provided to the Court in the Plaintiffs' supporting Declaration of Lynsey Mansfield as Exh. A at 6, ¶5; Exh. B at 7, ¶5; and Exh. C at 8, ¶3.

[3]   These amendments were also annexed to the Mansfield Declaration as Exh. A at 11 and Exh. C at 12.

Exhibit A   010

provisions are also not governed by New York law nor do they provide for enforcement in a New York court. (*Id.*)

### C.    Plaintiffs Are Subject To The Laws Of The United Kingdom

Plaintiff GC, a global risk and reinsurance specialist and indirect wholly owned subsidiary of Marsh, maintains offices in the United Kingdom and throughout the world. (Complaint, ¶¶2, 9, 13; Pl. Rule 7.1 Statement; Mansfield Decl., ¶¶1-2).

### D.    Defendants' Bonus Contracts Are Governed By English Law

During the course of their employment in the U.K., Defendants became eligible for, and were included in, a bonus scheme for Marsh employees. (Complaint, ¶18). In or about November 2005, Defendants received, and subsequently executed, the "Terms and Conditions" of this "Long Term Incentive Grant." (Barry Decl., Exhibits 9, 10, and 11: collectively referenced as the "Bonus Contracts"). The stated purpose of the Bonus Contracts was to provide additional incentives for Defendants to remain employed with MSL in the U.K. (Complaint, ¶20 and Bonus Contracts, at 1).

The Bonus Contracts contain a punitive "Cancellation and Rescission" provision which, as written, may require repayment of amounts earned by employees under the Bonus Contracts if such employees engage in what the Bonus Contracts define as "Detrimental Activity." (Complaint, ¶25; Bonus Contracts, Sec. I.C.(2)). The definition of Detrimental Activity, for employees of the U.K. like the Defendants, is set forth at Clause 2 of Schedule II.D of the Bonus Contracts. (Complaint, ¶¶26-27). The Bonus Contracts mandate there must be a determination under English law whether any act rises to the level of Detrimental Activity before cancellation and rescission is permitted concerning U.K. employees, like the Defendants. (Complaint, ¶32; Bonus Contracts, Sched. II.D, Cl. 6). Indeed, the Bonus Contracts—as drafted—require Schedule II.D to "be construed in accordance with English Law and the parties irrevocably

4

submit to the non-exclusive jurisdiction of the English Courts to settle *any* disputes as may arise in connection with this Schedule." (*Id.*)[4] (Emphasis added).

The Bonus Contracts also purport to require MSL employees to cooperate with reasonable requests for information, essentially designed to enable MSL to determine whether such employees have improperly engaged in Detrimental Activity so as to trigger the cancellation and rescission provisions of the Bonus Contracts. (Bonus Contracts, Sec. II.E).

### E.     All Of The Defendants' Alleged Misconduct Occurred Within The United Kingdom And Concerns Defendants' Respective Employment Contracts With MSL

Plaintiffs accuse Defendants of engaging in Detrimental Activity because they (i) plan to begin work in the fall with the London office of Integro Insurance Brokers; (ii) solicited and recruited U.K.-based MSL employees to work for Integro; and (iii) breached their contractual obligations by encouraging each other to leave Guy Carpenter. (Complaint, ¶¶33, 37, 38; Pl. Memo In Support of Motion for Expedited Discovery, at 6).[5]

The "contractual obligations" cited by Plaintiffs include the two aforementioned non-solicitation provisions within Defendants' U.K. Contracts, as well as two materially identical provisions within the Bonus Contracts. (*Compare* Bonus Contracts, Sched. II.D, Cl. 2(a)(iv) and Cl. 4 *with* Barry Decl., Exh. 5 at 6, ¶5; Exh. 6 at 8, ¶3; Exh. 7 at 12, ¶1.1(c); Exh. 8 at 13, ¶1.1(c); Whyte Decl., Exh. A at 7, ¶5).

---

[4] As explained in more detail below, English law requires that contractual disputes by an employer against an employee be resolved in England—the forum where the employee resides.

[5] Based exclusively on this allegation of unlawful solicitation and recruiting in London, the Court granted Plaintiffs' motion for expedited discovery—despite the fact that Marsh's President and CEO, Michael Cherkasky, characterized these events in a public presentation to the investment community made four days after the Complaint was filed as "a temporary blip." *See* Barry Decl., Exhibit 12.

Exhibit A   012

**F.    Plaintiffs' Anticipated Claims Against Defendants Must Be Pursued In England**

Rather than be limited to the sole remedy of rescission of the Award payments under the

Bonus Contracts, Plaintiffs clearly intend to pursue additional claims against Defendants, and

possibly others, concerning Defendants' allegedly improper solicitation and recruitment (in

England) of U.K.-based employees of MSL on behalf of another U.K. company:

> . . . plaintiffs have reason to believe that defendants and/or other former Guy
> Carpenter or MMC employees *are currently soliciting and recruiting* numerous
> Guy Carpenter employees to terminate their employment with Guy Carpenter to
> join Integro. Indeed, . . . at least fourteen Guy Carpenter brokers in the facultative
> reinsurance group (including defendants) have been recruited or approached,
> either directly or indirectly, by Integro.  Plaintiffs believe that *defendants aided in
> the solicitation and recruitment* of some or all of these Guy Carpenter employees,
> who directly or indirectly reported to them . . .  In light of the facts, and the rate
> by which Guy Carpenter brokers in this group *are being recruited*, no further
> delay should be permitted.

