**EXHIBIT A-2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUY CARPENTER & COMPANY, LLC and MARSH & McLENNAN COMPANIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JULIAN SAMENGO-TURNER, RON WHYTE, and MARCUS HOPKINS, <br><br> Defendants. | Case No. 07 - CV- 3580 (DC) <br><br> DECLARATION OF RON WHYTE |

I, Ron Whyte, hereby declare:

1. I have been named as a defendant in the above-captioned matter and submit this declaration in support of my motion to dismiss plaintiffs' Complaint.

2. I am a citizen of England and reside at 193 World's End Lane, Chelsfield, in Kent, England. I am not a U.S. citizen and have never lived in New York or elsewhere in the United States.

3. I do not maintain a residence or own property in New York or elsewhere in the United States.

4. From September 20, 1988 until April 2, 2007, I was employed in London with the entity now known as Marsh Services, Ltd. (hereinafter "MLS"). I have spent my entire career working in England and have never worked in New York or elsewhere in the United States.

5. I am not licensed to do business and maintain no accounts or clients in New York or elsewhere in the United States. I have not solicited business, accounts, or clients in New York. I visited New York on business four or five times in the past two years although the reasons for my visits had nothing whatsoever to do with the issues raised in this lawsuit.

## My Employment Contract With MLS

6. On 13 December 1999, MLS offered me a contract of employment. Attached hereto as Exhibit A is a true and correct copy of my contract with MLS.

7. Page 5 of the contract contains what is commonly known in the U.K. as "garden leave," by which my employment with MLS could be terminated by giving MLS six months of notice. During the notice period, I understood that I could be required not to attend the office but must be available for work should that be requested of me.

8. I was presented with my employment contract in England, reviewed it in England, executed it on 4 June 2000 in England, and performed my obligations under my contract in England.

24/05/2007  16:58  020-7320-9111           ELBORNE MITCHELL              PAGE 04/04

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:
24 May 2007

*Ron Whyte*
Ron Whyte

3

Exhibit A  035

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUY CARPENTER & COMPANY, LLC and )
MARSH & McLENNAN COMPANIES, INC., )
                                                   )  Case No. 07 - CV- 3580 (DC)
    Plaintiffs,                          )
                                                   )
v.                                                        )
                                                   )  DECLARATION OF PATRICK
JULIAN SAMENGO-TURNER, RON   )  BRITTON
WHYTE, and MARCUS HOPKINS,      )
                                                   )
    Defendants.                       )
                                                   )

The undersigned hereby declares that the signatory of the annexed document personally acknowledged the genuineness of the signature as true and exact. The original document or a copy with an original signature affixed will be forwarded for filing if requested by the Court or any party hereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: London, England, United Kingdom
       24 May 2007

                                                    /s/ Patrick Britton
                                                    Patrick Britton

Exhibit A 036

# EXHIBIT A

Marsh Corporate Services Ltd
No 1, The Marsh Centre
London E1 8DX
Telephone  0171 377 3456
Fax         0171 377 3199

# MARSH

Ref    415953 / a26 / 31

Mr R D Whyte
Oak Rise
193 World'S End Lane
Chelsfield
Kent
BR6 6ATB

13 December 1999

**PERSONAL**

Dear Mr Whyte

We are pleased to confirm the following terms and conditions of employment which are being issued to all former J&H Marsh & McLennan and Sedgwick colleagues in the new Marsh organisation. These will come into effect from 1 April 2000 ("the Effective Date").

**APPOINTMENT**

Your appointment will be as stated in your offer letter or as subsequently amended. Your job grade is 18 and your continuous employment began on 20 September 1988.

This is not a temporary or fixed term contract.

Your employer will be Marsh Corporate Services Ltd. (hereafter referred to as "the Company").

Where the term "Group" is used in this Agreement, it shall mean Marsh & McLennan Companies, Inc ("MMC"), and any Associated Companies.

