# EXHIBIT A-13

**5**

**CAMPANIELLO IMPORTS, LTD. and CAMPANIELLO IMPORTS OF FLORIDA INC., Plaintiffs, -v- SAPORITI ITALIA S.P.A., SERGIO SAPORITI, RAFFAELE SAPORITI, GIDATEX S.R.L., and DARIO FILIPPINI, Defendants.**

95 Civ. 7685 (RPP)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1996 U.S. Dist. LEXIS 11064*

**August 1, 1996, Decided**
**August 2, 1996, FILED**

**DISPOSITION:** [*1] Individual defendants' motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(2)* granted. Motion to dismiss the complaint pursuant to *Fed. R. Civ. P. 9(b)* and *12(b)(6)* made by Gidatex and the Saporiti defendants granted. Plaintiffs' claims against Gidatex dismissed on the ground that they subject to mandatory arbitration pursuant to *9 U.S.C. § 3.* n9

n9 In light of these findings it was not necessary to consider defendants' claim that they were entitled to a different forum on the grounds of forum non conveniens.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Before the court were motions to dismiss the unjust enrichment, fraud, and misrepresentation complaint filed by plaintiff importers against defendants, two foreign exporters and their individual representatives. Defendants' motions were filed pursuant to *Fed. R. Civ. P. 9(b), 12(b)(2) and (6),* and also *9 U.S.C.S. § 3.* The dispute arose out of the importers' agreement to import and sell furniture for the exporters.

**OVERVIEW:** After the importers reached an agreement with the first exporter, they filed a breach of contract and misrepresentation suit against the first exporter. With foreign court approval, the first exporter attempted to resolve its financial difficulties through an agreement with the second exporter whereby the second would lease the business assets of the first. The second exporter then entered into the agreement at issue with the importers, on the condition that they would drop their

legal action. Thereafter, the importers filed the action before the court and claimed that the exporters fraudulently induced them to drop the previous lawsuit. The court agreed with the individual defendants' assertions that the court had no jurisdiction over them, even as agents of their respective corporations. The allegations of fraud were made on information and belief and did not address actions taken or statements made by any of the exporters with the specificity required by *Fed. R. Civ. P. 9(b).* Finally, under the Federal Arbitration Act, *9 U.S.C.S. § 3,* the issues raised by the complaint had to be arbitrated pursuant to the parties' agreement.

**OUTCOME:** The court granted the individual defendants' motion to dismiss. The court also granted the motion to dismiss the complaint as to the corporate defendants because plaintiffs had not pleaded fraud with the requisite particularity and failed to state a cause of action for fraud distinct from the claim for breach of contract. Finally, the court dismissed the claims against the successor corporation because they were subject to mandatory arbitration.

**COUNSEL:** APPEARANCES

Counsel for Plaintiffs: Sylvor & Richman, L.L.P., New York, New York, By: Iris S. Richman, Esq.

Counsel for Defendants:

For Defendant Saporiti Italia S.P.A., Sergio Saporiti, Raffaele Saporiti, and Gidatex S.R.L.: Pavia Harcourt,

New York, New York, By: Debra Guzov, Esq., David Botwinik, Esq.

For Defendant Dario Filippini: Whitman Breed Abbott & Morgan, New York, New York, By: Thomas G. Bailey, Jr., Mario G. Murphy.

**JUDGES:** ROBERT P. PATTERSON, JR., U.S.D.J.

**OPINION BY:** ROBERT P. PATTERSON, JR.

**OPINION:**

### OPINION AND ORDER

**ROBERT P. PATTERSON, JR., U.S.D.J.**

Defendants, Saporiti Italia S.P.A. ("Saporiti"), Sergio Saporiti ("Sergio"), Raffaele [*2] Saporiti ("Raffaele") (collectively the "Saporiti defendants"), and Gidatex S.R.L. ("Gidatex") move for an order:

> (1) dismissing the complaint pursuant to *Rule 9(b) of the Federal Rules of Civil Procedure* ("Fed. R. Civ. P.") for failure to plead fraud with particularity; and
>
> (2) dismissing the complaint pursuant to *Fed. R. Civ. P. 12(b)(6)* for failure to state a cause of action for fraud.

The Saporiti defendants also move to dismiss the complaint pursuant to *Fed. R. Civ. P. 12(b)(6)* on the grounds that the claims asserted in this action are barred by the doctrine of res judicata.

Defendants, Sergio, Raffaele, and Dario Filippini ("Filippini") (collectively the "individual defendants") move pursuant to *Fed. R. Civ. P. 12(b)(2)* to dismiss the complaint on the ground that this Court lacks personal jurisdiction over them.

Gidatex moves for an order dismissing the amended complaint, or in the alternative staying this action, pursuant to *9 U.S.C. § 3* on the ground that the claims asserted against it are subject to mandatory arbitration.

For the following reasons, defendants' motions are granted and plaintiffs' claims against all defendants are dismissed.

### BACKGROUND [*3]

Plaintiff, Campaniello Imports, Ltd. ("Campaniello"), is a New York corporation and has its principal place of business in this district. (Amended Complaint filed February 13, 1995 ("Complaint") P4.) Plaintiff, Campaniello Imports of Florida, Inc.

("Campaniello Florida"), is a Florida corporation whose principal place of business is located in Miami, Florida. (Id. P5.) Plaintiffs are owned and managed by Thomas Campaniello, a United States citizen who is a resident of New York City, New York. (Id. P6.)

Defendant Saporiti is an Italian corporation, and its principal office is in Besnate, Italy. (Id. P7.) Saporiti is engaged in the production and sale of luxury furniture and related products. (Id.) Prior to September 23, 1993, Saporiti was owned and controlled by Sergio and Giorgio Saporiti ("Giorgio"). (Id. PP7, 8.) On January 11, 1994 Giorgio sold his interest in Saporiti to Raffaele, Sergio's son. (Id. P8.)

Both Raffaele and Sergio are Italian citizens who reside permanently in Italy. (Declaration of Raffaele Saporiti dated December 19, 1995 ("Raffaele Decl.") P18; Declaration of Sergio Saporiti dated December 19, 1995 ("Sergio Decl.") P2.) Neither Raffaele [*4] nor Sergio maintain a residence, bank account or other assets in New York or anywhere in the United States, and in their declarations they both state that they have never engaged in any business in the State of New York on their own behalf. (Raffaele Decl. PP19-21; Sergio Decl. PP3-5.)

Defendant, Gidatex is an Italian corporation whose principal office is in Gallarate, Italy. (Complaint P9.) Defendant, Filippini is the principal officer, shareholder and director of Gidatex. (Id.; Declaration of Dario Filippini dated December 20, 1995 ("Filippini Decl.") P1.) Filippini is an Italian citizen and resides permanently in Gallarate, Italy. (Filippini Decl. P14.) He does not maintain a residence, domicile, bank account, or other personal assets in the State of New York or elsewhere in the United States and performs nearly all of his work in Italy. (Id. PP15-16.) Filippini has submitted a declaration in which he states that he has been in New York twice, both times for vacation. In August 1985 Filippini was introduced to Thomas Campaniello in New York in a personal context, but no business of any kind was discussed by them at that time. (Id. P17.)

Under the terms of an agreement [*5] signed on May 22, 1974, Thomas Campaniello was engaged by Saporiti to serve as its exclusive importer and sales agent. (Complaint P17.) On May 29, 1974, Thomas Campaniello organized plaintiff, Campaniello, to serve as a vehicle to carry out the terms of the May 22, 1974 agreement and to secure a lease for a showroom that the parties contemplated would be opened in New York. (Id. P18.)

In 1981 the scope of the exclusive agency was extended to include territories in the Caribbean and Central and South America, and Campaniello was designated as the exclusive importer of the "Saporiti"

line of furniture for the territories covered by the exclusive agency agreement. (Id. P31.)

In March 1994, plaintiffs commenced an action in this Court against the Saporiti defendants alleging breach of contract, fraud, and misrepresentation and demanding an accounting (the "1994 litigation"). (Affidavit of David A. Botwinik sworn to on March 1, 1996 ("Botwinik Aff.") P2, Ex. A; Raffaele Decl. PP6, 7.)

In April 1994, Saporiti filed for a "Concordato Preventivo" under Italian law. This is a mechanism whereby a company encountering financial difficulties can enter into arrangements with its creditors, [*6] subject to the approval of the Italian court. (Filippini Decl. P5; Raffaele Decl. P4.)

On May 18, 1994, with the approval of the Italian Court, Gidatex entered into an agreement with Saporiti for the lease of the business assets of Saporiti. Under the agreement, Saporiti retained its liquid assets and accounts receivable and remained responsible for its debts, and Gidatex was given the option to purchase the business assets of Saporiti. n1 (Filippini Decl. P6.) Plaintiffs allege that on May 18, 1994, Filippini also telephoned Thomas Campaniello in New York; told him that he, Filippini, was the new owner and sole administrator of the Saporiti business; indicated that he wanted to continue the arrangements between Saporiti and plaintiffs; and stated that if plaintiffs agreed to discontinue their lawsuit, he would give plaintiffs a favorable contract to continue as the exclusive representative and agent for the Saporiti line of furniture. (Complaint P55.)

n1 None of the parties has submitted a copy of the May 18, 1994 Agreement between Gidatex and Saporiti. Therefore, the exact terms of the agreement have not been reviewed by the Court.

[*7]

On June 14, 1994, plaintiffs and Gidatex entered into an agreement which provided in part that plaintiffs would ". . .undertake to cancel and withdraw from the [1994 litigation] and acknowledge that they have no further claims relating to each and any prior relationship with Saporiti Italia, S.p.A."; that Gidatex would grant plaintiffs ". . .exclusive sales rights. . .until March 31, 1995 for those products which form part of 'Saporiti Italia' collection in the following countries: U.S.A., Mexico, Guatemala, Costa Rica, Panama, Venezuela, Colombia, Caribbean Islands"; that "in the event Gidatex srl were to exercise its option to purchase Saporiti, the exclusive sales agreement would be extended for an

additional 5 years until March 31, 2000"; and that "Campaniello Imports Ltd. undertakes to meet a minimum purchase budget for the period commencing June 15, 1994 and terminating March 31, 1995 equal to 1 billion lire." (Filippini Decl. P8, Ex. C.)

