# EXHIBIT A-17

# 16

LEXSEE 2003 US DIST. LEXIS 1424

**HELGA VARNELO, as Personal Representative of the Estate of STANISLAV VARNELO, Deceased, Plaintiff, -against- EASTWIND TRANSPORT, LTD., CHARM NAVIGATION, LTD., & MAYFLOWER SHIP MANAGEMENT CORP., Defendants.**

**02 Civ. 2084 (KMW)(AJP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 1424*

**February 3, 2003, Decided**

**SUBSEQUENT HISTORY:** Adhered to, On reconsideration by *Varnelo v. Eastwind Transp., LTD., 2004 U.S. Dist. LEXIS 766* (S.D.N.Y., Jan. 23, 2004)

**DISPOSITION:** Magistrate recommended that defendant's motion to dismiss be granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, the personal representative of the estate of decedent, filed suit against defendant ship owners and operators under the Jones Act, *28 U.S.C.S. § 688* et seq., and the Death On the High Seas Act, *46 U.S.C.S. § 761* et seq., alleging that defendants negligently caused the decedent's death aboard ship while in Chinese territorial waters. One owner moved to dismiss on forum non conveniens grounds. The matter was referred to a magistrate.

**OVERVIEW:** The decedent, a Russian citizen residing in Kaliningrad, Russian Federation, was employed as a "boatswain" or "bosun" aboard defendants' ship. The decedent fell overboard and drowned while the ship was off the port of Shanghai, China. At the time of the accident, the ship's "pilot ladder" was being installed in order to take a Chinese river pilot aboard and proceed to Jiangjin, China. Defendants asserted that the accident was the decedent's fault. The personal representative alleged that the vessel was unseaworthy in that the pilot ladder was not safe for its intended use and that defendants were negligent in not securing the pilot ladder in a safe manner. The magistrate found that the private and public interest factors, balanced together, weighed strongly in favor of trial of the action in Russia. The magistrate reasoned that the decedent was a Russian citizen and was hired in Kaliningrad. Moreover, all of the

relevant witnesses, including the decedent's shipmates, were Russian nationals. Further, no evidence as to causation or damages appeared to be located in New York. Finally, defendants had consented to jurisdiction in Russia.

**OUTCOME:** The magistrate recommended that the owner's forum non conveniens motion should be granted and that the case be dismissed without prejudice.

**COUNSEL:** [*1]  For Helga Varnelo, PLAINTIFF: Paul S Edelman, Kreindler & Kreindler, New York NY, USA.

For Eastwind Transport, Ltd, Charm Navigation, Ltd, Mayflower Shop Management Corp, DEFENDANTS: Joseph T Stearns, Kenny & Stearns, New York NY, USA.

**JUDGES:** Andrew J. Peck, United States Magistrate Judge.

**OPINION BY:** ANDREW J. PECK

**OPINION:**

REPORT AND RECOMMENDATION

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Kimba M. Wood, United States District Judge:**

Plaintiff Helga Varnelo, as personal representative of the Estate of Stanislav Varnelo, deceased (the "decedent"), n1 brought this action against defendants Eastwind Transport, Ltd. ("Eastwind"), Charm

Case 1:07-cv-03580-DLC    Document 23-18    Filed 06/12/2007    Page 4 of 21

Page 2
2003 U.S. Dist. LEXIS 1424, *

Navigation, Ltd. ("Charm"), and Mayflower Ship Management Corp. ("Mayflower"), alleging that defendants, as owners or operators of the ship "Yellowstone," negligently caused Stanislav's death aboard ship while in Chinese territorial waters. (Dkt. No. 1: Compl. PP 2-18.) Eastwind has moved to dismiss on forum non conveniens ("FNC") grounds. (Dkt. No. 13.)

n1 To distinguish between Mr. and Mrs. Varnelo, the Court will refer to them by their first names; no disrespect is intended.

[*2]

Stanislav Varnelo was, and Helga is, a Russian citizen residing in Kaliningrad, Russian Federation. Stanislav was hired in Kaliningrad. His accident took place aboard ship in Chinese waters. All of the relevant witnesses, including Stanislav's shipmates, are Russian nationals. While Eastwind and possibly the other defendants are located in New York, they all have stipulated to suit in Russia. Further, no evidence as to causation or damages appears to be located in New York. In short, it would be unfair to require New York's citizens to serve as jurors in an action so lacking a connection to this forum. By contrast, Russia has a strong interest in protecting its own seamen hired in Russia, and their Russian widows.

Accordingly, for the reasons set forth below, Eastwind's motion to dismiss on forum non conveniens grounds should be **GRANTED**.

**FACTS**

**Stanislav Varnelo's Employment on the Yellowstone and the Accident that Caused His Death**

Stanislav Varnelo was a Russian citizen residing in Kaliningrad, Russian Federation, and died at the age of 66. (Dkt. No. 14: Arralde 7/1/02 Aff. P 2 & Exs. A & B.) His surviving wife, plaintiff Helga Varnelo, is now 65, [*3] a Russian citizen residing in Kaliningrad. (Arralde 7/1/02 Aff. P 2 & Ex. A.)

Stanislav was employed as a "boatswain" or "bosun" aboard defendants' vessel Yellowstone. (Dkt. No. 1: Compl. P 2; Dkt. No. 3: Answer P 2; Dkt. No. 15: Lekkos 7/1/02 Aff. P 4.) He was hired in Kaliningrad, Russian Federation, and employed pursuant to a "Service Agreement" dated March 3, 1999 between the ship's "crewing agent" ("Frost Crewing (Cyprus) Company" and "Reftransflot Crewing Ltd.") and Mayflower, the ship's "operator." (Dkt. No. 15: Lekkos 7/1/02 Aff. P 4 & Ex. A; Compl. P 12; Dkt. No. 34: Eastwind Resp. to Pl's Interrog. No. 1.)

It is undisputed that on October 17, 2001, Stanislav fell overboard and drowned while the Yellowstone was off the port of Shanghai, China. (Compl. PP 13-18; Dkt. No. 15: Lekkos 7/1/02 Aff. P 7.) At the time of the accident, the ship's "pilot ladder" was being installed in order to take a Chinese river pilot aboard and proceed to Jiangjin, China. (Compl. P 13; Lekkos 7/1/02 Aff. P 7.) n2 Despite rescue efforts by the Yellowstone's crew and Chinese authorities, Stanislav's "body was never found." (Lekkos 7/1/02 Aff. P 8.) n3

n2 Both "Decedent and the ships's pilot fell into the sea." (Compl. P 14; accord, Lekkos 7/1/02 Aff. P 7.)

[*4]

n3 Stanislav's Russian death certificate, issued on June 5, 2002 pursuant to a court proceeding in Kaliningrad, lists his date of death as October 17, 2001 in the city of Jiangyin, People's Republic of China. (Arralde 7/1/02 Aff. P 5 & Ex. B; Lekkos 7/1/02 Aff. P 9.)

The parties, however, dispute the cause of the accident. Defendants assert that the accident was Stanislav's fault. (Dkt. No. 13: Eastwind Br. at 8; Dkt. No. 18: Eastwind Reply Br. at 5; Dkt. No. 19: Stearns 7/24/02 Aff. P 6 (Stanislav may have fallen overboard "because of heart attack or other seizure or might even have jumped"); n4 5/14/02 Stearns Letter to Judge Wood at 2.) The complaint, by contrast, asserts that (1) "the vessel was unseaworthy in that the . . . pilot ladder was not safe for its intended use"; (2) defendants "were negligent in not securing the pilot ladder in a safe manner"; (3) defendants "violated applicable safety regulations"; (4) defendants "failed to warn Decedent of danger"; (5) "rescue equipment was inadequate and not readily available"; and (6) "rescue efforts were negligently directed and enforced. [*5] " (Compl. PP 14-16.)

n4 Plaintiff and Eastwind both have submitted affidavits containing legal argument or other matter not based on the affiant's personal knowledge. (Dkt. No. 17: Edelman Aff.; Dkt. No. 19: Stearns 7/24/02 Aff.) The Court has disregarded such extraneous matter. See, e.g., *Ugarte v. Johnson, 40 F. Supp. 2d 178, 179 n.1 (S.D.N.Y. 1999)* (collecting cases).

The Service Agreement, which was signed and accepted by Stanislav, provided for a base wage rate of $

650 per month, and named plaintiff Helga Varnelo as Stanislav's beneficiary. (Dkt. No. 15: Lekkos 7/1/02 Aff. PP 4-5 & Exs. A-B.) The Service Agreement entitled Helga to a lump-sum payment of $ 49,000 for Stanislav's accidental death aboard ship. (Lekkos 7/1/02 Aff. P 5 & Ex. A § 12; Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 1: Kargopolov 6/6/02 Aff. PP 5-6.)

The complaint alleged claims under the , Jones Act, *46 U.S.C. § 688* et seq., the Death On the High Seas Act ("DOHSA"), *46 U.S.C. § 761* [*6] et seq., and "the General Maritime Law of the United States, and other applicable law." (Compl. P 1.) Claimed damages include: (1) $ 1 million for Helga's "personal losses as a dependent wife; loss of Decedent's support; loss of his society and other losses available under applicable laws"; and (2) $ 50,000 for "Decedent's pain and suffering prior to his death." (Compl. P P 19, 22-23.)

**Jurisdictional Allegations Concerning Defendants**

The Yellowstone is registered in Liberia (Dkt. No. 15: Lekkos 7/1/02 Aff. P 6; Dkt. No. 34: Eastwind Resp. to Pl's Interrog. No. 6) and at the time of Stanislav's death was owned by Charm, a Liberian company (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. P 3). Mayflower, the "operator" of the ship (and Stanislav's employer), is a Liberian company with offices in Piraeus, Greece. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. P 3.) Eastwind is incorporated in Liberia with its principal place of business in this District. (Pavlakis Aff. PP 5-20; Edelman 7/15/02 Aff. Ex. 6 at 2; Eastwind Resp. to Pl's Interrog. No. 6.) Of the three defendants, only Eastwind concedes that it is subject to personal jurisdiction in this [*7] District. (See Dkt. No. 3: Answer P 25.)

