# EXHIBIT E-4

from me in square brackets):

"*Section 1 : General provisions*
*Art 4*
1    *If the defendant is not domiciled in a Member State, the jurisdiction of the courts of each Member State shall, subject to Articles 22 and 23, be determined by the law of that Member State.*

*[Articles 22 and 23 deal with exclusive jurisdiction and jurisdiction agreements respectively]*
...
*Section 5 : Jurisdiction over individual contracts of employment*

*Art 18*
1    *In matters relating to individual contracts of employment, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5.*

    *[Article 5 is not material for these purposes]*

2    *Where an employee enters into an individual contract of employment with an employer who is not domiciled in a Member State but has a branch, agency or other establishment in one of the Member States, the employer shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that Member State.*
...
*Art 20*
1    *An employer may bring proceedings only in the courts of the Member State in which the employee is domiciled.*
...
*Art 21*
*The provisions of this Section may only be departed from by an agreement on jurisdiction:*
1    *which is entered into after the dispute has arisen; or*
2    *which allows the employee to bring proceedings in courts other than those indicated in this Section.*"

60.    In outline, the Claimants' argument is this:

a.    Each of the Defendants stands in the position of the Claimants' employer, their UK Contracts and Bonus Contracts together making up the totality of the terms of the Claimants' employment. Indeed, Guy Carpenter and MMC are expressly suing on that basis in the US

Proceedings and are seeking to enforce obligations which are characteristic only of an employer/employee relationship.

b. The claims being brought in the US Proceedings are "*matters relating to individual contracts of employment*". In this respect, the terms of the Complaint and the basis of the disclosure application speak for themselves.

c. MSL is an establishment within the meaning of Art 18(2). As such, Guy Carpenter and MMC are deemed to be domiciled here for the purposes of Section 5 of the Regulation.

d. Even if that were not so, Art 4(1) provides that for non Member State defendants, each Member State shall apply its own law on questions of jurisdiction. Given that the Regulation is part of English law, it governs whether there is jurisdiction here.

e. On either basis, the Claimants can only be sued here pursuant to Art 20(1).

f. The New York jurisdiction clause does not catch the claims being advanced in the US Proceedings.

g. Even if it did, Art 21(1) renders it invalid.

61. Thus, the Claimants argue that they are entitled to be sued here and only here by each of the Defendants under both their UK Contracts and the Bonus Contracts and seek a declaration to that effect.

62. The Claimants seek an anti-suit injunction to enforce that entitlement. In outline the reasons are these:

a.  Whilst the use of anti-suit injunctions as between Member States (at least as regards matters covered by the Regulation) is no longer available to enforce the jurisdictional provisions of the Regulation, it remains open to the Court to grant such relief against a defendant domiciled in a non Member State. The rationale used to develop the body of case law which resulted in anti-suit injunctions between member states falling out of use does not apply where the defendant is domiciled in a non-member state, Courts in the US being under no compulsion to follow the provisions of the Regulation.

b.  Section 5 is of mandatory application and is in terms that it cannot be contracted out of, save where an agreement is reached after a dispute has arisen. In that respect, it shares the same status as many other aspects of English law which are designed to protect employees. All are part of the price of doing business in this jurisdiction. Public policy dictates that such protections are effectively enforced.

c.  In cases in which mandatory jurisdiction is derived from the Regulation (as here), the Court has no discretion to decline jurisdiction in favour of another jurisdiction, even if that other jurisdiction is a non Member State [see *Owusu -v- Jackson* [2005] 2 WLR 942; [2005] QB 801]. Granting an anti-suit injunction in these circumstances is to give effect to that rule.

d.  The basic effect of Section 5 of the Regulation is to write into every contract of employment for UK employees an exclusive jurisdiction clause for claims by employers against employees in favour of this jurisdiction. The Court is being asked to enforce that clause in the same way as it routinely enforces jurisdiction clauses which are expressly (as opposed to impliedly) set out in contracts.

**The English jurisdiction clause in schedule IID**

63.    In addition, the Claimants rely on the English jurisdiction clause in Schedule IID to the Bonus Contracts.

64.    If the Court is satisfied that the New York jurisdiction clause has fallen away, then prima facie the Court should enforce the forum chosen by the parties, namely this jurisdiction.

