# EXHIBIT H

Katharine Clare Payne

3rd witness statement

Exhibit KCP3

Dated 5 June 2007

On behalf of Claimants

Claim No. 2007 Folio 945

<u>IN THE HIGH COURT OF JUSTICE</u>

<u>QUEEN'S BENCH DIVISION</u>

<u>COMMERCIAL COURT</u>

B E T W E E N :

(1) JULIAN SAMENGO-TURNER

(2) RONALD DENNIS WHYTE

(3) MARCUS HOPKINS

<u>Claimants</u>

-and-

(1) MARSH SERVICES LIMITED

(Formerly MARSH CORPORATE SERVICES LIMITED

and prior to that J&H MARSH & MCLENNAN (SERVICES) LIMITED)

(2) GUY CARPENTER & COMPANY LCC

(3) MARSH & MCLENNAN COMPANIES INC

<u>Defendants</u>

THIRD WITNESS STATEMENT OF KATHARINE CLARE PAYNE

I, KATHARINE CLARE PAYNE, solicitor, of One America Square, Crosswall, London, EC3N 2PN, SAY AS FOLLOWS:

## Introduction

1.     I am the same Katharine Payne who signed the first and second witness

statements herein. I make this witness statement in reply to the first witness statement of Lynsey Mansfield, filed for the Defendants on 1 June 2007.

2.  Where the content of this witness statement is within my own knowledge it is true. Where the content of this witness statement is not within my own knowledge it is derived from my conduct of this matter and instructions received and is true to the best of my knowledge, information and belief. Exhibited to this witness statement is exhibit "KCP3" which I will refer to by page number herein.

**The Claimants' Employment**

3.  Ms Mansfield says that the Claimants are employed by MSL pursuant to the UK Contracts and that they are not employed by any other company in the MMC Group. The status of the Bonus Contracts will be a question of law for the Court hearing the application, to be decided by reference to the material factual background. In addition to the contents of my first and second witness statement, the Claimants also rely on the following in reply to what Ms Mansfield has to say on this topic.

**The US Proceedings**

4.  The fact is that MMC and Guy Carpenter are suing the Claimants in the US Proceedings on the express basis that the Claimants are their employees. Ms Mansfield's explanation for this is limited to one sentence, namely [Mansfield para 9] :

    *"This was pleaded in error"*

5.  That statement is totally inconsistent with the position adopted for MMC and Guy Carpenter in the US Proceedings, including in a sworn declaration by Ms Mansfield herself. Specifically:

    a.  MSL is not party to the US Proceedings nor referred to anywhere in

2

either the Complaint or any other court document filed on behalf of the US plaintiffs.

b.    The Complaint is littered with references to the Claimants being employed by MMC and Guy Carpenter [eg paragraphs 11 to 16, 18, 28, 36, 39 : pp104-110 KCP1]. Those pleas are obviously deliberate. Similarly, the Claimants are accused of soliciting other employees of MMC and Guy Carpenter in the Complaint and in other documents filed for them in the US Proceedings.

c.    The Memorandum of Law filed in support of MMC and Guy Carpenter's application for the order of 18 May 2007 is likewise littered with references to the Claimants being employed by them [pp41-54 KCP2]. That Memorandum specifically refers to the Claimants' *"duties of loyalty as employees"* [p52 KCP2] and says that the Claimants *"have a panoply of obligations to their employer, Guy Carpenter"* [p53 KCP2]. Again, those pleas are obviously deliberate.

d.    MMC and Guy Carpenter relied on the Claimants' status as employees in support their claim for an order for oral depositions, saying that in that capacity the Claimants were obliged to make themselves available to MMC and Guy Carpenter. Again, a deliberate statement.

e.    Ms Mansfield herself signed a declaration in the US Proceedings, stating *"I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct"* [p238 KCP1]. Whilst she exhibits the UK Contracts to that declaration, she refers throughout it to the Claimants' employment with Guy Carpenter and accuses them of soliciting other Guy Carpenter employees [eg para 5, 6, 8, 9, 17, 24 : pp233-237 KCP1]. Ms Mansfield has made no attempt to explain this.

