# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,

                            Plaintiffs,        07 Civ. 3580 (DC) (KNF)

              - against -        **DECLARATION**

JULIAN SAMENGO-TURNER, RON WHYTE,
and MARCUS HOPKINS,

                            Defendants.

------------------------------------------------------------ x

        I, Lynsey Mansfield, hereby declare:

        1.    I am Head of International HR at Guy Carpenter & Company, LLC ("Guy Carpenter"). I have held this position since joining Guy Carpenter approximately eighteen months ago. In this position, all the human resources professionals at Guy Carpenter, other than those in North and South America, report to me. In that role, I am the human resources professional at Guy Carpenter responsible for covering the international facultative reinsurance group.

        2.    Facultative reinsurance is a reinsurance custom designed by an insurer, broker, and reinsurer to provide coverage to that insurer for a specific, individual risk that the insurer has underwritten. Examples of such risks would be a large factory, refinery or power plant. It may be contrasted with treaty reinsurance, which covers a wide variety of risk underwritten in a given year by an insurer. An example of treaty reinsurance would be coverage of all auto insurance placed by an insurer during the course of a year within certain parameters.

KL3 2590852.3

3. In my capacity as Head of International HR, I am familiar with the various incentive compensative plans offered by Guy Carpenter and Marsh & McLennan Companies, Inc. ("MMC"). I am also involved in the drafting of employment contracts for Guy Carpenter employees in Europe and Asia-Pacific.

4. I submit this declaration in support of plaintiffs' motion for expedited discovery. As demonstrated below, I believe that Guy Carpenter will be harmed if such expedited discovery is not permitted.

Defendants' Employment with Guy Carpenter and Hiring By Integro

5. Defendants Julian Samengo-Turner, Ron Whyte and Marcus Hopkins (collectively, "defendants") have been employed by Guy Carpenter in the facultative reinsurance group since, respectively, September 23, 1991, September 20, 1988 and April 10, 2000.

6. On or about April 3, 2007, Mr. Samengo-Turner, Mr. Whyte and Mr. Hopkins each gave notice that he was resigning from Guy Carpenter. Each of these individuals informed me that they would be joining Integro Insurance Brokers ("Integro").

7. At the time notice of their resignations was given, Mr. Samengo-Turner and Mr. Whyte co-led Guy Carpenter's global facultative reinsurance business unit, doing business under the trademark GCFac, and Mr. Hopkins was head of Guy Carpenter's U.K. facultative reinsurance operation. Mr. Hopkins reported directly to Mr. Samengo-Turner and Mr. Whyte.

8. Defendants' employment with Guy Carpenter was, and continues to be, governed by employment agreements between each defendant and Guy Carpenter. Attached to this declaration as Exhibits A-C (redacted to avoid unnecessary disclosure of compensation information) are defendants' respective employment agreements with applicable amendments thereto.

9. By the terms of their respective employment agreements, defendants are required to provide six (6) months notice of termination, meaning that they remain employed by Guy Carpenter, continue to receive their full salaries and continue to have all the fiduciary and related duties and obligations to plaintiffs that are associated with such employment. (Exhibits A-C). Given that they gave notice on April 3, 2007, their six month notice periods will not expire until October 2007.

10. On April 5, 2007, at the commencement of defendants' respective notice periods, Integro issued a press release (placed on its website) announcing "the formation of an international insurance and reinsurance business unit to be based in London." The press release states that "Integro *announced the hiring of Julian Samengo-Turner and Ron Whyte*, who will lead the new unit and join the board of Integro in the U.K." Further, the press release states that "Messrs. Samengo-Turner and Whyte *formerly* led Guy Carpenter's global facultative reinsurance business unit." Regarding Hopkins, the press release states that Hopkins is "[a]lso *joining* Integro and its U.K. board" and that Hopkins was "previously head of Guy Carpenter's U.K. facultative reinsurance operation." (Exhibit D, emphases added).

11. Similarly, the April 9, 2007 edition of Business Insurance magazine (the U.S. insurance industry magazine) attributes to Integro the announcement that the defendants have "joined" Integro and were "formerly" or "previously" with Guy Carpenter.

12. Prior to the announcement of their resignations, there were thirty-two brokers in Guy Carpenter's U.K. facultative reinsurance group.

13. Based on what we understand from discussions with our facultative brokers, at least fourteen (including the defendants) have been recruited or approached, either directly or indirectly, by Integro.

14.     Soon after defendants gave notice of their resignations, another senior U.K. broker in the group, Charles Waddington, who directly reported to Mr. Hopkins at Guy Carpenter, gave notice of termination in order to join Integro.

15.     On April 23, 2007, three additional Guy Carpenter facultative reinsurance senior brokers based in London gave notice to Guy Carpenter of their resignations and announced that they were joining Integro. Defendants directly or indirectly supervised these three employees.

16.     On May 3, 2007, I learned that another three Guy Carpenter facultative reinsurance brokers based in London had received offers of employment from Integro. These three employees are experienced brokers who indirectly reported to Mr. Samengo-Turner, Mr. Whyte and Mr. Hopkins. On May 9, 2007, one of these three brokers announced his resignation and informed Guy Carpenter that he was joining Integro.

