**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

GUY CARPENTER & COMPANY, LLC and　　)
MARSH & McLENNAN COMPANIES, INC.,　　)
　　　　　　　　　　　　　　　　　　　　)　　　Case No. 07 – CV – 3580 (DC)
　　　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
JULIAN SAMENGO-TURNER, RON　　　　　　)
WHYTE, and MARCUS HOPKINS,　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　)
_____)


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO STAY
ALL PROCEEDINGS IN THIS CASE OR, ALTERNATIVELY, FOR
RECONSIDERATION OF THE COURT'S MAY 24, 2007 ORDER OR
TO STAY OPERATION OF THAT ORDER OR, IN THE FURTHER
ALTERNATIVE, TO AMEND THE MAY 24 ORDER
PURSUANT TO 28 _U.S.C._ §1292(b)**

John P. Barry (JB 6489)
Mark A. Saloman (MS 5764)
Proskauer Rose LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200
973.274.3299 (Fax)

_Attorneys for Ron Whyte_

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ................................................... 4

I.      THE NEW YORK ACTION ........................................................................................... 4

II.     THE U.K. ACTION ......................................................................................................... 5

ARGUMENT ............................................................................................................................. 9

I.      THE NEW YORK ACTION SHOULD BE STAYED IN DEFERENCE
        TO THE PENDING EXPEDITED PROCEEDINGS BEFORE THE
        HIGH COURT OF JUSTICE IN ENGLAND .................................................................. 9

II.     RECONSIDERATION OF THE COURT'S MAY 24 ORDER IS WARRANTED ........ 17

III.    EXPEDITED DISCOVERY SHOULD BE STAYED BASED
        UPON THE PENDING U.K. ACTION AND TO PERMIT THE COURT
        ADEQUATE TIME TO REVIEW, ADDRESS, AND RESOLVE THE
        PENDING DISPOSITIVE MOTION TO DISMISS PLAINTIFFS' COMPLAINT ........ 19

IV.     THE DISTRICT COURT SHOULD CERTIFY THIS MATTER AS
        APPROPRIATE FOR IMMEDIATE INTERLOCUTORY APPEAL ............................ 21

V.   CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

CASES

*Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.*,
  No. 94 Civ. 5620, 1994 WL 719696 (S.D.N.Y. Dec. 28, 1994)............................................17

*Allen v. Lloyd's of London*,
  94 F.3d 923 (4th Cir. 1996) ...........................................................................................10

*Ayyash v. Bank Al-Madina*,
  233 F.R.D. 325 (S.D.N.Y. 2005) ...................................................................................21

*Base Metal Trading SA v. Russian Aluminum*,
  253 F. Supp. 2d 681 (S.D.N.Y. 2003) *aff'd*, 2004 U.S. App. LEXIS 8547 (2d Cir.
  2004)...............................................................................................................................11

*Brinco Mining Ltd. v. Federal Ins. Co.*,
  552 F. Supp. 1233 (D.D.C. 1982) ...................................................................................13

*British Midland Airways Ltd. v. International Travel, Inc.*,
  497 F.2d 869 (9th Cir. 1974) ..........................................................................................10

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,
  964 F.2d 159 (2d Cir. 1992) ...........................................................................................22

*Clarkson Co. v. Shaheen*,
  544 F.2d 624 (2d Cir. 1976) ...........................................................................................13

*Crown Crafts, Inc. v. Aldrich*,
  148 F.R.D. 151 (E.D.N.C. 1993) ....................................................................................17

*D.A. Elia Constr. Corp. v. U.S. Fid. & Guaranty Co.*,
  94-CV-0190E(H), 1997 U.S. Dist. LEXIS 5610 (W.D.N.Y. April 16, 1997) .......................18

*Estate of Nunez-Polanco v. Boch Toyota*,
  Civ. No. 3:03cv2251 (WWE), 2004 U.S. Dist. LEXIS 18411 (D.Conn July 21, 2004).........21

*Evergreen Marine Corp. v. Welgrow Int'l Inc.*,
  954 F. Supp. 101 (S.D.N.Y. 1997).....................................................................................9

*Goldhammer v. Dunkin' Donuts, Inc.*,
  59 F. Supp. 2d 248 (D.Mass. 1999) ................................................................................13

*Haynsworth v. The Corporation*,
  121 F.3d 956 (5th Cir. 1997) ..........................................................................................10

*In re Houbigant,*
    914 F. Supp. 997 (S.D.N.Y. 1996).............................................................................9

*Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,*
    157 F.3d 933 (2d Cir. 1998) .................................................................................21

*Jacques v. DiMarzio, Inc.,*
    200 F. Supp. 2d 151 (E.D.N.Y. 2002).................................................................18

*Martin v. New York State Department of Mental Hygiene,*
    588 F.2d 371 (2d Cir. 1978) .................................................................................18

*MLC (Bermuda) LTD. v Credit Suisse First Boston Corporation,*
    46 F. Supp. 2d 249 (S.D.N.Y. 1999)..............................................................Passim

*Murray v. British Broad. Corp.,*
    81 F.3d 287 (2d Cir. 1996) ...................................................................................13

*New York v. Almy Brothers, Inc.,*
    90-CV-818, 1998 U.S. Dist. LEXIS 5469 (N.D.N.Y. April 15, 1998)..................18

*Notaro v. Koch,*
    95 F.R.D. 403 (S.D.N.Y. 1982) ...........................................................................17

*R. Maganlal & Co. v. M.G. Chem. Co., Inc.,*
    942 F.2d 164 (2d Cir. 1991) .................................................................................11

*Richards v. Lloyd's of London,*
    135 F.3d 1289 (9th Cir. 1998) *cert. denied* 142 L. Ed. 2d 301, 119 S. Ct. 365 (1998) ..........10

*Ronar v. Wallace,*
    649 F. Supp. 310 (S.D.N.Y. 1986).........................................................................9

*Rosecliff, Inc. v. C3, Inc.,*
    No. 94 Civ 9104, 1995 WL 3024 (S.D.N.Y. Jan. 3, 1995) ..................................17

