7

ESTATE OF LUIS A. NUNEZ-POLANCO A/K/A LUIS A. NUNEZ, ADMINISTRATOR, Plaintiff, v. BOCH TOYOTA, Inc. et al., Defendants.

CIV. NO. 3:03cv2251 (WWE)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2004 U.S. Dist. LEXIS 18411

July 21, 2004, Decided

**SUBSEQUENT HISTORY:** Motion denied by *Estate of Luis A. Nunez-Polanco v. Boch Toyota, Inc., 339 F. Supp. 2d 381, 2004 U.S. Dist. LEXIS 19627 (D. Conn., Sept. 21, 2004)*

**DISPOSITION:** Defendants' motion for protective order granted. All discovery stayed until court has ruled on motion to dismiss.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant car dealership and its employee moved for a protective order, in the United States District Court for the District of Connecticut in plaintiff estate's wrongful death suit brought pursuant to Conn. Gen. Stat. § 14-154a, to preclude the deposition of the employee and to stay all discovery pending a ruling on the dealership's motion to dismiss for lack of **personal jurisdiction.** The fatal car accident occurred on Connecticut.

**OVERVIEW:** Decedent was a resident of New York. The dealership was a Massachusetts corporation with its principal place of business in Massachusetts. The employee was a resident of Massachusetts and was being sued for his activities on behalf of the dealership. The magistrate judge held that the district court would be able to grant the dealership's motion to dismiss for lack of **personal jurisdiction** on those grounds, and that was sufficient basis upon which to deny any discovery. The estate argued, however, that it should be permitted discovery to show that the dealership had sufficient contacts with the state of Connecticut to support **personal jurisdiction.** Under the circumstances in the instant case, even if the district court did not dismiss the case under the principle in Pomazi, the court found that the estate had not made a threshold showing to support jurisdictional discovery. Therefore, the only possible basis for jurisdiction would have been under Conn. Gen. Stat. § 5259b (a), but the complaint contained no allegations that the dealership had had any contacts with Connecticut. That ruling was reviewable pursuant to the "clearly erroneous" statutory standard of review.

**OUTCOME:** The motion for protective order was grated.

**COUNSEL:** [*1] For Michael D. Shapiro, Admin Est Luis A. Nunez-Polanco aka Luis A. Nunez, Plaintiff: Jennifer L. Booker, New London, CT; Robert I. Reardon, Jr., New London, CT; Robert T. Rimmer, New London, CT.

For Boch Toyota Inc, Michael Humphrey, Defendants: Michelle I. Turner, Day, Berry & Howard, Hartford, CT; Paul D. Williams, Day, Berry & Howard, Hartford, CT; David H. Rich, Todd & Weld, Boston, MA; Howard M. Cooper, Todd & Weld, Boston, MA.

**JUDGES:** HOLLY B. FITZSIMMONS, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** HOLLY B. FITZSIMMONS

**OPINION:**

   RULING on MOTION FOR PROTECTIVE ORDER

I. Introduction

   Defendant Boch Toyota and its employee Michael Humphrey move for a protective order [doc # 19] to

preclude the deposition of Mr. Humphrey and to stay all discovery pending a ruling on defendants' motion to dismiss for lack of **personal jurisdiction.** For the reasons that follow, defendants' motion for protective order [**doc # 19**] is **GRANTED**. Accordingly, all **discovery is stayed** until the court has ruled on the **motion** to dismiss.

II. BACKGROUND

This is a wrongful death case filed by the estate of Luis A. Nunez-Polanco against Boch Toyota and several other defendants. n1 The [*2] case was originally filed in New London Superior Court and was removed to this Court on December 24, 2003, under this court's diversity jurisdiction. The complaint alleges that Boch Toyota leased a vehicle to defendant Carl Housen, who then re-leased it to defendant Victor Gomez. (Compl. Second Count P6.) Mr. Gomez was allegedly driving the vehicle on I-95 near New Haven, Connecticut, when it collided with the barrier and overturned, fatally injuring Mr. Nunez. (Compl. First Count PP4,5.) Plaintiff claims that Boch Toyota is liable for Mr. Nunez's death pursuant to *Conn. Gen. Stat. § 14-154a.* n2

n1 The other defendants have not yet filed appearances in the matter.

n2 *Conn. Gen. Stat. 14-154a* provides, in pertinent part: Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner.

[*3]

Mr. Nunez, the plaintiff, is a resident of New York. (Compl. First Count PP4.) Boch Toyota is a Massachusetts corporation with its principal place of business in Massachusetts. (Compl. First Count P2.) Michael Humphrey is a resident of Massachusetts and is being sued for his activities on behalf of Boch Toyota. (Compl. First Count P4.)

III. DISCUSSION

**Personal jurisdiction** over an out-of-state defendant in a diversity case depends first upon whether the federal district Court has jurisdiction under the forum state's long-arm statute. *Pomazi v. Health Indus. of Am., 869 F. Supp. 102, 104 (D. Conn. 1994)*; see *Air Kaman, Inc. v. Penn-Aire Aviation, Inc., 542 F. Supp. 2, 3 (D. Conn. 1981).* However, "the Connecticut long-arm statutes do not confer jurisdiction over actions committed by a nonresident party against another nonresident." *Id.* (citing Conn. Gen. Stat. § 33-411(c), *§ 52-59b(a)*). n3 As plaintiff is a resident of New York, and the defendant is incorporated in Massachusetts, and has principal place of business in Massachusetts, we believe that, under *Pomazi,* the district court would be able to grant [*4] plaintiff's motion to dismiss for lack of **personal jurisdiction** on these grounds, and that this is sufficient basis upon which to deny any discovery.

n3 Conn. Gen. Stat. § 33-411(c) provides in pertinent part: Every foreign corporation shall be subject to suit in this state, by a resident of this state. . . whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; . . . or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

*Conn. Gen. Stat. 52-59b(a)* provides, in pertinent part: As to a cause of action arising from any of the acts enumerated in this section, a court may exercise **personal jurisdiction** over any nonresident individual, foreign partnership or over the executor or administrator of such nonresident individual or foreign partnership, who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in *subdivision (1) of subsection (a) of*

Case 1:07-cv-03580-DLC    Document 24-5    Filed 06/12/2007    Page 4 of 17

Page 3
2004 U.S. Dist. LEXIS 18411, *

*section 53-451*, or a computer network, as defined in *subdivision (3) of subsection (a) of said section*, located within the state.

