**10**

LEXSEE 1998 U.S. DIST. LEXIS 5469

STATE OF NEW YORK, Plaintiff, v. ALMY BROTHERS, INC.; LEONARD ALMY; LOUIS A. STILLOE; and MARY A. McMAHON, in her individual capacity and as Executrix of the Estate of Robert J. McMahon, Defendants. MARY A. McMAHON, in her individual capacity and as Executrix of the Estate of Robert J. McMahon, Third-party Plaintiff, v. D/L COOPERATIVE, INC. and TRAVELERS INSURANCE COMPANY, Third-party Defendants.

90-CV-818

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

1998 U.S. Dist. LEXIS 5469; 46 ERC (BNA) 1765

April 15, 1998, Decided
April 15, 1998, Filed

**DISPOSITION:** [*1] Ms. McMahon's motion for reconsideration GRANTED. D/L's motion for partial summary judgment DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Third party plaintiff filed a motion for reconsideration of the trial court's interlocutory grant of partial summary judgment to third party defendant corporation in third party plaintiff's action for contribution for amounts owed by her as a result of the underlying CERCLA action. Because under a bankruptcy order the maximum amount owed was set, the trial court limited the liability of the corporation to an amount not to exceed $ 7,588.78.

**OVERVIEW:** Subsequent to the trial court's partial grant of summary judgment to the corporation, the bankruptcy court, upon motion from third party plaintiff, modified its order. The trial court granted third party plaintiff's motion for reconsideration and denied the corporation's motion for partial summary judgment. The trial court found, inter alia, that (1) until there was a final judgment, the interlocutory ruling remained subject to reconsideration or modification; (2) the grounds to justify reconsideration were an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice; (3) reconsideration was proper where the bankruptcy court's order, upon which the trial court's decision was based, was modified; (4) because the bankruptcy court's original order unambiguously assigned the mortgages on the subject properties to the city, the trial court concluded that the total amount which third party plaintiff would remit to the state, and thus the most that she could recover from the corporation in contribution, was the $ 7,588.78, but with the modification, the amount third party plaintiff would pay was unclear.

**OUTCOME:** The trial court (1) granted third party plaintiff's motion for reconsideration in her action for contribution from the corporation; and (2) denied the corporation's motion for partial summary judgment to limit the corporation's liability.

**COUNSEL:** M. SUZANNE McMAHON, ESQ., EDWARD J. KELLEY, ESQ., OFFICES OF M. SUZANNE McMAHON, Johnson City, New York, for Third-party Plaintiff.

THOMAS R. SMITH, ESQ., KEVIN M. BERNSTEIN, ESQ., BOND, SCHOENECK & KING, LLP, Syracuse, New York, for D/L Cooperative, Inc., Third-party Defendant.

MAUREEN F. LEARY, Asst. Attorney General, HON. DENNIS C. VACCO, Attorney General of the State of New York, Environmental Protection Bureau, Albany, New York.

Case 1:07-cv-03580-DLC    Document 24-6    Filed 06/12/2007    Page 3 of 13

Page 2

1998 U.S. Dist. LEXIS 5469, *; 46 ERC (BNA) 1765

JUDGES: NEAL P. McCURN, SENIOR U.S. DISTRICT JUDGE.

OPINION BY: NEAL P. McCURN

OPINION:

### MEMORANDUM-DECISION AND ORDER
### INTRODUCTION

Pursuant to Rule 59(e) and/or *Rule 60(b) of the Federal Rules of Civil Procedure* n1 and Local Rule 7.1(g), third-party Plaintiff Mary A. McMahon has moved this court to reconsider

> Part IV of the February 4, 1998 Order of this Court (Possible Liability of D/L) wherein this Court granted Third Party Defendant's motion for partial summary judgment finding that the Third Party Plaintiff "failed to demonstrate that there is a genuine issue of material fact concerning the Bankruptcy Court's February 6, 1997 order . . ." [*2] and therefore limited the liability of D/L to an amount not to exceed $ 7,588.78.

