UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                :

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,    :

                       :        07 Civ. 3580 (DC) (KNF)
              Plaintiffs,    :

        - against -        :

                               :

JULIAN SAMENGO-TURNER, RON WHYTE,   :
and MARCUS HOPKINS,

                               :

            Defendants.    :

                               :
———————————————————————— x

**PLAINTIFFS' MEMORANDUM OF LAW ADDRESSING ISSUES
CONCERNING SERVICE OF PROCESS UPON DEFENDANTS
<u>JULIAN SAMENGO-TURNER AND MARCUS HOPKINS</u>**

## Table of Contents

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT.........................................................................................2

STATEMENT OF FACTS.................................................................................................3

    A.    Service Upon Defendant Marcus Hopkins................................................................3

    B.    Service Upon Defendant Julian Samengo-Turner......................................................4

    C.    Defendants Commenced Proceedings in the UK Seeking an Anti-Suit
        Injunction, Demonstrating Actual Knowledge and Receipt of the
        Pleadings in this Action...........................................................................................9

ARGUMENT.....................................................................................................................9

    I.    SERVICE ON DEFENDANTS HAS BEEN PROPERLY
        EFFECTED PURSUANT TO THE FEDERAL RULES OF
        CIVIL PROCEDURE AND THE HAGUE CONVENTION....................9

    II.    IF SERVICE HAS NOT YET BEEN PERFECTED, THIS
        COURT SHOULD ORDER ALTERNATE SERVICE
        UNDER RULE 4(f)(3)...........................................................................13

CONCLUSION.................................................................................................................16

## Table of Authorities

### Cases

**Page**

*Burda Media v. Blumenberg*, No. 97 Civ. 7167 (RWS), 2004 WL. 1110419
(S.D.N.Y. May 18, 2004), *aff'd, Burda Media, Inc. v. Viertel*, 417 F.3d 292,
302 (2d Cir. 2005) ..................................................................................................11

*Ehrenfeld v. Salim a Bin Mahfouz*, No. 04 Civ. 9641 (RCC), 2005 WL. 696769
(S.D.N.Y. March 23, 2005) .....................................................................................14

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, No. 03 Civ. 8554 (LTS)
2005 WL. 1123755 (S.D.N.Y. May 11, 2005) .........................................................14

*Fox v. Regie Nationale des Usines Renault*, 103 F.R.D. 453 (D. Tenn. 1984) .................12

*Gallery Recording Studios, Inc. v. Discrete Tech. Ltd.*, No. 97 Civ. 4752 (RPP),
1997 WL. 695569 (S.D.N.Y. November 6, 1997).........................................................8

*Lidas, Inc. v. Chelala*, 238 F.3d 1076 (9th Cir. 2001)......................................................11

*RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL. 1515068
(S.D.N.Y. May 24, 2007) ...........................................................................14, 15, 16

*Seiko Epson Corp. v. Glory South Software Manufacturing, Inc.*, No. 06-CV-236-
BR, 2007 WL. 282145 (D. Or. Jan. 24, 2007)............................................................14

*Smith v. Islamic Emirate of Afghanistan*, 01 Civ. 10132  01 Civ. 10144  2001
WL. 1658211 (S.D.N.Y. Dec. 26, 2001) ...................................................................15

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)..............................11

### Federal Statutes

Fed. R. Civ. P. 4(f)(1)..........................................................................................................10

Fed. R. Civ. P. 4(f)(3) ..........................................................................................13, 14, 15

### Miscellaneous

Convention on the Service Abroad of Judicial and Extrajudicial Documents in
Civil or Commercial Matters (Feb. 10, 1969) ...........................................................10

http://travel.state.gov/law/info/judicial/judicial_671.html ...............................................10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,

      Plaintiffs,

   - against -

JULIAN SAMENGO-TURNER, RON WHYTE,
and MARCUS HOPKINS,

      Defendants.

