UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x
                                               :
GUY CARPENTER & COMPANY, LLC and               :
MARSH & McLENNAN COMPANIES, INC.,              :
                                               :
                              Plaintiffs,      :        07 Civ. 3580 (DC) (KNF)
                                               :
              - against -                      :        **DECLARATION**
                                               :
JULIAN SAMENGO-TURNER, RON WHYTE,              :
and MARCUS HOPKINS,                            :
                                               :
                              Defendants.      :
                                               :
——————————————————————— x

I, Robert N. Holtzman, hereby declare:

1.     I am a member of Kramer Levin Naftalis & Frankel LLP, attorneys for

plaintiffs Guy Carpenter & Company, LLC ("Guy Carpenter") and Marsh & McLennan

Companies, Inc. ("MMC" and together with Guy Carpenter, "plaintiffs") in the above-captioned

matter.  I submit this declaration to address issues concerning service of process upon defendants

Julian Samengo-Turner and Marcus Hopkins.

2.     Defendants Marcus Hopkins and Julian Samengo-Turner clearly have

been seeking to evade service.  As reflected in the Declaration of Iain Charles Colquhoun, dated

May 16, 2007 (a true and correct copy of which is attached as Exhibit 1 to this declaration) and

this declaration, plaintiffs have made substantial efforts to personally serve Hopkins and

Samengo-Turner with the complaint, but these defendants absented themselves from the United

Kingdom for an extended period of time and since their return to London have been avoiding

plaintiffs' process servers.  Moreover, Mr. Samengo-Turner offered that plaintiffs' UK process

server could serve the papers upon his UK solicitors, who nonetheless have steadfastly refused to

accept service on his behalf or on behalf of the other defendants.  Defendants' counsel in this

action similarly has not accepted service on behalf of Messrs. Samengo-Turner or Hopkins.

      3.      As demonstrated below, in plaintiffs' Memorandum of Law and in the

attached supporting papers, service upon Hopkins and Samengo-Turner has properly been

effected.  Given that each defendant clearly is on notice of these proceedings and has been

actively attempting to evade service, as well as plaintiffs' good-faith efforts to effect service, in

the event the Court determines that service has not properly been effected, the Court should

permit plaintiffs to serve Hopkins and Samengo-Turner, as applicable, by substituted service by

delivering a copy of the complaint and related materials to their UK solicitors and to Proskauer

Rose LLP, which has been arguing their case in these proceedings.

### Service Upon Defendant Marcus Hopkins

      4.      On May 11, 2007, the complaint in this action was served by international

certified mail on defendant Hopkins at 1 Belmont Road, London, SW4 0B2, England, as

permitted under the Hague Convention and Rule 4(f) of the Federal Rules of Civil Procedure.

True and correct copy of an Affidavit of Service and postal receipt evidencing such service are

attached hereto as Exhibits 2 and 3, respectively.

      5.      A true and correct copy of an Affidavit of Elizabeth Schmitz, sworn to

June 12, 2007, reflecting defendant Hopkins' attempt to evade service on June 8, 2007, is

attached hereto as Exhibit 4.

      6.      A true and correct copy of an Affidavit of Service of Jorge Salgado-Reges,

sworn to June 12, 2007 (without exhibits), reflecting service of the complaint on defendant

Hopkins by leaving copies of the papers at his residence with a person of suitable age and

discretion and transmitting a second set of copies by first class mail, is attached hereto as Exhibit

5.

KL3 2597979.3

### Service Upon Defendant Julian-Samengo-Turner

7.    As noted above, Samengo-Turner agreed that the complaint could be served upon his UK solicitors. His solicitors have, however, refused to accept service.

8.    The complaint in this action was served by international certified mail on defendant Samengo-Turner on May 11, 2007 at 17 Kyrle Road, London, SW11 6BD, England and on June 7, 2007 at 49, Prince of Wales Mansions, Prince of Wales Drive, London, SW11 4BH, England. True and correct copies of Affidavits of Service and postal receipts evidencing such service are attached hereto as Exhibits 6, 7, 8, and 9, respectively. The Kyrle Road address had been reflected in Guy Carpenter's records as Samengo-Turner's address. The Prince of Wales Mansions address was identified by Samengo-Turner as his residence in a claim form filed by defendants in an action they commenced in the United Kingdom before the High Court. A true and correct copy of this claim form is attached hereto as Exhibit 10.

9.    On June 11, 2007, a process server retained by plaintiffs spoke with the wife of defendant Samengo-Turner at B76 Albion Riverside, 8 Hester Road, London, SW11 4AP, England. Mr. Samengo-Turner's wife indicated that he does not live there, but lives at the Prince of Wales Mansions address identified in paragraph 8 above. Information to the contrary (*i.e.*, that Mr. Samengo-Turner does in fact live on Hester Road) was conveyed to the process server by the concierge and cleaner at Hester Road. In an abundance of caution, the complaint in this action was served by international certified mail on defendant Samengo-Turner at B76 Albion Riverside, 8 Hester Road, London, SW11 4AP, England later on June 11. True and correct copies of an Affidavit of Service and postal receipt evidencing such service are attached hereto as Exhibits 11 and 12, respectively.

10.    On May 25, 2007, defendants commenced a proceeding in the English High Court seeking, *inter alia*, an anti-suit injunction that would have prohibited the plaintiffs

KL3 2597979.3

here from continuing or in any way pursuing this action. In their submissions to the High Court, defendants noted the commencement of this action, attached a copy of the complaint filed in this action, and recounted this Court's rulings issued on May 18. A true and correct copy of relevant excerpts from defendants' skeleton argument in support of their application in the United Kingdom for an interim anti-suit injunction, dated May 29, 2007, is attached hereto as Exhibit 13.

      11.    Defendants' application for an anti-suit injunction was denied by the High Court on June 6, 2007.

      12.    A true and correct copy of the Hague Convention is attached hereto as Exhibit 14.

      13.    A true and correct copy of the following website link, http://travel.state.gov/law/info/judicial/judicial_671.html, is attached hereto as Exhibit 15.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 12, 2007

_____
Robert N. Holtzman

KL3 2597979.3

# EXHIBIT
# 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,

       Plaintiffs,    :   07 Civ. 3580 (DC) (KNF)

    - against -     :   **DECLARATION**

JULIAN SAMENGO-TURNER, RON WHYTE,
and MARCUS HOPKINS,

       Defendants.   :

------------------------------------------------x

I, Iain Charles Colquhoun, hereby declare:

  1.  I am a solicitor in the London office of the international law firm, Herbert Smith LLP.

  2.  I submit this declaration to inform the Court of the efforts that plaintiffs have made, through my law firm and the process server we retained, to serve the Summons and Complaint (and related documents) in this action, upon defendants.

  3.  On Friday, May 4, 2007, Herbert Smith LLP was requested by Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"), on behalf of our firms' mutual clients Guy Carpenter & Company LLC and Marsh & McLennan Companies, Inc., to make arrangements for the service of the Summons and Complaint (and related documents) in above-captioned action upon defendants Julian Samengo-Turner, Ron Whyte and Marcus Hopkins ("defendants") in the United Kingdom. For this purpose, we contacted Ash Enforcement Services, which arranged for Elizabeth Schmitz to act as process server.

4.      Ms. Schmitz was instructed to serve the Summons and Complaint (and the related documents) upon the defendants at the addresses we gave to her, which were the last known addresses plaintiffs had on file for defendants.

Attempted Personal Service of Julian Samengo-Turner

5.      On Saturday, May 5, 2007 I received a call from Ms. Schmitz who apprised me of some issues that had arisen regarding this service of process. Ms. Schmitz informed me that she had attended the address we had provided for Mr. Samengo-Turner, but that the individuals currently residing at that address said that Mr. Samengo-Turner and his family had moved about 12 months ago. However, they provided Ms. Schmitz with the mobile telephone number for Mr. Samengo-Turner's wife, which Ms. Schmitz called. Ms. Schmitz left a message. Mr. Samengo-Turner returned the call stating that he was in Worthing for the weekend. He offered to accept service in Worthing (which is about 60 miles south of London), or alternatively at Gatwick Airport. He also said that he would not be returning to London before leaving from Luton Airport on May 8, 2007 for an overseas trip for 3 weeks. He therefore proposed that the documents be sent to his solicitors in London. Ms. Schmitz did not know the name of Mr. Samengo-Turners's English solicitors.

6.      Because Mr. Samengo-Turner made the representation that his solicitors would accept service on his behalf, we believed it would be most effective to serve the documents in this manner and not through the other means suggested by Mr. Samengo-Turner at the time.

7.      At this stage, I was not aware of the name of the English firm of solicitors representing Mr. Samengo-Turner. Soon after my telephone call with Ms. Schmitz, I was informed by Robert Holtzman of Kramer Levin that the law firm of Elborne Mitchell were acting on behalf of the defendants, but that Kramer Levin were not aware of the name of the particular

solicitor acting on their behalf. I agreed with Mr. Holtzman that I would contact Mr. Samengo-Turner directly to find out the name of his solicitor, so that I could contact him or her to confirm that he or she was willing to accept service on behalf of Mr. Samengo-Turner and the other defendants.

8.    I initially tried to contact Mr. Samengo-Turner by calling his mobile telephone (Ms. Schmitz having given me the number). A number of these attempts were unsuccessful and I was unable to leave a message on his telephone. I therefore sent him a text message asking him to call me back as I needed the contact details for his solicitor at Elborne Mitchell so I could confirm that he or she was willing to accept service on his behalf. This text message was sent at 6:14 p.m.

9.    Some time after I sent this text message, I received a telephone call from Mr. Samengo-Turner. We referred to his prior telephone discussion with Ms. Schmitz. He indicated that he was happy for the documents to be served on his solicitor of Elborne Mitchell. I explained that I needed the contact details for his solicitor in order to confirm that he or she was willing to accept service on his behalf. He told me that his solicitor at Elborne Mitchell was Kate Payne. As he was travelling, he also asked for a copy of the proceedings to be sent to him directly and gave me his email address as julian@samengo-turner.com. I said that I could see no difficulty with this, although I decided that it would not be appropriate to do so until after I had spoken to Ms. Payne.

10.    At 7:02 p.m., I contacted the messaging service at Elborne Mitchell. I left a message for Kate Payne asking her to call me back as a matter of urgency.

11.    At 7:21 p.m., I received a telephone call from Ms. Payne. I explained that we had attempted to serve a Summons and Complaint (and related documents) on Mr. Samengo-

KL3 2592118.1

Turner, but as he was not in London and was shortly to travel overseas for 3 weeks, he had said that he was willing for her to accept the proceedings on his behalf. I said that I was calling to confirm that this was the case. She asked me what the proceedings related to. I said that I was not aware of the details of the case, but it appeared from the documents that it was a claim brought by Guy Carpenter and Marsh & McLennan against Mssrs. Samengo-Turner, Whyte and Hopkins in the Southern District of New York.

