# EXHIBIT 18-1

IN THE ROYAL COURTS OF JUSTICE

QUEEN'S BENCH DIVISION

Case No.   2007945

Strand
London
WC2A 2LL

Wednesday 6 June 2007

before

MR JUSTICE STEEL

JULIAN SAMENGO TURNER, RON WHYTE AND MARCUS HOPKINS

- v -

MARSH SERVICES & OTHERS

Transcribed from the official Tape Recording
Harry Counsell & Co
Clifford's Inn, Fetter Lane, London EC4A 1LD
Tel: +44 (0)20 7269 0370

MR MURRAY ROSEN QC and MR LENNON appeared on behalf of the Defendants.
MS CLAIRE BLANCHARD appeared on behalf of the Claimants.

----------

PROCEEDINGS

----------

1    MS BLANCHARD:  My Lord, I am here for the Claimants in this matter.  My learned

2        friends Mr Rosen and Mr Lennon are here for the Defendants.   Your Lordship is

3        concerned first of all with my clients' application for an interim anti-suit injunction

4        to restrain proceedings in New York.

5            As I hope your Lordship has seen from the papers, the Defendants last week

6        gave undertakings not to prosecute those proceedings but those undertakings expire

7        at 4.30 today and, that being the case, what we invite your Lordship to do is to hear

8        argument on my clients' application and decide it before 4.30 if that is something

9        that your Lordship can do.

10   MR JUSTICE STEEL:  I might; I might not.  I do not know.  What is the estimate for this

11        hearing?

12   MS BLANCHARD:  My Lord, my estimate for my application was in the order of a day.

13   MR JUSTICE STEEL:  Is the other application fixed for the same day?

14   MS BLANCHARD:  It is fixed to be heard that it will be heard if time permits and it may

15        be that time will not permit.

16   MR ROSEN:  My Lord, for our part we would be very grateful if your Lordship would

17        determine my learned friend's application first.

18   MR JUSTICE STEEL:  You want the anti-suit injunction claim determined first?

19   MR ROSEN:  Before your Lordship comes to our cross-application because ----

20   MR JUSTICE STEEL:  We are not going to get to your cross-application, are we?  It seems

21        to be common ground.  That is all we have time for anyway.

22   MS BLANCHARD:  My Lord, I suspect that is probably right.

23   MR JUSTICE STEEL:  I must tell you that some material has been coming in this

24        morning.  I have been doing something else this morning.  I have not had an

25        opportunity of reading the further skeleton of the Defendants and I have certainly

26        not read the further statement from Miss Payne.

1    MS BLANCHARD:  I will take your Lordship to the pertinent part of Payne three that your

2    Lordship needs to see for the purposes of my submissions.  Time being short, my

3    Lord, I propose just to get on with it.

4        My clients put their case in three primary ways.  First of all, they say that the

5    New York proceedings are caught by the judgments regulation, if I can call it that,

6    and that an anti-suit injunction should be granted to enforce my clients' mandatory,

7    statutory rights that they are entitled to be sued here on matters relating to their

8    employment.

9        Our case will be that what we have called the UK contracts and the bonus

10    contracts together make up my clients' contracts of employment and as such we

11    must be sued on them here.

12        The secondary way that we put the case is that even if we are not within the

13    regulation nonetheless your Lordship should grant an anti-suit injunction anyway

14    because the New York proceedings are otherwise vexatious, oppressive or

15    unconscionable.

16        Lastly, my Lord, we say as a backstop that there is an  English law and

17    jurisdiction clause in the bonus contracts that your Lordship should enforce by way

18    of anti-suit injunction.  I should say straight away that the primary way we put our

19    case is that all your Lordship needs to do is to look at the way that the case is put in

20    New York in order to determine whether or not MMC and Guy Carpenter, the two

21    companies that are the US plaintiffs, are suing us as employers and in our capacity

22    as employees.

