# EXHIBIT 18-3

1  MR ROSEN:  … [inaudible]

2  MS BLANCHARD:  … My Lord it is correct that there are avenues that can be pursued in

3      New York.  There are two problems with that.  One is the terms of the order of the

4      18th May made by the New York Court requiring us to be of disclosure etc has to be

5      complied with before any such jurisdictional challenge could be brought on and we

6      say My Lord …

7  MR JUSTICE STEEL:  I mean I certainly understand the timing point namely that the

8      position [inaudible] by definition of [inaudible] or any jurisdiction on application

9      [inaudible].  But your saying the 18th May order has to be complied with before any

10     jurisdictional challenges.  Why do you say that?

11  MS BLANCHARD:  That is the timetable that has been set.

12  MR JUSTICE STEEL:  I understand the timetable point but as the American Judge said "I

13     will not hear an application on jurisdiction until after depositions [inaudible]".  And

14     that is the impression I carry.

15  MS BLANCHARD:  What the American Judge has said is that this is the timetable that I

16     am setting and the fact that this would mean that you have to give depositions and

17     interrogatories etc before your jurisdictional challenge is heard is neither here nor

18     there.

19  MR JUSTICE STEEL:  I see that [inaudible].  Yes have we got …

20  MS BLANCHARD:  My Lord I am paraphrasing a bit.

21  MR JUSTICE STEEL:  Yes right, okay …

22  MS BLANCHARD:  What your Lordship has in Ms Paynes first witness statement is a

23     description of what has happened.  If I could give that one - and give your Lordship

24     a little bit of background.  Only one of the Claimants in this action has been served

25     with the US Proceedings.

26  MR JUSTICE STEEL:  I understand that.  Served under some long arm statute.

1  MS BLANCHARD:   I assume that …

2  MR JUSTICE STEEL:   … or he was in New York.

3  MS BLANCHARD:  He was not in New York he was served at his home in England.

4  MR JUSTICE STEEL:  So it must be a long armed, yes okay, right.

5  MS BLANCHARD:   Before any appearance was entered in New York for anybody the
6      New York Plaintiffs applied for an order for expedited disclosure interrogatories
7      and that came on the 18th May after the issue of proceedings on the 4th May.

8  MR JUSTICE STEEL:  So let me get the timetable. The Application for the relief in New
9      York was made on the …

10  MS BLANCHARD:  The New York Proceedings started on 4th May.

11  MR JUSTICE STEEL:   Yes.

12  MS BLANCHARD:    The Application for relief was made on the 15th.  On the 17th an
13      opposition was put in for Mr Whyte who is the only Claimant so far served in
14      which he said that he did not submit in New York and that the Court ought to
15      determine jurisdictional issues before it decided anything else.  And the Application
16      was heard on the 18th May and the Judge made the order in substantially the terms
17      asked for.  And the order was made on the express basis that it had to be complied
18      with before any jurisdictional challenge would be entertained because discovery
19      was regarded as being an urgent matter.  That's our evidence My Lord.

20  MR JUSTICE STEEL:  So can I just …

21  MS BLANCHARD:  That's Ms Payne's witness …

22  MR JUSTICE STEEL:  [inaudible].  Proceedings commenced on 14th May.  Application to
23      the New York Court for the urgent relief on the 15th May, what you call opposition
24      by Mr Whyte [inaudible] an Application to challenge jurisdiction.

25  MS BLANCHARD:  Well what he put in was a preliminary Statement - a Memorandum of
26      Law that was filed by his Attorneys to say that you ought to be determining

1    jurisdiction first and therefore you shouldn't be determining the expedited

2    Disclosure Application now.

3    MR JUSTICE STEEL:  There was a hearing on that …

4    MS BLANCHARD:  There was a hearing …

5    MR JUSTICE STEEL:  On the 18th May …

6    MS BLANCHARD:  On the 18th May …

7    MR JUSTICE STEEL:  And there was, the Order was issued.

8    MS BLANCHARD:  Yes My Lord.

9    MR JUSTICE STEEL:  Any reasons given?

10   MS BLANCHARD:  Well the Order My Lord …

11   MR JUSTICE STEEL:  For reasons we have taken the view that jurisdiction is a point that

12   could not be taken first.  I mean was there a judgement?

