# EXHIBIT 18-6

1    submitted to the jurisdiction. I mean, there is no evidence of that …

2  MR ROSEN:  Well there's a short point on this, a short way round, which is our telling

3    your Lordship, and if necessary telling the Judge, that we will not contend, that by

4    complying and attending the deposition in London next week, at which the

5    representatives of the group will be asking these executives the questions which

6    they're obliged to give us, we will not suggest that that is a submission to the New

7    York jurisdiction which will leave them completely clear for the purposes of their

8    arguments and its aftermath.

9  MR JUSTICE STEEL:  Well I - I have to say …

10  MR ROSEN:  I mean it sounds such a …

11  MR JUSTICE STEEL:  … the situation then becomes almost meaningless really.  But

12    anyway, okay.

13  MR ROSEN:  Well it doesn't because it means we can get the information which we

14    believe we need to protect our business.

15  MR JUSTICE STEEL:  Right.

16  MR ROSEN:  That's the key point.  This isn't about evidence for a future New York trial.

17  MR JUSTICE STEEL:  That's right.

18  MR ROSEN:  This is about obtaining urgently answers and documents in response to the

19    questions we've been asking since 5 April.

20  MR JUSTICE STEEL:  In response to an order of the Court.

21  MR ROSEN:  In response to an order of the Court.  I concede that.

22  MR JUSTICE STEEL:  As I say I, I don't think it matters.  I am finding it very difficult to

23    comprehend how you could sit down solemnly and depose, be deposed, and then

24    say you have not submitted to the jurisdiction.  Extraordinary.

25  MR ROSEN:  Because you comply whilst making your jurisdiction application and without

26    prejudice to your jurisdiction application, and if you succeed then you succeed.

1    MR JUSTICE STEEL:  And then what?

2    MR ROSEN:  Well... the short answer is ...

3    MR JUSTICE STEEL:  ...there is no - there is nothing left in the case.  So it does not

4        matter then.

5    MR ROSEN:  Well there are still arguments about obligations ... breaches of obligations

6        under the plan ...

7    MR JUSTICE STEEL:  Well there may be arguments about returning of notice and so

8        on...

9    MR ROSEN:  Yes.

10   MR JUSTICE STEEL:  We are not really interested in £70,000.  You are interested in

11       whether there is a very substantial claim.

12   MR ROSEN:  Well, it's stick and carrot.

13   MR JUSTICE STEEL:  Yes.

14   MR ROSEN:  We want the information.  We want to protect our business and part of that

15       is the bonus.  Part of it is the duty ...

16   MR JUSTICE STEEL:  Well he keeps saying he hasn't got the money, I mean £70,000. It's

17       peanuts really. Who cares?

18   MR ROSEN:     But the only comfort I believe I can offer - I can't think of any other

19       mechanism - is that we won't take the point that complying with the order without

20       prejudice to the jurisdiction is itself submission to the jurisdiction.

21   MR JUSTICE STEEL:  Yes.

22   MR ROSEN:  So we won't be taking the point.  It may be that your Lordship has in mind

23       some other mechanism.  I don't know.  I mean it may be that it's for us to devise

24       something that satisfies whatever concerns you have.  I mean our main objective is

25       not to interfere with the New York Court's jurisdiction and to obtain the

26       information as soon as possible.  We've been trying to get the information for two

1    months.  We had to issue proceedings.  We consider we did so in the appropriate

2    Court and now we've found ourselves bogged down in the jurisdiction fight when

3    in our respectful submission we'd get orders for the information in both

4    jurisdictions.  The answer may be, I suppose, to get an order on the part of MSL, the

5    employer company, in England for exactly the same relief, so that if the New York

6    Court does …

7    MR JUSTICE STEEL:  Well for response to interrogatives, yes, maybe.  But [inaudible]

8    and/or documents, depositions rather …

9    MR ROSEN:  Yes.  Well, it may be that as far as the English Court is concerned you don't

10    go to war in examination as the first stage.  The first stage is ask your questions and

11    get the answers in writing.  Unfortunately we spent nearly, well, more than two

12    months on that stage.  But I see your Lordship's point.

13    But really, in our respectful submission, if your Lordship makes an order

14    which has that impact on the New York proceedings then we would end up, I

15    suppose, having to sue - substantively - to sue here.

