UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GUY CARPENTER & COMPANY, LLC and )
MARSH & McLENNAN COMPANIES, INC., )
) Case No. 07 – CV- 3580 (DC)
Plaintiffs, )
)
v. )
)
JULIAN SAMENGO-TURNER, RON )
WHYTE, and MARCUS HOPKINS, )
)
Defendants. )
)

---

### DEFENDANT RON WHYTE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' COMPLAINT DUE TO LACK OF PERSONAL JURISDICTION AND FORUM *NON CONVENIENS*

John P. Barry (JB 6489)
Mark A. Saloman (MS 5764)
Proskauer Rose LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200
973.274.3299 (Fax)

*Attorneys for defendant Ron Whyte*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT................................................................................................................................1

I.   MARSH'S INCLUSION OF AN ENGLISH FORUM SELECTION
     CLAUSE WITHIN WHYTE'S BONUS CONTRACT VOIDS
     THE COMPETING NEW YORK FORUM SELECTION CLAUSE ...........................1

   A.   Because The New York And U.K. Forum Selection Clauses
        Are Inherently Contradictory, Neither Are Determinative Of The
        Appropriate Forum Or Jurisdiction...........................................................................1

   B.   If The Court Must Choose, The English Forum Selection Clause
        Trumps The New York Forum Selection Clause.......................................................3

   C.   Two Competing Forum Selection Clauses in The Same Contract
        Create An Unprecedented Ambiguity Which Must Be Construed
        Against Plaintiffs .......................................................................................................4

II.  THE UNDISPUTED LACK OF WHYTE'S MEANINGFUL CONTACTS
     TO NEW YORK AND THE OVERWHELMING FACTORS WHICH WEIGH
     IN FAVOR OF COMPLETING THE ENTIRE LITIGATION IN ENGLAND
     WARRANT DISMISSAL OF PLAINTIFFS' COMPLAINT ........................................6

   A.   Plaintiffs Have Failed To Demonstrate Personal Jurisdiction Over Whyte ............6

   B.   Plaintiffs' Choice Of The New York Forum Is Entitled To No Deference
        Due To Their Blatant Admissions of Forum Shopping.............................................7

   C.   Plaintiffs Have Identified No Meaningful Factors To Justify Proceeding
        With This Action In New York ..................................................................................8

CONCLUSION..........................................................................................................................10

## **TABLE OF AUTHORITIES**

CASES

*67 Wall St. Co. v. Franklin Nat'l Bank,*
   37 N.Y.2d 245, 333 N.E.2d 184 (1975)..................................................................4

*Albany Sav. Bank, FSB v. Halpin,*
   117 F.3d 669 (2d Cir. 1997)..................................................................................4

*Beatie and Osborn LLP v. Patriot Scientific Corp.,*
   431 F. Supp. 2d 367 (S.D.N.Y. 2006).............................................................3-4, 7

*Computer Assoc. Int'l Inc. v. U.S. Balloon Mfg. Co.,*
   782 N.Y.S. 2d 117 (App. Div. 2d Dep't 2004).....................................................4

*Cromer Finance Ltd. v. Berger,*
   158 F. Supp. 2d 347 (S.D.N.Y. 2001)............................................................ 8-10

*Diatronics v. Elbit Computers, Ltd.,*
   649 F. Supp. 122 (S.D.N.Y. 1986) .....................................................................10

*DiChiara v. Ample Faith Investments Limited,*
   No. 06 Civ. 3838 (DLC), 2006 WL 3431197 (S.D.N.Y. Nov. 29, 2006)................4

*Hope's Windows, Inc. v. Woodbridge Glass, Inc.,*
   04-CV-0378E(Sr) (W.D.N.Y. Dec. 6, 2004) ....................................................2-3

*IBM Corp. v. Harrysson,*
   116 F. Supp. 2d 485 (S.D.N.Y. 2000)..................................................................3

*Iragorri v. United Techs. Corp.,*
   274 F.3d 65 (2d Cir. 2001).....................................................................................8

*Jones v. Weibrecht,*
   901 F.2d 17 (2d Cir. 1990).....................................................................................3

