# APPENDIX 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HOPE'S WINDOWS, INC.,                                              04-CV-0378E(Sr)

                 Plaintiff,                                          MEMORANDUM

-vs-                                                                                   and

WOODBRIDGE GLASS, INC.,                                             ORDER[1]

                 Defendant.

---

Plaintiff Hope's Windows, Inc. commenced this breach of contract action on February 20, 2004 against defendant Woodbridge Glass, Inc. and filed a Second Amended Complaint on June 25, 2004.[2] On July 21, 2004 defendant filed a Motion to Dismiss for improper venue, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCvP")[3] or, in the alternative, to transfer this action to the proper United States District Court in California, pursuant to 28 U.S.C. §1406(a). Defendant also asks for an evidentiary hearing to resolve the factual disputes if the Court finds such appropriate. For the reasons set forth below, defendant's motion will be denied.

---

[1] This decision may be cited in whole or in any part.

[2] This action was transferred from the Rochester division of the Western District of New York on May 19, 2004, 04-CV-6066T(F).

[3] Where a motion to dismiss is based on a forum selection clause, the Second Circuit recognizes a Rule 12(b)(6) motion as a proper method for dismissal based on improper forum. *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n.6 (2d Cir. 1998).

This action arises out of a series of transactions between plaintiff — a New York corporation — and defendant — a California corporation —, from which defendant agreed to pay plaintiff to manufacture and supply windows and other materials intended for installation by defendant for a project at SOKA University of America in Aliso Viejo, California (the "Project"). The contracts were made in New York and the goods were purchased F.O.B. Jamestown, N.Y. Defendant's agents and employees traveled to New York to meet with plaintiff's representatives for the purpose of arranging for the purchase of the goods and materials. Plaintiff alleges that defendant owes a balance of $157,413 on five contracts and is seeking said amount plus interest in addition to its attorneys' fees and costs as provided in the contracts.

Starting on January 28, 2000, plaintiff submitted a series of proposals to defendant corresponding to various stages of the Project.[4] Plaintiff's proposals were conditioned upon acceptance by defendant of plaintiff's standard terms and conditions, one of which was the forum selection clause dictating that disputes be resolved under New York law by a court sitting in New York State. Plaintiff's proposals frontally stated that each proposal was subject to all standard terms and conditions noted on their reverse sides, which included the forum selection clause. Plaintiff claims the proposals were faxed and sent by mail to defendant. Defendant, however, claims that it received only the front side of the proposals.

---

[4]Defendant asserts that there was no meeting of the minds until May 2000 when defendant responded to the proposals in writing.

- 2 -

In response, plaintiff contends that, even if such is true, defendant was placed on notice of the terms and conditions on the reverse side and, as a sophisticated party, should have requested the reverse side of the proposal.

Defendant responded to plaintiff's proposals on May 25, 2000 with purchase orders corresponding to and specifically referencing the job number assigned to each proposal. The purchase orders referenced an attached exhibit, which contained modified and additional terms and conditions intended to be added to the contracts and to impose on plaintiff a forum selection clause selecting California as the venue and California law for the resolution of disputes arising from the contracts. The purchase orders were signed by defendant but did not require plaintiff's signature. It is undisputed that on June 9, 2000 plaintiff rejected in writing defendant's terms and conditions. Defendant, however, claims that although plaintiff orally and in writing objected to its purchase orders' terms and conditions, plaintiff's performance signified acceptance. In July 2000 plaintiff sent an additional proposal for another stage of the Project with the same terms and conditions as in the previous proposals. In September 2000 defendant accepted the proposal with its purchase orders which, again, had modifying and additional terms. Plaintiff, on September 18, 2000, incorporated its June 9 letter and rejected the modified and additional terms proposed by defendant. Again, defendant claims that plaintiff's rejection amounted to acceptance by its performance.

Defendant claims that on August 11, 2000 and on September 19, 2000, in response to plaintiff's letters dated June 9, 2000 and September 18, 2000, it asserted both orally and in writing that the purchase orders would continue to govern the proper forum in which to litigate any dispute. Plaintiff claims it did not receive said faxes and was not party to any such communications. As a result, there was no clear agreement as to which forum selection clause governed.

