# APPENDIX 3

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 1863676 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

H
**JSC Surgutneftegaz v. President and Fellows of Harvard College**
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
**JSC SURGUTNEFTEGAZ**, Petitioner,
v.
PRESIDENT AND FELLOWS OF **HARVARD** COLLEGE, Respondent.
No. 04 Civ. 6069(RCC).

Aug. 3, 2005.

MEMORANDUM & ORDER
CASEY, J.
*1 JSC Surgutneftegaz (" Petitioner" ) brought a petition to stay arbitration against the President and Fellows of Harvard College (" Respondent" ) in New York State court. Respondent removed the petition to this Court. The Court finds all of Petitioner's arguments against arbitration to be without merit. For the reasons that follow, the petition to stay arbitration is DENIED.

I. BACKGROUND

Petitioner is an oil and gas company organized under the laws of the Russian Federation. Petitioner's common and preferred stock is publicly traded in Russia, and since 1996 its stock has been available for purchase by investors in the United States under an arrangement between Petitioner and The Bank of New York. Under this arrangement, ING Eurasia holds shares of Petitioner's stock in Moscow as custodian for The Bank of New York, which issues what are called American Depositary Shares (" ADRs" ) to investors in the United States. Respondent is one of those investors, owning over three million ADRs that represent preferred shares in Petitioner.

Respondent claims that as an owner of ADRs, it is entitled to an annual fixed dividend guaranteed in Petitioner's company charter and prospectus. Respondent maintains that Petitioner has been paying insufficient dividends. The sale of ADRs representing preferred shares is governed by a deposit agreement of March 19, 1998 among Respondent, The Bank of New York, and owners of ADRs.[FN1] Section 7 .06 of that agreement is an arbitration clause that states:

> FN1. The Deposit Agreement provides that " Owners and Beneficial Owners of [ADRs] from time to time shall be parties to this Deposit Agreement and shall be bound by all of the terms and conditions hereof and of the [ADRs] by acceptance thereof." (JSC Surgutneftegaz and The Bank of New York as Depositary and Owners and Beneficial Owners of American Depositary Receipts Deposit Agreement, Mar. 19, 1998 § 7.04.)

(a) Any controversy, claim or cause of action brought by any party hereto against the Company arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Agreement, or the breach hereof or thereof, shall be finally settled by arbitration in accordance with the rules of the American Arbitration Association, which rules are deemed to be incorporated by reference into this Section 7.06, ... and provided further that any such controversy, claim or cause of action relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder may, but need not, be submitted to arbitration as provided in this Section 7.06.
The place of arbitration shall be New York, New York, and the language of the arbitration shall be English.
....
(b) Any controversy, claim or cause of action arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Deposit Agreement not subject to arbitration shall be litigated in the Federal and state courts in the Borough of Manhattan.

(JSC Surgutneftegaz and The Bank of New York as Depositary and Owners and Beneficial Owners of American Depositary Receipts Deposit Agreement, Mar. 19, 1998 (" Deposit Agreement" ) § 7.06.)

Pursuant to the arbitration clause in the Deposit Agreement, Respondent sought to compel arbitration against Petitioner before the American Arbitration Association (" AAA" ) in New York by filing a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d       Page 2
Not Reported in F.Supp.2d, 2005 WL 1863676 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

notice of arbitration. Respondent asserts three substantive claims: (1) breach of the Deposit Agreement, (2) violation of Petitioner's company charter by failing to declare and pay the required dividends, and (3) securities fraud under the U.S. securities laws. [FN2] Petitioner, in response, filed a motion to stay arbitration in New York State Supreme Court. Respondent removed the petition to this Court pursuant to 9 U.S.C. § 205, which provides for removal of cases relating to arbitration agreements that fall under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (" New York Convention" ), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.

> FN2. Respondent also seeks a declaration that Petitioner has incorrectly calculated the amount of dividends.