(Pl. Memo, at 11-12) (emphasis added).  *Accord* Pl. Memo at 3 and Mansfield Decl., ¶¶12-16

(Defendants participated in the solicitation and recruitment of "a large percentage" of MSL's

"U.K.-based brokers.").   Plaintiffs' anticipated claims, however, can only be brought in English

courts and under English law.   (Complaint, ¶32; Bonus Contracts, Sched. II.D, Cl. 6; Barry

Decl., Exh. 5 at 6, ¶5; Exh. 6 at 8, ¶3; Exh. 7 at 12, ¶1.1(c); Exh. 8 at 13, ¶1.1(c); Whyte Decl.,

Exh. A at 7, ¶5).


## ARGUMENT

**I.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THEY HAVE FAILED TO ESTABLISH PERSONAL JURISDICTION**

"In diversity cases, federal courts must look to the forum state's long-arm statute to

determine if personal jurisdiction may be obtained over a nonresident defendant," and then

decide whether the exercise of jurisdiction comports with the constitutional guarantee of due

process. *Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir. 1990)*; Arrowsmith v. United Press Int'l,*

Exhibit A  013

320 F.2d 219, 223 (2d Cir. 1963) (en banc). The plaintiff has the burden of proof in establishing personal jurisdiction over the defendant. *See GCG Int'l, Inc. v. Eberhardt*, 05 Civ. 2422 (DC), 2005 U.S. Dist. LEXIS 23877, at *5-6 (S.D.N.Y. Oct. 17, 2005). It is well settled that allegations that "lack the factual specificity necessary to confer jurisdiction" and "conclusory statements [] without any supporting facts" will not satisfy this burden, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 15 (2d Cir. 1998) (internal quotations and citations omitted).

A.  **Plaintiffs Have Failed To Establish Long-Arm Jurisdiction Under CPLR Section 302 (a)(1)**

CPLR Section 302(a)(1) confers specific jurisdiction upon New York courts over a non-domiciliary defendant if (1) the defendant transacts business in New York, and (2) the cause of action arises out of that business activity. *CPLR Section 302 (a) (1)* (McKinney 1990); *Bozell Group, Inc. v. Carpet Co-op of America Ass'n, Inc.*, No. 00 Civ. 1248 (RWS), 2000 U.S. Dist. LEXIS 15088, at *6 (S.D.N.Y. Oct 11, 2000).

1.  **Defendants do not "transact business" in New York**

In determining whether a non-domiciliary defendant "transacts business" in New York, courts look to whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within [this State], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The determination of whether or not a defendant can be said to have transacted business in New York depends on the "totality of circumstances." *See PaineWebber Inc. v. Westgate Group, Inc.*, 748 F.Supp. 115, 118 (S.D.N.Y. 1990).

The totality of circumstances here plainly demonstrate that defendant Whyte has not transacted business in New York. Rather, Whyte: is a U.K. citizen and resident, works for a U.K. company in England, has only been to New York a few times in the last two years for

7

reasons unrelated to the issues in the Complaint; his obligations under his U.K. Contract and the Bonus Contract were performed by him in the U.K.; and he has no business, or clients in New York. Importantly, all of Whyte's alleged improper conduct at issue (soliciting customers and clients) occurred in the U.K. (Whyte Decl., ¶¶2-8). Whyte has not even remotely availed himself of the laws of the State of New York.

Many opinions from this district are instructive. In *PaineWebber Inc. v. WHV, Inc.*, No. 95 Civ. 0052 (LMM), 1995 U.S. Dist. LEXIS 6514, at *2-4 (S.D.N.Y. May 16, 1995), this Court held that it lacked jurisdiction even where the contract in question was signed in New York and one of the parties was headquartered here, finding that telephone negotiations, meetings and execution of an agreement in New York, and even the performance of an agreement in New York did not "project the [non-domiciliary defendant] into the New York market." *See Spencer Trask Ventures, Inc. v. Archos*, 01 Civ. 1169 (LAP), 2002 U.S. Dist. LEXIS 4396 (S.D.N.Y. March 18, 2002)(declining jurisdiction over a French corporation where plaintiff was a New York corporation and the contract was entered into in New York).[6]

In opposition, Plaintiffs will surely make reference to the New York choice of law and forum provisions in the Bonus Contract. Those provisions, however, are not only a red herring but they are insufficient as a matter of law to defeat this application. "While it is appropriate to give some weight to choice of law provision, . . . a choice of law clause alone is not dispositive."