"Associated Company" shall mean any company which for the time being is (whether directly or indirectly):

(i)     a subsidiary (as defined by Section 736 of the Companies Act 1985) of MMC;

(ii)    a company over which MMC has control within the meaning of Section 840 of the Income and Corporation Taxes Act 1988; or

(iii)   a subsidiary undertaking of MMC as defined by Section 258 of the Companies Act 1985.

**REMUNERATION**              **REDACTED**

Your basic annual salary will be at the rate of [                ] paid monthly in arrears.

You will be eligible for consideration for an annual discretionary cash bonus related to your own performance and the performance of the Company. Any bonus award will not be pensionable, nor will it be included in the calculation of any benefit payments.

For each working day you will be entitled to a lunch in the staff restaurant or to a luncheon voucher dependant upon your location.

## MEDICAL EXPENSES SCHEME

You are eligible for membership of the Marsh Medical Expenses Scheme and details will be issued early next year.

## COMPANY CAR

The company will provide for your use a car the value of which will be determined by your job grade at the time of purchase. Insurance, tax, maintenance, repairs and all servicing charges are met by the Company. Normally Company cars are replaced at 60,000 miles or after 4 years, whichever is the sooner. However, in certain circumstances the Company reserves the right to ask you to keep a car for longer.

If you do not wish to accept the offer of a car and unless the car is provided for business use, a non-pensionable cash alternative of 30% p.a. of the above value is available. If, at a later date, you decide to accept the offer of a car, the cash alternative will be withdrawn. You may also decide to accept a car at a lower value to that which you are entitled and receive a downsizing allowance of 25% of the difference between the on-the-road cost of the car purchased and your permitted value. These allowances are available either at the time you first become entitled to the use of a car or when your car becomes due for renewal.

The use of the car is in accordance with the Company's car policy as amended from time to time.

## DRIVING LICENCE

Employees who are eligible for a Company vehicle must hold a valid and current driving licence. If at any stage you are banned from driving for a period, you must notify the Company immediately. If the ban affects your ability to carry out your role, the Company will consider transferring you to an alternative position. If we are unable to locate a suitable alternative position, it will be necessary to terminate your contract.

## HOURS OF WORK

Your normal hours of work unless specified differently in your appointment letter or subsequently amended or agreed otherwise by your manager, will be from 9.30 am to 5.30 pm, Monday to Friday, with a one hour break for lunch. It may be necessary to vary these hours from time to time where operational requirements demand it.

At certain times it may be necessary to ask you to work longer hours according to the needs of the business.

## PLACE OF WORK

You will work in the Marsh offices in or directly adjacent to the City of London. However, during the course of your employment, you may be required to work at an alternative location within reasonable travelling distance of your initial place of work.

If your job demands business travel as part of your duties, you will be required to travel to clients and other Marsh offices.

## TRADING WITH LLOYD'S OF LONDON

If your position requires you to trade with Lloyd's either face to face or electronically, Lloyd's bylaws require you to pass the Lloyd's Introductory Test unless you currently hold, or have held (in relevant circumstances), a Lloyd's Security Pass. If you need to pass the test and this is not achieved within the required time period, the Council of Lloyd's will bar you from trading. The Company will therefore have to consider transferring you to a suitable alternative position. If none is available, your contract will be terminated.

## HOLIDAYS

Holiday pay is calculated on your basic annual salary. In addition to Bank and other Public Holidays, the paid annual holiday entitlement for full-time staff is set out below - :

|  | Staff in Grades 1 to 8 | Staff in Grades 9 & above |
|---|---|---|
| At commencement: | 22 | 26 |
| At 3 years' continuous service: | 23 | 26 |
| At 6 years' continuous service: | 24 | 26 |
| At 9 years' continuous service: | 25 | 26 |
| At 12 years' continuous service: | 26 | 26 |

Staff who have continuous service as below may, in addition to normal holiday entitlement, take a one-off long service holiday in the year of qualification:

| Continuous Service | Additional Leave in anniversary year | Total Leave in that year |
|---|---|---|
| 15 years) 20 years) | 2 days | 28 days |
| 25 years) 30 years) 35 years) | 3 days | 29 days |
| 40 years) 45 years) | 5 days | 31 days |

The following general conditions also apply:

a) The holiday year runs from 1st January to 31st December.

b) The HR Department will calculate holiday entitlement for part-time staff.