On July 7, 1994, this agreement was amended to include, among others, a provision which stated:

> Italian law will be the applicable law. Any dispute which might arise between the parties in relation to that which is the object of [*8] the present agreements shall be resolved by irritual arbitration before a panel of friendly compositors composed of Avv.ti [sic] Amedeo Travi and Sergio Fabrizi and by a third arbitrator who will act as President, appointed by the two arbitrators previously named, or in the event they cannot agree, by the President of the Tribunal of Busto Arsizio.

(Filippini Decl., Ex. D.)

Also on July 7, 1994, plaintiffs and the Saporiti defendants entered into a settlement agreement which was approved by an Italian court. (Id. P7, Ex. B.) The settlement agreement provided in part that plaintiffs ". . .would discontinue the lawsuits instituted before the Courts of New York against [the Saporiti defendants] waiving each and any claim against [the Saporiti defendants]." (Id., Ex. B.)

On August 8, 1994, pursuant to the July 7, 1994 settlement agreement, the parties submitted to this Court a stipulation of dismissal which stated in part: "All claims presented by the complaint herein shall be dismissed with prejudice as to all parties. (Id., Ex. B.) This stipulation was "so ordered" by Judge McKenna on August 17, 1994 and was filed on August 18, 1994. (Id.)

On October [*9] 16, 1995, plaintiffs commenced the instant action. The amended complaint dated February 13, 1996 n2 asserts a claim of unjust enrichment and two claims for fraud and misrepresentation, alleging that defendants (1) deceived and defrauded plaintiffs in order to induce them to agree to settle, withdraw their complaint and ". . .execute a settlement agreement outside the scope of the Concordato proceedings. . ." (complaint P93); (2) pretextually terminated plaintiffs' exclusive agency provided for by the June 14 agreement with Gidatex (id. P111); and (3) wrongfully "captured the valuable good

Case 1:07-cv-03580-DLC    Document 23-14    Filed 06/12/2007    Page 6 of 26

Page 4
1996 U.S. Dist. LEXIS 11064, *

will in plaintiffs' territories that plaintiffs' efforts and investment created" (id. P127).

> n2 The amended complaint is dated February 13, 1995, however, the chronology of events indicates that this is a typographical error and the correct date is February 13, 1996.

Plaintiffs seek to rescind the June 14, 1994 Agreement, as amended on July 7, 1994, with Gidatex and the July 7, 1994 agreement with Saporiti as well [*10] as the stipulation of settlement with prejudice (id. P114); demand an accounting of "any and all profits on any and all direct sales to customers in plaintiffs' exclusive territories that should have been credited to the account of plaintiff" (id. P124); and seek to enjoin defendants from making direct sales into plaintiffs' exclusive territories or entering into agreements with other importers or agents to license or contract the rights to sell the "Saporiti" line of furniture in these territories (id. P130).

DISCUSSION

I. Personal Jurisdiction

This court has jurisdiction over the subject matter of this action pursuant to *28 U.S.C. § 1332*. In diversity actions such as this one, courts must look to the law of the state in which it sits in order to answer questions of personal jurisdiction. Therefore, New York State law governs the issue of personal jurisdiction is this action. See, e.g., *Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963)*.

Although ultimately a plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence, at the commencement of litigation a plaintiff need only show a [*11] prima facie case for personal jurisdiction through its pleadings and affidavits. *Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)*. Furthermore, a plaintiff's complaint and "affidavits are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff." *Editorial Musical Latino Americana, S.A. v. Mar Intern. Records, Inc., 829 F. Supp. 62, 64 (S.D.N.Y. 1993)*.

In this case plaintiffs contend that this Court has personal jurisdiction over defendants, all of whom are non-domiciliaries, pursuant to New York's Long Arm Statue, § 302 of the New York Civil Practice Law and Rules ("CPLR"), as a result of defendants' individual contacts with the state, their actions outside the state which caused harm within the state, or the actions of their agents. (Complaint P2.) Plaintiffs also contend that personal jurisdiction exists as to each individual defendant due to his participation in a conspiracy to defraud plaintiffs. The individual defendants contest personal jurisdiction. The corporate defendants, Saporiti and Gidatex, do not.

A. CPLR § 302(a)(1) [*12]

Section 302(a)(1) of the CPLR reads in pertinent part:

> a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> > (1) transacts any business within the state or contracts anywhere to supply goods or services in the state . . . .

Under § 302(a)(1), personal jurisdiction exists over an out-of-state defendant only ". . .if two conditions are met: first, the non-domiciliary must 'transact business' within the state; [and] second, the claim against the non-domiciliary must arise out of that business activity." *Cutco Industries, Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)*(citations omitted). Any activity in New York which is asserted as the basis for long arm jurisdiction must have a substantial relationship to the cause of action. *McGowan v. Smith, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (N.Y. 1981); see also Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (N.Y. 1988)* (defendants' actions must be "purposeful" and there must be a "substantial relationship between the transaction and the claim asserted"); Nordic Bank [*13] *PLC v. Trend Group, Ltd., 619 F. Supp. 542, 567 (S.D.N.Y. 1985)*(cause of action asserted must arise out of the defendant's activities in New York). n3

> n3 Section 302(a)(2) provides personal jurisdiction over any non-domiciliary, who in person or through an agent "commits a tortious act within the state . . . ." There is no claim in this case that defendants committed a tort within New York, and § 302(a)(2) is not asserted by plaintiffs as a basis for personal jurisdiction.

Exhibit A   268

Plaintiffs' pleadings do not demonstrate that Filippini had contacts with New York which rose to the level of transacting business. Filippini's contacts with New York consist of correspondence with Campaniello (complaint P64) and a telephone call on May 18, 1994 (id. P55). This correspondence and telephone call were for the purpose of initiating and arranging the negotiations which eventually led to the June 14 and July 7, 1994 agreements between Gidatex and the plaintiffs. The negotiation of these agreements took place entirely [*14] in Italy. These contacts do not constitute the purposeful activity within the state of New York required by CPLR § 302(a)(1). See *Continental Field Service Corp. v. Itec International, Inc., 894 F. Supp. 151, 153-154 (S.D.N.Y. 1995)*(central question in the test for transacting business under CPLR 302(a)(1) is whether defendant has performed purposeful acts in New York in relation to the contract).

Defendants Sergio and Raffaele have conducted business activities within the state of New York at various times (complaint PP12, 16, 17, 26, 29, 30, 33, 112), but these activities were conducted on behalf of their employer, not on their own behalf (Sergio Decl. P5; Raffaele Decl. P21), and none of their activities alleged to have taken place in New York are substantially related to the causes of action asserted by plaintiffs in this case. Therefore, CPLR § 302(a)(1) does not provide a basis upon which this Court may exercise personal jurisdiction over Sergio and Raffaele.

Plaintiffs claim that Sergio and Raffaele fraudulently induced plaintiffs to sign a settlement agreement (complaint P89) and, in conjunction with Filippini, planned to impede plaintiffs' ability to meet the minimum [*15] purchase provisions of the June 14 agreement between Gidatex and Campaniello in order to justify a termination of that agreement (id. P91). The settlement agreement of June 14, 1994 and the subsequent agreement of July 7, 1994 were negotiated and signed in Italy. The actions of Sergio and Raffaele which were allegedly directed at hindering plaintiffs' efforts to comply with the Gidatex-Campaniello agreement also took place in Italy (id. P103). Accordingly, plaintiffs' cause of action does not arise out of Sergio's, Raffaele's, or Saporiti's activities in New York, and personal jurisdiction over Sergio and Raffaele does not exist under § 302(a)(1).

### 1. Long Arm Jurisdiction and Agency

In *Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (N.Y. 1988)*, the New York Court of Appeals held that the actions of a corporation could be attributed to an individual defendant and would support New York's assertion of jurisdiction over him. *Kreutter, 71 N.Y.2d at 467;* accord *Retail Software Services, Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988).*

In order to establish that a corporation acted as an individual's agent, the plaintiff must demonstrate [*16] that the corporation engaged in purposeful activities in New York in relation to the transaction in question; that the corporation did so for the benefit of and with the knowledge and consent of the individual officer; and that the officer exercised some control over the corporation in the transaction. *Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 983-984 (S.D.N.Y. 1992); Retail Software, 854 F.2d at 22; Kreutter, 71 N.Y.2d at 467.*

In an effort to attribute the activities of Gidatex and Saporiti to the individual defendants for the purposes of asserting jurisdiction under § 302(a)(1), plaintiffs contend that Gidatex served as Filippini's agent and that Saporiti was the agent of Sergio and Raffaele. This agency argument, however, does not overcome the threshold issue that plaintiffs' claims arise from transactions which took place outside of New York thus precluding jurisdiction under CPLR § 302(a)(1). *Cutco Industries Inc., 806 F.2d at 365* (holding that in order to assert jurisdiction under § 302(a)(1) claims against non-domiciliary must arise out of business activity within the state). Accordingly, it is not necessary to reach the issue of whether Gidatex [*17] or Saporiti in fact acted as agents of the individual defendants. n4

n4 Plaintiffs allege that Gidatex ". . .did not have sufficient capital resources of its own or management personnel to successfully acquire and operate and continue the business of defendant Saporiti Italia." (Complaint P104.) This alleged undercapitalization, however, is not sufficient to justify piercing Gidatex's corporate veil in an effort to obtain jurisdiction over Filippini. The plaintiffs have not alleged facts showing that Gidatex was a shell being used by Filippini to advance personal rather than corporate ends, nor have plaintiffs alleged any intermingling of Gidatex's and Filippini's finances, or lack of corporate formalities. The allegations do not demonstrate that Gidatex was the alter ego of Filippini and do not provide justification for piercing the corporate veil. See *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 138-139 (2nd Cir. 1991).*

### 2. Long Arm Jurisdiction and Allegations of [*18] Conspiracy

Acts committed in New York by a co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject that out-of-state defendant to jurisdiction in New York under § 302(a) of the CPLR. See, e.g., *Lehigh Valley Industries, Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260 (S.D.N.Y. 1991); Singer v. Bell, 585 F. Supp. 300, 302 (S.D.N.Y. 1984).* The bland assertion of a conspiracy or agency, however, is insufficient to establish jurisdiction. *Lehigh Valley Industries, Inc., 527 F.2d at 93-94; Singer, 585 F. Supp. at 303.* To establish jurisdiction on the basis of an alleged conspiracy, plaintiffs must allege facts demonstrating prima facie conspiracy, and must allege facts warranting the inference that the defendants were members of the conspiracy. *Singer, 585 F. Supp. at 303; see also Dixon v. Mack, 507 F. Supp. 345, 348 (S.D.N.Y. 1980).*

In this case, plaintiffs have failed to meet the threshold requirement of making a prima facie showing of conspiracy. The claims of conspiracy in the complaint consist of conclusory allegations that the individual defendants [*19] conspired with Saporiti and Gidatex as part of a ". . .scheme to make whatever promises and representations were necessary to induce plaintiffs to withdraw their action and enter into a new agreement which they would repudiate on false and contrived pretexts." (Complaint P60; see also id. at PP91, 93, 110.) Plaintiffs' claims of the existence of a conspiracy are not adequately supported by factual allegations, and therefore, plaintiffs may not attribute the acts or contacts of the alleged co-conspirators, Saporiti and Gidatex, to the individual defendants for the purpose of asserting personal jurisdiction under CPLR **§ 302(a)(1)**.