One of Helga's attorneys submitted a rambling, 17-page affidavit, asserting that: (1) the Yellowstone, though nominally owned by Charm with a Liberian "flag of convenience," is actually owned, controlled, and operated by Eastwind, headquartered in this District; (2) Mayflower is owned and controlled by Eastwind; (3) the ship was actually operated by Eastwind in New York, not Mayflower in Greece; and (4) the ship's "crewing agents" in Russia were owned, controlled, and operated by Eastwind. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. PP 3-27; see also Dkt. No. 1: Compl. PP 3-12.) Defendants' answer denies, "upon information and belief," plaintiff's jurisdictional allegations. (Answer PP 3-12.) n5

n5 It is nonsensical for defendants to deny, "upon information and belief," the complaint's jurisdictional allegations regarding the defendants (such as defendants' domiciles), since defendants

clearly have access to such information. Moreover, certain of defendants' denials are contradicted by Eastwind's other submissions. For example, defendants deny "upon information and belief" that Mayflower "was Decedent's employer and had contracted for Decedent's employment aboard the B/C YELLOWSTONE." (Complaint P 12; Answer P 12.) Yet Eastwind submitted an affidavit averring that Stanislav "was employed pursuant to a Service Agreement between a crewing agent and the operator of M/V YELLOWSTONE, Mayflower . . . ." (Dkt. No. 15: Lekkos 7/1/02 Aff. P 4; see also Eastwind Resp. to Pl's Interrog. No. 1 (decedent "was employed pursuant to a company service agreement by Mayflower"). Similarly, defendants flatly deny the complaint's allegation that "on or about 17 October 2001, while the vessel [B/C Yellowstone] was off the port of Shanghai, China, the pilot ladder was placed over the side to take a river pilot aboard to proceed to Jiangjin, China to discharge cargo" (Compl. P 13; Answer P 13), even though Eastwind's affidavit alleges virtually identical facts (Dkt. No. 15: Lekkos 7/1/02 Aff. P 7 & Ex. D). Defense counsel must be more careful in future in preparing answers to avoid Rule 11 sanctions.

[*8]

**Relevant Witnesses**

According to Eastwind, all relevant evidence and witnesses are located in Russia "and perhaps China" (Dkt. No. 13: Eastwind Br. at 9-10), and "it is believed no witness who is available in New York has any knowledge concerning causation or damages" (Dkt. No. 31: Arralde 12/2/02 Aff. P 13).

Eastwind asserts that the key liability witnesses are located in Russia: the Yellowstone was "manned exclusively by Russian nationals" at the time of Stanislav's death. (Dkt. No. 15: Lekkos 7/1/02 Aff. P 6 & Ex. C; see Dkt. No. 31: Arralde 12/2/02 Aff. P 7; Dkt. No. 13: Eastwind Br. at 10.) Of the crewmembers, Eastwind specifically names as potential witnesses the captain ("master" Vasily Larionov), the first mate ("chief officer" Andrey Bogdanov), and three "able-bodied seamen" - Miron Nuke, Sergey Gankevich, and Dmitriy Naronovich. (Arralde 12/2/02 Aff. PP 6-7; Dkt. No. 18: Eastwind Reply Br. at 8.) n6 Larionov, Nuke, and Gankevich are currently working aboard ships operated by Mayflower, while Bogdanov and Naronovich are not. (Arralde 12/2/02 Aff. Ex. B: Lekkos 11/29/02 Aff. PP 4, 7.) n7 Eastwind asserts, moreover, that "when seamen are not aboard ship, [*9] Mayflower cannot require them

2003 U.S. Dist. LEXIS 1424, *

to make an appearance in connection with a case because once their contract has terminated, Mayflower has no power to require the seamen [to] do anything." (Id. P 3.) Further, Eastwind asserts that the ships on which Larionov, Nuke, and Gankevich currently work are "bulk carriers and are not in a regular liner service," so that each voyage has "different ports of call" (id. P 4) - presumably meaning that the ships do not predictably port in New York.

> n6 Nuke and Stanislav allegedly were installing the pilot ladder together around the time of the accident, but Nuke did not witness Stanislav's fall overboard. (Dkt. No. 15: Lekkos 7/1/02 Aff. Ex. E.) Unidentified "investigators" apparently took "statements" from Nuke, the captain, and the first mate (Lekkos 7/1/02 Aff. P 7 & Ex. E; Arralde 12/2/02 Aff. P 6; Dkt. No. 36: Edelman 7/2/02 Letter), but only a portion of an unsworn written statement from Nuke has been submitted to this Court. (Lekkos 7/1/02 Aff. P 7 & Ex. E.)

> n7 The affidavit submitted by Captain Lekkos of Mayflower fails to mention whether Bogdonov and Naronovich currently work on ships owned or controlled by defendants Eastwind or Charm. (Lekkos 11/29/02 Aff. PP 4, 7.)

[*10]

Eastwind also contends that in order to assess Helga's damages, the jury would need to hear testimony from Russian witnesses regarding Stanislav's "health, state of mind or the sums he spent for personal consumption or instead contributed to his wife's support." (Dkt. No. 18: Eastwind Reply Br. at 5; see Dkt. No. 31: Arralde 12/2/02 Aff. P 9.) However, other than plaintiff Helga, the only damages witness that Eastwind identifies is "A. Kozlov," formerly a representative of Yellowstone's crewing agent. (Arralde 12/2/02 Aff. PP 2, 8-9 & Ex. A.)

According to Eastwind, other relevant witnesses reside in or near Piraeus, Greece, including Captain Lekkos of Mayflower and Mayflower ship inspectors. (Dkt. No. 31: Arralde 12/2/02 Aff. Ex. B: Lekkos 11/29/02 Aff. PP 1, 6.) Eastwind does not specifically identify any witnesses located in China, although presumably those from the crewmembers of the Chinese search and rescue mission would be relevant to Helga's allegation (Dkt. No. 1: Compl. PP 15-16) that the rescue was performed negligently. The Yellowstone itself was sold to interests in the People's Republic of

China after the accident, and is believed to be currently limited [*11] to Chinese waters. (Arralde 12/2/02 Aff. Ex. C: Murray Aff. P 2.)

Plaintiff contends, by contrast, that because defendants concede that there were no "eye witnesses" [sic] to the accident, no Russian crew members could provide relevant testimony. (Dkt. No. 16: Pl. Br. at 1, 4, 7.) Further, plaintiff contends that because defendants violated a treaty provision requiring that an officer supervise the rigging of pilot ladders, defendants are strictly liable for Stanislav's death. (Pl. Br. at 1, 7; see Dkt. No. 17: Edelman 7/15/02 Aff. at 2-3.) In plaintiff's view, therefore, testimony from Stanislav's shipmates regarding the details of his accident would be superfluous. (Id.)

Plaintiff further asserts that Stanislav's accident was caused by a decayed rope ladder. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 9.) According to plaintiff, the jury will only need to hear testimony from an American expert on rope ladder negligence and a Russian sailor, identified by plaintiff, who is willing to travel here to testify that a ship similar to the Yellowstone had a defective pilot ladder. (Id.) n8 Finally, plaintiff asserts that, because defendants' shipping operations are based in New [*12] York, most of the relevant witnesses are located here. (Dkt. No. 16: Pl. Br. at 4-5.) Plaintiff, however, fails to identify any such witnesses or the nature of their testimony.

> n8 Plaintiff also claims to be tracking down "the Chinese pilot, or those on the Chinese pilot boat involved in the case, if he has any relevant information." (Dkt. No. 17: Edelman 7/15/02 Aff. at 15.)

## Procedural History

On May 16, 2002, Judge Wood referred this case to me for general pretrial supervision and for reports and recommendations on dispositive motions. (Dkt. No. 5.)

This Court held a May 31, 2002 status conference, at which plaintiff's counsel confirmed that he had never spoken to Helga, but rather had been "retained by other [foreign] lawyers" who control the case. (Dkt. No. 12: 5/31/02 Hearing Tr. at 19.) n9 The Court admonished plaintiff's counsel that if the case were going to remain in this District, plaintiff's counsel would have to speak directly with plaintiff, foregoing the "intermediary approach. [*13] " (5/31/02 Hearing Tr. at 18.) At that conference, the Court stayed discovery to allow the

parties to consider voluntarily moving the case to Russia or to brief the FNC motion. (Id. at 24.) n10

n9 See also Dkt. No. 26: 10/24/02 Edelman Letter to Court Enc.: 10/23/02 Pavlakis Aff. PP 1-2 (when Pavlakis was retained he hired Edelman on behalf of Helga); Dkt. No. 9: 6/7/02 Edelman Letter to Court ("I have now been in contact further with the Russian and Greek lawyers, who sent me this case. These lawyers have not authorized me to submit the case to a Russian court.").

n10 The Court subsequently denied plaintiff's request for discovery on the forum non conveniens issue. "It is the well established practice in the Southern District of New York to decide such motions on affidavits." *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 158-59 (2d Cir.) (en banc), cert. denied, *449 U.S. 890, 101 S. Ct. 248, 66 L. Ed. 2d 116 (1980); see also,* e.g., *Transunion Corp. v. PepsiCo, Inc., 811 F.2d 127, 130 (2d Cir. 1987)* ("Motions to dismiss for forum non conveniens may be decided on the basis of affidavits. . . . Indeed, as the Court noted in *Piper Aircraft, 454 U.S. at 258, 102 S. Ct. at 267,* 'requiring extensive investigation would defeat the purpose of [the] motion.'"); *Fitzgerald v. Texaco, Inc., 521 F.2d 448, 451 n.3 (2d Cir. 1975)* ("[A] motion to dismiss for forum non conveniens does not call for a detailed development of the entire case; rather discovery is limited to the location of important sources of proof. . . . Nor did the district court in this case abuse its discretion, on this motion to dismiss for forum non conveniens, in failing to require detailed disclosure by the defendants of the names of their proposed witnesses and the substance of their testimony."), cert. denied, *423 U.S. 1052, 96 S. Ct. 781, 46 L. Ed. 2d 641 (1976); Base Metal Trading S.A. v. Russian Aluminum, 2002 U.S. Dist. LEXIS 8516, 00 Civ. 9627, 2002 WL 987257* at *5 (S.D.N.Y. May 14, 2002) (denying "merits" discovery on FNC motion, except allowing deposition of Russian law expert); *Beekmans v. J.P. Morgan & Co., 945 F. Supp. 90, 95 (S.D.N.Y. 1996)* ("The fact that this motion is based on affidavits does not compel the conclusion that discovery should be granted. . . . A motion to dismiss for forum non conveniens does not call for a detailed development of the entire case through discovery . . . .").