65.    Even if the New York jurisdiction clause has not fallen away in its entirety, the parties have nonetheless agreed to submit to this jurisdiction in matters relating to Schedule IID. The US Proceedings are matters relating to Schedule IID and for that reason also the jurisdiction clause in favour of this jurisdiction should be enforced.

**Forum non conveniens**

66.    The Claimants also rely on the classic forum non conveniens principles. In outline:

a.    The Claimants were employed here, one of their employers is domiciled here, 90% of the business broked by the unit they work for was broked in London and the conduct complained of relates to acts which are said to have occurred here and in relation to other employees domiciled here. Nothing at all is said to have happened in New York, still less anything material. This is, in short, the appropriate and natural forum in which to hear the dispute.

b.    The New York proceedings are unconscionable, vexatious or oppressive. Specifically:

i.    The apparent motivation behind the institution of proceedings in the US is in order that Guy Carpenter and MMC may avail themselves of the wide ranging disclosure regime there in operation, including in particular the practice of ordering oral

disclosure (a procedure which is, of course, unavailable here). The disclosure order already made in the US Proceedings demonstrates that the jurisdiction the US Court is willing to exercise is, when viewed through English eyes, exorbitant. In particular, it was granted against the background of a jurisdictional challenge on the express basis that it be complied with before the jurisdictional challenge is heard and made in the absence of two of the three Claimants having been served with the US Proceedings.

ii.     The named employer in the UK Contracts is MSL, a UK entity. It is the natural party to complain if the Claimants are alleged to have been in breach of their duties qua employees. MSL is not party to the US Proceedings and no proceedings have been commenced in its name. Guy Carpenter and MMC have cast themselves as the Claimants' employers for the purpose of grounding New York jurisdiction and advancing claims on the basis that the Claimants are in breach their duties owed to Guy Carpenter and MMC qua employees. Having done so, they should be fixed with the natural forum for such a dispute.

iii.    None of the Claimants are resident in the US, all are resident here. It would be inconvenient and costly for them to have to defend proceedings in New York. Further, that Guy Carpenter and MMC sought relief on terms that the Claimants be compelled to travel to the US to attend a deposition demonstrates the width of the relief they are willing to seek there and that an order was made compelling attendance outside the US jurisdiction demonstrates the width of relief that can be granted there.

iv.    Even if the Court was not satisfied that the Regulation is in play, it enshrines a principle that employees working in this jurisdiction are entitled to be sued here. The public policy considerations behind the Regulation are of universal application, making proceedings elsewhere unconscionable, vexatious or oppressive.

v.    The Claimants will further say that the maintenance of the US Proceedings is unjust in all the circumstances.

**Urgency**

67.    To some extent the urgency of this application is a function of the developing situation in the US Proceedings and whether or not the Defendants are willing to offer undertakings not to take substantive steps in the US Proceedings pending it being heard. The Claimants may need to seek to have this application heard on an urgent basis and if so, a further witness statement will be served in respect of the same.

**Conclusion**

68.    The Court is invited to grant the relief sought.

I believe that the facts stated in this witness statement are true to the best of my knowledge, information and belief.

SIGNED ......................................

DATED ...25 May 2007............

21

Katharine Clare Payne

2nd witness statement

Exhibit KCP2

Dated 29 May 2007

On behalf of Claimants

<u>Claim No. 2007 Folio 945</u>

<u>IN THE HIGH COURT OF JUSTICE</u>

<u>QUEEN'S BENCH DIVISION</u>

<u>COMMERCIAL COURT</u>

B E T W E E N :

(1) JULIAN SAMENGO-TURNER

(2) RONALD DENNIS WHYTE

(3) MARCUS HOPKINS

<u>Claimants</u>

-and-

(1) MARSH SERVICES LIMITED

(Formerly MARSH CORPORATE SERVICES LIMITED

and prior to that J&H MARSH & MCLENNAN (SERVICES) LIMITED)

(2) GUY CARPENTER & COMPANY LCC

(3) MARSH & MCLENNAN COMPANIES INC

<u>Defendants</u>

SECOND WITNESS STATEMENT OF KATHARINE CLARE PAYNE

I, KATHARINE CLARE PAYNE, solicitor, of One America Square, Crosswall, London, EC3N 2PN, SAY AS FOLLOWS:

### Introduction

1.      I am partner in the firm of Messrs. Elborne Mitchell of One America Square,

Crosswall, London, EC3N 2PN. I have conduct of this matter on behalf of the Claimants. I make this witness statement to be filed in support of the Claimants' application for an interim anti-suit injunction.