6.    It is plain and obvious, the Court is invited to find, that MMC and Guy

3

Carpenter made a deliberate decision to sue the Claimants qua employer. In the absence of any protest to the contrary, it may be assumed that they did so as a necessary constituent of the claims being advanced in the US Proceedings. For example, it is highly questionable (at least as a matter of English law) as to whether the underlying obligations relied on by MMC and Guy Carpenter in the US Proceedings are valid and enforceable in the absence of an employment relationship (being otherwise in unreasonable restraint of trade). It is also probable that MMC and Guy Carpenter have adopted this stance as a precursor to possible future claims, in the event that they consider that they have sufficient evidence to advance them.

7.  Notably, Ms Mansfield does not say that the US Proceedings are to be amended to remove the "*error*" to which she refers, nor does she say she will be filing a corrective declaration in those proceedings. Likewise, she does not say whose error that is.

8.  Also notably, Ms Mansfield says that she understands from the Defendants' US attorneys that the "*error*" to which she refers "*is of no consequence in the US Proceedings as the question of jurisdiction there is determined solely by the provisions of the contract*" [Mansfield : para 9]. This is of note because she refers only to the question of jurisdiction, not to the substantive relief claimed. She does not assert that the Defendants are entitled to the relief claimed in the event that the Claimants are not employees of MMC and Guy Carpenter and her failure to address this matter in the witness statement speaks for itself.

9.  Moreover, the Claimants do not accept that the Defendants' "error" is of no consequence to the US proceedings. Mr Whyte's status as an employee is part of the protest he has put in the New York on the question of jurisdiction, as well as numerous other points which have been made for him [pp241-243, 250-250 KCP1]. The matter does not stand or fall on the terms of the Bonus Contracts.

4

10.   In the event that this matter proceeds to trial, the Claimants will of course wish to cross examine Ms Mansfield on the *"error"* to which she refers.

**The terms of the Bonus Contracts**

11.   Ms Mansfield describes what she says are the reasons why the Bonus Contracts are subject to New York Law and jurisdiction [Mansfield paras 11-12]. The Claimants are not in a position to comment on the internal workings of the MMC Group or the factors that motivated them to draft the Bonus Contracts as they have.

12.   However, given that Schedule IID is subject to English law and jurisdiction, the Defendants have already allowed for the possibility of litigation outside New York and the matters on which Ms Mansfield relies are already subject to an exception for UK employees. She does not explain why this is so (although she does refer to the existence of the English law and jurisdiction clause - [para 11]). Perhaps that provision was included because it was considered that it had to be, given the terms of section 5 of the Regulation. Indeed, given the matters on which Ms Mansfield relies, it is difficult to see why Schedule IID contains an English law and jurisdiction unless the Defendants felt they had no choice but to include it.

**The underlying obligations relied on**
   *The Co-operation Clause*

13.   The Claimants dispute that the Co-Operation Clause is binding on them, for the reasons which follow.

14.   The Claimants were each sent the Bonus Contracts in about November 2005 under cover of a letter which provided that they were *"free to raise any questions about the agreement's terms or their meaning from the Company's viewpoint by calling Mel Schwarz"*. The Claimants understand Mel Schwartz

5

to be in–house legal counsel for MMC and with responsibility for Guy Carpenter matters [p1 of KCP3] - that page is the letter to Mr Whyte, the letters to the other two Claimants are not to hand at present]. The letter indicated that to be eligible for receipt of the award, the Terms and Conditions should be executed and returned by the Claimants on or before December 30 2005.

15. The Claimants expressed concerns to Geoff Bromley, the Head of GC Fac, Europe and Asia, as to the restrictive nature of the contractual terms which were contained in the Bonus Contracts and indicated that they were not prepared to sign Bonus Contracts which contained these terms.