Defendants' Participation in the Plan and Defendants' Obligations Under the Agreements

17.     During their employment with Guy Carpenter, defendants participated in the Marsh & McLennan Companies 2000 Senior Executive Incentive and Stock Award Plan (the "Plan"). MMC offers incentive compensation plans to its employees in order to strengthen the mutuality of interest between MMC and its employees and to provide appropriate incentives for employees to remain with MMC and its subsidiaries or affiliates.

18.     In connection with November 2005 Awards granted under the Plan, each defendant agreed in writing to abide by the terms and conditions of the Plan as well as the additional terms and conditions set forth in Agreements related to the Plan (the "Agreements"). Attached to this declaration as Exhibits E-G (redacted to avoid unnecessary disclosure of compensation information) are defendants' respective Agreements.

19. Under the Plan, defendants each were granted Awards, which were subject to vesting in specified percentages on various future dates over a four year period. As of April 2007, 20% of the Awards granted to each defendant had vested and defendants had received cash for those portions of the Awards upon vesting. These amounts were paid in English pounds as follows: Samengo-Turner (£77,110), White (£61,688), and Hopkins (£46,266).

20. Under the Agreements defendants each are required to cooperate with MMC and any of its subsidiaries or affiliates, including Guy Carpenter, and specifically to "provide to the Company such information relating to [their] work for the Company or [their] other commercial activities as the Company may from time to time reasonably request in order for the Company to determine whether [they] are in compliance with [their] obligations under [the Plan]" (the "Cooperation Clause"). (Exhibits E-G, Section II.E).

21. The Cooperation Clause applies to defendants both "during and after [their] employment with the Company." (Exhibits E-G, Section II.E).

22. Compliance with the Cooperation Clause is mandatory; there is no prerequisite that plaintiffs demonstrate any potential breach of participants' obligations under the Agreements in order to be entitled to the benefits of the Cooperation Clause.

23. There are two applicable non-solicitation provisions in the Agreements. First, defendants agreed in Schedule II.D of the Agreements that they would not "directly or indirectly . . . [e]ntice, induce or encourage an Employee to leave or seek to leave his or her position with the Company or any Associated Company for the purpose of being involved or concerned with either the supply of Competitive Services or a business which competes with either the supply of Competitive Services or a business which competes with the Relevant Business regardless of whether or not that Employee acts in breach of his or her contract of

employment (either written or implied) with the Company or any Associated Company by so doing." (Exhibits E-G, Schedule II.D, Section 4).

24. Second, solicitation of plaintiffs' employees within a 12 month period following the vesting of any portion of defendants' Awards constitutes Detrimental Activity under the Agreements, giving plaintiffs the right to cancel and rescind such vested portions of the Awards. (Exhibits E-G, Section I.C and Schedule II.D, Section 2(a)(iv)).

25. Specifically, Detrimental Activity during the 12 month period following vesting is defined to include, among other things, "enticing, inducing or encouraging an Employee to leave or seek to leave his or her position with the Company or any Associated Company for the purpose of being involved in or concerned with either the supply of Competitive Services or a business which competes with or is similar to a Relevant Business or which plans to compete with a Relevant Business, regardless of whether or not that Employee acts in breach of his or her contract of employment (either written or implied) with the Company or any Associated Company by doing so." (Exhibits E-G, Section II.D, Section 2(a)(iv)).

26. The relevant definitions of Competitive Services and Relevant Business are set forth in Schedule II.D of the Agreement.

27. Integro competes with Guy Carpenter, and so joining or otherwise becoming interested in Integro also constitutes Detrimental Activity under the Agreements. (Exhibits E-G, Schedule II.D, Section 2(a)(i)).

Defendants' Failure to Cooperate

28. I am aware that counsel for plaintiffs sent letters to each defendant dated April 5, 2007 (the "April 5 letters") seeking information pursuant to the Cooperation Clauses of the Agreements to ascertain whether defendants were honoring their obligations. (Exhibits H-J).

Specifically, pursuant to the Cooperation Clauses, plaintiffs requested that defendants answer questions relating to the circumstances surrounding defendants' hiring by Integro and defendants' discussions, before and after the announcement of their intention to go to Integro, with other Guy Carpenter employees in order for plaintiffs "to establish whether or not [defendants] are in compliance with [their] obligations under the Plan and as a GC employee" (the "Requests"). (Exhibits H-J).

29. On April 11, 2007, defendants' counsel responded by letter indicating that defendants could not respond to the Requests at that time because Whyte and Hopkins were on vacation. However, defendants' counsel stated that they were "hoping to take detailed instructions from all three clients by mid next week and will revert as soon as we reasonably can thereafter." (Exhibit K).

30. In subsequent communications by their counsel, including a letter dated April 19, 2007, defendants have failed to provide answers to the Requests or otherwise provide cooperation as required by the Cooperation Clauses. (Exhibit L). To date, defendants have failed to cooperate and have not responded to the Requests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed:   London, England, United Kingdom
            May 10, 2007

*[signature]*
Lynsey Mansfield