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.,*
    206 F.R.D. 367 (S.D.N.Y. 2002) .........................................................................20

*Springer v. Singer,*
    No. 88 Civ. 2484 (MJL), 1990 U.S. Dist. LEXIS 11862 (S.D.N.Y. Aug. 29, 1990) .............18

*The Irish Lesbian and Gay Org. v. Giuliani,*
    918 F. Supp. 728 (S.D.N.Y. 1996).......................................................................16

*Transunion Corp. v. PepsiCo, Inc.,*
    811 F.2d 127 (2d Cir. 1987) .................................................................................20

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*,
   749 F. Supp. 473 (S.D.N.Y. 1990) ......................................................................17

**STATUTES**

28 *U.S.C.* §1292(b) ......................................................................................3, 22

**OTHER AUTHORITIES**

*Fed. R. Civ. Proc*. 4 ......................................................................................18

*Fed. R. Civ. Proc*. 12(b)(2) ......................................................................18

*Fed. R. Civ. Proc*. 12(b)(6) ......................................................................21

*Fed. R. Civ. Proc*. 26(c) ............................................................................20

*Fed. R. Civ. Proc*. 54(b) ............................................................................17

*L.R.* 6.3 ..........................................................................................................17

## PRELIMINARY STATEMENT

On May 29, 2007, English counsel for Ron Whyte, Julian Samengo-Turner, and Marcus Hopkins (collectively "Defendants") filed a Claim against Guy Carpenter & Company, LLC ("GC") and Marsh & McLennan Companies, Inc. ("Marsh" and collectively "Plaintiffs"), and Marsh Services Ltd. ("MSL"), in the High Court of Justice in London (the "U.K. Action"). That Claim seeks, among other things, a declaration that the High Court has exclusive jurisdiction over Plaintiffs' claims in the case at bar. Ron Whyte, therefore, respectfully requests that the Court stay all proceedings in this case until the High Court has resolved the jurisdictional issues which are central to this matter.

In the alternative, Whyte respectfully requests that the Court reconsider its May 24, 2007 Order, which directs that Defendants comply with expedited written discovery demands and appear for depositions in England. Remarkably, Plaintiffs have submitted factual declarations in the U.K. Action which fundamentally contradict their prior submission here. Indeed, the very premise upon which Plaintiffs claimed to be entitled to expedited discovery—that Defendants, as employees of Plaintiffs, were violating their employment contracts, Bonus Contracts, and common law duties of loyalty by soliciting their U.K. colleagues to leave their employment with Plaintiffs for a U.K. competitor —is now known to be inaccurate. Plaintiffs now confirm that Defendants do not and have not ever worked for Plaintiffs and that the alleged failure to comply with their post-separation obligations cannot harm Plaintiffs. To the contrary, Plaintiffs now admit that *all* alleged improper solicitation by Defendants (which is denied) allegedly harm a company not a party to this case. Thus, the May 24 Order was obtained under false pretenses.

Indeed, the litany of misstatements proffered in the Plaintiffs' Complaint, memo of law, and supporting Declaration, which resulted in the May 24 Order, include the following:

- Defendants were referenced dozens of times as Plaintiffs' "employees"; in the U.K. action, however, Plaintiffs contend that Defendants are not their employees but actually work for MSL, a company incorporated in Great Britain and registered in England and Wales.

- Plaintiffs argued that Schedule II.D. of the Defendants' Bonus Contracts was a central piece to the application for expedited discovery because that provision allegedly gave rise to separate non-solicitation obligations which Plaintiffs claimed had been violated by Defendants (albeit in England);[1] in the U.K. action, however, Plaintiffs contend that Schedule II.D. (which contains the English non-exclusive jurisdiction clause and separate definition of "Detrimental Activity") is inapplicable to Defendants.

- Plaintiffs referred numerous times to Defendants' U.K. employment contracts—and their alleged breach of those contracts—as grounds for emergent relief through expedited discovery; in the U.K. action, however, Plaintiffs contend that Defendants' employment contracts are wholly irrelevant.

- Marsh and GC were presented as being interchangeable and, during off-the-record discussions before the Honorable Denise Cote, U.S.D.J., Plaintiffs' counsel represented that all of Marsh's subsidiaries were included within the Bonus Contract's broad definition of "company" and that "MMC" referred to "subsidiaries or affiliates";[2] in the U.K. action, however, Plaintiffs contend the corporate entities are entirely separate and distinct.

In short, the facts and argument presented by Plaintiffs in support of their application for expedited discovery, when compared to their submissions in the U.K. Action,[3] are, at best, hopelessly contradictory and, at worst, so grossly inaccurate as to suggest a failure to conduct a rudimentary investigation before filing the Complaint, as required by the Federal Rules. In either case, the Plaintiffs' renouncement of this critical information is sufficient for the Court to reconsider, and vacate, its May 24 Order.

---

[1] Plaintiffs' counsel also addressed Schedule II.D. during off-the-record discussions with the Court and contended that the Court was fully equipped to apply English law. *See* Declaration of John P. Barry ("Barry Decl."), ¶13, submitted herewith and incorporated herein by reference.

[2] Barry Decl., ¶12.

[3] For a side-by-side comparison of Plaintiffs' contradictory assertions, see pp. 6-8, *infra*.

In the alternative to reconsideration, sufficient grounds are present for the Court to stay operation of its May 24 Order. To compel Defendants, two of whom *still* have not been served with the Complaint, to participate in expedited discovery—including depositions which are not permitted in the U.K.[4]—before either the U.K. Action or the potentially dispositive challenges to personal jurisdiction and venue pending before this Court are resolved is manifestly unjust.[5] As explained in the U.K. filing and the pending motion to dismiss, Defendants are U.K. residents and neither they, nor this litigation, have a material connection to the United States or to New York. Indeed, not only are the Defendants, the witnesses, and all of the claims deeply rooted in England, but Plaintiffs have availed themselves of the U.K. courts by seeking in England the same relief at issue here. Whyte, therefore, respectfully requests that the Court stay the order for expedited discovery until (i) the pending U.K. Action, between the same parties and involving the same facts and circumstances, has been resolved; and/or (ii) the Court decides the pending dispositive motion to dismiss the Complaint on the grounds of lack of personal jurisdiction and based upon the doctrine of forum *non conveniens*.[6]

---

[4] Indeed, Plaintiff's counsel advised on May 29, 2007, that—the expedited nature of the discovery notwithstanding—Plaintiffs would not agree to limit the scope or duration of the depositions and insisted on nothing less than full, seven-hour depositions of each Defendant as permitted by the Federal Rules. (Barry Decl., ¶14).