[*5]

Plaintiff argues, however, that he should be permitted discovery to show that Boch Toyota has sufficient contacts with the state of Connecticut to support **personal jurisdiction.** n4 However, courts in this Circuit have held that jurisdictional discovery is not appropriate when the plaintiff has not made a prima facie case for the exercise of **personal jurisdiction.** See *Jazini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998)*. While discovery on the question of **personal jurisdiction** may be appropriate when there is a motion to dismiss for lack of jurisdiction, plaintiffs must first make "a threshold showing that there is some basis for the assertion of jurisdiction." *Monsanto Int'l Sales Co. v. Hanjin Container Lines, Ltd., 770 F. Supp. 832, 838-839 (S.D.N.Y. 1991)*; *Bangladesh Agricultural Development Corp. v. Transcontinental Imex, Inc., 1983 A.M.C. 1970 (S.D.N.Y. 1982)*(citations omitted).

> n4 Plaintiff erroneously cites *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 576 (2d Cir. 1996)* as standing for the proposition that "discovery is appropriate before deciding a motion to dismiss for lack of **personal jurisdiction,** and that the district court will only be reversed for allowing such discovery if it abuses its discretion." (Pl.'s Mem. at 8.) In *Metropolitan Life,* the issue was whether the Court abused its discretion by limiting jurisdictional discovery to the years between 1987 and 1993, and not whether plaintiff had made a prima facie showing of jurisdiction.

[*6]

Under the circumstances in this case, even if the district court did not dismiss the case under the principle in *Pomazi,* the court finds that the plaintiffs have not made a threshold showing to support jurisdictional discovery.

Conn. Gen. Stat. § 14-1594(a), under which plaintiff brings this action, does not confer jurisdiction. Conn. Gen. Stat. § 33-411(c) states that a suit may only be brought by a resident of the state. See supra note 3. Therefore, the only possible basis for jurisdiction would be under *§ 52-59b (a)* which provides, in pertinent part:

> a court may exercise **personal jurisdiction** over any nonresident individual, foreign partnership or over the executor or administrator of such nonresident individual or foreign partnership, who in person or through an agent: . . . (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods [*7] used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

*Conn. Gen. Stat. § 52-59b(a)*.

Plaintiff has not alleged any set of facts showing Boch Toyota has contact with Connecticut sufficient to make a prima facie case for jurisdiction under *§ 52-59b(a)*. The complaint contains no allegations that Boch Toyota has any contacts with Connecticut. Plaintiff asserts in his opposition memorandum that there is a discrepancy between the color and license plates of the vehicle allegedly leased to Mr. Housen, and the vehicle at the scene of the accident. (Pl.'s Mem. at 5.) This has no bearing on the issue of Boch Toyota's activities in Connecticut. Secondly, plaintiff asserts that there is evidence that a prior relationship between Mr. Housen and Mr. Humphrey may have existed that pre-dated the transaction at issue in this case. (Id. at 7.) At oral argument, plaintiff conceded that this is relevant to the question of whether Boch Toyota had knowledge of the transfer, and not to jurisdiction. Finally, plaintiff [*8] points to Boch Toyota's website, on which it allegedly proclaims itself the "2nd largest dealership in the world," and a sweepstakes on the website in which winners came from numerous states and Israel. (Id.) The court finds that these allegations are insufficient to establish a prima facie case for jurisdiction under *§ 52-59b*.

IV. CONCLUSION

Defendants' motion for protective order [**doc # 19**] is **GRANTED and all discovery is stayed** pending the court's ruling on plaintiff's **motion** to dismiss. The further **grants** defendants' request for an extension to file the 26(f) report until after the motion to dismiss is decided.

This is not a recommended ruling. This is a discovery ruling which is reviewable pursuant to the

Case 1:07-cv-03580-DLC   Document 24-5   Filed 06/12/2007   Page 5 of 17

Page 4
2004 U.S. Dist. LEXIS 18411, *

"clearly erroneous" statutory standard of review. *28 U.S.C. § 636 (b)(1)(A)*; *Fed. R. Civ. P. 6(a), 6(e) and 72(a)*; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at [*9] Bridgeport this 21st day of July 2004.

/s/

HOLLY B. FITZSIMMONS

UNITED STATES MAGISTRATE JUDGE

8

WestlawUK
From Sweet & Maxwell

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 1

European Union Legislation

Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters

Official Journal L 12, 16/01/2001 p. 1

© ELLIS Publications.

© European Communities.

Current through 8 May 2007

<Image in PDF format not available via Offline Print View on westlaw.com.>

Text outline

Text

Index

Year (Dates)

References

Bibliographic Information

Text

COUNCIL REGULATION (EC) No 44/2001

of 22 December 2000

on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Article 61(c) and Article 67(1) thereof,

Having regard to the proposal from the Commission (1),

Having regard to the opinion of the European Parliament (2),

Having regard to the opinion of the Economic and Social Committee (3),

Whereas:

Copr. © West 2007 No Claim to Orig. Govt. Works

---

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 2

(1) The Community has set itself the objective of maintaining and developing an area of freedom, security and justice, in which the free movement of persons is ensured. In order to establish progressively such an area, the Community should adopt, amongst other things, the measures relating to judicial cooperation in civil matters which are necessary for the sound operation of the internal market.

(2) Certain differences between national rules governing jurisdiction and recognition of judgments hamper the sound operation of the internal market. Provisions to unify the rules of conflict of jurisdiction in civil and commercial matters and to simplify the formalities with a view to rapid and simple recognition and enforcement of judgments from Member States bound by this Regulation are essential.

(3) This area is within the field of judicial cooperation in civil matters within the meaning of Article 65 of the Treaty.

(4) In accordance with the principles of subsidiarity and proportionality as set out in Article 5 of the Treaty, the objectives of this Regulation cannot be sufficiently achieved by the Member States and can therefore be better achieved by the Community. This Regulation confines itself to the minimum required in order to achieve those objectives and does not go beyond what is necessary for that purpose.