See McMahon's Notice of Motion at 1.

> n1 *Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure* are not applicable here because they apply only to final judgments and orders. However, a party may rely upon Local Rule 7.1(g) as a basis for a motion to reconsider an interlocutory decision.

Third-party Defendant D/L Cooperative, Inc. ("D/L") opposes this motion on the grounds that the Bankruptcy Court's order dated March 17, 1998, does not change the fact that the amount Ms. McMahon will actually pay to the State of New York as a result of the underlying CERCLA action, and thus the amount Ms. McMahon can recover from D/L as a result of this contribution action, will not exceed $ 7,588.78. See D/L's Memorandum of Law at 12. Alternatively, D/L requests that if the court grants McMahon's motion for reconsideration the court should stay any further proceedings until such time as the State of New York sells or forecloses [*3] upon the mortgages on the subject properties. See id. at 1.

### DISCUSSION

As this court recently noted, "the Second Circuit has made clear that 'until there is a final judgment in a case, an interlocutory ruling generally remains subject to reconsideration or modification.'" *New York State Dep't of Envtl. Conservation v. United States Dep't of Energy, 1997 U.S. Dist. LEXIS 20718,* Nos. 89-CV-194, 89-CV-195, 89-CV-196, 89- *CV-197, 1997 WL 797523,* *7 (N.D.N.Y. Dec. 24, 1997) (quoting *United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991)* (citing in turn *United States v. LoRusso, 695 F.2d 45, 53 (2d Cir. 1982)* (quoting in turn *United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973))*, cert. denied, 460 U.S. 1070, 103 S. Ct. 1525, 75 L. Ed. 2d 948 (1983))). "This is fully consistent with the ""well-established [rule] that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment[.]""" Id. (quoting *Mayer v. Cornell Univ., Inc., 909 F. Supp. 81, 83 (N.D.N.Y. 1995)* (McCurn, S.J.) (quoting in turn *Conrad v. Beck-Turek, Ltd., Inc., 891 F. Supp. 962, 967 (S.D.N.Y. 1995)* (quoting [*4] in turn *In re United States, 733 F.2d 10, 13 (2d Cir. 1984)))*, aff'd without opinion, 107 F.3d 3 (2d Cir.), cert. denied, U.S. , 118 S. Ct. 68 (1997)).

Despite this broad discretion to revise interlocutory orders, courts have concluded that "the major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *D. A. Elia Constr. Corp. v. U.S. Fidelity and Guar. Co., 1997 U.S. Dist. LEXIS 5610,* No. 94-CV-0190E(H), *1997 WL 215526,* *3 n. 10 (W.D.N.Y. Apr. 16, 1997) (quoting *Virgin Atlantic Airways v. Nat. Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.)* (quoting in turn 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478, at 790), cert. denied, 506 U.S. 820, 113 S. Ct. 67, 121 L. Ed. 2d 34 (1992)). Moreover, in asking for reconsideration, the movant bears a heavy burden to specifically identify the matters or controlling decisions which the court has overlooked and which would have materially altered the prior ruling. See *Burnell v. Butler Moving & Storage, 826 F. Supp. 65, 68 (N.D.N.Y. 1993)* (citing Inmates of N.Y. [*5] with *Human Immunodeficiency Virus v. Cuomo, 1992 U.S. Dist. LEXIS 18797, 1992 WL 373516,* slip op. at 2 (N.D.N.Y. 1992) (McAvoy, J.)).