---------------------------------------------------------------- x

07 Civ. 3580 (DC) (KNF)

## PLAINTIFFS' MEMORANDUM OF LAW ADDRESSING ISSUES CONCERNING SERVICE OF PROCESS UPON DEFENDANTS JULIAN SAMENGO-TURNER AND MARCUS HOPKINS

   Plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company, Inc. ("Guy Carpenter") and Marsh & McLennan Companies, Inc. ("MMC") (together, "plaintiffs"), respectfully submit this memorandum of law addressing issues concerning service of process upon defendants Julian Samengo-Turner ("Samengo-Turner") and Marcus Hopkins ("Hopkins," and together with defendant Ron Whyte ("Whyte") and Samengo-Turner, "defendants").[1]

---

[1] While arguing the service issue on behalf of Samengo-Turner and Hopkins, Proskauer Rose LLP resolutely refuses to acknowledge that it represents them and identifies itself as counsel only to defendant Whyte (who does not contest service of process upon him). But Samengo-Turner and Hopkins cannot have their cake and eat it too. Procedurally, they properly must appear in this action to contest service in accordance with Rule 12 and such appearance does not constitute a waiver of their service or jurisdictional arguments. Needless to say, Proskauer Rose LLP has no standing to raise any issues concerning service except as counsel to Samengo-Turner and Hopkins.

## PRELIMINARY STATEMENT

Defendants Marcus Hopkins and Julian Samengo-Turner clearly have been seeking to evade service. As reflected in the Declaration of Robert N. Holtzman, dated June 12, 2007 (the "Holtzman Dec."), and the Declaration of Iain Charles Colquhoun, dated May 16, 2007 (the "Colquhoun Dec.") a true and correct copy of which is attached as Exhibit 1 to the Holtzman Declaration,[2] plaintiffs have made substantial efforts to personally serve Hopkins and Samengo-Turner with the complaint, but these defendants absented themselves from the United Kingdom for an extended period of time and since their return to London have been avoiding plaintiffs' process servers. Moreover, Samengo-Turner offered that plaintiffs could serve the papers upon his UK solicitors, who nonetheless have steadfastly refused to accept service on his behalf or on behalf of the other defendants. Defendants' counsel in this action similarly has not accepted service on behalf of Samengo-Turner or Hopkins.

As demonstrated below and in the Holtzman Declaration, service upon Hopkins and Samengo-Turner has properly been effected. Given that each defendant clearly is on notice of these proceedings and has been actively attempting to evade service, as well as plaintiffs' good-faith efforts to effect service, in the event the Court determines that service has not properly been effected, plaintiffs respectfully request that the Court permit plaintiffs to serve Hopkins and Samengo-Turner, as applicable, by substituted service by delivering a copy of the complaint and related materials to their UK solicitors and to Proskauer Rose LLP, which has been arguing their case in these proceedings.

---

[2]     The Colquhoun Declaration was filed by plaintiffs in opposition to Whyte's motion to dismiss plaintiffs' complaint due to alleged lack of personal jurisdiction and forum *non conveniens*.

## STATEMENT OF FACTS

On Friday, May 4, 2007, UK counsel for plaintiffs was requested by plaintiffs' counsel in this action, on behalf of plaintiffs, to make arrangements for the service of the summons and complaint (and related documents) in this action upon defendants in the United Kingdom. For this purpose, plaintiffs' UK counsel contacted Ash Enforcement Services, which arranged for Elizabeth Schmitz ("Schmitz") to act as process server. (Colquhoun Dec., ¶ 3). Schmitz was instructed to serve the summons and complaint (and the related documents) upon the defendants at the addresses plaintiffs' UK counsel gave to her. (Colquhoun Dec., ¶ 4).

A.     Service Upon Defendant Marcus Hopkins

On Saturday, May 5, 2007, Schmitz spoke with Samengo-Turner. Among other things, Samengo-Turner told Schmitz (who told plaintiffs' UK counsel) that Hopkins was overseas for about a month. (Colquhoun Dec., ¶ 19). On May 10, 2007, plaintiffs' UK counsel instructed Schmitz to attend Hopkins' home to confirm that he was away. Schmitz informed plaintiffs' UK counsel that the address was presently unoccupied and that she was told by neighbors that they believed Hopkins was away for some time. (Colquhoun Dec., ¶ 20).

On May 11, 2007, the complaint in this action was served by international certified mail on defendant Hopkins at 1 Belmont Road, London, SW4 0B2, England, as permitted under the Hague Convention and Rule 4(f) of the Federal Rules of Civil Procedure (the "Federal Rules"). (Holtzman Dec., ¶ 4). True and correct copies of an Affidavit of Service and postal receipt evidencing such service are attached as Exhibits 2 and 3, respectively, to the Holtzman Declaration.