12.     Ms. Payne said that she would get instructions and revert to me. She asked for Mr. Samengo-Turner's mobile telephone number, which I provided to her. She also asked for the mobile telephone numbers for the other defendants, which I told her I did not have. She said that she would send an email to me as soon as she had obtained instructions. I said that whilst Mr. Samengo-Turner was the priority given his impending overseas trip, I asked that she also take instructions from Mr. Whyte and Mr. Hopkins.

13.     I did not receive an email or any other communication from Ms. Payne during the course of Saturday evening or on the morning of Sunday, May 6, 2007. At 2:37 p.m. on Sunday afternoon (9:39 a.m. New York time) I sent an email to Ms. Payne asking her to confirm as a matter of urgency whether she had instructions to accept service on behalf of Mr. Samengo-Turner. I asked her to confirm whether she had instructions from Mr. Whyte and Mr. Hopkins. A copy of that email is attached hereto as Exhibit A.

14.     After not receiving any response from Ms. Payne, I tried to contact her through Elborne Mitchell. My initial attempts to do so were unsuccessful. I managed to contact the Elborne Mitchell messaging service at 6:04 p.m., and I left a message for Ms. Payne asking her to call me back or to respond to my email as a matter of urgency. I received no response to my messages over the course of Sunday evening and Monday, May 7, 2007 (which was a public

KL3 2592118.1

holiday in the United Kingdom). I believe that Mr. Samengo-Turner left the U.K. on Monday morning.

15.    On Tuesday, May 8, 2007 at 11:00 a.m., I left another message for Ms. Payne at Elborne Mitchell. At 11:22 a.m. (6:22 a.m. New York time) I received an email from Ms. Payne stating that she did not have instructions to accept service on behalf of Mssrs. Samengo-Turner, Whyte and Hopkins. A copy of that email is attached hereto as Exhibit B. Further email correspondence between Ms. Payne and me followed at 3:33 p.m. (10:33 a.m. New York time), 4:58 p.m. (11:58 a.m. New York time) and 6:06 p.m. (1:06 p.m. New York time), copies of which are also attached hereto as Exhibits C, D and E. To date, I have received no response to my email of May 8, 2007 at 6:06 p.m. In particular, I am not aware whether Ms. Payne has been unable to obtain instructions from the defendants, or whether the defendants have instructed her not to accept service on their behalf.

Attempted Personal Service Upon Ron Whyte

16.    When Ms. Schmitz called me on Saturday, May 5, 2007 at 4:05 p.m., she told me that she had attended Mr. Whyte's home in Kent earlier that day to attempt to effect service of the proceedings. She told me that it appeared that Mr. Whyte was away, as there was a large amount of unopened mail near his door. When Ms. Schmitz spoke to Mr. Samengo-Turner (as to which see paragraph 5 above), he said that he believed that Mr. Whyte was around generally, but may be away for the public holiday weekend on May 5-7, 2007. Ms. Schmitz told me that she had left a delivery card for Mr. Whyte, asking him to call her back.

17.    In light of Ms. Payne's response on May 8, 2007, stating that she did not have instructions to accept service of behalf of defendants, as explained above, I instructed Ms. Schmitz at 12:00 p.m. on Tuesday, May 8, 2007 to try again to serve the proceedings on Mr. Whyte. Ms. Schmitz called me later in the day to inform me that she attempted service on this

KL3 2592118.1

date but was informed by an individual at Mr. Whyte's home that Mr. Whyte had left the UK for a few weeks. This individual would not accept service on behalf of Mr. Whyte.

18. However, on May 11, 2007, I was informed by Ms. Schmitz that she had received a telephone call from Mr. Whyte, who indicated that he would be willing to accept service of the papers on May 12, 2007 at 8:00 a.m. I have since been informed that Mr. Malcolm Satchell from Ash Enforcement Services effected personal service upon Mr. Whyte at his home on May 12, 2007 at 8:00 a.m.

Attempted Personal Service Upon Marcus Hopkins

19. Ms. Schmitz also told me that when she spoke with Mr. Samengo-Turner on Saturday, May 5, 2007, he had told her that Mr. Hopkins was overseas for about a month.

20. On May 10, 2007, I instructed Ms. Schmitz to attend Mr. Hopkins' home to confirm that he was away. Ms. Schmitz informed me that the address is presently unoccupied and that she was told by neighbors that they believed Mr. Hopkins was away for some time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed:     London, England, United Kingdom
              May 16, 2007

I. Charles Colquhoun

KL3 2592118.1

# EXHIBIT
# A

## Tamayo, Amparo

| | |
|---|---|
| **From:** | Colquhoun, Charles [Charles.Colquhoun@herbertsmith.com] |
| **Sent:** | Sunday, May 06, 2007 9:37 AM |
| **To:** | payne@elbornes.com |
| **Cc:** | BROWN, ANDREW |

**Subject:** Guy Carpenter

Dear Ms Payne

I refer to our telephone discussion yesterday evening.

We should be grateful if you could confirm as a matter of urgency whether you have instructions to accept service on behalf of Mr Samengo-Turner. If you do not have instructions, we may have to take steps to effect service on Mr Samengo-Turner by other means.

In due course, we should also be grateful if you could confirm if you have instructions from Mr Whyte and Mr Hopkins.

Yours sincerely

Charles Colquhoun

Herbert Smith LLP

# EXHIBIT
# B

Guy Carpenter

**Tamayo, Amparo**

| | |
|---|---|
| **From:** | Kate Payne [Payne@Elbornes.com] |
| **Sent:** | Tuesday, May 08, 2007 6:22 AM |
| **To:** | Colquhoun, Charles |
| **Subject:** | RE: Guy Carpenter |

Dear Mr Colquhoun

Please be advised that I do not have instructions to accept service on behalf of Mr Samengo-Turner, Whyte and Hopkins.

Yours sincerely
Kate Payne

-----Original Message-----
**From:** Colquhoun, Charles [mailto:Charles.Colquhoun@herbertsmith.com]
**Sent:** 06 May 2007 14:37
**To:** Kate Payne
**Cc:** BROWN, ANDREW
**Subject:** Guy Carpenter

Dear Ms Payne

I refer to our telephone discussion yesterday evening.

We should be grateful if you could confirm as a matter of urgency whether you have instructions to accept service on behalf of Mr Samengo-Turner. If you do not have instructions, we may have to take steps to effect service on Mr Samengo-Turner by other means.

In due course, we should also be grateful if you could confirm if you have instructions from Mr Whyte and Mr Hopkins.

Yours sincerely

Charles Colquhoun

Herbert Smith LLP


This message is confidential and may be covered by legal professional privilege. If you have received this message in error please delete it and notify the sender immediately by contacting our main switchboard +44 (0)20 7374 8000; you should not retain the message or disclose its contents to anyone. Herbert Smith LLP may monitor e-mail communications in accordance with applicable law and regulations.

Herbert Smith LLP is a Limited Liability Partnership registered in England and Wales with registered number OC310989. It is regulated by the Law Society of England and Wales whose rules can be accessed via www.guide.lawsociety.org.uk. A list of the members and their professional qualifications is open to inspection at the registered office, Exchange House, Primrose Street, London EC2A 2HS. We use the word partner to refer to a member of Herbert

Smith LLP, or an employee or consultant with equivalent standing and qualifications. Herbert Smith LLP's registration number for Value Added Tax in the United Kingdom is 243 3423 89.

Herbert Smith LLP, Gleiss Lutz and Stibbe are three independent firms which have a formal alliance. Further information is available from www.herbertsmith.com.

---

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

---

Click here to report this email as spam.

---

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

---

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

5/10/2007

# EXHIBIT
# C

Guy Carpenter                                                          Page 1 of 3

## Tamayo, Amparo

| | |
|---|---|
| **From:** | Colquhoun, Charles [Charles.Colquhoun@herbertsmith.com] |
| **Sent:** | Tuesday, May 08, 2007 10:33 AM |
| **To:** | Kate Payne |
| **Cc:** | BROWN, ANDREW |
| **Subject:** | RE: Guy Carpenter |

Dear Ms Payne

I refer to our telephone discussion on Saturday evening, my email of Sunday (sent at 2.37 pm), my telephone message of Sunday evening and my telephone message of this morning.

Despite your statement on Saturday evening that you would respond to me by email as to whether you had instructions to accept service and my numerous messages, you did not do so until this morning (after Mr Samengo-Turner's departure from the UK on Monday morning).

Further, during both the process server's and my discussions with Mr Samengo-Turner on Saturday evening, he confirmed that his solicitors would accept service on his behalf. He also provided me with your name and confirmed that the relevant documents should be sent to you (although he requested that we also send him a copy of the documents by email). I therefore sought confirmation from you directly that you were indeed instructed to accept service but when we spoke, you said that you had not heard from your clients and so needed to speak to them to take their instructions.

In the circumstances, it is surprising that Mr Samengo-Turner appears to have changed his mind about whether you can accept service on his behalf. Please specifically confirm that Mr Samengo-Turner has instructed you not to accept service.

Please also confirm the current whereabouts of Mssrs Samengo-Turner, Whyte and Hopkins.

We reserve the right to bring this email to the attention of the US Court.

Yours sincerely

Charles Colquhoun

Herbert Smith LLP

---

**From:** Kate Payne [mailto:Payne@Elbornes.com]
**Sent:** 08 May 2007 11:22
**To:** Colquhoun, Charles
**Subject:** RE: Guy Carpenter

Dear Mr Colquhoun

Please be advised that I do not have instructions to accept service on behalf of Mr Samengo-Turner, Whyte and Hopkins.

Yours sincerely
Kate Payne

        -----Original Message-----
        **From:** Colquhoun, Charles [mailto:Charles.Colquhoun@herbertsmith.com]

5/10/2007

**Sent:** 06 May 2007 14:37
**To:** Kate Payne
**Cc:** BROWN, ANDREW
**Subject:** Guy Carpenter

Dear Ms Payne

I refer to our telephone discussion yesterday evening.

We should be grateful if you could confirm as a matter of urgency whether you have instructions to accept service on behalf of Mr Samengo-Turner. If you do not have instructions, we may have to take steps to effect service on Mr Samengo-Turner by other means.

In due course, we should also be grateful if you could confirm if you have instructions from Mr Whyte and Mr Hopkins.

Yours sincerely

Charles Colquhoun

Herbert Smith LLP

This message is confidential and may be covered by legal professional privilege. If you have received this message in error please delete it and notify the sender immediately by contacting our main switchboard +44 (0)20 7374 8000; you should not retain the message or disclose its contents to anyone. Herbert Smith LLP may monitor e-mail communications in accordance with applicable law and regulations.