23        My Lord, I would like to show your Lordship in brief some of the

24    underlying material.  If your Lordship has the hearing bundle, bundle A, tab four,

25    this is the exhibit to Miss Payne's first witness statement.  If your Lordship could

26    turn please, first of all, to page 21 what your Lordship has here is the UK contract

1    for Mr Samengo Turner and it is this contract the Defendants say is Mr Samengo

2    Turner's contract of employment.  Your Lordship sees it says:

3    "We are pleased to be able to detail the following terms and conditions of

4    employment which come into effect on 1 January."

5    Under "Appointment" your Lordship will see your employer, JH Marsh and

6    McLellan Services Limited, and where there is a term "group" it means Marsh and

7    McLellan Companies Inc.  JH Marsh and McLellan Services Limited is the former

8    name of the first Defendant in this action that we have abbreviated to MSL.

9         If your Lordship goes forwards to page 25, your Lordship will see there a

10   notice provision, a provision for confidential information and copyright.  The detail

11   is not important for the moment.  Over the page on 26 there is a disclosure

12   obligation relating to the non-disclosure of confidential information and under

13   "Competing Business" there is a provision not to compete whilst an employee and

14   the post-contractual provision not to engage in solicitation of clients or employees

15   once the employment contract has come to an end.

16        If your Lordship then goes forwards to page 47, your Lordship will see in

17   January last year there was an amendment to the UK contract to introduce a

18   different remuneration and some new restrictive covenants.  Those start on page 48.

19   The detail is not important beyond that your Lordship notes that they are for 12

20   months and that they do not themselves specifically contain an obligation not to

21   compete following termination of employment.

22        My Lord, the other Claimants' UK contracts of employment are in

23   materially the same terms save that in the case of Mr Whyte his post-contractual

24   restrictive covenants are only for six months and not 12.  I will just show your

25   Lordship one passage in Mr Hopkins's contract on page 68.  Your Lordship sees

26   there under "Appointment":

1   "Your appointment will be as a senior vice-president, grade 16, in the facultative broker

2      practice, Guy Carpenter and Company Limited."

3   It goes on to say:

4   "Your employer will be Marsh Corporate Services Limited", which is the first Defendant in

5      these proceedings.  Those, my Lord, are what we have called the UK contracts and

6      those are the contracts that the Defendants say are the Claimants' contracts of

7      employment, which brings us to the bonus agreements.  They are all in the same

8      terms, save as to the sums awarded under them.  We can pick it up on page 115.

9      Your Lordship sees there that it is called the Marsh and McLellan Company's 2000

10     senior executive stock award plan, terms and conditions as of 1 November, Guy

11     Carpenter special long term incentive grant.  Half-way through the preamble:

12  "In recognition of your potential for future contributions to the success of MMC, this

13     award is intended to strengthen mutuality of interest between you and MMC's

14     shareholders and to serve as an appropriate additional incentive to remain with

15     MMC or any of its subsidiaries or affiliates, collectively the company."

16  Your Lordship sees there at 1(a) "Award Vesting":

17  "Subject to your continued employment and to any performance adjustments …"

18  It goes on to provide that the award is vested in stages.  At two:

19  "If MMC management determines Guy Carpenter's performance target for that fiscal year

20     has been met or exceeded, there might be an increase."

21  On 116, I think we can take it from (c) and your Lordship sees there a provision for

22     cancellation and rescission of the award.  There is a definition there of something

23     called detrimental activity.

24  "For the purposes of this agreement except to the extent that schedule 2(d) is applicable to

25     you …"

26  Pausing there, schedule 2(d) is the schedule that is specifically referable to UK employees

4

1    and therefore the definition there governs detrimental activity means, first of all,

2    rendering of services that compete with the company, disclosure of information ----

3  MR JUSTICE STEEL:  I am sorry, you have lost me.  For the purposes of the agreement

4    except to the extent that schedule 2(d) is applicable to you and therefore the

5    definition there governs.  You say schedule 2(d) applies to UK employees and

6    therefore we should be looking at the definition there, should we, or have I misread

7    it?