13   MS BLANCHARD:  No My Lord there was not a judgement.

14   MR JUSTICE STEEL:  I am sorry …

15   MS BLANCHARD:  It's tab 3 …

16   MR JUSTICE STEEL:  Tab 3 yes …

17   MS BLANCHARD:  Page 14, paragraph 53.

18   MR JUSTICE STEEL:  Which Court are we in?  The District Court or the …

19   MS BLANCHARD:  Yes My Lord.  The United States District Court Southern District of

20   New York.

21   MR JUSTICE STEEL:  Right.  So then is Ms [Co] is she a Judge of the District Court.

22   MS BLANCHARD:  I believe so My Lord.

23   MR JUSTICE STEEL:  Right, okay.  She is not a Magistrate, she is a Judge is she?

24   MS BLANCHARD:  She's referred to in the documents I have seen as a Judge My Lord.

25   MR JUSTICE STEEL:  Alright, okay, thank you.  So there was an aural hearing was there

26   on the 18th May.

1    MS BLANCHARD:  There was My Lord.  Your Lordship sees the way that it works it out

2        in paragraph 51.  Basically, the Attorneys came in the Judge said she was minded to

3        grant them Relief and then she sent them out to try and agree to the form of an

4        Order.  After that the Attorneys went back and she made the Order in substantially

5        the terms sought.

6    MR JUSTICE STEEL:   The Order was made on the express basis that it had to be

7        complied with before any jurisdictional challenge would be entertained.   That is

8        what the Judge said the terms tell me.

9    MS BLANCHARD:  My Lord, may I take instructions on that?

10   MR JUSTICE STEEL:  Yes.

11   MR ROSEN:   Could I just say I'm well, surprised, because as I understand it the timetable

12       has been set for the jurisdictional challenge which will be proceeding and we have

13       to lodge our submissions on Friday.

14   MR JUSTICE STEEL:  Well why is that inconsistent with what's …

15   MR ROSEN:  Because the depositions weren't to be done while that process is going on.  I

16       can't again say what's said if that's [inaudible] my learned friend's instructions.

17   MR JUSTICE STEEL:  Are you suggesting the jurisdictional challenge will actually take

18       place before next Wednesday?

19   MR ROSEN:  No not before next Wednesday, but the submissions including our required

20       submissions that are due in the meantime.  I can't again say that its …

21   MR JUSTICE STEEL:  I mean, I think you are agreeing the jurisdictional challenge won't

22       take place.

23   MR ROSEN:   On the timetable it won't take place, I'm not able to comment on the

24       contention that the United States District Court Judge said that it will not take place

25       unless [inaudible] can first …

26   MR JUSTICE STEEL:  [inaudible].

1   MS BLANCHARD: My Lord I [inaudible] had this witness statement for over a week and

2       they've replied to it and they haven't again saved this passage in it. What my

3       instructions are is this. Is that this comes from our US Attorneys that the Judge set

4       the timetable which required compliance with the Order before jurisdiction would

5       be heard. My client's Attorneys asked for a Stay and the Judge said "No".

6   MR JUSTICE STEEL: And so far as Mr Samengo Turner and Mr Hopkins are concerned

7       this is ex-parte.

8   MS BLANCHARD: My Lord it is. The Order was made against all three claimants, even

9       though only one of them has been served.

10   MR JUSTICE STEEL: But I note she goes on to say that she was going to apply English

11       Law to the question of what constitutes a detrimental activity. [inaudible] that one.

12       All because there was an English law clause in 2(d). Was that right?

13   MS BLANCHARD: My Lord I believe that is right.

14   MR JUSTICE STEEL: [inaudible]. Right, I am sorry, I was interrupted, I do apologise,

15       but …

16   MS BLANCHARD: My Lordship was asking about, well can I go off in New York? Why

17       do I need [inaudible].

18   MR JUSTICE STEEL: And you said [inaudible]. So you cannot do it first.

19   MS BLANCHARD: We can't do it first My Lord and also our evidence is, and there is no

20       evidence to again say this that if we comply with the Order of the 18th May there is

21       a danger we will submit in New York. Even though it requires compliance before

22       our jurisdictional challenge is heard. And that, as Your Lordship will appreciate,

23       puts my clients in something of a clattered [inaudible].

24   MR JUSTICE STEEL: You mean simply that if you return to the depositions of

25       [inaudible], you must be submitting to jurisdiction.