16    Of course there would remain the question of enforcing the order because

17    these Defendants are not presently in the United States.  So the next box, so to

18    speak, on prejudice, is would we enforce in the meantime if they didn't attend.

19    They've got their appeal on, or at least they said they intend to appeal.  Their stay

20    on their expedition for the jurisdictional challenge.  And it may be the question of

21    enforcement pro tem would remain in the air.  There is nothing we could do in the

22    sense that they're not in the United States, they're here.  So the only way we're

23    actually going to be enforcing is getting an order from the English Court.  Now

24    that's part of our cross-application and it may be that we just don't reach that today.

25    Then the next key point is what would happen if they did attend in terms of

26    substance other than its effect on the New York order.  We say that all it can do is

1   to reveal matters which assist us, the group, and their employing service company.

2   But it's not going to do anything to harm their legitimate rights.  And of course your

3   Lordship could impose as a condition, if you were minded to refuse the relief, that

4   there would be some safeguard as regards the preservation of the information of

5   documents that we get as a result of the Court enforcement.  I am not inviting your

6   Lordship to do that, but if your Lordship is seeing this matter and your Lordship

7   could impose some requirement as far as that is concerned...  We invite your

8   Lordship simply to allow the matter to proceed so that we can obtain the

9   information of documents because it is likely to assist us and that really should be

10  the absolute key component.  And the idea of harming legitimate rights, either as

11  regards proceedings here or in New York, in our respectful submission is far-

12  fetched.

13      That leaves I think some red herrings so to speak.  First of all, the arguments

14  as to their not being obliged as a matter of contract, whether to the American

15  companies under the plan or to MSL as their employers, is not being run, so they're

16  not the same restraints of trade or unenforceability.  So your Lordship has the

17  situation where the obligations are there for the purposes of this application.

18      They have run some arguments in the skeleton and the witness statement but

19  they're not pursued.  But your Lordship could note that.

20      There are undoubted duties anyway in the way of duties of fidelity which

21  aren't in issue and as we said in this morning's skeleton, which your Lordship

22  certainly won't have had an opportunity to read, that would extend to their

23  providing information in answer to our reasonable directions.  And we cite *Hibbach*

24  *v Scientific*[?] on the duty of fidelity.

25      And your Lordship ought to know that the undertaking which has been

26  offered on 17 May, which I'll show your Lordship now, is going to get us nowhere.

1      That's in tab 7, page 24. And I've saved this till last so to speak for a reason your

2      Lordship will recognise I hope. At the bottom of the page, this is the undertaking

3      which they'd be prepared to recommend to the Defendant:

4          "I confirm my brief to remain an employee of Marsh Services Limited".

5          MSL. That's what they offer before the New York Court makes the order of

6      18 May and before they bring the anti-suit application on the basis that they are not

7      in fact in the employment contract with MSL. That's what they offer.

8          "Until 2 October with regard to my notice period as requested by the

9      company I undertake that while I remain an employee of the company I will abide

10      by my duty of good faith and fidelity to the company. I further undertake that during

11      the period of gardening leave I will not..." etcetera.

12          Now the problem with that, apart from scuppering the executives on their

13      claim that MSL is not their employer, the contract is not with them, is the

14      obligations of good faith and fidelity include the obligation to answer our

15      reasonable questions, and that they are absolutely not prepared to do. The

16      undertaking that was asked for on 5 April, just to show your Lordship that at page 2

17      of the same tab, 5(a), "strictly comply with your obligation to GC employee of the

18      director and in particular with the obligations referred to in the letter to you dated 3

19      April", which I don't think is in the bundle, "and the obligations set out in the

20      plan". And of course everyone knows by 17 May, when the counter offer comes

21      back, that the obligations in the plan include the duty, the express duty, to

22      cooperate.

23          I am not going to invite your Lordship to have close regard to what is

24      offered as regards information, which is just information going to solicitation of

25      immediate subordinates who reported on 3 April 2005 and confidential information.

26      That is another complete red herring.

1        Those are my submissions unless I can assist your Lordship any further.

2   MR JUSTICE STEEL:  Yes.

3   MS BLANCHARD:  My Lord, the hour grows late.  I am proposing to be quite short.

4        Perhaps I'd better say what I want to say in reply and then we can see what time it is

5        and see how your Lordship wants to go forwards from there.