*JSC Surgutneftegaz v. President and Fellows of Harvard College,*
   2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005) *aff'd,* 167 Fed. App'x 266 (2d Cir. 2006) ..........3

*Lea Tai Textile Co., Ltd. v. Manning Fabrics, Inc.,*
   411 F. Supp. 1404 (D.C.N.Y. 1975) .....................................................................3

*Lewittes v. Blume,*
   786 N.Y.S. 2d 38 (App. Div. 1st Dep't 2004) ......................................................4

*Linea Naviera De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*,
   169 F. Supp. 2d 1341 (M.D.Fl. 2001)..................................................................5

*Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*,
   78 A.D.2d 262, 434 N.Y.S. 2d 359 (App. Div., First Dept. 1980) ...................2

*Lucente v. International Business Machines Corp.*,
   75 F. Supp. 2d 169 (S.D.N.Y. 1999)..................................................................9

*Sun Forest Corp. v. Shvili*,
   152 F. Supp. 2d 367 (S.D.N.Y. 2001)................................................................2

*Zamer v. Diliddo*,
   No. 97-CV-32S(H), 1997 WL 578753 (W.D.N.Y. Aug. 18, 1997) ..................2

## PRELIMINARY STATEMENT

As evidence of both personal jurisdiction and the propriety of this forum, Plaintiffs rely almost exclusively upon Ron Whyte's Bonus Contract's New York forum selection clause. Yet, the presence of the contradictory U.K. forum selection clause *within the same Contract* fundamentally undermines the relevance of both clauses in the document. This material ambiguity—now undisputed because Plaintiffs have disavowed their prior submissions and explanations to the Court concerning Schedule II.D and related provisions of the Bonus Contract—must be construed against Plaintiffs. Moreover, Plaintiffs' critical admissions to the High Court in the days following the filing of this motion dramatically illustrate that this New York action is the result of forum shopping, nothing more. Though that was clear enough at the inception of this case, Plaintiffs' subsequent admissions confirm that Plaintiffs are exploiting the American discovery system to fuel their affirmative claims in the U.K. Finally, Plaintiffs offer no meaningful reason why this case should not be dismissed and all of Plaintiffs' affirmative pending claims pursued together in London.

## ARGUMENT

I. **MARSH'S INCLUSION OF AN ENGLISH FORUM SELECTION CLAUSE WITHIN WHYTE'S BONUS CONTRACT VOIDS THE COMPETING NEW YORK FORUM SELECTION CLAUSE**

   A. **Because The New York And U.K. Forum Selection Clauses Are Inherently Contradictory, Neither Are Determinative Of The Appropriate Forum Or Jurisdiction**

The Bonus Contract's New York forum selection clause is hopelessly contradicted by the competing U.K. forum selection clause *within the same document*. Indeed, *none* of the cases cited by Plaintiffs involve one contract which, as here, contains two diametrically opposing forum selection clauses.

The case of *Zamer v. Diliddo*, No. 97-CV-32S(H), 1997 WL 578753 (W.D.N.Y. Aug. 18, 1997), however, is instructive. There, as here, plaintiff attempted to enforce defendants' license agreement to prevent them from impermissibly soliciting plaintiff's customers for a competitor. *Id.* at *1-2. Plaintiff also asserted that defendants had violated similar prohibitions within their shareholders agreement. *Id.* at *3. Because the two agreements contained different forum selection clauses, the district court gave weight to neither:

> Accordingly, I find that the forum selection clause in the license agreement is not determinative of the motion to transfer. Nor does it shift the burden of proof to plaintiff. Rather, the forum selection clause is but one of the factors for the court to consider in determining whether the action should be transferred.[1]

The court then applied the standard forum *non conveniens* analysis. *Id.* at *3-5.

Likewise, in *Hope's Windows, Inc. v. Woodbridge Glass, Inc.*, 04-CV-0378E(Sr) (W.D.N.Y. Dec. 6, 2004), the district court followed this approach when faced with equally valid California and New York forum clauses and "no clear agreement as to which forum selection clause governed." (Mem. and Order at 4.) Accordingly, the court canceled the conflicting terms from the contract and applied the standard minimum contacts analysis to resolve the jurisdictional question. *Id.* at 8 (citing cases). *Accord Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*, 78 A.D.2d 262, 269, 434 N.Y.S.2d 359, 364 (App. Div., First Dept. 1980) (when faced with two competing arbitration clauses with different venue provisions, lower court appropriately directed arbitration to proceed in venue which "was the most convenient place to try this arbitrable dispute."); *see also Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 386 (S.D.N.Y.