Plaintiff asserts that defendant failed to modify the forum selection clause in the contracts and the forum selection clause in the proposals governs this dispute. In the alternative, plaintiff claims that New York is the appropriate venue because (1) plaintiff's business is in New York, (2) significant events related to the contract occurred in New York — *viz.*, the contracts were made in New York and the goods were purchased and delivered in New York —, (3) witnesses and documents related to its performance are located in New York and (4) defendant is subject to personal jurisdiction in New York. Defendant does not dispute these assertions and does not claim that, but for the forum selection clause, venue is improper in the Western District of New York.

Defendant, in support of its Motion to Dismiss, claims (1) that plaintiff agreed to the terms of the purchase orders by commencing performance, (2) that the forum selection clause in the purchase orders should not be considered a material change because the terms of the agreement were established in defendant's purchase orders and (3) that it was plaintiff who attempted to materially change the terms of the agreements by not agreeing

to defendant's forum selection clause and that defendant did not agree to this material change.

There is no dispute that each party sought to deal with the question of venue by contract. What is in dispute, however, is which of two conflicting forum selection clauses — that which is in plaintiff's contracts or that which is in defendant's purchase orders —, if either, is to govern the question of venue and, for that matter, the entire action. After reviewing all the evidence and weighing all the allegations, this Court finds that here was no agreement as to the forum selection clause. Furthermore, an evidentiary hearing will not alter this finding and is thus not necessary. Therefore, defendant's motion will be denied.

The only states with an interest in this litigation are New York and California. In transactions involving the sale of goods, both of these states look to the Uniform Commercial Code ("UCC"). *One Step Up, Ltd. v. Kmart Corp.*, 1997 U.S. Dist. LEXIS 9897, at *3 (S.D.N.Y. July 11, 1997); *AB Avnet EMG v. Sierra Semiconductor Corp.*, 1996 U.S. App. LEXIS 8492, at *3 (9th Cir. Mar. 22, 1996). The provisions of the UCC are regarded as generally accepted principles of contract law and both parties agree that UCC §2-207 governs this action. UCC §2-207 states:

> "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

>(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>   (a) the offer expressly limits acceptance to the terms of the offer;
>   (b) they materially alter it; or
>   (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
>(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act."

Defendant's purchase orders were in response to each of plaintiff's proposals and were signed by defendant. Defendant does not assert that the purchase orders made acceptance expressly conditional on plaintiff's assent to the additional or different terms such that the purchase orders were counteroffers rather than acceptances. *See* UCC §2-207(2). The parties, moreover, agree that they have entered into agreements for the sale of glass parts and enforceable contracts resulted therefrom. Finally, Comment One of the Official Comment to UCC §2-207 specifically states that this provision of the UCC is aimed at purchase orders with additional or different terms that nonetheless function as acceptances.[5]

---

[5]Comment 1 to UCC §2-207 states, in pertinent part:
"This section is intended to deal with two typical situations. The one is the written confirmation, where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed. The other situation is offer and acceptance, in which a wire or letter expressed and intended as an acceptance or the closing of an agreement adds further minor suggestions or proposals such as "ship by Tuesday," "rush," "ship draft against bill of lading inspection allowed," or the like. A frequent example of the second situation is the exchange of printed *purchase order* and acceptance (sometimes called

(continued...)

As such, the purchase orders were written confirmations, as that term is used in UCC §2-207(1). *See One Step Up*, at *4-*5. Having determined that the purchase orders were written confirmations, the Court can now address the key issue at bar — what effect does the forum selection clause in the purchase orders have on the forum selection clause in the contracts?

There are two schools of thought regarding such conflicting terms and the Second Circuit has yet to decide to which school it belongs. The minority view treats the conflicting terms in the acceptance as "additional" terms and applies UCC §2-207(2) which permits the terms of the offer to control.[6] In this case, it is undisputed that plaintiff's proposals were the offers and defendant does not assert that its purchase orders were counteroffers. As such, the minority view would permit plaintiff's forum selection clause to control and venue

---

[5](...continued)
"acknowledgment") forms. *Because the forms are oriented to the thinking of the respective drafting parties, the terms contained in them often do not correspond. Often the seller's form contains terms different from or additional to those set forth in the buyer's form. Nevertheless, the parties proceed with the transaction.*" (Emphasis added).