*2 In support of its petition to stay arbitration, Petitioner argues that: (1) the arbitration agreement is invalid on the public-policy grounds of comity, the internal-affairs doctrine for corporations, and *forum non conveniens;* (2) the agreement does not encompass Respondent's claims; and (3) the securities-fraud claim is barred by the statute of limitations. Petitioner also argues that, if the dispute is arbitrable at all, it must be arbitrated in London under the rules of the London Court of International Arbitration pursuant to a provision of the ADRs themselves.

## II. DISCUSSION

### A. Federal Not State Law of Arbitrability Applies

As an initial matter, Petitioner argues that the Court must decide whether arbitration should be stayed as a matter of New York State law. But the question is governed by federal, not state, law. Chapter 2 of the Federal Arbitration Act (" FAA" ) incorporates the New York Convention. See 9 U.S.C. § 201. Section 202 of the FAA explains:

An arbitration agreement ... arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the [New York] Convention. An agreement ... arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the [New York] Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

*Id.* § 202. For the New York Convention to apply to this dispute, there must be a written arbitration agreement that provides for arbitration in the territory of a signatory to the Convention, the subject matter of the relationship between the parties must be commercial, and the dispute cannot be entirely domestic in scope. *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 92 (2d Cir.1999). These requirements are all undisputedly met here: The Deposit Agreement contains a written arbitration clause providing for arbitration in the United States regarding the purchase and sale of securities in a foreign corporation. As such, it is governed by the New York Convention through the FAA.[FN3]

> FN3. Respondent's removal of this action pursuant to Chapter 2 of the FAA was appropriate because this Court has federal-question jurisdiction under the New York Convention, 9 U.S.C. §§ 203, 205, and allows the Court to decide the petition to stay arbitration despite the apparent unavailability of such a motion under the FAA, see *Republic of Ecuador v. ChevronTexaco Corp.,* __ F.Supp.2d __, No. 04 Civ. 8378(LBS), 2005 WL 1514031, at *11 (June 27, 2005) (holding that, despite the seeming unavailability of a petition to stay arbitration under the FAA, jurisdiction was proper under Chapter 2 of the FAA because the defendants sought to permit arbitration by removing and opposing a petition to stay arbitration originally brought in state court under state law). The failure of Petitioner to invoke Chapter 2 of the FAA in seeking a stay does not deprive this Court of subject-matter jurisdiction because the applicability of the New York Convention is apparent from Respondent's notice of removal. *See* 9 U.S.C. § 205 (" [T]he ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal." ).

The Court must apply the " federal substantive law of arbitrability" in determining whether the disputes are arbitrable under the FAA. *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983) (holding that the FAA section 2 creates a federal substantive law of arbitrability applicable to any arbitration agreement that falls within the FAA).[FN4]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 3
Not Reported in F.Supp.2d, 2005 WL 1863676 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

That substantive law includes a presumption in favor of arbitration, which requires that " any doubts concerning the scope of arbitrable issues" shall be resolved in favor of arbitration, *id.* at 24-25, but a presumption that the Court, rather than the arbitrator, is to decide whether matters are subject to arbitration, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45 (1995).

> FN4. Section 2 of the FAA applies to arbitration agreements that come within the New York Convention through FAA section 208. *See* 9 U.S.C. § 208 (" Chapter 1 [of the FAA] applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the [New York] Convention as ratified by the United States." ).

*3 In deciding whether the matters raised in Respondent's notice of arbitration are properly arbitrable under the FAA, the Court's role is limited to determining whether a valid and enforceable arbitration agreement exists between the parties and whether one party has improperly failed, neglected, or refused to arbitrate. *Shaw Group Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 120 (2d Cir.2003). Petitioner's arguments as to the first question (that the arbitration agreement is unenforceable on grounds of public policy) are without merit. As to the second question, the Court finds that the parties have committed the decision on whether their disputes are arbitrable to arbitration.