---

[6] This Court also declined to exercise jurisdiction over a non-domiciliary defendant in a music copyright case, though defendant's executives frequently traveled to New York on business and defendant had web sites accessible in New York through which its radio broadcasts played the subject-matter music. *See Freeplay Music, Inc. v. Cox Radio, Inc.*, 04 Civ. 5238 (GEL), 2005 U.S. Dist. LEXIS 12397 (S.D.N.Y June 22, 2005). Even actual advertising in New York has been deemed insufficient to invoke the Court's jurisdiction under the "solicitation" analysis. *See, e.g., Muollo v. Crestwood Vill. Inc.*, 155 A.D.2d 420, 547 N.Y.S.2d 87, 88 (2d Dept. 1989). *See also Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.*, 95 Civ. 7685 (RPP), 1996 U.S. Dist. LEXIS 11064 (S.D.N.Y. 1996) (finding no 302(a)(1) personal jurisdiction over Italian citizens who conducted business activities in New York); *Pieczenik v. Dolan*, 03 Civ. 6336 (SAS), 2003 U.S. Dist. LEXIS 23295, at * 19 (S.D.N.Y. Dec. 30, 2003) ("the formation of a contract in England, albeit between an English citizen and a New York resident, does not amount to 'transacting business' in New York. The [defendant] did not purposefully avail itself of the laws of this forum simply because it entered into an agreement with a New York resident.").

Exhibit A  015

*Premier Lending*, 924 F. Supp. at 17. This is particularly so where, as here, "the jurisdictional contacts fall far short of the purposeful availment requirement." *Id.* Indeed, although the so-called "cooperation clause" is governed by the New York choice of law and forum provisions, (i) the obligations within the cooperation clause must be assessed under English law and (ii) English law requires that contractual disputes between employers and their employees can only be raised in the forum where the employee resides. *See* EU Council Regulation (EC) No. 44/2001, Sec. 5, Art. 20 ("An employer may bring proceedings only in the courts of the Member State in which the employee is domiciled."). Plaintiffs cannot be permitted to circumvent that requirement.

Under the totality of the circumstances, the non-domiciliary Defendants cannot be said to have "purposefully availed [themselves] of the privilege of conducting activities within [this State], thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### 2.    Plaintiffs' claims do not arise out of any acts or omissions performed in New York

In addition to "transacting business" in New York, jurisdiction under CPLR Section 302(a)(1) requires a "substantial nexus between the transaction of business and the cause of action sued upon." *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F.Supp. 1131, 1134 (S.D.N.Y. 1997). Thus, to satisfy the second prong of the of the "Long Arm" test, Plaintiffs must show that their claim "arises out of" Defendants' transaction of business in New York "which requires an articulable nexus or a substantial relationship between transactions occurring within the state and the cause of action sued upon." *GCG Int'l, Inc. v. Eberhardt*, 05 Civ. 2422 (DC), 2005 U.S. Dist. LEXIS 23877, at *15 (S.D.N.Y. Oct. 17, 2005) (internal quotations and citation omitted). In analyzing this "nexus," the relationship between the business conducted in

9

New York and the claims alleged by plaintiff must be direct. *See Jacobs v. Felix Bloch*, 160 F.Supp. 2d 722, 739 (S.D.N.Y. 2001).

Here, as previously explained, none of Plaintiffs' "causes of action" arise out of any activity in New York. To the contrary, all of the alleged improper conduct that is at issue in this litigation and for which Plaintiffs seek discovery occurred in the U.K.

As Plaintiffs cannot demonstrate any nexus, much less a direct one, between New York and the conduct at issue, the Complaint should be dismissed for lack of personal jurisdiction.

**B.    The Complaint Also Fails Because Plaintiffs Have Not Demonstrated—And Cannot Demonstrate—That Defendants Have The Requisite "Minimum Contacts" With New York**

Even if Plaintiffs established jurisdiction under state law, the exercise of such jurisdiction can only take place if it "comports with the requisites of due process." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). In order to satisfy this constitutional due process standard, there must at minimum be "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and the protection of its laws." *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967) (citing *Hanson*, 357 U.S. at 253). Furthermore, the exercise of long-arm jurisdiction must be based on "minimum contacts" with New York and must comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The New York Court of Appeals' warning is especially relevant:

> In our enthusiasm to implement the reach of the long-arm statute (CPLR 302), we should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial general business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact.

10

Exhibit A  017

*McKee*, 20 N.Y.2d at 383 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199 (1957)).

Plaintiffs have failed to establish the requisite minimum contacts between Defendant Whyte and New York to satisfy due process requirements. Accordingly, he cannot be said to have "purposefully availed" himself to the jurisdiction of the Courts of this State.

## II.    APPLICATION OF THE DOCTRINE OF FORUM *NON CONVENIENS* WARRANTS DISMISSAL OF PLAINTIFFS' COMPLAINT BECAUSE THE ACTION BELONGS IN ENGLAND, NOT NEW YORK

"A federal court has discretion to dismiss a case on the ground of forum *non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 127 S.Ct. 1184, 1190, 167 L.Ed.2d 15 (2007) (citations omitted). In analyzing a motion to dismiss for forum *non conveniens*, a court must determine whether an adequate alternative forum exists, determine the degree of deference to give to the plaintiff's choice of forum, and balance the public- and private-interest factors. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*); *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981), and *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1947)). Each of those factors weighs strongly in favor of dismissal of Plaintiffs' Complaint.