3

00966

c) Staff will only qualify for additional holiday entitlement in a year due to service or to a job grade change if the service anniversary or regrading takes place up to and including 1st July. If this occurs between 2nd July and 31st December, the revised entitlement will not apply until the following holiday year.

d) Staff, in the year of their joining or leaving the service of the Company, will be entitled to a proportion of their annual holiday entitlement based on the number of complete calendar months worked in that year. For those entitled to 22, 23 or 24 working days annual holiday, the scale will be 2.0 working days per completed calendar month to a maximum of 22, 23 or 24 working days. Similarly, for those granted 25 or 26 days, the scale will be 2.5 working days per completed month, subject to an overriding maximum of the annual entitlement. A member of staff who is summarily dismissed from the service of the Company will forfeit any claim to accrued holiday entitlement.

e) Staff are not entitled to any additional holidays and subject to h) below, during service, no payment will be made in lieu of holidays not taken.

f) At management discretion, a maximum of one week's holiday entitlement may be carried forward to the first quarter of the following year, if abnormal work pressure has prevented full holiday entitlement from being taken within the calendar year.

g) Holidays must be arranged in accordance with departmental requirements. Staff may not normally take more than ten working days' leave at any one time.

h) Staff leaving the Company should normally take any residual holiday entitlement (as specified in d) above) during their notice period. However, subject to management agreement, payment may be made in lieu of holidays not taken. Similarly, if holidays have been taken in excess of the entitlement at the time of leaving, an appropriate deduction will be made from the final salary payment. Calculations of holiday pay owed by or to the Company will be made on basic annual salary.

### ABSENCE THROUGH SICKNESS OR INJURY

Details of company sick pay, statutory sick pay, and the reporting procedure for staff absent through illness and injury are contained in the attached document. Matters relating to reporting of absence form part of the contract of employment.

### OTHER ABSENCE

Payment for absence for other reasons will be at the discretion of the Company.

Payment of salary and any other allowances will be suspended automatically after three working days of absence without explanation. The Company will make efforts to contact the absent member of staff to discuss reasons for the absence and the likely date of return. However, if unexplained absence extends beyond ten working days, the Contract of Employment will be regarded as terminated without the required period of notice being given.

## PENSION

You are eligible to become a member of the Marsh Group Pension Fund ("the Fund") if you are aged at least 20 but less than 63, normally employed in the UK and not a temporary employee. While you have the right to join the Fund, there is no requirement that you do so.

Contributions to the Fund are currently 3% of pensionable salary. In addition, there is a supplementary scheme for senior staff, currently those graded 14 and above, which provides enhanced retirement benefits.

A Contracting Out Certificate is in force for all members of the Fund. The Rules of the Fund may be inspected on request in the Pensions Department. A summary of the eligibility criteria and benefits are contained in an explanatory booklet which is available from the Pensions Department.

The Normal Retirement Date for both men and women is at age 65.

If your salary is above the earnings cap (£90,600 per annum with effect from 6th April 1999) and you joined the Company on or after 1st June 1989, you are affected by the provisions of the Finance Act 1989 (leaflet available from the Pensions Department). You will be covered for life assurance of 4 x your basic salary but premiums for the part above the cap will lead to an Income Tax charge.

If, when eligible, you are not a member of the Fund, you must by law either participate in a Personal Pension Plan or alternatively the State Earnings Related Pensions Scheme. Please note that you may not legally contribute to a Personal Pension Plan as well as the Fund. You should not join the Fund if you wish to contribute to a Personal Pension.