B. CPLR 302(a)(3)

Section 302(a)(3) of the CPLR permits jurisdiction over an out-of-state defendant:

> who in person or through an agent commits a tortious act without the state causing injury to person or property within the state. . . .if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial [*20] revenue from interstate or international commerce. . .
> .

CPLR § 302(a)(3).

Plaintiffs argue that CPLR § 302(a)(3) provides this Court with personal jurisdiction over Filippini, Sergio and Raffaele. This allegation fails, however, because plaintiffs have not adequately pleaded a cause of action for fraud under New York law and therefore have not alleged that the individual defendants committed a tort outside of New York.

Under New York law, there are numerous Appellate Division decisions which provide persuasive authority that ". . .a cause of action for fraud cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations." *PI, Inc. v. Quality Products, Inc., 907 F. Supp. 752, 761 (S.D.N.Y. 1995); see, e.g., Caniglia v. Chicago Tribune-New York News Syndicate, Inc., 204 A.D.2d 233, 612 N.Y.S.2d 146, 147 (1st Dept. 1994)*(when the fraud alleged related only to contracting party's alleged intent to breach contractual obligation, cause of action does not lie); *Guterman v. RGA Accessories, Inc., 196 A.D.2d 785, [*21] 602 N.Y.S.2d 116, 117 (1st Dept. 1993); Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (1st Dept. 1988); Lustig v. Anywear, Inc., 145 A.D.2d 328, 535 N.Y.S.2d 694, 695 (1st Dept. 1988); Comtomark, Inc. v. Satellite Communications Network, Inc., 116 A.D.2d 499, 497 N.Y.S.2d 371, 372 (1st Dept. 1986); Trusthouse Forte Management, Inc., v. Garden City Hotel, Inc., 106 A.D.2d 271, 483 N.Y.S.2d 216, 218 (1st Dept. 1984); Spellman v. Columbia Manicure Manufacturing Co., Inc., 111 A.D.2d 320, 489 N.Y.S.2d 304, 307 (2nd Dept. 1985); Locascio v. Aquavella, 185 A.D.2d 689, 586 N.Y.S.2d 78, 79 (4th Dept. 1992).* See also *Papa's-June Music, Inc., v. McLean, 921 F. Supp. 1154, 1160-1161 (S.D.N.Y. 1996); Sudul v. Computer Outsourcing Services, 868 F. Supp. 59, 61-62 (S.D.N.Y. 1994); Vista Co. v. Columbia Pictures Industries, Inc., 725 F. Supp. 1286, 1294 (S.D.N.Y. 1989); D.S. America (East), Inc. v. Chromagrafx Imaging Systems, Inc., 873 F. Supp. 786, 796 (E.D.N.Y. 1995)* (J. Wexler) (dismissing claim which "stated nothing more than breaches of promises of future performance that constitute the express terms of the

contract, not promises [*22] collateral or extraneous to the contract").

In this case, plaintiffs' allegations of fraud and misrepresentation consist of allegations that defendants did not intend to perform their contractual obligations. (Complaint PP82-89, 91.) Since the complaint fails to state a cause of action for fraud against any of the defendants, plaintiffs have failed to show that defendants engaged in tortious activity outside of New York, a requirement of CPLR § 302(a)(3).

Additionally, plaintiffs' fraud claim was not plead with particularity as required by *Fed. R. Civ. P. 9(b)* which requires plaintiffs to plead fraud with specificity by indicating:

> (1) precisely what statements or omissions were made, and in what documents or through what oral representations those statements were made, (2) the time and place of each such statement and the persons responsible for making (or, in the case of omissions, for no making) each such statement, (3) the content of such statements and the manner in which the statements mislead the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Lasky v. Shearson Lehman Brothers, Inc., 139 F.R.D. 597, 598 (S.D.N.Y. 1991)* (citing [*23] *Todd v. Oppenheimer & Co., Inc., 78 F.R.D. 415, 420-421 (S.D.N.Y. 1978));* see also *Cosmas v. Hassett, 886 F.2d 8, 11 (2nd Cir. 1989).*

A number of plaintiffs' allegations are made on information and belief and they do not address actions taken or statements made by any of the defendants with the requisite specificity. (Complaint PP82-89, 91.) Additionally, many of the claims are made against multiple defendants lumped together and fail to distinguish among them. (Id.) See *Luce v. Edelstein, 802 F.2d 49, 54 n.1 (2d Cir. 1986); Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir. 1974),* cert. denied *421 U.S. 976, 44 L. Ed. 2d 467, 95 S. Ct. 1976 (1975).* Accordingly, plaintiffs' claim of fraud does not stand against any of the defendants and CPLR § 302(a)(3) is rendered inapplicable as a basis for asserting personal jurisdiction over the individual defendants. n5

n5 Plaintiffs are barred from moving pursuant to *Fed. R. Civ. P. 60(b)* for relief from the

stipulation of dismissal filed August 18, 1994 because the instant action was initiated on August 31, 1995, more than one year after the entry of the stipulation of dismissal.

*Rule 60(b) of the Fed. R. Civ. P.* states in part: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding. . . ." Since plaintiffs' fraud claims are dismissed, however, plaintiffs' attempt to assert an independent action fails. The stipulation of dismissal entered August 18, 1994 bars all claims which were or could have been asserted in the 1994 litigation.

[*24]

II. Arbitration

As a part of their June 14, 1994 agreement, amended on July 7, 1994, Gidatex and plaintiffs agreed to submit claims to arbitration. Therefore, a determination of whether Gidatex is entitled to a dismissal or stay requires an examination of the Arbitration Act. n6 Title *9 U.S.C. § 3* provides in part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

*9 U.S.C. § 3.* In this case, because the agreement is commercial and not entirely between citizens of the United States, the domestic provisions of the Arbitration Act are supplemented by the Convention on the Recognition of Foreign Arbitral Awards *(9 U.S.C. § 201* et seq.). n7 Article II(3) provides that at the request of one of the parties, the court [*25] shall ". . .refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *9 U.S.C. § 201,* Article II(3).

1996 U.S. Dist. LEXIS 11064, *

n6 Because this Court lacks personal jurisdiction over Filippini, it is not necessary to determine whether the arbitration clause of the July 7, 1994 agreement includes claims against Filippini as an individual.

n7 The Convention has been ratified by both the United States and Italy. *9 U.S.C. § 201,* Article XVI(2).

Plaintiffs' contention that arbitration is inappropriate in this case because the agreement which includes the provision providing for arbitration was induced by fraud is not supported by the controlling precedent. In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967),* the Court examined § 4 of the Arbitration Act and determined that the statutory language does not permit federal courts to consider claims of fraud in the inducement of the contract [*26] generally. Applying these statutory limitations to § 3 of the Act, the Court held that when considering ". . .a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp., 388 U.S. at 404-405.* The Court determined that when an agreement with a provision such as the one at issue here is in place, the arbitrator, not a federal court should hear claims that the agreement was induced by fraud. The federal courts should only become involved when the question focuses directly on whether the arbitration clause was induced by fraud. *Prima Paint Corp., 388 F.2d at 404-405.*

In *First Options of Chicago, Inc. v. Kaplan, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995),* the Court held that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options, 115 S. Ct. at 1924.* Plaintiffs contend that this holding undermines the validity of Prima Paint as precedent and claim that because there is no clear evidence that the parties intended to arbitrate claims of fraud [*27] in the inducement, this Court, as opposed to the arbitrator, must determine the arbitrability issue. Plaintiffs, however, misread the scope of First Options and mischaracterize the issues under consideration in this action as part of the "arbitrability" of dispute. *National Union Fire Insurance Co. v. Belco Petroleum Corp., 1996 U.S. App. LEXIS 15952, 1996 WL 367640 (2nd Cir. 1996).*

"The 'arbitrability' of a dispute comprises the questions of (1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."

*National Union Fire Insurance Co., 1996 U.S. App. LEXIS 15952, 1996 WL 367640.* In First Options, the issue under consideration was whether certain individuals were bound to an arbitration agreement that they did not sign. Here, however, there is no question that Gidatex and plaintiffs signed an agreement which provides for arbitration. Therefore, the question becomes "whether a particular merit-related dispute is arbitrable because it is within the scope of a valid arbitration agreement." *First Options, 115 S. Ct. at 1924.* There is a presumption in favor of arbitration [*28] and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *National Fire Insurance Co., 1996 U.S. App. LEXIS 15952, 1996 WL 367640* at *6.

Plaintiffs have alleged that the inclusion of an "arbitration-in-Italy clause" in the agreement was part of defendants' scheme to induce plaintiffs to withdraw their action and enter into a new agreement which defendants hoped to repudiate on false and contrived pretexts. (Complaint PP60, 98.) The complaint, however, does not demonstrate that the claims of fraudulent inducement and misrepresentation relate only to the arbitration clause, as opposed to the entire agreement. Instead, the complaint alleges fraud in the inducement of the contract generally and thus presents an issue to be considered by the arbitrator, not this Court. *Prima Paint Corp., 388 U.S. at 403-404; National Fire Insurance Co., 1996 U.S. App. LEXIS 15952, 1996 WL 367640.*

Accordingly, under the terms of the agreement between Gidatex and Campaniello, plaintiffs' claims against Gidatex must be submitted to an arbitrator. n8

n8 In her affidavit, Iris S. Richman, plaintiffs' counsel states that she has been advised by Amadeo Travi, an Italian attorney who represented the plaintiffs in the transactions culminating in the disputed documents, that he will not serve as an arbitrator thereunder, even if arbitration were directed by this Court because he believes that it would be improper to do so due to his representation of the plaintiffs in the underlying matter. The record does not, however, include any affidavit from Amadeo Travi stating that this is the case, nor is there any indication that Mr. Travi's prior representation renders his role in the arbitration improper. Often parties name arbitrators of their choosing who in turn select the third arbitrator. A determination that Mr. Travi's refusal to proceed negates the availability of arbitration cannot be based on plaintiffs' counsel's statement.