[*14]

Upon the Court's order (5/31/02 Hearing Tr. at 15-16), and in an effort to convince plaintiff to bring her claims voluntarily in Russia, defendants' counsel forwarded to plaintiff's counsel a proposed stipulation, signed only by defendants:

IT IS HEREBY AGREED, by and between the parties hereto, that if Russian so [sic] law permits, a case will be brought by Helga Varnelo for claims arising from the death of her husband, Stanislav Varnelo, in a court whose territorial jurisdiction includes Kaliningrad, against [Eastwind, Charm, and Mayflower]. In such event, defendants will appear in said court in response to proper notification and will be responsible for payment of any judgment rendered therein and waive defenses of lack of that court's jurisdiction and statute of limitations.

(Dkt. No. 38: 6/7/02 Arralde Letter Enc.: 6/7/02 Stip.; see Dkt. No. 13: Eastwind Br. at 6.) Plaintiff, however, declined the invitation to commence suit in Russia. (See Dkt. No. 8: 6/17/02 Order.)

Because defendants Mayflower and Charm dispute personal jurisdiction in this District (Dkt. No. 3: Answer P 25), the forum non conveniens motion was brought solely on behalf of defendant [*15] Eastwind (Dkt. No. 13: Eastwind Motion). Any motion to dismiss for lack of personal jurisdiction as to Mayflower and Charm was deferred pending disposition of this FNC motion.

According to defendants, the Russian court would not issue a death certificate until six months from Stanislav's loss, at which time Stanislav would be presumed dead under Russian law. (5/31/02 Hearing Tr. at 6-8, 17-18, 24; see Dkt. No. 15: Lekkos 7/1/02 Aff. P 9.) After Stanislav's death certificate was finally issued, on June 25, 2002 defendants delivered to plaintiff's counsel a certified check for $ 49,000, representing Helga's full death benefit under the Service Agreement. (Dkt. No. 37: 6/26/02 Letter Encl. 6/25/02 Receipt; Dkt. No. 13: Eastwind Br. at 5.) n11

n11 Plaintiff's counsel asserts that, in addition to the $ 49,000 check, defendants earlier paid $ 5,000 directly to Helga relating to Stanislav's death. (5/31/02 Hearing Tr. at 14; Pl. Br. at 5.)

Demonstrating the indirect relationship Helga has with New York counsel, the $ 49,000 check that defendants gave New York attorney Edelman was transmitted to attorney Pavlakis in Greece and from him to attorney Kargopolov in Lithuania and Kaliningrad, and from him to Helga. (See Dkt. No. 26: 10/24/02 Edelman Letter Enc.: 10/23/02 Pavlakis Aff. PP 1-3; see also Dkt. No. 28: 10/30/02 Edelman Letter Enc.: Helga Varnelo 10/25/02 Aff. ("I have received from my attorney Professor Stanislav Kargopolov the check . . . for the sum 49,000.00 U.S. dollars."); Dkt. No. 25: 10/21/02 Edelman Letter Enc.: Edelman 10/21/02 Aff. at 2 ("As soon as the [$ 49,000] check was received by us, it was sent to Mr. Pavlakis . . . [in Greece and he] sent [it] to Professor Kargopolov at his office in Lithuania, which is adjacent to Kaliningrad.").)

[*16]

**ANALYSIS**

While defendants Mayflower and Charm dispute personal jurisdiction, defendant Eastwind concedes jurisdiction and has brought this forum non conveniens motion. (See page 10 above.) The Second Circuit recently held that where defendants contest jurisdiction, a district court may bypass the question of jurisdiction and dismiss the action solely on forum non conveniens grounds. *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 497-98 (2d Cir. 2002).* The Court therefore turns to the forum non conveniens question.

**I. THE FORUM NON CONVENIENS STANDARD**

The equitable doctrine of forum non conveniens ("FNC") permits a court to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 67 S. Ct. 839, 842, 91 L. Ed. 1055 (1947).* "Through a discretionary inquiry, the court determines where litigation will be most convenient and will serve the ends of justice." *PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998);* accord, e.g., *Murray v. British Broad. Corp., 81 F.3d 287, 290 (2d Cir. 1996);* [*17] *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232 (2d Cir. 1996); Wiwa v. Royal Dutch Petroleum Co., 2002 U.S. Dist. LEXIS 3293, 96 Civ. 8386, 2002 WL 319887* at *29 (S.D.N.Y. Feb. 28, 2002 (Wood, D.J.) ("The doctrine of forum non conveniens permits a federal court to decline to entertain a case over which it has jurisdiction if dismissing the action would serve the ends of justice or the convenience of the parties."); *Potomac Capital Inv. Corp. v. KLM, 1998 U.S. Dist. LEXIS 2343,*

*97 Civ. 8141, 1998 WL 92416* at *4 (S.D.N.Y. Mar. 4, 1998) (Peck, M.J.) ("Under the forum non conveniens ['FNC'] doctrine, a district court has broad discretion to decline to exercise jurisdiction that is authorized by the general venue statute, where dismissal would best serve the convenience of the parties and the ends of justice.") (internal quotations omitted).

The Court's "first level of inquiry" is determining the degree of deference to be accorded the plaintiff's choice of forum:

> We ... understand the Supreme Court's teachings on the deference due to plaintiff's forum choice as instructing that we give greater deference to a plaintiff's forum choice to the extent [*18] that it was motivated by legitimate reasons, including the plaintiff's convenience and the ability of a U.S. resident plaintiff to obtain jurisdiction over the defendant, and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage.

*Iragorri v. United Tech. Corp., 274 F.3d 65, 73 (2d Cir. 2001)* (en banc). n12

The Court must then engage in an additional two-step process:

> First, the district court asks if there is an alternative forum that has jurisdiction to hear the case. . . . [In] the second step of the inquiry . . . the district court determines the forum that will be most [*19] convenient and will best serve the ends of justice. In making this second determination, the court weighs a variety of private and public considerations, as set out in *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947)* (the "Gilbert factors").

2003 U.S. Dist. LEXIS 1424, *

*Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir. 1996).* n13 [*20]

In *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981),* the Supreme Court held that no one factor is determinative: "if central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the very flexibility that makes it so valuable." *Id. at 249-50, 102 S. Ct. at 263.* n14

"The decision to dismiss a case on forum non conveniens grounds 'lies wholly within the broad discretion of the district court and may be overturned only when . . . that discretion [*21] has been clearly abused.'" *Iragorri v. United Tech. Corp., 274 F.3d at 72* (quoting *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d at 1232).* n15 "There can be a 'clear abuse of discretion' only if 'a court fails to carefully consider[] the Gilbert factors.'" *Peregrine Myanmar Ltd. v. Segal, 89 F.3d at 46* (quoting *Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 1001 (2d Cir.),* cert. denied, *510 U.S. 945, 114 S. Ct. 386, 126 L. Ed. 2d 334 (1993)).* n16

n12 Accord, e.g., *Mongasque de Reassurances S.A.M. v. Nak Naftogay of Ukraine, 311 F.3d 488, 488 (2d Cir. 2002); Aguinda v. Texaco, Inc., 303 F.3d 470, 476 (2d Cir. 2002); DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir.),* cert. denied, *123 S. Ct. 556 (2002).*

n13 Accord, e.g., *Aguinda v. Texaco, Inc., 303 F.3d at 476; Iragorri v. United Tech. Corp., 274 F.3d at 73-74; Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000),* cert. denied, *532 U.S. 941, 121 S. Ct. 1402, 149 L. Ed. 2d 345 (2001); Alfadda v. Fenn, 159 F.3d 41, 45-46 (2d Cir. 1998); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d at 73-74; Murray v. British Broad. Corp., 81 F.3d at 292-93; Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 980 (2d Cir. 1993); R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991); Potomac Capital Inv. Corp. v. KLM,*

*1998 U.S. Dist. LEXIS 2343, 1998 WL 92416* at *4 & n.3 (& cases cited therein).

Prior to the en banc decision in *Iragorri v. United Tech. Corp., 274 F.3d at 73-74,* the Second Circuit consistently described the forum non conveniens analysis as a two-step process. By adding an additional "first level of inquiry" regarding the deference to be accorded plaintiff's choice of forum, the Iragorri Court effectively converted the analysis into a three-step process.

n14 Accord, e.g., *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d at 1234* ("Forum non conveniens is a doctrine that necessarily requires great flexibility."); *Murray v. British Broad. Corp., 81 F.3d at 292* ("Balancing the plaintiff's financial burdens as one of several relevant factors serves the 'repeatedly emphasized . . . need to retain flexibility' in the application of the forum non conveniens doctrine.").

n15 Accord, e.g., *Mongasque de Reassurances S.A.M. v. Nak Naftogay of Ukraine, 311 F.3d at 498; Capital Currency Exch., N.V. v. National Westminster Bank PLC, 155 F.3d 603, 609 (2d Cir. 1998),* cert. denied, *526 U.S. 1067, 119 S. Ct. 1459, 143 L. Ed. 2d 545 (1999); Peregrine Myanmar Ltd. v. Segal, 89 F.3d at 46.*

n16 See, e.g., *DiRienzo v. Philip Servs. Corp., 294 F.3d at 27* (abuse of discretion if "district court fails to consider all the relevant factors or unreasonably balances those factors"); *Iragorri v. United Tech. Corp., 274 F.3d at 72* ("the district court must follow the governing legal standards").