2.     Where the content of this witness statement is within my own knowledge it is true. Where the content of this witness statement is not within my own knowledge it is derived from my conduct of this matter and instructions received and is true to the best of my knowledge, information and belief. Exhibited to this witness statement is exhibit "KCP2" which I will refer to by page number herein.

3.     I refer to my first witness statement herein in which the background to this action and the relief sought in it is set out. The Claimants rely on that witness statement in support of this application.

4.     This witness statement will address the question of why the Court's assistance is sought on an urgent basis.

**Events since signing my last statement**

5.     The Claim Form herein was issued on 29 May 2007. The Respondents' solicitors, Messrs. Herbert Smith, indicated in correspondence on 25 May 2007 that they had instructions to accept service of these proceedings [pp 31 "KCP2"]. Accordingly, on 29 May 2007 the proceedings were served on all Respondents at the offices of Messrs. Herbert Smith.

**Urgency**

6.     As set out in my first witness statement, Second and Third Respondents ("MMC" and "Guy Carpenter" respectively) have commenced proceedings against the Claimants in New York arising out of the Claimants' employment by the Respondents ("the US Proceedings"). The substance of the Claimants' claim in this action is that they say pursuant to the provisions of Section 5 of Council Regulation (EC) 44/2001 ("the Regulation"), any proceedings against

them in respect of their employment must be brought in this jurisdiction. Accordingly, the Claimants seek a declaration to that effect and a permanent anti-suit injunction restraining the US Proceedings.

7.  The Court's urgent assistance is sought on an interim basis because, as set out in my first witness statement, on 18 May 2007 MMC and Guy Carpenter obtained an order in the US Proceedings requiring the Claimants to give documentary disclosure and answer interrogatories by 1 June 2007 and further that they attend for oral disclosure (depositions) in London or in the US on a date agreed between the parties between 4 and 8 June 2007 inclusive or, at the sole discretion of MMC and Guy Carpenter, in the following week between 11 and 15 June 2007 inclusive.

8.  In correspondence between my firm and the Respondents' London solicitors, Messrs. Herbert Smith, an undertaking has been sought not be enforce the order of 18 May 2007 pending the hearing of this Claim [pp29-30 "KCP2"]. That undertaking has not been provided as at noon on 29 May 2007, being the date and time for a response required by my firm [pp 32 "KCP2"] and hence urgent relief is sought.

9.  The Claimants do not wish to be in breach of an order of the New York Court. However, if they comply with the order of 18 May 2007 there is a risk that they will be held to have submitted to the jurisdiction there (which they do not wish to do) and even though a jurisdictional challenge has already been filed there by the one Claimant who has been served with the US Proceedings (Mr Whyte).

10. Even if the Claimants do not thereby submit:

    a.  The answering of questions and provision of documents is one of the substantive grounds of relief sought in the US Proceedings, which proceedings the Claimants say should never have been brought for all

3

the reasons set out in my first witness statement. If the Claimants are forced to comply with the order of 18 May 2007, therefore, half the action in the US Proceedings will have already been effective before the Claimants arguments on jurisdiction can be heard. In that respect, it would render nugatory the substantive relief sought in this Court.

b.   The Claimants rely in particular on the order that the Claimants attend for depositions as being oppressive, vexatious and unconscionable in and of itself. That horse will have bolted if they are obliged to attend for depositions before their arguments on jurisdiction can be heard.

**The balance of convenience**

11.   The Claimants say that the balance of convenience is in favour of granting the injunction sought for the following reasons:

a.   The Claimants may be irremediably prejudiced if they have to comply with the order of 18 May 2007 granted in the US Proceedings in that to do so may be held to be a submission to the jurisdiction there.

b.   Further, in the absence of an injunction :

   i.   the US Proceedings will achieve a substantial part of their object before the arguments on jurisdiction can be heard; and

   ii.   The US Proceedings will result in the Claimants being subject to a procedure (oral disclosure) which is itself one of the grounds on which the Claimants rely in support of their arguments that the US Proceedings are vexatious, unconscionable or oppressive.

c.   The Claimants have offered to provide written undertakings to comply with their obligations as employees and remain willing to do so.