16. Mr Bromley arranged a telephone conference call with Mr Schwarz to discuss the Claimants' concerns about the terms of the Bonus Contracts. The Claimants are unable to recall exactly when the call took place beyond that it was in October/November 2005. The participants on the conference call included the second and third Claimants and Mr Bromley in London and Mr Schwarz in New York. During the course of the call, Mr Schwarz said that the terms of the Bonus Contracts were fixed and unchangeable. However, he said that while the restrictions in the contract might look very broad, Guy Carpenter would never apply the letter of the contract against the Claimants in the event that the Claimants ever left GC Fac, that it was not Guy Carpenter's intent to do so or how Guy Carpenter did business. Mr Schwarz also said that in any event the terms may well be unenforceable.

17. The Claimants subsequently signed the Bonus Contracts, albeit many months after the imposed deadline of December 30 2005, but only after :

a. having received the assurances from Mr Schwarz referred to above and;

b. having been informed by their management including amongst others, Mr Bromley and Mr Spiller, the chairman of GC Fac and President and CEO

6

of Guy Carpenter, that their continued failure to sign had become a political issue within the organisation and that they had to sign the Bonus Contracts. On this basis the Claimants concluded that in reality they had no other choice but to sign the Bonus Contracts, or risk alienating either themselves and/or their part of the business from the rest of the organisation.

18.   The precise formulation of these matters as a defence to the claims asserted against the Claimants is a question of law but at a minimum the Claimants say that there is a collateral contract in existence not to enforce the terms of the Bonus Contracts.

*Repayment of bonuses*

19.   The Defendants say that the Claimants are liable to repay the bonuses awarded under the Bonus Contracts. The Claimants dispute this.

20.   The basis for the Claimants' position with regard to repayment will be a matter for debate in submissions (either in proceedings here or the US Proceedings) and will be a function of quite how the claim to repayment is put. In outline, the Claimants say that the repayment provisions are an unenforceable penalty and/or that the underlying obligations relied on, breach of which is relied on as Detrimental Activity, are unenforceable.

21.   For example, working for a competitor within one year of receiving a payment under the Bonus Contracts is Detrimental Activity. The last payments were made on 1 January 2007. This means that, when the Claimants' notice periods expire in October 2007 and they take up positions with their new employer, they will then be engaging in Detrimental Activity in accordance with the letter of the Bonus Contracts. The Claimants say that an obligation on them not to work even after their notice periods have expired is unenforceable being in unreasonable restraint of trade. Other provisions in the Bonus Contracts are likewise objectionable.

7

**The Claimants' employment in practice**

22.   Ms Mansfield apparently accepts that in practice the Claimants provide their services to companies other than MSL, which does not itself transact any broking business.   The Claimants had not applied their minds to the identity of their employer prior to these proceedings having been initiated but, if asked, would have said that they worked for GC Fac. The First and Second Claimants were part of GC Fac's senior management, to whom the Third Claimant reported directly.   The Claimants never identified MSL as being their employer.

23.   The First and Second Claimants operated under a chain of control emanating directly from Mr Cherkasky, being the CEO and President of the MMC Group in the following way:  the First and Second Claimants reported to Geoff Bromley, the Head of GC Fac, Europe and Asia, based in London and Britt Newhouse, Head of GC Fac, Americas, based in the US, and were under their direction and control.   Both these individuals reported to David Spiller, the Chairman of GC Fac, and President and CEO of Guy Carpenter LLC, who was based in both London and New York.  Mr Spiller reported directly to Mr Cherkasky.   Further, for a number of operational matters, the First and Second Claimants also reported to, and took instructions directly from, David Spiller and were under his direction and control.

24.   The Claimants never received operational or other instructions from MSL, until they received the letter from Lynsey Mansfield of 3 April 2007 following their resignations. The Claimants have never provided any services to MSL.

25.   Decisions on the First and Second Claimants' pay rises and bonus payments were made in concert by David Spiller, Britt Newhouse and Geoff Bromley.

26.   Decisions on the Third Claimant's pay rises and bonuses were decided by the First and Second Claimants to whom he reported.