[5] For the Court's convenience, a copy of the pending motion to dismiss is attached as Exhibit A to the Barry Decl.

[6] By the filing of this motion, none of the Defendants waive, and each specifically reserves, all available grounds for dismissal of this action.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

### I.  The New York Action

On May 4, 2007, GC and Marsh filed this action against Defendants.  To date, the Complaint still has not been served upon Messrs. Samengo-Turner or Hopkins.  (Barry Decl., Exh. A at 053 to 065 and ¶10).

Despite Plaintiffs' awareness of this lack of service of process, they filed an Order to Show Cause on Tuesday, May 15, which sought to compel all Defendants to respond to Plaintiffs' discovery requests and be deposed in New York on an expedited basis.  U.S. counsel for Defendant Whyte received a copy of Plaintiff's application via e-mail at approximately 4:00 p.m. EST that afternoon.  Although no briefing schedule had been set by the Court concerning Plaintiffs' application, Whyte delivered a memorandum and supporting declaration at approximately 4:30 p.m. on Thursday, May 17, to alert the Court to numerous defects in Plaintiffs' application, including the lack of service of process over the two other Defendants, Plaintiffs' questionable claim of personal jurisdiction over any of the Defendants, and the significant inconvenience and prejudice which Defendants would suffer if forced to litigate in New York.  (Barry Decl., Exhibit B).

Before it addressed the critical service/personal jurisdiction/venue issues, however, the Court ordered on May 18 that all three Defendants must (1) comply with Plaintiffs' expedited written discovery demands by June 1 and (2) present themselves for depositions in England no later than June 15, 2007.  (Barry Decl., Exhibit C).  Defendants were subsequently permitted to file a motion to dismiss on forum *non conveniens* and "additional" grounds.  (Barry Decl., Exh. C, Tr. 2:7-14).  The Court's May 18 ruling was then memorialized in an Order dated May 24, 2007.  (Barry Decl., Exhibit D).

That same day, Whyte filed a motion to dismiss Plaintiffs' Complaint based upon the

Court's lack of personal jurisdiction and, alternatively, pursuant to the doctrine of forum *non*

*conveniens.*  (Barry Decl., Exh. A).

## II.  The U.K. Action

On May 29, 2007, Defendants' U.K. counsel filed a Claim against Plaintiffs, as well as

MLS, in the High Court, Queen's Bench Division in London.  (Barry Decl., Exh. E).  That

application seeks, among other things:

> 1.  A Declaration that any claims against them by any of the [Plaintiffs] arising
> out of or connected with their employment by the same and/or arising out of
> and/or connected with the [U.K. Contracts and/or Bonus Contracts] are subject to
> the exclusive jurisdiction of the Courts of England and Wales pursuant to Section
> 5 of Council Regulation (EC) 44/2001; and/or subject to an exclusive
> alternatively non-exclusive jurisdiction clause in favour of the jurisdiction of the
> Courts of England and Wales contained in and/or evidenced by the Bonus
> Contracts; and/or
>
> 2.  A declaration that the jurisdiction clause(s) in the Bonus Contracts purporting
> to confer jurisdiction on the county of New York, USA is/are invalid pursuant to
> Section 5 of Council Regulation (EC) 44/2001; and/or
>
> 3.  A permanent worldwide anti-suit injunction restraining each and any of the
> [Plaintiffs] from the commencement, prosecution and/or continuance of
> proceedings arising out of or connected with the employment of [Defendants] . . .
> and/or arising out of or connected with any of the contracts [between Plaintiffs
> and Defendants] anywhere other than the jurisdiction of England and Wales,
> including in particular the proceedings commenced by [Plaintiffs] in the United
> States District Court Southern District of New York (Index Number 07 Civ 3580).

(Barry Decl., Exh. E at 1-2).

On June 1, 2007, Plaintiffs filed a cross-application requesting that Defendants be

compelled to provide the information and documents specified by the May 24 Order because (i)

it would be expedient to compel compliance with that Order; (ii) another clause in the Bonus

Contracts provide for the production of such information under English law; and/or (iii) the

Defendants have "implied obligations" to produce such documents and information "under their

respective employment contracts." (Barry Decl., Exhibit F at 14-16). Plaintiffs then filed a "Witness Statement" from Ms. Mansfield and a legal memorandum ("Pl. Skeleton") in response to the Defendants' application for an anti-suit injunction. (Barry Decl. Exhibit G).

Without a plausible explanation, however, Plaintiffs' submissions in the U.K. Action contain a litany of statements which materially and directly contradict the position they advocated in the case at bar, including:

| Plaintiffs' Statement In New York Action | Plaintiffs' Statement In U.K. Action |
|---|---|
| "Defendants . . . have been employed by Guy Carpenter in the facultative reinsurance group since, respectively, September 23, 1991, September 20, 1988, and April 10, 2000."[7] | "the employer of each of the [Defendants] is Marsh Services Limited ("MSL"). They are not employed by any other company."[8] |
| "Defendants' employment with Guy Carpenter was, and continues to be, governed by agreements between each defendant and Guy Carpenter."[9] | "By the terms of their respective employment contracts with MSL . . ."[10] |
| "By the terms of their respective employment agreements, defendants are required to provide six (6) months notice of termination, meaning that they remain employed by Guy Carpenter, continue to receive their full salaries and continue to have all the fiduciary and related duties and obligations to [Marsh and Guy Carpenter] that are associated with such employment."[11] | "By the terms of their respective employment contracts with MSL, the [Defendants] are required to provide six (6) months' notice of termination, meaning that they remain employed by MSL, continue to receive their full salaries and continue to have all the fiduciary and related duties and obligations as employees that are associated with such employment."[12] |

[7] Barry Decl., Exhibit I: May 10, 2007 Declaration of Lynsey Mansfield ("Mansfield Decl."), at ¶5. *Accord* Barry Decl., Exh. A, 053 to 065: Complaint, ¶¶11, 12, 13, 14, 15, 16, 18, 28, 36, 39.