(5) On 27 September 1968 the Member States, acting under Article 293, fourth indent, of the Treaty, concluded the Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, as amended by Conventions on the Accession of the New Member States to that Convention (hereinafter referred to as the 'Brussels Convention') (4). On 16 September 1988 Member States and EFTA States concluded the Lugano Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, which is a parallel Convention to the 1968 Brussels Convention. Work has been undertaken for the revision of those Conventions, and the Council has approved the content of the revised texts. Continuity in the results achieved in that revision should be ensured.

(6) In order to attain the objective of free movement of judgments in civil and commercial matters, it is necessary and appropriate that the rules governing jurisdiction and the recognition and enforcement of judgments be governed by a Community legal instrument which is binding and directly applicable.

(7) The scope of this Regulation must cover all the main civil and commercial matters apart from certain well-defined matters.

(8) There must be a link between proceedings to which this Regulation applies and the territory of the Member States bound by this Regulation. Accordingly common rules on jurisdiction should, in principle, apply when the defendant is domiciled in one of those Member States.

(9) A defendant not domiciled in a Member State is in general subject to national rules of jurisdiction applicable in the territory of the Member State of the court seised, and a defendant domiciled in a Member State not bound by this Regulation must remain subject to the Brussels Convention.

(10) For the purposes of the free movement of judgments, judgments given in a Member State bound by this Regulation should be recognised and enforced in another Member State bound by this Regulation, even if the judgment debtor is domiciled in a third State.

(11) The rules of jurisdiction must be highly predictable and founded on the principle that jurisdiction is generally based on the defendant's domicile and jurisdiction must always be available on this ground save in a few well-defined situations in which the subject-matter of the litigation or the autonomy of the parties warrants a different linking factor. The domicile of a legal person must be defined autonomously so as to make the common rules more transparent and avoid conflicts of jurisdiction.

(12) In addition to the defendant's domicile, there should be alternative grounds of jurisdiction based on a close link between the court and the action or in order to facilitate the sound administration of justice.

(13) In relation to insurance, consumer contracts and employment, the weaker party should be protected by rules of jurisdiction more favourable to his interests than the general rules provide for.

(14) The autonomy of the parties to a contract, other than an insurance, consumer or employment contract,

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 3

where only limited autonomy to determine the courts having jurisdiction is allowed, must be respected subject to the exclusive grounds of jurisdiction laid down in this Regulation.

(15) In the interests of the harmonious administration of justice it is necessary to minimise the possibility of concurrent proceedings and to ensure that irreconcilable judgments will not be given in two Member States. There must be a clear and effective mechanism for resolving cases of lis pendens and related actions and for obviating problems flowing from national differences as to the determination of the time when a case is regarded as pending. For the purposes of this Regulation that time should be defined autonomously.

(16) Mutual trust in the administration of justice in the Community justifies judgments given in a Member State being recognised automatically without the need for any procedure except in cases of dispute.

(17) By virtue of the same principle of mutual trust, the procedure for making enforceable in one Member State a judgment given in another must be efficient and rapid. To that end, the declaration that a judgment is enforceable should be issued virtually automatically after purely formal checks of the documents supplied, without there being any possibility for the court to raise of its own motion any of the grounds for non-enforcement provided for by this Regulation.

(18) However, respect for the rights of the defence means that the defendant should be able to appeal in an adversarial procedure, against the declaration of enforceability, if he considers one of the grounds for non-enforcement to be present. Redress procedures should also be available to the claimant where his application for a declaration of enforceability has been rejected.

(19) Continuity between the Brussels Convention and this Regulation should be ensured, and transitional provisions should be laid down to that end. The same need for continuity applies as regards the interpretation of the Brussels Convention by the Court of Justice of the European Communities and the 1971 Protocol (5) should remain applicable also to cases already pending when this Regulation enters into force.

(20) The United Kingdom and Ireland, in accordance with Article 3 of the Protocol on the position of the United Kingdom and Ireland annexed to the Treaty on European Union and to the Treaty establishing the European Community, have given notice of their wish to take part in the adoption and application of this Regulation.

(21) Denmark, in accordance with Articles 1 and 2 of the Protocol on the position of Denmark annexed to the Treaty on European Union and to the Treaty establishing the European Community, is not participating in the adoption of this Regulation, and is therefore not bound by it nor subject to its application.

(22) Since the Brussels Convention remains in force in relations between Denmark and the Member States that are bound by this Regulation, both the Convention and the 1971 Protocol continue to apply between Denmark and the Member States bound by this Regulation.

(23) The Brussels Convention also continues to apply to the territories of the Member States which fall within the territorial scope of that Convention and which are excluded from this Regulation pursuant to Article 299 of the Treaty.

(24) Likewise for the sake of consistency, this Regulation should not affect rules governing jurisdiction and the recognition of judgments contained in specific Community instruments.

(25) Respect for international commitments entered into by the Member States means that this Regulation should not affect conventions relating to specific matters to which the Member States are parties.

(26) The necessary flexibility should be provided for in the basic rules of this Regulation in order to take account of the specific procedural rules of certain Member States. Certain provisions of the Protocol annexed to the Brussels Convention should accordingly be incorporated in this Regulation.

(27) In order to allow a harmonious transition in certain areas which were the subject of special provisions in the Protocol annexed to the Brussels Convention, this Regulation lays down, for a transitional period, provisions taking into consideration the specific situation in certain Member States.

(28) No later than five years after entry into force of this Regulation the Commission will present a report on its

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 4

application and, if need be, submit proposals for adaptations.

(29) The Commission will have to adjust Annexes I to IV on the rules of national jurisdiction, the courts or competent authorities and redress procedures available on the basis of the amendments forwarded by the Member State concerned; amendments made to Annexes V and VI should be adopted in accordance with Council Decision 1999/468/EC of 28 June 1999 laying down the procedures for the exercise of implementing powers conferred on the Commission (6),

HAS ADOPTED THIS REGULATION:

CHAPTER I

SCOPE

Article 1

1. This Regulation shall apply in civil and commercial matters whatever the nature of the court or tribunal. It shall not extend, in particular, to revenue, customs or administrative matters.

2. The Regulation shall not apply to:

(a) the status or legal capacity of natural persons, rights in property arising out of a matrimonial relationship, wills and succession;

(b) bankruptcy, proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings;

(c) social security;

(d) arbitration.