In the present case, Ms. McMahon bases her motion for reconsideration upon the Bankruptcy Court's March 18, 1998, order which modified its February 6, 1997, order upon which this court relied, in part, for its conclusion that D/L's liability for contribution could not exceed $ 7,588.78. The pertinent parts of the February 6, 1997, order are paragraphs 1 and 2 which provide that

Case 1:07-cv-03580-DLC   Document 24-6   Filed 06/12/2007   Page 4 of 13

Page 3
1998 U.S. Dist. LEXIS 5469, *; 46 ERC (BNA) 1765

> 1. The Chapter 7 trustee hereby **assigns to the City of Binghamton** the mortgages held by the debtors' estate on real property located at 6-10 Jackson Street in the City of Binghamton, which mortgages are attached hereto and incorporated herein and which are due and owing to the debtors by mortgagees Leonard Almy, Richard Shenk and Louis Stilloe.
>
> 2. The trustee also hereby **assigns to the City of Binghamton** all rights, title, and interest in said mortgages, and any causes of action that the estate may have against any person arising from such mortgages.

See Order of the Bankruptcy Court dated February 6, 1997, attached as Exhibit H to Bernstein's Affidavit submitted in [*6] support of D/L's motion for summary judgment (emphasis added).

Since the Bankruptcy Court's February 6, 1997, order unambiguously assigned the mortgages on the subject properties to the City of Binghamton, this court concluded that the total amount which Ms. McMahon would remit to the State of New York as a result of the underlying CERCLA action, and thus the most that Ms. McMahon could recover from D/L in this contribution action, was the $ 7,588.78 set forth in the Notice of Distribution filed by the Trustee in Bankruptcy on September 8, 1997.

Prior to filing this motion for reconsideration, Ms. McMahon moved the Bankruptcy Court to reconsider its February 6, 1997, order. The Bankruptcy Court granted this request and modified its order by order dated March 17, 1998. This new order provides, in pertinent part, that

> the language in paragraphs 1 and 2 of the February 6, 1997 order assigning the mortgages, the rights, title and interest in said mortgages and any causes of action that the estate may have against any person arising from such mortgages to the City of Binghamton is amended to read that **all of the aforementioned be assigned to New York State in partial payment** [*7] **of the McMahon CERCLA debt** . . .; and
>
> All other provisions of the February 6, 1997 order remain in full force and effect.

See Order of the Bankruptcy Court dated March 17, 1998, at 2, attached to M. Suzanne McMahon's Affidavit dated March 17, 1998 (emphasis added).

In light of this amendment, Ms. McMahon asks the court to reconsider its finding that D/L cannot be liable to her in contribution for more than $ 7,588.78.

In opposition to this motion, D/L argues that based upon an appraisal commissioned by the State of New York in 1996, the properties to which the subject mortgages pertain are valued at $ 155,000 in "as is" condition subject to the completion of remediation. See D/L Memorandum of Law at 10. Since this amount is less than the $ 208,404.91 tax lien which the City of Binghamton has on these properties, D/L asserts that the State will receive no money as a result of the assignment of these mortgages to the State. n2 See id. Therefore, D/L concludes that because "contribution affords one party an opportunity to recover from another party the excess which he actually pays over his equitable share of the liability," and Ms. McMahon will "actually [*8] pay" only $ 7,588.78 to the State, this is the maximum amount which Ms. McMahon can recover from D/L in this contribution action. See id. at 11-12 (emphasis in original) (citations omitted). Accordingly, D/L asserts that there is no reason for the court to reconsider its February 4, 1998, Memorandum-Decision and Order.

> n2 The $ 208,404.91 figure represents the City of Binghamton's tax lien on these properties as of July 29, 1997.

Ms. McMahon counters by arguing that D/L's opposition raises no more than an issue of fact about the value of the subject properties which must be decided at trial. See M. Suzanne McMahon's Letter dated April 6, 1998, at 2. In support of this argument, Ms. McMahon directs the court's attention to the affidavit of Mr. Burns which she submitted in opposition to D/L's previous motion. In that affidavit, Mr. Burns stated that

> My purpose here is not to submit a full-blown, formal appraisal of the site or to offer a precise value figure. It is my opinion, however, that (a) [*9] the $ 150,000.00 figure purportedly suggested by the State is, in addition to being unsupported, clearly wrong; (b) the 1980 Havemeyer n3 appraisal retains its essential validity and establishes a reliable floor value for the Site of $ 483,000.00; and (c), in view of the Site's excellent

Case 1:07-cv-03580-DLC   Document 24-6   Filed 06/12/2007   Page 5 of 13

Page 4
1998 U.S. Dist. LEXIS 5469, *; 46 ERC (BNA) 1765

location and other desirable qualities (particularly the nearly unique feature in this area of being certifiably clean environmentally), and in view of the general upward trend in real property values since 1980, the ceiling value of the Site is conceivably in the $ 750,000.00-$ 1,000,000.00.