On June 8, 2007 at 7:00 p.m., Schmitz attempted to personally serve process on Hopkins at the address noted above. At the time she knocked on the front door, Schmitz observed an adult figure walk into one of the back rooms of the residence. From another room,

an adult female came to the door, who Schmitz believed to be Hopkins' wife, and that individual

was accompanied by a young child. When Schmitz asked the individual she believed to be

Hopkins' wife if Hopkins was available, the woman replied that he was out. However, the child

indicated that Hopkins was in the house. Upon further questioning, the adult female did not

further deny Hopkins' presence, but stated that she would not be accepting papers. (Holtzman

Dec., Ex. 4 (Affidavit of Elizabeth Schmitz, sworn to June 12, 2007)).

Later that evening, another process server, Jorge Salgado-Reges ("Salgado-

Reges"), visited Hopkins' house (at the same address noted above) with the intent to serve

process upon Hopkins. Salgado-Reges met with an adult female at the property who he believed

to be Hopkins' wife. The individual refused to take the documents from Salgado-Reges.

Salgado-Reges thereafter placed the documents on the floor at the adult female's feet and

advised her that the documents had been served. (Holtzman Dec., Ex. 5 (Affidavit of Service of

Jorge Salgado-Reges, sworn to June 12, 2007 ("Salgado-Reges Aff."), without exhibits), ¶ 1).

Salgado-Reges returned to Hopkins' house the following morning (June 9, 2007).

He also knocked on the door of Hopkins' house in an attempt to effect personal service upon

Hopkins, but there was no response. Salgado-Reges visited Hopkins' house later that afternoon

and again received no response. On June 12, 2007, Salgado-Reges also mailed a copy of the

documents to Hopkins at the address identified above. (Salgado-Reges Aff., ¶¶ 2-4).

B.    Service Upon Defendant Julian Samengo-Turner

On May 5, 2007, plaintiffs' UK counsel received a call from Schmitz who

apprised him of issues that had arisen regarding service of process on Samengo-Turner. Schmitz

informed plaintiffs' UK counsel that she had attended the address provided for Samengo-Turner,

but that the individuals currently residing at that address said that Samengo-Turner and his

family had moved about a year earlier. However, they provided Schmitz with the mobile

telephone number for Samengo-Turner's wife. Schmitz called this telephone number and left a message. Samengo-Turner returned the call and stated that he was in Worthing (which is about 60 miles south of London) for the weekend. He offered to accept service in Worthing, or alternatively at Gatwick Airport. Samengo-Turner also said that he would not be returning to London before leaving from Luton Airport on May 8, 2007 for an overseas trip for 3 weeks. He therefore proposed that the documents be sent to his solicitors in London. Schmitz did not know the name of Samengo-Turners's English solicitors. (Colquhoun Dec., ¶ 5). Because Samengo-Turner made the representation that his solicitors would accept on his behalf, plaintiffs believed it would be most effective to serve the documents in this manner and not through the other means suggested by Samengo-Turner at the time. (Colquhoun Dec., ¶ 6).

At this stage, the individual coordinating service for plaintiffs UK counsel was not aware of the name of the English firm of solicitors representing Samengo-Turner. Soon after this individual's telephone conversation with Schmitz, plaintiffs' UK counsel learned from counsel in this action that the law firm of Elborne Mitchell was acting on behalf of defendants, but that plaintiffs' counsel in this action was not aware of the name of the particular solicitor acting on defendants' behalf. (Colquhoun Dec., ¶ 7).

Plaintiffs' UK counsel tried to contact Samengo-Turner to find out the name of his solicitor by calling his mobile telephone (Schmitz having given him the number). A number of these attempts were unsuccessful and plaintiffs' UK counsel was unable to leave a message on Samengo-Turner's telephone. Plaintiffs' UK counsel therefore sent him a text message asking Samengo-Turner to call him back as he needed the contact details for his solicitor at Elborne Mitchell. This text message was sent at 6:14 p.m. (Colquhoun Dec., ¶ 8).

Thereafter, plaintiffs' UK counsel received a telephone call from Samengo-Turner, and they discussed Samengo-Turner's prior telephone discussion with Schmitz. Samengo-Turner indicated that he was happy for the documents to be served on his solicitor at Elborne Mitchell. Plaintiffs' UK counsel explained that he needed the contact details for his solicitor. Samengo-Turner told plaintiffs' UK counsel that his solicitor at Elborne Mitchell was Kate Payne ("Payne"). As Samengo-Turner was traveling, he also asked for a copy of the proceedings to be sent to him directly and gave plaintiffs' UK counsel his email address as julian@samengo-turner.com. Plaintiffs' UK counsel decided that it would not be appropriate to do so until after he had spoken to Payne. (Colquhoun Dec., ¶ 9).