Herbert Smith LLP is a Limited Liability Partnership registered in England and Wales with registered number OC310989. It is regulated by the Law Society of England and Wales whose rules can be accessed via www.guide.lawsociety.org.uk. A list of the members and their professional qualifications is open to inspection at the registered office, Exchange House, Primrose Street, London EC2A 2HS. We use the word partner to refer to a member of Herbert Smith LLP, or an employee or consultant with equivalent standing and qualifications. Herbert Smith LLP's registration number for Value Added Tax in the United Kingdom is 243 3423 89.

Herbert Smith LLP, Gleiss Lutz and Stibbe are three independent firms which have a formal alliance. Further information is available from www.herbertsmith.com.

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

Click here to report this email as spam.

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

5/10/2007

Guy Carpenter

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

5/10/2007

# EXHIBIT
# D

Guy Carpenter                                                                                          Page 1 of 3

## Tamayo, Amparo

**From:**    Kate Payne [Payne@Elbornes.com]
**Sent:**    Tuesday, May 08, 2007 11:58 AM
**To:**    Colquhoun, Charles
**Subject:** RE: Guy Carpenter

Dear Mr Colquhoun

I refer to your email of this afternoon. I am responding to put the record straight on the matters which you raise in your email. It was agreed in our conversation on Saturday evening that I would revert to you by email in the event I obtained instructions from Mr Samengo-Turner to accept service of proceedings. As I made clear during our conversation I did not then have instructions to accept service and as I confirmed this morning I remain in that position.

I would add to this that it emerged during our conversation on Saturday evening that before speaking to me on Saturday you had already spoken directly to Mr Samengo-Turner regarding service, conduct which I consider to be totally improper given that you know my firm is acting for him and my firm has been in correspondence with your firm on this matter. I would refer you to Solicitor's Conduct Rule 19 in this respect.

Yours sincerely
Kate Payne


-----Original Message-----
**From:** Colquhoun, Charles [mailto:Charles.Colquhoun@herbertsmith.com]
**Sent:** 08 May 2007 15:33
**To:** Kate Payne
**Cc:** BROWN, ANDREW
**Subject:** RE: Guy Carpenter

Dear Ms Payne

I refer to our telephone discussion on Saturday evening, my email of Sunday (sent at 2.37 pm), my telephone message of Sunday evening and my telephone message of this morning.

Despite your statement on Saturday evening that you would respond to me by email as to whether you had instructions to accept service and my numerous messages, you did not do so until this morning (after Mr Samengo-Turner's departure from the UK on Monday morning).

Further, during both the process server's and my discussions with Mr Samengo-Turner on Saturday evening, he confirmed that his solicitors would accept service on his behalf. He also provided me with your name and confirmed that the relevant documents should be sent to you (although he requested that we also send him a copy of the documents by email). I therefore sought confirmation from you directly that you were indeed instructed to accept service but when we spoke, you said that you had not heard from your clients and so needed to speak to them to take their instructions.

In the circumstances, it is surprising that Mr Samengo-Turner appears to have changed his mind about whether you can accept service on his behalf. Please specifically confirm that Mr Samengo-Turner has instructed you not to accept service.

5/10/2007

Guy Carpenter                                                            Page 2 of 3

Please also confirm the current whereabouts of Mssrs Samengo-Turner, Whyte and Hopkins.

We reserve the right to bring this email to the attention of the US Court.

Yours sincerely

Charles Colquhoun

Herbert Smith LLP

---

**From:** Kate Payne [mailto:Payne@Elbornes.com]
**Sent:** 08 May 2007 11:22
**To:** Colquhoun, Charles
**Subject:** RE: Guy Carpenter

Dear Mr Colquhoun

Please be advised that I do not have instructions to accept service on behalf of Mr
Samengo-Turner, Whyte and Hopkins.

Yours sincerely
Kate Payne

-----Original Message-----
**From:** Colquhoun, Charles [mailto:Charles.Colquhoun@herbertsmith.com]
**Sent:** 06 May 2007 14:37
**To:** Kate Payne
**Cc:** BROWN, ANDREW
**Subject:** Guy Carpenter

Dear Ms Payne

I refer to our telephone discussion yesterday evening.

We should be grateful if you could confirm as a matter of urgency whether you have instructions to
accept service on behalf of Mr Samengo-Turner. If you do not have instructions, we may have to take
steps to effect service on Mr Samengo-Turner by other means.

In due course, we should also be grateful if you could confirm if you have instructions from Mr Whyte
and Mr Hopkins.

Yours sincerely

Charles Colquhoun

Herbert Smith LLP

This message is confidential and may be covered by legal professional privilege. If
you have received this message in error please delete it and notify the sender
immediately by contacting our main switchboard +44 (0)20 7374 8000; you should
not retain the message or disclose its contents to anyone. Herbert Smith LLP may

5/10/2007

monitor e-mail communications in accordance with applicable law and regulations.

Herbert Smith LLP is a Limited Liability Partnership registered in England and Wales with registered number OC310989. It is regulated by the Law Society of England and Wales whose rules can be accessed via www.guide.lawsociety.org.uk. A list of the members and their professional qualifications is open to inspection at the registered office, Exchange House, Primrose Street, London EC2A 2HS. We use the word partner to refer to a member of Herbert Smith LLP, or an employee or consultant with equivalent standing and qualifications. Herbert Smith LLP's registration number for Value Added Tax in the United Kingdom is 243 3423 89.

Herbert Smith LLP, Gleiss Lutz and Stibbe are three independent firms which have a formal alliance. Further information is available from www.herbertsmith.com.

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

Click here to report this email as spam.

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

# EXHIBIT
# E

**Tamayo, Amparo**

| | |
|---|---|
| **From:** | Colquhoun, Charles [Charles.Colquhoun@herbertsmith.com] |
| **Sent:** | Tuesday, May 08, 2007 1:06 PM |
| **To:** | Kate Payne |
| **Cc:** | BROWN, ANDREW |
| **Subject:** | RE: Guy Carpenter |

Dear Ms Payne

For the record,  although I appreciate that Herbert Smith as a firm was aware that Elborne Mitchell was acting for Mr Samengo-Turner, I was not personally aware of that until Mr Samengo-Turner told the process server on Saturday that he was represented by solicitors and, at around the same time, I was told by Kramer Levin, Guy Carpenter's lawyers in New York, that Elborne Mitchell was the firm that was acting for him. However, Kramer Levin did not know the name of the particular solicitor at Elborne Mitchell who was involved.   Given the urgency of the matter and the need to speak to someone over the weekend, I then contacted Mr Samengo-Turner to find out from him who at Elborne Mitchell I should speak to so I could make contact with them. He told me that you were acting for him and so then I called you. I consider that was appropriate in the circumstances.

You say in your email that you remain in the same position that you were in on Saturday – ie you do not have instructions from Mr Samengo-Turner to accept service. However, I asked you in my earlier email today specifically to confirm whether Mr Samengo-Turner has instructed you not to accept service (which is a different thing altogether). It seems that is not the case from your email but I would be grateful if you would clarify the position.

Yours sincerely

Charles Colquhoun

Herbert Smith LLP

---

**From:** Kate Payne [mailto:Payne@Elbornes.com]
**Sent:** 08 May 2007 16:58
**To:** Colquhoun, Charles
**Subject:** RE: Guy Carpenter

Dear Mr Colquhoun

I refer to your email of this afternoon. I am responding to put the record straight on the matters which you raise in your email. It was agreed in our conversation on Saturday evening that I would revert to you by email in the event I obtained instructions from Mr Samengo-Turner to accept service of proceedings. As I made clear during our conversation I did not then have instructions to accept service and as I confirmed this morning I remain in that position.

I would add to this that it emerged during our conversation on Saturday evening that before speaking to me on Saturday you had already spoken directly to Mr Samengo-Turner regarding service, conduct which I consider to be totally improper given that you know my firm is acting for him and my firm has been in correspondence with your firm on this matter. I would refer you to Solicitor's Conduct Rule 19 in this respect.

Yours sincerely
Kate Payne

5/10/2007

Guy Carpenter                                                    Page 2 of 4

-----Original Message-----
**From:** Colquhoun, Charles [mailto:Charles.Colquhoun@herbertsmith.com]
**Sent:** 08 May 2007 15:33
**To:** Kate Payne
**Cc:** BROWN, ANDREW
**Subject:** RE: Guy Carpenter

Dear Ms Payne

I refer to our telephone discussion on Saturday evening, my email of Sunday (sent at 2.37 pm), my telephone message of Sunday evening and my telephone message of this morning.

Despite your statement on Saturday evening that you would respond to me by email as to whether you had instructions to accept service and my numerous messages, you did not do so until this morning (after Mr Samengo-Turner's departure from the UK on Monday morning).

Further, during both the process server's and my discussions with Mr Samengo-Turner on Saturday evening, he confirmed that his solicitors would accept service on his behalf. He also provided me with your name and confirmed that the relevant documents should be sent to you (although he requested that we also send him a copy of the documents by email). I therefore sought confirmation from you directly that you were indeed instructed to accept service but when we spoke, you said that you had not heard from your clients and so needed to speak to them to take their instructions.

In the circumstances, it is surprising that Mr Samengo-Turner appears to have changed his mind about whether you can accept service on his behalf. Please specifically confirm that Mr Samengo-Turner has instructed you not to accept service.

Please also confirm the current whereabouts of Mssrs Samengo-Turner, Whyte and Hopkins.

We reserve the right to bring this email to the attention of the US Court.

Yours sincerely

Charles Colquhoun

Herbert Smith LLP

---

**From:** Kate Payne [mailto:Payne@Elbornes.com]
**Sent:** 08 May 2007 11:22
**To:** Colquhoun, Charles
**Subject:** RE: Guy Carpenter

Dear Mr Colquhoun

Please be advised that I do not have instructions to accept service on behalf of Mr Samengo-Turner, Whyte and Hopkins.

Yours sincerely
Kate Payne

-----Original Message-----

5/10/2007

**From:** Colquhoun, Charles [mailto:Charles.Colquhoun@herbertsmith.com]
**Sent:** 06 May 2007 14:37
**To:** Kate Payne
**Cc:** BROWN, ANDREW
**Subject:** Guy Carpenter

Dear Ms Payne

I refer to our telephone discussion yesterday evening.

We should be grateful if you could confirm as a matter of urgency whether you have instructions to accept service on behalf of Mr Samengo-Turner. If you do not have instructions, we may have to take steps to effect service on Mr Samengo-Turner by other means.

In due course, we should also be grateful if you could confirm if you have instructions from Mr Whyte and Mr Hopkins.