8  MS BLANCHARD:  No, my Lord.  That is what we say.  There is an issue of construction

9    as between the Claimants and the Defendants.  The way the case is put in the US

10    proceedings and the way that we put it is that your Lordship is concerned only with

11    schedule 2(d) because my clients work in the UK.  What the Defendants say is that

12    schedule 2(d) does not come into play until my clients' employment has terminated

13    which will not happen until October of this year, so there is an issue there.

14    ©(1)(a), my Lord, rendering of competitive services; (c) an activity that results or if

15    known could result in termination of your employment or misappropriation of

16    assets of the company, wilful misconduct and determination of your duties, until a

17    violation of a written code of conduct is applicable to you, breach of fiduciary duty

18    or breach of trust, conviction of a felony and so on.  There are then provisions at (d)

19    and (e) for diverting and soliciting.  (f):

20  "Attempting to recruit or solicit or aid in the recruitment or solicitation of employees of the

21    company who reported to you directly or indirectly to terminate his or her

22    employment with the company for the purposes of working with a competitor."

23  Then, breach of your obligations at 2(a), (b), (c) or if applicable to (d).  (a) is notice, my

24    Lord.  (b) is a non-solicit provision and (c) is a confidentiality provision.  Your

25    Lordship sees there at two cancellation and rescission.

26  "If you engage in detrimental activity during the rescission period ..." it goes on to provide

1 that they can claw the award back. Two matters arise out of that. The rescission

2 period is fixed by reference to when we received an award under the plan and not

3 by reference to when our employment terminates. Our last awards were received in

4 January of this year so the rescission period will run until January 2008.

5   The second point that arises out of this is that there is another issue of construction

6 between the parties in that we say the bonus contracts do not impose an obligation

7 on the Claimants not to engage in detrimental activity. What they do is say that if

8 we do engage in detrimental activity there is a right to claw back sums paid under

9 the bonus contract. The Defendants put the case rather higher than that. They say

10 there is an implied obligation not to engage in detrimental activity for the rescission

11 period.

12   My Lord, on 118 at © it says:

13 "Provisions of section 1©2(a) shall not apply following the termination of your

14   employment."

15 MR JUSTICE STEEL:  It follows, does it, that so long as you tender the bonus back or do

16   not take it you can misappropriate as many assets of the company as you like?

17 MS BLANCHARD:   No, my Lord, that would not be right because if we were

18   misappropriating assets we would of course be in breach of our duties of fidelity

19   which we accept are binding on us.

20 MR JUSTICE STEEL:  That is a detrimental activity, a breach of fiduciary duty, as well. It

21   is slightly surprising, is it not, that the detrimental activity deprives you of the

22   entitlement to your bonus but, on the other hand, you are perfectly entitled to act in

23   a detrimental manner as defined?

24 MS BLANCHARD:  It is not surprising when the bonus contracts are marrying the UK

25   contracts which of course impose upon us specific obligations as regards what we

26   can do while we are employed and what we can and cannot do after we are

1    employed.    The reason why it matters, my Lord, is the way that the case is put in

2    America which we will get to in a moment.    What is said is that in breach of the

3    bonus contracts we have engaged in detrimental activity and, for that reason,

4    various heads of relief are sought.

5  MR JUSTICE STEEL:  That is the nature of the claim in the States.

6  MS BLANCHARD:  The nature of the claim in the States, my Lord, is that ----

7  MR JUSTICE STEEL:  I am sorry; I thought that is what you were explaining.  The way in

8    which the case is put in the States is that they have embarked on detrimental activity

9    and that itself constitutes a breach of the bonus scheme.  Therefore they are liable.

10  MS BLANCHARD:   They are putting it that way, my Lord.   They are also saying that

11    because we have an obligation not to engage in detrimental activity they can enforce

12    what is called the cooperation clause to find out whether we are doing it.  I was

13    going to take your Lordship to the complaint when we finish looking at the bonus

14    contract.

15    I was on 118, heading two, "The Covenants".  Your Lordship sees there at (a):

16  "You agree that at any time hereafter while you remain employed by the company you will

17    provide 60 days' written notice."