26   MS BLANCHARD: There is a risk of that My Lord and if we provide the disclosure

1       sought and answer the interrogatories, our advice is there is a risk we're submitting

2       and that's our evidence and there's no evidence to again say it.

3   MR JUSTICE STEEL:  So anyway, that is quite [inaudible] in regard to your Application

4       for an urgent suit injunction that you say the only protection you can look to is an

5       urgent suit injunction.  You are not in a position to issue proceedings in the non-

6       conventional country.  Sorry, institute an application for a challenge to the

7       jurisdiction [inaudible].

8   MS BLANCHARD:  I dare say My Lord that we are precluded from challenging

9       jurisdiction, there are avenues that we can pursue.

10  MR JUSTICE STEEL:  No sorry, you were [inaudible] you are precluded because you can

11      not do it before the very thing that you are objecting to is taking place.

12  MS BLANCHARD:  As matters presently stand, that is correct My Lord …

13  MR JUSTICE STEEL:  Yes.

14  MS BLANCHARD:  Yes.  And My Lord what I was developing is why Your Lordship

15      should grant an anti-suit injunction to enforce a mandatory convention right.

16      Bearing in mind My Lord that jurisdiction under the convention is prima facie

17      based on the residence of the defendant in this case, my clients.  They're defendants

18      in New York although technically they're claimants here this action is all about

19      claims being brought against them by their employers.

20  MR JUSTICE STEEL:  Yes.

21  MS BLANCHARD:  And that we have a mandatory right that can't be contracted out of

22      and that your Lordship should protect it, and there is an argument My Lord, and I'm

23      not meaning to develop any detail at the moment, because I am conscious of time,

24      that Your Lordship must enforce my client's rights that arise under the convention,

25      which we say is the logical conclusion of the decision in the Owusu case which

26      Your Lordship is no doubt familiar with.

45

1    MR JUSTICE STEEL:  Just remind what …

2    MS BLANCHARD:  What the [ETJ] decided in that case is that, forgive me My Lord,

3        where a member state Court has jurisdiction pursuant to Article 2(1), it cannot

4        decline jurisdiction on forum [non conveniums] grounds.

5    MR JUSTICE STEEL:  Right.

6    MS BLANCHARD:  Even though the other forum is not a member state.  And so we say

7        the logical conclusion of that decision …

8    MR JUSTICE STEEL:  That over-ruled [Harris]?

9    MS BLANCHARD:  It did My Lord …

10   MR JUSTICE STEEL:  Yes, that is right.

11   MS BLANCHARD:  It did, yes.

12   MR JUSTICE STEEL:  Right.

13   MS BLANCHARD:  And we say the logical conclusion of that is that in a circumstance in

14       which there is mandatory provision of the regulation that exists for reasons of

15       public policy that Your Lordship arguably must cease jurisdiction to deal with it,

16       even though the other proceedings we're protesting about are not in a member state.

17   MR JUSTICE STEEL:  Yes and that's the record of reverse of the present situation?

18   MS BLANCHARD:  Yes My Lord what we're saying is that it's the logical conclusion of

19       the Owusu reasoning and that the group [Josie case] and those other cases, it's the

20       logical outcome.

21   MR JUSTICE STEEL:  They are examples of anti-suit injunctions in this field in which the

22       American Courts have been adjourned from proceeding on the basis that there was a

23       New York union statutory right to assume within the domicile.

24   MS BLANCHARD:  My Lord as far as I am aware the point that we are actually asking

25       Your Lordship to decide is novel.  I am not aware that …

26   MR JUSTICE STEEL:  I feared it was.

1    MS BLANCHARD:  But Your Lordship can decide it on first principles if he wants to.

2    MR JUSTICE STEEL:  I understand the point.  There are comity considerations here, why

3        should the American Courts, they say that they would be happy with this action.

4    MS BLANCHARD:  Well My Lord I'm going to get to you vexation and oppression…

5    MR JUSTICE STEEL:  Okay.

6    MS BLANCHARD:  A balance of convenience…

7    MR JUSTICE STEEL:  Right.

8    MS BLANCHARD:  But the comity consideration is this, is if a party - a US company that

9        does business in this jurisdiction has to take as part of the price of doing business in

10       this jurisdiction the mandatory protections that exist for their employees.  There are

11       a whole basket of them.  Your Lordship may have some or no familiarity with them

12       and that arise in respect of unfair dismissal and discrimination and there is a whole

13       host of stuff that arises, rights that you get because you are a UK employee.  And

14       one of those rights is the right to be sued here, by your employer in matters relating

15       to your employment.