6   MR JUSTICE STEEL:  Yes.

7   MS BLANCHARD:  First of all my Lord, on the question of comity.  It is not now and

8        never has been the law in this jurisdiction that before making an application for an

9        anti-suit injunction the Applicant must first discharge such avenues as are available

10       to them in the foreign Court.  And in as much as Mr Rosen sought to persuade your

11       Lordship that that is the law, it is not.

12       Very quickly my Lord, in *The Angelic Grace*, that your Lordship has in

13       authorities, bundle 1 at tab 6…  If your Lordship could turn that up.  At page 96 in

14       the right hand column in the penultimate paragraph:

15       "In my judgement, where injunction is sought to restrain a party from

16       proceedings in a foreign Court in breach of an arbitration agreement the English

17       Court need feel no diffidence.  Provided it is sought promptly and before the foreign

18       proceedings are too far advanced, I see no difference in principle between an

19       injunction to restrain proceedings which have breached an arbitration clause or have

20       breached an exclusive jurisdiction clause".

21       Pausing there my Lord.  Two points.  Not only is it not the law that we have

22       to pursue every avenue open to us in New York.  On the contrary.  If we were to do

23       that and then bring our application for an anti-suit injunction here, it may be said

24       against us we had delayed unnecessarily.  It may also be said against us that there is

25       some sort of issue estoppel or *res judicata* that arises out of any decision of the

26       New York Court.  So we bring this application promptly, and we do so deliberately

1     and in accordance with authority.

2          And also my Lord, if your Lordship goes quickly forwards to tab 13 in this

3     bundle, at page 1102. One of the many decisions arising out of the *Metro* litigation

4     which I venture your Lordship might be familiar with.

5   MR JUSTICE STEEL:  Yes.  Sorry, page what?

6   MS BLANCHARD:  Page 1102.

7   MR JUSTICE STEEL:  Yes.

8   MS BLANCHARD:   At page 42, and I'm showing your Lordship the judgement of Mr

9     Justice Moore-Beck at first instance, but none the worse for that.  At paragraph 42

10    he says:

11          "Mr Gee sought to persuade me I should await the outcome of an

12    application by [inaudible] District Court to stay the proceedings on the grounds of

13    forum.  In my view that was only likely to lead to further difficulty.  Proceedings

14    before the District Court are at the earliest stage.  If I am satisfied, and I am, that the

15    continued prosecution of those proceedings will be vexatious and abusive, it is far

16    better that I grant relief now than seek to act at a later stage."

17          Now he says, in terms, considerations of comity don't prevent us getting on

18    with it.  So that is that point.

19          Secondly my Lord, also on the theme of comity, to some extent the

20    Defendants have brought this situation on themselves.  They sought and obtained an

21    urgent order in the New York proceedings.  They sought and obtained it on terms

22    that it has to be complied with before the jurisdictional challenge can be heard.

23    They have never offered to put off compliance with the order of 18 May pending

24    hearing of the jurisdictional challenge.  And they're not offering that now.  What

25    they're saying is, at twenty to four, as we get to the end of the hearing, Mr Rosen

26    says he can offer you some sort of comfort that if we arrive and be deposed the

1    Defendants won't take the point that thereby we're submitted to the jurisdiction.

2    Well my Lord it's far too late in the day for that offer to come now.

3    The point that we risk submission was, in our evidence, served over a week

4    ago. And if the Defendants wanted to make us a sensible offer on it they should

5    have done it before now because the position is, our advice is and the evidence is

6    that if we comply with the order of 18 May we risk a submission. I simply do not

7    know my Lord whether there is a way around that by agreement between the parties

8    in the way suggested by Mr Rosen or not. So what your Lordship cannot do is take

9    into account this sort of last minute last ditch sticking plaster sort of approach to

10    say, "Well I'm willing to offer you this and therefore you must arrive for your

11    deposition".

12    And the reality is my Lord, the evil of this situation, if there is one, is that

13    we have to comply before our jurisdictional challenge is heard. And the Defendants

14    have it within their power to change that state of affairs, and they've chosen not to.