---

[1] *Id.* (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Red Bull Associates v. Best Western International, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988); *Falconwood Financial Corp. v. Griffin*, 838 F. Supp. 836, 839-40 (S.D.N.Y. 1993); *Water Energizers Ltd. v. Water Energizers, Inc.*, 788 F. Supp. 208, 212 n. 2 (S.D.N.Y. 1992); and *Intercontinental Monetary Corp. v. Performance Guarantees, Inc.*, 705 F. Supp. 144, 151 (S.D.N.Y. 1989)).

2001) (forum selection clause is only one of the "principles [which] must guide the Court in exercising [its] discretion" in determining forum *non conveniens* motion). Notably, the Second Circuit has not addressed this issue.[2] *See Hope's Windows*, at 7.

Enforcement of the New York forum selection clause is, therefore, "unreasonable and unjust" in the face of the competing and contradictory U.K. forum selection clause *and* additional evidence of Plaintiffs' forum shopping, discussed below. *Jones v. Weibrecht*, 901 F.2d 17, 18 (2d Cir. 1990) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). *Accord Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 391 (S.D.N.Y. 2006) (same); *JSC Surgutneftegaz v. President and Fellows of Harvard College*, 2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005) (forum-selection clause is unenforceable if "the Court finds that it is unjust.") *aff'd*, 167 Fed. App'x 266 (2d Cir. 2006).[3]

### B. If The Court Must Choose, The English Forum Selection Clause Trumps The New York Forum Selection Clause

Plaintiffs' attempt to enforce Section II.E. requires a showing that Defendants engaged in "Detrimental Activity" as defined by Clause 2.(a) of Schedule II.D. Any analysis of whether Detrimental Activity occurred thus mandates an examination of Schedule II.D. and, thereby, triggers the U.K. forum selection clause found at Clause 6 of Schedule II.D. The precise language of the jurisdiction-conferring clause in Clause 6—that the English Courts should "settle *any disputes as may arise in connection with this Schedule*"—is "of the more expansive variety."

---

[2] Indeed, competing views of the same issue are present in this jurisdiction. *See Lea Tai Textile Co., Ltd. v. Manning Fabrics, Inc.*, 411 F. Supp. 1404, 1407 (D.C.N.Y. 1975) (where two competing contracts had arbitration agreements which differed as to venue, both clauses—deemed "in hopeless conflict"—voided because court "will not impose its will on parties whose intentions are in clear conflict on this important issue.").

[3] *IBM Corp. v. Harrysson*, 116 F. Supp. 2d 485 (S.D.N.Y. 2000) does not alter this conclusion because defendant there did not challenge the sole forum selection clause at issue. *Id.* at 486.

3

*DiChiara v. Ample Faith Investments Limited*, No. 06 Civ. 3838 (DLC), 2006 WL 3431197, *5 (S.D.N.Y. Nov. 29, 2006). Indeed, the claim that Defendants engaged in Detrimental Activity "arise[s] in connection with" Schedule II.D. because that claim is entirely dependent "on rights and duties that must be analyzed by reference to the contractual relationship." *Id.* at *5 (citation omitted). Likewise, any attempt by Plaintiffs to enforce Defendants' non-solicitation obligations in their Bonus Contracts or seek damages from a breach of those provisions also is a "dispute" which has arisen "in connection with" Clause 2(a)(iv) and/or Clause 4 of Schedule II.D. Such a dispute also belongs in England according to Clause 6 of Schedule II.D.

Notably, Plaintiffs' opposition fails to address the fact that Schedule II.D, Clause 2 makes the English forum selection clause exclusive because it states: "*the provisions of this Schedule shall apply in place of . . . any other contrary provisions of the Agreement.*" Thus, the only reasonable interpretation of Clause 6 of Schedule II.D—when read in conjunction with Clause 2 of the same Schedule—is that the jurisdiction of the English courts "*shall* apply in place of" the "contrary" provision found at Section VI.N. and relied upon by Plaintiffs.