[6]Some courts view the conflicting terms as "additional terms" and, pursuant to UCC §2-207(2), hold that such "are to be construed as proposals for addition to the contract" and, between merchants as is the case here, such terms become part of the contract "unless they materially alter it." It is clearly established that a forum selection clause would materially alter a contract and therefore requires the express consent of the other party. *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 781-782 (2d Cir. 2003) (citing with approval *Lorbrook Corp.* v. *G & T Indus., Inc.*, 562 N.Y.S.2d 978, 980 (App. Div. 1990) (holding that an attempt to add a forum selection clause by means of a purchase order that was issued without the express consent of the other party was an ineffective material alteration under UCC §2-207)). Under this application of UCC §2-207, plaintiff's forum selection clause controls because plaintiff made the offer and defendant's acceptance in the form of its purchase orders attempted to materially alter the agreement, to which plaintiff undisputedly did not expressly consent. Thus, under this approach, venue is proper in New York.

would be proper in New York State. The majority view, known as the "knock out" approach, applies the terms to which the parties agreed and cancels the conflicting terms. *See Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 652-654 (E.D.Pa. 2002) (explaining the justifications for both approaches); James J. White & Robert S. Summers, *Uniform Commercial Code*, §1-3 at 10-15 (4th ed. 1995). Although both approaches produce the same result — *viz.*, venue in New York State is proper — this Court will apply the knock out approach because it follows the text of UCC §2-207 and the Official Comments more closely[7] and more courts appear to agree with it. *See, e.g., Northrop Corp. v. Litronic Indus.*, 29 F.3d 1173, 1178 (7th Cir. 1998) (finding that the UCC "does not say what the terms of the contract are if the offer and acceptance contain different terms, as distinct from cases in which the acceptance merely contains additional terms to those in the offer" and "[t]he majority view is that the discrepant terms fall out"); *Ionics, Inc. v. Elmwood Sensors, Inc.*, 110 F.3d 184, 189 (1st Cir. 1997) (holding "where the terms in two forms are contradictory, each party is assumed to object to the other party's conflicting clause" and performance is insufficient to infer consent); *Dassault Falcon*

---

[7]The text of UCC §2-207(2) refers only to additional terms, appearing to intentionally not apply the subsection to "different" terms. Furthermore, Comment 6 to UCC §2-207 appears to promote the knock out approach and states in pertinent part:
"Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and *the conflicting terms do not become a part of the contract*. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2)." (Emphasis added).

*Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 352 (M.D.N.C. 1995) (holding that the choice of law provisions did not become part of the contract because they "constitute a material alteration to the contract, and neither party accepted the other's offer to include the clause"); *Steiny & Co., Inc. v. California Elec. Supply Co., Inc.*, 93 Cal. Rptr. 2d 920, 926-927 (2000) (applying knock out rule); *Flender Corp. v. Tippins Int'l, Inc.*, 830 A.2d 1279, 1286-1287 (Pa. 2003) (same).

Under the knock out approach, the forum selection clauses — the conflicting clause in the offer and acceptance — fall out or cancel each other — *i.e.*, are "knocked out." Without objections from defendant to this Court's exercise of personal jurisdiction over it, venue in New York, absent a forum selection clause, is proper.[8] Therefore, under either approach, New York State is not an improper venue and defendant's motion will be denied.

Accordingly, it is hereby **ORDERED** that defendant's Motion to Dismiss for improper venue is denied.

DATED:   Buffalo, N.Y.

   December 3, 2004

                                           /s/ John T. Elfvin
                                           ―――――――――――――――――
                                           JOHN T. ELFVIN

---

[8] Plaintiff asserts and defendant does not deny that the contracts were made in New York and the goods were purchased and delivered in New York. Defendant does not dispute that such contacts are more than sufficient for this Court to exercise personal jurisdiction over defendant.

S.U.S.D.J.

- 10 -