B. The Arbitration Agreement is Not Unenforceable on Public-Policy Grounds

Petitioner maintains that the arbitration agreement should not be enforced on the public-policy grounds of international comity, the internal-affairs doctrine for corporations, and *forum non conveniens.* None of these is a valid reason for refusing to enforce the arbitration agreement. Article II(1) of the New York Convention provides:
Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter *capable of settlement by arbitration.*

330 U.N.T.S. at 38 (emphasis added). The Convention also permits refusal to enforce arbitration agreements on the grounds that they are " null and void, inoperative or incapable of being performed." *Id.,* art. II(3), 330 U.N.T.S. at 38. The Court need not wade very far into the murky waters of Article II to reject Petitioner's arguments.[FN5] It has been suggested that the public policy of the enforcing jurisdiction may provide a means to refuse enforcement of an arbitration agreement under Article II. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 639 n .21 (1985) (" We do not quarrel with the Court of Appeals' conclusion that Art. II(1) of the Convention ... contemplates exceptions to arbitrability grounded in domestic law." ). If that is so, then it must be public policy as a matter of federal, not state, law. *See Smith/Enron Cogeneration Ltd.,* 198 F.3d at 96 (" When we exercise jurisdiction under Chapter Two of the FAA, we have compelling reasons to apply federal law, which is already well-developed, to the question of whether an agreement to arbitrate is enforceable." ); *InterGen N.V. v. Grina,* 344 F.3d 134, 143 (1st Cir.2003) (holding that federal common law applies to the enforceability of arbitration agreements that fall under the New York Convention). Even if the public policy of the United States is a valid reason for declaring an arbitration agreement unenforceable under Article II, that public policy does not embrace the grounds that Petitioner urges.

> FN5. It is not clear under Article II whether the enforcing jurisdiction's law applies to questions of enforceability or whether some other law controls such as the law of the place of arbitration, the substantive law to be applied to the dispute, or general principles of law. *See, e.g., Rhone Mediterranee Compagnia Francese di Assicurazioni e Riassicurazioni v. Lauro,* 712 F.2d 50, 53 (3d Cir.1983) (noting that commentators disagree on whether the enforcing jurisdiction " should look to its own law and policy, to the rules of conflicts of law, or to the law of the place of execution of the agreement" ). The scope of the exceptions in Article II is also not entirely clear. *See id.* at 52 (describing the ambiguity as to the scope of Article II(3)).

*4 Petitioner's first argument-that international comity requires rejection of the arbitration agreement-is unavailing. " International comity is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Pravin Banker Assocs. v. Banco*

Not Reported in F.Supp.2d                                                                                                                Page 4
Not Reported in F.Supp.2d, 2005 WL 1863676 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*Popular del Peru,* 109 F.3d 850, 854 (2d Cir.1997) (internal quotation marks and citation omitted). The basis for its purported application here is that other holders of preferred shares litigated and lost similar claims before the Russian courts. According to Petitioner, enforcing the arbitration agreement would signal a disrespect for the judgments of those courts. But as the Supreme Court has held, " concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes" counsel *in favor of* enforcing international arbitration agreements, " even assuming that a contrary result would be forthcoming in a domestic context." *Mitsubishi Motors Corp.,* 473 U.S. at 629. The Supreme Court has therefore rejected the claim that enforcing arbitration agreements is inconsistent with concerns of international comity.

Notwithstanding the general principle that international comity favors enforcement of international arbitration agreements, Petitioner's argument fails for two other reasons. First, the Russian Federation is a party to the New York Convention, *Rosgoscirc v. Circus Show Corp.* Nos. 92 Civ. 8498 & 93 Civ. 1304(JSM), 1993 WL 277333, at *4 (S.D.N.Y. July 16, 1993), and therefore has agreed that other nations should enforce arbitration agreements to which its nationals are parties. Second, it is undisputed that Respondent was not a party to the litigation before the Russian courts or in privity with those who were parties to the litigation such as to make the Russian courts' decisions binding on Respondent. There is therefore little chance that enforcing the arbitration agreement in the manner in which the Russian Federation agreed when it acceded to the New York Convention would circumvent or undermine the decisions of the Russian courts. Thus, even if international comity were a valid ground for refusing enforcement of an arbitration agreement under Article II of the New York Convention, it is of no aid to Petitioner here.FN6

> FN6. To the extent that Petitioner raises comity as an affirmative defense to the merits of the arbitration, rather than as a ground for refusing to enforce the arbitration agreement, that argument must be directed to the arbitrators and not to the Court. *See U.S. Fire Ins. Co. v. Nat'l Gypsum Co.,* 101 F.3d 813, 817 (2d Cir.1996) (holding that defenses to the merits of a dispute subject to arbitration are arbitrable).