### A.    England Is An Adequate Alternative Forum As A Matter Of Law

To secure dismissal of an action on grounds of forum *non conveniens*, "a movant must show that an adequate alternative forum is available." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 157 (2d Cir. 2005). "An alternative forum is adequate if the defendants are

11

amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).

Defendants are U.K. residents and citizens, are amenable to process only in England, and are subject to the jurisdiction of English courts and to English law. *See R. Maganlal & Co. v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 167 (2d Cir. 1991) ("Ordinarily, a foreign forum will be adequate when the defendant is subject to the jurisdiction of that forum."). Indeed, none of the Defendants are amenable to service of process in New York. England, therefore, is an adequate and appropriate alternative forum as a matter of law. *See Breindel & Ferstendig v. Willis Faber & Dumas Ltd.*, 95 Civ. 7905 (SHS), 1996 U.S. Dist. LEXIS 10432 (S.D.N.Y. July 22, 1996) ("England is an adequate alternative forum.").

**B.     Plaintiffs' Choice Of Forum Should Be Given No Deference Because They Engaged In Forum Shopping**

The ordinary presumption in favor of a plaintiff's forum of choice is not available where, as here, the selection of the forum smacks of forum shopping. *See, e.g., Iragorri*, 274 F.3d at 72 (where plaintiff's choice "was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands"). The degree of deference depends upon the "*bona fide* connection" between the lawsuit and the forum of choice. *Id.* The Second Circuit recognizes that when, as here, indicia of forum-shopping are evident, "the easier it becomes for the defendant to succeed on a forum *non conveniens* motion by showing that convenience would be better served by litigating in another country's courts." *Id.*

**1.     Plaintiffs Filed Suit In New York, Rather Than London, To Avail Themselves Of The Tactical Advantage Of Depositions, Which Are Unavailable In England**

There can be no doubt that Plaintiffs filed suit in New York "to win a tactical advantage resulting from" exploitation of the Federal Rules of Civil Procedure to obtain expedited

12

depositions of the Defendants.  Indeed, *before two of the three Defendants were even served with the Complaint[7]*, Plaintiffs sought—and obtained—an order compelling the expedited depositions of all three Defendants.  Pre-trial depositions, however, are not permitted in civil matters under English law.  *See, e.g., Breindel & Ferstendig v. Willis Faber & Dumas Ltd.*, 95 Civ. 7905 (SHS), 1996 U.S. Dist. LEXIS 10432 at *8 (S.D.N.Y July 22, 1996).  Plaintiffs' procurement of depositions—of three English residents concerning events that occurred in England—which they would not have been entitled to take in England illustrates the impermissible nature of Plaintiffs' application.  *See Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 476, 481 (S.D.N.Y. 2006) (dismissing complaint based on forum *non conveniens*—even where defendant's operational headquarters was located in New York—where plaintiffs showed "indicia of forum-shopping" because suit in New York allowed for "procedural devices not available in England").

Moreover, the depositions and other expedited discovery[8] sought here will be used to gather information to support anticipated *future* claims against Defendants (and probably others) for allegedly unlawful solicitation and recruiting in the U.K. of English citizens who work for MSL in England.  Those claims, however, can only be brought in England as a matter of law. Indeed, Plaintiffs' lawsuit is nothing more than a tool for obtaining discovery which they would not be entitled to in a future U.K. action.  Such abuse of the discovery process aptly demonstrates Plaintiffs' obvious forum shopping tactic.[9]  *See Well-Made Toy Mfg. Corp. v. Lotus Onda*

---

[7] Two of the three defendants remain unserved.

[8]  The majority of Plaintiffs' written discovery demands (Interrogatories 4, 5, and 7 and Document Requests 3, 5, 6, 7, 8, 9, 10, and 11) relate solely to Plaintiffs' claim that Defendants breached the non-solicitation provisions of their employment contracts and of the Bonus Contracts.  *See* Plaintiffs' May 15, 2007 Supporting Declaration of Robert N. Holtzman, Esq., Exhs. B and C.

[9]  This is further evidenced by Plaintiffs' outright rejection of the "written undertakings" offered by Defendants' U.K. counsel on May 17, 2007.  Plaintiffs refused to even consider Defendants' offer of a *de facto* injunction against any even arguably unlawful future conduct and insisted on pressing their motion for expedited depositions because those depositions are unavailable to them in the English courts.  *See* Barry Decl., ¶¶ 10-17 and Exhs. 14-17

13

*Industrial Co., Ltd.*, 2002 U.S. Dist. LEXIS 789, 00 Civ. 9605 (DFE) (S.D.N.Y. Jan. 16, 2002) ("When the purpose of a discovery request is to gather information in proceedings other than the pending suit, discovery should be denied.") (citing *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1997 WL 53184, *5 (S.D.N.Y. Feb. 11, 1997) and *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352, n. 17, 98 S. Ct. 2380, 2390 n. 17, 57 L. Ed. 2d 253 (1978)); *U.S. v. Hooker Chemicals & Plastics Corporation*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981) (finding it impermissible to "exploit the federal litigation discovery process solely to assist litigation in a foreign forum.") (citing *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y. 1973)).