You will be made a member of the Fund with contributions deducted from salary at the current rate of 3% of Pensionable Salary, unless you confirm in writing to the Pensions Department London that you do not wish to join.

## NOTICE

Your employment with the Company may be terminated by the Company or by you, by giving notice in writing as follows:

|  | Grades 1-9 | Grades 10-15 | Grades 16 & above |
|---|---|---|---|
| Prior to completion of 5 years' service | 1 month | 3 months | 6 months |
| 5 years' or more service | 3 months | 3 months | 6 months |

At the discretion of the Company, during the notice period, employees may be required not to attend the office, but must be available for work should this be required. The Company may in its absolute discretion give you a payment in lieu of salary and other contractual benefits calculated at the date of termination for all or part of this period. There should be no expectation on your part that you will receive such a payment. It is expressly agreed that there are no circumstances in which you can require the Company to make a payment in lieu to you and the existence of this clause does not prevent the Company electing to terminate your employment summarily and pay you compensation for its early termination.

If the Company wishes to terminate your employment or if you wish to leave its employment before the expiry of the notice and whether or not either party has given notice to the other under that paragraph, the Company may require you to perform duties not within your normal duties or special projects or may require you not to attend for work for a period equivalent to the notice period required to be given by you to terminate the contract. For so long as you are not required to work during such period, you will remain an employee of the Company. You will continue to receive your salary and other contractual entitlements and to be bound by all the terms of this Agreement. You will not directly or indirectly work for any person, have any contact with any Client of the Group or, for business purposes, any such employee without the prior written agreement of the Company.

On the termination of your employment or upon the Company exercising its rights under the previous paragraph, you will at the request of the Company resign without claim for compensation from any directorships (referred to in the Companies Act 1985 Sect 741) held by you in the Group. If you fail to do so, the Company may nominate someone on your behalf to sign such documents and to take such other steps as are necessary to give effect to such resignations.

## CONFIDENTIAL INFORMATION AND COPYRIGHT

You must neither during nor after your employment with the Company disclose or permit to be disclosed to any person, firm or company, any confidential information of the Company or of any other member of the Group. Confidential information includes but is not limited to information relating to the Group's clients and prospective clients, insurance markets, technology, know how, technical information, business plans and finances whether or not such information is recorded in documentary form or computer disk or tape.

The Company remains the owner of all property (including copyright and similar commercial rights) and all work produced in the course of your employment with the Company.

## DISCLOSURE

At no time, whether before or after the termination of your employment, are you to disclose in any way, or use for your or another's advantage, any of the data, programmes or manuals, or any of the business methods or information of a confidential nature relating to the affairs of any Group company unless such disclosure or use is required by law, or you have been authorised to do so by your Chief Executive.

## INFORMATION SECURITY POLICY

Employees must be aware and adhere to the Marsh Corporate Services Information Security Policy, a copy of which is attached. Failure to comply with the provisions of this policy may lead to disciplinary action up to and including termination of employment.

## DATA PROTECTION

You agree to the Company and any other company in the Group holding and processing, both electronically and manually, the data which it or they collect relating to you in connection with your employment provided that this is either for the purpose of its or their businesses or the administration and management of its employees or for the purpose of complying with applicable laws, regulations and procedures.

**COMPETING BUSINESS**

You must not during your employment with the Company be concerned or interested directly or indirectly, except as an employee of the Company, in the business of underwriting or as an insurance, reinsurance, or mortgage broker or agent or be personally employed or engaged in any of these capacities without having first gained the written consent of the Company.

You shall not for a period of one year following the termination of your employment, less such period if any as you are required not to attend for work by the Company, directly or indirectly, either on your own account or for any other person, firm or company, in competition with the Company, or any other member of the Group:

(i)     solicit or canvass insurance business from;

(ii)    transact, handle or in any way deal with the insurance business of, any person, firm or company who in the period of 12 months preceding termination of your employment was a client of the Company or the Group and with whom during such a period, you, in the course of employment, had dealings.