[*29]

CONCLUSION

This Court lacks personal jurisdiction over Filippini, Sergio, and Raffaele, and therefore the individual defendants' motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(2)* is granted. The motion to dismiss the complaint pursuant to *Fed. R. Civ. P. 9(b)* and *12(b)(6)* made by Gidatex and the Saporiti defendants is granted because plaintiffs have not plead fraud with the requisite particularity and fail under the law of New York to state a cause of action for fraud distinct from a claim of breach of contract. Plaintiffs' claims against Gidatex are also dismissed on the ground that they are subject to mandatory arbitration pursuant to *9 U.S.C. § 3*. n9

n9 In light of these findings it was not necessary to consider defendants' claim that they were entitled to a different forum on the grounds of forum non conveniens.

IT IS SO ORDERED.

Dated: New York, New [*30] York

August 1, 1996

Robert P. Patterson, Jr.

U.S.D.J.

**6**

![WestlawUK logo]

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 1

**European Union Legislation**

Council Regulation (EC) No 44/2001 of 22 December 2000 on Jurisdiction and the recognition and enforcement of judgments in civil and commercial matters

Official Journal L 12, 16/01/2001 p. 1

© ELLIS Publications.

© European Communities.

Current through 8 May 2007

<Image not available in PDF format not available via Offline Print. View on westlaw.com.>

Text outline

Text

Index

Year (Dates)

References

Bibliographic Information

Text

COUNCIL REGULATION (EC) No 44/2001

of 22 December 2000

on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Article 61(c) and Article 67(1) thereof,

Having regard to the proposal from the Commission (1),

Having regard to the opinion of the European Parliament (2),

Having regard to the opinion of the Economic and Social Committee (3),

Whereas:

Copr. © West 2007 No Claim to Orig. Govt. Works

---

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 2

(1) The Community has set itself the objective of maintaining and developing an area of freedom, security and justice, in which the free movement of persons is ensured. In order to establish progressively such an area, the Community should adopt, amongst other things, the measures relating to judicial cooperation in civil matters which are necessary for the sound operation of the internal market.

(2) Certain differences between national rules governing jurisdiction and recognition of judgments hamper the sound operation of the internal market. Provisions to unify the rules of conflict of jurisdiction in civil and commercial matters and to simplify the formalities with a view to rapid and simple recognition and enforcement of judgments from Member States bound by this Regulation are essential.

(3) This area is within the field of judicial cooperation in civil matters within the meaning of Article 65 of the Treaty.

(4) In accordance with the principles of subsidiarity and proportionality as set out in Article 5 of the Treaty, the objectives of this Regulation cannot be sufficiently achieved by the Member States and can therefore be better achieved by the Community. This Regulation confines itself to the minimum required in order to achieve those objectives and does not go beyond what is necessary for that purpose.

(5) On 27 September 1968 the Member States, acting under Article 293, fourth indent, of the Treaty, concluded the Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, as amended by Conventions on the Accession of the New Member States to that Convention (hereinafter referred to as the 'Brussels Convention') (4). On 16 September 1988 Member States and EFTA States concluded the Lugano Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, which is a parallel Convention to the 1968 Brussels Convention. Work has been undertaken for the revision of those Conventions, and the Council has approved the content of the revised texts. Continuity in the results achieved in that revision should be ensured.

(6) In order to attain the objective of free movement of judgments in civil and commercial matters, it is necessary and appropriate that the rules governing jurisdiction and the recognition and enforcement of judgments be governed by a Community legal instrument which is binding and directly applicable.

(7) The scope of this Regulation must cover all the main civil and commercial matters apart from certain well-defined matters.

(8) There must be a link between proceedings to which this Regulation applies and the territory of the Member States bound by this Regulation. Accordingly common rules on jurisdiction should, in principle, apply when the defendant is domiciled in one of those Member States.

(9) A defendant not domiciled in a Member State is in general subject to national rules of jurisdiction applicable in the territory of the Member State of the court seised, and a defendant domiciled in a Member State not bound by this Regulation must remain subject to the Brussels Convention.

(10) For the purposes of the free movement of judgments, judgments given in a Member State bound by this Regulation should be recognised and enforced in another Member State bound by this Regulation, even if the judgment debtor is domiciled in a third State.

(11) The rules of jurisdiction must be highly predictable and founded on the principle that jurisdiction is generally based on the defendant's domicile and jurisdiction must always be available on this ground save in a few well-defined situations in which the subject-matter of the litigation or the autonomy of the parties warrants a different linking factor. The domicile of a legal person must be defined autonomously so as to make the common rules more transparent and avoid conflicts of jurisdiction.

(12) In addition to the defendant's domicile, there should be alternative grounds of jurisdiction based on a close link between the court and the action or in order to facilitate the sound administration of justice.

(13) In relation to insurance, consumer contracts and employment, the weaker party should be protected by rules of jurisdiction more favourable to his interests than the general rules provide for.

(14) The autonomy of the parties to a contract, other than an insurance, consumer or employment contract,

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 3

where only limited autonomy to determine the courts having jurisdiction is allowed, must be respected subject to the exclusive grounds of jurisdiction laid down in this Regulation.

(15) In the interests of the harmonious administration of justice it is necessary to minimise the possibility of concurrent proceedings and to ensure that irreconcilable judgments will not be given in two Member States. There must be a clear and effective mechanism for resolving cases of lis pendens and related actions and for obviating problems flowing from national differences as to the determination of the time when a case is regarded as pending. For the purposes of this Regulation that time should be defined autonomously.

(16) Mutual trust in the administration of justice in the Community justifies judgments given in a Member State being recognised automatically without the need for any procedure except in cases of dispute.

(17) By virtue of the same principle of mutual trust, the procedure for making enforceable in one Member State a judgment given in another must be efficient and rapid. To that end, the declaration that a judgment is enforceable should be issued virtually automatically after purely formal checks of the documents supplied, without there being any possibility for the court to raise of its own motion any of the grounds for non-enforcement provided for by this Regulation.

(18) However, respect for the rights of the defence means that the defendant should be able to appeal in an adversarial procedure, against the declaration of enforceability, if he considers one of the grounds for non-enforcement to be present. Redress procedures should also be available to the claimant where his application for a declaration of enforceability has been rejected.

(19) Continuity between the Brussels Convention and this Regulation should be ensured, and transitional provisions should be laid down to that end. The same need for continuity applies as regards the interpretation of the Brussels Convention by the Court of Justice of the European Communities and the 1971 Protocol (5) should remain applicable also to cases already pending when this Regulation enters into force.

(20) The United Kingdom and Ireland, in accordance with Article 3 of the Protocol on the position of the United Kingdom and Ireland annexed to the Treaty on European Union and to the Treaty establishing the European Community, have given notice of their wish to take part in the adoption and application of this Regulation.

(21) Denmark, in accordance with Articles 1 and 2 of the Protocol on the position of Denmark annexed to the Treaty on European Union and to the Treaty establishing the European Community, is not participating in the adoption of this Regulation, and is therefore not bound by it nor subject to its application.

(22) Since the Brussels Convention remains in force in relations between Denmark and the Member States that are bound by this Regulation, both the Convention and the 1971 Protocol continue to apply between Denmark and the Member States bound by this Regulation.

(23) The Brussels Convention also continues to apply to the territories of the Member States which fall within the territorial scope of that Convention and which are excluded from this Regulation pursuant to Article 299 of the Treaty.

(24) Likewise for the sake of consistency, this Regulation should not affect rules governing jurisdiction and the recognition of judgments contained in specific Community instruments.

(25) Respect for international commitments entered into by the Member States means that this Regulation should not affect conventions relating to specific matters to which the Member States are parties.

(26) The necessary flexibility should be provided for in the basic rules of this Regulation in order to take account of the specific procedural rules of certain Member States. Certain provisions of the Protocol annexed to the Brussels Convention should accordingly be incorporated in this Regulation.

(27) In order to allow a harmonious transition in certain areas which were the subject of special provisions in the Protocol annexed to the Brussels Convention, this Regulation lays down, for a transitional period, provisions taking into consideration the specific situation in certain Member States.

(28) No later than five years after entry into force of this Regulation the Commission will present a report on its

OJ 2001 L12/1
EU: Regulation (EC) No 442/001
Celex No. 301R0044

Page 4

application and, if need be, submit proposals for adaptations.

(29) The Commission will have to adjust Annexes I to IV on the rules of national jurisdiction, the courts or competent authorities and redress procedures available on the basis of the amendments forwarded by the Member State concerned; amendments made to Annexes V and VI should be adopted in accordance with Council Decision 1999/468/EC of 28 June 1999 laying down the procedures for the exercise of implementing powers conferred on the Commission (6),

HAS ADOPTED THIS REGULATION:

CHAPTER I

SCOPE

Article 1

1. This Regulation shall apply in civil and commercial matters whatever the nature of the court or tribunal. It shall not extend, in particular, to revenue, customs or administrative matters.

2. The Regulation shall not apply to:

(a) the status or legal capacity of natural persons, rights in property arising out of a matrimonial relationship, wills and succession;

(b) bankruptcy, proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings;

(c) social security;

(d) arbitration.

3. In this Regulation, the term 'Member State' shall mean Member States with the exception of Denmark.

CHAPTER II

JURISDICTION

Section 1

General provisions

Article 2

1. Subject to this Regulation, persons domiciled in a Member State shall, whatever their nationality, be sued in the courts of that Member State.

2. Persons who are not nationals of the Member State in which they are domiciled shall be governed by the rules of jurisdiction applicable to nationals of that State.

Article 3

1. Persons domiciled in a Member State may be sued in the courts of another Member State only by virtue of the rules set out in Sections 2 to 7 of this Chapter.

2. In particular the rules of national jurisdiction set out in Annex I shall not be applicable as against them.

Article 4

1. If the defendant is not domiciled in a Member State, the jurisdiction of the courts of each Member State shall,

Exhibit A   276

OJ 2001 L 12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 5

subject to Articles 22 and 23, be determined by the law of that Member State.

2. As against such a defendant, any person domiciled in a Member State may, whatever his nationality, avail himself in that State of the rules of jurisdiction there in force, and in particular those specified in Annex I, in the same way as the nationals of that State.