[*22]

## II. FORUM NON CONVENIENS ANALYSIS APPLIES TO JONES ACT CASES

As a threshold matter, plaintiff contends that the Jones Act governs this maritime action, and that the Court therefore has no choice but to deny the forum non conveniens motion. (Dkt. No. 16: Pl. Br. at 12-14.) To the contrary, and as plaintiff's counsel Edelman well knows, the Second Circuit has squarely held that an action may be dismissed on forum non conveniens

grounds even if the Jones Act applies. See *Cruz v. Maritime Co. of Philippines, 702 F.2d 47, 48 (2d Cir. 1983)* (per curiam) ("maritime choice of law principles are not involved in a forum non conveniens analysis and . . . the district court's discussion on the subject was therefore unnecessary"); see also *Alcoa S.S. Co. v. M/V Nordic Regent, 654 F.2d 147, 153-54, 158-59 (2d Cir.) (en banc) (The Second Circuit "consistently has applied the Gilbert standard in reviewing dismissals on the grounds of forum non conveniens in admiralty cases. . . . It is in the field of admiralty that our federal courts have applied the doctrine of forum non conveniens most flexibly and over the longest period of time . . [*23] . . almost 180 years."), cert. denied, *449 U.S. 890, 101 S. Ct. 248, 66 L. Ed. 2d 116 (1980).*

As was the case with all other judges in this District to whom plaintiff's counsel, Mr. Edelman, made the argument, this Court also declines plaintiff's counsel's invitation to ignore Cruz. See, e.g., *Ioannides v. Marika Mar. Corp., 928 F. Supp. 374, 377 & n.5 (S.D.N.Y. 1996)* ("Plaintiffs invite this Court to 'reconsider' Cruz. It may not do so. Plaintiffs' argument would be addressed more properly to the Court of Appeals.") (plaintiff's counsel in Ioannides was Paul Edelman, counsel for plaintiff Varnelo); *Tsangaris v. Elite, Inc., 1993 U.S. Dist. LEXIS 9235, 92 Civ. 7855, 1993 WL 267425* at *7 (S.D.N.Y. July 9, 1993 ("The Second Circuit has concluded that it will follow the Gilbert standard in all forum non conveniens motions. Even in cases brought under the Jones Act, this Court may properly apply the Gilbert forum non conveniens analysis.") (citations, including to Cruz, omitted) (Edelman was Tsangaris' counsel); *Gazis v. John S. Latsis (USA) Inc., 729 F. Supp. 979, 985 (S.D.N.Y. 1990* (following Cruz, "a district court may [*24] dismiss a case on forum non conveniens grounds without first making a choice of law determination") (Edelman represented Gazis); *Doufexis v. Nagos S.S., Inc., 583 F. Supp. 1132, 1133 (S.D.N.Y. 1983)* (FNC dismissal in Jones Act case permitted under Cruz (Edelman was Doufexis' counsel).

## III. DEFERENCE TO PLAINTIFF'S CHOICE OF FORUM

"In weighing the Gilbert factors, the court starts with a presumption in favor of the plaintiff's choice of forum, especially if the defendant resides in the chosen forum, as here." *Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir. 1996).* "Unless the balance [of interest factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947).* n17 "The defendant has the burden to establish that an adequate alternative forum exists and then to show that the pertinent factors 'tilt[] strongly in favor of trial in the foreign forum.'" *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d at 100* (quoting *R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991)).* [*25] n18 In order to meet this burden, "defendants must provide enough information to enable the District Court to balance the parties' interests." *Piper Aircraft Company v. Reyno, 454 U.S. at 258, 102 S. Ct. at 267.* "The amount of information that the defendant must provide, in supporting affidavits or other evidence, depends on the facts of the individual case." *El-Fadl v. Central Bank of Jordan, 316 U.S. App. D.C. 86, 75 F.3d 668, 677 (D.C. Cir. 1996).*

n17 Accord, e.g., *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, 102 S. Ct. 252, 258, 70 L. Ed. 2d 419 (1981)* ("a plaintiff's choice of forum should rarely be disturbed"); *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 99, 101 (2d Cir. 2000)* ("a plaintiff's choice of forum is entitled to substantial deference and should only be disturbed if the factors favoring the alternative forum are compelling"), cert. denied, *532 U.S. 941, 121 S. Ct. 1402, 149 L. Ed. 2d 345 (2001);* *Murray v. British Broad. Corp., 81 F.3d 287, 290 (2d Cir. 1996)* ("There is ordinarily a strong presumption in favor of the plaintiff's choice of forum."); *Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 1001 (2d Cir.)* ("Although there is still a strong presumption in favor of a plaintiff's choice of forum, the Supreme Court has recognized that dismissal nevertheless may be appropriate where certain private and public interest factors point towards trial in an alternative forum."), cert. denied, *510 U.S. 945, 114 S. Ct. 386, 126 L. Ed. 2d 334 (1993).*

[*26]

n18 Accord, e.g., *Aguinda v. Texaco, Inc., 303 F.3d 470, 476 (2d Cir. 2002)* ("The defendant seeking [FNC] dismissal bears the burden as to both" whether the alternative forum is adequate and whether the private and public factors favor dismissal); *DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir.)* ("Plaintiffs should not have been deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience.") (citing *Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S. Ct. 828, 832, 91 L. Ed. 1067 (1947),* cert. denied, *123 S. Ct. 556 (2002); Iragorri v. United Tech. Corp., 274 F.3d 65, 71*

*(2d Cir. 2001)* (en banc) ("a court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating" convenience factors); *Peregrine Myanmar Ltd. v. Segal, 89 F.3d at 46* ("The defendant has the burden of overcoming this presumption by establishing that the Gilbert factors 'tilt[] strongly in favor of' the alternative forum."); *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 742 (S.D.N.Y. 2001)* ("The burden on the defendant in the forum non conveniens context is deliberately heavy . . ."); *Rostropovich v. Koch Int'l Corp., 1995 U.S. Dist. LEXIS 2785, 94 Civ. 2674, 1995 WL 104123 at \*12 (S.D.N.Y. Mar. 7, 1995)* (Denying FNC dismissal to Russia: "defendants have not notified this Court of any particular necessary witnesses or documents that are not available in this forum. A party seeking to change forums must specify witnesses and documents requiring a more convenient forum.").

[*27]

"Where a foreign plaintiff is concerned, however, its choice of forum is entitled to less deference." *Murray v. British Broad. Corp., 81 F.3d at 290* (citing *Piper Aircraft Co. v. Reyno, 454 U.S. at 256, 102 S. Ct. at 266)*; accord, e.g., *Mongasque de Reassurances S.A.M. v. Nak Naftogay of Ukraine, 311 F.3d 488, 498 (2d Cir. 2002).* As the Second Circuit explained:

> The Supreme Court has emphasized that this rule is not based on a desire to disadvantage foreign plaintiffs but rather on a realistic prediction concerning the ultimate convenience of the forum:
>
> > when the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Murray v. British Broad. Corp., 81 F.3d at 290* (quoting *Piper Aircraft Co. v. Reyno, 454 U.S. at 255-56, 102 S. Ct. at 266* (fn. omitted)); accord, e.g., *R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d at 168.* [*28] The Second Circuit has "cautioned that 'this reduced weight is not an invitation to accord a foreign plaintiff's selection of an American forum no deference since dismissal for forum non conveniens is the exception rather than the rule.'" *Murray v. British Broad. Corp., 81 F.3d at 290* (quoting *R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d at 168).* Thus, "some weight must still be given to a foreign plaintiff's choice of forum." *Murray v. British Broad. Corp., 81 F.3d at 290.*

In *Iragorri v. United Tech. Corp.,* the Second Circuit en banc synthesized recent precedent to hold that "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations":

> The Supreme Court explained in *Piper* that the reason we give deference to a plaintiff's choice of her home forum is because it is presumed to be convenient. *454 U.S. at 255-56, 102 S. Ct. 252.* ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient.") In contrast, when a foreign plaintiff chooses a U.S. forum, it "is much less reasonable" to presume that the choice [*29] was made for convenience. *454 U.S. at 256, 102 S. Ct. 252.* In such circumstances, a plausible likelihood exists that the selection was made for forum-shopping reasons, such as the perception that United States courts award higher damages than are common in other countries. Even if the U.S. district was not chosen for such forum-shopping reasons, there is nonetheless little reason to assume that it is convenient for a foreign plaintiff.

> Based on the Supreme Court's guidance, our understanding of how courts should address the degree of deference to be given to a plaintiff's choice of a U.S. forum is essentially as follows: The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non

2003 U.S. Dist. LEXIS 1424, *

conveniens. Thus, factors [*30] that argue against forum non conveniens dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense. On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons - such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum - the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts.

*Iragorri v. United Tech. Corp., 274 F.3d at 71-72* (emphasis added & fns. omitted). [*31] n19 The Iragorri Court concluded that:

The greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing forum non conveniens dismissal. At the same time, a lesser degree of deference to the plaintiff's choice bolsters the defendant's case but does not guarantee dismissal . . . . The action should be dismissed only if [plaintiff's] chosen forum is shown to be genuinely inconvenient and [defendant's] selected forum significantly preferable. In considering this point, the court furthermore must balance the greater convenience to the defendant of litigating in its preferred forum against any greater inconvenience to the plaintiff if the plaintiff is required to institute the suit in

the defendant's preferred foreign jurisdiction.

*Id. at 74-75.* n20

n19 Iragorri concerned a plaintiff residing in the United States, but outside the district in which the action was filed, on a motion by defendants to dismiss on forum non conveniens grounds. *Id. at 68-69.* Nevertheless, the decision defined the appropriate analysis on a forum non conveniens motion.

[*32]

n20    Accord,   e.g.,   *Mongasque    de Reassurances S.A.M. v. Nak Naftogay of Ukraine, 311 F.3d at 498;* see also, e.g., *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d at 101* ("deference increases as the plaintiff's ties to the forum increase"); *Abdullahi v. Pfizer, Inc., 2002 U.S. Dist. LEXIS 17436, 01 Civ. 8118, 2002 WL 31082956* at *10 (S.D.N.Y. Sept. 17, 2002) ("As foreign nationals with no significant ties to the Southern District, plaintiffs are not entitled to a strong presumption that their choice of forum is sufficiently convenient" under Iragorri standards.

The Court analyzes below: (A) whether the Iragorri factors, including the amenability of defendants to suit in this District, affect deference to plaintiff's choice of forum; and (B) whether deference to plaintiff's choice of this forum should be affected by treaty obligations between Russia and the United States. The Court notes, however, that the degree of deference analyses to some extent overlaps with the Gilbert private convenience factors, which the Court discusses in Point V.A. below. [*33]

**A.  The  Iragorri  Factors  Do  Not  Support Deference to Plaintiff's Forum Choice**

Here, of course, plaintiff Helga Varnelo is a citizen and resident of Russia. (See page 2 above.) A finding of diminished deference based on plaintiff's overseas residence is only the beginning of the Iragorri deference analysis; the Court must also consider each of the other deference factors. See *Iragorri v. United Tech. Corp., 274 F.3d 65, 71-73 (2d Cir. 2001)* (en banc); accord, e.g., *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 498-99 (2d Cir. 2002); Abdullahi v. Pfizer, Inc., 2002 U.S. Dist. LEXIS 17436, 01 Civ. 8118, 2002 WL 31082956* at *10 (S.D.N.Y. Sep. 17, 2002); *Wesoke v. Contract Servs.*

*Ltd., 2002 U.S. Dist. LEXIS 12832, 00 Civ. 1188, 2002 WL 1560775* at *5-6 (S.D.N.Y. July 15, 2002).