4

d.    No prejudice will be suffered by MMC and Guy Carpenter by the grant of the injunction sought. They are both already aware of the identities of the employees the Claimants are alleged to have solicited and in truth the disclosure order was sought in an attempt to gather evidence to bring further claims against the Claimants, rather than to protect the position of MMC and Guy Carpenter.

e.    Although a jurisdictional challenge is on foot in the US Proceedings, this Court is the natural forum in which to determine whether this Court is the proper forum for the dispute and prima facie should make its decision before any such ruling in the US Proceedings.

f.    The nature of the Part 8 claims is such that there is unlikely to be any material dispute of fact or the need for either extensive or oral evidence. This being so, subject to the availability of the Court, it can be brought to trial reasonably swiftly, in weeks rather than months. The grant of a short term interim injunction will do no harm to MMC and Guy Carpenter in the interim.

g.    The order already procured for MMC and Guy Carpenter provides them with illegitimate advantages : namely by obliging the Claimants to submit to oral disclosure and to give both oral and written disclosure and answer interrogatories before a jurisdictional challenge can be heard. There is no injustice in depriving them of those illegitimate advantages, in particular on a short term basis.

**Other matters**

12.   The Application Notice for the interim anti-suit injunction and this witness statement will be served on the Defendants at the offices of their London solicitors today. They will be advised of the time when the Court can hear the application. The application is, therefore, on notice, or at least ex parte on

notice.

13.    At pp 10-37 "KCP2" is the totality of the correspondence between my firm and the Defendants' solicitors since my firm became involved in this matter in April 2007. I do not believe that anything turns on it but I exhibit it in the interests of making full disclosure.

14.    There have been some exchanges between my firm and Messrs. Herbert Smith on the question of Mr Hopkins (who is presently in Australia) attending a meeting to answer questions about the affairs of a client he dealt with in his capacity as an employee. The present state of play on that is that Mr Hopkins is to telephone his boss directly to discuss it.

15.    There is no progress to report on Mr Whyte's challenges to the order of 18 May 2007 in the US Proceedings or in respect of his jurisdictional challenge there. Those matters are in the system in New York and it continues to be unknown when they will be heard.

**Conclusion**

16.    The Court is invited to grant the relief sought.

I believe that the facts stated in this witness statement are true to the best of my knowledge, information and belief.

SIGNED ...........................................

DATED ..29 May 2007.................

# Application Notice

- You must complete Parts A and B, and Part C if applicable
- Send any relevant fee and the completed application notice to the court with any draft order, witness statement or other evidence
- It is for you (and not the court) to serve this application notice

<table>
<tr><td colspan="2">IN THE HIGH COURT OF JUSTICE<br>QUEEN'S BENCH DIVISION<br>COMMERCIAL COURT<br>ROYAL COURTS OF JUSTICE</td></tr>
<tr><td>Claim No.</td><td>2007 Folio 945</td></tr>
<tr><td>Warrant no.<br>(if applicable)</td><td></td></tr>
<tr><td>Claimant(s)<br>(including ref.)</td><td>Julian Samengo-Turner<br><br>Ronald Dennis Whyte<br><br>Marcus Hopkins</td></tr>
<tr><td>Defendant(s)<br>(including ref.)</td><td>Marsh Services Limited<br><br>Guy Carpenter & Company LLC<br><br>Marsh & McLennan Companies Inc</td></tr>
<tr><td>Date</td><td></td></tr>
</table>

---

**You should provide this information
for listing the application**

Time estimate                (hours)        (mins)

Is this agreed by all parties?   Yes [ ]    No [ ]

Please always refer to the Commercial Court Guide for details of how applications should be prepared and will be heard, or in a small number of exceptional cases can be dealt with on paper.