27.  The Claimants considered themselves to be working for the GC Fac
     organisation, being an organisation which was integrated within Guy
     Carpenter, and presented themselves to the outside world as such, including
     to their clients. The Claimants' business cards bear this out [see p2 of KCP3].
     Further, the Claimants' business email and letterhead all used the logos of
     GC Fac and/or Guy Carpenter and/or MMC [see p3&4 of KCP3], sometimes
     all logos being in combination on the same literature (see the business cards).
     I refer to an example of a letter sent to the Second Claimant from David
     Spiller dated 16 April 2007 which appears at p4 of KCP3.  The letter bears the
     Guy Carpenter logo and Guy Carpenter & Co LLC name and address and
     clearly refers to matters relating to the Second Claimant's work for Guy
     Carpenter.  None of the business cards or letterhead refer to MSL.

## Payments to the Claimants

28.  It is correct that the Claimants received bonus payments in addition to the
     payments made to them under the Bonus Contracts. However, the payments
     made to them under the Bonus Contracts were paid in pounds sterling on a
     PAYE basis (ie with income tax and national insurance deducted before
     payment). That is, the payments made under the Bonus Contracts are
     emoluments of the Claimants' employment for the purposes of UK tax and are
     paid by MSL.

## The background to the US Proceedings

29.  The Claimants do not accept that they have continually refused to comply with
     their obligations [Ms Mansfield para 33]. The inter-solicitor correspondence
     which preceded the US Proceedings is exhibited in KCP 1 from which it is
     apparent that:

     a.  Questions were first asked on 5 April 2007 [pp174-184 KCP1]. In
         response, the Claimants reasonably asked for the basis for those
         questions and indicated a willingness to comply with their garden leave

9

obligations [p187 KCP1]. In the next letter sent on their behalf, on 19 April 2007, the Claimants said in terms that they were willing to sign written undertakings [p191 KCP1].

b.  Messrs. Herbert Smith never chased up their initial request for answers to questions, indeed, did not respond at all to my firm's letter of 19 April 2007 until they received a prompt from my firm, following which they responded on 3 May 2007 (a month after their initial request).   At that juncture, Messrs. Herbert Smith said only that their clients' position was unchanged [p264 KCP1]. The US Proceedings were issued the next day.

c.  On 17 May 2007 my firm set out in correspondence the undertakings the Claimants were willing to sign [pp266-267 KCP1].

d.  The Defendants have never taken the Claimants up on their offer to sign written undertakings.

30.  Moreover:

a.  The validity of the obligation the Defendants seek to enforce (the Co-operation Clause) is in issue (see above); and

b.  The questions the Defendants now want answered, as set out in their Skeleton served on 1 June 2007, are appreciably more modest that those originally asked in correspondence and those subsequently subject to the order of 18 May 2007.

**Service of the US Proceedings**

31.  The Claimants dispute that they can be criticised for not instructing their London solicitors to accept service of the US Proceedings on them. Apart from the Claimants' primary case that there should not be any proceedings in the US in any event, there is no protocol (of the kind relied on by Ms

10

Mansfield [para 35]) for the acceptance of service of foreign proceedings in London.

32.    The Claimants also deny that they have been evading service. Since being put on garden leave, the Claimants have, not unnaturally, taken advantage of the opportunity to go on holiday and have been in and out of the country as a result.

33.    I note the various matters raised in paragraph 18 to 32 of Ms Mansfield's statement concerning the effect on the GC Fac business of the Claimants' resignation. The Claimants are not in a position to comment on these matters, save that they inform me that the key renewal dates are not 1 June, 1 July, 1 September and December as stated in Ms Mansfield's statement but 1 April, 1 July and 1 Jan. Consequently, the renewal date next following the Claimants' resignation on 2 April 2007 does not occur until 1 July.

34.    The Third Claimant also disputes that his holiday in Australia was taken as unauthorised leave, as asserted in paragraph 35 of Ms Mansfield's statement. On 3 April 2007, following his resignation, Mr Hopkins had a meeting with Lynsey Mansfield which took place in Pret a Manger opposite the Marsh McLennan offices in Tower Place in which Mr Hopkins specifically told Ms Mansfield that he was intending to take holiday outside the UK for a period of four to five week. Mr Hopkins asked Ms Mansfield if it was necessary to obtain permission for this and she replied that it was not necessary.