[8] Barry Decl., Exh. G, 01 to 10: 1 June 2007 Witness Statement of Lynsey Mansfield ("Mansfield Stat."), at ¶7.

[9] Mansfield Decl., ¶8. *Accord* Complaint, ¶14.

[10] Mansfield Stat., ¶20.

[11] Mansfield Decl., ¶9. *Accord* Complaint, ¶15.

[12] Mansfield Stat., ¶20.

6

| | |
|---|---|
| "by the terms of their respective employment agreements with [Guy Carpenter and Marsh], defendants are not permitted for specific periods of time during and after their notice period to solicit, entice, induce, or encourage any of [Guy Carpenter's and Marsh's] employees to leave [Guy Carpenter and Marsh] and join a company that competes with [Guy Carpenter and Marsh]."[13] | "The terms of [Defendants'] contracts of employment with MSL are not referred to or relied upon in the New York Proceedings."[14] |
| "Defendants also continue to have a panoply of obligations to their employer, Guy Carpenter, including their obligation to make themselves available during business hours to provide important information."[15] | "The terms of [Defendants'] contracts of employment with MSL are not referred to or relied upon in the New York Proceedings."[16] |
| "There are two applicable non-solicitation provisions in the Agreements.  First, defendants agreed in Schedule II.D of the Agreements . . ."[17] | "Schedule II D is . . . only applicable after termination of the Claimants' employment and is accordingly not yet applicable."[18] |
| Defendants must "provide information" to Guy Carpenter and Marsh "in accordance with defendants' contractual obligations (which are entirely consistent with their ongoing duties of loyalty as employees)."[19] | "The New York Proceedings are not seeking to enforce or rely on the provisions of [Defendants'] contracts of employment."[20] |
| "Guy Carpenter is surely entitled to [obtain information from Defendants] to know if this | "The purpose of seeking information . . . would be to assist [Marsh] in discovering whether a |

---

[13] Complaint, ¶16.

[14] Barry Decl., Exh. G, 18 to 42: Pl. Skeleton, ¶35.

[15] Pl. Memo in support of motion for expedited discovery, May 15, 2007 ("Pl. Memo"), at 13.

[16] Pl. Skeleton, ¶35.

[17] Mansfield Decl., ¶23.  *Accord* Complaint, ¶¶26, 27, 28, and 29.

[18] Pl. Skeleton, ¶23.

[19] Pl. Memo at 12.

[20] Pl. Skeleton, at ¶43.

| | |
|---|---|
| assault on its business has been conducted by lawful means—or not. . ."[21] | senior executive to whom an Award has been paid has been complying with his obligations under the Plan."[22] |
| Plaintiffs have no intention of seeking relief in England.[23] | Marsh's intends to stop any allegedly improper acts of Defendants "by, *inter alia*, seeking injunctive relief against the parties involved in the UK courts."[24] |

On June 5, Defendants submitted a Skeleton Argument and Witness Statement in reply to Plaintiffs' opposition. (Barry Decl., Exhibit H). That submission also notes the litany of contradictory assertions raised by Plaintiffs in the two actions. (*Id*. at 2-5).

Defendants' application for an anti-suit injunction in the U.K. was denied, but Defendants' declaratory judgment action and Plaintiffs' application for discovery is pending.

In addition to the foregoing, Defendants rely upon the facts previously presented to the Court in Whyte's opposition to Plaintiffs' motion for expedited discovery and in support of his motion to dismiss Plaintiffs' Complaint due to lack of personal jurisdiction and forum *non conveniens*. (Barry Decl., Exh. A at 009 to 013 and 033 to 034; and Exh. B at 05 to 12). Defendants only add that Plaintiffs have, to this day, still failed to serve the Complaint upon Messrs. Samengo-Turner or Hopkins. (Barry Decl., ¶10).

---

[21] Pl. Memo at 12.

[22] Pl. Skeleton, at ¶25.

[23] Barry Decl., ¶11.

[24] Barry Decl., Exh. F, ¶25.

## ARGUMENT

I.  **THE NEW YORK ACTION SHOULD BE STAYED IN DEFERENCE TO THE PENDING EXPEDITED PROCEEDINGS BEFORE THE HIGH COURT OF JUSTICE IN ENGLAND**

"A court has inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction." *MLC (Bermuda) LTD. v Credit Suisse First Boston Corporation*, 46 F. Supp. 2d 249, 251 (S.D.N.Y. 1999) (citing *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101, 103 (S.D.N.Y. 1997)); *accord In re Houbigant*, 914 F. Supp. 997, 1003 (S.D.N.Y. 1996); *Ronar v. Wallace*, 649 F. Supp. 310, 318 (S.D.N.Y. 1986). In determining whether to act in deference to a pending foreign action, "a court will consider such factors as the similarity of parties and issues, the adequacy of the alternative forum, the convenience of the parties, the promotion of judicial efficiency, the possibility of prejudice, and the temporal sequence of filing." Applying these factors to this case, a stay of the proceedings here in favor of the U.K. Action is warranted.

*First*, there is substantial identity of the parties in the two actions. With the exception of MSL, the U.K. company whose "ultimate parent" is Marsh, each of the parties properly before the Court is currently a party to the U.K. Action. Indeed, all three Defendants have now consented to the jurisdiction of the High Court for the purposes of allowing Plaintiffs to assert against them in London the very claims they have asserted in this Court. (Barry Decl., Exh. E). Conversely, only Whyte has been served with the Complaint in the New York Action and he has raised significant challenges to the Court's exercise of personal jurisdiction over him, as well as the propriety of the forum. *See MLC*, 46 F. Supp. 2d at 251 (dismissal favored where no obstacles to maintenance of entire action in London); *Evergreen*, 954 F. Supp. at 104 (defendant's consent to jurisdiction favors dismissal where it creates potential for complete identity of parties between the two actions).