3. In this Regulation, the term 'Member State' shall mean Member States with the exception of Denmark.

CHAPTER II

JURISDICTION

Section 1

General provisions

Article 2

1. Subject to this Regulation, persons domiciled in a Member State shall, whatever their nationality, be sued in the courts of that Member State.

2. Persons who are not nationals of the Member State in which they are domiciled shall be governed by the rules of jurisdiction applicable to nationals of that State.

Article 3

1. Persons domiciled in a Member State may be sued in the courts of another Member State only by virtue of the rules set out in Sections 2 to 7 of this Chapter.

2. In particular the rules of national jurisdiction set out in Annex I shall not be applicable as against them.

Article 4

1. If the defendant is not domiciled in a Member State, the jurisdiction of the courts of each Member State shall,

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 5

subject to Articles 22 and 23, be determined by the law of that Member State.

2. As against such a defendant, any person domiciled in a Member State may, whatever his nationality, avail himself in that State of the rules of jurisdiction there in force, and in particular those specified in Annex I, in the same way as the nationals of that State.

Section 2

Special jurisdiction

Article 5

A person domiciled in a Member State may, in another Member State, be sued:

1. (a) in matters relating to a contract, in the courts for the place of performance of the obligation in question;

(b) for the purpose of this provision and unless otherwise agreed, the place of performance of the obligation in question shall be:

- in the case of the sale of goods, the place in a Member State where, under the contract, the goods were delivered or should have been delivered,

- in the case of the provision of services, the place in a Member State where, under the contract, the services were provided or should have been provided,

(c) if subparagraph (b) does not apply then subparagraph (a) applies;

2. in matters relating to maintenance, in the courts for the place where the maintenance creditor is domiciled or habitually resident or, if the matter is ancillary to proceedings concerning the status of a person, in the court which, according to its own law, has jurisdiction to entertain those proceedings, unless that jurisdiction is based solely on the nationality of one of the parties;

3. in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred or may occur;

4. as regards a civil claim for damages or restitution which is based on an act giving rise to criminal proceedings, in the court seised of those proceedings, to the extent that that court has jurisdiction under its own law to entertain civil proceedings;

5. as regards a dispute arising out of the operations of a branch, agency or other establishment, in the courts for the place in which the branch, agency or other establishment is situated;

6. as settlor, trustee or beneficiary of a trust created by the operation of a statute, or by a written instrument, or created orally and evidenced in writing, in the courts of the Member State in which the trust is domiciled;

7. as regards a dispute concerning the payment of remuneration claimed in respect of the salvage of a cargo or freight, in the court under the authority of which the cargo or freight in question:

(a) has been arrested to secure such payment, or

(b) could have been so arrested, but bail or other security has been given;

provided that this provision shall apply only if it is claimed that the defendant has an interest in the cargo or freight or had such an interest at the time of salvage.

Article 6

A person domiciled in a Member State may also be sued:

Copr. © West 2007 No Claim to Orig. Govt. Works

---

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 6

1. where he is one of a number of defendants, in the courts for the place where any one of them is domiciled, provided the claims are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings;

2. as a third party in an action on a warranty or guarantee or in any other third party proceedings, in the court seised of the original proceedings, unless these were instituted solely with the object of removing him from the jurisdiction of the court which would be competent in his case;

3. on a counter-claim arising from the same contract or facts on which the original claim was based, in the court in which the original claim is pending;

4. in matters relating to a contract, if the action may be combined with an action against the same defendant in matters relating to rights in rem in immovable property, in the court of the Member State in which the property is situated.

Article 7

Where by virtue of this Regulation a court of a Member State has jurisdiction in actions relating to liability from the use or operation of a ship, that court, or any other court substituted for this purpose by the internal law of that Member State, shall also have jurisdiction over claims for limitation of such liability.

Section 3

Jurisdiction in matters relating to insurance

Article 8

In matters relating to insurance, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5.

Article 9

1. An insurer domiciled in a Member State may be sued:

(a) in the courts of the Member State where he is domiciled, or

(b) in another Member State, in the case of actions brought by the policyholder, the insured or a beneficiary, in the courts for the place where the plaintiff is domiciled,

(c) if he is a co-insurer, in the courts of a Member State in which proceedings are brought against the leading insurer.

2. An insurer who is not domiciled in a Member State but has a branch, agency or other establishment in one of the Member States shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that Member State.

Article 10

In respect of liability insurance or insurance of immovable property, the insurer may in addition be sued in the courts for the place where the harmful event occurred. The same applies if movable and immovable property are covered by the same insurance policy and both are adversely affected by the same contingency.

Article 11

1. In respect of liability insurance, the insurer may also, if the law of the court permits it, be joined in proceedings which the injured party has brought against the insured.

2. Articles 8, 9 and 10 shall apply to actions brought by the injured party directly against the insurer, where such direct actions are permitted.

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L12/1  
EU: Regulation (EC) No 44/2001  
Celex No. 301R0044

Page 7

3. If the law governing such direct actions provides that the policyholder or the insured may be joined as a party to the action, the same court shall have jurisdiction over them.

### Article 12

1. Without prejudice to Article 11(3), an insurer may bring proceedings only in the courts of the Member State in which the defendant is domiciled, irrespective of whether he is the policyholder, the insured or a beneficiary.

2. The provisions of this Section shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

### Article 13

The provisions of this Section may be departed from only by an agreement:

1. which is entered into after the dispute has arisen, or

2. which allows the policyholder, the insured or a beneficiary to bring proceedings in courts other than those indicated in this Section, or

3. which is concluded between a policyholder and an insurer, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same Member State, and which has the effect of conferring jurisdiction on the courts of that State even if the harmful event were to occur abroad, provided that such an agreement is not contrary to the law of that State, or

4. which is concluded with a policyholder who is not domiciled in a Member State, except in so far as the insurance is compulsory or relates to immovable property in a Member State, or

5. which relates to a contract of insurance in so far as it covers one or more of the risks set out in Article 14.