See Edward J. Kelly's Letter dated April 9, 1998, at 3 (citing Burns' Affidavit at P 19).

In addition, Ms. McMahon relies upon the assessed value of these properties which is $ 402,400.00. See M. Suzanne McMahon's Letter dated April 6, 1998, at 3 and attachments thereto.

> n3 Mr. Havemeyer is the person who prepared the 1996 appraisal report for the State of New York which valued the properties at $ 155,000.

The court [*10] agrees with Ms. McMahon that the Bankruptcy Court's Order dated March 17, 1998, provides ample reason for this court to reconsider its Memorandum-Decision and Order dated February 4, 1998. However, although the court finds that it cannot, at this time, determine the value of the subject properties, the court does not agree with Ms. McMahon that this is an issue which should be determined at trial based upon competing appraisals of the properties' value.

If Ms. McMahon successfully proves that D/L is liable under *42 U.S.C. § 9607*(a), a prerequisite to a finding that D/L is liable to Ms. McMahon in contribution, the court's next step would be to determine how much Ms. McMahon will "actually pay" to the State of New York as a result of the underlying CERCLA action. This amount should not, however, be measured by determining which of the competing appraisals more accurately reflects the present value of these properties. Rather, it must await the State of New York's sale of the subject properties and the satisfaction of the City of Binghamton's tax lien on these properties. If the sale price exceeds the City's tax lien, the excess will inure to the benefit of the State and that amount [*11] will constitute the sum "actually paid" by Ms. McMahon. In other words, the fact that there may be competing appraisals of these properties, although interesting, does not affect the determination of the amount, if any, Ms. McMahon will be able to recover from D/L as a result of this contribution action. Accordingly, having reconsidered its Memorandum-Decision and Order dated February 4, 1998, the court hereby rescinds its decision granting D/L's motion for partial summary judgment limiting the amount of damages for which D/L is liable in this contribution action to a maximum of $ 7,588.78 and DENIES the same.

## CONCLUSION

For the reasons stated above, the court **GRANTS** Ms. McMahon's motion for reconsideration. Having reconsidered its Memorandum-Decision and Order dated February 4, 1998, the court hereby **DENIES** D/L's motion for partial summary judgment which sought to limit the amount of damages for which D/L is liable in this contribution action to a maximum of $ 7,588.78.

As a result of this decision, the court hereby instructs the State of New York to, with all due diligence, make arrangements for the sale and sell the subject properties. In addition, the court [*12] instructs the State of New York to provide a written report to this court and to Ms. McMahon and D/L on the last day of every month beginning with April 30, 1998, outlining its progress in this regard until the sale of these properties is consummated. Once the sale is complete, the court instructs the State of New York to provide a final accounting to the court, Ms. McMahon, and D/L setting forth the sale price, the payment made to the City of Binghamton as a result of its tax lien, and the amount, if any, which the State of New York actually retains as a result of the sale of these properties.

Finally, the court sees no reason to stay the trial of the liability portion of these proceedings until the sale of these properties has been completed. Therefore, the court hereby notifies D/L and Ms. McMahon that they should be ready to proceed with a non-jury trial on the issue of D/L's liability under *42 U.S.C. § 9607* on **June 16, 1998** at **10:00 a.m.** at the **United States Courthouse** in **Syracuse, New York**. The court will issue a final pre-trial order under separate cover.