At 7:02 p.m., plaintiffs' UK counsel contacted the messaging service at Elborne Mitchell and left a message for Payne asking her to call him back as a matter of urgency. (Colquhoun Dec., ¶ 10). At 7:21 p.m., plaintiffs' UK counsel received a telephone call from Payne and explained that plaintiffs had attempted to serve a summons and complaint (and related documents) on Samengo-Turner, but as he was not in London and was shortly to travel overseas for three weeks, he had said that he was willing for her to accept the proceedings on his behalf. Payne asked plaintiffs' UK counsel what the proceedings related to, and he responded that he was not aware of the details of the case, but it appeared from the documents that it was a claim brought by Guy Carpenter and MMC against Samengo-Turner, Whyte and Hopkins in the Southern District of New York. (Colquhoun Dec., ¶ 11).

Payne told plaintiffs' UK counsel that she would get instructions and revert to him. Payne asked plaintiffs' UK counsel for Samengo-Turner's mobile telephone number, which he provided to her. She also asked plaintiffs' UK counsel for the mobile telephone numbers for the other defendants, which he told her he did not have. Payne said that she would

send an email to plaintiffs' UK counsel as soon as she had obtained instructions. Plaintiffs' UK counsel stated that while Samengo-Turner was the priority given his impending overseas trip, he asked that she also take instructions from Whyte and Hopkins. (Colquhoun Dec., ¶ 12).

Plaintiffs' UK counsel did not receive an email or any other communication from Payne during the course of that Saturday evening or on the morning of Sunday, May 6, 2007. At 2:37 p.m. on Sunday afternoon, plaintiffs' UK counsel sent an email to Payne (a copy of which is attached as Exhibit A to the Colquhoun Declaration) asking her to confirm as a matter of urgency whether she had instructions to accept service on behalf of Samengo-Turner. Plaintiffs' UK counsel also asked Payne to confirm whether she had instructions from Whyte and Hopkins. (Colquhoun Dec., ¶ 13).

After not receiving any response from Payne, plaintiffs' UK counsel tried to contact her through Elborne Mitchell. His initial attempts to do so were unsuccessful. Plaintiffs' UK counsel managed to contact the Elborne Mitchell messaging service at 6:04 p.m., and he left a message for Payne asking her to call him back or to respond to his email as a matter of urgency. Plaintiffs' UK counsel received no response to his messages over the course of Sunday evening and Monday, May 7, 2007 (which was a public holiday in the United Kingdom) and believed that Samengo-Turner left the UK that Monday morning. (Colquhoun Dec., ¶ 14).

On Tuesday, May 8, 2007 at 11:00 a.m., plaintiffs' UK counsel left another message for Payne at Elborne Mitchell. Shortly thereafter, he received an email from Payne (a copy of which is attached as Exhibit B to the Colquhoun Declaration) stating that she did not have instructions to accept service on behalf of defendants. (Colquhoun Dec., ¶ 15). Further email correspondence between Ms. Payne and plaintiffs' UK counsel followed thereafter, copies of which are attached as Exhibits C, D and E to the Colquhoun Declaration. Notwithstanding

Samengo-Turner's agreement that the complaint could be served upon his UK solicitors, his solicitors have refused to accept service. (Holtzman Dec., ¶ 2, 7).

The complaint in this action was served by international certified mail on Samengo-Turner on May 11, 2007 at 17 Kyrle Road, London, SW11 6BD, England and on June 7, 2007 at 49, Prince of Wales Mansions, Prince of Wales Drive, London, SW11 4BH, England. True and correct copies of Affidavits of Service and postal receipts evidencing such service are attached as Exhibits 6, 7, 8, and 9, respectively, to the Holtzman Declaration. The Kyrle Road address had been reflected in Guy Carpenter's records as Samengo-Turner's address. The Prince of Wales Mansions address was identified by Samengo-Turner as his residence in a claim form filed by defendants in an action they commenced in the United Kingdom before the High Court. (Holtzman Dec., ¶ 8). A true and correct copy of this claim form is attached as Exhibit 10 to the Holtzman Declaration.[3]

On June 11, 2007, a process server retained by plaintiffs spoke with the wife of Samengo-Turner at B76 Albion Riverside, 8 Hester Road, London, SW11 4AP, England. Samengo-Turner's wife indicated that he does not live there, but lives at the Prince of Wales Mansions address identified in the foregoing paragraph. Information to the contrary (*i.e.*, that Samengo-Turner does in fact live on Hester Road) was conveyed to the process server by the concierge and cleaner at Hester Road. In an abundance of caution, the complaint in this action was served by international certified mail on defendant Samengo-Turner at B76 Albion Riverside, 8 Hester Road, London, SW11 4AP, England later on June 11. (Holtzman Dec., ¶ 9).