Yours sincerely

Charles Colquhoun

Herbert Smith LLP

This message is confidential and may be covered by legal professional privilege. If you have received this message in error please delete it and notify the sender immediately by contacting our main switchboard +44 (0)20 7374 8000; you should not retain the message or disclose its contents to anyone. Herbert Smith LLP may monitor e-mail communications in accordance with applicable law and regulations.

Herbert Smith LLP is a Limited Liability Partnership registered in England and Wales with registered number OC310989. It is regulated by the Law Society of England and Wales whose rules can be accessed via www.guide.lawsociety.org.uk. A list of the members and their professional qualifications is open to inspection at the registered office, Exchange House, Primrose Street, London EC2A 2HS. We use the word partner to refer to a member of Herbert Smith LLP, or an employee or consultant with equivalent standing and qualifications. Herbert Smith LLP's registration number for Value Added Tax in the United Kingdom is 243 3423 89.

Herbert Smith LLP, Gleiss Lutz and Stibbe are three independent firms which have a formal alliance. Further information is available from www.herbertsmith.com.

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

Click here to report this email as spam.

5/10/2007

Guy Carpenter                                          Page 4 of 4

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

This e-mail has been scanned for viruses by MessageLabs.
For further information visit http://www.messagelabs.com

# EXHIBIT
# 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

GUY CARPENTER & COMPANY, LLC and MARSH &     :
McLENNAN COMPANIES, INC.,
                                             :     Index No. 07 Civ. 3580
                                             :
                    Plaintiffs,              :
                                             :
             v.                              :     Affidavit of Service
                                             :
JULIAN SAMENGO-TURNER, RON WHYTE, and        :
MARCUS HOPKINS,                              :
                                             :
                    Defendants.

—————————————————————— x

STATE OF NEW YORK)
                              ) ss:
COUNTY OF NEW YORK            )

        Marissa J. Krukowski, being duly sworn, deposes and says that she is employed by the law

firm of Kramer Levin Naftalis & Frankel LLP, is over the age of eighteen years and is not a party to this

action.

        On May 11, 2007, deponent served by International Certified Mail Return Receipt Requested

a true copy of the **Complaint, Rule 7.1 Statement, Civil Cover Sheet,** and **Summons in a Civil Case,** all

dated May 4, 2007, and copies of **Judge Fox's Individual Practice Rules, Judge Cote's Individual Practice**

**Rules, Procedures for Electronic Case Filing, Guidelines for Electronic Case Filing, Instructions for**

**Electronic Case Filing,** upon the following:

Julian Samengo-Turner
17 Kyrler Road
London, England SW11 6BD

Marcus Hopkins
1 Belmont Road
London, England SW4 0Bz

by depositing a true copy of same, securely enclosed in a properly addressed, postpaid wrapper, in an official

depository of the United States Post Office within the State of New York.

                                         _____
                                            Marissa J. Krukowski

Sworn to before me this
17th day of May 2007

_____

Notary Public

CLARA M. PIZZARELLO
NOTARY PUBLIC, State of New York
No. 01PI5072845
Qualified in New York County
Commission Expires Feb. 10, 20_11_

# EXHIBIT
# 3

| Registered No. | | | | Date Stamp |
|---|---|---|---|---|
| Reg. Fee | RA250 8920 | | | |
| | $7.90 | Return Receipt | $1.85 | 0032 |
| Handling Charge | $0.00 | | | 12 |
| Postage | | Restricted Delivery | $0.00 | 05/11/07 |
| | $11.60 | | | |
| Received by | | | | Domestic Insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse). |
| Customer Must Declare Full Value $ $0.00 | | ☐ With Postal Insurance ☐ Without Postal Insurance | | |

**To Be Completed By Post Office**

## OFFICIAL USE

**To Be Completed By Customer (Please Print) All Entries Must Be In Ballpoint or Typed**

FROM
1 7005 ROBERT HOLTZMAN
KRAMER LEVIN NAFTALIS; FRAKR
1177 AVE OF AMERICAS
NY, NY 10036

TO
MARCUS HOPKINS
GB Great Britain and Northern Ireland
1 BELMONT ROAD
LONDON ENGLAND
SW4 082

PS Form **3806,**   **Receipt for Registered Mail**   Copy 1 - Customer
May 2004 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at *www.usps.com* ®

# EXHIBIT
# 4

IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION
BEFORE THE SENIOR MASTER

IN THE MATTER OF CIVIL PROCEEDINGS BEFORE THE UNITED
STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK

**BETWEEN**

**(1) GUY CARPENTER & COMPANY LLC
(2) MARSH & MCLENNAN COMPANIES, INC.**

**Plaintiffs**

-and-

**(1) JULIAN SAMENGO-TURNER
(2) RON WHYTE
(3) MARCUS HOPKINS**

**Defendants**

---

### AFFIDAVIT OF ELIZABETH MARIA SARAH SCHMITZ

I, ELIZABETH MARIA SARAH SCHMITZ, of ASH Enforcement Services, 60
Commerce House, High Street, Sutton Coldfield, B72 1AB, Process Server MAKE
OATH AND SAY AS FOLLOWS:-

1. That I did on Friday 8 June 2007 at 19.00 hours attend at 1 Belmont Road,
   London, SW4 0BZ. At the time of knocking the front door I noted an adult
   figure walk into one of the back rooms to the property. From another room an
   adult female came to the door, who I believe to be the wife of the Third
   Defendant, Marcus Hopkins. She was accompanied by a young female child,
   of around three years of age. I did ask said adult female if Marcus Hopkins
   was available, to which she replied he was out. The young girl turned to the
   adult female and said 'He's here…. Marcus Hopkins…daddy'. She was
   quickly shushed by the adult female, who then tried to distract the girl's
   attention.

2. I believe from my enquiries at the property at this time that Marcus Hopkins
   was inside the property and purposely evading service. When further
   questioned the adult female did not further deny Marcus Hopkins presence,
   but stated that she would not be accepting the papers.

SWORN at 405/7 Holloway Road Highbury
In the County of Greater London        )
England, this 24 day of   June   2007)

Before me,



P. Bak

A Notary Public

PETER HEYWOOD BAKER
NOTARY PUBLIC
405/7 HOLLOWAY ROAD
LONDON N7 6HG

42 June

E. Schmitz

# EXHIBIT
# 5

IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION
BEFORE THE SENIOR MASTER

IN THE MATTER OF CIVIL PROCEEDINGS BEFORE THE UNITED
STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK

BETWEEN

(1) GUY CARPENTER & COMPANY LLC
(2) MARSH & MCLENNAN COMPANIES, INC.

**Plaintiffs**

-and-

(1) JULIAN SAMENGO-TURNER
(2) RON WHYTE
(3) MARCUS HOPKINS

**Defendants**

## AFFIDAVIT OF SERVICE OF JORGE SALGADO-REYES

I, JORGE SALGADO-REYES, of ASH Enforcement Services, 60 Commerce House,
High Street, Sutton Coldfield, B72 1AB, Process Server MAKE OATH AND SAY
AS FOLLOWS:-

1. Based on the information made available to me by Elizabeth Schmitz, and
contained in her Affidavit, I attended the premises at 1 Belmont Road,
London, SW4 0BZ on Friday 8 June 2007 at 20.15 hours with the intention to
serve Marcus Hopkins, Third Defendant with the following documents:-
    a. Summons addressed to the Defendants
    b. Complaint with Exhibits A-1
    c. A Civil Cover Sheet
    d. A Statement pursuant to Rule 7.1 of the Federal Rules of Civil
    Procedure
    e. The Individual Practice Rules for Judge Fox
    f. The Individual Practice Rules for Judge Cote
    g. Instructions for Filing an Electronic Case or Appeal in the United
    States District Court, District of Southern New York
    h. Procedures for Electronic Case Filing in the United States District
    Court, District of Southern New York
    i. Guidelines for Electronic Filing in the United States District Court,
    District of Southern New York



I met with an adult female at the property, believed by me to be the Third Defendant's wife. I did at this time effect service of said documentation upon the adult female at the property. She refused to take the documents from me, therefore I did place them on the floor at her feet and advise her that the documents had been served.

2. That I did return to said address on Saturday 9 June 2007 at 09.40 hours whereby I did effect letterbox service of said documents by placing them within a sealed envelope marked 'Personal & Confidential' for the Third Defendant's attention, ensuring there was no return address or other information on the envelope. That I did at this time knock the door of said address in an attempt to effect personal service upon Marcus Hopkins, Third Defendant, and I did at this time obtain no response.

3. That I did again attend at said address on Saturday 9 June 2007 at 14.45 hours, and was again unable to obtain any response from the address.

4. That I did on Tuesday 12 June 2007 send to Marcus Hopkins at 1 Belmont Road, London, SW4 0BZ a full set of documents by first class pre-paid post, in an envelope bearing the words 'Personal & Confidential', together with his full name and address details and no other information..

5. Exhibited to this Affidavit and marked 'JS1' are the documents which I served on the Third Defendant.

SWORN at                                        )
In the County of                                )
England, this        day of              2007)

Before me,

                    HANS JOSEPH HARTWIG
                    NOTARY PUBLIC LONDON
                    PHONE  00442086812893
                    FAX    00442086818183

A Notary Public



HARTWIG (LONDON)
4 DINGWALL ROAD
CROYDON CR9 3RS
ENGLAND

# EXHIBIT
# 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

GUY CARPENTER & COMPANY, LLC and MARSH & :
McLENNAN COMPANIES, INC.,                :
                                         :
                    Plaintiffs,          :      Index No. 07 Civ. 3580
                                         :
              v.                         :      Affidavit of Service
                                         :
JULIAN SAMENGO-TURNER, RON WHYTE, and    :
MARCUS HOPKINS,                          :
                                         :
                    Defendants.          :

——————————————————————— x

STATE OF NEW YORK)
                 ) ss:
COUNTY OF NEW YORK)

Marissa J. Krukowski, being duly sworn, deposes and says that she is employed by the law firm of Kramer Levin Naftalis & Frankel LLP, is over the age of eighteen years and is not a party to this action.

On May 11, 2007, deponent served by International Certified Mail Return Receipt Requested a true copy of the **Complaint, Rule 7.1 Statement, Civil Cover Sheet,** and **Summons in a Civil Case,** all dated May 4, 2007, and copies of **Judge Fox's Individual Practice Rules, Judge Cote's Individual Practice Rules, Procedures for Electronic Case Filing, Guidelines for Electronic Case Filing, Instructions for Electronic Case Filing**, upon the following:

Julian Samengo-Turner
17 Kyrler Road
London, England SW11 6BD

Marcus Hopkins
1 Belmont Road
London, England SW4 0Bz

by depositing a true copy of same, securely enclosed in a properly addressed, postpaid wrapper, in an official depository of the United States Post Office within the State of New York.