18  At 2(b):

19  "Throughout the notice period the company shall have the obligation to pay your base

20    salary at normal pay intervals and shall continue to provide the benefits to you on

21    the same basis as other employees."

22  2(b) does not apply to us because we are UK.  At 2(a)(iii):

23  "You will remain obligated to perform any or all of your regular job duties requested of

24    you by the company during the notice period.  Moreover, throughout this notice

25    period, unless shortened by the company pursuant to section 2(a)(ii)(b) you will

26    remain an employee of the company with all attendant fiduciary duties including

1    without limitation your duties of loyalty and confidentiality to the company."

2    MR JUSTICE STEEL:  The company for this purpose is the entirety of the group, is it?

3    MS BLANCHARD:  Yes, my Lord.  That is what the bonus agreement says.

4    MR JUSTICE STEEL:  On your case, they are an employee of every single company in the

5        group, are they?

6    MS BLANCHARD:  My Lord, we are being sued in America on the basis that MMC and

7        GC can claim pursuant to the bonus agreements that we work for them.

8    MR JUSTICE STEEL:  I will come to the American proceedings but I wanted to know

9        your position.  By virtue of this agreement your clients are employed by every

10       single company in the group?

11   MS BLANCHARD:  If one reads it literally, that is what the bonus agreement says.

12   MR JUSTICE STEEL:  If you do not read it literally, what does it mean?

13   MS BLANCHARD:  My Lord, if one was not to read it literally, one would have to adopt a

14       more restrictive construction of what is meant by "company" in the context of this

15       agreement.  If one were to do that, the US proceedings would not get off the

16       ground.

17   MR JUSTICE STEEL:  We will come to that.  If the effect of this is that the obligation to

18       continue your regular job duties, as requested of you by MSL, then you say that

19       undermines the entirety of the American proceedings, or have I misunderstood?

20   MS BLANCHARD:  No, my Lord.  What we are saying is that in the American

21       proceedings MMC and Guy Carpenter are saying, because of the provisions of the

22       bonus contract, they can require us as employees to render them services as

23       employees and, for that reason, they can require us ----

24   MR JUSTICE STEEL:  I understand.  You are saying if either they are employees of Guy

25       Carpenter or if they are not the claim will not work?

26   MS BLANCHARD:  Yes, my Lord.  I was on 119 and I just wanted to show your Lordship

1    confidentiality.

2    "Without prejudice to any other duties or obligations you owe to the company, whether

3        stated in this agreement or otherwise, you will acknowledge you are subject to an

4        ongoing duty of confidentiality to the company."

5    At (d):

6    "Notice of non-solicitation provisions applicable to employees working in the UK.  In

7        terms of the attached schedule (d) it shall apply if and only if notice of termination

8        of your employment with the company or termination of your employment is at a

9        time when your principal place of employment with the company is the United

10       Kingdom as defined in schedule 2(d), the remaining terms of this agreement shall

11       continue in effect when schedule 2(d) is applicable except to the extent that those

12       terms are inconsistent with 2(d)."

13   Then, the cooperation clause:

14   "You agree both during and after your employment with the company ..."

15   MR JUSTICE STEEL:  This is 2(d), is it?

16   MS BLANCHARD:  No, my Lord.  This is (e).  We have not got to schedule 2(d) yet.

17   MR JUSTICE STEEL:  I am so sorry.  You are quite right.  I misread that.

18   MS BLANCHARD:  Cooperation:

19   "You agree both during and after your employment with the company, regardless of the

20       reason for your termination, you will provide the company with such information

21       relating to your work or the company or other commercial activities as the company

22       may from time to time reasonably request to determine whether you are in

23       compliance with your obligations under this agreement."

24   That is one of the specific provisions that is sued on in New York and we will get to that in

25       a moment.  A (g), "Non-exclusivity of rights":

26   "Neither you nor the company intends to waive or release applicability of any other

9

1  employment duties or obligations you or the company may owe to each other now

2  or hereafter."