16   MR JUSTICE STEEL:  Well that is just repeating section 5.

17   MS BLANCHARD:  Well it is My Lord, but it's putting it in perhaps a broader landscape.

18       Your Lordship asked me about comity, well comity does not require Your Lordship

19       to permit US companies doing business here to escape the mandatory rights that

20       Section 5 gives.  And My Lord on the New York jurisdiction clause very shortly,

21       you say "It doesn't catch the claims being brought in the US because they're under

22       Schedule 2(d) and if it did it's invalid, because Article 20(1) does not permit after

23       20 sub-1 does not permit an employer to contract out of the mandatory jurisdiction

24       of Section 5 in advance".

25   MR JUSTICE STEEL:  Are you saying then that [inaudible] your first point is conceded, is

26       then relying on Section 2(d) indeed requiring the Judge or asking the Judge to

1     determine his [inaudible] by reference of English law.

2   MS BLANCHARD:  That's what they're saying in New York My Lord, that's not what

3     they say in London.  And My Lord it is a novel point perhaps, but we'd invite Your

4     Lordship to find that Your Lordship satisfied the rights to engage, that's enough to

5     grant an anti-suit injunction.

6   MR JUSTICE STEEL:  I understand.

7   MS BLANCHARD:  But if we need to go further, Your Lordship wants to ask himself, is

8     England the natural forum, yes, my clients were employed here, they did business

9     here, the other employers they are alleged to have solicited worked here.  This is on

10    any view the natural forum for the dispute.  This dispute has no connection

11    whatsoever with New York beyond that MMC and Guy Carpenter have offices

12    there.

13        The Defendants rely on a whole host of factors about will we want to be in

14    New York because this is all about New York shares and how we administer our

15    New York business, but My Lord that's nothing to the point.  Everything that is

16    relied upon in New York to sue my clients arises out of events in this jurisdiction.

17    All of the witnesses are here.  The bundle of rights that the MMC and Guy

18    Carpenter say they have, have to be complied with here and furthermore if it

19    matters, the parties have already decided this is the natural forum because that's

20    what Schedule 2(d) says.  My Lord if one wants to get into concepts of vexation

21    oppression and unconscionability what we have to say is this.  First of all this is not

22    a watertight compartment separating it from where is the natural forum and bounce

23    of the beans etc.  We say all the factors that make this the proper forum are factors

24    that make it oppressive for us to be sued in New York.  And if we do have to ask

25    this question we say that proceedings brought in breach of the regulation are by

26    definition vexatious, oppressive or unconscionable.  Unconscionable is probably the

1    best label for it, because they are brought in breach of public policy.

2        And My Lord the Defendants decide the contractual structure that governs

3    my client's employment and they choose to pay us while part of our bonus by the

4    mechanism of the bonus contracts and they should not be able to so organise their

5    affairs so as to deprive my clients of the mandatory rights which arise by reason of

6    the regulation.    And that My Lord we say is unconscionable or oppressive or

7    vexatious, however one wants to look at it.

8        And also My Lord, Your Lordship already has the point about what we see

9    as the rather unsatisfactory state of the proceedings in New York and prefer having

10   to comply with this Order.  There is also the broader point My Lord that we say the

11   reality is is that Guy Carpenter and MMC have sued in New York precisely to

12   obtain the advantage of the broader disclosure deposition and derogatory regime

13   which is in place there as opposed to suing us here.

14       The Defendants come before your Lordship today to say the claimants work

15   for NSL an English company and nobody else.   My Lord that underscores the

16   artificial nature of what is being done in New York and why they've deliberately

17   gone there when they have a perfectly good jurisdiction to litigate in here.  It is not

18   said that this jurisdiction would deprive the defendants of any legitimate advantage

19   that they get in New York.  On the contrary, all it would deprive the defendants of

20   is an illegitimate advantage that they have procured by way of seeking and

21   obtaining swinging orders or disclosure in interrogatories etc against my clients.

22       My Lord, so it's not really about does comity require Your Lordship to

23   decline, no, and that is never so in circumstances in which that the Court is being

24   asked to give affect to a right, particularly at an early stage.  Your Lordship will be

25   familiar for example with the Angelic Grace and the other cases in which it said

26   that a Court should feel no hesitation in granting this sort of relief where a specific

1    right is being infringed and that the sooner this Court gets on and grants it the

2    better, rather than allowing the other proceedings to ramble on.