15    Now my Lord, as regard what is and is not said for the various parties in the

16    New York proceedings, it's worth bearing this much in mind. Our evidence, as I've

17    said my Lord, was served over a week ago. The Defendants' evidence came in on

18    Friday in accordance with the timetable. We replied yesterday in accordance with

19    the timetable. And prior to Mr Rosen's submissions, notwithstanding that the way

20    in which the US proceedings are put has been at the forefront of our case from the

21    beginning, prior to Mr Rosen's submissions the only thing said about it was, "There

22    was an error".

23    What your Lordship has heard is a mixture of undertaking and evidence

24    from Mr Rosen as to how that happened and why that happened and what's going to

25    happen about it. And my Lord it is totally unsatisfactory to deal with it in that way,

26    orally on the hoof in circumstances in which they have a chance to put in evidence.

1   They haven't done it.  Your Lordship has to go with what the evidence is, and the

2   evidence is, in America we're being sued as employees; Ms Mansfield says it's a

3   mistake - she doesn't say what the mistake is; and we do not know what this

4   corrective action is said to be going forwards and is meant to sort this out.

5       And there is my Lord a really rather more fundamental problem with it

6   because what your Lordship's heard from Mr Rosen is that your Lordship can forget

7   about what's happening in America because in England they're allowed to put their

8   case in any way they choose, and provided they can convince your Lordship that it's

9   not an employment contract on that basis your Lordship can ignore what's

10  happening in America.  And to that end Mr Rosen seeks to orally re-write the

11  complaint, which is not an acceptable exercise.

12      But my Lord it goes further than that.  If your Lordship goes back to, please,

13  the bonus agreement momentarily, which your Lordship will find beginning on

14  page 115.  Now if your Lordship goes to page 118.  Mr Rosen took your Lordship

15  to covenants 2(a) 1 and 2.  And he sought to persuade your Lordship that what

16  'company' means in this context is MSL.  Namely, it is the company within the

17  group by which he says the Claimants are employed.  And my Lord that raises really

18  rather a fundamental problem because if your Lordship goes forward to 120, "and

19  either cooperation" provision, you see it says there:

20      "You will provide the company with such information as the company may

21  reasonably request."

22      Now the Defendants can't have it two ways my Lord.  They can't say, "Oh,

23  in an earlier provision in the bonus contract 'company' means MSL but for the

24  purposes of the New York proceedings 'company' in little e means MMC and Guy

25  Carpenter".  Because there are no two ways about it, and indeed it's fundamental to

26  what Mr Rosen had to say, that the obligation that is being enforced, one of them in

1    the New York proceedings is the cooperation provision.  And if 'company' in this

2    sense means MSL one has to wonder my Lord why MSL are not party to the New

3    York proceedings, and why MMC and Guy Carpenter are bringing them at all.

4        So there is my Lord a fundamental inconsistency in the middle of my

5    learned friend's case which requires him to use whatever definition of 'company'

6    suits him as the case may be.  And more importantly my Lord, if your Lordship

7    looks at the jurisdiction clause, at (n), which is on page 124:

8        "The company and you irrelatively submit the exclusive jurisdiction."

9        Once again my Lord, if that means MSL that is an agreement between us

10    and MSL but MSL aren't suing on it.

11        Mr Rosen sought to characterise my submissions about what 'company'

12    means in the context of this document, he says - his word, "absurd".  But my Lord

13    that does not arise out of the construction that my clients seek to put on this

14    contract, but arises out of the construction that MMC and Guy Carpenter put on this

15    contract for the purposes of suing on it in New York.  Because the fundamental

16    bottom line is that they say they are entitled to enforce the obligations arising under

17    this contract which must mean that they are casting themselves as being within the

18    definition of the expression 'the company'.  And where that gets us, my Lord, we

19    invite your Lordship to find, is we're right back where we started, is that there are a

20    whole load of features about the bonus contract which are suggestive that it is a

21    contract of employment.