### C. Two Competing Forum Selection Clauses In The Same Contract Create An Unprecedented Ambiguity Which Must Be Construed Against Plaintiffs

To assess the reasonableness of a contractual forum selection provision, the Court must look to settled principles of contract law. *See Beatie*, 431 F. Supp. 2d at 391-92. There are fewer principles of contract law more settled in New York than the axiom that "any ambiguity in contract language must be construed against the party that drafted the contract, which in this instance was the plaintiff." *Computer Assoc. Int'l Inc. v. U.S. Balloon Mfg. Co.*, 782 N.Y.S.2d 117, 119 (App. Div. 2d Dep't 2004).[4] If, *arguendo*, the U.K. forum selection clause is not

---

[4] *Accord Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997); *Lewittes v. Blume*, 786 N.Y.S.2d 38, 39 (App. Div. 1st Dep't 2004); *67 Wall St. Co. v. Franklin Nat'l Bank*, 37

4

primary here, its inclusion in the Bonus Contract has created a material ambiguity which must be interpreted against the Plaintiffs because they drafted the document. (Pl. Brf. at 5).[5]

In the face of this ambiguity, the Plaintiffs' course of conduct toward the Defendants prior to the filing of this lawsuit becomes important. It is undisputed evidence that the parties intended to litigate this dispute in London, not New York, because—long before the case at bar was filed—Plaintiffs' U.K. management issued initial demands upon Defendants *in London*; Plaintiffs' U.K. counsel pursued those demands against Defendants *in London*; the parties' U.K. counsel then attempted to resolve some or all of the issues *in London*.[6] These undisputed facts further confirm that Plaintiffs recognized, and acted consistent with, the U.K. forum selection clause before they filed suit in New York. *See, e.g., Linea Naviera De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1347 (M.D.Fl. 2001).

Conversely, the *post hac* explanation from the inherently unreliable[7] Ms. Mansfield concerning Plaintiffs' purported need for "uniform administration" of the Bonus Contracts should be disregarded because she was not involved in the drafting of the document and

---

N.Y.2d 245, 249, 333 N.E.2d 184, 186 (1975) (citing 4 Williston, *Contracts*, § 621; 10 N.Y. Jur., *Contracts*, § 223).

[5] Adding to the ambiguity here is Plaintiffs' inexplicable contention before the High Court that "Schedule II D is . . . only applicable after termination of the Claimants' employment and *is accordingly not yet applicable*." (Supplemental Certification of John P. Barry, Exhibit 24 at 9, ¶23).

[6] *See* Complaint, Exhibits E, F, G, H, I (Docket Entry #1); May 17, 2007 Declaration of John P. Barry, Exhibits 2, 3 (Docket Entry #6); May 24, 2007 Declaration of John P. Barry, Exhibits 13, 14, 15, 16, 17 (Docket Entry #12).

[7] The High Court noted Ms. Mansfield's numerous misrepresentations to this Court to be "quite startling" and "undermines my faith in what she has to say." (Barry Supp. Decl., Exhibit 18, Tr. 66:10-19). *Accord* Tr. 66:23 to 67:1, 68:8-22. Despite Plaintiffs' repeated assurances to the High Court on June 6 that her litany of errors would "be corrected. There is no question at all of it," (Tr. 64:23 to 65:5; *accord* Tr. 63:17-26, 71:13-20, 84:14, 85:3, 93:6-8), no corrections have been made.

5

Plaintiffs have neither identified the original drafters nor offered a first-hand explanation why two profoundly conflicting clauses were ever included in the U.K. Bonus Contracts.

Plaintiffs also have conspicuously failed to identify for the Court how many different versions of Schedule II.D. exist for Bonus Contracts which apply to employees in "16 different countries." (Pl. Brf. at 6). Presumably, there are numerous similar dual forum selection clauses in the Bonus Contracts of the citizens of these other countries.[8] If, on the other hand, only British citizens like the Defendants have the benefit of availing themselves of the jurisdiction of their home forum, this further evidences Marsh's intent to treat English citizens differently than the other world-wide recipients of Bonus Contracts.