Petitioner's second ground for refusing to enforce the agreement-the internal-affairs doctrine-is equally meritless. Not surprisingly, Petitioner has failed to cite a single case in which a court has refused enforcement of an arbitration agreement under the New York Convention because the subject matter of the dispute went to a foreign corporation's internal affairs. The FAA does not carve out disputes relating to the internal affairs of corporations as an exception to the general enforceability of arbitration agreements. The Supreme Court has rejected the claim that particular areas of law are not arbitrable under the FAA without express congressional direction. *Mitsubishi Motors Corp.,* 473 U.S. at 639 n. 21 (" [W]e decline to subvert the spirit of the United States' accession to the [New York] Convention by recognizing subject-matter exceptions where Congress has not expressly directed the courts to do so." ). To the extent that New York law would exempt matters going to the internal affairs of corporations from arbitration, it is preempted by the FAA. *See Smith/Enron Cogeneration Ltd.,* 198 F.3d at 96; *Southland Corp. v. Keating,* 465 U.S. 1, 16 (1984) (holding that state laws which are less favorable to arbitration than the FAA are preempted).

*5 The doctrine of *forum non conveniens* is also no bar to arbitration here. In *Mitsubishi Motors Corp.,* the Supreme Court held that an arbitration agreement is a particular type of forum-selection clause. 473 U.S. at 629-30. The parties here agreed to arbitrate their disputes in New York and even to litigate such disputes that were not arbitrable in " the Federal and state courts in the Borough of Manhattan." (Deposit Agreement § 7.06.) The forum-selection clause is enforceable unless the Court finds that it is unjust or the product of fraud or overreaching. *See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.,* 145 F.3d 505, 510 (2d Cir.1998) (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972)). Given the importance of such clauses in international transactions, the parties' agreement is presumptively valid. *See Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1362 (2d Cir.1993) (" The Supreme Court certainly has indicated that forum selection and choice of law clauses are presumptively valid where the underlying transaction is fundamentally international in character." ).

It is Petitioner's burden to show that litigating in the selected forum " will be so gravely difficult and inconvenient that [it] will for all practical purposes be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 5
Not Reported in F.Supp.2d, 2005 WL 1863676 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

deprived of [its] day in court." *M/S Bremen,* 407 U.S. at 18. Petitioner has not met that burden. Instead, Petitioner merely relies on the standard *forum non conveniens* analysis to argue that it would be more convenient to decide the parties' disputes in a Russian court than before an arbitral tribunal. But that standard analysis is inapplicable when the parties have included a mandatory forum-selection clause. *See Blanco v. Blanco Indus. de Venezuela, S.A.,* 997 F.2d 974, 979-80 (2d Cir.1993) (holding that standard *forum non conveniens* analysis applies when the forum-selection clause is merely permissive, and *M/S Bremen* controls when the clause is mandatory). The arbitration agreement states that arbitrable disputes " shall be" decided before arbitrators in New York and that nonarbitrable disputes " shall be" litigated in New York courts, making the choice of forum mandatory rather than permissive. *See Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (2d Cir.1989) (holding that the use of " shall" with regard to venue in a forum-selection clause renders the clause mandatory). Given this mandatory language and the failure of Petitioner to demonstrate any ground under *M/S Bremen* for refusing to enforce the forum-selection clause, Petitioner must be held to its bargain.[FN7]