> **2.    By seeking to force Defendants to litigate in New York, Plaintiffs have maximized the inconvenience and expense to the Defendants**

The lack of any meaningful connection between the litigation and New York strikingly confirms that proceeding with litigation 3,500 miles from England was calculated to geometrically increase the Defendants' burden to exonerate themselves from Plaintiffs' spurious allegations. *See Varnelo v. Eastwind Transport, Ltd.*, 02 Civ. 2084 (KMW)(AJP), 2003 U.S. Dist. LEXIS 1424, at *35 (S.D.N.Y. Feb. 3, 2003) (forum shopping evident when plaintiff chose forum despite "lack of availability of witnesses or evidence in the forum district.") (quoting *Iragorri*, 274 F.3d at 72)).    Plaintiffs' Complaint, application for expedited discovery, and discovery demands make clear that this matter is entirely centered in the U.K., not New York. By way of example:

- The Defendants are citizens and residents of the U.K., are subject to the jurisdiction of U.K. courts, and work in the U.K. for MSL, not for Plaintiffs;

- Plaintiffs maintain substantial business operations within the U.K. and, along with MSL, are subject to English law;

- The likely witnesses in this matter are U.K. residents beyond the Court's compulsory subpoena power;

14

- Most, if not all, of the anticipated witnesses (including MSL's employees, like Lynsey Mansfield, who submitted a Declaration in support of Plaintiffs' motion for expedited discovery) are U.K. residents and certainly the most relevant witnesses all reside in the U.K.;

- The cost of obtaining the attendance of the Defendants and voluntary witnesses in New York will be prohibitive;

- Most, if not all, relevant documentation is located in the U.K.;

- The operative events concerning both the Complaint (*i.e.*, Defendants' alleged breach of the U.K. and Bonus Contracts) *and* Plaintiffs' anticipated claims (*i.e.*, Defendants, while within the U.K., improperly solicited and recruited U.K. citizens who work for MSL in the U.K. to join a U.K.-based competitor) are rooted solely within the U.K. and must be determined under English law by English courts;

- Any dispute concerning Defendants' post-employment non-solicitation obligations, including those arising from their respective employment contracts, must be brought and addressed by the English courts as a matter of English law;

- The parties retained U.K. legal counsel well prior to the initiation of this lawsuit and U.K. counsel have advanced discussions designed to resolve many, if not all, of the issues in dispute; and

- The U.K. has a vested interest in resolving disputes concerning contracts executed and performed in the U.K. by English citizens.

Forum shopping is shown where "[t]here is no indication that the parties anticipated litigating in the United States or that the choice of this forum is based on true motives of convenience." *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 698 (S.D.N.Y. 2003)  In light of the foregoing, and the non-existent connection between New York and the Plaintiffs' claims, the only logical conclusion to be drawn from Plaintiffs' choice of the New York forum is to increase their tactical advantage by maximizing the burden to Defendants.

> **3.    Plaintiffs cannot rely upon the New York forum selection clause in the Bonus Contract because all of their claims against Defendants must be litigated in England as a matter of English law**

The core of Plaintiffs' Complaint and anticipated claims against the Defendants concern Defendants' alleged breach of the non-solicitation provisions of their U.K. Contracts and Bonus

15

Contracts, which together make up the totality of the terms of their employment with MSL. Because those allegations directly arise from Defendants' employment relationship with MSL, those claims must be brought in England as a matter of law.

<strong>a.    English law mandates that the matter must be addressed in England</strong>

Any current or anticipated claim concerning Defendants' alleged violation of their post-employment non-solicitation obligations derives from their original and/or amended U.K. Contracts with MSL. Those contracts, however, conspicuously lack *any* designation that New York is the appropriate forum for proceedings to enforce those contracts. Indeed, British law prevents MSL or Plaintiffs from seeking to enforce any provision of Defendants' employment contracts in the United States.

European Union legislation concerning jurisdiction of civil matters concerning individual contracts of employment is specifically governed by Section 5, Article 20 of EU Council Regulation (EC) No. 44/2001, which provides: "An employer may bring proceedings *only* in the courts of the Member State in which the employee is domiciled." (Emphasis added). *Accord Swithenbank Foods Ltd v. Bowers*, (2002) 2 All E.R. (Comm.) 974, 981 (Q.B.) (section 5 is designed to protect "the employee as the weaker party" by "prevent[ing] employers taking unfair advantage of an employee when the terms of the employment contract are negotiated [and] give[s] the employee jurisdictional advantage if a dispute arises."); *Albon v. Naza Motor Trading*, (2007) 2 All E.R. (Comm.) 719, 2007 WL 2907, at *11 (Ch.) (England has exclusive jurisdiction over actions "in respect of a contract" performed in England and "does not require that the claim arises under a contract: it requires only that the claim relates to or is connected with the contract."). Because the Defendants are U.K. citizens, residents, and employees, the litigation of Plaintiffs' anticipated claims stemming from any alleged breach of the non-

16

solicitation provisions of their employment contracts can only proceed in England as a matter of English law.