You shall not, for a period of 12 months following termination of your employment, less such period as you are required not to attend for work by the Company either directly or indirectly, solicit or entice away from the Company or the Group any employee with whom you had dealings in the 12 months preceding termination of your employment and who is engaged in the business of insurance broking or offer employment or engagement to any such employee.

The previous two paragraphs only apply if your actions are in connection with the supply or proposed supply of Competitive Services. Competitive Services are services which compete with those the Company or any other member of the Group was supplying or seeking to supply to clients at the time your employment was terminated for the purpose of the business or businesses with which you were materially involved at any time during the last 12 months of your employment.

Each sub paragraph and part of such sub paragraph of this paragraph constitutes an entirely separate and independent restriction and does not operate or limit any other obligation owed by you, whether that obligation is express or implied by law. If any restriction is held to be invalid or unenforceable by a court of competent jurisdiction it is intended and understood by the parties that such invalidity or unenforceability will not affect the remaining restrictions.

**DISCIPLINE AND GRIEVANCE PROCEDURES**

The Disciplinary Procedure is designed to help and encourage all employees to achieve and maintain required standards of conduct, attendance and job performance.

The Grievance Procedure is designed to provide a means by which employees who have a grievance relating to employment may seek a remedy.

The Company's Disciplinary Rules are designed to facilitate the efficient conduct of the Company's business and to provide a reasonable working environment for all employees. The Rules give examples of offences that will be regarded as misconduct or gross misconduct. These lists are by no means exhaustive, and other offences not listed may be regarded as falling in either category. The procedures and rules are in accordance with the ACAS Code of Practice on Disciplinary Practice and Procedure in Employment and are attached.

If you are dissatisfied with any disciplinary decision made against you during your employment, you may first appeal to the next level of management. Appeals must be in writing within two working days of receipt of written confirmation of the disciplinary decision.

If you have a grievance related to your employment, you should first discuss it with your departmental manager.

These rules and procedures do not form part of the contractual terms of employment and give rise to no rights of entitlements of employees of the company.

## CONVICTIONS

You are required to disclose any conviction which is not spent by virtue of the Rehabilitation of Offenders Act 1974. Similarly, if you receive any conviction during your employment, it should be disclosed to the Company.

If your conviction affects your employment with the Company, it may be necessary to terminate your contract of employment. A conviction which the company considers irrelevant to the job will not be taken into consideration.

## MEMBERSHIP OF TRADE UNIONS

While you have the right to join an Independent Trade Union and to take part in its activities, there is no requirement to do so. There are no collective agreements in existence which directly affect your terms and conditions.

## GENERAL

The Agreement replaces with effect from 1st April 2000 all terms previously agreed between us. The previous Agreement will be treated as terminated by agreement with effect from the Effective Date. You will be accepting the terms of this Agreement on the basis that the Company is agreeing to terms for itself and for each company in the Group with the intention that each such company will be entitled to enforce the terms of this letter.

Please acknowledge your acceptance of these Terms and Conditions of Employment by signing and dating the enclosed copy of this letter and returning it to Janet Charles, Human Resources Department, London by 31st January 2000.

Please do not hesitate to raise any questions with your manager or HR Manager.

Yours sincerely,

G D Thomas
Group Human Resources Director

Signed _____

Date    6/04/2000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUY CARPENTER & COMPANY, LLC and MARSH & McLENNAN COMPANIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JULIAN SAMENGO-TURNER, RON WHYTE, and MARCUS HOPKINS, <br><br> Defendants. | Case No. 07 - CV- 3580 (DC) <br><br> **DECLARATION OF JOHN P. BARRY** |

I, John P. Barry, hereby declare:

1. I am a member of Proskauer Rose LLP, attorneys for defendant Ron Whyte ("Defendant") in the above-captioned matter. I submit this declaration in support of Defendant Whyte's motion to dismiss plaintiffs' Complaint based upon insufficient personal jurisdiction and/or under the doctrine of forum *non conveniens*.