Section 2

Special jurisdiction

Article 5

A person domiciled in a Member State may, in another Member State, be sued:

1. (a) in matters relating to a contract, in the courts for the place of performance of the obligation in question;

(b) for the purpose of this provision and unless otherwise agreed, the place of performance of the obligation in question shall be:

- in the case of the sale of goods, the place in a Member State where, under the contract, the goods were delivered or should have been delivered,

- in the case of the provision of services, the place in a Member State where, under the contract, the services were provided or should have been provided,

(c) if subparagraph (b) does not apply then subparagraph (a) applies;

2. in matters relating to maintenance, in the courts for the place where the maintenance creditor is domiciled or habitually resident or, if the matter is ancillary to proceedings concerning the status of a person, in the court which, according to its own law, has jurisdiction to entertain those proceedings, unless that jurisdiction is based solely on the nationality of one of the parties;

3. in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred or may occur;

4. as regards a civil claim for damages or restitution which is based on an act giving rise to criminal proceedings, in the court seised of those proceedings, to the extent that that court has jurisdiction under its own law to entertain civil proceedings;

5. as regards a dispute arising out of the operations of a branch, agency or other establishment, in the courts for the place in which the branch, agency or other establishment is situated;

6. as settlor, trustee or beneficiary of a trust created by the operation of a statute, or by a written instrument, or created orally and evidenced in writing, in the courts of the Member State in which the trust is domiciled;

7. as regards a dispute concerning the payment of remuneration claimed in respect of the salvage of a cargo or freight, in the court under the authority of which the cargo or freight in question:

(a) has been arrested to secure such payment, or

(b) could have been so arrested, but bail or other security has been given;

provided that this provision shall apply only if it is claimed that the defendant has an interest in the cargo or freight or had such an interest at the time of salvage.

Article 6

A person domiciled in a Member State may also be sued:

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L 12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 6

1. where he is one of a number of defendants, in the courts for the place where any one of them is domiciled, provided the claims are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings;

2. as a third party in an action on a warranty or guarantee or in any other third party proceedings, in the court seised of the original proceedings, unless these were instituted solely with the object of removing him from the jurisdiction of the court which would be competent in his case;

3. on a counter-claim arising from the same contract or facts on which the original claim was based, in the court in which the original claim is pending;

4. in matters relating to a contract, if the action may be combined with an action against the same defendant in matters relating to rights in rem in immovable property, in the court of the Member State in which the property is situated.

Article 7

Where by virtue of this Regulation a court of a Member State has jurisdiction in actions relating to liability from the use or operation of a ship, that court, or any other court substituted for this purpose by the internal law of that Member State, shall also have jurisdiction over claims for limitation of such liability.

Section 3

Jurisdiction in matters relating to insurance

Article 8

In matters relating to insurance, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5.

Article 9

1. An insurer domiciled in a Member State may be sued:

(a) in the courts of the Member State where he is domiciled, or

(b) in another Member State, in the case of actions brought by the policyholder, the insured or a beneficiary, in the courts for the place where the plaintiff is domiciled, or

(c) if he is a co-insurer, in the courts of a Member State in which proceedings are brought against the leading insurer.

2. An insurer who is not domiciled in a Member State but has a branch, agency or other establishment in one of the Member States shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that Member State.

Article 10

In respect of liability insurance or insurance of immovable property, the insurer may in addition be sued in the courts for the place where the harmful event occurred. The same applies if movable and immovable property are covered by the same insurance policy and both are adversely affected by the same contingency.

Article 11

1. In respect of liability insurance, the insurer may also, if the law of the court permits it, be joined in proceedings which the injured party has brought against the insured.

2. Articles 8, 9 and 10 shall apply to actions brought by the injured party directly against the insurer, where such direct actions are permitted.

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 7

3. If the law governing such direct actions provides that the policyholder or the insured may be joined as a party to the action, the same court shall have jurisdiction over them.

**Article 12**

1. Without prejudice to Article 11(3), an insurer may bring proceedings only in the courts of the Member State in which the defendant is domiciled, irrespective of whether he is the policyholder, the insured or a beneficiary.

2. The provisions of this Section shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

**Article 13**

The provisions of this Section may be departed from only by an agreement:

1. which is entered into after the dispute has arisen, or

2. which allows the policyholder, the insured or a beneficiary to bring proceedings in courts other than those indicated in this Section, or

3. which is concluded between a policyholder and an insurer, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same Member State, and which has the effect of conferring jurisdiction on the courts of that State even if the harmful event were to occur abroad, provided that such an agreement is not contrary to the law of that State, or

4. which is concluded with a policyholder who is not domiciled in a Member State, except in so far as the insurance is compulsory or relates to immovable property in a Member State, or

5. which relates to a contract of insurance in so far as it covers one or more of the risks set out in Article 14.

**Article 14**

The following are the risks referred to in Article 13(5):

1. any loss of or damage to:

(a) seagoing ships, installations situated offshore or on the high seas, or aircraft, arising from perils which relate to their use for commercial purposes;

(b) goods in transit other than passengers' baggage where the transit consists of or includes carriage by such ships or aircraft;

2. any liability, other than for bodily injury to passengers or loss of or damage to their baggage:

(a) arising out of the use or operation of ships, installations or aircraft as referred to in point 1(a) in so far as, in respect of the latter, the law of the Member State in which such aircraft are registered does not prohibit agreements on jurisdiction regarding insurance of such risks;

(b) for loss or damage caused by goods in transit as described in point 1(b);

3. any financial loss connected with the use or operation of ships, installations or aircraft as referred to in point 1(a), in particular loss of freight or charter-hire;

4. any risk or interest connected with any of those referred to in points 1 to 3;

5. notwithstanding points 1 to 4, all "large risks" as defined in Council Directive 73/239/EEC (7, as amended by Council Directives 88/357/EEC (8) and 90/618/EEC (9), as they may be amended.

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 8

**Section 4**

**Jurisdiction over consumer contracts**

**Article 15**

1. In matters relating to a contract concluded by a person, the consumer, for a purpose which can be regarded as being outside his trade or profession, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5, if:

(a) it is a contract for the sale of goods on instalment credit terms; or

(b) it is a contract for a loan repayable by instalments, or for any other form of credit, made to finance the sale of goods; or

(c) in all other cases, the contract has been concluded with a person who pursues commercial or professional activities in the Member State of the consumer's domicile or, by any means, directs such activities to that Member State or to several States including that Member State, and the contract falls within the scope of such activities.

2. Where a consumer enters into a contract with a party who is not domiciled in the Member State but has a branch, agency or other establishment in one of the Member States, that party shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that State.

3. This Section shall not apply to a contract of transport other than a contract which, for an inclusive price, provides for a combination of travel and accommodation.

**Article 16**

1. A consumer may bring proceedings against the other party to a contract either in the courts of the Member State in which that party is domiciled or in the courts for the place where the consumer is domiciled.

2. Proceedings may be brought against a consumer by the other party to the contract only in the courts of the Member State in which the consumer is domiciled.

3. This Article shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

**Article 17**

The provisions of this Section may be departed from only by an agreement:

1. which is entered into after the dispute has arisen; or

2. which allows the consumer to bring proceedings in courts other than those indicated in this Section; or

3. which is entered into by the consumer and the other party to the contract, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same Member State, and which confers jurisdiction on the courts of that Member State, provided that such an agreement is not contrary to the law of that Member State.

**Section 5**

**Jurisdiction over individual contracts of employment**

**Article 18**

1. In matters relating to individual contracts of employment, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5.

Copr. © West 2007 No Claim to Orig. Govt. Works

Exhibit A   278

OJ 2001 L12/1
EU: Regulation (EC) No 44/200:
Celex No. 301R0044

Page 10

4. in proceedings concerned with the registration or validity of patents, trade marks, designs, or other similar rights required to be deposited or registered, the courts of the Member State in which the deposit or registration has been applied for, has taken place or is under the terms of a Community instrument or an international convention deemed to have taken place.

Without prejudice to the jurisdiction of the European Patent Office under the Convention on the Grant of European Patents, signed at Munich on 5 October 1973, the courts of each Member State shall have exclusive jurisdiction, regardless of domicile, in proceedings concerned with the registration or validity of any European patent granted for that State;

5. in proceedings concerned with the enforcement of judgments, the courts of the Member State in which the judgment has been or is to be enforced.

Section 7

Prorogation of jurisdiction

Article 23

1. If the parties, one or more of whom is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise. Such an agreement conferring jurisdiction shall be either:

(a) in writing or evidenced in writing; or

(b) in a form which accords with practices which the parties have established between themselves, or

(c) in international trade or commerce, in a form which accords with a usage of which the parties are or ought to have been aware and which in such trade or commerce is widely known to, and regularly observed by, parties to contracts of the type involved in the particular trade or commerce concerned.

2. Any communication by electronic means which provides a durable record of the agreement shall be equivalent to 'writing'.

3. Where such an agreement is concluded by parties, none of whom is domiciled in a Member State, the courts of other Member States shall have no jurisdiction over their disputes unless the court or courts chosen have declined jurisdiction.

4. The court or courts of a Member State on which a trust instrument has conferred jurisdiction shall have exclusive jurisdiction in any proceedings brought against a settlor, trustee or beneficiary, if relations between these persons or their rights or obligations under the trust are involved.

5. Agreements or provisions of a trust instrument conferring jurisdiction shall have no legal force if they are contrary to Articles 13, 17 or 21, or if the courts whose jurisdiction they purport to exclude have exclusive jurisdiction by virtue of Article 22.

Article 24

Apart from jurisdiction derived from other provisions of this Regulation, a court of a Member State before which a defendant enters an appearance shall have jurisdiction. This rule shall not apply where appearance was entered to contest the jurisdiction, or where another court has exclusive jurisdiction by virtue of Article 22.

Section 8

Examination as to jurisdiction and admissibility

Copr. © West 2007 No Claim to Orig. Govt. Works

---

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 9

2. Where an employee enters into an individual contract of employment with an employer who is not domiciled in a Member State but has a branch, agency or other establishment in one of the Member States, the employer shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that Member State.

Article 19

An employer domiciled in a Member State may be sued:

1. in the courts of the Member State where he is domiciled, or

2. in another Member State:

(a) in the courts for the place where the employee habitually carries out his work or in the courts for the last place where he did so, or

(b) if the employee does not or did not habitually carry out his work in any one country, in the courts for the place where the business which engaged the employee is or was situated.