First, plaintiff has pointedly conceded that her recovery in Russia would be, at best, a small fraction of her recovery in this forum. n21 (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 1: Kargopolov 6/6/02 Aff. PP 5-6; Dkt. No. 16: Pl. Br. at 3.) One could hardly hope for a more forthright admission of forum shopping. "The more it appears that [*34] the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons - such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district . . . - the less deference the plaintiff's choice commands. . . ." *Iragorri v. United Tech. Corp., 274 F.3d at 72.* n22 This points to giving lesser deference to plaintiff's choice of this forum.

> n21 The prospect of a lower recovery in the alternative forum is entitled to little weight in plaintiff's favor under the Gilbert factors. See, e.g., *Alfadda v. Fenn, 159 F.3d 41, 45 (2d Cir. 1998); see also* discussion at Point IV.B. below.

> n22 Accord, e.g., *In re Rezulin Prods. Liab. Litig., 214 F. Supp. 2d 396, 400 (S.D.N.Y. 2002)* ("Plaintiff seeks to justify litigating here in part by noting that Canada does not permit punitive damages . . ., a point immaterial to the forum non conveniens analysis but one that underscores the fact that plaintiff's suit here is the product of forum shopping.") (fn. omitted); *Ioannides v. Marika Mar. Corp., 928 F. Supp. 374, 378 (S.D.N.Y. 1996)* ("Plaintiffs' presumed choice of this forum in pursuit of more liberal American attitudes toward damage awards is not entitled to substantial weight.").

[*35]

Second, it is highly unlikely that plaintiff chose this forum for "the availability of witnesses or evidence to the forum district." See *Iragorri v. United Tech. Corp., 274 F.3d at 72.* As explained below (see Point V.A.1.), the key witnesses, including Stanislav's shipmates on the Yellowstone and indeed plaintiff Helga Varnelo herself, all reside in Russia. Plaintiff's assertion that employees of the defendants located in New York may possess evidence (see Point V.A.1.c. below) appears to be purely speculative. Again, this factor points to giving lesser deference to plaintiff's choice of forum.

Third, "the availability of appropriate legal assistance," *Iragorri v. United Tech. Corp., 274 F.3d at 72,* cannot be considered a factor favoring this forum, as

plaintiff has had to employ no less than three sets of attorneys (Russian/Lithuanian, Greek, and American) to file suit here. (See pages 8-9 & n.9 & page 10 n.11 above.) Again, this factor points to giving lesser deference to plaintiff's choice of forum.

Fourth, given that this action involves the death of a Russian seaman, hired in Russia, on board a Liberian ship in Chinese territorial [*36] waters, one is hard put to argue the "lawsuit's bona fide connection to the United States." *Iragorri v. United Tech. Corp., 274 F.3d at 72.* Moreover, as described in greater detail in Point V.B.1. below, the possibility that the Jones Act might apply to plaintiff's claim does not create a substantial connection to this forum. Again, this factor points to giving lesser deference to plaintiff's choice of forum.

Finally, the Second Circuit has consistently held that suit in a defendant's home forum supports deference to plaintiff's forum choice. n23 In this case, defendants Charm and Mayflower - the parties most clearly responsible for Stanislav's accident - dispute jurisdiction, as they are (at least nominally) based in Liberia and Greece, respectively. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. P 3.) Nevertheless, Eastwind is based in this district (e.g., Edelman 7/15/02 Aff. Ex. 6 at 5), and plaintiff asserts that Eastwind controls Charm and Mayflower, so that defendants' overall shipping operations - which include the ship at issue - are owned, controlled, and managed from this District (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. PP 3-27; [*37] see also Dkt. No. 1: Compl. PP 3-12).

> n23 See, e.g., *Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir. 1996)* (finding "a presumption in favor of the plaintiff's choice of forum, especially if the defendant resides in the chosen forum, as here"); *Schertenleib v. Traum, 589 F.2d 1156, 1164 (2d Cir. 1978)* ("We begin by noting that plaintiff chose this forum and defendant resides here. This weighs heavily against dismissal. In this rare case, however, none of the relevant events occurred here, and none of the sources of proof are here."); *McLaughlin v. Bankers Trust Co., 1998 U.S. Dist. LEXIS 9703, 97 Civ. 9312, 1998 WL 355419* at *3 (S.D.N.Y. July 2, 1998), aff'd, 182 F.3d 900 (2d Cir. 1999); *Mobil Sales & Supply Corp. v. Republic of Lithuania, 1998 U.S. Dist. LEXIS 5693, 97 Civ. 4045, 1998 WL 196194* at *9 (S.D.N.Y. Apr. 23, 1998), aff'd, 166 F.3d 1201 (2d Cir. 1998); *Continental Pac. Shipping, Ltd. v. CIT Group/Equip. Fin., Inc., 1996 U.S. Dist. LEXIS 14736, 96 Civ. 2646, 1996 WL 571855* at *7 (S.D.N.Y. Oct. 7, 1996) ("The presumption in favor of the plaintiff's choice of forum is

Exhibit A  364

particularly strong if the defendant resides in the chosen forum."); *Mutual Exp. Corp. v. Westpac Banking Corp., 742 F. Supp. 161, 163 (S.D.N.Y. 1990)* (fact that "plaintiff has chosen a forum in which the defendant maintains a substantial presence" "weighed in favor of deferring to plaintiff's choice of forum").

[*38]

Heightened deference to plaintiff's choice of U.S. forum is only reasonable, however, if it is unclear that defendants would be amenable to suit in an alternative forum such as plaintiff's home forum (here, Russia). The Second Circuit explained:

> One of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit. Consider for example a hypothetical plaintiff residing in New Jersey, who brought suit in the Southern District of New York, barely an hour's drive from the plaintiff's residence, because the defendant was amenable to suit in the Southern District but not in New Jersey. It would make little sense to withhold deference for the plaintiff's choice merely because she did not sue in her home district. Where a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant. This is all the more true where the defendant's amenability to suit in the plaintiff's home district is unclear.

*Iragorri v. United Tech. Corp., 274 F.3d at 72-73* [*39] (emphasis added).

Here, it is undisputed that defendant Mayflower hired Stanislav, a Russian citizen, on Russian soil (see page 2 above), and plaintiff alleges that Mayflower regularly hires Russian crews on Russian soil. (See Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 7: Eastwind Website ("the Russian joint-venture vessels are managed by Mayflower, which provides training programs for Russian and FSU seafarers.").) The Court thus deems it reasonable to assume that at least Mayflower would be amenable to suit in Russia. Otherwise, shipowners and operators would be able to hire Russian crews on

Russian soil without being subject to Russian jurisdiction, and that cannot possibly be the substance of Russian law. n24 Accordingly, because plaintiff Helga Varnelo could have sued at least Mayflower in her home forum, Russia, this factor does not support heightened deference for plaintiff's choice of forum.

n24 Eastwind's expert on Russian law has stated that if Helga sued Mayflower either under the Service Agreement or under the Russian Civil Code for Stanislav's accidental death at sea, if Mayflower "does not contest the jurisdiction of the Russian Court . . ., the [Russian] judge would have no reason not to find in Mrs. Varnelo's favor." (Dkt. No. 14: Arralde 7/1/02 Aff. Ex. C: Balakirev 7/1/02 Opinion Letter PP 5-8.) He conceded, however, that if the non-Russian defendant "refused to recognize the jurisdiction of the Russian Court, the [Russian] judge may decide not to entertain the case because of the difficulty in enforcing a judgment against a non-Russian company. But if a non-Russian company consents to the Russian Court's jurisdiction, there would be no reason for the [Russian] court not to hear the case." (Id. P 6; see also id. P 8.) Mayflower, Charm and Eastwind have consented to suit in Russia.

It is unclear whether defendant Charm has any Russian connections, and apparently Eastwind is connected to Russia only through subsidiaries or affiliates. However, jurisdiction in the New York forum over all three defendants is similarly dubious, as only Eastwind is clearly located here.

[*40]

Indeed, in the related context of the adequacy of the foreign forum (discussed further in Point IV below), the Second Circuit has held that "once defendants consent[] to suit in" the foreign forum, "there [is] no reason to determine whether defendants were initially subject to the compulsory jurisdiction of [the foreign forum]." *Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880, 882 (2d Cir. 1978)* (citing *Schertenleib v. Traum, 589 F.2d at 1163*) ("Plaintiff argues that this practice is unfair to him in that he first brought suit in allegedly the only place he could, and now, after he tries to sue defendant in Geneva, he may end up back here again, all at his inconvenience and expense. The answer to this is that a district court should not dismiss unless it justifiably believes that the alternative forum will take jurisdiction, if the defendant consents. Once that finding has been made, the remaining but unlikely possibility that the plaintiff may ultimately have to return to the inconvenient forum is a

factor to be weighed in deciding whether to dismiss, . . . but this kind of improbability should not automatically preclude the use of forum non [*41] conveniens.")).

In sum, based on this Court's analysis of the "sliding scale" factors described in *Iragorri v. United Tech. Corp., 274 F.3d at 71-72,* plaintiff Helga Varnelo's choice of this forum is accorded "little deference," *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d at 499.*

### B. Treaty Obligations Between Russia and the United States Do Not Change the Result

Although neither party raised the issue on this motion, this Court notes that relations between the United States and Russia appear to be governed by a treaty providing for equal access to each other's courts. See Agreement On Trade Relations Between the United States of America and the Union of Soviet Socialist Republics Entered into *Force June 17, 1992, State Dept. No. 92-168, KAV No. 2609, 1992 WL 466079* (Treaty), Art. XII, § 1 ("Nationals, companies and organizations of either [Treaty] Party shall be accorded national treatment with respect to access to all courts and administrative bodies in the territory of the other Party, as plaintiffs, defendants or otherwise."). The Second Circuit has held that such treaty provisions prohibit [*42] courts from treating foreign plaintiffs' forum choices with less deference than that accorded United States citizens:

> We have ruled . . . that when a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical forum non conveniens standards must be applied to such nationals by American courts. Because such a treaty exists between the United States and Venezuela, no discount may be imposed upon the plaintiff's initial choice of a New York forum in this case solely because [plaintiff] is a foreign corporation.

*Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 981 (2d Cir. 1993)* (citations omitted). n25

n25 Accord, e.g., *Irish Nat'l Ins. Co. v. Aer Lingus Teoranta, 739 F.2d 90, 91-92 (2d Cir. 1984)* (Treaty of Friendship, Commerce and Navigation between the United States and Ireland providing for "national treatment with respect to . . . having access to the courts of justice" required the district court to apply "the same forum non

conveniens standards that it would have applied to a United States citizen"); *Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880, 882 (2d Cir. 1978)* ("Whatever the merits of [the] proposition generally" that "a foreign plaintiff's 'right to sue in the United States is clearly of a lesser magnitude than that of an American citizen', . . . we think it has no application where, as here, a treaty between the United States and the foreign plaintiff's country allows nationals of both countries access to each country's courts on terms no less favorable than those applicable to nationals of the court's country."); see also, e.g., *Murray v. British Broad. Corp., 81 F.3d 287, 290-92 (2d Cir. 1996)* (discussing "access to courts" clause in FNC context; distinguishing particular treaty provision as not providing for equal access to courts); *Alcoa S. S. Co. v. M/V Nordic Regent, 654 F.2d 147, 152-53 (2d Cir. 1978)* (en banc) (same), cert. denied, *449 U.S. 890, 101 S. Ct. 248, 66 L. Ed. 2d 116 (1980); Flores v. Southern Peru Copper Corp., 253 F. Supp. 2d 510, 2002 U.S. Dist. LEXIS 13013, 00 Civ. 9812, 2002 WL 1587224* at *2829 (S.D.N.Y. July 16, 2002) (Haight, D.J.) (convenience factors favored dismissal even if foreign plaintiff's forum choice granted heightened deference under treaty cases); *Doe v. Hyland Therapeutics Div., 807 F. Supp. 1117, 1122-23 (S.D.N.Y. 1992)* ("Where an 'equal access to courts' provision exists in a treaty, the Second Circuit has held that a foreign plaintiff's right to sue in a United States forum is equal to that of a United States citizen." Declining to determine the degree of deference, as action would be dismissed even if greater deference granted.).

[*43]

This line of treaty cases requiring "equal access" to foreign plaintiffs is, however, easily harmonized with the line of cases granting less deference to plaintiffs residing overseas. (See cases cited at page 17 above.) Foreign plaintiffs deserve less deference, not because they lack U.S. citizenship, but simply because their overseas residence vitiates any presumption that they would find the U.S. forum convenient. As the Second Circuit explained, U.S. residence is a "factor supporting the plaintiff's choice of a U.S. forum," "not because of chauvinism or bias in favor of U.S. residents," but

> rather because the greater the plaintiff's ties to the plaintiff's chosen forum, the more likely it is that the plaintiff would be inconvenienced by a requirement to bring

the claim in a foreign jurisdiction. Also, while our courts are of course required to offer equal justice to all litigants, see [Alcoa S. S. Co. v. M/V Nordic Regent,], *654 F.2d at 152-53* (noting existence of treaties requiring "no less favorable" treatment of foreign nationals), a neutral rule that compares the convenience of the parties should properly consider each party's residence as [*44] a factor that bears on the inconvenience that party might suffer if required to sue in a foreign nation.

*Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 102 (2d Cir. 2000),* cert. denied, *532 U.S. 941, 121 S. Ct. 1402, 149 L. Ed. 2d 345 (2001).*

Thus, a foreign plaintiff residing overseas should receive the same diminished degree of deference as would be accorded an expatriate U.S. citizen living abroad. See *Iragorri v. United Tech. Corp., 274 F.3d 65, 73 n.5 (2d Cir. 2001)* ("it would be less reasonable to assume" that an "expatriate U.S. citizen residing permanently in a foreign country bringing suit in the United States" chose this forum "based on convenience"). This solution (1) satisfies this country's treaty obligations, by treating foreign plaintiffs the same as similarly situated U.S. citizens (i.e., similarly situated in that they reside overseas), and (2) respects convenience as the touchstone of the forum non conveniens analysis by giving deference solely to plaintiffs actually residing in this country. n26 See *In re Bridgestone/Firestone, Inc., 190 F. Supp. 2d 1125, 1136-37 (S.D. Ind. 2002)* ("expatriate [*45] U.S. nationals and treaty nationals residing in their home countries are entitled to the same deference on their choice of forum, with the consideration that suing in a United States forum while residing in a foreign country is less likely to be convenient. This formulation accommodates a number of conflicting values, including protecting U.S. courts from a glut of foreign cases while continuing to respect our treaty obligations. . . . And, ultimately, it captures the main point of our analysis - convenience. Hence, we conclude that Plaintiffs here are entitled to the same deference as U.S. citizens in similar situations, with the understanding that suing in a United States court is sometimes, although not always, less likely to be convenient when the shared situation is residence in a foreign country."); *Doe v. Hyland Therapeutics Div., 807 F. Supp. at 1123 n.9* ("the practice of according talismanic significance to a plaintiff's citizenship seems contrary to the rationale underlying forum non conveniens analysis"); *Oxley v. Wyeth Labs., Inc., 1992 U.S. Dist. LEXIS 6858, No. Civ. A. 91-1285, 1992 WL 116308 at *3 (E.D. Pa. May 20, 1992)* ("Pursuant to the terms of [Ireland-U. [*46] S.] Treaty, Irish plaintiffs are to be given the same deference to choice of forum as would be given to nonresident United States citizens.") Accordingly, because plaintiff Helga Varnelo resides in Russia, treaty obligations between Russia and the United States do not require any greater deference to her choice of this forum, and as discussed above, the Iragorri factors lead to giving her choice of forum lesser deference.

n26 As a corollary, because the touchstone of forum non conveniens is the plaintiff's residence (and thus convenience) rather than citizenship, foreign nationals residing in the U.S. receive the same heightened deference as U.S. resident citizens. In all cases in which the Second Circuit has "deemed a plaintiff 'foreign' and accorded that plaintiff's choice of forum less deference," the plaintiffs involved were foreign corporations or foreign-national individuals residing abroad. . . . [The Second Circuit has] never accorded less deference to a foreign plaintiff's choice of a United States forum where that plaintiff was a U.S. resident." *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d at 103;* accord *Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 302 (S.D.N.Y. 2001)* ("actions brought by residents of the United States who happen to be foreign citizens are entitled to a strong presumption against dismissal on forum non conveniens grounds"); *Byrne v. British Broad. Corp., 132 F. Supp. 2d 229, 237-38 (S.D.N.Y. 2001)* ("courts should accord the choice of forum of foreign citizens who are legal residents of the United States the same deference as the choice of forum of United States citizens").

[*47]

## IV. RUSSIA IS AN ADEQUATE ALTERNATE FORUM

"The requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in 'rare circumstances' when 'the remedy offered by the other forum is clearly unsatisfactory.'" *Murray v. British Broad. Corp., 81 F.3d 287, 292 (2d Cir. 1996)* (quoting *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22, 102 S. Ct. 252, 265 n.22, 70 L. Ed. 2d 419 (1981));* accord, e.g., *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 499 (2d Cir. 2002); Aguinda v. Texaco, Inc., 303 F.3d 470, 476-77 (2d Cir. 2002); Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pak., 273 F.3d 241, 248 (2d Cir. 2001);*

2003 U.S. Dist. LEXIS 1424, *

*Alfadda v. Fenn, 159 F.3d 41, 45 (2d Cir. 1998)* ("An alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits 'litigation of the subject matter of the dispute.'") (quoting *Piper Aircraft Co. v. Reyno, 454 U.S. at 254 n.22, 102 S. Ct. at 265 n.22); R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991);* [*48] *Potomac Capital Inv. Corp. v. KLM, 1998 U.S. Dist. LEXIS 2343, 97 Civ. 8141, 1998 WL 92416* at *4 (S.D.N.Y. Mar. 4, 1998)* (Peck, M.J.). n27

> n27 Accord, e.g., *Skelton Fibres Ltd. v. Canas, 1997 U.S. Dist. LEXIS 2365, 96 Civ. 6031, 1997 WL 97835* at *4 n.2 (S.D.N.Y. Mar. 6, 1997)* ("The Second Circuit has held that this prong of the test is not difficult to satisfy."); *Cabiri v. Assasie-Gyimah, 921 F. Supp. 1189, 1199 (S.D.N.Y. 1996)* (FNC motion will be denied if the plaintiff shows that conditions in the foreign forum plainly demonstrate that "plaintiffs are highly unlikely to obtain basic justice" in the foreign forum).

Plaintiff asserts that Russia is an inadequate forum because: (A) Russian courts would not assert jurisdiction over defendants, even on defendants' consent; and (B) even assuming such jurisdiction, any recovery in Russia would be inadequate. (Dkt. No. 16: Pl. Br. at 3-5; Dkt. No. 17: Edelman Aff. Ex. 1: Kargopolov 6/6/02 Aff. PP 5-6 & 7/8/02 Aff. PP 3-5.) n28 Neither of these grounds has merit. [*49]

> n28 Plaintiff also asserts that even were a Russian court to entertain this action, it would be "slow, burdensome and costly," lasting "in practice" one year (and up to four years). (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 1: Kargopolov 6/6/02 Aff. P 6.) Further, plaintiff asserts that the procedure for serving summonses upon foreign defendants is burdensome and time-consuming, and all documents would have to be translated into Russian and the translation certified by a notary public. (Id.) Such considerations, while perhaps relevant to the Gilbert balancing test discussed in Point V below, should not affect the adequacy of the Russian forum. See *Parex Bank v. Russian Sav. Bank, 116 F. Supp. 2d 415, 423 (S.D.N.Y. 2000)* ("comity requires that this Court abstain from adversely judging the quality of Russia's justice system unless [plaintiff] makes a showing of inadequate procedural safeguards."); accord, e.g., *Mongasque de Reassurances S.A.M. v. Nak Naftogay of Ukraine, 311 F.3d 488, 499 (2d Cir. 2002)* (FNC dismissal in favor of

litigation in the Ukraine, where plaintiff's "meager and conclusory" assertion that courts there were "biased" or "corrupt"); *Aguinda v. Texaco, Inc., 303 F.3d 470, 478 (2d Cir. 2002)* ("Plaintiffs point further to several respects in which Ecuadorian procedure is less efficient than U.S. procedure. While Ecuador's judicial procedures may be less streamlined than ours, that does not make Ecuador's procedures ineffective or render Ecuador inadequate as an alternative forum."); *PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998)* ("considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards, . . . so such a finding is rare"); *Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 982 (2d Cir. 1993)* ("'The unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate.'"); *Pavlov v. Bank of New York Co., 135 F. Supp. 2d 426, 434-35 (S.D.N.Y. 2001)* (Russia adequate forum despite unavailability of pretrial discovery), vacated on other grounds, *No. 01-7434, 25 Fed. Appx. 70, 2002 WL 63576 (2d Cir. Jan. 14, 2002); Potomac Capital Inv. Corp. v. KLM, 1998 U.S. Dist. LEXIS 2343, 1998 WL 92416* at *5 ("Were a forum considered inadequate merely because it did not provide for federal style discovery, few foreign forums could be considered 'adequate' - and that is not the law.").