---

### Part A

**1. Where there is more than one claimant or defendant, specify which claimant or defendant**

(The claimant) XXXXXXXXXXX [1]

**2. State clearly what order you are seeking (if there is room) or otherwise refer to a draft order (which be attached)**

intend(s) to apply for XXXXXXXXXXXXXXXXXXXXXXXXXXXX [2]

an interim anti-suit injunction in the terms of the draft attached to this Application Notice on the grounds set out in the Second Witness Statement of Katharine Clare Payne which may be deemed incorporated herein.

**3. Briefly set out why you are seeking the order. Identify any rule or statutory provision**

because [3]

it is just and convenient to do so pursuant to section 37 of the Supreme Court Act 1981 and see further First and Second Witness Statement of Katharine Clare Payne.

---

The court office at the Admiralty & Commercial Registry, Royal Courts of Justice, Strand, London WC2A 2LL is open between 10 am and 4.30 pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

N244(CC) Application Notice (4.99)                                    Laserform International 8/99

**Part B**

(The claimant) (XXXXXXXXXXXX) [(1)] wishes to rely on: *tick one:*

the attached (witness statement)(XXXXXXX) ☐  (XXXXXXXXXX XXXXXXXXXXXXX) 's (XXXXXXXXXXXXX) ☐

(XXXXXX)(XX X XXX X X X X XXX X XX) (XXXX XXXXXXX) ☐

| Signed | *Giayne* | Position or office held | PARTNER |
|---|---|---|---|
| | (Applicant) (XXXXXXXXXXX) ('s solicitor) | (if signing on behalf of firm, company or corporation) | |

| | Address to which documents about this claim should be sent (including reference if appropriate) [(4)] | | |
|---|---|---|---|
| *If you are not already a party to the proceedings, you must provide an address for service of documents* | Elborne Mitchell Solicitors One America Square Crosswall London Ref: KCP/RHJ/30947 | | *if applicable* |
| | | Tel. no. | 020 7320 9000 |
| | | fax no. | 020 7320 9111 |
| | | DX no. | |
| | Postcode: EC3N 2PR | e-mail | payne@elbornes.com |

ANTI-SUIT INJUNCTION

<u>Claim No. Folio</u>

<u>IN THE HIGH COURT OF JUSTICE</u>

<u>QUEEN'S BENCH DIVISION</u>

<u>COMMERCIAL COURT</u>

<u>MR/MRS JUSTICE [                    ]</u>

<u>[DATE]</u>

B E T W E E N :

(1) JULIAN SAMENGO-TURNER

(2) RONALD DENNIS WHYTE

(3) MARCUS HOPKINS

<u>Claimants/Applicants</u>

-and-

(1) MARSH SERVICES LIMITED

(Formerly MARSH CORPORATE SERVICES LIMITED

and prior to that J&H MARSH & MCLENNAN (SERVICES) LIMITED)

(2) GUY CARPENTER & COMPANY LCC

(3) MARSH & MCLENNAN COMPANIES INC

<u>Defendants/Respondents</u>

PENAL NOTICE

IF YOU, MARSH SERVICES LIMITED OR YOU, GUY CARPENTER & COMPANY LLC OR YOU, MARSH & McLENNAN COMPANIES INC DISOBEY THIS ORDER YOU MAY BE HELD IN CONTEMPT OF COURT AND MAY BE IMPRISONED, FINED OR HAVE YOUR ASSETS SEIZED

AND ANY OTHER PERSON WHO KNOW OF THIS ORDER AND DOES ANYTHING WHICH HELPS OR PERMITS THE RESPONDENT TO BREACH THE TERMS OF THIS ORDER MAY ALSO BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE IMPRISONED, FINED OR HAVE THEIR ASSETS SEIZED

1

**THIS ORDER**

1.    This is an anti-suit injunction made against Marsh Services Limited, Guy
Carpenter & Company LLC and Marsh & McLennan Companies Inc ("the First
Respondent", "the Second Respondent" and "the Third Respondent"
respectively, together "the Respondents") by [Mr/Mrs Justice] [              ]
on the application of Julian Samengo-Turner, Ronald Dennis Whyte and
Marcus Hopkins ("the Applicants"). The Judge read the witness statements
listed in Schedule A and accepted the undertakings given in Schedule B at
the end of this Order.