### The Claimants claim for an anti-suit injunction

35.    The Claimants continue to rely on all the points made for them in my earlier witness statements and the skeleton argument already filed on their behalf in connection with their claim for anti-suit injunction. To those points they add the following.

*Rome Convention*

11

36.  Pursuant to the Contracts (Applicable Law) Act 1990, which enacted the
     Rome Convention, an employer cannot, by dint of a choice of law clause,
     deprive an employee of the mandatory protections of the law of the place
     where he works [Rome Convention Art 6].

37.  Part of the mandatory protection afforded to the Claimants is the right to be
     sued here pursuant to the Regulation, which cannot be contracted out of by
     the inclusion of a New York law clause.

38.  In addition, the Claimants cannot be held to covenants which are in
     unreasonable restraint of trade as a matter of English law. The covenants
     relied on by the Defendants are more extensive than those contained in the
     UK Contracts and in all probability unenforceable here (eg see above with
     respect to the period of time during which the Claimants are obliged not to
     work for a competitor, which period exceeds their notice periods). If the
     Defendants are to rely on New York law as putting them in a better position
     than English law would, then that is an additional reason why the Claimants
     say the New York proceedings should be restrained.

*Prosecution of the US Proceedings*

39.  The Defendants' US attorneys have given notice (before their undertakings
     were in place) that they wish to depose the Claimants on 13-15 June 2007
     and have indicated that they wish to do so for a maximum of 7 hours each,
     the maximum permitted by New York procedure [p5-12 KCP3]. The claimants
     rely on that as further evidence of the oppressive nature of the US
     Proceedings.

I believe that the facts stated in this witness statement are true to the best of my
knowledge, information and belief.

SIGNED  ....................................

DATED  ...5 June 2007...............

12

Katharine Clare Payne

3rd witness statement

Exhibit KCP3

Dated 5 June 2007

On behalf of Claimants


Claim No 2007 Folio 945


IN THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

B E T W E E N :

(1) JULIAN SAMENGO-TURNER

(2) RONALD DENNIS WHYTE

(3) MARCUS HOPKINS

Claimants

-and-

(1) MARSH SERVICES LIMITED

(Formerly MARSH CORPORATE SERVICES LIMITED

and prior to that J&H MARSH & MCLENNAN (SERVICES) LIMITED)

(2) GUY CARPENTER & COMPANY LCC

(3) MARSH & MCLENNAN COMPANIES INC

Defendants


This is the Exhibit marked "KCP3" and referred to in the Third Witness Statement of KATHARINE CLARE PAYNE dated this 5th day of June 2007.

Signed: _____

Katharine Clare Payne

# GUY CARPENTER

Ron Whyte
Guy Carpenter & Company, Ltd
Tower Place
London,   UK    EC3R 5BU

Dear Colleague:

Enclosed is a proposed agreement setting forth the Terms and Conditions of the November 1, 2005 Guy Carpenter Special Long Term Incentive Grant.  Please review the document with care; we encourage you to discuss its terms and conditions with your personal legal counsel or other adviser(s).   You should also free to raise any questions about the agreement's terms or their meaning from the Company's viewpoint by calling Mel Schwarz at 917-937-3329.

To be eligible for receipt of the Grant, you must execute the document on the last page and return the original to Arlene Vaquer in the New York office **NO LATER THAN FRIDAY, DECEMBER 30, 2005.**  We also ask that if you should decide not to sign the proposed agreement and thereby decline the Grant, please communicate that decision promptly to Arlene Vaquer at 917-937-3275.