9

A stay is further warranted because both cases involve the same set of transactions, involve interpretation of the same employment contracts, and the essential controversies "are squarely before the British court" because the High Court has personal jurisdiction over the Defendants. *MLC*, 46 F. Supp. 2d at 251. Plaintiffs here concede as much by seeking relief from the English courts. *See* Barry Decl., Exh F and G.

*Second*, "the Commercial Court is clearly an adequate forum to resolve [Plaintiffs'] claims. The competence of British courts to adjudicate commercial disputes is beyond question." *MLC.*, 46 F. Supp. 2d at 253.[25]   Defendants are U.K. residents and citizens, are amenable to process only in England, and are subject to the jurisdiction of English courts and to English law. *See R. Maganlal & Co. v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 167 (2d Cir. 1991) ("Ordinarily, a foreign forum will be adequate when the defendant is subject to the jurisdiction of that forum."). Indeed, none of the Defendants are amenable to service of process in New York. England, therefore, is an adequate and appropriate alternative forum as a matter of law. *See Breindel & Ferstendig v. Willis Faber & Dumas Ltd.*, 95 Civ. 7905 (SHS), 1996 U.S. Dist. LEXIS 10432 (S.D.N.Y. July 22, 1996) ("England is an adequate alternative forum."). Moreover, Plaintiffs have already filed an application in the U.K. proceeding seeking identical relief of the New York action.

*Third*, London is the most convenient forum. All of the known witnesses are in London. Although not named, Plaintiffs' Complaint identifies 11 U.K. residents allegedly solicited and

---

[25] *See, generally, Richards v. Lloyd's of London*, 135 F.3d 1289, 1296 (9th Cir. 1998) (British courts provide adequate relief in cases of fraud, negligent misrepresentation and breach of fiduciary duty), *cert. denied* 142 L. Ed. 2d 301, 119 S. Ct. 365 (1998); *Haynsworth v. The Corporation*, 121 F.3d 956, 969 (5th Cir. 1997) (same); *Allen v. Lloyd's of London*, 94 F.3d 923, 929 (4th Cir. 1996) (same); *British Midland Airways Ltd. v. International Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1974).

recruited by Defendants in the U.K. to leave MSL and join Integro in the U.K. These 11

witnesses, who presumably have knowledge (or can confirm a lack of knowledge) concerning

Plaintiffs' allegations of wrongdoing, are beyond the Court's compulsory process powers.

Likewise, Plaintiffs' U.K. submission identifies two additional witnesses (Mark Newman and an

unnamed "third party"), both of whom are only available in London.  (Mansfield Stat., ¶¶28, 31).

It is, nonetheless, anticipated that all of these witnesses will support Defendants' litany of

defenses to both the pending claims in the lawsuit and the anticipated claims of unlawful

solicitation and recruiting that Plaintiffs have intimated they will file in the U.K. *See Base Metal*

*Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 710-11 (S.D.N.Y. 2003) ("In view of the

plaintiffs' allegations, which themselves appear to place most of these parties in Russia, the

defendants argue persuasively that almost all of their likely witnesses are located in Russia or

elsewhere, and that few, if any, are in the United States. And as third-parties to this action, the

Court cannot compel such witnesses appear.  Moreover, even if the Court  could do so, the

striking number of Russian parties and witnesses involved in the case demonstrates the extreme

inconvenience of bringing this case to trial in the United States.") (internal citations omitted),

*aff'd*, 2004 U.S. App. LEXIS 8547 (2d Cir. 2004).

Moreover, Defendants are aware of no witnesses with relevant information who reside in

New York, or anywhere else outside of England.  Likewise, the three Defendants are based in the

U.K. and most, if not all of Plaintiffs' witnesses are London-based.

Defendants, moreover, have no meaningful connection to New York but a strong

connection to England.  Unlike Plaintiffs, which are global conglomerates with a significant

U.K. operation and presence, the Defendants are three individuals who never meaningfully

availed themselves to suit, or expected to be sued, in New York. *See also MLC*, 46 F. Supp. 2d

at 254 (dismissal appropriate—even where key events "at the heart of" plaintiff's claims took

place in New York—where a preponderance of the key witnesses are located in London).

      *Fourth*, a stay in favor of the English's court's resolution of its proceedings will promote

judicial economy.  *See id.* ("Where a single court is capable of fairly and competently

adjudicating an entire controversy, there is little reason to divide the task between two courts.").

This point is underscored by the fact that this case has no meaningful connection whatsoever to

New York.  The Complaint concerns British citizens employed in London by a U.K. company

who allegedly breached a contract in England when they purportedly failed to cooperate (in the

U.K.) with a demand by U.K. counsel for information.  In a claim that can only be brought in the

U.K., Plaintiffs also accuse Defendants of allegedly breaching their U.K. employment contracts

when they allegedly solicited and recruited (in England) other British employees of MSL to seek

employment with a U.K.-based competitor.  The nexus of the case could not be farther removed

from New York.  *See Murray v. British Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996) ("The

crux of the matter, therefore, involves a dispute between British citizens over events that took

place exclusively in the United Kingdom. . . . The United States thus has virtually no interest in

resolving the truly disputed issues."); *accord Saab v. Citibank, N.A.*, 00 Civ. 6784, 2001 WL

1382577, at *5 (S.D.N.Y. Nov. 7, 2001) (FNC dismissal because of insufficient connection of

the community to the litigation: "Although [defendant's] headquarters are in New York, the

other major players in this controversy are Lebanese businessmen and a Saudi Arabian bank. The

actions in dispute occurred throughout Europe and the Middle East; moreover, the witnesses are

nearly all foreign."), *aff'd*, 50 Fed. Appx. 469, No. 01-9417, 2002 WL 31317708 (2d Cir. Oct.

16, 2002).