### Article 14

The following are the risks referred to in Article 13(5):

1. any loss of or damage to:

(a) seagoing ships, installations situated offshore or on the high seas, or aircraft, arising from perils which relate to their use for commercial purposes;

(b) goods in transit other than passengers' baggage where the transit consists of or includes carriage by such ships or aircraft;

2. any liability, other than for bodily injury to passengers or loss of or damage to their baggage:

(a) arising out of the use or operation of ships, installations or aircraft as referred to in point 1(a) in so far as, in respect of the latter, the law of the Member State in which such aircraft are registered does not prohibit agreements on jurisdiction regarding insurance of such risks;

(b) for loss or damage caused by goods in transit as described in point 1(b);

3. any financial loss connected with the use or operation of ships, installations or aircraft as referred to in point 1(a), in particular loss of freight or charter-hire;

4. any risk or interest connected with any of those referred to in points 1 to 3;

5. notwithstanding points 1 to 4, all 'large risks' as defined in Council Directive 73/239/EEC (7, as amended by Council Directives 88/357/EEC (8) and 90/618/EEC (9), as they may be amended.

Copr. © West 2007 No Claim to Orig. Govt. Works

---

OJ 2001 L12/1  
EU: Regulation (EC) No 44/2001  
Celex No. 301R0044

Page 8

### Section 4

Jurisdiction over consumer contracts

### Article 15

1. In matters relating to a contract concluded by a person, the consumer, for a purpose which can be regarded as being outside his trade or profession, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5, if:

(a) it is a contract for the sale of goods on instalment credit terms; or

(b) it is a contract for a loan repayable by instalments, or for any other form of credit, made to finance the sale of goods; or

(c) in all other cases, the contract has been concluded with a person who pursues commercial or professional activities in the Member State of the consumer's domicile or, by any means, directs such activities to that Member State or to several States including that Member State, and the contract falls within the scope of such activities.

2. Where a consumer enters into a contract with a party who is not domiciled in the Member State but has a branch, agency or other establishment in one of the Member States, that party shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that State.

3. This Section shall not apply to a contract of transport other than a contract which, for an inclusive price, provides for a combination of travel and accommodation.

### Article 16

1. A consumer may bring proceedings against the other party to a contract either in the courts of the Member State in which that party is domiciled or in the courts for the place where the consumer is domiciled.

2. Proceedings may be brought against a consumer by the other party to the contract only in the courts of the Member State in which the consumer is domiciled.

3. This Article shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

### Article 17

The provisions of this Section may be departed from only by an agreement:

1. which is entered into after the dispute has arisen; or

2. which allows the consumer to bring proceedings in courts other than those indicated in this Section; or

3. which is entered into by the consumer and the other party to the contract, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same Member State, and which confers jurisdiction on the courts of that Member State, provided that such an agreement is not contrary to the law of that Member State.

### Section 5

Jurisdiction over individual contracts of employment

### Article 18

1. In matters relating to individual contracts of employment, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5.

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 9

2. Where an employee enters into an individual contract of employment with an employer who is not domiciled in a Member State but has a branch, agency or other establishment in one of the Member States, the employer shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that Member State.

### Article 19

An employer domiciled in a Member State may be sued:

1. in the courts of the Member State where he is domiciled; or

2. in another Member State:

(a) in the courts for the place where the employee habitually carries out his work or in the courts for the last place where he did so, or

(b) if the employee does not or did not habitually carry out his work in any one country, in the courts for the place where the business which engaged the employee is or was situated.

### Article 20

1. An employer may bring proceedings only in the courts of the Member State in which the employee is domiciled.

2. The provisions of this Section shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

### Article 21

The provisions of this Section may be departed from only by an agreement on jurisdiction:

1. which is entered into after the dispute has arisen; or

2. which allows the employee to bring proceedings in courts other than those indicated in this Section.

### Section 6

Exclusive jurisdiction

### Article 22

The following courts shall have exclusive jurisdiction, regardless of domicile:

1. in proceedings which have as their object rights in rem in immovable property or tenancies of immovable property, the courts of the Member State in which the property is situated.

However, in proceedings which have as their object tenancies of immovable property concluded for temporary private use for a maximum period of six consecutive months, the courts of the Member State in which the defendant is domiciled shall also have jurisdiction, provided that the tenant is a natural person and that the landlord and the tenant are domiciled in the same Member State;

2. in proceedings which have as their object the validity of the constitution, the nullity or the dissolution of companies or other legal persons or associations of natural or legal persons, or of the validity of the decisions of their organs, the courts of the Member State in which the company, legal person or association has its seat. In order to determine that seat, the court shall apply its rules of private international law;

3. in proceedings which have as their object the validity of entries in public registers, the courts of the Member State in which the register is kept

Copr. © West 2007 No Claim to Orig. Govt. Works

---

Page 10

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

4. in proceedings concerned with the registration or validity of patents, trade marks, designs, or other similar rights required to be deposited or registered, the courts of the Member State in which the deposit or registration has been applied for, has taken place or is under the terms of a Community instrument or an international convention deemed to have taken place.

Without prejudice to the jurisdiction of the European Patent Office under the Convention on the Grant of European Patents, signed at Munich on 5 October 1973, the courts of each Member State shall have exclusive jurisdiction, regardless of domicile, in proceedings concerned with the registration or validity of any European patent granted for that State;

5. in proceedings concerned with the enforcement of judgments, the courts of the Member State in which the judgment has been or is to be enforced.

### Section 7

Prorogation of jurisdiction

### Article 23

1. If the parties, one or more of whom is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise. Such an agreement conferring jurisdiction shall be either:

(a) in writing or evidenced in writing; or

(b) in a form which accords with practices which the parties have established between themselves; or

(c) in international trade or commerce, in a form which accords with a usage of which the parties are or ought to have been aware and which in such trade or commerce is widely known to, and regularly observed by, parties to contracts of the type involved in the particular trade or commerce concerned.

2. Any communication by electronic means which provides a durable record of the agreement shall be equivalent to 'writing'.

3. Where such an agreement is concluded by parties, none of whom is domiciled in a Member State, the courts of other Member States shall have no jurisdiction over their disputes unless the court or courts chosen have declined jurisdiction.

4. The court or courts of a Member State on which a trust instrument has conferred jurisdiction shall have exclusive jurisdiction in any proceedings brought against a settlor, trustee or beneficiary, if relations between these persons or their rights or obligations under the trust are involved.