**IT IS SO ORDERED.**

DATED: April 15, 1998

Syracuse, New York

NEAL P. McCURN

SENIOR [*13] U.S. DISTRICT JUDGE

ORDER

The court having considered D/L Cooperative, Inc.'s ("D/L") request for a sealing order to maintain the confidentiality of the State of New York's appraisal report for the real property located at 6-10 Jackson Street in the City of Binghamton, New York dated October 28, 1996, and the court having reviewed said appraisal report in camera as well as the State of New York's letter in

Case 1:07-cv-03580-DLC   Document 24-6   Filed 06/12/2007   Page 6 of 13

Page 5
1998 U.S. Dist. LEXIS 5469, *; 46 ERC (BNA) 1765

support of D/L's request and Ms. McMahon's letters in opposition to this request, and after due deliberation, the court hereby **DENIES** D/L's request and **DIRECTS** D/L to serve a copy of said appraisal upon Ms. McMahon's counsel within ten days of the date of this order.

**IT IS SO ORDERED**.

DATED: April 15, 1998

Syracuse, New York

NEAL P. McCURN

SENIOR U.S. DISTRICT JUDGE

**11**

PORT DOCK AND STONE CORP., GOTHAM SAND & STONE CORP. and PORT DOCK HOLDINGS CORP., Plaintiffs, -against- OLDCASTLE NORTHEAST, INC., CRH GROUP, PLC and TILCON, INC., Defendants.

CV 05-4294 (DRH) (ETB)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

2006 U.S. Dist. LEXIS 94944

March 31, 2006, Decided
March 31, 2006, Filed

**SUBSEQUENT HISTORY:** Complaint dismissed at *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 2006 U.S. Dist. LEXIS 69076 (E.D.N.Y., Sept. 26, 2006)

**COUNSEL:** [*1] For Port Dock and Stone Corp., Gotham Sand & Stone Corp., Port Dock Holdings Corp., Plaintiffs: John R. Sachs, Jr., LEAD ATTORNEY, Epstein Becker & Green. P.C., New York, NY.

For Oldcastle Northeast, Inc., Defendant: John R. Fornaciari, Robert M. Disch, LEAD ATTORNEYS, Sheppard Mullin Richter & Hampton, Washington, DC; John Julian Vecchione, LEAD ATTORNEY, Sheppard Mullin, Washington, DC.

For CRH Group, PLC, Tilcon Inc., Defendants: John R. Fornaciari, Robert M. Disch, LEAD ATTORNEYS, Sheppard Mullin Richter & Hampton, Washington, DC; John Julian Vecchione, LEAD ATTORNEY, Sheppard Mullin, Washington, DC; Vincent Filardo, Jr., Sheppard Mullin Richter & Hampton, LLP, New York, NY.

**JUDGES:** E. Thomas Boyle, United States Magistrate Judge.

**OPINION BY:** E. Thomas Boyle

**OPINION:**

MEMORANDUM OPINION and ORDER

Presently before the court is a motion by defendants CRH Group, PLC ("CRH") and Tilcon, Inc. ("Tilcon") (collectively, "defendants") to stay discovery during the pendency of defendants' motion to dismiss, now before District Judge Hurley. (Motion of Defendants Tilcon Inc. and CRH plc to Stay Discovery ("Defs.' Mot.") at 1.) Defendant Oldcastle Northeast, Inc. ("Oldcastle") does not join [*2] in the motion. Defendants argue that discovery should be stayed as to CRH and Tilcon because the plaintiffs lack **personal jurisdiction** over these defendants and because these defendants were not properly served. (Defs.' Mot. P 1.) Specifically, defendants argue that CRH is an Irish corporation that has no contacts with the United States. (Id.) Defendants also argue that plaintiffs failed to properly serve CRH. (Id.) With respect to Tilcon, defendants argue that the putative defendant, Tilcon, Inc., was not involved in the events at the core of plaintiffs' complaint, and that rather, the companies involved are "Tilcon New York" and "Tilcon Minerals." At the oral argument before the undersigned on March 31, 2006, defendants' counsel stated that he provided plaintiffs' counsel with this information several weeks ago and requested that plaintiffs' counsel make the appropriate substitution. Plaintiffs' counsel has taken no action in this regard.