---

[3]    Having represented in a public document that he lives at the Prince of Wales address, Samengo-Turner should not now be permitted to contest service at that address. *See Gallery Recording Studios, Inc. v. Discrete Tech. Ltd.*, No. 97 Civ. 4752 (RPP), 1997 WL 695569, at *1 (S.D.N.Y. November 6, 1997) ("In representing to the world that 3200 West End Avenue is the address of its office in the United States, defendants should be estopped from contesting the propriety of service at that address.").

True and correct copies of an Affidavit of Service and postal receipt evidencing such service are attached hereto as Exhibits 11 and 12, respectively, to the Holtzman Declaration.

      C.      Defendants Commenced Proceedings in the UK Seeking an Anti-Suit Injunction, Demonstrating Actual Knowledge and Receipt of the Pleadings in this Action

On May 25, 2007, defendants commenced a proceeding in the English High Court seeking, *inter alia*, an anti-suit injunction that would have prohibited the plaintiffs here from continuing or in any way pursuing this action. In their submissions to the High Court, defendants noted the commencement of this action, attached a copy of the complaint filed in this action, and recounted this Court's rulings issued on May 18. *See, e.g.*, Holtzman Dec., ¶ 10 and Ex. 13 (copy of relevant excerpts from defendants' skeleton argument in support of their application in the United Kingdom for an interim anti-suit injunction, dated May 29, 2007). Thus, there is no dispute that Samengo-Turner and Hopkins have, and have had, actual notice of this proceeding and access to copies of the pleadings.

Defendants' application for an anti-suit injunction was denied by the High Court on June 6, 2007. (Holtzman Dec., ¶ 11).

## ARGUMENT

### I.

### SERVICE ON DEFENDANTS HAS BEEN PROPERLY EFFECTED PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE AND THE HAGUE CONVENTION

Pursuant to Article 10(a) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"),[4] Samengo-Turner and Hopkins were served process via international certified mail. Such service is effective under the Hague Convention and Rule 4(f) of the Federal Rules

---

[4]     A copy of the Hague Convention is attached as Exhibit 14 to the Holtzman Declaration.

of Civil Procedure; even if that were not the case, plaintiffs' efforts should be deemed effective

in light of plaintiffs' good faith and diligent efforts to effect service, defendants' bad faith in

attempting to avoid service and the undisputed fact that defendants have received actual notice of

these proceedings.

Under Rule 4(f)(1) of the Federal Rules, service upon an individual "may be

effected in a place not within any judicial district of the United States: (1) by any internationally

agreed means reasonably calculated to give notice, such as those means authorized by the Hague

Convention on the Service Abroad of Judicial and Extrajudicial Documents."

Fed. R. Civ. P. 4(f)(1). The Hague Convention provides: "Each Contracting State shall

designate a Central Authority which will undertake to receive requests for service coming from

other Contracting States . . . ." Convention on the Service Abroad of Judicial and Extrajudicial

Documents in Civil or Commercial Matters, art. 2, Nov. 10, 1965. Further, "[p]rovided the State

of destination does not object, the present Convention shall not interfere with . . . the freedom to

send judicial documents, by postal channels, directly to persons abroad." *Id.* at art. 10(a).

Notably, the United Kingdom "has not declared that it objects to Article 10(a) of the Hague

Service Convention. Therefore, service by international registered mail is permitted."

http://travel.state.gov/law/info/judicial/judicial_671.html (at page 2) (copy attached as Exhibit 15

to the Holtzman Declaration).