_____
Marissa J. Krukowski

Sworn to before me this
17th day of May 2007

_____
Notary Public

CLARA M. PIZZARELLO
NOTARY PUBLIC, State of New York
No. 01PI5072845
Qualified in New York County
Commission Expires Feb. 10, 20 11

# EXHIBIT
# 7



**Registered No.** RA25090919US

| | |
|---|---|
| Reg. Fee | $7.90 |
| Handling Charge | $0.00 |
| Postage | $11.60 |

| | |
|---|---|
| Return Receipt | $1.85 |
| Restricted Delivery | $0.00 |

Date Stamp

0032
12
05/11/07

Received by

Customer Must Declare Full Value $ $0.00

☐ With Postal Insurance
☐ Without Postal Insurance

Domestic Insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

To Be Completed By Post Office

**OFFICIAL USE**

To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed

FROM
10036
ROBERT HOLTZMAN
KRAMER LEVIN NAFTALIS&FRANKEL u
1177 AVE OF AMERICA
N Y NY 10005

TO
~~Of Great Britain and Northern Ireland~~ SAN LORENZO-TURNER
17 KYRLE ROAD
LONDON, ENGLAND
SW11 6BD

PS Form **3806**, **Receipt for Registered Mail**      Copy 1 - Customer
May 2004 (7530-02-000-9051)                    (See Information on Reverse)
For domestic delivery information, visit our website at **www.usps.com** ®

# EXHIBIT
# 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

GUY CARPENTER & COMPANY, LLC and MARSH &  :
McLENNAN COMPANIES, INC.,

                                    :   Index No. 07 Civ. 3580

                Plaintiffs,        :

                                      :

                v.             :   <u>Affidavit of Service</u>

                                      :

JULIAN SAMENGO-TURNER, RON WHYTE, and  :
MARCUS HOPKINS,

                                      :

                   Defendants.      :

——————————————————————— x

STATE OF NEW YORK)

                  ) ss:

COUNTY OF NEW YORK   )

        Marissa J. Krukowski, being duly sworn, deposes and says that she is employed by the law firm of Kramer Levin Naftalis & Frankel LLP, is over the age of eighteen years and is not a party to this action.

        On June 7, 2007, deponent served by International Certified Mail Return Receipt Requested a true copy of the **Complaint, Rule 7.1 Statement, Civil Cover Sheet,** and **Summons in a Civil Case,** all dated May 4, 2007, and copies of **Judge Fox's Individual Practice Rules, Judge Cote's Individual Practice Rules, Procedures for Electronic Case Filing, Guidelines for Electronic Case Filing, Instructions for Electronic Case Filing,** upon the following:

Julian Samengo-Turner
49, Prince of Wales Mansions
Prince of Wales Drive
London, England SW11 4BH

by depositing a true copy of same, securely enclosed in a properly addressed, postpaid wrapper, in an official depository of the United States Post Office within the State of New York.

                                        _____

                                        Marissa J. Krukowski

Sworn to before me this
7th day of June 2007

_____

        Notary Public

CLARA M. PIZZARELLO
NOTARY PUBLIC, State of New York
No. 01PI5072845
Qualified in New York County
Commission Expires Feb. 10, 20__

KL4 2189346.1

# EXHIBIT
# 9



Registered No.
RA750877721US

| | Reg. Fee | $10.15 | | | Date Stamp |
|---|---|---|---|---|---|
| To Be Completed By Post Office | Handling Charge | $0.00 | Return Receipt | $2.15 | 0032 |
| | Postage | $13.60 | Restricted Delivery | $0.00 | 12 |
| | Received by | | | | 06/07/07 |

Customer Must Declare
Full Value $0.00

☐ With Postal Insurance
☐ Without Postal Insurance

Domestic Insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

## OFFICIAL USE

To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed

FROM
ELIZABETH HOLTZMAN / MARISSA RIBISONO
KRAMER LEVIN
1177 AVE OF AMERICAS
NY, NY, 10036

TO
Great Britain and Northern Ireland
SANTA 2260 - TURNER
HIS ROYAL HIGHNESS WALES MANSIONS
PRINCE OF WALES DRIVE
LONDON ENGLAND SW11 4EH

PS Form 3806, Receipt for Registered Mail    Copy 1 - Customer
May 2004 (7530-02-000-9051)    (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

# EXHIBIT
# 10



**Claim Form**
(CPR Part 8)

NOT FOR SERVICE OUT
OF THE JURISDICTION

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**
**ROYAL COURTS OF JUSTICE**

| | for court use only |
|---|---|
| Claim No. | 2007 Folio 945 |
| Issue Date | 29/5/07 |



**Claimant(s)**

(1) Julian Samengo-Turner, 49 Prince of Wales Mansions, Prince of Wales Drive, SW11 4BH.

(2) Ronald Dennis Whyte, 193 Worlds End Lane, Chelsfield, Kent, BR6 6AT.

(3) Marcus Hopkins, 1 Belmont Road, London, SW4 0BZ.

**Defendant(s)**

(1) Marsh Services Limited (formerly Marsh Corporate Services Limited and prior to that J&H Marsh & McLennan (Services) Limited) Company No 03053552 of 1 Tower Place West, Tower Place, London EC3R 5BU.

(2) Guy Carpenter & Company LLC: a company incorporated in Delaware with principal place of business at One Madison Avenue, New York, New York 10010.

(3) Marsh & McLennan Companies Inc: a company incorporated in Delaware with principal place of business at 1166 Avenue of the Americas, New York, New York 10036.

| Does or will your claim include any issues under the Human Rights Act 1998 | Yes |  |
|---|---|---|

Name and address of Defendant receiving this claim form
See Addendum

| Court fee | 400.00 |
|---|---|
| Solicitor's costs | |

The court office at the Admiralty and Commercial Registry, Royal Courts of Justice, Strand, London WC2A 2LL is open between 10am and 4.30pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

N208(CC) Claim form (CPR Part 8) (03.02)                                    Laserform International 3/02

| Claim No. | |
|---|---|

## Details of claim

The Claimants' claims are for:

1. A Declaration that any claims against them by any of the Defendants arising out of or connected with their employment by the same and/or arising out of and/or connected with the following written contracts:

a. between the First Claimant and the First Defendant dated 17 November 1997, as amended from time to time;

b. between the Second Claimant and the First Defendant dated 19 December 1999, as amended from time to time;

c. between the Third Claimant and the First Defendant dated 10 April 2000, as amended from time to time;

d. between the First Claimant and the Third Defendant, together with such others on behalf of whom it purported to contract, signed by the First Claimant on 16 November 2005;

e. between the Second Claimant and the Third Defendant, together with such others on behalf of whom it purported to contract, signed by the Second Claimant on 16 November 2005;

f. between the Third Claimant and Third Defendant, together with such others on behalf of whom it purported to contract, signed by the Third Claimant on 16 November 2005;

(contracts (d) to (f) being collectively referred to as the "Bonus Contracts")

are:

i. Subject to the exclusive jurisdiction of the Courts of England and Wales pursuant to Section 5 of Council Regulation (EC) 44/2001; and/or

ii. Subject to an exclusive alternatively non-exclusive jurisdiction clause in favour of the jurisdiction of the Courts of England and Wales contained in and/or evidenced by the Bonus Contracts;

and/or

2. A declaration that the jurisdiction clause(s) in the Bonus Contracts purporting to confer jurisdiction on the County of New York, USA is/are invalid pursuant to Section 5 of Council Regulation (EC) 44/2001;

and/or

3. A permanent worldwide anti-suit injunction restraining each and any of the Defendants from the commencement, prosecution and/or continuance of proceedings arising out of or connected with the employment of the Claimants by the Defendants and/or arising out of or connected with any of the contracts listed in paragraph 1 above anywhere other than the jurisdiction of England and Wales, including in particular the proceedings commenced by the Second and Third Defendants against the Claimants in the United States District Court Southern District of New York (Index Number 07 Civ 3580);

on the grounds more particularly set out in the First Witness Statement of Katharine Clare Payne, a copy of which is filed herewith and the contents of which may be deemed incorporated herein.

| Claim No. | |
|---|---|

**Statement of Truth**

*(I believe) (The Claimant believes) that the facts stated in this claim form are true.

*I am duly authorised by the claimant to sign this statement

Full name  KATHARINE  CLARE  PAYNE

Name of *(claimant) ('s solicitor's firm)

ELBORNE  MITCHELL  SOLICITORS

signed _____    position or office held  PARTNER

*(Claimant) ('s solicitor)    (if signing on behalf of firm, company or

*delete as appropriate    corporation)

Elborne Mitchell
One America Square
Crosswall
London
EC3N 2PR

1063    London City
020 7320 9111

Ref: KCP/RHJ/rh/30947

**Addendum**

Name and Address of Defendant receiving this claim form:

Marsh Services Limited
1 Tower Place West
Tower Place
London
EC3R 5BU

Guy Carpenter & Company LLC
One Madison Avenue
New York
New York 10010

Marsh & McLennan Companies Inc
1166 Avenue of the Americas
New York
New York 10036

# EXHIBIT
# 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____ x

GUY CARPENTER & COMPANY, LLC and MARSH & :
McLENNAN COMPANIES, INC.,                              :
                                                                          :        Index No. 07 Civ. 3580
                                    Plaintiffs,                   :
                                                                          :
                    v.                                                :        Affidavit of Service
                                                                          :
JULIAN SAMENGO-TURNER, RON WHYTE, and   :
MARCUS HOPKINS,                                          :
                                                                          :
                                    Defendants.                :
_____ x


STATE OF NEW YORK )
                                       ) ss:
COUNTY OF NEW YORK )


          Laurie Baldinger, being duly sworn, deposes and says that she is employed by the law firm of

Kramer Levin Naftalis & Frankel LLP, is over the age of eighteen years and is not a party to this action.

          On June 11, 2007, deponent served by International Certified Mail Return Receipt Requested

a true copy of the **Complaint, Rule 7.1 Statement, Civil Cover Sheet,** and **Summons in a Civil Case,** all

dated May 4, 2007, and copies of **Judge Fox's Individual Practice Rules, Judge Cote's Individual Practice**

**Rules, Procedures for Electronic Case Filing, Guidelines for Electronic Case Filing, Instructions for**

**Electronic Case Filing,** upon the following:

Julian Samengo-Turner
B76 Albion Riverside
8 Hester Road
London
SW11 4AP
England

by depositing a true copy of same, securely enclosed in a properly addressed, postpaid wrapper, in an official

depository of the United States Post Office within the State of New York.