3  On 121, there is a provision for termination of employment:

4  "If your employment with the company terminates ...".

5  Above the heading "Change in Control Provisions":

6  "For the purposes of this agreement your employment will be treated as terminated when

7  you are no longer employed by MMC or any affiliate or subsidiary of MMC."

8  My Lord, on 123, at (g):

9  "This award does not give you any right to continue to be employed by the company for

10  any specific duration."

11  At 124 your Lordship sees at (n) and (o) the New York law jurisdiction clause on which my

12  learned friends rely.

13  MR JUSTICE STEEL:  How is "award" defined?

14  MS BLANCHARD:  The award is what we have called "the bonus" and it is defined in the

15  first line of the bonus contract on page 115.

16  MR JUSTICE STEEL:  Where is it defined?

17  MS BLANCHARD:  At the beginning of the preamble, my Lord.

18  MR JUSTICE STEEL:  Thank you.

19  MS BLANCHARD:  I was then going to show your Lordship schedule 2(d) which starts on

20  page 128, which describes itself as applying if, and only if, your employment with

21  the company terminates at a time when your principal place of employment with the

22  company at that time is the UK a UK employee.  It goes on at two to provide:

23  "Following the termination of your employment the definition of detrimental activity set

24  out in this schedule shall apply in place of the definition in the main body.  The

25  rescission period remains as set out in the agreement."

26  It goes on to give a definition of detrimental activity including non-competition at (iv),

1   soliciting employees and any act or omission by you, at (vi), that could result in the

2   termination of your employment.  At three is the notice period, second paragraph:

3   "During the notice period the company will not be under any obligation to provide you

4   with any work although the company may require you to work."

5   There is then a general, non-solicitation provision.  At 130, it says in the middle paragraph:

6   "It is expressly agreed your obligations under clauses two and four are entirely free

7   standing and separate."

8   Two is detrimental activity, which is a mixture of pre and post-contractual obligations, and

9   four is the post-contractual restrictive covenant.

10  Then there is a section, "Definitions applying to this schedule".  At 131 at the

11  bottom:

12  "For the purposes of this schedule only the Company will be the company in the group

13  which is your employer."

14  There is not, in schedule 2(d), a definition of the Company so one is left with the general

15  definition that appears in the preamble that we looked at a few moments ago.  On

16  page 132 at (vi), your Lordship sees the English law and jurisdiction clause.  What

17  your Lordship has is a contract littered with references to employment which

18  imposes an obligation to provide services, contains restrictive covenants and

19  provides for payment in return for those services rendered.

20  That, my Lord,  brings us to the complaint in the US proceedings that your Lordship will

21  find starting on page ----

22  MR JUSTICE STEEL:  Can we just come back to the top of page 128?  Is this the focus of

23  the dispute as to when schedule 2(d) comes into effect?  "This schedule applies to

24  you if, and only if, your employment with the company terminates at a time when

25  your principal place of employment is the UK."

26  MS BLANCHARD:  That is right, my Lord.

1  MR JUSTICE STEEL:  You say "terminates" means what for this purpose?

2  MS BLANCHARD:  For these purposes it would mean notice of termination.

3  MR JUSTICE STEEL:  You would have to say that, would you not?

4  MS BLANCHARD:  We would have to say that, my Lord, but the issue only arises because

5      of the way the case is put in the US complaint and we will get to that in a moment. I

6      think it is also fair to say that the Defendants also rely on the opening words of (ii):

7      "Following the termination of your employment."   The definition in here will

8      govern.

9  MR JUSTICE STEEL:  Then you have submitted that, since the bonus agreement, if we

10      call it that, provided for the provision of services by the relevant individual and

11      imposed restrictive covenants and made provision for remuneration, it had the

12      criteria of an employment contract, if I understand you correctly?