3        The bottom line My Lord is that the affect of the regulation is to write into

4    the employment relationship an exclusive jurisdiction clause in favour of this

5    jurisdiction and Your Lordship can and we say should enforce is in exactly the same

6    way as he would enforce it if it was written out.

7        My Lord even if Your Lordship is not satisfied that we are within the letter

8    of the regulation, we nonetheless invite Your Lordship to grant us an anti-suit

9    injunction, because all of the reasons I've been developing we say the New York

10   proceedings are oppressive, vexatious or unconscionable because fundamentally the

11   public policy applies to the proceedings against my clients in New York even if the

12   letter of the regulation is not in play, because however you cut it, My Lord, my

13   clients are being sued in New York because they are employees and it is not alleged

14   that they had or have ever had any other sort of status.

15   MR JUSTICE STEEL:  Is there any kind of jurisdiction clause in what you call the basic

16        one line type Agreement?

17   MS BLANCHARD:  In the UK Contracts no My Lord?

18   MR JUSTICE STEEL:  It is dated in London is that right?

19   MS BLANCHARD:  Yes My Lord.

20   MR JUSTICE STEEL:  Well it is addressed to Mr Samengo Turner in London, it comes

21        from Tower Place in London.  It [inaudible] clause …

22   MS BLANCHARD:  My Lord, I develop those points a bit more fully in my skeleton but I

23        am conscious of time so I'm …

24   MR JUSTICE STEEL:  Well, you may and no doubt it has not helped that I have

25        interrupted in that time [inaudible] very substantial material for a one day hearing,

26        but thank you very much …

1    MS BLANCHARD:  My Lord …

2    MR JUSTICE STEEL:  Well have to see how it goes.

3    MS BLANCHARD:  My Lord I …

4    MR JUSTICE STEEL:  Hopefully the [inaudible] request is that I produce the judgement

5        by 4 o'clock.

6    MS BLANCHARD:  My Lord …

7    MR JUSTICE STEEL:  We will see how we get on.

8    MS BLANCHARD:  My Lord, yes, I was going to instruct Your Lordship on the balance

9        of convenience but if he doesn't want to hear from me …

10    MR JUSTICE STEEL:  No, no I am saying I did not mean to interrupt.  I do apologise, I

11        thought you …

12    MS BLANCHARD:  My Lord, I'm nearly there.

13    MR JUSTICE STEEL:  No, absolutely, I am sorry, my fault for interrupting again.

14    MS BLANCHARD:  My Lord I was going to address Your Lordship lastly on the question

15        of balance and convenience and this matter does come before Your Lordship on an

16        inter-room basis.  Your Lordship isn't finally deciding it.  Your Lordship's deciding

17        have I raised serious issue to be tried and then where is the balance of convenience

18        lye. The bottom line is we say there is prejudice or potential prejudice to us in

19        complying with the Order in New York and there is no prejudice to the defendants

20        in being restrained and the way that we invite Your Lordship to do and none is

21        alleged and that this is the natural forum for the dispute and that on a fundamental

22        basis my client shouldn't be put through the inconvenience and expense of litigating

23        in New York in proceedings that arise out of the their status as employees.

24            My Lord, unless I can assist Your Lordship further that is what I was

25        proposing to say for now.

26    MR JUSTICE STEEL:  So you will have an opportunity to reply.

1  MS BLANCHARD:  My Lord, I am grateful.

2  MR JUSTICE STEEL:  Yes Mr Rosen.

3  MR ROSEN:  My Lord, Your Lordship has had our skeletons and in my moral submission

4  I am going to address Your Lordship first of all as to the overview sets we have

5  with the application, then I'm going to address Your Lordship on some points of

6  comity and thirdly on the points of this application which essentially we say is to

7  stay the New York Court's existing Order.  Fourth, as regard for the arguments on

8  Articles 18 and 20 of the Regulation.  Fifth the balance of this, which Your

9  Lordship [inaudible] against me on some of my principle submissions and then

10  finally some matters which we [inaudible] in the submissions that are made against

11  us.

12  First by way of [inaudible] we submit to Your Lordship that the US

13  company Claimants MMC and Guy Carpenter US are suing in New York under

14  Clause 2(e) of the plan the duty to cooperate, which is subject under Clause VI(n) to

15  the exclusive jurisdiction of those Courts.