22        And my Lord on that specific point, the whole basis of my learned friend's

23    submissions is that there is 'a' contract of employment.  As your Lordship knows,

24    that is not my clients' case.  And nor indeed is there any rule that an employee can

25    only ever have one contract of employment.  We do not say, and we have never

26    said, that MSL is not an employer for these purposes.  What we say is that the

1    bonus contract is parasitic on - doesn't matter what you call it - on the bonus

2    contract and that in seeking to enforce them in the way that they are that Guy

3    Carpenter and MMC are casting themselves in the role of our employer.  So it's

4    simply not right to say that Mr Rosen has some great point on the correspondence

5    that gives the lie to my case that we don't work for MSL because the truth is my

6    Lord we've never denied it.

7        And lastly, I think lastly my Lord …

8    MR JUSTICE STEEL:  Well sorry, the logical provision of this argument, which is an

9    important one, is that the duty of cooperation is only owed to the employer.

10   MS BLANCHARD:  Yes my Lord.

11   MR JUSTICE STEEL:  Therefore, leaving aside the burden of standard of proof, the issue

12   arises as to whether in due course in the New York proceedings the Claimants are

13   then in a sense entitled to sue.

14   MS BLANCHARD:  Yes my Lord.

15   MR JUSTICE STEEL:  Well where does that get us on this application?

16   MS BLANCHARD:  Where it gets us on this application my Lord is this, is that Guy

17   Carpenter and MMC are suing on the bonus contracts.  And they are doing so on the

18   basis that they are employers.  Having done so, having elected to do so, and having

19   elected to do so against the background that my clients are in danger of having to

20   split in New York, then what ought to happen is an injunction should be granted to

21   restrain those proceedings and they can come into the jurisdiction here and we can

22   argue here about who has locus, who has title to sue under this agreement, which is

23   where that argument ought to take place.

24       And logically, if one takes Mr Rosen's argument to its natural conclusion,

25   that will never happen because all that will happen is that MSL will sue us in this

26   jurisdiction where we should be in their capacity as our employer.  Because his

1    case, as I understand it, is that 'the company' means MSL.

2        And my Lord there's another fundamental problem.  The terms of …

3  MR ROSEN:  That isn't my case.  It's that the company and the particular provisions of

4      clause 2 …

5  MR JUSTICE STEEL:  Well we will come to it in a minute Mr Rosen …

6  MR ROSEN:  …which refer to …

7  MR JUSTICE STEEL:  …I agree I do not think [inaudible].  I am sorry, it is your case that

8      the employer is MSL.

9  MR ROSEN:  Yes.  Yes.  But my learned friend is suggesting that that's my case for the

10      purposes of clause 2(e), and it certainly isn't.

11  MS BLANCHARD:    Well my Lord there's a very interesting point.   How can an

12      expression which is defined have different meanings depending on which provision

13      you're looking at?  Because that is the effect of what Mr Rosen says.

14        But anyhow my Lord, the bottom line of all of that is this, is can your

15      Lordship decide that my clients don't have a good arguable case that this matter

16      comes within Section 5 of the regulation?  And can your Lordship decide that the

17      balance of convenience is against granting the order sought?  And those my Lord

18      are the fundamental questions, bearing in mind that where we start with all of this is

19      that we say as a matter of public policy as employees we are entitled to be sued

20      here.  And however you cut it my Lord, however one looks at it, the New York

21      proceedings are right out of our employment.  However sophisticated arguments

22      one runs they are right out of the fact that we were employees.

23  MR ROSEN:  Well look, just correct something my learned friend …

24  MS BLANCHARD:  My Lord I'd be very grateful if Mr Rosen - Mr Rosen's made his

25      submissions and I'm making my reply …

26  MR ROSEN:  [inaudible] the submission you've said I've made.

1   MS BLANCHARD:  I'm making my reply submissions my Lord and it's now five past

2       four.

3   MR ROSEN:  But if …

4   MS BLANCHARD:  His clients' undertakings expire in 25 minutes.  I would invite him to

5       sit down.

6   MR ROSEN:  No because it's important.  On 2(a) my submission is, "whilst you remain by

7       the company" means whilst you remain employed within the group.  I do not

8       suggest that 'company' should change and have different meanings.  If it should

9       have different meanings …

10  MR JUSTICE STEEL:  Well since we have got you on your feet Mr Rosen, let my just ask

11      you this and I think I was going to ask you this anyway.  I take your point that while

12      you remain employed by the company it means, you say, employed within the

13      group.  2(a).  "Throughout the notice period the company shall have the obligation

14      to pay you the base salary".  And I think you say that means the relevant company

15      in the group who is obliged to pay the salary.