## II. THE UNDISPUTED LACK OF WHYTE'S MEANINGFUL CONTACTS TO NEW YORK AND THE OVERWHELMING FACTORS WHICH WEIGH IN FAVOR OF COMPLETING THE ENTIRE LITIGATION IN ENGLAND WARRANT DISMISSAL OF PLAINTIFFS' COMPLAINT

### A. Plaintiffs Have Failed To Demonstrate Personal Jurisdiction Over Whyte

Plaintiffs attempt to establish personal jurisdiction over Whyte by asserting that he allegedly traveled to New York a mere six times during his 18+ years with MSL and its predecessor companies. (Mansfield Decl., ¶¶3, 7). Ms. Mansfield's silence, moreover, makes clear that Whyte conducted no business in New York, other than to attend meetings which had no connection to the Bonus Contracts or anything else relevant to Plaintiffs' Complaint. *See* Mansfield Decl., ¶7. Likewise, Plaintiffs' claim that the Bonus Contracts are administered in the United States is undermined by their admission that the decisions and processes central to the Bonus Contracts (*i.e.*, who is deemed a recipient; the amount of the award; delivery of the award amounts) are handled in London through local management. (Mansfield Decl., ¶6).

---

[8] Indeed, the very fact that the British version of the Bonus Contract does not have a "Schedule I" or "II.A." or "II.B." or "II.C." suggests that other forum selection clauses abound.

Whyte's minimal travel to New York and Marsh's sporadic administrative processing aside, the undisputed proof remains that Whyte is a citizen and resident of the U.K.; was employed by MSL, a British company; MSL's immediate parent is also a British company; Whyte's employment with MSL was based in London at all times and was governed by employment contracts he received, executed, and performed in the U.K.; his employment contract with MSL includes a similar post-employment non-solicitation provision which is not governed by New York law nor provides for enforcement in a New York court; and perhaps most importantly, all of the alleged misconduct occurred in London and was directed at MSL. *See* May 24, 2007 Declaration of Ron Whyte, ¶¶2-8 (Docket Entry #11). "Indeed, jurisdiction cannot be founded upon random, fortuitous, or attenuated contacts." *Beatie*, 431 F. Supp. 2d at 387 (citing *SAS Group, Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003).

### B. Plaintiffs' Choice Of The New York Forum Is Entitled To No Deference Due To Their Blatant Admissions Of Forum Shopping

Defendants rely upon Plaintiffs' own recent admissions before the High Court as further proof that they have impermissibly engaged in forum shopping. In two extraordinary submissions, Plaintiffs confirmed that they are pursuing this action to obtain discovery in New York which they cannot obtain in England.

First, in their June 1, 2007 argument in support of their affirmative application for expedited discovery in the U.K., Plaintiffs advised the High Court that:

> If the information and documents indicate that Defendants have been so acting, [Marsh] may well be put in position to take steps, *including the seeking of restraining orders in the English Court*, to prevent the continuation of such activities before further damage is done to Guy Carpenter's facultative reinsurance business in London.

7

(Barry Supp. Decl., Exhibit 23 at 4-5, ¶9) (emphasis added). Later in that argument, Marsh again advised the High Court that it intends to stop any allegedly improper acts of Defendants "by, inter alia, seeking injunctive relief against the parties involved *in the UK courts*." (*Id.* at 10-11, ¶25) (emphasis added). *Accord* Exh. 18, Tr. 102:13-15.

If further evidence of this discovery abuse is required, the Court need look no further than Plaintiffs' June 4 submission to the High Court, in which—contrary to their acknowledgements here—they inexplicably contend that "Schedule II D [of the Bonus Contract] is . . . only applicable after termination of the Claimants' employment and *is accordingly not yet applicable*." (Barry Supp. Decl., Exh. 24 at 9, ¶23). This counterintuitive argument, clearly advanced to void Defendants' assertion of jurisdiction in the U.K., has been studiously disavowed by Plaintiffs in the U.S. and for good reason: If Defendants are *not* governed by Schedule II.D., then they cannot engage in "Detrimental Activity" as defined by Schedule II.D. Plaintiffs thus would be unable to pursue this action in New York for rescission of the Bonus Contract award. Plaintiffs' abuse of the New York discovery process—in the name of enforcement of the Cooperation Clause—would likewise come to an immediate halt.