> FN7. Petitioner puts undue weight upon *Iberian Tankers Co. v. Terminales Maracaibo, C.A.,* 322 F.Supp. 73 (S.D.N.Y.1971), which it incorrectly describes as " on all fours" with this case, (Pet.'s Reply at 9). Two fundamental differences make that case of little precedential value to Petitioner. The court in *Iberian Tankers Co.* was not deciding the enforceability of an arbitration agreement under the New York Convention, perhaps because the New York Convention only became effective as a matter of U.S. law less than thirty days before the court decided the case. *Compare id.* (noting that the decision was issued on January 27, 1971), *with* Pub.L. No. 91-368, 84 Stat. 692, 693 (noting that FAA Chapter 2 became effective upon the entry into force of the New York Convention with respect to the United States), *and Yusef Ahmend Alghanim & Sons, W.L.L. v. Toys " R" US, Inc.,* 126 F.3d 15, 18 n. 1 (2d Cir.1997) (noting that the New York Convention was entered into force with respect to the United States on December 29, 1970). The case therefore does not address the specific question that applies here-whether *forum non conveniens* is a valid ground for staying arbitration under Article II of the New York Convention.

> In addition, the court in *Iberian Tankers Co.* did not invoke *forum non conveniens* to hold that the arbitration agreement was unenforceable, as Petitioner would like this Court to do. It merely dismissed the case before it because a foreign jurisdiction, in the court's judgment, was a better forum to decide the enforceability and scope of the arbitration agreement. *See* 322 F.Supp. at 75. Indeed, the court granted the motion to dismiss on the ground of *forum non conveniens* " conditioned upon the defendant appearing in any action brought by the plaintiff in Venezuela," the more convenient forum. *Id.* Petitioner's goal here, in contrast, is to permanently prevent the arbitration of the parties' disputes, not merely to switch the forum for deciding whether the disputes are subject to arbitration.

Petitioner's claims that the Deposit Agreement's arbitration clause is unenforceable all fail. Public-policy considerations of the United States, whether or not a valid ground for refusing to enforce an arbitration agreement under Article II of the New York Convention, do not impose an obstacle to arbitration here. And the FAA preempts any principles of New York State public policy that are less favorable to arbitration. Having thus concluded that the agreement is enforceable, the Court must address whether the particular disputes between the parties are arbitrable. But the arbitration agreement clearly and unmistakably refers the question of arbitrability to arbitration.

### C. The Parties Have Committed the Issue of Arbitrability to Arbitration

*6 As explained above, it is presumed that parties to an arbitration agreement that falls under the FAA have not agreed to arbitrate whether their disputes are subject to arbitration. " Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649 (1986). The Second Circuit has held, however, that " when ... parties explicitly incorporate rules [in an arbitration clause] that empower an

Not Reported in F.Supp.2d                                                                                               Page 6
Not Reported in F.Supp.2d, 2005 WL 1863676 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir.2005). The arbitration clause in the Deposit Agreement provides that disputes arising out of or relating to the ADRs, " shall be finally settled by arbitration in accordance with the rules of the American Arbitration Association, which rules are deemed to be incorporated by reference into this Section 7.06." (Deposit Agreement § 7.06.) The incorporation of the AAA rules serves as clear and unmistakable evidence of the parties' submission of arbitrability to the arbitrator. Contec Corp., 398 F.3d at 208.

In Contec Corp., the arbitration clause provided for arbitration " in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Id. Rule 7 of the AAA Commercial Arbitration Rules states that " [t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Id. (internal quotation marks omitted). The arbitration clause here does not specify which AAA rules apply-the International Rules or the Commercial Rules-but the International Rules include a provision nearly identical to the Commercial Rule cited in Contec Corp. See AAA Int'l Arb. R., art. 15.1 (1997) (" The tribunal shall have the power to rule on its own jurisdiction, including any objection with respect to the existence, scope or validity of the arbitration agreement." ). As in Contec Corp., the incorporation of the AAA rules is clear and unmistakable evidence of intent to submit the issue of arbitrability to arbitration. It is therefore within the province of the arbitrators to decide whether Respondent's claims are arbitrable under the agreement, including the federal securities claim.[FN8]