      **b.**     **The Bonus Contracts mandate that the matter must be addressed in England**

      To the extent that the Complaint or anticipated claims are deemed to arise only from the non-solicitation provisions of the Bonus Contracts, which they clearly do not, that document also requires such allegations to proceed in England.  As drafted, Schedule II.D of the Bonus Contracts is to "be construed in accordance with English Law and the parties irrevocably submit to the non-exclusive jurisdiction of the English Courts to settle any disputes as may arise *in connection with this Schedule*." (Complaint, ¶32, Bonus Contracts, Sched. II.D, Cl. 6) (emphasis added).  Plaintiffs' attempt to enforce Defendants' non-solicitation obligations in the Bonus Contracts or seek damages from a breach of those provisions beyond rescission and repayment of the fixed Award therein can only be deemed a "dispute" which has arisen "in connection with" Clause 2(a)(iv) and/or Clause 4 of Schedule II.D.  Such a dispute, therefore, belongs in England according to Clause 6 of Schedule II.D.

      Any argument that the English forum selection clause (Clause 6 of Schedule II.D) is trumped by the New York forum selection clause (Section VI.N. of the Bonus Contracts) ignores the plain reading of Schedule II.D in its proper context.  Schedule II.D, Clause 2, states:

> Following the termination of your employment, the definition of Detrimental Activity set out in this Schedule *and the provisions of this Schedule shall apply in place of* the definition given in the main body of this Agreement . . . *and any other contrary provisions of the Agreement.*

Thus, the only reasonable interpretation of Clause 6 of Schedule II.D—when read in conjunction with Clause 2 of the same Schedule—is that the jurisdiction of the English courts "*shall* apply in place of" the "contrary" provision found at Section VI.N.  Reading all of Schedule II.D, the

17

jurisdiction of the English courts and application of English law must override the contrary designation of New York law and forum to the dispute raised in Plaintiffs' Complaint and anticipated claims.

The English courts are further appropriate to address any non-solicitation claim when the scope of the two provisions are compared side-by-side. Under Section VI.N, New York may properly review disputes "over any matter arising from or related to *the Award*." The "Award" is defined in the first sentence of the preamble to the Bonus Contracts as the amount of money granted each Defendant on November 1, 2005 thereunder. (Bonus Contracts at 1). Under Schedule II.D, Clause 6, however, English courts are to decide any disputes "as may arise *in connection with this Schedule*." Because any current or anticipated allegation that Defendants' alleged breach of the non-solicitation provisions of Schedule II.D, Clause 2((a)(iv) *or* Clause 4 arises under the non-solicitation provisions of "this Schedule [II.D]" and *not* "the Award" as required by Section VI.N, the very terms of the Bonus Contracts confirm that the New York forum is inappropriate. *See Anselmo v. Univision Station Group, Inc.*, No. 92 Civ. 1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) ("the applicability of a forum selection clause is governed by 'objective consideration of the language' of the clause.") (quoting *New York v. Pullman, Inc.*, 477 F.Supp. 438, 442 (S.D.N.Y. 1979)); *accord Sempra Energy Trading Corp. v. Algoma Steel, Inc.*, 00 Civ. 9227 (GEL), 2001 U.S. Dist. LEXIS 3001, at *20-22 (S.D.N.Y. Mar. 22, 2001) (FNC dismissal, even though forum selection clause designated that all disputes "'relating to this agreement,' that is, to [] particular gas sale transaction[s]" proceed in New York, because "the present dispute simply cannot be construed as one" such transaction and the forum selection clause "cannot operate to hijack any dispute that may exist between [the parties].").

18

The New York forum selection clause in the Bonus Contracts is further irrelevant because Defendants' U.K. Contracts have no forum selection clause. That Plaintiffs' claims against Defendants for breach of their various non-solicitation obligations encompass the identical provisions of their U.K. Contracts weigh against consideration of the New York venue selection clause. (Complaint, ¶16). *See Base Metal Trading*, 253 F. Supp. 2d at 697-98 (FNC dismissal because New York forum selection clause contained in one contract, of several, does not justify entire litigation in New York).

### c. The ambiguities of the Bonus Contracts mandate that the matter must be addressed in England

The Court can only construe the Bonus Contracts to require the Complaint and anticipated non-solicitation claims to proceed in New York *if* it ignores the Bonus Contracts' two contrary and conflicting venue provisions. Under well-settled New York law, any uncertainty or ambiguity in simultaneously interpreting the English law/forum provision in Schedule II.D, Clause 6 and the New York law/forum provision of Section IV.N must "be construed most strongly against" Marsh because it drafted the Bonus Contract. *Croman v. Wacholder*, 2 A.D.3d 140, 143 (N.Y. App. Div. 2003); *see also Jacobson v Sassower*, 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381, 489 N.E.2d 1283 (N.Y. 1985); *67 Wall St. Co. v Franklin Natl. Bank*, 37 N.Y.2d 245, 249, 371 N.Y.S.2d 915, 333 N.E.2d 184 (N.Y. 1975) ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language."). Reading the English law and forum selection clause in conjunction with Schedule II.D, Clauses 2(a)(iv) and 4 *and* with the Defendants' U.K. Contracts (which contain no choice of forum or law provisions) *and* with EU Council Regulation (EC) No 44/2001, Section 5, Article 20, it is entirely reasonable, logical, and practical to interpret the Bonus Contracts as having intended to mandate litigation of all alleged