2. A true and correct copy of the Court's Pretrial Scheduling Order, dated May 22, 2007, is attached as Exhibit 1.

3. A true copy of Plaintiffs' Complaint, without attachments, is attached as Exhibit 2.

4. A true copy of Marsh Services Ltd.'s December 26, 2005 "Report and Financial Statements" is attached as Exhibit 3.

5. A true copy of Marsh Services Ltd.'s Certificate of Incorporation and related documentation is attached as Exhibit 4.

6. True and correct copies of the U.K. Contracts of Messrs. Samengo-Turner and Hopkins are attached as Exhibits 5 and 6.

7. True and correct copies of the U.K. Contracts amendments of Messrs. Samengo-Turner and Hopkins are attached as Exhibits 7 and 8.

8. True and correct copies of the Bonus Contracts of Messrs. Samengo-Turner, Whyte, and Hopkins are attached as Exhibits 9, 10, and 11.

9. A true and correct copy of select pages of the transcript of Marsh's first quarter 2007 Earnings Conference Call, which took place on May 8, 2007, are attached as Exhibit 12.

10. In further support of Defendant's motion to dismiss, it is important for the Court to recognize the significant involvement of English counsel for both sides. Before this suit was ever filed, Plaintiffs' London legal counsel (Herbert Smith LLP) sent letters to each Defendant on or about April 5, 2007, at their respective U.K. residences, with identical written demands for information designed to support the existence of Detrimental Activity. A true and correct copy of these letters are attached as Exhibit 13.

11. Defendants' London-based solicitors, Elborne Mitchell, Defendants denied Plaintiffs' allegations on April 11, 2007. A true and correct copy of this letter is attached as Exhibit 14.

12. On April 19, 2007, Elborne Mitchell further advised Herbert Smith that Defendants were willing to sign written undertakings confirming that they will comply with their garden leave obligations and that they had no documentation or other property belonging to Plaintiffs other than mobile telephone handsets which they offered to return. A true and correct copy of this letter is attached as Exhibit 15.

13. Elborne Mitchell wrote to Herbert Smith again on May 1 for additional information in support of GC's oppressive demands. A true and correct copy of this letter is attached as Exhibit 16.

14. By letter dated May 3, Herbert Smith confirmed that Plaintiffs had refused to provide any additional information to support its information demands but, nonetheless, anticipated receiving the Defendants' written responses and undertakings as soon as possible.

15. *The very next day*, however, this lawsuit was filed in the United States District Court for the Southern District of New York.

16. By letter dated May 17, 2007, Elborne Mitchell nonetheless proposed that it would recommend that Defendants sign a written undertaking which set forth, in pertinent part:

> I confirm my agreement to remain an employee of Marsh Services Limited ("the Company") until 2 October 2007 and to serve out my notice period on garden leave as requested by the Company. I undertake that while I remain an employee of the Company I will abide by my contractual duty of good faith and fidelity to the Company. I further undertake that during this period of garden leave I will not:
>
> (a) Save for the purpose of obtaining legal advice, or save as required or permitted by law, or save with the express permission of the Company.
>
> (A) disclose or permit to be disclosed to any person firm or company any confidential information of the Company or of any other member of the Group.
>
> (B) disclose in any way, or use for my own or another's advantage, any of the data, programmes or manuals, or any of the business methods or information of a confidential nature relating to the affairs of any group Company.
>
> (b) be employed or engaged or otherwise provide services directly or indirectly, except as an employee of the Company, in the business of underwriting or as an insurance, reinsurance, or mortgage broker or agent without having first gained the written consent of the Company.

A true and correct copy of this letter is attached as Exhibit 17.

17. Plaintiffs, however, rejected that offer.

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Newark, New Jersey
May 24, 2007

_____
John P. Barry

6473/39438-002 Current/9692720v2                                    Exhibit A   049