Article 20

1. An employer may bring proceedings only in the courts of the Member State in which the employee is domiciled.

2. The provisions of this Section shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

Article 21

The provisions of this Section may be departed from only by an agreement on jurisdiction:

1. which is entered into after the dispute has arisen; or

2. which allows the employee to bring proceedings in courts other than those indicated in this Section.

Section 6

Exclusive jurisdiction

Article 22

The following courts shall have exclusive jurisdiction, regardless of domicile:

1. in proceedings which have as their object rights in rem in immovable property or tenancies of immovable property, the courts of the Member State in which the property is situated.

However, in proceedings which have as their object tenancies of immovable property concluded for temporary private use for a maximum period of six consecutive months, the courts of the Member State in which the defendant is domiciled shall also have jurisdiction, provided that the tenant is a natural person and that the landlord and the tenant are domiciled in the same Member State,

2. in proceedings which have as their object the validity of the constitution, the nullity or the dissolution of companies or other legal persons or associations of natural or legal persons, or of the validity of the decisions of their organs, the courts of the Member State in which the company, legal person or association has its seat. In order to determine that seat, the court shall apply its rules of private international law;

3. in proceedings which have as their object the validity of entries in public registers, the courts of the Member State in which the register is kept;

Copr. © West 2007 No Claim to Orig. Govt. Works

Exhibit A    279

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 11

**Article 25**

Where a court of a Member State is seised of a claim which is principally concerned with a matter over which the courts of another Member State have exclusive jurisdiction by virtue of Article 22, it shall declare of its own motion that it has no jurisdiction.

**Article 26**

1. Where a defendant domiciled in one Member State is sued in a court of another Member State and does not enter an appearance, the court shall declare of its own motion that it has no jurisdiction unless its jurisdiction is derived from the provisions of this Regulation.

2. The court shall stay the proceedings so long as it is not shown that the defendant has been able to receive the document instituting the proceedings or an equivalent document in sufficient time to enable him to arrange for his defence, or that all necessary steps have been taken to this end.

3. Article 19 of Council Regulation (EC) No 1348/2000 of 29 May 2000 on the service in the Member States of judicial and extrajudicial documents in civil or commercial matters (10) shall apply instead of the provisions of paragraph 2 if the document instituting the proceedings or an equivalent document had to be transmitted from one Member State to another pursuant to this Regulation.

4. Where the provisions of Regulation (EC) No 1348/2000 are not applicable, Article 15 of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters shall apply if the document instituting the proceedings or an equivalent document had to be transmitted pursuant to that Convention.

**Section 9**

Lis pendens - related actions

**Article 27**

1. Where proceedings involving the same cause of action and between the same parties are brought in the courts of different Member States, any court other than the court first seised shall of its own motion stay its proceedings until such time as the jurisdiction of the court first seised is established.

2. Where the jurisdiction of the court first seised is established, any court other than the court first seised shall decline jurisdiction in favour of that court.

**Article 28**

1. Where related actions are pending, in the courts of different Member States, any court other than the court first seised may stay its proceedings.

2. Where these actions are pending, at first instance, any court other than the court first seised may also, on the application of one of the parties, decline jurisdiction if the court first seised has jurisdiction over the actions in question and its law permits the consolidation thereof.

3. For the purposes of this Article, actions are deemed to be related where they are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings.

**Article 29**

Where actions come within the exclusive jurisdiction of several courts, any court other than the court first seised shall decline jurisdiction in favour of that court.

**Article 30**

Copr. © West 2007 No Claim to Orig. Govt. Works

---

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 12

For the purposes of this Section, a court shall be deemed to be seised:

1. at the time when the document instituting the proceedings or an equivalent document is lodged with the court, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have service effected on the defendant, or

2. if the document has to be served before being lodged with the court, at the time when it is received by the authority responsible for service, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have the document lodged with the court.

**Section 10**

Provisional, including protective, measures

**Article 31**

Application may be made to the courts of a Member State for such provisional, including protective, measures as may be available under the law of that State, even if, under this Regulation, the courts of another Member State have jurisdiction as to the substance of the matter.

**CHAPTER III**

**RECOGNITION AND ENFORCEMENT**

**Article 32**

For the purposes of this Regulation, 'judgment' means any judgment given by a court or tribunal of a Member State, whatever the judgment may be called, including a decree, order, decision or writ of execution, as well as the determination of costs or expenses by an officer of the court.

**Section 1**

Recognition

**Article 33**

1. A judgment given in a Member State shall be recognised in the other Member States without any special procedure being required.

2. Any interested party which raises the recognition of a judgment as the principal issue in a dispute may, in accordance with the procedures provided for in Sections 2 and 3 of this Chapter, apply for a decision that the judgment be recognised.

3. If the outcome of proceedings in a court of a Member State depends on the determination of an incidental question of recognition that court shall have jurisdiction over that question.

**Article 34**

A judgment shall not be recognised:

1. if such recognition is manifestly contrary to public policy in the Member State in which recognition is sought;

2. where it was given in default of appearance, if the defendant was not served with the document which instituted the proceedings or with an equivalent document in sufficient time and in such a way as to enable him to arrange for his defence, unless the defendant failed to commence proceedings to challenge the judgment when it was possible for him to do so;

3. if it is irreconcilable with a judgment given in a dispute between the same parties in the Member State in

Copr. © West 2007 No Claim to Orig. Govt. Works

*7*

LEXSEE 2005 US DIST. LEXIS 12397

**FREEPLAY MUSIC, INC., Plaintiff, -v- COX RADIO, INC., CUMULUS MEDIA, INC., ENTERCOM COMMUNICATIONS CORP., BEASLEY BROADCAST GROUP, INC., CITADEL BROADCASTING CORP., and VIACOM INC.,** Defendants.

**04 Civ. 5238 (GEL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2005 U.S. Dist. LEXIS 12397*

**June 22, 2005, Decided**
**June 23, 2005, Filed**

**SUBSEQUENT HISTORY:** Complaint dismissed at, in part *Freeplay Music, Inc. v. Cox Radio, Inc., 2005 U.S. Dist. LEXIS 12402 (S.D.N.Y., June 22, 2005)*

**DISPOSITION:** [*1] Defendant's motion to dismiss for lack of personal jurisdiction granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, the owner of copyrights in certain musical compositions and sound recordings, sued defendants, corporate owners of various radio stations, charging violations of copyright and related claims. One of the defendants, a licensee which was incorporated in Delaware with its principal place of business in Florida, moved to dismiss for lack of personal jurisdiction.

**OVERVIEW:** Defendant's purchases of programming and licenses to broadcast copyrighted materials and its soliciting advertising for its stations in New York were insufficient to justify general jurisdiction. Defendant's stock buy-back venture was limited in purpose and temporary in duration and did not create a legal presence in New York. Neither defendant's New York credit facility nor web casts from a distant state supported a finding of general jurisdiction. The alleged contacts, taken singly or together, were insufficient to amount to doing business in New York under *N.Y. C.P.L.R. § 301*. As for jurisdiction under *N.Y. C.P.L.R. § 302(a)(1)*, the allegedly infringing conduct did not arise out of New York business transactions, defendant's contractual contacts were insufficient, and defendant did not transact business in New York when it simulcast its radio programming. As for § 302(a)(2), the websites were not

created nor maintained in New York. As for § 302(a)(3), there was no allegation that the unlicensed use took place in New York or that New York residents accessed the web casts. Plaintiff's economic loss was only a consequence of the conduct not the injury itself.

**OUTCOME:** The court granted defendant's motion to dismiss for lack of personal jurisdiction.

**COUNSEL:** Gabriel Fischbarg, Toptani Law Offices, New York, NY, for Plaintiff.

Bruce P. Keller, Debevoise & Plimpton LLP, New York, NY, for Defendant Beasley Broadcast Group, Inc.

**JUDGES:** GERARD E. LYNCH, United States District Judge.

**OPINION BY:** GERARD E. LYNCH

**OPINION:**

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge:

Freeplay Music, Inc. ("Freeplay"), the owner of copyrights in certain musical compositions and sound recordings, brings this action against defendants, corporate owners of various radio stations, charging violations of copyright and related claims. In a separate opinion issued this day, the Court grants in part and denies in part a motion to dismiss for failure to state a claim by all defendants. This opinion addresses the motion to dismiss for lack of personal jurisdiction by one defendant, Beasley Broadcast Group, Inc. ("Beasley").

Freeplay alleges that Beasley's contacts with New York are sufficient to support personal jurisdiction over it. Beasley argues that Freeplay's conclusory allegations merely parrot the relevant statutory language, and that the actual facts alleged in the complaint are facially [*2] insufficient to support jurisdiction. n1 For the reasons that follow, Beasley's motion will be granted. Freeplay's request for jurisdictional discovery regarding Beasley's contacts with New York is denied.

> n1 Freeplay's memorandum in opposition to Beasley's motion contains additional allegations not stated in its complaint. Although a motion to dismiss for lack of personal jurisdiction is normally decided based on the pleadings, the Court considers the additional allegations here in the interests of fairness and of a full and efficient consideration of the jurisdictional issues in this case.

**BACKGROUND**

Freeplay is a New York corporation which creates musical compositions and sound recordings. Freeplay alleges that Beasley "produced, exploited and distributed in interstate commerce certain radio programming containing certain of [Freeplay's] compositions and sound recordings," when Beasley broadcast Freeplay's musical works "synchronized" with other audio works. (Compl. P17; P. 12(b)(6) Mem. at 3.) Freeplay [*3] holds the copyright registrations for the 155 musical compositions and sound recordings at issue in this action. (Compl. P15; see Compl. Exs. 1-9.) Freeplay contracted with Broadcast Music, Inc. ("BMI"), a performing rights society, to license permission to perform these compositions and recordings on Freeplay's behalf. (P. 12(b)(6) Mem. at 6.) Freeplay argues that although Beasley is licensed by BMI to perform the Freeplay musical works in question, that license does not grant Beasley the necessary "synchronization rights" that would allow Beasley to use Freeplay's musical works in the manner alleged. (P. 12(b)(6) Mem. at 3; Fischbarg 12(b)(6) Decl. P3, Ex. B.) See generally *Freeplay Music, Inc. v. Cox Radio, Inc., 2005 U.S. Dist. LEXIS 12402, No. 04 Civ. 5238 (GEL), 2005 WL    (S.D.N.Y. June 22, 2005).*

Beasley is a Delaware corporation with its principal place of business in Naples, Florida. (Compl. P8.) Beasley "produces, distributes, sell[s] and otherwise commercially exploit[s] radio programming" at its 41 radio stations. (Compl. P8; Fischbarg 12(b)(6) Decl. Ex. F.) Beasley alleges, and Freeplay does not dispute, that it does not have an office or employees in New York, that it does not [*4] own or operate a radio station in New York, and that none of its stations' over-the-air broadcast signals can reach New York. (Beasley Decl. P7.) Several of Beasley's radio stations, however, have websites accessible in New York through which the stations simulcast their radio broadcasts. (P. Mem. 3; Fischbarg Decl. P6, Ex. E.)