[*50]

**A. Russian Courts Would Likely Exercise Jurisdiction Over Defendants On Consent**

Defendants have consented to jurisdiction in Russia:

> IT IS HEREBY AGREED, by and between the parties hereto, that if Russian so [sic] law permits, a case will be brought by Helga Varnelo for claims arising from the death of her husband, Stanislav Varnelo, in a court whose territorial jurisdiction includes Kaliningrad, against [defendants Eastwind, Charm, and Mayflower]. In such event, defendants will appear in said court in response to proper notification and will be responsible for payment of any judgment rendered therein and waive defenses of lack of that court's jurisdiction and statute of limitations.

2003 U.S. Dist. LEXIS 1424, *

(Dkt. No. 38: 6/7/02 Arralde Letter Enclosure.) Such "an agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy [the adequate alternative forum] requirement." *DiRienzo v. Philip Servs. Corp., 232 F.3d 49, 57 (2d Cir. 2000),* vacated on other grounds, *294 F.3d 21 (2d Cir. 2002);* accord, e.g., *Aguinda v. Texaco, Inc., 303 F.3d 470, 477 (2d Cir. 2002); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 75 (2d Cir. 1998)* [*51] ("the district court did not err by conditioning the [forum non conveniens] dismissal on [defendant's] consent to personal jurisdiction in Indonesia and any potential jurisdictional problem is avoided"); *In re Union Carbide Corp. Gas Plan Disaster, 809 F.2d 195, 203* (2d Cir.) ("The emphasis placed by plaintiffs on [defendants] having its domicile here, where personal jurisdiction over it exists, is robbed of significance by its consent to Indian jurisdiction."), cert. denied, *484 U.S. 871, 108 S. Ct. 199, 98 L. Ed. 2d 150 (1987); Abdullahi v. Pfizer, Inc., 2002 U.S. Dist. LEXIS 17436, 01 Civ. 8118, 2002 WL 31082956 at *7 (S.D.N.Y. Sep. 17, 2002); Abert Trading, Inc. v. Kipling Belgium N.V./S.A., 2002 U.S. Dist. LEXIS 3109, 00 Civ. 0478, 2002 WL 272408 at *3 (S.D.N.Y. Feb. 26, 2002); Deston Songs LLC v. Wingspan Records, 2001 U.S. Dist. LEXIS 9763, 00 Civ. 8854, 2001 WL 799811 at *4 (S.D.N.Y. July 16, 2001); Pavlov v. Bank of New York Co., 135 F. Supp. 2d 426, 434 (S.D.N.Y. 2001)* (Russia adequate forum because defendant appears to be subject to jurisdiction there, but in any event, defendant "has offered to consent to jurisdiction in Moscow with respect to these [*52] claims, thus removing this objection.") (fn. omitted), vacated on other grounds, *No. 01-7434, 25 Fed. Appx. 70, 2002 WL 63576* (2d Cir. Jan. 14, 2002); *Skelton Fibres Ltd. v. Canas, 1997 U.S. Dist. LEXIS 2365, 96 Civ. 6031, 1997 WL 97835 at *4 (S.D.N.Y. Mar. 6, 1997)* (adequate alternative forum satisfied where defendants "consented to the jurisdiction of the Spanish courts."); *Beekmans v. J. P. Morgan & Co., 945 F. Supp. 90, 93 (S.D.N.Y. 1996); Doe v. Hyland Therapeutics Div., 807 F. Supp. 1117, 1123 (S.D.N.Y. 1992).*

Plaintiff, however, asserts that because defendants are non-Russian, Russian courts would refuse to exercise jurisdiction even upon defendants' consent. (Dkt. No. 17: Edelman Aff. Ex. 1: Kargopolov 6/6/02 Aff. P 6 & 7/8/02 Aff. PP 3-5.) The Court thus faces an issue of foreign law: whether a Russian court would exercise jurisdiction over plaintiff's claim on defendants' consent to jurisdiction.

This Court has the power to condition dismissal on: (1) defendants' consent to jurisdiction in Russia; (2) the Russian court accepting the case; and (3) a stay of the U.S. statute of limitations, protecting plaintiff in the event that the [*53] Russian court rejects the case. See, e.g., *PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d at 75* ("the district court did not err by conditioning the [FNC] dismissal on [defendant's] consent to personal jurisdiction in Indonesia and any potential jurisdictional problem is avoided"); *Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 984 (2d Cir. 1993)* ("Forum non conveniens dismissals are often appropriately conditioned to protect the party opposing dismissal."); *In re Union Carbide Corp. Gas Plant Disaster, 809 F.2d at 203-04* (affirming FNC dismissal conditioned upon defendant's consent to personal jurisdiction in India and waiver of statute of limitations; such conditions "are not unusual and have been imposed in numerous cases where the foreign court would not provide an adequate alternative in the absence of such a condition"). n29

n29 See also, e.g., *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 491 (2d Cir. 1998)* (reversing FNC dismissal for, inter alia, district court's failure to "condition [FNC] dismissal on [defendant's] consent to jurisdiction in" foreign forum); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1235 (2d Cir. 1996)* (FNC granted on defendant's waiver of statute of limitations); *El-Fadl v. Central Bank of Jordan, 316 U.S. App. D.C. 86, 75 F.3d 668, 679 (D.C. Cir. 1996)* ("If doubts about the availability of an alternative forum remain due to the difficulties in determining Jordanian law, the district court may dismiss for forum non conveniens, but only if conditioned on the defendants' submitting to jurisdiction in Jordan and on the Jordanian courts' acceptance of the case."); *Sussman v. Bank of Israel, 990 F.2d 71, 71-72 (2d Cir. 1993)* (per curiam) (affirming district court's FNC dismissal conditioned upon defendants' partial waiver of limitations defense and undertaking from Israeli officials that plaintiff would not be detained if he went to Israel to initiate litigation there); *R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991)* (defendant agreed to FNC dismissal conditioned upon submission to jurisdiction of foreign court); *Schertenleib v. Traum, 589 F.2d 1156, 1166 (2d Cir. 1978)* (upholding FNC dismissal on condition that if foreign court refuses to exercise jurisdiction, plaintiff may reinstate action, and defendant waive statute of limitations defense).

[*54]

2003 U.S. Dist. LEXIS 1424, *

In fact the Second Circuit has held that "once defendants consent[] to suit in" the foreign forum, "there [is] no reason to determine whether defendants were initially subject to the compulsory jurisdiction" of the foreign forum. *Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880, 882 (2d Cir. 1978)*.

The Second Circuit, however, recently "clarified the type of finding that the district court should make regarding the adequacy of an alternative foreign forum in a case in which foreign law or practice is at issue, and in which the case is dismissed conditionally only":

> The district court may dismiss on forum non conveniens grounds, despite its inability to make a definitive finding as to the adequacy of the foreign forum, if the court can protect the non-moving party by making the dismissal conditional. This . . . does not, however, excuse the district court from engaging in a full analysis of those issues of foreign law or practice that are relevant to its decision, or from closely examining all submissions related to the adequacy of the foreign forum. If, in the end, the court asserts its "justifiable belief" in the existence of an adequate alternative forum, [*55] it should cite to evidence in the record that supports that belief. In doing so, the district court should keep in mind that it remains the movant's burden to demonstrate the existence of an adequate alternative forum.

> Precisely how certain the court must be regarding the existence of an adequate alternative foreign forum will necessarily depend on how protective of the non-moving party the conditional dismissal will in fact be. . . .

> . . . Finally, we observe that while the conditional dismissal device can help to protect the non-moving party in circumstances where the district court remains concerned about the accuracy of its "justifiable belief" as to a foreign forum's adequacy, the mechanism is not a substitute for the initial "justifiable belief" of adequacy. Conditions cannot transform an inadequate forum into an adequate one.

*Bank of Credit & Commerce Int'l v. State Bank of Pak., 273 F.3d 241, 247-48 (2d Cir. 2001)* (fns. omitted). Accordingly, even in the face of the Court's power to protect plaintiff through a conditional dismissal, the Court must nevertheless determine whether a Russian court likely would exercise jurisdiction over this case. [*56] Cf. *Schertenleib v. Traum, 589 F.2d at 1163* ("If the defendant consents to suit in the foreign alternate forum, and if that appears to be sufficient under the foreign law, why waste the litigants' money and the court's time in what is essentially an unnecessary and difficult inquiry into the further intricacies of foreign jurisdictional law. . . . If, moreover, contrary to the expert testimony apparently relied on by [the district court] in this case, [the foreign court] refuses jurisdiction notwithstanding defendant's consent, plaintiff is still protected by the conditional nature of the [FNC] dismissal. Thus further inquiry into foreign jurisdictional law really is needless since it is so easily obviated by use of the typical conditional dismissal device."); *In re Air Crash Off Long Island, N.Y., 65 F. Supp. 2d 207, 215* (S.D.N.Y. Oct. 12, 1999).

The adequacy of the foreign forum and the substance of any relevant foreign law is usually established through expert affidavits or declarations. See 17 James W. Moore, *Moore's Federal Practice § 111.92* (3d ed. 2002). *Rule 44.1 of the Federal Rules of Civil Procedure* provides that "the court, [*57] in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *Fed. R. Civ. P. 44.1*. It thus appears that the Court may consider unsworn statements by attorneys opining on foreign law. See, e.g., *Kalmich v. Bruno, 553 F.2d 549, 555 n.4 (7th Cir.), cert. denied, 434 U.S. 940, 98 S. Ct. 432, 54 L. Ed. 2d 300 (1977); 9 James W. Moore, Moore's Federal Practice § 44.1.04[5]*. The Court is not, however, bound by the parties' submissions, and may conduct its own investigation of foreign law. See, e.g., *Curley v. AMR Corp. 153 F.3d 5, 13 (2d Cir. 1998); Finance One Public Co. v. Lehman Bros. Special Fin., Inc., 215 F. Supp. 2d 395, 402-03 (S.D.N.Y. 2002)*.