2.    This Order was made at a hearing with notice to the Respondent. The
Respondent has a right to apply to vary or discharge the Order see paragraph
8 below.

3.    If there is more than one Respondent -

    a.    Unless otherwise stated, references in this Order to "the Respondent"
mean both or all of them; and

    b.    This Order is effective against any Respondent on whom it is served or
who is give notice of it.

**ANTI-SUIT INJUNCTION**

4.    Until trial or further order of the Court, the Respondent must not continue or
prosecute the proceedings commenced by the Second and Respondents
against the Claimants in the United States District Court Southern District of
New York (Index Number 07 Civ 3580 - "the US Proceedings").

5.    This prohibition includes in particular seeking to enforce, execute or compel
compliance with the order of Judge Denise Cote made in the US Proceedings
on 18 May 2007.

**EXCEPTIONS TO THIS ORDER**

6.　　There are no exceptions to this Order.

**COSTS**

7.　　The costs of this application are reserved to the judge hearing the trial of this action.

**VARIATION OR DISCHARGE OF THIS ORDER**

8.　　Anyone served with or notified of this order may apply to the court at any time to vary or discharge this order (or so much of it as affects that person), but they must first inform the Applicants' solicitors. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicants' solicitors in advance.

**INTERPRETATION OF THIS ORDER**

9.　　A Respondent who is an individual who is ordered not to do something must not do it himself or in any other way. He must not do it through others acting on his behalf or on his own instructions or with his encouragement.

10.　　A respondent which is not an individual which is ordered not to do something must not do it itself or by way of its directors, officers, partners, employees or agents or in any other way.

**PARTIES OTHER THAN THE APPLICANT AND RESPONDENT**

11.　　**Effect of this Order**

It is a contempt of Court for any person notified of this Order knowingly to assist in or permit a breach of this Order. Any person doing so may be imprisoned, fined or have their assets seized.

12.　　**Persons outside England and Wales**

3

a.   Except as provided in paragraph (b) below, the terms of this order to not affect or concern anyone outside the jurisdiction of this court.

b.   The terms of this order will affect the following persons in a country or state outside the jurisdiction of this court:

   i.   The Respondent or its officer or agents appointed by power of attorney;

   ii.   Any person who:

      (1)   is subject to the jurisdiction of this court;

      (2)   has been given notice of this order at his residence or place of business within the jurisdiction of this court; and

      (3)   is able to prevent acts or omissions outside the jurisdiction of this court which constitute or assist in a breach of the terms of this order; and

   iii.   Any other person, only to the extent that this order is declared enforceable by or is enforced by a court in that country or state.

## COMMUNICATIONS WITH THE COURT

13.   All communications to the court about this order should be sent to Room EB09, Royal Courts of Justice, Strand, London, WC2A 2LL quoting the case number. The telephone number is 0207 947 6826.

The offices are open between 10am and 4.30 pm Monday to Friday.

4

**SCHEDULE A**

**WITNESS STATEMENTS**

The Applicants relied on the following witness statements :

- The first witness statement of Katharine Clare Payne signed on [25] May 2007

- The second witness statement of Katharine Clare Payne signed on [29] May 2007

filed on behalf of the Applicants.

**SCHEDULE B**

**UNDERTAKINGS GIVEN TO THE COURT TO THE APPLICANTS**

a.    As soon as practicable the Applicants will serve this Order on the Respondent.

b.    Anyone notified of this order will be given a copy of it by the Applicant's legal representatives.

c.    If this order ceases to have effect the Applicant will immediately take all reasonable steps to inform in writing anyone whom he has given notice of this order, or who he has reasonable grounds for supposing may act upon this order, that it has ceased to have effect.

**NAME AND ADDRESS OF APPLICANTS' LEGAL REPRESENTATIVES**

The Applicant's solicitors are :

Ms Katharine Payne & Ms Rosalind Jones of :

Messrs. Elborne Mitchell,

One America Square,

Crosswall,

London,

EC3N 2PR.

Telephone :

      Office hours : 020 7320 9000

      Out of office hours : 07730 911 820 (Ms Payne)

Fax : 020 7320 9111

E-mail : Payne@ Elbornes.com (Ms Payne) & Jones@Elbornes.com (Ms Jones)