## GUY CARPENTER

Julian Samengo-Turner
Head of GCFac Worldwide

Guy Carpenter & Company Ltd
Fountain House, 130 Fenchurch Street
London EC3M 5DJ
Direct 020 7357 2147
Fax 020 7357 2164
Mobile 07711 199555
julian.samengo-turner@guycarp.com

**GCFac**

MMC  Marsh & McLennan Companies

## GUY CARPENTER

Ron Whyte
Head of GC Fac Worldwide

Guy Carpenter & Company Luu
Fountain House, 130 Fenchurch Street
London EC3M 5DJ
Direct   020 7357 3983
Fax 020 7357 2164
Mobile 07850 286164
ron.whyte@guycarp.com

**GCFac**

MMC  Marsh & McLennan Companies

## GUY CARPENTER

Marcus Hopkins
Head of GCFac UK

Guy Carpenter & Company Ltd.
Fountain House, 130 Fenchurch Street
London EC3M 5DJ
Fax 020 7357 2104
Direct 020 7357 2308
Mobile 07713 257 955
marcus.hopkins@guycarp.com

**GCFac**

MMC  Marsh & McLennan Companies

2

**GCFac** Marcus
Hopkins/LON/GUYCARP

To

cc

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Guy Carpenter & Company Limited
Registered in: England    Number: 335308
Registered Office: 1 Tower Place West, Tower Place, London, EC3R 5BU

An appointed representative of Marsh Ltd
Marsh Ltd is authorised and regulated by the Financial Services Authority (FSA)

Marsh Ltd conducts its general insurance activities on terms that are set out in the document "Our
Business Principles and Practices". This may be viewed on our website
http://www.marsh.co.uk/aboutMarsh/principles.html .

This message and any attachments are confidential. If you have received this message in error
please delete it from your system. If you require any assistance please notify the sender. Thank you.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

3

# GUY CARPENTER

**Guy Carpenter & Company, LLC**
One Madison Avenue
New York, NY 10010-3658

Telephone 917 937 3180
Facsimile 917 937 3680
david.spiller@guycarp.com

**David H. Spiller**
Chief Executive Officer

April 16, 2007

Ronald Whyte
Guy Carpenter & Company Ltd.
130 Fenchurch Street
London EC3M5DJ
United Kingdom

Dear Ronald,

In recognition of your efforts in 2006 you recently received a bonus based upon individual performance, as well as that of your business unit and company as a whole.

I wish to extend my appreciation for your work this year. Through challenging market conditions, Guy Carpenter delivered a highly credible financial result that supported MMC's earning targets this past year.  This was possible because we have the best people in the industry and we have a clear, intense focus on our future.

MMC's significant investment in Guy Carpenter over the next three years bodes well for our firm and provides us with significant growth opportunities, particularly in the acquisition and retention of talent, expansion of our platform, enhancement of our capital markets capabilities and creation of greater efficiencies within our operations.

The long-term performance-linked bonus formula is also a reflection of our overall strategy and - even though aggressive - I am confident that our people will meet the challenges of our three-year business plan with dedication and tenacity.

Again, thank you for your continued contributions and commitment.

Regards,

David H. Spiller
President & Chief Executive Officer

4

MMC  Marsh & McLennan Companies

KRAMER LEVIN NAFTALIS & FRANKEL LLP

ROBERT N. HOLTZMAN
PARTNER
PHONE 212-715-9513
FAX 212-715-8035
RHOLTZMAN@KRAMERLEVIN.COM

May 29, 2007

BY EMAIL AND FEDEX

John P. Barry, Esq.
Proskauer Rose LLP
One Newark Center
18th Floor
Newark, NJ 07102-5211

Re:  Guy Carpenter & Company, LLC v. Samengo-Turner,
07 Civ. 3580 (DC)

Dear John:

When we appeared before Judge Cote on May 18, 2007, you raised concerns regarding defendants' availability to appear for depositions in London during the weeks of June 4 and June 11 and the expenses they might incur if compelled to return to London before their extended vacations were concluded; Judge Cote directed us to meet and confer regarding the expense issue. You nonetheless have failed to provide any specific information regarding (a) when those defendants who are traveling outside the United Kingdom are scheduled to return to London or (b) the costs they would incur if they were required to cut short their vacations to appear for depositions in London.