*Fifth*, Plaintiff will not be prejudiced by the stay of the proceedings in favor of proceeding in England: "Because the United States and England share the same common law heritage, deference to British proceedings is consistent with notions of international comity." *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 255 (D.Mass. 1999); *see Clarkson Co. v. Shaheen*, 544 F.2d 624, 629-30 (2d Cir. 1976) (recognition of a foreign judgment is most appropriate when alien jurisdiction is "a sister common law jurisdiction with procedures akin to our own"); *Brinco Mining Ltd. v. Federal Ins. Co.*, 552 F. Supp. 1233, 1240 (D.D.C. 1982) ("Certainly, if this Court cannot extend comity to Canada, the comity principle has little vitality in our jurisprudence."). Moreover, Defendants have provided multiple assurances that Plaintiffs will experience no harm whatsoever during the brief period of the stay of the New York proceedings. As explained below, Defendants have agreed to comply with all terms of their respective garden leaves *and* Plaintiffs have likewise made public statements that Defendants' alleged acts did not, and will not, harm Plaintiffs in any way.

Specifically, Defendants' London-based solicitors, Elborne Mitchell, confirmed to Plaintiffs on April 11, 2007—prior to the initiation of this lawsuit—that Defendants intended to abide by all of their obligations to their employer while on garden leave. (Barry Decl., Exh. B at 214 to 215). On April 19, Elborne Mitchell further advised that Defendants "would be happy to sign written undertakings confirming that they will comply with their garden leave obligations," and that they had no documentation or other property belonging to their former employer or its clients other than mobile telephone handsets which they offered to return. (Barry Decl., Exh. B at 217 to 219). Hearing no response, Elborne Mitchell wrote again concerning Defendants' offer. (Barry Decl., Exh. B at 221). By letter dated May 3, Plaintiffs' U.K. counsel wrote to

confirm its anticipated receipt of Defendants' written undertakings "as soon as possible."  (Barry

Decl., Exh. C at 26).  The very next day, however, Plaintiffs filed this lawsuit.

By letter dated May 17, 2007, Elborne Mitchell nonetheless reiterated its proposal to

obtain a written undertaking from each of the Defendants which set forth, in pertinent part:

> I confirm my agreement to remain an employee of Marsh Services Limited ("the
> Company") until 2 October 2007 and to serve out my notice period on garden leave as
> requested by the Company.  I undertake that while I remain an employee of the Company
> I will abide by my contractual duty of good faith and fidelity to the Company.  I further
> undertake that during this period of garden leave I will not:
>
> > (A)    Save for the purpose of obtaining legal advice, or save as  required or
> > permitted by law, or save with the express permission of the Company.
> >
> > > (1)    disclose or permit to be disclosed to any person firm or company
> > > any confidential information of the Company or of any other member of
> > > the Group.
> > >
> > > (2)    disclose in any way, or use for my own or another's advantage, any
> > > of the data, programmes or manuals, or any of the business methods or
> > > information of a confidential nature relating to the affairs of any group
> > > Company.
> >
> > (B)    be employed or engaged or otherwise provide services directly or
> > indirectly, except as an employee of the Company, in the business of underwriting
> > or as an insurance, reinsurance, or mortgage broker or agent without having first
> > gained the written consent of the Company.

(Barry Decl., Exh. C at 28 to 29).  Defendants' consistent representations through their English

counsel confirm that they have no intention of committing any act to harm Plaintiffs in any

way—irreparable or otherwise—during their respective garden leave periods.

Moreover, uncontroverted evidence from Marsh's senior-most officers dispels even the

inference that Plaintiffs will experience harm of any kind attributable to Defendants if a brief

stay of discovery is permitted.  In a recorded public presentation delivered to the investment

community on May 8, 2007—four days after its Complaint was filed—Marsh's President and

CEO, Michael Cherkasky, and its COO, Brian Storms, provided a dramatically different

characterization of the events portrayed in the Plaintiffs' Complaint and motion for expedited

discovery:

> Marsh is now aggressively on the offensive, focusing a disproportionate amount of our effort, energy and resources on accelerating growth. *We are actively recruiting industry leading talent*. (COO Storms) (emphasis added).

> Obviously, we did have a defection to Integro in the [*sic*] reinsurance. By the way, it's so fascinating is [*sic*] we are not having defections in the brokerage business to Integro. In fact, they are coming the other way. I think *this [defection to Integro in the reinsurance area] is a temporary blip*. What is very rewarding is that we are attracting people in the reinsurance business. So it really isn't -- *there is a war for talent but it's going both ways* and I think, because of Integro's position, they make more of a headline about it than maybe others. (President Cherkasky) (emphasis added).

> \* \* \*

> We are, for the first time in a long time, as we get more and more proactive, aggressively recruiting. I say with great confidence *we are winning the war for talent in the brokers business right now*. Our business model, the success that we're beginning to see -- we are winning the war for talent. It's still a pretty irrational market out there; we are seeing competitors offering multi-year deals with lots of guarantees, things that any rational – we're not going to do. But in terms of our ability to win the war for talent, it's really going in our favor and as the year progresses, you will see the impact of that. (COO Storms) (emphasis added).

(Barry Decl., Exh. B at 31 to 33).

In view of Defendants' repeated assurances that they will abide by their obligations

during their garden leaves *and* the admission of Marsh's own President that the loss of U.K.

brokers in its U.K. business is nothing more than "a temporary blip" *and* the total absence of

proof that Defendants had caused or intend to cause Plaintiffs any harm whatsoever, there is

clearly no substantial risk that Plaintiffs will experience irreparable or other harm if a brief stay

of the New York Action is permitted.