5. Agreements or provisions of a trust instrument conferring jurisdiction shall have no legal force if they are contrary to Articles 13, 17 or 21, or if the courts whose jurisdiction they purport to exclude have exclusive jurisdiction by virtue of Article 22.

### Article 24

Apart from jurisdiction derived from other provisions of this Regulation, a court of a Member State before which a defendant enters an appearance shall have jurisdiction. This rule shall not apply where appearance was entered to contest the jurisdiction, or where another court has exclusive jurisdiction by virtue of Article 22.

### Section 8

Examination as to jurisdiction and admissibility

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 11

### Article 25

Where a court of a Member State is seised of a claim which is principally concerned with a matter over which the courts of another Member State have exclusive jurisdiction by virtue of Article 22, it shall declare of its own motion that it has no jurisdiction.

### Article 26

1. Where a defendant domiciled in one Member State is sued in a court of another Member State and does not enter an appearance, the court shall declare of its own motion that it has no jurisdiction unless its jurisdiction is derived from the provisions of this Regulation.

2. The court shall stay the proceedings so long as it is not shown that the defendant has been able to receive the document instituting the proceedings or an equivalent document in sufficient time to enable him to arrange for his defence, or that all necessary steps have been taken to this end.

3. Article 19 of Council Regulation (EC) No 1348/2000 of 29 May 2000 on the service in the Member States of judicial and extrajudicial documents in civil or commercial matters (10) shall apply instead of the provisions of paragraph 2 if the document instituting the proceedings or an equivalent document had to be transmitted from one Member State to another pursuant to this Regulation.

4. Where the provisions of Regulation (EC) No 1348/2000 are not applicable, Article 15 of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters shall apply if the document instituting the proceedings or an equivalent document had to be transmitted pursuant to that Convention.

### Section 9

Lis pendens - related actions

### Article 27

1. Where proceedings involving the same cause of action and between the same parties are brought in the courts of different Member States, any court other than the court first seised shall of its own motion stay its proceedings until such time as the jurisdiction of the court first seised is established.

2. Where the jurisdiction of the court first seised is established, any court other than the court first seised shall decline jurisdiction in favour of that court.

### Article 28

1. Where related actions are pending in the courts of different Member States, any court other than the court first seised may stay its proceedings.

2. Where these actions are pending at first instance, any court other than the court first seised may also, on the application of one of the parties, decline jurisdiction if the court first seised has jurisdiction over the actions in question and its law permits the consolidation thereof.

3. For the purposes of this Article, actions are deemed to be related where they are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings.

### Article 29

Where actions come within the exclusive jurisdiction of several courts, any court other than the court first seised shall decline jurisdiction in favour of that court.

### Article 30

Copr. © West 2007 No Claim to Orig. Govt. Works

---

OJ 2001 L12/1
EU: Regulation (EC) No 44/2001
Celex No. 301R0044

Page 12

For the purposes of this Section, a court shall be deemed to be seised:

1. at the time when the document instituting the proceedings or an equivalent document is lodged with the court, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have service effected on the defendant, or

2. if the document has to be served before being lodged with the court, at the time when it is received by the authority responsible for service, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have the document lodged with the court.

### Section 10

Provisional, including protective, measures

### Article 31

Application may be made to the courts of a Member State for such provisional, including protective, measures as may be available under the law of that State, even if, under this Regulation, the courts of another Member State have jurisdiction as to the substance of the matter.

## CHAPTER III

RECOGNITION AND ENFORCEMENT

### Article 32

For the purposes of this Regulation, 'judgment' means any judgment given by a court or tribunal of a Member State, whatever the judgment may be called, including a decree, order, decision or writ of execution, as well as the determination of costs or expenses by an officer of the court.

### Section 1

Recognition

### Article 33

1. A judgment given in a Member State shall be recognised in the other Member States without any special procedure being required.

2. Any interested party who raises the recognition of a judgment as the principal issue in a dispute may, in accordance with the procedures provided for in Sections 2 and 3 of this Chapter, apply for a decision that the judgment be recognised.

3. If the outcome of proceedings in a court of a Member State depends on the determination of an incidental question of recognition that court shall have jurisdiction over that question.

### Article 34

A judgment shall not be recognised:

1. if such recognition is manifestly contrary to public policy in the Member State in which recognition is sought;

2. where it was given in default of appearance, if the defendant was not served with the document which instituted the proceedings or with an equivalent document in sufficient time and in such a way as to enable him to arrange for his defence, unless the defendant failed to commence proceedings to challenge the judgment when it was possible for him to do so;

3. if it is irreconcilable with a judgment given in a dispute between the same parties in the Member State in

Copr. © West 2007 No Claim to Orig. Govt. Works

**9**

LEXSEE 2002 US DIST. LEXIS 974

IN RE CURRENCY CONVERSION FEE ANTITRUST LITIGATION

MDL No. 1409 M 21-95

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 974; 2002-1 Trade Cas. (CCH) P73,563

January 22, 2002, Decided
January 22, 2002, Filed

**DISPOSITION:** [*1] Defendants' motion to stay discovery pending resolution by this Court of their motion to dismiss denied in part and granted in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** More than twenty putative class actions challenging the currency conversion policies of defendant credit-card issuers were filed in or transferred to the United States District Court for the Southern District of New York and consolidated for pretrial proceedings. The credit-card issuers moved to stay discovery under *Fed. R. Civ. P. 26(c)* pending the resolution of their forthcoming motion to dismiss.

**OVERVIEW:** In urging a stay, credit-card issuers provided in only skeletal form the grounds on which they intended to move to dismiss. For the most part, the credit-card issuers' description of their promised motion showed that they did not intend to challenge the antitrust violations of the Sherman Act, *15 U.S.C.S. § 1* et seq., arising out of an alleged price-fixing conspiracy by and among credit-card issuers and their member banks, and under the Truth in Lending Act (TILA), *15 U.S.C.S. § 1601* et seq. on pure questions of law, but simply on the sufficiency of the facts alleged to support the claims. Thus, the type of motion they planned to interpose to the amended consolidated complaint did not militate in favor of a stay. Whether on the basis of duality, or on undue burden, the credit-card issuers fell short of convincing the court that they would be successful in dismissing the antitrust claims in their entirety at the pleading stage or that the motion would be dispositive of all claims alleged. The court exercised its discretion to order a stay on any non-custodial depositions until issue was joined on the claims for relief.