Plaintiffs oppose defendants' motion, and argue that discovery should go forward because the events at issue occurred approximately six years ago, and a delay of discovery would exacerbate any difficulties obtaining relevant documents and [*3] testimony. (Affirmation of Aime Dempsey in Opposition to Defendants' **Motion to Stay Discovery** ("Dempsey Aff.") P 4.) Plaintiffs' counsel argues prejudice because **granting** the motion would temporarily stop any discovery from former employees who had "already left the company." (Id.) The defendant employer is not identified by plaintiff. Plaintiffs also argue that "the relevant market at issue in

this antitrust action tends to be a fluid one. . . [a]n extended discovery process would make the task of determining the relevant market more difficult." (Id.) Finally, plaintiffs argue that the defendants will not be prejudiced by conducting discovery during the pendency of their motion to dismiss. (Id. P 5.)

DISCUSSION

Under *Federal Rule of Civil Procedure 26(c)*, a district court may stay discovery during the pendency of a motion to dismiss for "good cause shown." *In re Currency Conversion Fee Antitrust Litig., No. MDL 1409, M21-95, 2002 U.S. Dist. LEXIS 974, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002)*; *United States v. County of Nassau, 188 F.R.D. 187, 188 (E.D.N.Y. 1999)*; *Moore v. Painewebber, Inc., No. 96 Civ. 6820, 1997 U.S. Dist. LEXIS 203, 1997 WL 12805,* [*4] *at *1 (S.D.N.Y. Jan. 14, 1997)*. It, of course, is black letter law that the mere filing of a motion to dismiss the complaint does not constitute "good cause" for the issuance of a discovery stay. *In re Currency Conversion Fee, No. MDL 1409, M21-95, 2002 U.S. Dist. LEXIS 974, 2002 WL 88278, at *1*; *County of Nassau, 188 F.R.D. at 188*; *Moore, 1997 U.S. Dist. LEXIS 203, 1997 WL 12805, at *1*. Rather, good cause "'requires a showing of facts militating in favor of the stay.'" *In re Currency Conversion Fee, 2002 U.S. Dist. LEXIS 974, 2002 WL 88278, at *1* (quoting *American Booksellers Ass'n v. Houghton Mifflin Co., No. 94 Civ. 8566, 1995 U.S. Dist. LEXIS 2044, 1995 WL 72376, at *1 (S.D.N.Y. Feb. 22, 1995))*. Factors that courts have considered when determining whether or not a stay is appropriate include: (1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *In re Currency Conversion Fee, 2002 U.S. Dist. LEXIS 974, 2002 WL 88278, at *1*. Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants [*5] have joined in the request for a stay, and the posture or stage of the litigation. *Hachette Distribution, Inc. v. Hudson County News Co., Inc., 136 F.R.D. 356, 358 (E.D.N.Y. 1991)*.

Here, the defendants raise substantial issues with regard to the viability of plaintiffs' complaint as against defendants CRH and Tilcon, Inc., and defendants' arguments do not appear to be frivolous or unfounded. In addition, plaintiffs have failed to demonstrate that a stay of discovery would unfairly prejudice them, nor have plaintiffs cited any case law in support of their position. As for the claim of prejudice arising as to former employees, the argument is devoid of merit since no party defendant would have control over such persons in any event and this would constitute non-party discovery. Accordingly, for the foregoing reasons, defendants' **motion to stay discovery** during the pendency of the **motion** to dismiss is **granted** with respect to defendants CRH and Tilcon. See *Gandler v. Nazarov, No. 94 Civ. 2272, 1994 U.S. Dist. LEXIS 17885, 1994 WL 702004, at *3-4 (S.D.N.Y. Dec. 14, 1994)* (**granting** a **stay of discovery** where defendant's **motion** to dismiss based on lack of **personal jurisdiction** was well-grounded [*6] in the law and potentially dispositive, and where plaintiffs failed to present any evidence to suggest that they would be unfairly prejudiced by a stay).