Plaintiffs have not received confirmation that Samengo-Turner or Hopkins have

received the process served upon them by international certified mail; indeed, in light of their

prior efforts to avoid service, plaintiffs suspect that they will refuse to acknowledge receipt of

any such documents. But regardless of whether plaintiffs can prove actual receipt, their service

by international certified mail on Samengo-Turner and Hopkins is effective service under the

Hague Convention. *See Burda Media v. Blumenberg*, No. 97 Civ. 7167 (RWS), 2004 WL

1110419, at *9 (S.D.N.Y. May 18, 2004) ("Because Burda has made every effort to comply with

the Hague Convention, service under the Hague Convention is deemed perfected despite the

alleged absence of receipt of the summons. Further, the service attempted by Burda was

reasonably calculated to apprise Burda of the pendency of this action."), *aff'd, Burda Media, Inc.*

*v. Viertel*, 417 F.3d 292, 302 (2d Cir. 2005);[5] *Lidas, Inc. v. Chelala*, 238 F.3d 1076, 1084 (9th

Cir. 2001) ("In fact, article 10(a) of the Convention provides that it is not meant to prohibit the

freedom to send judicial documents, by postal channels, directly to persons abroad. Proof of

actual receipt is not required.") (internal citation and quotations omitted).

Indeed, proof of actual receipt is unnecessary because the intent of the Hague

Convention provisions, like that of the Federal Rules, is "to assure that defendants sued in

foreign jurisdictions . . . receive actual and timely notice of suit, and to facilitate proof of service

abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Similarly,

the Federal Rules emphasize "actual notice, rather than strict formalism," and "[t]here is no

indication from the language of the Hague Convention that it was intended to supersede this

general and flexible scheme, particularly where no injustice or prejudice is likely to result to the

party located abroad, or the interests of the affected signatory country." *Burda Media*, 2004 WL

1110419, at *6-7 (internal citation and quotations omitted).

Therefore, even in situations where actual proof of service is lacking, courts have

deemed service effective where good faith efforts have been made by the plaintiff and the

defendant was on notice of the complaint. *See Id.*, at *7 ("As a practical matter, where a plaintiff

---

[5]     The Second Circuit in *Burda Media* expressly did not reach the issue of whether actual
receipt was necessary under the Hague Convention; it ruled on an alternative basis that
defendant's denial of receipt of service was not credible.

has attempted in good faith to comply with the Hague Convention, and where a defendant received sufficient notice despite the technical defect, it is within a court's discretion to declare service properly perfected."); *Fox v. Regie Nationale des Usines Renault*, 103 F.R.D. 453, 455 (D. Tenn. 1984) (service properly perfected where "plaintiff has, in good faith, attempted to abide by the provisions of the Hague Convention...").

In this action, plaintiffs have sought and require expedited discovery. Plaintiffs sought to effect service through solicitors in the UK in order to avoid the delay entailed in service through a Central Authority, particularly critical given the expedited discovery sought in this preceding. In any event, attempting to serve through the Central Authority would have achieved no different result, as the efforts Hopkins and Samengo-Turner have made to thwart service would similarly have confounded the ability of the Central Authority to effect personal service.[6] After plaintiffs' initial efforts to serve Samengo-Turner and Hopkins through personal delivery were unsuccessful, plaintiffs elected to serve defendants by international certified mail pursuant to the Hague Convention. As described above, plaintiffs have made significant efforts to serve Samengo-Turner and Hopkins, and these defendants have expended considerable energy avoiding service. It is beyond dispute, however, that Samengo-Turner and Hopkins are fully apprised of the complaint in this action; indeed, they filed an action in the United Kingdom to try and stop this proceeding. (*See* Holtzman Dec., ¶ 10 and Ex. 13).

Plaintiffs respectfully submit that service via international certified mail has been properly perfected in accordance with the Hague Convention and the Federal Rules, particularly given plaintiffs' numerous good faith efforts to serve process upon Samengo-Turner and

---

[6]     The Central Authority does not act as an agent for service of process, but rather would itself or through an agency attempt to effect service. Hague Convention Art. 5.

Hopkins, such defendants' calculated avoidance of such service and the undisputed fact that they are on notice of this proceeding.

## II.

## IF SERVICE HAS NOT YET BEEN PERFECTED, THIS COURT SHOULD ORDER ALTERNATE SERVICE UNDER RULE 4(f)(3)

If, in the alternative, the Court determines that service has not yet been properly perfected, it should exercise its discretionary power to order an alternate method of service under Fed. R. Civ. P. 4(f)(3). That rule permits service outside the United States "by other means not prohibited by international agreement as may be directed by the court." In this case, plaintiffs respectfully request that the Court order that defendants' US and UK counsel, Proskauer Rose LLP and Elborne Mitchell, respectively, accept service on defendants' behalf.