                                                            _Laurie Baldinger_
                                                            Laurie Baldinger

Sworn to before me this
11th day of June 2007

_____
          Notary Public

SANTO ANTHONY CIPOLLA
NOTARY PUBLIC, State of New York
No. 01CI4899756
Qualified in Nassau County
Commission Expires July 6, 2009

KL3 2597945.1

# EXHIBIT
# 12

**Registered No.** RA405971269US

**Date Stamp**

| | |
|---|---|
| Reg. Fee | $10.15 |
| Handling Charge | $0.00 |
| Postage | $13.60 |

| | |
|---|---|
| Return Receipt | $2.15 |
| Restricted Delivery | $0.00 |

06/11/07

Received by

Customer Must Declare
Full Value $ $0.00

☐ With Postal Insurance
☐ Without Postal Insurance

Domestic insurance up to
$25,000 is included in the fee.
International indemnity
is limited.
(See Reverse).

*To Be Completed By Post Office*

OFFICIAL USE

*To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed*

FROM
Robert Holtzman
Kramer Levin Naftalis & Frankel
1177 Ave of America
New York, NY 10036 U.S.A.

TO
GB Great Britain and Northern Ireland
B 76 Albion Riverside 8 Hester Rd.
London England SW11 4AP

PS Form **3806**, **Receipt for Registered Mail**    Copy 1 - Customer
May 2004 (7530-02-000-9051)    (See Information on Reverse)
For domestic delivery information, visit our website at *www.usps.com* ®

24

# EXHIBIT
# 13

<u>Claim No. Folio</u>

**IN THE HIGH COURT OF JUSTICE**

**QUEEN'S BENCH DIVISION**

**COMMERCIAL COURT**

**B E T W E E N :**

(1) JULIAN SAMENGO-TURNER

(2) RONALD DENNIS WHYTE

(3) MARCUS HOPKINS

Claimants

-and-

(1) MARSH SERVICES LIMITED

(Formerly MARSH CORPORATE SERVICES LIMITED

and prior to that J&H MARSH & MCLENNAN (SERVICES) LIMITED)

(2) GUY CARPENTER & COMPANY LCC

(3) MARSH & MCLENNAN COMPANIES INC

Defendants

------------------------------------------------------------------------

SKELETON ARGUMENT ON BEHALF OF CLAIMANTS

Application for interim anti-suit injunction

------------------------------------------------------------------------

*Suggested reading and reading time* : In addition to this skeleton argument, the Court is invited to read the First Witness statement of Katharine Payne if there is time [tab 3]. It is estimated that in total about 45 minutes to 1 hour pre-reading time is required.

References below are [tab/page]

**Synopsis**

1.      This action is a CPR Part 8 Claim, issued on 29 May 2007 [tab 1]. The First

1

Witness Statement of Katharine Payne has been filed in support of it [tab 3]. In it the Claimants claim declaratory and injunctive relief. In short, the Claimants say that, in their capacity as employees of the Defendants, any proceedings against them arising out of that employment must be litigated in this jurisdiction pursuant to section 5 of Council Regulation (EC) 44/2001 ("the Regulation"). Relief is sought in the Claim Form to compel the Defendants to so proceed.

2.   The Defendants' London solicitors, Messrs. Herbert Smith, stated in correspondence on 25 May 2007 with the Claimants' London solicitors, Messrs. Elborne Mitchell, that they had instructions to accept service of the Part 8 Claim for all Defendants [tab 7] and service on all Defendants has been effected at their offices. Acknowlegdements of service have yet to be filed.

3.   On 4 May 2007 the Second and Third Defendants, which are US companies, commenced proceedings against the Claimants arising out of their employment in United States District Court Southern District of New York (Index number 07 Civ 3580) ("the US Proceedings" – [4/101-113]). To date, only the Second Claimant has been served with those proceedings. On 18 May 2007 an order was obtained in the US Proceedings requiring all the Claimants (including the two who have yet to be served) to give disclosure and answer interrogatories by 1 June 2007 and to attend for depositions in London in the period 4 to 8 June 2007, in being in MMC and Guy Carpenter's election to put that back to the week commencing 11 June 2007. The Claimants say that the US Proceedings have been commenced in breach of their entitlement to be sued in this jurisdiction. A challenge to the jurisdiction of the New York Court is on foot in the US Proceedings but the timetable for hearing it presently in place will result in it being heard after the time for compliance with the order of 18 May 2007 has passed.

4.   In correspondence between the London solicitors an undertaking has been sought that the Defendants will not take any substantive steps in the US

form of undertaking the Claimants were willing to sign [4/99-100]. To date, they have not been taken up on that offer. The Claimants remain willing to sign such an undertaking.

**The US Proceedings**

*The Complaint*

34.    Guy Carpenter and MMC are the Plaintiffs in the US Proceedings, commenced without any prior notice on 4 May 2007. In the Complaint the relief claimed is (a) damages for breach of the Bonus Contracts, particularised as the return of sums paid under the Bonus Contracts and (b) an injunction compelling compliance with the Co-operation clause by way of requiring answers to questions to be provided [Complaint para 3 : 4/102].

35.    The Complaint contains these passages:

*"Introduction*

1    *This is an action for breach of contract arising out of the defendants' participation in the [Plan] and their respective violations of the terms and conditions of the [Bonus Contracts]. Under the express terms of the Agreements, defendants are each required to cooperate with Marsh or any of its subsidiaries or affiliates, including Guy Carpenter, and specifically to "provide to the Company such information relating to [their] work for the Company or [their] other commercial activities as the Company may from time to time reasonably request in order for the Company to determine whether [they] are in compliance with [their] obligations under [the Plan]. Having received from Guy Carpenter written, reasonable requests for information in accordance with this provision, defendants have refused to cooperate. Not only are such refusals unambiguous breaches of defendants contractual obligations to provide such cooperation, but they are a blatant and unlawful attempt to prevent plaintiffs from determining whether defendants are in compliance with other terms of the [Bonus Contracts.] Specifically, plaintiffs have reason to believe that defendant, directly and/or in concert with other individuals at their announced next employer, are and have been targeting, soliciting and recruiting numerous Guy Carpenter employees to terminate their employment with Guy Carpenter to join Integro Insurance Brokers. Any such activities constitute separate violations of the [Bonus Contracts.]*

2    *Further, under the express terms of the [Bonus Contracts], Defendants*

are not permitted to engage in Detrimental Activity, which includes employment with or otherwise being interested in a competitor of plaintiffs. Defendants engaged in Detrimental Activity and breached their [Bonus Contracts] by accepting employment with or otherwise becoming interested in Integro Insurance Brokers on or before April 5, 2007. Under the [Bonus Contracts], defendants therefore are required to return compensation they received pursuant to the Plan within one year prior to their engaging in such Detrimental Activity. Despite proper written demand, they have failed to do so.

...

Defendants' Employment With Plaintiffs

11    Samengo-Turner's employment with Guy Carpenter commenced on or about September 23, 1991. On or about April 3, 2007 Samengo-Turner gave notice to Guy Carpenter of his resignation of employment. At the time such notice was given, Samengo-Turner co-led Guy Carpenter's global facultative reinsurance business unit, doing business under the trademark GCFac.

12    Whyte's employment with Guy Carpenter commenced on or about September 20, 1988. On or about April 3, 2007 Samengo-Turner gave notice to Guy Carpenter of his resignation of employment. At the time such notice was given, Whyte co-led Guy Carpenter's global facultative reinsurance business unit, doing business under the trademark GCFac.

13    Hopkins's employment with Guy Carpenter commenced on or about April 10, 2000. On or about April 3, 2007 Hopkins gave notice to Guy Carpenter of his resignation of employment. At the time such notice was given, Hopkins was head of Guy Carpenter's UK facultative reinsurance operation.

14    Defendants' employment with Guy Carpenter was, and continues to be, governed by their respective employment agreements with plaintiffs.

15    Under the terms of their respective employment agreements with plaintiffs, defendants are currently in six(6) month "notice periods" meaning they remain employed by plaintiffs and continue to receive compensation from plaintiffs. As current employees, defendants also continue to have fiduciary and related duties and obligations to plaintiffs that are associated with such employment.

16    In addition, by the terms of their respective employment agreements with plaintiffs, defendants are not permitted for specific periods of time during and after their notice period to solicit, entice, induce or encourage any of plaintiffs' employees to leave plaintiffs and join a company that competes with plaintiffs."

36.    It is apparent, therefore, that both MMC and Guy Carpenter are suing the

Claimants in the US Proceedings on the basis that the Claimants are employed by them and in that capacity owe MMC and Guy Carpenter duties qua employer.

37.    The Bonus Contracts do not impose an express obligation on the Claimants not to engage in Detrimental Activity. Rather, the Bonus Contracts provide that if the Claimants engage in Detrimental Activity, then the sums paid under the Bonus Contracts may be clawed back. However, it is apparent from the Complaint that MMC and Guy Carpenter are relying on the Bonus Contracts as imposing an express obligation on the Claimants not to engage in Detrimental Activity and are claiming that it is a breach of Bonus Contracts for them to do so.

38.    In this way, MMC and Guy Carpenter are relying on the definition of Detrimental Activity in Schedule IID in the Bonus Contracts as imposing on the Claimants both pre and post termination obligations, as well as relying on the restrictive covenants expressly set out in Scheduled IID and the Claimants' general duties as employees [Complaint para 28 : 4/107].

39.    Although, therefore, the claims in the US Proceedings are framed as arising under the Co-Operation Clause (which does not appear in Schedule IID), the underlying obligations in respect of which co-operation is sought all appear in Schedule IID to the Bonus Contracts. The "co-operation" sought is in the form of an investigation into whether the Claimants have complied with the obligations appearing in Schedule IID. That is, the US Proceedings have as their object an investigation into whether the Claimants have complied with obligations which are expressly subject to English law and jurisdiction.

*The disclosure order of 18 May 2007*

40.    MMC and Guy Carpenter made their application for expedited disclosure, oral and written, and interrogatories on 15 May 2007 [Interrogatories : [4/221-224]; written disclosure request : [4/214-219]; oral disclosure (deposition) request :

[4/226-230]. In respect of the depositions, an order was asked for that the Claimants attend in New York to be deposed.