13  MS BLANCHARD:  Yes, my Lord, and I am going to develop those submissions in a

14      moment.  That is broadly the thrust of it, yes.  That brings us, my Lord, to the

15      complaint which your Lordship will find starting on page 101.  Your Lordship sees

16      there the plaintiffs, Guy Carpenter and Company, LLC, referred to in the complaint

17      as Guy Carpenter.  That is Defendant two in these proceedings, and Marsh and

18      McLellan Companies, MMC.  That is Defendant three in these proceedings.

19      Your Lordship sees at the introduction:

20      "This is an action for breach of contract arising out of defendants' participation in

21      the Marsh and McLellan company's 2000 senior executive incentive stock award

22      plan and their respective violations of the terms and conditions of those

23      agreements."

24  There is a reference there to the cooperation clause.  Over the page at 102, picking it up

25      four lines down:

26  "Not only are such refusals unambiguous breaches of the Defendants' contractual

12

1   obligations to provide cooperation; they are a blatant and unlawful attempt to

2   prevent plaintiffs from determining whether defendants are in compliance with the

3   terms of the agreements.  Specifically, plaintiffs have reason to believe that

4   defendants, directly or in concert with other individuals of their announced next

5   employer, are and have been targeting, soliciting and recruiting numerous Guy

6   Carpenter employees to terminate their employment with Guy Carpenter to join

7   Integro Insurance Brokers.  Any such activities constitute separate violations of the

8   agreements."

9   At two:

10  "Pursuant to the express terms of the agreements the Defendants are not permitted to

11      engage in detrimental activity which includes employment or otherwise being

12      interested in a competitor of the plaintiffs."

13  My Lord, then I think we can pick it up on 104 under the heading "Defendants'

14      employment with plaintiffs."

15  MR ROSEN:  Just to avoid a waste of time later on for your Lordship, the whole of

16      paragraphs one to three are key and clause 10 at the top of page 104 as regards

17      venue under the exclusive jurisdiction clause of the plan.

18  MR JUSTICE STEEL:  I do not know what US Code 1391 says but paragraph six of the

19      agreements is the jurisdiction point.

20  MS BLANCHARD:  I was showing your Lordship on page 104 under the heading

21      "Defendants' employment with plaintiffs", an expression which your Lordship

22      might think is unambiguous, paragraph 11:

23  "Samengo Turner's employment with Guy Carpenter commenced on 23 September 1991."

24  At 12:

25  "Whyte's employment with Guy Carpenter commended in 1988."

26  At 13:

1   "Hopkins's employment commenced in April 2000."

2   14:

3   "Defendants' employment with Guy Carpenter was and continues to be governed by their

4        respective employment agreements with plaintiffs."

5   Pausing there, my Lord, it is apparent from other documents I am going to show you that

6        the employment agreements there referred to are in fact the UK contracts. What

7        your Lordship has here - and your Lordship will see it a bit further on in the

8        complaint – is a claim by MMC and Guy Carpenter to be entitled to enforce their

9        UK contracts. At 15, my Lord:

10   "Under the terms of the respective employment agreements with plaintiffs, Defendants are

11        currently in six month notice period, meaning they remain employed by the

12        plaintiffs and continue to receive compensation from the plaintiffs. As current

13        employees the Defendants also continue to have all the fiduciary and related duties

14        and obligations to plaintiffs associated with such employment."

15   16:

16   "In addition by the terms of their respective employment agreements with the plaintiffs, the

17        Defendants are not permitted for specific periods of time during and after their

18        notice period to solicit, entice, induce or encourage any of the plaintiffs' employees

19        to leave plaintiffs and to join a company that competes with plaintiffs."

20   At 17, my Lord:

21   "MMC offers various incentive compensation to its employees to strengthen the mutuality

22        of interest between MMC and its employees."

23   At 18:

24   "During the course of their employment with the plaintiffs, each of the Defendants

25        participated in the stock award plan."

26   At 19, the last sentence, you will see a reference to the definition of "company" that we

1  looked at in the bonus contracts.  Over the page on 106 at 23, there is a reference

2  there to the cooperation clause.  At  107:

3  "The definition of detrimental activity applicable to the plaintiffs is set forth in schedule

4  2D", so it is the plaintiffs' principal place of employment, the UK.