16  We submit that those companies are not the employers of the claimants for

17  the purposes of Article 20 of the regulation, the employer is claiming NSL which is

18  a subsidiary of the group which employs staff in the UK and we submit further that

19  the suit is not in relation to the individual contracts of employment in Article 18 and

20  we further submit that nothing in what I have so far said has regard to the New

21  York's Court who is the claimant's employer and whether or not the suit is in

22  relation to individual contracts involve any artificial construct and ought to

23  somehow to depart from what we say is the clear characterisation and interpretation

24  that is the provisions of our application.  On that [Ms Mansfield] explains in bundle

25  A tab 10 paragraphs 5 to 15, as Your Lordship hopefully has read, if not I'll take it

26  to you.

1    MR JUSTICE STEEL:  That's alright [inaudible]

2    MR ROSEN:  Ms Mansfield explains the employment contract and why it was with NSL

3         and she explains the plan and the New York jurisdiction and [inaudible] plan and

4         our respectful submissions ….

5    MR JUSTICE STEEL:  Sorry I am not actually understanding you, what are you saying?

6    MR ROSEN:  What I'm saying is that there is nothing by way of artificial construct in the

7         submissions I have made naming the suit being under clause 2(e) of the plan and

8         subject to New York's exclusive jurisdiction the fact that the US companies are not

9         the employers of the claimants that being NSL and the pursuit is not in relation to

10        individual contracts.

11   MR JUSTICE STEEL:  Well you are going to have to deal with the way the case is

12        pleading.

13   MR ROSEN:  Of course, I'll do it.

14   MR JUSTICE STEEL:  And I understand this is your [inaudible]

15   MR ROSEN:  Of course.  Then finally by way of overview in our respectful submission,

16        Your Lordship cannot be satisfied on an interim or any other basis the burden being

17        on the claimants that the regulation applies and if it does not then in our respectful

18        submission there is no basis at all for an anti-suit injunction.  It cannot be said …

19   MR JUSTICE STEEL:  What is the [inaudible] here? [inaudible]

20   MR ROSEN:  It's satisfied in the way appropriate to an interim hearing, I think is the way

21        it was put by an Lord Rogers in one case.

22   MR JUSTICE STEEL:  I thought you were experienced in the field of service [inaudible]

23        environmental case otherwise for convenience purposes this is a serious issue.

24   MR ROSEN:  Yes, I'm not sure one gets a great deal of assistance as regards to the

25        standard but certainly the burden would be on the Applicant to show.

26   MR JUSTICE STEEL:  [inaudible] authority to [inaudible]

1    MR ROSEN:  Yes, it is [audible] I think in the Court of Appeal.

2    MR JUSTICE STEEL:  And what was the answer?

3    MR ROSEN:  It doesn't tell you much about standard, it certainly tells you what burden is,

4        that's in paragraph 39.  Your Lordship may want to just turn to that very quickly tab

5        21 of the authorities.

6    MR JUSTICE STEEL:  Which one?

7    MR ROSEN:  Bundle 1, no bundle 2 tab 21.

8    MR JUSTICE STEEL:  Yes and …

9    MR ROSEN:   It's the summary in paragraphs 39 and 40 referring to good arguable case

10       from Lord Rogers.  And if your Lordship sees in paragraph 40 the italicized words

11       the rule is that the Court must be satisfied or as satisfied as it can be having regards

12       to the limitations which an interlocutory process opposes the factors exist which

13       allow the Court to take jurisdiction to that read jurisdiction to make an anti-suit

14       injunction.

15            In practice what amounts to a good arguable case depends on what requires

16       to be shown in a particular case in order to establish [inaudible].

17   MR JUSTICE STEEL:   [inaudible]

18   MR ROSEN:    Yes and so what I suggest Your Lordship in this case it means good

19       arguable case that the regulation applies …

20   MR JUSTICE STEEL:  Right.

21   MR ROSEN:   … and to a standard which recognises the nature of the relief which is being

22       sought and the limitations on the evidence and arguments which can be put before

23       you at an interlocutory hearing.  And in this case we submit that what is sought is a

24       very drastic and exceptional Order indeed if we are right as regards to our

25       characterisation of the New York suit naming that it sues of clause 2(e) of the Plan

26       under a Plan which has exclusive New York jurisdiction and where as Your

54

1    Lordship knows the New York Court is ceased at least as regards to Mr Whyte.  I

2    don't know whether the position is still that the other New York defendants haven't

3    been served.  But we do know that it ceased and will be looking now I think at

4    exactly what's going on in that regard.