16  MR ROSEN:  It's all the group if the relevant company within the group who is obliged

17      doesn't pay it.  That doesn't make the group the employer.  The employee is an

18      employee of a service company which is within a group.  Nothing in 2(a) or 22(a)

19      means that the group is the employer.

20  MR JUSTICE STEEL:  Perhaps I - I think I am understanding.  I know [inaudible] is

21      slightly different.  [inaudible] what does company mean in 2(a).  Does it mean …

22  MR ROSEN:  Well …

23  MR JUSTICE STEEL:  …any company in the group or the relevant company?

24  MR ROSEN:  Well the company is defined as essentially the entire group.  That's the

25      definition in the agreement.

26  MR JUSTICE STEEL:  [inaudible]

1    MR ROSEN:  And what I was addressing your Lordship on is how clause 2 should be read

2        ...

3    MR JUSTICE STEEL:  Yes I see.

4    MR ROSEN:  Meaning when you know that you have employees who are employees of

5        service companies in different countries within the group, and the parent has a stock

6        incentive scheme for all those different senior executives.  2(a)1 means it's

7        employed within the group.  2(a) means the group will pay you salary in the same

8        way which will continue as other employees.  So the group as a whole has all

9        different employees in all different service companies.

10   MS BLANCHARD:  Well, however Mr Rosen dresses it up he is saying that you have a

11        different definition of company depending on which clause that you're looking at.

12        And certainly my note says that his submission was that 'company' means MSL for

13        some purposes and not for others.  But the position is that 'company' as a defined

14        expression it means the group entities within the group.  And indeed it is for that

15        reason that both MMC and Guy Carpenter seek to be entitled to enforce the

16        obligations under the bonus contract.  And indeed my Lord it is specifically Guy

17        Carpenter who is identified as being the Claimant's employer.

18            Now my Lord if 'the company' doesn't mean MSL for the purposes of (e),

19        or indeed the exclusive jurisdiction clause, then it doesn't mean it for the purposes

20        of other provisions of the contract.  It would be an extraordinary contract my Lord if

21        such companies as within the MMC group as choose to could decide on a whim to

22        seek to enforce any particular provision of the agreement.

23            My Lord, where all of that gets to at the end of the day we invite Your

24        Lordship to find that there is a good arguable case in the sense of a serious issue to

25        be tried that my clients are right.  The only party in this case who is at risk of

26        irremediable prejudice is my clients.  Not the defendants.  And for that reason, the

1  balance of convenience is in favour of granting the injunction.  I don't want to take

2  a lot of time with this, but Mr Rosen has sought to categorise my clients' conduct as

3  seeking to avoid compliance with their obligations in some way.  We don't accept

4  that as a proper assessment of the way that we have behaved.  There are issues

5  between the parties as to what the proper scope of our obligations may be said to be.

6  I'm not asking Your Lordship to rule on them today but on any view we say if,

7  which is what the defendants have said contingently they would do if Your

8  Lordship grants the injunction, if the claimants start here they can make an

9  application here for such relief as they think they are entitled to and it can be

10  adjudicated on in due course, and that there are issues between the parties is the

11  scope of those obligations is neither here nor there, but I ought to record My Lord

12  that we do not accept Mr Rosen's fundamental premise that they are entitled to ask

13  us anything they like and that we are obliged to answer it.  And My Lord, I ought to

14  say as well, that the position is that whilst Mr Rosen says if they come here they'll

15  be asking Your Lordship to make exactly the same Order, Your Lordship will know

16  that he wouldn't certainly, at minimum, would not have power to order aural

17  depositions and that is one of the grounds that we rely on in the New York

18  proceedings as being vexatious, unconscionable or oppressive.  So it's simply not

19  the case that the two would stand or fall together.  And at the end of the day My

20  Lord it is the defendants who have procured for themselves an Order which in

21  substance involves the claimants having to comply with the cooperation clause

22  before any questions as its validity can be determined, and that My Lord we say is

23  not appropriate.

24  MR JUSTICE STEEL:  Yes.

25  MS BLANCHARD:  And those would be issues for, if the matter comes here, those would

26  be issues for trial.  My Lord, I'm conscious it's ten past four.