Based upon Plaintiffs' forum shopping, which becomes more evident with each passing day, their choice of forum should be deemed irrelevant. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001).

### C. Plaintiffs Have Identified No Meaningful Factor To Justify Proceeding With This Action In New York

Other than to obtain the depositions of the Defendants which are unavailable in England, Plaintiffs have no legitimate justification for pursuing this action in New York. Defendants, moreover, must produce numerous of their current and former colleagues at the trial of this action and the unavailability "of compulsory process is significant" where, as here, "live

8

testimony of key witnesses is necessary so that the trier of fact can access the witnesses' demeanor." *Cromer Finance Ltd. v. Berger*, 158 F. Supp. 2d 347, 359 (S.D.N.Y. 2001).

Likewise, Plaintiffs' May 29, 2007 demand that each of the Defendants be presented for full seven-hour depositions—even before this pending motion is resolved—was founded as much upon their tactic of discovery abuse as their recognition that:

> cutting short these depositions will virtually assure that defendants will need to give testimony on multiple occasions, *significantly increasing the costs* to be incurred in connection with those depositions. *Such a result is neither efficient nor sensible.*"

(Barry Supp. Decl., Exhibit 25 at 1) (emphasis added). Forcing the British Defendants to litigate this case in New York when the bulk of the discovery will commence overseas is, likewise, "neither efficient nor sensible."

Moreover, Marsh and/or MSL fully intend to continue and expand their affirmative U.K. action against Defendants in the High Court to include claims which cannot, as a matter of English law, be brought in the United States. Based upon Plaintiffs' representations and pending *affirmative* claims in England, this Court should dismiss this case so that Plaintiffs can litigate all of their claims against all of the appropriate parties in one action before the High Court. In doing so, the Court would end the "[m]ultiplicitious global litigation" between the parties and, thereby, decrease the cost and burden on all of the parties and this Court. *Cromer*, 158 F. Supp. 2d at 362.

Finally, Plaintiffs' reliance on *Lucente v. International Business Machines Corp.*, 75 F. Supp. 2d 169 (S.D.N.Y. 1999), for the proposition that New York has an interest in applying world-wide compensation plans in a uniform manner is misplaced because the Bonus Contracts, on their face, "mean different things to different participants based on a participant's residence." *Id.* at 172. Here, Schedule II.D. contains numerous provisions and clauses reserved solely for U.K. residents. When it drafted the Bonus Contracts, Marsh clearly intended them to apply

9

distinctly to different people around the globe. New York, therefore, has no interest in applying a contract which, by design, must be applied differently in other countries.

Indeed, where the entirety of Plaintiffs' case alleges wrongful acts of a U.K. resident directed at a U.K. non-party corporation concerning allegedly improper conduct directed at other U.K. residents, England's local interest in the resolution of this dispute could not be stronger. *See Cromer*, 158 F. Supp. 2d at 356 ("There is no doubt that Bermuda has a significant interest in trying a case where wrongdoing is alleged against Bermuda-based entities, and even more so when the work was done, as was true here, in connection with a fund which was licensed to do business as a permit company in Bermuda."); *Diatronics v. Elbit Computers, Ltd.*, 649 F. Supp. 122, 128-29 (S.D.N.Y. 1986) (private factors point strongly to Israel as proper forum where "[a]lmost every significant event concerning the pertinent transaction took place in Israel" and relevant agreements "performed in Israel.").

## CONCLUSION

Based upon the foregoing, Defendant Ron Whyte respectfully submits that his motion be granted and that this matter should be dismissed in its entirety based upon the Court's lack of personal jurisdiction and/or the application of the doctrine of forum *non conveniens*.

Proskauer Rose LLP

Dated: June 15, 2007

/s/ John P. Barry
John P. Barry (JB 6489)
Mark A. Saloman (MS 5764)
For the Firm