> FN8. Petitioner's defense that the securities-fraud claim is time-barred is also committed to the jurisdiction of the arbitrator. See Paine Webber Inc. v. Bybyk, 81 F.3d 1193, 1200 (2d Cir.1996) (holding that an arbitration agreement without limitation as to the timing of bringing a claim means that the party resisting arbitration can " defend the arbitration action on timeliness grounds, not ... enjoin arbitration altogether" ); Shearson Lehman Hatton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir.1991) (" [A]ny limitations defense ... whether stemming from the arbitration agreement, arbitration association rule, or state statute ... is an issue to be addressed by the arbitrators." (emphasis omitted)).

D. The Arbitration Shall be Conducted Under the Auspices of the AAA

Finally, Petitioner's argument that the rules of the London Court of International Arbitration rather than those of the AAA control must be rejected. The ADRs state that " [t]he Deposit Agreement provides" for the settlement of disputes " by arbitration in London, England, in accordance with the Rules of the London Court of International Arbitration." (The Bank of New York American Depositary Receipt for Preferred Shares of the Nominal Value of 1,000 Rubles Each of JSC Surgutneftegaz art. 22.) This is plainly incorrect because the Deposit Agreement provides for AAA arbitration in New York. The ADRs include a caveat explaining that " [t]he statements made on the face and reverse of this receipt are summaries of certain provisions of the Deposit Agreement and *are qualified by and subject to the detailed provisions of the Deposit Agreement,* to which reference is hereby made." (*Id.* art. 1 (emphasis added).) Therefore, any inconsistency between the Deposit Agreement and the ADRs must be resolved by reference to the Deposit Agreement. The arbitration clause in the ADRs, by its own terms, does not constitute a separate agreement to arbitrate, but was merely meant to summarize the obligations included in the Deposit Agreement. Petitioner does not argue to the contrary.

*7 Petitioner may also raise the issue of the place of arbitration before the arbitral tribunal. The situs of the arbitration is of critical importance because the law of the jurisdiction in which the arbitration is conducted ordinarily provides the procedural law of the arbitration. See Robert H. Smit, General Commentary on the WIPO Arbitration Rules, Recommended Clauses, General Provisions and the WIPO Expedited Arbitration Rules, 9 Am. Rev. Int'l Arb. 3, 14 (1998) (" [T]he law of the arbitral situs will or may determine the arbitrability of the ... dispute, the validity of the arbitration agreement, the procedures that may or must be used in the arbitration, the availability of interim relief from the arbitrators or local courts, the availability of particular types of relief ..., the nature and extent of judicial intervention in the proceedings, the procedural recourse for confirming, enforcing and vacating the award, and the enforceability of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

award in other countries." ). The courts of the jurisdiction in which an award is rendered have greater authority to decline confirmation of an arbitral award under the New York Convention than do the courts of other jurisdictions. *See Yusef Ahmend Alghanim & Sons,* 126 F.3d at 21 (holding that, although the grounds in the New York Convention are exclusive for setting aside an arbitral award rendered in a foreign jurisdiction, " a court in the country under whose law the arbitration was conducted [may] apply domestic arbitral law ... to set aside or vacate [an] arbitral award" ). The AAA recognizes this importance in its rules. Article 13.1 of the AAA International Rules states, " If the parties disagree as to the place of arbitration, the administrator may initially determine the place of arbitration, subject to the power of the tribunal to determine finally the place of arbitration within 60 days after its constitution." Similarly, the Commercial Rules provide, " If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale, and its decision shall be final and binding." AAA Commercial Arb. R. 10 (2003). Accordingly, Petitioner retains the opportunity to argue to the arbitrators that London and not New York is the proper venue for the arbitration.

III. CONCLUSION

For the foregoing reasons, the petition to stay arbitration is DENIED. The Clerk of the Court is directed to close this case and remove it from the Court's active docket.

So Ordered:

S.D.N.Y.,2005.
JSC Surgutneftegaz v. President and Fellows of Harvard College
Not Reported in F.Supp.2d, 2005 WL 1863676 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.