19

breaches of the Bonus Contracts by a U.K. employee in the U.K. in one action before the English

courts. That sensible view alone confirms that England is the proper forum for this action. *See*

*Matter of PaineWebber, Inc. v Webb*, 155 A.D.2d 938, 548 N.Y.S.2d 120 (N.Y. App. Div. 1989)

("Even if it may be said that the [unclear contractual] language can be subject to more than one

interpretation, we adhere to the interpretation most favorable to the customer. The form of

agreement was supplied by PaineWebber and should, therefore, be strictly construed against it.").

Moreover, as previously explained, Plaintiffs' forum shopping negates any deference that

Plaintiffs' forum selection may have been entitled. *See Base Metal Trading*, 253 F. Supp. 2d at

698 ("forum shopping is the antithesis of the *bona fide* connection to the plaintiffs' chosen forum

that would cause the Court to defer to the plaintiffs' desires."); *Gilstrap*, 443 F. Supp. 2d at 480

("there is little sense to allowing a U.S. citizen to haul a group of foreign defendants into a U.S.

court on transactions having little or nothing to do with this country where there is an available

foreign forum significantly better suited to handling the litigation in a prompt, efficient and

effective manner." (citing *First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 448

(S.D.N.Y. 2001), *aff'd*, 48 Fed. Appx. 801 (2d Cir. 2002)).

### C.    The Private And Public Interest Factors Strongly Favor Dismissal

The third step in the forum *non conveniens* analysis is to evaluate the overall comparative

convenience of the forums by considering the various private and public interest factors

involved. "In considering these factors, the court is necessarily engaged in a comparison

between the hardships defendant would suffer through the retention of jurisdiction and the

hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in

another country." *Iragorri*, 274 F.3d at 74. Based upon the foregoing, both the private and

public interest factors strongly demonstrate that litigation in New York is genuinely inconvenient

Exhibit A  027

and suit before the English courts is significantly preferable. *See Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006).

### 1.    The private interest factors favor dismissal of Plaintiffs' Complaint

Private interest factors to be considered include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri*, 274 F.3d at 73-74 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508, 67 S.Ct. at 842). All of these factors strongly favor dismissal.

### a.    The is no availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses is prohibitive

All of the known documentary evidence and witnesses are in London. Although not named, Plaintiffs' Complaint identifies 11 U.K. residents allegedly solicited and recruited by Defendants in the U.K. to leave MM-U.K. and join Integro in the U.K. (Complaint, ¶38). These 11 witnesses, who presumably have knowledge (or can confirm a lack of knowledge) concerning Plaintiffs' allegations of wrongdoing, are beyond the Court's compulsory process powers.

It is, nonetheless, anticipated that these witnesses will support Defendants' litany of defenses to both the pending claims in the lawsuit and the anticipated claims of unlawful solicitation and recruiting that Plaintiffs have intimated they will file. Defendants will be substantially and irreparably prejudiced if forced to defend themselves in New York without the ability to compel the attendance of these witnesses. *See Base Metal Trading*, 253 F. Supp. 2d at 710-11 ("In view of the plaintiffs' allegations, which themselves appear to place most of these parties in Russia, the defendants argue persuasively that almost all of their likely witnesses are located in Russia or elsewhere, and that few, if any, are in the United States. And as third-parties to this action, the Court cannot compel such witnesses appear. Moreover, even if the Court

21

Exhibit A   028

could do so, the striking number of Russian parties and witnesses involved in the case demonstrates the extreme inconvenience of bringing this case to trial in the United States.") (internal citations omitted).

Moreover, Defendants are aware of no witnesses with relevant information who reside in New York, or anywhere else outside of England. Likewise, the three Defendants are based in the U.K. and most, if not all of Plaintiffs' witnesses are London-based. Indeed, Plaintiffs' sole declarant in support of their motion for expedited discovery is a U.K. resident.

Defendants, moreover, have no meaningful connection to New York but a strong connection to England. Unlike Plaintiffs, which are global conglomerates, with a significant U.K. operation, the Defendants are three individuals who never meaningfully availed themselves to suit, or expected to be sued, in New York. *See, e.g.*, Whyte Decl., ¶¶2-8. Their meaningful participation in their own defense will be prohibitive if they are forced to litigate this case overseas.