In addition to Beasley's websites, Freeplay alleges that Beasley has several other forms of contact with New York. Beasley radio stations syndicate radio programming produced in New York such as "The Howard Stern Radio Show," "Imus in the Morning," "ABC News," and "Bloomberg Radio News." (Fischbarg Decl. P3, Ex. B.) Beasley executives travel to New York approximately four times per year to meet with investment bankers. (P. Mem. 1.) Beasley executives have also spoken at radio industry conferences and seminars in New York at least six times since 2002. (Id. at 2.) New York companies purchase advertising time on Beasley radio stations. (Id.) Beasley also makes payments to performing rights societies based in New York, such as BMI and the American Society of Composers, Authors, and Publishers, for licenses to perform certain musical works. (Id.) Beasley [*5] has contracted with the New York investment bank Harris Nesbitt in connection with a $ 25 million stock buy-back scheduled to be completed within the next year. (Id. at 1-2, citing D. Mem. 4.) In March 2004, Beasley announced the completion of a $ 225 million revolving credit facility, funded by a consortium of lenders, and jointly arranged by two New York banks, Harris Nesbitt and Bank of New York. (Id.)

**DISCUSSION**

**I. Legal Standard**

On a motion to dismiss for lack of personal jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(2)*, the plaintiff bears the burden to establish jurisdiction. *In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).* Where no jurisdictional discovery has been conducted, the plaintiff need only establish a prima facie case, and allegations of jurisdictional fact must be construed in the light most favorable to the plaintiff. *CutCo Indus. Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).* The motion must be denied if those allegations suffice as a matter of law. *Magnetic Audiotape, 334 F.3d at 206.*

A federal court [*6] sitting in diversity may exercise jurisdiction over a foreign defendant if the defendant is amenable to process under the law of the forum state. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 105, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).* In New York, a court may

exercise general jurisdiction over a non-domiciliary under New York Civil Practice Laws and Rules ("C.P.L.R.") *§ 301*, and long-arm jurisdiction under C.P.L.R. *§ 302*. The exercise of personal jurisdiction must also comport with constitutional due process requirements under *International Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*. *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 37 (2d Cir. 2001)*.

II. General Jurisdiction in *New York: C.P.L.R. § 301*

Under C.P.L.R. *§ 301*, a New York court may exercise jurisdiction over a defendant "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its presence in the state." *Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir.1998)*. "A defendant [*7*] is doing business such that jurisdiction pursuant to *§ 301* is appropriate if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Mantello v. Hall, 947 F. Supp. 92, 97 (S.D.N.Y. 1996)*, quoting *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)*. This standard has been described as "stringent," because a defendant who is found to be doing business in New York in a permanent and continuous manner "may be sued in New York on causes of action wholly unrelated to acts done in New York." *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001)*, quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 198 (2d Cir. 1990)*.

Courts have relied on the following "traditional indicia" when "deciding whether a foreign corporation is doing business in New York . . .: (1) the existence of an office in New York; (2) the solicitation of business in New York; (3) the existence of bank accounts or other property in New York; and (4) presence of employees of the foreign defendant [*8*] in New York." *Mantello, 947 F. Supp. at 97*, citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)*. Freeplay contends that its allegations regarding Beasley's activity demonstrate Beasley's legal presence in New York, even though Beasley has no office in New York, and no employees working on a regular basis in New York. Freeplay's allegations, however, do not show that Beasley has a permanent or continuous presence in New York sufficient to justify a finding of general jurisdiction.

Beasley's licenses and radio programming purchases from New York corporations are insubstantial activity to warrant general jurisdiction in New York. New York courts have held that "obtaining licenses is not 'doing business'" for the purposes of general jurisdiction.

*Mantello, 947 F. Supp. at 98*. Further, "the purchase of goods from New York by a defendant, even if on large scale, would not, in an of itself, amount to 'doing business' within the state." *Agency Rent A Car System, Inc v. Grand Rent A Car Corp., 916 F. Supp. 224, 229 (E.D.N.Y. 1996)*, rev'd on other grounds, *98 F.3d 25 (2d Cir. 1996)*. [*9*] Therefore, Beasley's purchases of programming and licenses to broadcast copyrighted materials are insufficient to justify general jurisdiction.

Similarly, Freeplay's allegation that Beasely solicits advertising for its radio stations from New York companies reflects a mere business relationship insufficient to confer general jurisdiction. *Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 155 (S.D.N.Y. 2004)*. Solicitation of business contracts can reach a level sufficient to support general jurisdiction only through "extensive conduct directed toward or occurring in New York." *Id. at 150*. Even actual advertising within New York is not considered to reach the level of substantial solicitation that would suffice for general jurisdiction. See, e.g. *Muollo v. Crestwood Vill. Inc., 155 A.D.2d 420, 547 N.Y.S.2d 87, 88 (2d Dept. 1989)* (finding defendant's advertisements in the New York Times and on the radio insufficient to support personal jurisdiction); see also *Holness v. Maritime Overseas Corp., 251 A.D.2d 220, 676 N.Y.S.2d 540, 543 (1st Dept. 1998)* ("New York has no jurisdiction over a foreign defendant company whose only contacts with New York are advertising [*10*] and marketing activities plus representatives' occasional visits to New York."). Freeplay's allegations do not suggest that Beasley solicited advertising from local New York businesses, or advertising that was directed toward a New York audience, as opposed to advertising from national companies incorporated or headquartered in New York. Freeplay's allegation that Beasley solicits business from New York companies does not show that Beasley solicited that business in New York, or that the solicitation was extensive or substantial. Thus, Beasley's advertising contracts with New York companies are insufficient to justify general jurisdiction.

Freeplay also alleges (and Beasley acknowledges) that Beasley has a contract with the New York bank Harris Nesbitt for the purposes of a $ 25 million stock buy-back. Regarding the stock buy-back, New York courts "accord[] foreign corporations substantial latitude" in connection with management of their securities on New York-based stock exchanges without subjecting themselves to New York jurisdiction for unrelated occurrences. *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 97 (2d. Cir. 2000)*; see also *Reers, 320 F. Supp. 2d at 156* [*11*] ("The fact that [defendant's] stock may be purchased in New York, and that [defendant] retains New York-based market makers to assist in its sales of stock, is another important factor but is insufficient to

2005 U.S. Dist. LEXIS 12397, *

confer general jurisdiction."). Beasley's stock buy-back venture is limited in purpose and temporary in duration such that it does not create legal presence in New York.

Bank accounts can be grounds for general jurisdiction because they are a permanent locus of property or assets within the state. However, a "bank account[] standing alone cannot create jurisdiction unless [it is] used for 'substantially all' of [the defendant's] business." Id. n2 Freeplay alleges in a conclusory manner that Beasley runs its "day-to-day operations" through a revolving credit facility jointly administered by Harris Nesbitt and the Bank of New York (P. Mem. 2), but fails to make any specific allegations as to the role the credit facility plays in Beasley's business. By definition, however, a "credit facility" is a financing arrangement, not an operational bank account. See generally GE Commercial Finance Corporate Lending, Frequently Asked Questions, at http://www.gelending. [*12] com/Clg/Resources/lendingFAQs.html.    Plaintiff's allegation thus appears to assert, at most, that Beasley's "day-to-day operations" are financed entirely by borrowing through this credit facility, and not that its ordinary payroll and checking transactions are performed through the credit facility. Generally, "[a] single financing arrangement, such as [a] credit facility, is insufficient to constitute the continuous and systematic activity required to warrant the exercise of general personal jurisdiction." *Int'l Telecom, Inc. v. Generadora Electrica del Oriente S.A., 2002 U.S. Dist. LEXIS 9452, No. 00 Civ. 8695 (WHP), 2002 WL 465291, at \*2 (S.D.N.Y. 2002).* Therefore, Freeplay's allegation regarding Beasley' credit facility is insufficient to support a finding of general jurisdiction. n3

n2 Factors that have led courts to conclude that a bank account is a "substantial" part of a defendant's business include: (1) receipt and deposit of substantial portion of company revenue, (2) use for payment of employees, (3) use for payment of expenses, and (4) assistance from bank personnel in carrying out company business. *United Rope Distrib., Inc. v. Kimberly Line, 785 F. Supp. 446, 450-451 (S.D.N.Y. 1992).*
[*13]

n3 Further, Beasley's relationship to Harris Nesbitt and the Bank of New York via the credit facility does not amount to the type of true principal/agent relationship that, in other contexts, might serve as a basis for general jurisdiction. To be considered an "agent," the banks "must be primarily employed by the defendant and not engaged in similar services for

other clients." *Jacobs, 160 F. Supp. 2d at 737.* Neither of these conditions exist in this case. Hence, the relationship between Beasley and the banks cannot serve as a basis for general jurisdiction.

Freeplay also alleges that Beasley's radio broadcasts are available in New York via their websites. However, "the fact that a foreign corporation has a website accessible to New York is insufficient to confer jurisdiction under C.P.L.R. § 301." *Spencer Trask Ventures, Inc. v. Archos S.A., 2002 U.S. Dist. LEXIS 4396, No. 01 Civ. 1169 (LAP), 2002 WL 417192, at \*6 (S.D.N.Y. Mar. 18, 2002).* Unlike a conventional radio station that requires a nearby physical presence in order to broadcast to a given geographical region, a webcast can be [*14] transmitted to a distant state without any further indicia of permanence in that state such as an office or employees. "Moreover, even if such an exercise of jurisdiction were proper under § 301, it would not be permissible under the *Due Process Clause* [of the *Fourteenth Amendment to the U.S. Constitution*] absent, at a minimum, an allegation that . . . the website was purposefully directed toward New York." *Drucker Cornell v. Assicurazioni Generali S.p.A. Conso., 2000 U.S. Dist. LEXIS 2922, No. 97 Civ. 2262 (MBM), 2000 WL 284222, at \*2 (S.D.N.Y. Mar. 16, 2000).*

It is undisputed that Beasley's radio stations, business premises, and employees are all located outside New York, and that the broadcast signals from none of its stations are heard in New York. The occasional and insubstantial contacts alleged by plaintiff, taken singly or together, are insufficient to amount to "doing business" in New York. Accordingly, Freeplay fails to allege any facts that justify general jurisdiction over Beasley.