The parties have submitted conflicting opinions on the substance of Russian law. Eastwind submitted an unsworn "Attorney Letter of Opinion" by Alexander Balakirev, "an attorney duly authorized to practice law in Kaliningrad, Russia." (Dkt. No. 14: Arralde 7/1/02 Aff. P 6 & Ex. C.) Mr. Balakirev asserts that "plaintiff, as a citizen [*58] and resident of Kaliningrad, Russia, could bring a case under Civil Processual Code of Russian Federation ('Russian Civil Code') in the court for Kaliningrad to recover a sum of money for the death of her husband . . . ." (Arralde 7/1/02 Aff. Ex. C: Balakirev Opinion Letter P 3.)

Exhibit A  370

Case 1:07-cv-03580-DLC    Document 23-18    Filed 06/12/2007    Page 20 of 21

Page 18
2003 U.S. Dist. LEXIS 1424, *

Under Russian Civil Code, Mrs. Varnelo could ask the judge to enforce the contract service agreement, which according to its terms would pay her $ 49,000, in the event of the accidental death of her husband. If the ship management company who contracted for Mr. Varnelo's services, in this case Mayflower, does not contest the jurisdiction of the Russian Court and also does not dispute it is bound by the contract service agreement, the judge would have no reason not to find in Mrs. Varnelo's favor and award her the full amount due under the contract.

(Id. P 5; see also id. P 6 ("If a non-Russian company consents to the Russian Court's jurisdiction, there would be no reason for the court not to hear the case."); id. PP 7-8 (Mrs. Varnelo also could sue for seaman's accidental death, with the same jurisdictional issues).) In support, however, Eastwind cites to an incoherent translation of [*59] the Russian Civil Code, Chapter 1, Part 3, Clause 25, stating "The Courts also consider the suits with participation of foreign citizens, stateless persons, foreign companies and organizations . . . ." (Balakirev Opinion Letter Ex. A; see also Dkt. No. 20: 7/24/02 Arralde Aff. Ex. A.)

In response, plaintiff submitted two "affirmations" (though not in a form complying with *28 U.S.C. § 1746*) by plaintiff's Russian attorney, Professor Stanislav Kargopolov. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 1: Kargopolov 6/6/02 & 7/8/02 Aff's.) Prof. Kargopolov's June 6, 2002 affirmation asserts, ipse dixit, that Russian courts are "extremely unwilling[]" to exercise jurisdiction over actions involving non-Russian defendants. (Kargopolov 6/6/02 Aff. P 6: "Russian Courts insist that a Plaintiff should bring a lawsuit in that court, on which jurisdictional territory a Defendant is.") According to Prof. Kargopolov, because a Russian court would likely limit defendants to those entities located in Russia, plaintiff would be limited to suing only the "crewing agency," Smart Crewing. (Id. PP 3, 8.) Prof. Kargopolov's July 8, 2002 affirmation flatly asserts that, because [*60] defendants are non-Russian, no Russian court would exercise jurisdiction over this case, even if defendants conceded jurisdiction. (Kargopolov 7/8/02 Aff. PP 3-7.) In support, he references what he alleges to be a maritime injury case brought by a Russian seaman that a Russian court allegedly dismissed for lack of jurisdiction over the foreign defendant, despite defendant's consent to jurisdiction. (Id. P 3.) Plaintiff's summary of the case did not state such key facts as

whether the crewman was actually hired in Russia or whether the ship sailed from Russia. (Id.)

Both parties' submissions regarding Russian law are virtually incoherent. n30 The Court cannot determine foreign law based on garbled snippets of translated statutes or summaries of Russian court decisions.

n30 It is unclear whether the problem lies in the affiants' lack of English-language skills or lack of legal training.

It seems inconceivable to this Court that a Russian court would refuse to exercise jurisdiction simply because the defendants [*61] are not permanently based in Russia, given that defendants have conceded Russian jurisdiction. At least one Court in this District has found defendants' consent to Russian jurisdiction sufficient to render the Russian forum adequate. See *Pavlov v. Bank of New York Co., 135 F. Supp. 2d 426, 434 (S.D.N.Y. 2001)* (Kaplan, D.J.) (Defendant "has offered to consent to jurisdiction in Moscow with respect to these claims, . . . thus removing [plaintiff's] objection," as to the adequacy of the alternate forum, that defendant is not subject to jurisdiction in Russia), vacated on other grounds, *No. 01-7434, 25 Fed. Appx. 70, 2002 WL 63576 (2d Cir. Jan. 14, 2002).* n31

n31 See also *Parex Bank v. Russian Sav. Bank, 116 F. Supp. 2d 415, 423-25 (S.D.N.Y. 2000)* (Sweet, D.J.) ("Even if Russia employs different procedures than the United States courts, [defendant] has met its burden of proving that Russia's judicial system affords adequate procedural protections upon the face of its statutory provisions."); *Rosinka Joint Venture v. Williams, 1993 Conn. Super. LEXIS 2386, No. Civ. 93 0132624, 1993 WL 383301* at *3 (Conn. Super. Ct. Sept. 16, 1993) (granting FNC, as Russia is an adequate alternative forum).

[*62]

This case clearly implicates Russian interests, as Stanislav was a Russian citizen residing in Kaliningrad, hired by defendant Mayflower in Kaliningrad under a Service Agreement apparently signed in Kaliningrad, and leaving a widow (plaintiff Helga) also of Russian citizenship residing in Kaliningrad. (See page 2 above.) According to plaintiff, Mayflower regularly hires crews out of Kaliningrad (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 7), defendant Charm regularly sails (or sailed) its ships, including the Yellowstone, out of Kaliningrad, and both Mayflower and Charm are owned or controlled by defendant Eastwind (Dkt. No. 17: Edelman 7/15/02 Aff.

2003 U.S. Dist. LEXIS 1424, *

Ex. 2: Pavlakis Aff. PP 3-26). Refusing Russian jurisdiction for such claims would leave an entire class of Russian seaman without an effective remedy. Thus, despite the parties' submissions, the Court "justifiably believes," *Bank of Credit & Commerce Int'l v. State Bank of Pak., 273 F.3d at 247-48,* that a Russian court would exercise jurisdiction over Helga Varnelo's claim, at least where, as here, defendants consent to such jurisdiction.

Moreover, as noted above (see pages 31-32), this Court may (and does) condition [*63] dismissal on (1) defendants' consent to Russian jurisdiction; (2) the Russian court's acceptance of the case; and (3) defendants' agreement to stay any United States statute of limitations pending the outcome of a Russian lawsuit. As such, there will be no harm if plaintiff returns to Russia and is rebuffed by a Russian court on jurisdictional grounds, and the Court may find the Russian forum adequate based even on a low degree of certainty without fear of harming plaintiff. See, e.g., *Bank of Credit & Commerce Int'l v. State Bank of Pak., 273 F.3d at 248* ("Precisely how certain the court must be regarding the existence of an adequate alternative foreign forum will necessarily depend on how protective of the non-moving party the conditional dismissal will in fact be. . . ."). n32

    n32 See also, e.g., *Red Rock Holdings, Ltd. v. Union Bank Trust Co., No. 98-9220, 181 F.3d 83 (table), 1999 WL 310482* at *1 (2d Cir. May 6, 1999) ("we direct that the judgment be modified to provide (1) that the dismissal is without prejudice to a motion for reinstatement of the present action based on a certification by [plaintiff] that, following the present forum non conveniens dismissal, [plaintiff] has made prompt and reasonable attempts to initiate action in Israel and has been unable to receive an adjudication under the laws of that country, such that there was no 'adequate alternative forum' within the meaning of the pertinent authorities, and (2) that upon such a motion, the district court will reassess the adequacy of the Israeli forum, and if it determines that there was not an adequate forum, it will grant the motion for reinstatement and deem any applicable statute of limitations to have been tolled by the initiation of the present action."); *In re Rezulin Prods. Liab. Litig., 214 F. Supp. 2d 396, 401 (S.D.N.Y. 2002)* (FNC dismissal conditioned on consent to personal jurisdiction in foreign court, waiver of statute of limitations and other conditions); *Valarezo v. Ecuadorian Line, Inc., 2001 U.S. Dist. LEXIS 8942, 00 Civ. 6387, 2001 WL 740773* at *5

(S.D.N.Y. June 29, 2001) (same); *Doe v. Hyland Therapeutics Div., 807 F. Supp. 1117, 1131-33 (S.D.N.Y. 1992)* (discussing the appropriate conditions to an FNC dismissal).

[*64]

## B. The Size of Plaintiff's Recovery in Russia Does Not Render Russia an Inadequate Forum

Plaintiff Helga Varnelo asserts that because "Russian law does not provide for damages to the relatives for pain and suffering of deceased prior to his dying," and because Russian statutes are notably stingy in granting recovery for work-related injuries, plaintiff would have "little chance of success for a recovery in excess of the $ 49,000" already received under the Service Agreement. (Dkt. No. 17: Edelman Aff. Ex. 1: Kargopolov 6/6/02 Aff. PP 5-6.) n33 Defendant agrees that "it seems unlikely [plaintiff] would recover more than $ 49,000 at law in Russia." (Dkt. No. 13: Eastwind Br. at 8.)

    n33 Professor Kargopolov's affirmation, albeit less than clear, appears to assert that, although Russian law would award plaintiff damages of $ 49,000 under the Service Agreement, plaintiff would also be entitled under Russian statutory law to total damages of: (1) $ 10,000 pursuant to a widow's right to recover three years' of Stanislav's salary, or (2) $ 871 under Russian labor insurance law. (Id. P 5.) Plaintiff's brief seems to confirm this, stating: "the widow would probably not receive any more than her contractual right and, at most, about $ 10,000." (Dkt. No. 16: Pl. Br. at 3.)

[*65]

Under well-settled case law, however, lower recovery in Russia would not render that forum inadequate. The fact that "the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum . . .should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry." *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 247, 102 S. Ct. 252, 261, 70 L. Ed. 2d 419 (1981);* accord, e.g., *Alfadda v. Fenn, 159 F.3d 41, 45 (2d Cir. 1998); Capital Currency Exch., N.V. v. National Westminster Bank PLC, 155 F.3d 603, 610-11 (2d Cir. 1998)* ("[A] forum may be adequate even if it does not provide a plaintiff with causes of action that are identical to those plaintiff alleged in an American court. . . . Although it appears that plaintiffs might not be able to recover in England on some of their common law claims, the essential subject matter of the