You have, however, indicated that all three defendants are available in London during the week of June 11 and requested that the depositions proceed during the latter part of that week. Notwithstanding your failure to provide information regarding the defendants' travel plans, we agree to accommodate that request. Enclosed you will find notices of deposition for each of the defendants, with testimony noticed to proceed on June 13, 14, and 15.

As previously noted, we reject your suggestion that the depositions be limited to two hours each. There is no justification for such a limitation on our inquiry. Plaintiffs are entitled to inquire into all of the factual matters at issue in this action, and you have offered no reasoning that would support a curtailment of the presumed seven hour time limit permitted under the Federal Rules of Civil Procedure. Moreover, cutting short these depositions will virtually assure that defendants will need to give testimony on multiple occasions, significantly increasing the costs to be incurred in connection with those depositions. Such a result is neither efficient nor sensible.

1177 AVENUE OF THE AMERICAS  NEW YORK NY 10036-2714  PHONE 212.715.9100  FAX 212.715.8000  WWW.KRAMERLEVIN.COM
ALSO AT 47 AVENUE HOCHE  75008 PARIS FRANCE
IN ALLIANCE WITH BERWIN LEIGHTON PAISNER: LONDON ▪ BRUSSELS

KL3 2595481.1

5

KRAMER LEVIN NAFTALIS & FRANKEL LLP

John P. Barry
May 29, 2007
Page 2

       On a related note, defendants' responses to plaintiffs' document requests and interrogatories are due this Friday, June 1 at 12:00 noon. Although we believe there can be no confusion on this point, this is to confirm that defendants' telephone records are encompassed within the definition of "document."

Very truly yours,

Robert N. Holtzman

RNH:

Enclosures

cc:    Barry H. Berke, Esq.
       Steven M. Knecht, Esq.
       Aaron S. Fleisher, Esq.

1177 AVENUE OF THE AMERICAS  NEW YORK NY 10036-2714  PHONE 212.715.9100  FAX 212.715.8000  WWW.KRAMERLEVIN.COM

ALSO AT 47 AVENUE HOCHE  75008 PARIS FRANCE

IN ALLIANCE WITH BERWIN LEIGHTON PAISNER  LONDON • BRUSSELS

KL3 2593483.1

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

GUY CARPENTER & COMPANY, LLC and  :
MARSH & McLENNAN COMPANIES, INC.,  :          07 Civ. 3580 (DC) (KNF)
                                   :
                Plaintiffs,        :          **NOTICE OF DEPOSITION**
                                   :
        - against -                :
                                   :
JULIAN SAMENGO-TURNER, RON WHYTE,  :
and MARCUS HOPKINS,                :
                                   :
                Defendants.        :

———————————————————————— x

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company,

Inc., and Marsh & McLennan Companies, Inc., will take the deposition upon oral examination of

defendant Julian Samengo-Turner before an official authorized to administer oaths at the offices

of Herbert Smith LLP, Exchange House, Primrose Street, London EC2A 2HS, on June 15, 2007

at 9:30 a.m.

Dated: New York, New York
       May 29, 2007

                              KRAMER LEVIN NAFTALIS & FRANKEL LLP

                              By: _____
                                   Barry H. Berke (BB-1421)
                                   Robert N. Holtzman (RH-9525)
                                   Steven M. Knecht (SK-8404)
                                  1177 Avenue of the Americas
                                  New York, New York 10036
                                  (212) 715-9100

                                  Attorneys for Plaintiffs

KL3 2591191.2

7

To:    John P. Barry, Esq.
       Proskauer Rose LLP
       One Newark Center, 18th Floor
       Newark, NJ 07102
       973-274-6081

       Attorneys for Defendants

KL3 2591191.2

*8*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
                                                   :
GUY CARPENTER & COMPANY, LLC and                   :
MARSH & McLENNAN COMPANIES, INC.,                  :     07 Civ. 3580 (DC) (KNF)
                                                   :
                        Plaintiffs,                :     **NOTICE OF DEPOSITION**
                                                   :
            - against -                            :
                                                   :
JULIAN SAMENGO-TURNER, RON WHYTE,                  :
and MARCUS HOPKINS,                                :
                                                   :
                        Defendants.                :
                                                   :
---------------------------------------------------x

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company,

Inc., and Marsh & McLennan Companies, Inc., will take the deposition upon oral examination of

defendant Ron Whyte before an official authorized to administer oaths at the offices of Herbert

Smith LLP, Exchange House, Primrose Street, London EC2A 2HS, on June 14, 2007 at

9:30 a.m.