More importantly, *Defendants* will be irreparably harmed if they are forced to proceed

with the litigation of a case over which the Court likely lacks jurisdiction and which is

proceeding in the improper venue. The irreparable harm to Defendants is magnified in light of

the single, calculated strategy evidenced by all of Plaintiffs' actions in this case, to date: to bolster their future claims to be filed in England, Plaintiffs filed suit in New York, clearly the improper forum, to exploit American discovery rules to depose the Defendants; Plaintiffs then sought—and obtained—an order compelling the completion of that impermissible discovery before any of Defendants' procedural challenges could be addressed or resolved. The irreparable harm which the Defendants will experience if the U.K. Action and New York Action are permitted to proceed simultaneously far outweighs even the possibility of prejudice to Plaintiffs if their extraordinarily improper tactics are condoned. *See The Irish Lesbian and Gay Org. v. Giuliani*, 918 F. Supp. 728, 730 (S.D.N.Y. 1996) (expedited discovery permitted only after showing of irreparable injury to the moving party and evidence that "injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.") (citing *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).[26]

*Sixth*, although the U.S. Action was filed first, the sequence of the filings is irrelevant. Indeed, only one Defendant has been served in the U.S. Action and he has contested jurisdiction and venue. In the U.K. Action, however, the Plaintiffs have been properly served and the propriety of jurisdiction and venue are beyond question. (Barry Decl., Exh. E, F, G, and H). *See MLC*, 46 F. Supp. 2d at 254 n4 (where Commercial Court called upon to interpret provisions of contracts, London action deemed to have progressed well beyond incipiency).

---

[26] *Accord Rosecliff, Inc. v. C3, Inc.*, No. 94 Civ. 9104, 1995 WL 3024, at *2 (S.D.N.Y. Jan. 3, 1995); *Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.*, No. 94 Civ. 5620, 1994 WL 719696, at *3 (S.D.N.Y. Dec. 28, 1994); *Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990); *see also Crown Crafts, Inc. v. Aldrich*, 148 F.R.D. 151, 152 (E.D.N.C. 1993) (adopting *Notaro* as "compelling").

## II.    RECONSIDERATION OF THE COURT'S MAY 24 ORDER IS WARRANTED

The Court's May 24 Order compels two Defendants—who have not been served with the Complaint to this very day—to complete discovery in this action, including seven-hour depositions not permitted in England, by June 15.  The Order, however, was entered before the Court had sufficient time or opportunity to review, address, and resolve significant challenges to personal jurisdiction and venue.  Moreover, it is now apparent that Plaintiffs' application for expedited discovery was based upon erroneous facts and an alleged erroneous interpretation of the Bonus Contracts.  For these reasons, operation of the May 24 Order is manifestly unjust.

Under *L.R.* 6.3, the Court may reconsider an order based upon matters which the Court may have overlooked.  Likewise, Rule 54(b) provides the Court wide discretion to reconsider, and if appropriate, modify an interlocutory order or ruling at any time prior to a final judgment. *See New York v. Almy Brothers, Inc.*, 90-CV-818, 1998 U.S. Dist. LEXIS 5469, at *5 (N.D.N.Y. April 15, 1998).  Generally, an interlocutory order may be reconsidered when there is "an intervening change of controlling law, the availability of new evidence or the need to correct a clear error or prevent manifest injustice."  *Almy Brothers,* 1998 U.S. Dist. LEXIS 5469, at *5 (quoting *D.A. Elia Constr. Corp. v. U.S. Fid. & Guaranty Co.*, 94-CV-0190E(H), 1997 U.S. Dist. LEXIS 5610, at *9, n.10 (W.D.N.Y. April 16, 1997)); *see e.g. Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 163 (E.D.N.Y. 2002) (reconsidering *sua sponte* denial of motion for summary judgment after learning of new circuit decision holding contrary to initial decision); *see also D.A. Elia Constr. Corp.*, 1997 U.S. Dist. LEXIS 5610, at *9 (courts should grant motions to reconsider "as justice requires.").

Application of these principles is particularly appropriate here because, as an initial matter, the Order compels individuals not properly before the Court to complete discovery in a

lawsuit which has never been served upon them. "Absent a waiver, Rule 4 mandates that the defendant be served with the summons and complaint personally, or in accordance with one of several prescribed alternatives. A showing that the defendant has had actual notice of the lawsuit is not sufficient to bar a motion to dismiss under Rule 12(b)(2)." *Martin v. New York State Department of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978); *accord Springer v. Singer*, No. 88 Civ. 2484 (MJL), 1990 U.S. Dist. LEXIS 11862, *6 (S.D.N.Y. Aug. 29, 1990). In the face of this undisputed procedural defect, the May 24 Order should not apply to Messrs. Samengo-Turner or Hopkins.

In addition, the litany of "erroneous" assertions which have been renounced by the Plaintiffs in their June 1 and June 4 submissions in the U.K. Action warrant reconsideration of the Court's Order. Nearly every material fact relevant to Plaintiffs' original application for expedited discovery is disclaimed by their subsequent filing. Under these extraordinary circumstances, reconsideration is strongly warranted.

Finally, the pending dispositive motion raises legal challenges and factual issues which require resolution before the Defendants are forced to complete discovery in this case. As the original opposition to Plaintiffs' motion for expedited discovery indicated, and the pending motion to dismiss fully demonstrates, the lack of a meaningful connection between the parties and the litigation to New York strongly warrants dismissal of the Complaint in its entirety due to lack of personal jurisdiction. This, and Plaintiffs' unabashed forum shopping and clear attempt to exploit the American discovery rules to obtain in New York what they could not in England, illustrate that dismissal is also proper under the doctrine of forum *non conveniens*. (Barry Decl., Exh. A at 013 to 032, Exh. B at 03 to 17). Failure to reconsider the Order compelling expedited discovery will require the Defendants to needlessly engage in costly discovery proceedings,

18

including overseas depositions, based on the faulty premise that the Court can exercise personal jurisdiction over all Defendants and that New York is the proper forum for this litigation. In the alternative to staying the entire New York Action, therefore, the lack of proper service, the Plaintiffs' admitted fundamental inaccuracies in their original application, and the pending motion to dismiss warrant reconsideration, and vacation, of the May 24 Order.