**OUTCOME:** The credit-card issuers' motion to stay discovery pending resolution of their motion to dismiss was denied in part and granted in part. The parties were ordered to comply with initial disclosure requirements, and were left free to conduct document discovery and propound interrogatories under Federal Rules and Local Civil Rules of the Southern District of New York. A stay was imposed on non-custodial depositions.

**COUNSEL:** Dennis Stewart, Esq., Michael M. Buchman, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, New York, New York, for Plaintiffs.

Merrill G. Davidoff, Esq., Berger & Montague, P.C., Philadelphia, Pennsylvania, for Plaintiffs.

Daniel B. Allanoff, Esq., Meredith Cohen Greenfogel & Skirnick, P.C., Philadelphia, Pennsylvania, for Waldman, Plaintiff.

Peter E. Greene, Esq., Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for J.P. Morgan Chase & Co., Chase Manhattan Bank USA, N.A., and The Chase Manhattan Bank, Defendants.

Jay N. Fastow, Esq., Bruce A. Colbath, Esq., Weil, Gotshal & Manges LLP, New York, New York, for MasterCard International Corp., Defendant.

Charles E. Buffon, Esq., Robert D. Wick, Esq., Covington & Burling, Washington, D.C., for Bank One Corp. and Fist USA Bank, N.A., Defendants.

Case 1:07-cv-03580-DLC   Document 24-5   Filed 06/12/2007   Page 15 of 17

Page 2
2002 U.S. Dist. LEXIS 974, *; 2002-1 Trade Cas. (CCH) P73,563

M. Laurence Popofsky, Esq., Brian P. Brosnahan, Esq., Heller Ehrman White & McAuliffe LLP, San Francisco, California, for Visa U.S.A., Inc. and Visa International Service Association, Defendants.

Charles W. Douglas, [*2] Esq., David F. Graham, Esq., Sidley Austin Brown & Wood LLP, Chicago, Illinois, for Citigroup Inc., Citibank (South Dakota), N.A., Citibank (Nevada), N.A., Universal Financial Corp., Universal Bank, N.A., and Citicorp Diners Club, Inc., Defendants.

Alan S. Kaplinsky, Esq., Edward Rogers, Esq., Ballard, Spahr, Andrews & Ingersoll LLP, Philadelphia, Pennsylvania, for Providian Financial Corp., Providian National Bank Inc. and Providian Bank, Defendants.

Alexander Geiger, Esq., Geiger and Rothenberg, LLP, New York, New York, for Providian Financial Corp., Providian National Bank Inc. and Providian Bank, Defendants.

George A. Cummings, Jr., Esq., Kent M. Rogers, Esq., Brobeck, Phleger & Harrison LLP, San Francisco, California, for Household Credit Services, Inc., Defendant.

Mark P. Ladner, Esq., Morrison & Foerster LLP, New York, New York, for Bank of America Corp. and Bank of America N.A. (USA), Defendants.

**JUDGES:** WILLIAM H. PAULEY III, U.S.D.J.

**OPINION BY:** WILLIAM H. PAULEY III

**OPINION:**

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

This action consolidates for centralized pretrial proceedings more than twenty putative class actions filed in this Court or [*3] transferred here by the Judicial Panel on Multidistrict Litigation ("JPML"). The underlying complaints challenge alleged foreign currency conversion policies at the two largest credit card networks, Visa and MasterCard, and their member banks, including Citigroup, Bank of America Corporation, Bank One Corporation, J.P. Morgan Chase & Company, Providian Financial Corp., and Household International, Inc. The complaints assert violations of the Sherman Act, *15 U.S.C. § 1* et seq., arising out of an alleged price-fixing conspiracy by and among Visa and Mastercard and their member banks, together with Diners Club, with respect to currency conversion fees. The complaints also assert claims under the Truth in Lending Act ("TILA"), *15 U.S.C. § 1601* et seq.

Presently before this Court is defendants' motion to stay discovery pending the resolution of their forthcoming motion to dismiss. For the reasons set forth below, defendants' motion to stay discovery is denied in part and granted in part.

District courts have discretion to stay discovery for "good cause" pending resolution of a motion to dismiss. See *Fed. R. Civ. P. 26(c)*; *Transunion Corp. v. Pepsico, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987); [*4] *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1996 U.S. Dist. LEXIS 2684, No. 94 Civ. 2120 (LMM) (AJP), 1996 WL 101277, at *2 (S.D.N.Y. March 7, 1996). Good cause "requires a showing of facts militating in favor of the stay." *American Booksellers Ass'n v. Houghton Mifflin Co.*, 1995 U.S. Dist. LEXIS 2044, No. 94 Civ. 8566 (JFK), 1995 WL 72376, at *1 (S.D.N.Y. Feb. 22, 1995). Courts in this District hold that a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion "appear[s] to have substantial grounds" or, stated another way, "does not appear to be without foundation in law." *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 209-10 (S.D.N.Y. 1991); see also *Flores v. Southern Peru Copper Corp.*, 203 F.R.D. 92, 2001 WL 396422, at *2 (S.D.N.Y. 2001) (power to stay initial disclosures "pending resolution of [a] motion to dismiss, if the defendant makes a strong showing that the plaintiff's claim is unmeritorious"); *Anti-Monopoly*, 1996 U.S. Dist. LEXIS 2684, 1996 WL 101277, at *2 (good cause "may be shown where a party has filed (or sought leave to file) a dispositive motion such as a motion to dismiss"). Still, imposition [*5] of a stay is not appropriate simply on the basis that a motion to dismiss has been filed, as the Federal Rules make no such provision. See *In re Chase Manhattan Corp. Sec. Litig.*, 1991 U.S. Dist. LEXIS 6136, No. 90 Civ. 6092 (LMM), 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991).

Other factors courts consider in weighing whether to grant a stay of discovery include the breadth of discovery and the burden of responding to it, *Anti-Monopoly*, 1996 U.S. Dist. LEXIS 2684, 1996 WL 101277, at *3; *American Booksellers*, 1995 U.S. Dist. LEXIS 2044, 1995 WL 72376, at *1; *Chrysler Capital*, 137 F.R.D. at 211, as well as the unfair prejudice to the party opposing the stay, *Anti-Monopoly*, 1996 U.S. Dist. LEXIS 2684, 1996 WL 101277, at *3; *Chrysler Capital*, 137 F.R.D. at 211.