SO ORDERED:

Dated: Central Islip, New York

March 31, 2006

/s/ E. Thomas Boyle

United States Magistrate Judge

12

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1995 WL 3024 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Rosecliff, Inc. v. C3, Inc.
S.D.N.Y.,1995.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
ROSECLIFF, INC. and Telos Acquisition Partners, L.P., Plaintiffs,
v.
C3, INC., Telos Corp., John R.C. Porter, Toxford Corporation, and John Porter First Interest in Possession Settlement, Defendants.
No. 94 CIV. 9104 (JFK).

Jan. 3, 1995.

*MEMORANDUM OPINION AND ORDER*
KEENAN, District Judge:
\*1 Plaintiffs Rosecliff, Inc. and Telos Acquisition Partners, L.P., seek leave to conduct expedited discovery in advance of a motion for a preliminary injunction. Defendants oppose plaintiffs' application for leave to conduct expedited discovery.

*BACKGROUND*

Plaintiffs and defendants entered into an Acquisition Agreement through which plaintiffs were to acquire a controlling interest in Telos Corp. The Acquisition Agreement contained a "no-shop" clause whereby the defendants were obligated to negotiate exclusively with the plaintiffs until the earlier of 1) the closing, scheduled for November 18, 1994, or 2) proper termination of the Acquisition Agreement. The Acquisition Agreement was subject to two conditions: first, Telos Corp. had to obtain financing on terms approved by the plaintiffs; and second, Union de Banque Suisses (Luxembourg) ("UBS"), a creditor and security holder of Telos Corp., had to consent to the terms of the Acquisition Agreement. In the event that UBS did not consent before the scheduled closing date of November 18, 1994, the parties would be obligated to continue negotiating.

The Acquisition Agreement could, by its terms, be terminated in limited circumstances. Prior to the closing, it could be terminated by the material breach of another party that could not be cured before closing. Otherwise, any party could terminate the agreement on November 18, 1994 if closing did not occur for any reason.

UBS did not consent to the terms of the Acquisition Agreement and the parties continued to negotiate past November 18, 1994. On November 22, 1994, a conference call was held between either some or all [FN1] of the parties to the Acquisition Agreement. Plaintiffs allege that during this conference call, the parties agreed to an amendment of the Acquisition Agreement. The new closing date was allegedly scheduled for December 6, 1994. Plaintiffs allege that the new terms were memorialized in a Memorandum of Agreement that was circulated to all the parties to review for form. Plaintiffs claim that this alleged oral amendment was a binding agreement between the parties. Plaintiffs now seek to enforce the alleged oral amendment.

By way of proof that the alleged oral amendment was in fact agreed to, plaintiffs point out that Telos Corp. amended its Form 10-Q filed with the SEC to reflect the amended terms. Plaintiffs also note that Telos Corp. sent out a notice to its stockholders scheduling a special meeting to consider and vote on an amendment to Telos Corp.'s charter to increase the number of authorized shares. Plaintiffs claim that this notice is evidence of the alleged amendment because the oral amendment, and not the original Acquisition Agreement, required Telos Corp. to issue shares in excess of those authorized.

Defendants, on the other hand, deny that there was any amendment of the Acquisition Agreement. Defendants contend that they continued to negotiate, but that no agreement was ever reached, and that they terminated the Acquisition Agreement according to its terms thereafter, on December 1, 1994. Defendants point out that the Form 10-Q clearly indicates that "certain matters remain under negotiation" and that no binding amendment was agreed to. In addition, defendants argue that the shareholders' meeting, which was called but never held, was only preparation in the event an agreement was ultimately reached.