In a recent decision, this Court explained that whether to order alternative methods of service under Rule 4(f)(3) is "committed to the sound discretion of the district court." *RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) (Cote, J.) (internal citations and quotations omitted). Where a plaintiff "has repeatedly attempted to effect service . . . , only to be frustrated," a court may order alternative service under Rule 4(f)(3). *Export-Import Bank of U.S.  v. Asia Pulp & Paper Co.*, No. 03 Civ. 8554 (LTS) (JCF), 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005). Federal Rule 4(f)(3) does not "require a party to attempt[] every permissible means of service of process before petitioning the court for alternative relief." *Id.* (internal citation and quotations omitted). Indeed, "the only limitation on Rule 4(f)(3) are that the means of service must be directed by the court and must not be prohibited by international agreement," *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04 Civ. 9641 (RCC), 2005 WL 696769, at *2 (S.D.N.Y. March 23, 2005), provided that "[t]he proposed means of service must also comport with constitutional notions of due process." *RSM*

*Prod. Corp.*, 2007 WL 1515068, at *1 (citations and internal quotations omitted). Constitutional notions of due process "require[] notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citations and internal quotations omitted).

A court may order an alternative method of service when a party has made "good faith but unavailing attempts to serve . . . in accordance with the Hague Convention, and in light of adequate actual notice already provided..." *Seiko Epson Corp. v. Glory South Software Manufacturing, Inc.*, No. 06-CV-236-BR, 2007 WL 282145, at *2 (D. Or. Jan. 24, 2007). Moreover, alternative service pursuant to Rule 4(f)(3) is justified "when Hague Service Convention methods do not permit service "within the time required by the circumstances." *RSM Prod. Corp*, 2007 WL 1515068, at *1. Here, plaintiffs submit that alternative service is appropriate because of the expedited nature of discovery this proceeding, which the Court already has determined is necessary and appropriate.

Moreover, the evidence reflects that plaintiffs have made numerous good faith efforts to effect service on Samengo-Turner and Hopkins and those defendants have expended considerable energy avoiding service. It is also beyond dispute that defendants have actual notice of these proceedings. In the event the Court finds that plaintiffs have not perfected service on Samengo-Turner and Hopkins through their efforts as of this date, there can be no doubt that further attempts to serve such defendants pursuant to the Hague Convention will be met with continued avoidance and gamesmanship and frustrate the needs of plaintiffs to obtain the expedited discovery the Court has ruled appropriate.

Accordingly, in the event service is deemed by the Court not to have been effected, plaintiffs respectfully request that the Court exercise its discretion to grant an order,

pursuant to Fed. R. Civ. P. 4(f)(3), directing that service be effected by delivery of the summons,

complaint and related papers upon defendants' counsel, Proskauer Rose LLP and Elborne

Mitchell. *See, e.g., Smith v. Islamic Emirate of Afghanistan*, 01 Civ. 10132 (HB), 01 Civ. 10144

(HB), 2001 WL 1658211, at *2 (S.D.N.Y. Dec. 26, 2001) ("Among the alternative methods of

service that courts have countenanced are: service by mail to the defendant's last known address,

publication, *delivery to the defendant's attorney-agent,* telex, ordinary mail and e-mail to a

consistently used address." (emphasis added)).  Neither the Hague Convention nor any other

international agreement between the United Kingdom and the United States prohibits service on

a defendant residing in the United Kingdom through service on his UK or US counsel, and such

service will not violate constitutional standards of due process since Samengo-Turner and

Hopkins are fully apprised of this action.  *RSM Prod. Corp.*, 2007 WL 1515068, at *2

(permitting service on a defendant residing in the Russian Federation through service on his

counsel in the United States).

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that (a) the Court determine that service upon Samengo-Turner and Hopkins has been properly effected or (b) in the alternative, in the event the Court determines that service has not been properly effected, the Court permit plaintiffs to serve Hopkins and Samengo-Turner, as applicable, by substituted service by delivering a copy of the complaint and related materials to their UK solicitors and to Proskauer Rose LLP.

Dated: New York, New York
     June 12, 2007

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:   /s/ Robert N. Holtzman
        Barry H. Berke (BB-1421)
        Robert N. Holtzman (RH-9525)
        Steven M. Knecht (SK-8404)
1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100

Attorneys for Plaintiffs