41.   In their Memorandum of Law in support of that application MMC and Guy Carpenter continue to rely on their status as the Claimants' employer. The Memorandum of Law contains these passages:

*"Preliminary Statement*
*Defendants are senior facultative reinsurance brokers who recently announced their resignation from Guy carpenter and have accepted employment with Integro Insurance Brokers ("Integro"), a direct competitor of Guy Carpenter. During the course of their employment with Guy Carpenter, defendants agreed that during and for a specified time after their employment with Guy Carpenter they would not recruit, solicit or otherwise encourage plaintiffs' employees from terminating their employment with plaintiffs to join a competitor. Despite these explicit obligations, in the weeks following defendants' announcements of their resignations from Guy Carpenter, four other very experienced Guy Carpenter facultative reinsurance brokers who worked in Guy Carpenter's UK office and reported directly or indirectly to defendants announced that they would be leaving Guy Carpenter to join Integro. ....*
*The rapid rate at which Guy Carpenter facultative brokers in the UK office are announcing their resignations, joining Integro, or are otherwise being aggressively solicited to join Integro caused Guy Carpenter to have serious concerns - and doubts - as to whether defendants are complying with their covenants not to solicit such employees. Accordingly, plaintiffs requested that defendants provide information regarding, among other things, their recruitment by Integro and discussions they have had with other Guy Carpenter employees since they decided to leave Guy Carpenter. Defendants, who remain Guy Carpenter employees for the next six months pursuant to the notice period in their employment contracts, are contractually obligated to provide such information, having executed agreements with MMC and Guy Carpenter in connection with their participation in [the Plan] in which they agreed to do so. ...*

*...*
*Argument*

*...*

*By contrast, expedited discovery poses no material hardship for the defendants. First, defendants are currently in their six month notice periods, and, as such, remain Guy Carpenter employees and continue to receive their full salaries from Guy Carpenter. They have also asserted - in claimed compliance with their notice obligations - that they are not yet reporting to work at Integro. Thus, the requested discovery does not - and cannot - interfere with any work obligation they have. Defendants have no obligations*

*whatsoever during the normal workday except to provide such information. Defendants also have a panoply of obligations to their employer, Guy Carpenter, including the obligation to make themselves available during business hours to provide important information. It surely cannot be a meaningful burden for defendants to set out what they have been doing during recent months while they have been Guy Carpenter employees."*

42.    The disclosure application was supported by the declaration of Lynsey Mansfield, head of international HR at Guy Carpenter [4/232-238]. That declaration includes these passages:

"8    *Defendants' employment with Guy Carpenter was, and continues to be, governed by employment agreements between each defendant and Guy Carpenter. Attached to this declaration as Exhibits A-C ... are the defendants respective employment agreements with applicable amendments thereto.*

9    *By the terms of their respective employment agreements, defendants are required to provide six (6) months notice of termination, meaning that they remain employed by Guy Carpenter, continue to receive their full salaries and continue to have all the fiduciary and related duties and obligations to the plaintiffs that are associated with such employment. (Exhibits A-C). Given that they gave notice on April 3, 2007, their six month notice periods will not expire until October 2007."*

43.    Exhibits A to C to Ms Mansfield's Declaration are the UK Contracts.

44.    The papers filed for MMC and Guy Carpenter in the US Proceedings make no attempt to analyse how the UK Contracts and Bonus Contracts fit together, or as to how either MMC or Guy Carpenter might be described as their employer, or as to how Guy Carpenter (which is a named party to neither) derives any rights under either contract. Indeed, there is no reference to MSL anywhere in the papers filed for MMC and Guy Carpenter in the US Proceedings. However, what is clear is that MMC and Guy Carpenter rely on both the UK Contracts and Bonus Contracts as suits them and rely on both as being contracts of employment, giving rise to duties on the part of the Claimants qua employees, both express (in Schedule IID) and implied.

45.    Moreover, the Claimants obligation to provide their services to Guy Carpenter

during business hours was specifically relied on in support of the application for an order that the Claimants makes themselves available in New York to be deposed. That is, Guy Carpenter was demanding that the Claimants fulfill their duties as its employees by making themselves available for the work required of them.

46.    As is the case with the relief claimed in the Complaint, it is apparent that what MMC and Guy Carpenter are seeking to investigate by way of expedited disclosure is compliance with obligations which arise under Schedule IID.

47.    An appearance was entered for Mr Whyte only (being the only Claimant as yet to be served with the US Proceedings) in response to the application for expedited disclosure [4/239-257]. That appearance was to the effect that the New York Court should decline jurisdiction and that the jurisdictional challenge should be heard before any order for disclosure was considered.

48.    The Judge made the order in substantially the terms it was sought against all three Claimants. That (a) two of the three Claimants have yet to be served with proceedings, (b) that none of them are presently in the jurisdiction of New York and (c) a jurisdictional challenge had been indicated were evidently not regarded as reasons to refuse the application. Directions have also been given for hearing Mr Whyte's jurisdictional challenge which will result in it being heard some time after 15 June 2007, ie after the time for compliance with the order of 18 May 2007.

49.    Such procedural avenues as are available to him are being pursued for Mr Whyte in the US Proceedings but there is no guarantee that they will come to fruition before the time for compliance with the order of 18 May 2007 has passed.

50.    This places the Claimants in a difficult position. They do not wish to flout an order of the New York Court. However, if they comply they run the risk that

they will be found to have submitted to the jurisdiction, which they do not wish to do. There is also the risk that the substantive relief sought in these proceedings will be rendered nugatory, at least in part, because the one of the principle objects of the US Proceedings will have been fulfilled and the Claimants will have been subject to a procedure (oral disclosure) which is itself one of the grounds on which an injunction is sought. Hence, this application is being made urgently.

**The Regulation**

51.    The primary way in which the Claimants put their case is that, pursuant to the Regulation, they have an inviolate right to be sued in all matters relating to their employment in this jurisdiction, being the place of their employ. In essence, the Claimants say that the effect of the Regulation is to create a statutory right to the effect that claims by employers must be brought against them in the place of their domicile, which cannot be contracted out of and which the Court is obliged to enforce. Looking at it another way, the effect of the Regulation is to write into every contract of employment for an English employee an exclusive jurisdiction clause in favour of this jurisdiction which the Court can and, arguably, must enforce.

52.    The outline of the argument, developed below, is:

a.    Each of the Defendants stands in the position of the Claimants' employer, their UK Contracts and Bonus Contracts together making up the totality of the terms of the Claimants' employment. Indeed, Guy Carpenter and MMC are expressly suing on that basis in the US Proceedings and are seeking to enforce obligations which are characteristic only of an employer/employee relationship.

b.    The claims being brought in the US Proceedings are "*matters relating to individual contracts of employment*" within the meaning of Art 18(1) of the Regulation.

# EXHIBIT
# 14

Go to the Service Section

(In the relations between the Contracting States, this Convention replaces
the first chapter of the Convention on civil procedure of 1 March 1954)

CONVENTION ON THE SERVICE ABROAD
OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS
IN CIVIL OR COMMERCIAL MATTERS

*(Concluded 15 November 1965)*
*(Entered into force 10 February 1969)*

The States signatory to the present Convention,
Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall
be brought to the notice of the addressee in sufficient time,
Desiring to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting
the procedure,
Have resolved to conclude a Convention to this effect and have agreed upon the following provisions:

*Article 1*
The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to
transmit a judicial or extrajudicial document for service abroad.
This Convention shall not apply where the address of the person to be served with the document is not known.

CHAPTER I – JUDICIAL DOCUMENTS
*Article 2*
Each Contracting State shall designate a Central Authority which will undertake to receive requests for service
coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.
Each State shall organise the Central Authority in conformity with its own law.

*Article 3*
The authority or judicial officer competent under the law of the State in which the documents originate shall
forward to the Central Authority of the State addressed a request conforming to the model annexed to the present
Convention, without any requirement of legalisation or other equivalent formality.
The document to be served or a copy thereof shall be annexed to the request. The request and the document shall
both be furnished in duplicate.

*Article 4*
If the Central Authority considers that the request does not comply with the provisions of the present Convention

it shall promptly inform the applicant and specify its objections to the request.

*Article 5*
The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –
*a)* by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
*b)* by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.
Subject to sub-paragraph *(b)* of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily.
If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.
That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

*Article 6*
The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.
The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.
The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities.
The certificate shall be forwarded directly to the applicant.

*Article 7*
The standard terms in the model annexed to the present Convention shall in all cases be written either in French or in English. They may also be written in the official language, or in one of the official languages, of the State in which the documents originate.
The corresponding blanks shall be completed either in the language of the State addressed or in French or in English.

*Article 8*
Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.
Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

*Article 9*
Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose.
Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

*Article 10*
Provided the State of destination does not object, the present Convention shall not interfere with –
*a)* the freedom to send judicial documents, by postal channels, directly to persons abroad,
*b)* the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of

judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

*c)* the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

## *Article 11*

The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

## *Article 12*

The service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed.

The applicant shall pay or reimburse the costs occasioned by-

*a)* the employment of a judicial officer or of a person competent under the law of the State of destination,

*b)* the use of a particular method of service.

## *Article 13*

Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security.

It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.

The Central Authority shall, in case of refusal, promptly inform the applicant and state the reasons for the refusal.

## *Article 14*

Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels.

## *Article 15*

Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that —

*a)* the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

*b)* the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,

and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled-

*a)* the document was transmitted by one of the methods provided for in this Convention,

*b)* a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

*c)* no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

*Article 16*

When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled –

*a)* the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and

*b)* the defendant has disclosed a *prima facie* defence to the action on the merits.

An application for relief may be filed only within a reasonable time after the defendant has knowledge of the judgment.

Each Contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which shall in no case be less than one year following the date of the judgment.

This Article shall not apply to judgments concerning status or capacity of persons.

## CHAPTER II – EXTRAJUDICIAL DOCUMENTS

*Article 17*

Extrajudicial documents emanating from authorities and judicial officers of a Contracting State may be transmitted for the purpose of service in another Contracting State by the methods and under the provisions of the present Convention.

## CHAPTER III – GENERAL CLAUSES

*Article 18*

Each Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence.

The applicant shall, however, in all cases, have the right to address a request directly to the Central Authority.

Federal States shall be free to designate more than one Central Authority.

*Article 19*

To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

*Article 20*

The present Convention shall not prevent an agreement between any two or more Contracting States to dispense with –

*a)* the necessity for duplicate copies of transmitted documents as required by the second paragraph of Article 3,

*b)* the language requirements of the third paragraph of Article 5 and Article 7,

*c)* the provisions of the fourth paragraph of Article 5,

*d)* the provisions of the second paragraph of Article 12.

*Article 21*

Each Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following –

*a)* the designation of authorities, pursuant to Articles 2 and 18,

*b)* the designation of the authority competent to complete the certificate pursuant to Article 6,

*c)* the designation of the authority competent to receive documents transmitted by consular channels, pursuant to Article 9.

Each Contracting State shall similarly inform the Ministry, where appropriate, of –
*a)* opposition to the use of methods of transmission pursuant to Articles 8 and 10,
*b)* declarations pursuant to the second paragraph of Article 15 and the third paragraph of Article 16,
*c)* all modifications of the above designations, oppositions and declarations.

*Article 22*
Where Parties to the present Convention are also Parties to one or both of the Conventions on civil procedure signed at The Hague on 17th July 1905, and on 1st March 1954, this Convention shall replace as between them Articles 1 to 7 of the earlier Conventions.