5  "According to schedule 2D detrimental activity includes enticing, inducing or encouraging

6  an employee."

7  At 28:

8  "In addition detrimental activity includes to any material extent undertaking, carrying on or

9  being employed, engaged or interested in any capacity in the supply and proposed

10  supply of competitive services."

11  MR JUSTICE STEEL:  In the American proceedings, it is part of the Claimants' case that

12  schedule 2D applies.

13  MS BLANCHARD:  Yes, my Lord.

14  MR JUSTICE STEEL:  Which contains the non-exclusive English jurisdiction clause.

15  MS BLANCHARD:  Yes, my Lord.

16  MR JUSTICE STEEL:  I understand what you call the thrust of your points in relation to

17  paragraphs 11 through 16 but what I call the significance of this plea, vis a vis the

18  claim that is being advanced in the United States, here as I think you say,

19  presumably by reference to the individual employment contracts we have been

20  looking at, the identity at the time when these people joined what they call Guy

21  Carpenter is identified and they continue to be employed for six months after

22  notice.  What relevance does that plea have to the way in which the claim is

23  advanced?  Why is that a necessary plea?

24  MS BLANCHARD:  My Lord, it arises in this way: your Lordship has seen that there is the

25  cooperation clause which prima facie obliges the UK Claimants to cooperate with

26  MMC and Guy Carpenter for these purposes, the company, to enable the company

1    to ascertain whether the Claimants, the employees, are in compliance with their

2    obligations under the bonus contracts.  In as much as the obligations imposed on

3    them under the bonus contracts are obligations of fidelity that otherwise arise by

4    reason of the Claimant being an employee, the company would not otherwise be

5    able to enforce them.

6  The other way of looking at it is to say that the restrictive covenants in the bonus contracts

7    are only enforceable at the behest of the employer.  Your Lordship will know that

8    restrictive covenants can only be imposed on an employee in so far as they are in

9    reasonable restraint of trade.  If they are in unreasonable restraint of trade, they are

10   unenforceable.  There would not be much point in investigating whether we were

11   cooperating in complying with an obligation that we say is unenforceable against us

12   if the US plaintiffs are not our employers.

13  28 is important because it contains a reference to the non-compete provision.  The

14   importance of that is this: that is attaches to the rescission period in the bonus

15   contracts which means it runs until January 2008.  If one takes the Defendants' case

16   to its logical conclusion, even after my clients' notice periods expire in October,

17   they say Guy Carpenter and MMC are entitled to stop us working for a competitor

18   until January next year because that is what the bonus contracts say.

19  At 108, paragraph 29:

20  "The Defendants agree to independent non-solicitation covenants which are separately

21   enforceable under schedule 2D.  It is agreed not to entice" etc., and your Lordship

22   sees at the end of that paragraph a specific reference to schedule 2D, section four.

23   At 109 ----

24  MR JUSTICE STEEL:  Do you want to look at paragraph 30?  That is just a citation.

25  MR ROSEN:  Again, it is reliance on the exclusive jurisdiction clause.  That is again

26   featured in paragraph 32, last sentence:

1   "Because the cooperation clause in the agreement" – that is clause 2(e) – "is outside the

2       scope of schedule 2D all disputes concerning that clause must be submitted for

3       adjudication."

4   MS BLANCHARD:  That was where I was going next, my Lord.  On page 110 at 39 is a

5       plea:

6   "Defendants' failure to cooperate."

7   Upon learning of the Defendants' hiring by Integro and solicitation of Guy Carpenter

8       employees who the Defendants supervised, letters were sent.  My Lord, we do not

9       need to get into that.  On 112, your Lordship sees there the claim for relief.  There is

10      a claim at 48:

11  "We have failed to cooperate in accordance with the cooperation clause."

12  At 51:

13  "By accepting employment with Integro we have engaged in competitive services as

14      defined in schedule 2D."