5        The proceedings in New York as Your Lordship has heard were begun on

6    4th May following correspondence in which, and I'll show Your Lordship, we had

7    asked both on 5th April and on the 3rd May for information pursuant to the duty to

8    cooperative and have received evasive replies.  By that I mean, that the English

9    claimants sought to examine the grounds for a claim against them that they were in

10   breach of various other obligations rather than actually answer the questions which

11   were posed.

12       There is a jurisdictional challenge in New York which will be along the

13   lines probably intimated on behalf of Mr Whyte at the 18th May hearing [Prosgower

14   Rose] New York attorneys have been instructed on behalf of all three claimants,

15   you get that from the letter of 17th May, tab 4 page 266, but it's quite plain that at

16   that stage only Mr Whyte had been served.

17       Miss Payne in her witness statement describes that there is an appeal

18   proposed as regards to the Order of 18th May that there will also be an Application

19   for a stay in New York and that they are seeking expedition for their jurisdictional

20   application, that's paragraphs 54, 55 and 56 and a timetable has been set.

21   MR JUSTICE STEEL:  Paragraph 55 of her first statement?

22   MR ROSEN:  Of her first statement which Your Lordship I think has at tab 54, 55, 56 and

23   also that there are directions that the jurisdictional challenge which I mentioned to

24   Your Lordship.  The real difficulty so to speak is that there is in the meantime an

25   order, we say its an order with which the English Court should not interfere and we

26   would be entitled to exactly the same we've done if the matter was determined in

1    this country which is why we pursued our Cross Application, which is simply …

2  MR JUSTICE STEEL: So, if you want to in the sense fortify the Application this applicant

3    or your defendant to this Application with that point, you will need to develop it.

4  MR ROSEN: Yes. Well it's dealt with in our skeleton submissions and I will develop it

5    when we come to questions of discretion. So essentially we suggest the Court may

6    consider the [inaudible] interim injunction Application in two parts.

7    First, should we be stopped from taking any steps pursuant to our New York

8    proceedings including of course the jurisdictional challenge and indeed alerting the

9    New York Judge to any developments in the evidence including corrective matters

10    which I will come to in a moment. Secondly, should the English Court interfere

11    [pro 10] to stop enforcement of the 18th May Order which Judge [Coate] made and

12    which we say essentially is based on the obligation under Clause 2(e) and which we

13    would have exactly the same right to enforce under English substantive law here.

14    My next submission really relates to comity and it really is based on the

15    contention that even if Your Lordship was surprised by Judge [Coate's] Order and

16    even if, not only did the timetable that the jurisdiction challenge would not be

17    determined before the disclosure is given, but went beyond that and actually

18    involved the Judge saying, "and I won't be hearing the Application unless

19    disclosure has been given in time", comity and caution in our respectful submission

20    play a very important role here. There is no case that I've been able to find, that

21    we've been able to find where the regulation either in this or in an analogist point

22    has been the foundation of an anti-suit injunction against any Court, let alone a non-

23    European Court and a Court which has taken jurisdiction pursuant to an exclusive

24    jurisdiction clause.

25  MR JUSTICE STEEL: Well it would arise with a convention country?

26  MR ROSEN: It couldn't have arised with a convention country because we know it can't

1    be done.  And why should it be done in the case of the United States Court.

2    [Sizemic Shipping} is the nearest that I've got to it by way of an analogy,

3    that's at tab 16 of volume 1.  This was a case where the English Court have made a

4    limitation award under the Merchant Shipping Act, its at tab 16.  And the terms of

5    that are set out at clause 4.

6    MR JUSTICE STEEL:  You mean paragraph 4?

7    MR ROSEN:   Paragraph 4, I'm so sorry.  That's the background to Lord Justice Clarke's

8    consideration of the principals for anti-suit injunctions at paragraphs 43 through to

9    50.  Would Your Lordship be prepared to look at those perhaps over the short

10    adjournment or shall I just sit down or shall I read them aloud?

11    MR JUSTICE STEEL:    Just remind me of the point here, there were limitation

12    proceedings in the United States and limitation proceedings [inaudible]?