1    MR JUSTICE STEEL:  So am I.

2    MS BLANCHARD:  I'm in Your Lordship's hands as to what he wants to do now at …

3    MR JUSTICE STEEL:  Well I want to finish.  Indeed, I've got to finish, because I've got to

4         go and read tomorrow's case yet.  Where have we got to?  I think the only option I

5         think open to me is to try and give an extempore judgment, which will doubtless be

6         rather inadequate, but I see no alternative.

7    MS BLANCHARD:  Well the alternative My Lord if you wanted to reflect on it …

8    MR JUSTICE STEEL:  Well I am not going to be able to return to it tonight or tomorrow,

9         or Friday - or next week.

10   MS BLANCHARD:  My Lord, I'm in Your Lordship's hands.  The alternative would be to

11        grant the Order for a short period or for the defendants to under, to extend their

12        undertakings but I understand them not to be willing to do that.

13   MR JUSTICE STEEL:  Well I understand they are.  Do you want to add anything Mr

14        Rosen?

15   MR ROSEN:  Well My Lord, no, save, save that as far as the part of the Application which

16        goes to the 18th May Order is concerned …

17   MR JUSTICE STEEL:  Sorry, you mean the US Order?

18   MR ROSEN:  Yes, the US.  As far as that's concerned …

19   MR JUSTICE STEEL:  But your application[?] [inaudible]...

20   MR ROSEN:   No.    No.    My learned  friend  seeks  to  restrain  any  steps  in  the  US

21        proceedings which as I've already submitted to Your Lordship would stop us for

22        example finding submissions on the jurisdiction application, so the real urgency is

23        in relation to enforcement of the Order of the 18th May and our difficulty is that if

24        Your Lordship grants an anti-suit injunction against that we want to get on with the

25        English claim which is our cross-application which Your Lordship can't possibly

26        determine now.

1    MR JUSTICE STEEL:  I thought your, I am sorry, I thought your cross- application, again

2        was in two parts …

3    MR ROSEN:  It is.

4    MR JUSTICE STEEL:  … one was to enforce the American Order …

5    MR ROSEN:  Yes, which Your Lordship's not going to get to today …

6    MR JUSTICE STEEL:  No.

7    MR ROSEN:  Because there are issues on that?

8    MR JUSTICE STEEL:  So, your cross-application is alive whether or not [inaudible].

9    MR ROSEN:  It is but it all, it all depends on what Your Lordship does regarding an anti-

10       suit injunction concerning the 18th May Order.  That's all I wanted to say.

11          I'm sorry to rise again, Your Lordship could just give a decision and

12       perhaps a reason or a main reason, but again it's entirely a matter for Your Lordship

13       because a decision would tell us what we need to know going forward at least on

14       that aspect.

15    MR JUSTICE STEEL:  I am just going to chew that over as to when, well when are you

16       anticipating your cross-application is going to be heard?

17    MR ROSEN:  Well, I mean we just seek to get it on as soon as we can.

18    MR JUSTICE STEEL:  Right.

19    MR ROSEN:  We hoped it could be heard at the same time as this Application, it's just not

20       possible?

21    MR JUSTICE STEEL:  Well I am assuming that whatever my decision, it's [inaudible] to

22       turn up on the 13th May.

23    MR ROSEN:  That might be right and until we get to our cross-application that might be

24       right and then I suppose one has to worry about one side or the other going to the

25       Court of Appeal.  Right so I'm sorry I'm not in a position to assist Your Lordship

26       by just saying that it can wait because I don't believe it can but it may be that

1     there's some way …

2     MR JUSTICE STEEL:  Well there is not much point in my giving a decision without

3     reason, because you'll want to appeal it.  Of course I eventually will give reasons

4     but the timetable does not fit in there.

5     MS BLANCHARD:  My Lord, may I make two points.  One is that the undertaking's

6     expire at half past four because that is the date to which, the time to which the

7     defendants are willing to give them.  It's not at all apparent why, what the magic is

8     with half past four today, and it seems to us they could just as well extend them but

9     let's assume they're not willing to do that and they're not.  As regards the cross-

10     application, then it will just have to come on as soon as it can be brought on,

11     assuming the defendants can convince listing that it's urgent and must come on.  As

12     regards next Wednesday, My Lord it's not satisfactory for my clients to be left

13     hanging as it were.  We do not wish to be in breach of an Order of the New York

14     Court.  Equally, we do not wish to comply with it and submit and for those reasons

15     my Lord it is not very satisfactory to proceed on the basis that well nothing will

16     happen if we don't show up, because realistically, a choice needs to be made one

17     way or another.  And with that My Lord, I suspect we're in Your Lordship's hands

18     but equally I don't disagree with Mr Rosen that if what Your Lordship wants to do

19     is to give a decision, indicate what the decision is and give reasons later, although

20     that's perhaps not the most ideal way forwards, that may be all that realistically

21     there is time to do.