## 2.    The public interest factors favor dismissal of Plaintiffs' Complaint

Relevant public interest factors which favor dismissal here include "the local interest in having localized controversies decided at home" and avoiding difficult problems in conflict of laws and the application of foreign law." *Gilbert*, 330 U.S. at 508-09; *see also Iragorri*, 274 F.3d at 74. As stated, this case has no meaningful connection whatsoever to New York. The Complaint concerns British citizens employed in London by MSL (a U.K. company) who allegedly breached a contract in England when they purportedly failed to cooperate (in the U.K.) with a demand by U.K. counsel for information. In a claim that can only be brought in the U.K., Plaintiffs also accuse Defendants of allegedly breaching their U.K. employment contracts when they allegedly solicited and recruited (in England) other British employees of MSL to seek employment with a U.K. competitor. The nexus of the case could not be farther removed from

22

New York. *See Murray v. British Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996) ("The crux of

the matter, therefore, involves a dispute between British citizens over events that took place

exclusively in the United Kingdom. . . . The United States thus has virtually no interest in

resolving the truly disputed issues."); *accord Saab v. Citibank, N.A.*, 00 Civ. 6784, 2001 WL

1382577, at *5 (S.D.N.Y. Nov. 7, 2001) (FNC dismissal because of insufficient connection of

the community to the litigation: "Although [defendant's] headquarters are in New York, the

other major players in this controversy are Lebanese businessmen and a Saudi Arabian bank. The

actions in dispute occurred throughout Europe and the Middle East; moreover, the witnesses are

nearly all foreign."), *aff'd*, 50 Fed. Appx. 469, No. 01-9417, 2002 WL 31317708 (2d Cir. Oct.

16, 2002).

As this controversy is entirely and deeply rooted in England, the British Defendants have

a significant interest in having this controversy decided by the English courts and no American

court in any jurisdiction has a similar interest in this action. *See Calavo Growers Of California

v. Generali Belgium*, 632 F.2d 963, 967 (2d Cir. 1980) (FNC dismissal granted where Belgium

was "the jurisdiction most intimately concerned with the issues raised in this litigation" because

"suit involves its residents" and involves contract "allegedly breached in Belgium") (citing to

*Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978)); *Base Metal Trading*, 253 F. Supp.

2d at 713 ("The controversy presents issues that are of clear import to Russian citizens that

should be resolved by the Russian courts. By contrast, the case has virtually no connection with

the United States or this district. As such, the local interest in resolution of the dispute is virtually

none."); *Hasakis v. Trade Bulkers, Inc.*, 690 F. Supp. 260, 262 (S.D.N.Y. 1988) (FNC dismissal

warranted where "[t]he United States has no significant connection with the action and has no

interest in adjudicating the dispute between these parties.")

23

It is also undisputed that the Bonus Contracts and Defendants' U.K. Contracts are governed by English law. Accordingly, "the likelihood that foreign law will apply weighs against retention of the action." *Varnelo*, 2003 U.S. Dist. LEXIS 1424, at *108 (citing *Ioannides v. Marika Mar. Corp.*, 928 F. Supp. 374, 379 (S.D.N.Y. 1996)); *accord Gilstrap*, 443 F. Supp. 2d at 491 (declining to apply English law in accord with public interest factor of "having a dispute decided in a forum 'at home with the . . . law that must govern the case'") (citing *Gilbert*, 330 U.S. at 509)); *see Calavo*, 632 F.2d at 967 (noting that "the likelihood that Belgian law would govern in turn lends weight to the conclusion that the suit should be prosecuted in that jurisdiction."); *Hasakis*, 690 F. Supp. at 262-63 (noting that courts should "decline to adjudicate essentially foreign litigation.") (citing *Cruz v. Maritime Co. of Philippines*, 549 F. Supp. 285, 290 (S.D.N.Y. 1982), *aff'd*, 702 F.2d 47 (2d Cir. 1983)). *See also Conte v. Flota Mercante del Estado*, 277 F.2d 664, 667 (2d Cir. 1960) ("try as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, molded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact") (citation omitted).

3.      **The balancing of these factors strongly weighs in favor of dismissal**

Both the private interest and public interest factors weigh strongly in favor of dismissal. London is a vastly more convenient location for the lawsuit for the Defendants, for Plaintiffs' employee-witnesses, and for all anticipated third party witnesses. The Court will certainly be obliged to apply English law to the Plaintiffs' claims and their anticipated claims can only be brought in England as a matter of English law. Perhaps most significantly, "the Court has no ability to compel the testimony of unwilling witnesses whereas the English High Court enjoys

24

that power with respect to witnesses on British soil." *Gilstrap*, 443 F. Supp. 2d at 491 (citing *First Union Nat'l Bank*, 135 F. Supp. 2d at 454) (footnote omitted)).

## CONCLUSION

England is an adequate and proper alternative forum for this matter to proceed and, in light of Plaintiffs' obvious forum shopping and the myriad private interest and public interest factors which strongly favor litigation of all claims in one action in England, dismissal of this matter now is warranted. *See Sinochem.*, 127 S.Ct. at 1194 (if "a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground. . . . and [if] *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.").

Defendant Ron Whyte respectfully submits that his motion be granted and that this matter should be dismissed in its entirety based upon the Court's lack of personal jurisdiction and/or the application of the doctrine of forum *non conveniens*.

Proskauer Rose LLP

Dated: May 24, 2007

/s/  John P. Barry
John P. Barry (JB 6489)
Mark A. Saloman (MS 5764)
Daniel Paretsky (DP 2757)*
For the Firm

---

* Pending admission to the United States District Court for the Southern District of New York.

6473/39438-002 Current/9682664v7

Exhibit A   032