III. New York's Long-Arm Statute: C.P.L.R. § 302

A. Transacting Business in *New York: C.P.L.R. § 302(a)(1)*

Under C.P.L.R. § 302(a)(1), New York courts have specific jurisdiction over [*15] "any non-domiciliary [who] transacts any business within the state or contracts anywhere to supply goods or services in the state." "A nondomiciliary 'transacts business' under C.P.L.R. § 302(a)(1) when he purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo, 806 F.2d at 365* (internal citations omitted). The "ultimate determination" as to whether a foreign defendant "transacts business" in New York is made based on the totality of the circumstances. *Agency Rent A Car, 98 F.3d at 29.* The Second Circuit has said that a "variety of factors" may be considered in making this

determination, including: (1) whether the defendant has an on-going contractual relationship with a New York corporation, (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract relationship; (3) what the choice-of-law clause is in any such contract; and (4) whether the contract requires franchises to send notices [*16] and payments into the forum state or subjects them to supervision by the corporation in the forum state. Id. "Cumulative minor activities that, individually, may be insufficient, may suffice . . . as long as the cumulative effect creates a significant presence within the state." *O'Brien v. Hackensack Univ. Med. Ctr., 305 A.D.2d 199, 760 N.Y.S.2d 425, 427 (1st Dept. 2003).* Jurisdiction is only proper under this statutory provision where the cause of action "arises out of the subject matter of the business transacted." *Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000).* "A suit will be deemed to have arisen out of a party's activities in New York if there is an 'articulable nexus,' or 'substantial relationship,' between the claims asserted and the actions that occurred in New York." *Henderson v. I.N.S., 157 F.3d 106, 123 (2d Cir. 1998)* (internal citations omitted).

Individually, each of Freeplay's allegations with respect to Beasley's relationships with New York enterprises might not necessarily be sufficient to support a finding that Beasley transacts business in New York. See, e.g., *J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 551 n.3 (S.D.N.Y. 2001)* [*17] (finding that defendant did not transact business in New York even though defendant held a New York bank account and had various other business communications with New York parties). Taken together, however, Freeplay's allegations could show that Beasley has "on-going contractual relationship[s] with New York corporation[s]," and could therefore support a finding that Beasley transacts business in New York. *Agency Rent A Car, 98 F.3d at 29.*

Nevertheless, jurisdiction fails under *§ 302(a)(1)* because the infringing conduct in question cannot be said to have arisen out of these business transactions. "For a tort claim to arise out of transaction of business in New York, the connection between the transaction and the claim must be direct." *Mantello, 947 F. Supp. at 100.* No relationship exists between Beasley's business transactions in New York and the alleged copyright infringement. Therefore, Beasley's contractual contacts with New York are not a proper basis for jurisdiction under C.P.L.R. *§ 302(a)(1).*

The case is different with respect to Beasley's maintenance of a website through which internet users in New York could access the programming [*18] of at least some of Beasley's radio stations. Freeplay's claims arise from the production and broadcast of such programming. Accordingly, if the maintenance of such websites constitute their transaction of business in New York, Freeplay's claims would have a significant nexus with those transactions.

The internet has complicated questions of personal jurisdiction. Although Second Circuit case law provides little guidance on this subject, Judge Sweet has aptly summarized the state of the law as it has developed around the country:

> The courts have identified a spectrum of cases involving a defendant's use of the internet. At one end are cases where the defendant makes information available on what is essentially a 'passive' web site. This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases [*19] in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction.

*Citigroup, 97 F. Supp. 2d at 565* (citations omitted). Although this "sliding scale" model provides a useful guide to how courts have approached such claims in the recent past, it does not amount to a separate framework for analyzing internet-based jurisdiction, and traditional statutory and constitutional principles remain the touchstone of the inquiry. See *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C., 297 F. Supp. 2d 1154, 1160-61 (W.D. Wisc. 2004)* (rejecting notion that sliding scale framework represents a "specialized test" for internet jurisdiction, but finding that "the website's level of interactivity may be one component of a determination whether a defendant has availed itself purposefully of the benefits or privileges of the forum state"); *Winfield Collection, Ltd. v. McCauley, 105 F. Supp. 2d 746, 750 (E.D. Mich. 2000)* ("The ultimate question can still as readily be answered by [*20]

determining whether the defendant did, or did not, have sufficient 'minimum contacts' in the forum state.").

Beasley's alleged broadcast of sound compositions over its stations' websites cannot serve as a basis for jurisdiction under *§ 302(a)(1)*. Although there may be interactive elements to the websites, the simulcasts of the radio broadcasts are as passive an enterprise as are the radio broadcasts themselves. See *Realuyo v. Villa Abrille, 2003 U.S. Dist. LEXIS 11529, No. 01 Civ. 10158 (JGK), 2003 WL 21537754, at *6 (S.D.N.Y. July 8, 2003)* (finding that the "sheer availability" of an allegedly defamatory article on the defendant's website, "where it can be downloaded in New York at no cost" could not be considered a transaction of business sufficient to sustain jurisdiction under either *C.P.L.R. § 302(a)(1)* or due process). Freeplay also fails to allege that New York residents ever accessed Beasley websites for the purposes of listening to Beasley radio station simulcasts. It stretches the meaning of "transacting business" too far to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in [*21] that state, without some evidence or allegation that commercial activity in that state actually occurred or was actively sought. Cf. *Citigroup, 97 F. Supp. 2d at 566* (finding personal jurisdiction where bank not only maintained website equipped to take loan applications and provide online chat with bank representatives, but also engaged in direct mail solicitation of New York businesses). Therefore, Beasley does not transact business in New York when it simulcasts its radio programming via its websites, and is not subject to jurisdiction under *§ 302(a)(1)*.

B. Tortious Action Within *New York: C.P.L.R. § 302(a)(2)*

Alternatively, under *C.P.L.R. § 302(a)(2)*, a foreign defendant may be subject to personal jurisdiction in New York if he "commits a tortious act within the state." New York courts have interpreted the statutory language "within the state" literally, such that jurisdiction is only proper over a defendant who commits a tortious act when the defendant is physically present in the state. See *Bensusan Restaurant Corp. v. King, 126 F.3d 25, 28 (2d. Cir. 1997)* ("The official Practice Commentary to C.P.L.R. § 302 explains that 'if a New Jersey [*22] domiciliary were to lob a bazooka shell across the Hudson River at Grant's tomb, [New York case law] would appear to bar the New York courts from asserting personal jurisdiction over the New Jersey domiciliary in an action by an injured New York plaintiff.'"). In copyright claims, *§ 302(a)(2)* jurisdiction exists only when the allegedly infringing work is offered, displayed or sold in New York. *Mantello, 947 F. Supp. at 101*.

It appears that Freeplay means to allege that because the infringing sound compositions were broadcast via Beasley websites, they were made available in New York such that jurisdiction under *C.P.L.R. § 302(a)(2)* is appropriate. However, "although it is in the very nature of the internet that the allegedly infringing [material] contained in those web sites can be viewed anywhere, this does not mean that the infringement occurred everywhere." *Citigroup, 97 F. Supp. 2d at 567*. "Courts have held that in the case of web sites displaying infringing [material] the tort is deemed to be committed where the web site is created and/or maintained. *Id. at 567*; see also *Bensusan, 126 F.3d at 29* (holding [*23] that a jazz club in Missouri with the same name as a famous jazz club in New York was not to be subject to jurisdiction under *§ 302(a)(2)* on ths basis of its website since the website was created and maintained in Missouri). Freeplay makes no assertions that the websites were created or maintained in New York, and thus, Beasley is not subject to jurisdiction under *§ 302(a)(2)*.

C. Tortious Action Outside *New York: C.P.L.R. § 302(a)(3)*

Under *C.P.L.R. § 302(a)(3)*, a foreign defendant may be subject to personal jurisdiction in New York if he "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." "Courts determining whether there is injury in New York sufficient to warrant *§ 302(a)(3)* jurisdiction must generally apply a 'situs-of-injury' test, . . . locating the 'original event which caused the injury.'" *DiStefano v. Carozzi, Inc., 286 F.3d 81, 84 (2d Cir. 2001)*. The original event is "distinguished [both] from the initial tort [and] from the [*24] final economic injury." Id. For New York courts to have jurisdiction over a tortfeasor outside of New York, the first injury resulting from the tort must be felt inside New York. See, e.g., *Hermann v. Sharon Hosp., Inc., 135 A.D.2d 682, 522 N.Y.S.2d 581, 583 (2d Dept. 1987)* (finding that the first injury was felt outside of New York when a New York plaintiff received negligent medical treatment in Connecticut, even though the plaintiff continued to feel the injury when she returned to New York).

Freeplay has alleged that Beasley used its copyrighted sound recordings and musical compositions without the requisite "synchronization license." In cases of commercial torts, "the place of injury will usually be located where the 'critical events associated with the dispute took place.'" *Rolls-Royce Motors, Inc. v. Charles Schmitt & Co., 657 F. Supp. 1040, 1054*. In this case, the "critical events" are Beasley's alleged unlicensed use of

Freeplay's recordings and compositions. Yet, Freeplay has not alleged that the Beasley's unlicensed use took place in New York, or even that New York residents accessed Beasley's webcasts and listened to the infringing sound performances. [*25] Freeplay claims only economic loss as a result of the alleged unlicensed use of their copyrighted material. Any economic loss suffered, however, is only a consequence of the injurious unlicensed use and is not the injury itself. See *Plunket v. Doyle, 2001 U.S. Dist. LEXIS 2001, No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *3 (S.D.N.Y. Feb. 22, 2001)* (finding a New York copyright holder is injured where the infringing use occurred, and "the mere fact that the plaintiff resides in New York and therefore ultimately experiences a financial loss there is not a sufficient basis for jurisdiction under § 302(a)(3)").

Therefore, jurisdiction under C.P.L.R. *§ 302(a)(3)* is not justified.

**CONCLUSION**

Defendant's motion to dismiss for lack of personal jurisdiction is granted.

SO ORDERED.

Dated: New York, New York

June 22, 2005

GERARD E. LYNCH

United States District Judge

Exhibit A  288