Dated:  New York, New York
        May 29, 2007

                                KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                By: _____
                                        Barry H. Berke (BB-1421)
                                        Robert N. Holtzman (RH-9525)
                                        Steven M. Knecht (SK-8404)
                                        1177 Avenue of the Americas
                                        New York, New York  10036
                                        (212) 715-9100

                                Attorneys for Plaintiffs

KL3 2594958.1

9

To:    John P. Barry, Esq.
        Proskauer Rose LLP
        One Newark Center, 18th Floor
        Newark, NJ 07102
        973-274-6081

        Attorneys for Defendants

KL3 2594958.1

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

GUY CARPENTER & COMPANY, LLC and                    :
MARSH & McLENNAN COMPANIES, INC.,                   :       07 Civ. 3580 (DC) (KNF)
                                                    :
                    Plaintiffs,   :       **NOTICE OF DEPOSITION**
                                                    :
        - against -                               :
                                                    :
JULIAN SAMENGO-TURNER, RON WHYTE,                   :
and MARCUS HOPKINS,                                 :
                                                    :
                  Defendants.   :

---------------------------------------------------------------x

        PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company,

Inc., and Marsh & McLennan Companies, Inc., will take the deposition upon oral examination of

defendant Marcus Hopkins before an official authorized to administer oaths at the offices of

Herbert Smith LLP, Exchange House, Primrose Street, London EC2A 2HS, on June 13, 2007 at

9:30 a.m.

Dated: New York, New York
      May 29, 2007

                    KRAMER LEVIN NAFTALIS & FRANKEL LLP

                    By:_____
                        Barry H. Berke (BB-1421)
                        Robert N. Holtzman (RH-9525)
                        Steven M. Knecht (SK-8404)
              1177 Avenue of the Americas
              New York, New York 10036
              (212) 715-9100

              Attorneys for Plaintiffs

KL3 2594939.1

To:    John P. Barry, Esq.
       Proskauer Rose LLP
       One Newark Center, 18th Floor
       Newark, NJ 07102
       973-274-6081

       Attorneys for Defendants

KL3 2594953.1

12

<u>Claim No. 2007 Folio 945</u>

**<u>IN THE HIGH COURT OF JUSTICE</u>**

**<u>QUEEN'S BENCH DIVISION</u>**

**<u>COMMERCIAL COURT</u>**

**B E T W E E N :**

(1) JULIAN SAMENGO-TURNER

(2) RONALD DENNIS WHYTE

(3) MARCUS HOPKINS

<u>Claimants</u>

-and-

(1) MARSH SERVICES LIMITED

(Formerly MARSH CORPORATE SERVICES LIMITED

and prior to that J&H MARSH & MCLENNAN (SERVICES) LIMITED)

(2) GUY CARPENTER & COMPANY LCC

(3) MARSH & MCLENNAN COMPANIES INC

<u>Defendants</u>

SKELETON ARGUMENT ON BEHALF OF CLAIMANTS

1st and 3rd Defendants' Application for interim measures and/or

mandatory interim injunction

NB : The Defendants' application is to be heard if time permits [Order of Mr Justice Underhill 31 May 2007]. The Defendants' undertakings expire at 4-30pm on 6 June 2007 and they are unwilling to extend them. A decision on the Claimants' application for interim anti-suit injunction relief is, therefore, needed before those undertakings expire and the Court is invited to so proceed. The practical effect of that may be that there is not time to hear the Defendants' application on 6 June 2007.

The Claimants note that the Defendants' Application Notice states that there is an agreed time estimate for their application of 1 hour. That is not so - the Claimants have not been asked to agree a time estimate.