## III.    EXPEDITED DISCOVERY SHOULD BE STAYED BASED UPON THE PENDING U.K. ACTION AND TO PERMIT THE COURT ADEQUATE TIME TO REVIEW, ADDRESS, AND RESOLVE THE PENDING DISPOSITIVE MOTION TO DISMISS PLAINTIFFS' COMPLAINT

If, in the alternative, the Court declines to stay the New York proceedings or vacate its May 24 Order, a brief stay of that Order is appropriate based upon the pending U.K. Action and to allow for the resolution of the pending motion to dismiss. If either the U.K. Action or the motion to dismiss is successful, the Complaint will be disposed of in its entirety. This accords with Rule 26(c), which provides the Court with discretion to stay discovery "for good cause shown." *Fed.R.Civ.P.* 26(c). "Good cause" is shown where, as here, "a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (citing *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94 Civ. 2120, 1996 WL 101277, at *2 (S.D.N.Y. March 7, 1996) (collecting cases)); *accord Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127 (2d Cir. 1987) (affirming district court's decision to stay discovery pending motion to dismiss based on forum *non conveniens*). Each of these factors strongly favors a stay of operation of the Court's May 24 Order.

*First*, the U.K. Action and the pending motion to dismiss are potentially dispositive of the entire action on three independent grounds (British jurisdictional precedent, lack of personal jurisdiction, and forum *non conveniens*), each of which is based on undisputed facts and

substantial authority.  If Defendants prevail in the U.K. Action or the motion is granted, the case

will end and, consequently, no discovery—expedited or otherwise—will be necessary.  When a

motion is potentially dispositive and not unfounded in the law, courts should implement a stay of

discovery.  *See In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409 M 21-95, 2002

U.S. Dist. LEXIS 974, at *4 (S.D.N.Y. Jan. 22, 2002) ("a stay of discovery is appropriate

pending resolution of a potentially dispositive motion where the motion 'appear[s] to have

substantial grounds'.") (alteration in original) (quoting *Chrysler Capital Corp. v. Century Power

Corp.*, 137 F.R.D. 209, 209-210 (S.D.N.Y. 1991)).  Indeed, a "'stay pending determination of a

dispositive motion that potentially eliminates the entire action will neither substantially nor

unduly delay the action, should it continue.'"  *Spencer Trask*, 206 F.R.D. at 368 (S.D.N.Y.

2002); *see Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933 (2d

Cir. 1998) (affirming district court's stay of discovery pending motion to dismiss under *Fed. R.

Civ. Proc.* 12(b)(6) and 9(b)).

    Remarkably similar issues were raised in *Port Dock and Stone Corp. v. Oldcastle

Northeast, Inc.*, CV 05-4294 (DRH) (ETB), 2006 U.S. Dist. LEXIS 94944 (E.D.N.Y. Mar. 31,

2006).  In that matter, two defendants argued that discovery should be stayed "because the

plaintiffs lack[ed] personal jurisdiction over these defendants and because these defendants were

not properly served."  *Id*. at *2.  The district court entered a stay of discovery because, *inter alia*,

"the defendants raise substantial issues with regard to the viability of plaintiffs' complaint as

against defendants . . . and defendants' arguments do not appear to be frivolous or unfounded."

*Id*. at *5.  *Accord Estate of Nunez-Polanco v. Boch Toyota*, Civ. No. 3:03cv2251 (WWE), 2004

U.S. Dist. LEXIS 18411 (D.Conn July 21, 2004) (motion for protective order granted, precluding

20

depositions and staying discovery pending a ruling on defendants' motion to dismiss for lack of personal jurisdiction).

*Second*, only a brief stay is sought to permit the U.K. Action to conclude and/or to allow the Court adequate time to review and resolve the significant pending procedural challenges. The Court ordered that expedited discovery commence less than 55 hours after Whyte's U.S. counsel received Plaintiffs' motion papers. *See* Barry Decl., Exh. C, Tr. 8:20-23. Because the Court lacked the opportunity to thoroughly consider the personal jurisdiction or forum *non conveniens* challenges on May 18, a brief stay to allow the Court sufficient time to address these dispositive arguments is surely warranted.

*Third*, as stated above, Defendants assurances and Plaintiffs' public statements confirm that Plaintiffs will experience no prejudice if a brief stay is permitted. *Compare, e.g.*, *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (expedited discovery appropriate where plaintiff proves that defendants have incentive and capacity to hide assets and will not defend the matter on the merits).

Based upon the pending dispositive motion, a brief stay of discovery is warranted. Defendants' prior representations and assurances, combined with Plaintiffs' admissions, confirm that Plaintiffs will not experience *any* harm—let alone extraordinary prejudice—if the Court grants a stay of discovery pending resolution of the U.K. Action and the motion to dismiss.

## IV.    THE DISTRICT COURT SHOULD CERTIFY THIS MATTER AS APPROPRIATE FOR IMMEDIATE INTERLOCUTORY APPEAL

In the further alternative, Whyte respectfully requests that the Court amend its May 24 Order to certify this dispute as one appropriate for immediate interlocutory appeal. *See, e.g., Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 162 (2nd Cir. 1992)

(certification pursuant to 28 U.S.C. §1292(b) provides jurisdictional basis for interlocutory review of pretrial discovery order). The Order that Whyte, and two other English residents not yet served with the Complaint, must complete expedited discovery—including lengthy depositions which are not permitted in England—in the face of a pending action in England and before the significant pending challenges to jurisdiction and venue are addressed "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). Accordingly, the Court is respectfully requested to amend its May 24 Order to add this §1292(b) certification.

## CONCLUSION

Under the present circumstances, each of the relevant factors weighs in favor of the Court's deference to the U.K. Action. Whyte, therefore, respectfully requests that all proceedings in this matter be stayed until such time as the pending, related proceeding in the High Court of Justice is resolved. In the alternative, Whyte respectfully requests that the Court reconsider, and vacate, its May 24 Order. In the further alternative, Whyte respectfully requests that all discovery in this matter be stayed until such time as the pending U.K. Action is resolved and the service of process, personal jurisdiction, and forum *non conveniens* challenges are adjudicated by

the Court.  In the final alternative, Whyte respectfully requests that the Court amend the May 24

Order to certify the matter appropriate for immediate interlocutory appeal.


Dated: June 6, 2007                          */s/John P. Barry*
                                             John P. Barry (JB 6489)
                                             Mark A. Saloman (MS 5764)
                                             Proskauer Rose LLP
                                             One Newark Center, 18th Floor
                                             Newark, New Jersey 07102
                                             973.274.3200
                                             973.274.3299 (Fax)