In urging a stay, defendants provide in only skeletal form the grounds on which they intend to move to dismiss. For the most part, defendants' description of their promised motion shows that they do not intend to challenge the antitrust or TILA claims on pure questions

Case 1:07-cv-03580-DLC    Document 24-5    Filed 06/12/2007    Page 16 of 17

Page 3
2002 U.S. Dist. LEXIS 974, *; 2002-1 Trade Cas. (CCH) P73,563

of law, but simply on the sufficiency of the facts alleged to support the claims. Thus, the type of motion defendants plan to interpose to the amended consolidated complaint [*6] does not militate in favor of a stay. See *Hachette Distrib., Inc. v. Hudson County News Co., 136 F.R.D. 356, 358 (E.D.N.Y. 1991)* (Spatt, J.) (factors relevant in stay application include whether "the issues before the Court are purely questions of law that are potentially dispositive"); 6 Moore's Federal Practice, § 26-105[3][c] (Matthew Bender 3d ed.) (factors relevant in stay application include "whether it is a challenge as a matter of law or to the sufficiency of the allegations").

Specifically, as to plaintiffs' principal claims asserted under the antitrust laws, defendants advert to the decision of District Judge Barbara S. Jones in *United States v. Visa U.S.A., Inc., 163 F. Supp. 2d 322 (S.D.N.Y. 2001)*, where she rejected "dual governance" as a basis for a Section 1 claim. In her decision, Judge Jones held that the Government "failed to prove that the governance structures of the Visa and MasterCard associations have resulted in a significant adverse effect on competition or consumer welfare." *Visa, 163 F. Supp. 2d at 327*. Plaintiffs here, however, do not challenge dual governance itself, but charge that duality is [*7] a practice that facilitated the alleged conspiracy among defendants to fix currency conversion fees. As noted by Judge Jones, there was no claim in Visa "that member banks of Visa and MasterCard have conspired intra-association and inter-association to raise prices to consumers directly." *163 F. Supp. 2d at 330*. While the Visa decision may improve defendants' chances of success on a motion to dismiss with respect to the inter-association aspects of the charged antitrust conspiracy, defendants fall short of convincing this Court that they will be successful in dismissing the antitrust claims in their entirety at the pleading stage or, in any event, that the motion will be dispositive of all claims alleged.

In further support of their request for a stay, defendants point to the burdens attendant to proceeding with discovery before the sufficiency of the amended consolidated complaint can be tested. Defendants' argument on this score is partially at odds with their prior conduct in the underlying actions. In cases pending in the Eastern District of Pennsylvania and this Court, defendants agreed to proceed with "first wave" discovery premised on the understanding [*8] that related cases would be transferred and consolidated by the JPML to a single district court for pretrial purposes. (See Ex. E to Decl. of Edward W. Millstein dated Oct. 23, 2001 ("Millstein Decl."): Second Case Management and Scheduling Order, Ross v. Visa U.S.A., Inc., No. 01-CV-1006 (E.D. Pa.) (the "Ross Order"); Ex. F. to Millstein Decl.: Proposed Case Management and Scheduling Order, Oshry v. Visa U.S.A., Inc., No. 01-CV-3610 (S.D.N.Y.).) For example, the Ross Order provided for the commencement of third-party document discovery, deadlines for responses to outstanding interrogatory and document requests propounded by plaintiffs, production of materials in a parallel California state action styled Schwartz v. Visa International Corp., and compliance with initial disclosure obligations pursuant to Rule 26(a). Having agreed to engage in "first wave" discovery with plaintiffs and having in fact begun to engage in such disclosures prior to the provisional stay entered by this Court (see Scheduling Order No. 1 dated Sept. 5, 2001), defendants offer no compelling reason why they should be able to disengage from those obligations now that consolidation has [*9] been effected.

Nevertheless, given the number of parties to this action and the substantial cost of discovery typical of antitrust cases of this magnitude, this Court in an exercise of its discretion concludes that a stay should be imposed on any non-custodial depositions until issue has been joined on plaintiffs' claims for relief. This Court notes that an amended consolidated complaint has yet to be filed and it would be wasteful to subject defendants' principals to wide-ranging depositions in the absence of a pleading that has withstood scrutiny under Rule 12(b)(6). See *Moore v. PaineWebber, Inc., 1997 U.S. Dist. LEXIS 203, No. 96 Civ. 6820 (JFK), 1997 WL 12805*, at *1 (S.D.N.Y. Jan. 14, 1997). The Visa decision provides a further reason for this measure because it may cabin the breadth of the conspiracy allegations in this case. Moreover, plaintiffs do not demonstrate any unfair prejudice owing to a stay of this kind, particularly in light of the degree of effort that will be required to manage document discovery alone in this case.

Accordingly, defendants' motion to stay discovery pending resolution by this Court of their motion to dismiss is denied in part and granted in part. To [*10] the extent they have not done so already, the parties shall comply with Rule 26(a)(1) initial disclosure requirements by March 1, 2002, or as they otherwise may agree. In addition, the parties are free to conduct document discovery and propound interrogatories as permitted by the Federal Rules and the Local Civil Rules of the Southern District of New York. A stay is imposed on any non-custodial depositions. Counsel for plaintiffs and defendants shall enter into a stipulation and order regarding the confidentiality of documents by February 11, 2002 and submit it to this Court for approval. As expressly contemplated by Section II of Pretrial Order No. 1 entered in this action, discovery in the coordinated action Waldman v. Citibank (South Dakota), N.A., 01 Civ. 8982 (WHP), shall be conducted in a manner consistent with the terms of this Order.

Dated: January 22, 2002

Case 1:07-cv-03580-DLC   Document 24-5   Filed 06/12/2007   Page 17 of 17

Page 4
2002 U.S. Dist. LEXIS 974, *; 2002-1 Trade Cas. (CCH) P73,563

| | |
|---|---|
| New York, New York | WILLIAM H. PAULEY III |
| SO ORDERED: | U.S.D.J. |