*DISCUSSION*

\*2 Plaintiffs allege that defendants breached a binding agreement for the sale of Telos Corp. Plaintiffs now seek expedited discovery on the issue

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1995 WL 3024 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 2

of whether defendants have engaged in negotiations in violation of the Acquisition Agreement's "no-shop" provision, in aid of a contemplated motion for a preliminary injunction to stop defendants from violating the "no-shop" provision. Eventually, plaintiffs plan to seek specific performance of the alleged oral modification of the Acquisition Agreement.

### A. *Standard for Expedited Discovery*

Expedited deposition discovery is made available by Rules 30(a) of the Federal Rules of Civil Procedure. Expedited discovery is often available in cases where preliminary relief is sought. *See e.g., United States Naval Inst. v. Charter Communications,* 875 F.2d 1044, 1046 (2d Cir.1989); *Tetra Sales (U.S.A.) v. T.F.H. Publication, Inc.,* 839 F.2d 881, 882 (2d Cir.1988); *Denny v. I.S. Lab., Inc.,* 737 F.Supp. 247, 248 (S.D.N.Y.1990). In order to be entitled to expedited discovery,

... the plaintiff must demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Notaro v. Koch,* 95 F.R.D. 403 (S.D.N.Y.1982).

### B. *Analysis*

Plaintiffs have not satisfied their burden for expedited relief. Specifically, the Court does not find that plaintiffs have established "some probability of success on the merits" with regard to their claims.

Each of plaintiffs' claims-both for an injunction to prevent violation of the "no shop" provision and for specific performance of the amended Acquisition Agreement-require plaintiffs to establish that the Acquisition Agreement was not rightfully terminated and that the Agreement was lawfully amended.

Under the express terms of the Acquisition Agreement, the "Agreement may be amended, superseded, cancelled, renewed or extended ... only by a written instrument signed by the Buyer, the Sellers and the Company...." Acquisition Agreement, § 14.4. Under New York law, an agreement that specifies that it can only be modified in writing may not be modified orally. N.Y.Gen.Oblig. Law § 15-301(1) (McKinney 1989); *Towers Charter & Marine Corp. v. Cadillac Ins. Co.,* 894 F.2d 516, 521-22 (2d Cir.1990).

Inasmuch as there is no such written amendment, plaintiffs seek to rely on what they characterize as defendants' partial performance of the amendment to establish its existence. Under New York law, an oral modification may be enforced when there has been partial performance of the modified agreement, which is "unequivocally referable to the oral modification." *Towers Charter & Marine,* 894 F.2d at 522.

The Court does not find that either the Form 10-Q, or the notice of shareholders' meeting, equals partial performance on the part of any of the defendants. The Form 10-Q explicitly states that negotiations are continuing. Additionally, the notice of shareholders' meeting is not unequivocally partial performance referable to the oral modification. It could simply be preparation for some future agreement.

*3 Because the alleged amendments were not made in writing, and because the plaintiffs have not proven that any party partially performed the alleged modification, the Court does not find that plaintiffs have proved that there is "some probability" that they will succeed on the merits. Therefore, plaintiffs have failed to establish that they are entitled to expedited discovery.

### CONCLUSION

Plaintiffs' application for expedited discovery is denied. This action is given a discovery cut-off date of July 17, 1995. Discovery has been referred to Magistrate Judge Francis and any discovery disputes that arise should be taken up before him. The parties are directed to appear for a conference on July 18, 1995 at 9:45 a.m.

SO ORDERED.

> FN1. Neither plaintiffs nor defendants specify who participated in the conference call. Plaintiffs maintain that "the parties to the Acquisition Agreement" participated in the call. Defendants C3, Inc., and Telos Corp. maintain that some of the parties to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1995 WL 3024 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

the Acquisition Agreement participated. Defendants John R.C. Porter and John Porter First Interest In Possession Settlement maintain that "some, but not all, of the parties participated," and that the participants numbered fourteen or fifteen.

S.D.N.Y.,1995.
Rosecliff, Inc. v. C3, Inc.
Not Reported in F.Supp., 1995 WL 3024 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.