*Article 23*
The present Convention shall not affect the application of Article 23 of the Convention on civil procedure signed at The Hague on 17th July 1905, or of Article 24 of the Convention on civil procedure signed at The Hague on 1st March 1954.
These Articles shall, however, apply only if methods of communication, identical to those provided for in these Conventions, are used.

*Article 24*
Supplementary agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention, unless the Parties have otherwise agreed.

*Article 25*
Without prejudice to the provisions of Articles 22 and 24, the present Convention shall not derogate from Conventions containing provisions on the matters governed by this Convention to which the Contracting States are, or shall become, Parties.

*Article 26*
The present Convention shall be open for signature by the States represented at the Tenth Session of the Hague Conference on Private International Law.
It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

*Article 27*
The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 26.
The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

*Article 28*
Any State not represented at the Tenth Session of the Hague Conference on Private International Law may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 27. The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.
The Convention shall enter into force for such a State in the absence of any objection from a State, which has ratified the Convention before such deposit, notified to the Ministry of Foreign Affairs of the Netherlands within a period of six months after the date on which the said Ministry has notified it of such accession.
In the absence of any such objection, the Convention shall enter into force for the acceding State on the first day of the month following the expiration of the last of the periods referred to in the preceding paragraph.

*Article 29*

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands. The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification referred to in the preceding paragraph.

*Article 30*

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 27, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

*Article 31*

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 26, and to the States which have acceded in accordance with Article 28, of the following –

*a)* the signatures and ratifications referred to in Article 26;

*b)* the date on which the present Convention enters into force in accordance with the first paragraph of Article 27;

*c)* the accessions referred to in Article 28 and the dates on which they take effect;

*d)* the extensions referred to in Article 29 and the dates on which they take effect;

*e)* the designations, oppositions and declarations referred to in Article 21;

*f)* the denunciations referred to in the third paragraph of Article 30.

In witness whereof the undersigned, being duly authorised thereto, have signed the present Convention.

Done at The Hague, on the 15th day of November, 1965, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic channel, to each of the States represented at the Tenth Session of the Hague Conference on Private International Law.

N.B. On 25 October 1980 the Fourteenth Session adopted a Recommendation *on information to accompany judicial and extrajudicial documents to be sent or served abroad in civil or commercial matters (Actes et documents de la Quatorzième session (1980)*, Tome I, *Matières diverses*, p. I-67; *idem*, Tome IV, *Entraide judiciaire*, p. 339; *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters).*

ANNEX TO THE CONVENTION

Active Model Forms (Request, Certificate, Summary)

# EXHIBIT
# 15

DISCLAIMER: THE INFORMATION IN THIS CIRCULAR IS PROVIDED FOR GENERAL INFORMATION ONLY AND MAY NOT BE TOTALLY ACCURATE IN A SPECIFIC CASE. QUESTIONS INVOLVING INTERPRETATION OF SPECIFIC FOREIGN LAWS SHOULD BE ADDRESSED TO THE APPROPRIATE FOREIGN AUTHORITIES OR FOREIGN COUNSEL.

The following is taken in large part from the U.K. Evidence Act of 1975 (Proceeding in Other Jurisdictions) and U.K. Orders 39 and 70 of Rules of the Supreme Court (RSC). For procedures to follow in Scotland see part IV.

## I. SERVICE OF PROCESS

### A. CIVIL CASES

### 1. PERSONAL SERVICE

Law, Regulations & Public Policy

Information for Americans Abroad

Consular Notification and Access

Citizenship and Nationality

Legal and Public Policy Information

Law Enforcement Issues

The U.K. and the U.S. are parties to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, 28 U.S.C.A Appendix following Rule 4, F.R.CV.P.; VII Martindale Hubbell Law Directory, Volum VII (Selected International Conventions); 20 U.S.T. 361; T.I.A.S. 6638.

To obtain personal service in the U.K. under the Convention, the documents to be served should be appended to the Convention request form (See form following the Convention text). A preprinted request form is available from the U.S. Marshals Service. Ask for form No. USM 94. The British Central Authorities require that the court in the United States be the applicant for service under the Convention. Therefore, the court must be shown as the applicant and the requesting authority of the USM 94 and the clerk of court must sign the form. There is no fee required. Ser form and documents (in duplicate) to the appropriate central authority:

*Central authority for England and Wales*

Senior Master of the Supreme Court
Queen''s Bench Division
Royal Courts of Justice
Strand London WC2A 2LL, England, U.K.

*Central Authority for Scotland*

By a Note of 21 March 2000, the British Government notified that, with effect from 1 April 2000, the designated authority for Scotland will be:

The Scottish Executive Justice Department
Civil Justice and International Division
Hayweight House
23 Lauriston Street
Edinburgh, EH3 9DQ
Telephone: +44.131.221.6815
Fax: +44.131.221.6894

*Central Authority for Northern Ireland*

By a Note of 10 June 1980, the British Government notified that instead of the Registrar of the Supreme Court of Northern Ireland, designated in 1967 as the additional authority for Northern Ireland in conformity with Article 18 of the

cases. (22 U.F.R. 92.00) However, the U.K. allows service of process by agent through solicitors and process servers. For more information and a list of process servers, please see the U.S. Embassy in London 's website at http://london.usembassy.gov/cons_new/acs/uk/process-uk.html .

## 2. SERVICE BY MAIL

The U.K. has not declared that it objects to Article 10(a) of the Hague Service Convention. Therefore, service by international registered mail is permitted.

## B. CRIMINAL CASES

## 1. PERSONAL SERVICE

American Consular Officers will serve criminal subpoenas issued by Federal Courts only on American citizens. (22 CFR 92.85-92)

Otherwise, essentially the same options exist for personal service in criminal cases in civil cases. However, because the aforementioned Hague Convention does not cover criminal cases, the Request form may not be used. Replace it with a letter rogatory (For a form and explanation, see Moore"s Federal Practice 28.05) Also, as no Convention covers criminal service requests, a deposit made payable to the American Embassy London for $32.00 must be submitted with the letter rogatory. T letter rogatory, check and documents to be served should be sent to CA/OCS/CCS/EUR (See I.A. for address). That office will transmit the documents through the diplomatic channel to the person authorized to serve them under British law.

As in civil cases, British solicitors may serve process in criminal cases. CA/OCS/ACS/WE maintains a list of British solicitors.

## 2. SERVICE BY MAIL

The U.K. permits service by international registered mail in criminal cases.

## II. OBTAINING EVIDENCE

## A. CIVIL CASES

## 1. VOLUNTARY WITNESSES

Attorneys from abroad are allowed to depose anyone in the U.K. provided they are willing witnesses. No commission from a court is necessary. The American Embass in London or the consulates in Belfast or Edinburgh (See III) can render assistance contracting with local stenographers. Attorneys should not bring court reporters or stenographers with them from the U.S. as the U.K. requires they have work permits U.K. solicitors may also be retained to take voluntary depositions.

## 2. COMPULSION

When compulsion is needed to take testimony, two options exist in the U.K.

## a. HAGUE EVIDENCE CONVENTION

The U.S. and the U.K. are both parties to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, 28 U.S.C.A. 1781 (1979

The request can also ask for permission for the American attorney to ask questions the witness.

It is at the discretion of the individual court whether to allow this. Each country which is party to the Convention had the opportunity to make reservations and declaration regarding the applicability of each article of the Convention to their country.

The U.K. has made a reservation regarding the pretrial discovery of documents. All the reservations can be found at the end of the Convention with the Central Authori information. The letter of request must be signed by the judge and sent to the appropriate central authority:

*Central Authority for England and Wales*

Foreign and Commonwealth Office
Clive House Petty France
London SW1, England, U.K.

*Central Authority for Scotland*

Crown Agent for Scotland
Lord Advocate"s Department
Crown Office
5/7 Regent Road
Edinburgh EH7 5BL Scotland, U.K.

*Central Authority for Northern Ireland*

The Registrar of the Supreme Court For Northern Ireland

**b. Alternative**

Foreign counsel may hire a British solicitor as his agent. In that case the solicitor should be sent the letter of request directly and may then apply for a commission fr the British court to take the testimony of the witness.

**B. CRIMINAL CASES**

**1. VOLUNTARY WITNESSES**

American attorneys may take voluntary witness depositions in criminal cases. If the assistance of the U.S. Embassy is required in connection with the taking of a deposition you should contact the American Citizen Services Unit of the Consular Section in London at 44-71-499-9000 or by FAX at 44-71-495-5012.

**2. COMPULSION**

When compulsion is needed in a criminal case, evidence must be obtained pursuar to the letter rogatory procedure. (See 28 u.s.c. 1781(a)(2); 28 U.S.C. 1696; Rule 28 (b) Fed. R.Civ.P.; Rule 4(i)(1)(B) FRCivP; 4 J. Moore, Moore"s Federal Practice 28.05) The letter rogatory procedure tends to be lengthy.

**III. SCOTLAND**

**A. SERVICE OF PROCESS**

Attorneys or any other individuals authorized by U.S. courts to administer oaths may take depositions in Scotland in civil cases. Voluntary depositions by American attorneys in criminal cases require the approval of the U.K. government. If you plan conduct a deposition in a criminal case, please telephone the Department of State, CA/OCS/ACS/WE at (202) 647-6178.

## 2. INVOLUNTARY WITNESS

The most common method for obtaining evidence in civil cases in Scotland by compulsion is The Hague Evidence Convention. (See page 3) Evidence in criminal cases is usually obtained by the letter rogatory procedure.

Alternatively, whenever a witness must be compelled to testify or the case is criminal a Scottish solicitor could be asked could be asked to present a petition to the Inner Court of the Court of Session. If a criminal proceeding is involved, the American cou must assure in writing that it is not of a political nature. Usually the Scottish court wi authorize the petitioning solicitor to take the requested evidence.

## IV. AMERICAN POSTS IN THE U.K.

*ENGLAND AND WALES*

American Embassy London
24/31 Grosvenor Sq., W1A 1AE
London

Telephone (31)556-8315

*SCOTLAND*

American Consulate General
3 Regent Terrace
Edinburgh EH7 5BW, Scotland

Telephone (71)499-9000

*NORTHERN IRELAND*

American Consulate General
14 Queen Street
Belfast BT1 6EQ, N. Ireland
Telephone (232)328-239

Return to Judicial Assistance Page

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,

Plaintiffs,

- against -

JULIAN SAMENGO-TURNER, RON WHYTE, and
MARCUS HOPKINS,

Defendants.

## DECLARATION OF
## ROBERT N. HOLTZMAN

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
*Attorneys for Plaintiffs Guy Carpenter & Company, Inc. and*
*Marsh & McLennan Companies, Inc.*

1177 Avenue of the Americas  New York, New York  10036
(212) 715-9100

*All communications should be referred to:*
Barry H. Berke
Robert N. Holtzman
Steven M. Knecht