15  Then there is a plea over the page.  Your Lordship sees the prayer on 113 and injunction is

16      sought and a return of the sums paid under the bonus contracts is asked for.  My

17      Lord, that complaint we say admits of only one construction.  MMC and Guy

18      Carpenter are saying in New York that they employ the Claimants and in that

19      capacity they are entitled to enforce various obligations against the Claimants.  If it

20      is not so, they do not have a legitimate interest to protect.  The whole complaint is:

21      you work for us and you are soliciting other people who also worked for us and we

22      are entitled to some relief to stop that.  If there was any doubt about it, my Lord, the

23      matter is put beyond doubt by the memorandum of law put in by Guy Carpenter and

24      MMC which your Lordship finds in tab seven of the bundle.

25  MR JUSTICE STEEL:  Presumably, you are saying that this is what the effect of the

26      agreements that have been entered into, but there would be nothing surprising in an

1   arrangement which inhibited an employee of one company in the group following

2   notice, or indeed following termination, from being restrained from seeking to

3   engage or persuade employees of other member companies in the group to come

4   and join him or her in a new business?

5   MS BLANCHARD:   My Lord, there is nothing objectionable per se to a restrictive

6   covenant in an employment contract which extends beyond the identity of the

7   company identified as the employer, provided it is otherwise reasonable.  Indeed,

8   the restrictive covenants in the UK contracts do exactly that because the non-

9   solicitation provisions in those contracts purport to catch the MMC group and

10  employees who my clients, directly or indirectly, supervised.  Your Lordship has

11  that bundle of rights which are enforceable in as much as they are reasonable in the

12  UK contracts and superimposed of them another bundle of rights, more extensive in

13  the bonus contracts and MMC and Guy Carpenter have elected to go under the

14  bonus contracts in New York.

15  My Lord, the memorandum of law is in tab seven.  Your Lordship will have seen from the

16  skeletons what happened.  GC and MMC applied for an order – it begins on page

17  38 – in the US proceedings for expedited discovery, written and oral, and for

18  answers to interrogatories.   In support of that application they put in their

19  memorandum of law that your Lordship sees on page 38.  I am not going to take

20  your Lordship remorselessly through it but if your Lordship picks it up on page 41

21  under "Preliminary Statement":

22  "Defendants and senior facultative reinsurance brokers announce their resignations from

23  Guy Carpenter.  During the course of their employment with Guy Carpenter, the

24  Defendants have agreed …"

25  There is then a reference to the various obligations.  At the bottom of page 42, picking it up

26  at "and":

1   "… and discussions they have had with other Guy Carpenter employees since they decided

2         to leave Guy Carpenter.  Defendants who remain Guy Carpenter employees for the

3         next six months, pursuant to the notice period in their employment contracts, are

4         contractually obligated to provide such information."

5   In the middle paragraph:

6   "By this motion for expedited discovery, plaintiffs seek to explore as quickly as possible

7         the extent of the Defendants' participation in soliciting a large percentage of Guy

8         Carpenter's UK based facultative brokers."

9   In the next sentence:

10   "Without the relief, Guy Carpenter is at risk of losing through unlawful means numerous of

11         its employees to Integro."

12   Last paragraph ----

13   MR ROSEN:  Next sentence, please.

14   MS BLANCHARD:  Mr Rosen wants your Lordship to look at the next sentence:

15   "Because the defence failed to comply with their contractual obligations to provide

16         cooperation, the plaintiffs now threatened with further losses.  The Defendants have

17         wilfully left plaintiffs no recourse but to request such expedited discovery from this

18         court."

19   That is what they say.  Last paragraph:

20   "Moreover while the risk of harm to the plaintiffs from not receiving the expedited relief

21         requested is great, the Defendants will suffer no prejudice in complying with the

22         plaintiffs' requested relief.  Defendants continue to be employed and paid by Guy

23         Carpenter during their contractual six month notice periods and therefore can

24         provide the required cooperation during normal business hours.  Guy Carpenter is

25         already paying for their time and they have no other required duties for the

26         remainder of their notice period.    Further it is noted the Defendants are