13    MR ROSEN:    That's correct, there were … yes in the proceedings in the United States

14    were in Texas and the question was whether or not the claimants there should be

15    restrained from continuing their proceedings.

16    MR JUSTICE STEEL:    On the basis that there was disparity between the limitation

17    [inaudible] and so …

18    MR ROSEN:   On the basis that the English Court had already made a limitation award.

19    MR JUSTICE STEEL:   [inaudible]

20    MR ROSEN:   The principals are 43 through to 50.  44 has a list of the principals.

21    MR JUSTICE STEEL:   Yes well I will read that [inaudible]

22    MR ROSEN:    And the important one is principal 6 regard must be had to comity so that

23    the jurisdiction is one which must be exercised with caution.  Generally speaking in

24    deciding whether or not to order that a party be restrained in the pursuit upon the

25    [inaudible] the Court would be reluctant to take it upon itself the decision whether a

26    foreign forum is an appropriate one.  And what normally happens and Your

1    Lordship may be familiar with the general run of anti-suit injunctions, this is a

2    rather exceptional one and a rather novel one, but what generally happens is that the

3    Court here considers whether or not as a threshold question the foreign Court

4    should be determining questions of jurisdiction and so on itself at least in the first

5    instance.  Whether or not it has to exhaust the appeal process is another matter.

6    And that's an illustration of the caution and comity principal which you see

7    illustrated for example in the [inaudible] cases [inaudible] and so on.

8  MR JUSTICE STEEL:   Yes I will read that, thank you [inaudible].

9  **Court adjourned**

10  **Judge leaves Court Room**

11  **Court Resumes**

12  MR JUSTICE STEEL:  Yes.

13  MR ROSEN:  Before the short adjournment My Lord, I dealt with my preliminary point or

14    I was dealing with my preliminary point about comity.

15  MR JUSTICE STEEL:  Yes.

16  MR ROSEN:  I had referred Your Lordship to the *Seismic* case.  The analogist's result in

17    our case would be to leave it to the New York Court, bearing in mind that if the

18    claimants, the English claimants, want to make their point on the regulation, if

19    notwithstanding our submission that it's a thoroughly bad point and that the

20    regulation doesn't apply, if they want to make their point on the regulation they

21    could make it in the jurisdiction challenge in the New York Court before alleging to

22    an English Court that it's unconscionable for the New York Court proceedings

23    based on an exclusive New York jurisdiction of course to continue.

24      It's fair to say that Mr Whyte in his fairly full memorandum which is at page

25    241, although he makes lots of points, he doesn't make the regulation point but that

26    doesn't mean it's not open to them to do it.

58

1   MR JUSTICE STEEL:  Well the difficulty is that it's all over bar the shouting.

2   MR ROSEN:  Well, I'll address Your Lordship on that.  It's not so all over bar the

3        shouting, because the New York Court's expedited Order at present is still subject

4        to the New York Court's legal processes and we know that there is a proposed

5        appeal.  We know that an expedition Application might be made.  We know that

6        there's a proposal to stay.

7   MR JUSTICE STEEL:  yes, but it's not going to be heard by four o'clock today.  And the

8        appeal is certainly not going to be over even by Wednesday next week.

9   MR ROSEN: That's right.

10   MR JUSTICE STEEL:  As I say, it's all over bar the shouting.

11   MR ROSEN: So it's, it's not all over, except that we should be able to have the disclosure

12        and the discovery which was ordered and we'll submit to Your Lordship that that is

13        exactly the same as would apply in England.

14   MR JUSTICE STEEL:  I understand that.

15   MR ROSEN:  Yes.  But I have Your Lordship's point …

16   MR JUSTICE STEEL:  I mean there is no response to Miss Payne's description of the

17        American proceedings is there?

18   MR ROSEN:  There is nothing in the witness evidence of Ms Mansfield which

19        concentrates on the employments, the stock plan and the background to the US

20        proceedings …

21   MR JUSTICE STEEL:  Right.

22   MR ROSEN:  … and as I understand it Your Lordship interprets that part of her witness

23        statement as saying that the New York Judge actually said that the jurisdiction

24        challenge will not be heard unless there has been compliance with the ex-parte

25        discovery Order and I'm not in a position to again say that and that is the difficulty

26        which we face and that's why, in opening the matter to Your Lordship, I said really