22     MR ROSEN:  I don't know whether, whether this will help and I say it for myself, I'm not

23     saying it for my client, the cross-application is urgent which is why the Judge

24     ordered it to come on at the same time if possible, and if we're going to have the

25     positions next week then we do need the documents in advance of the depositions

26     and the documents are waiting with Elborne Mitchell because that was their

1    undertaking over until today.  There may be an answer.  If Your Lordship was with

2    my learned friends on part but not all of her Application and we had a decision on

3    the extent to which Your Lordship's going to grant or not grant it then we might be

4    able to work out some mechanism.

5  MR JUSTICE STEEL:  Well, I'm not sure why, I mean… if I refuse an injunction it does

6    not follow as I understand it that documents are released to you...

7  MR ROSEN:  No, because my learned friend is saying …

8  MR JUSTICE STEEL:  ..because they'll want to take the point that they're not obliged to.

9  MR ROSEN:  Yes, my learned friend says they've gone to Elborne Mitchell, so that they're

10    ready …

11  MR JUSTICE STEEL:  Right.

12  MR ROSEN:  … but that does not mean…

13  MR JUSTICE STEEL:  [inaudible]   So in a sense it does not matter what my decision is as

14    regards the question of how to grapple either your application to make a single one

15    in English proceedings or alternatively to enforce the American [inaudible –

16    crosstalk].

17  MR ROSEN:  Well for example Your Lordship could, and I'm not volunteering this, but

18    Your Lordship could order that we don't enforce the Order of the 18th May over

19    until you deliver judgment.

20  MR JUSTICE STEEL:  Yes.

21  MR ROSEN:  I'm not trying to suggest a timetable to Your Lordship, I'm really not, but in

22    the meantime Your Lordship may not make an Order which …

23  MR JUSTICE STEEL:  So you want to know whether in reality this court can offer, what,

24    another day to debate your cross-application.

25  MR ROSEN:  I'd hope it would be less than a day.  I don't know what my learned friend's

26    estimate is.

1    MR JUSTICE STEEL:  Right.  When have you been told that?

2    MR ROSEN:  No, we … I mean nothing is going to happen …

3    MR JUSTICE STEEL:  Well not before Wednesday that is for sure.

4    MR ROSEN:  Not before Wednesday that's for sure.  Beginning of July was the response

5        that we had last week.

6    MS BLANCHARD:  My Lord, I do think it's fair to say life has moved on a bit since then

7        in a sense that we got Your Lordship because there was a change in the fixtures and

8        My Lord I do think it's right to say that it's not right that nothing will happen

9        realistically if Your Lordship either doesn't give a decision or doesn't make an

10       Order.  If Your Lordship declines my Application, this afternoon in New York we

11       will receive a letter from the New York Attorneys saying "Please now immediately

12       comply …

13   MR JUSTICE STEEL:  Right.

14   MS BLANCHARD:  … with the obligation to provide documents and interrogatories".

15       That is what will happen.

16   MR JUSTICE STEEL:  I'm sure it will.

17   MS BLANCHARD:  And the proceedings will then, if Your Lordship's not minded to

18       make the Order, the proceedings will then have to proceed in the ordinary course.  If

19       Your Lordship, the point that I was making rather more broadly is if Your Lordship

20       wants time to reflect on it, the right answer would be, we would say to prevent

21       injustice, would be to grant an injunction until Your Lordship gives judgment

22       thereby protecting the position of my client.  But it is…

23   MR JUSTICE STEEL:  No, I think the best I could do would be to seek an undertaking

24       from the defendants that they would not seek to enforce the American Order until I

25       have produced a written judgment. It may not, I fear, be for some time.

26   MS BLANCHARD:  My Lord I don't know if that undertaking is on offer.