# EXHIBIT
# 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,

                Plaintiffs,

        - against -

JULIAN SAMENGO-TURNER, RON WHYTE,
and MARCUS HOPKINS,

                Defendants.

---------------------------------------------------x

07 Civ. 3580 (DC) (KNF)

**PLAINTIFFS' FIRST SET OF
INTERROGATORIES**

        PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil

Procedure and 26.3 and 33.3 of the Local Civil Rules of the United States District Court for the

Southern District of New York, plaintiffs Guy Carpenter & Company, LLC, formerly Guy

Carpenter & Company, Inc., and Marsh & McLennan Companies, Inc., request that defendants

Julian Samengo-Turner, Ron Whyte and Marcus Hopkins answer the following interrogatories

subject to the instructions and definitions set forth herein on or before June 1, 2007 at 12:00 p.m.

at the offices of Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New

York, New York 10036.

## DEFINITIONS AND INSTRUCTIONS

        A.    Pursuant to Rule 26.3(a) of the Local Civil Rules of the United States

District Court for the Southern District of New York, the definitions and rules of construction set

forth in Local Civil Rules 26.3(c) and (d) are deemed to be incorporated by reference in these

interrogatories.

B.      In answering these interrogatories, furnish all information that is available to you, including information that is in the possession of any of your present agents, employees, or attorneys, or your former agents, employees, or attorneys, or is otherwise subject to your custody or control.

C.      If you know of any document, communication, or information but cannot give the specific information or the full information called for by a particular interrogatory, so state, give the best information that you have on the subject (such as approximate dates or amounts), and identify every person who you believe has the required information with respect thereto.

D.      If it is claimed that an answer (in whole or in part) to any interrogatory or part thereof is privileged or otherwise protected from disclosure, identify such information by its subject matter and state the nature and basis of each such claim.

E.      If you object to any part of an interrogatory, answer all parts of the interrogatory to which you do not object.

F.      These interrogatories shall be deemed continuing, and the responses thereto shall be supplemented in accordance with the Federal Rules of Civil Procedure.

G.      "Complaint" means the Complaint in this action, dated May 4, 2007.

H.      "Defendants" means Julian Samengo-Turner, Ron Whyte and/or Marcus Hopkins and anyone else acting under their control or on their behalf.

- 2 -

I.    "Integro" means Integro Insurance Brokers together with each of its past and present corporate affiliates, parents, subsidiaries, employees, agents, and anyone else acting under its control or on its behalf.

J.    "Guy Carpenter" means Guy Carpenter LLC together with each of its past and present corporate affiliates, parents, subsidiaries, employees, agents, and anyone else acting under its control or on its behalf.

K.    "MMC" mean Marsh & McLennan Companies, Inc. together with each of its past and present corporate affiliates, parents, subsidiaries, employees, agents, and anyone else acting under its control or on its behalf.

## INTERROGATORIES

1.    Identify all persons who have information concerning each defendant's hiring by Integro, including but not limited to information concerning the solicitation and recruitment of each defendant by Integro and Integro's respective offers of employment to defendants.

2.    Identify all persons associated with Integro with whom each defendant interviewed or otherwise communicated in connection with each defendant's hiring by Integro.

3.    Identify all Guy Carpenter or MMC employees with whom each defendant communicated about their resignation from Guy Carpenter.

4.    Identify all persons who were, at the time of the communication(s), Guy Carpenter or MMC employees with whom each defendant communicated regarding such

- 3 -

person's potential employment with Integro and/or termination of employment with Guy Carpenter.

    5.    Identify all persons who were, at the time of receipt of such offer, Guy Carpenter or MMC employees and who have been offered employment by, or otherwise recruited by, Integro since January 1, 2007.

    6.    Identify each defendant's current resident address.

    7.    Identify all persons who are or were clients or potential clients of Guy Carpenter or MMC during defendants' employment with Guy Carpenter and since defendants' announced their resignations, with whom any of the defendants has communicated regarding the defendant's or defendants' actual or potential departure from Guy Carpenter and hiring by Integro.

Dated: New York, New York
       May 18, 2007

                              KRAMER LEVIN NAFTALIS & FRANKEL LLP

                              By: *Rachel M. Manne*
                                 Barry H. Berke (BB-1421)
                                 Robert N. Holtzman (RH-9525)
                                 Rachel M. Manne (RM-7151)
                              1177 Avenue of the Americas
                              New York, New York 10036
                              (212) 715-9100

                              Attorneys for Plaintiffs

To:    John Barry, Esq.
       Proskauer Rose LLP
       One Newark Center
       Newark, NJ 07071-5211
       973-274-6081
       Attorneys for Defendants

KL3 2591196.2

# EXHIBIT
# 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,

     Plaintiffs,

   - against -

JULIAN SAMENGO-TURNER, RON WHYTE,
and MARCUS HOPKINS,

     Defendants.

--------------------------------------------------------------- x

   07 Civ. 3580 (DC) (KNF)

   **NOTICE OF DEPOSITION**

   PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company,

Inc., and Marsh & McLennan Companies, Inc., will take the deposition upon oral examination of

defendant Ron Whyte before an official authorized to administer oaths at the offices of Herbert

Smith LLP, Exchange House, Primrose Street, London EC2A 2HS, on June 14, 2007 at

9:30 a.m.

Dated: New York, New York
   May 29, 2007

     KRAMER LEVIN NAFTALIS & FRANKEL LLP

     By: _____
      Barry H. Berke (BB-1421)
      Robert N. Holtzman (RH-9525)
      Steven M. Knecht (SK-8404)
     1177 Avenue of the Americas
     New York, New York  10036
     (212) 715-9100

     Attorneys for Plaintiffs

KL3 2594958.1

To:    John P. Barry, Esq.
       Proskauer Rose LLP
       One Newark Center, 18th Floor
       Newark, NJ 07102
       973-274-6081

       Attorneys for Defendants

# EXHIBIT
# 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,

                Plaintiffs,

        - against -

JULIAN SAMENGO-TURNER, RON WHYTE,
and MARCUS HOPKINS,

                Defendants.

———————————————————— x

07 Civ. 3580 (DC) (KNF)

**NOTICE OF DEPOSITION**

      PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company,

Inc., and Marsh & McLennan Companies, Inc., will take the deposition upon oral examination of

defendant Julian Samengo-Turner before an official authorized to administer oaths at the offices

of Herbert Smith LLP, Exchange House, Primrose Street, London EC2A 2HS, on June 15, 2007

at 9:30 a.m.

Dated: New York, New York
       May 29, 2007

                KRAMER LEVIN NAFTALIS & FRANKEL LLP

                By:_____
                    Barry H. Berke (BB-1421)
                    Robert N. Holtzman (RH-9525)
                    Steven M. Knecht (SK-8404)
                1177 Avenue of the Americas
                New York, New York 10036
                (212) 715-9100

                Attorneys for Plaintiffs

To:    John P. Barry, Esq.
       Proskauer Rose LLP
       One Newark Center, 18th Floor
       Newark, NJ 07102
       973-274-6081

       Attorneys for Defendants

KL3 2591191.2

# EXHIBIT
# 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ x

GUY CARPENTER & COMPANY, LLC and          :
MARSH & McLENNAN COMPANIES, INC.,         :          07 Civ. 3580 (DC) (KNF)
                                          :
                      Plaintiffs,         :          **NOTICE OF DEPOSITION**
                                          :
             - against -                  :
                                          :
JULIAN SAMENGO-TURNER, RON WHYTE,         :
and MARCUS HOPKINS,                       :
                                          :
                      Defendants.         :
                                          :
------------------------------------------------ x

        PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company,

Inc., and Marsh & McLennan Companies, Inc., will take the deposition upon oral examination of

defendant Marcus Hopkins before an official authorized to administer oaths at the offices of

Herbert Smith LLP, Exchange House, Primrose Street, London EC2A 2HS, on June 13, 2007 at

9:30 a.m.

Dated: New York, New York
       May 29, 2007

                                KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                By:_____
                                       Barry H. Berke (BB-1421)
                                       Robert N. Holtzman (RH-9525)
                                       Steven M. Knecht (SK-8404)
                                1177 Avenue of the Americas
                                New York, New York 10036
                                (212) 715-9100

                                Attorneys for Plaintiffs

To:    John P. Barry, Esq.
        Proskauer Rose LLP
        One Newark Center, 18th Floor
        Newark, NJ 07102
        973-274-6081

        Attorneys for Defendants

KL3 2594959.1

# EXHIBIT
# 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,

Plaintiffs,

- against -

JULIAN SAMENGO-TURNER, RON WHYTE,
and MARCUS HOPKINS,

Defendants.

07 Civ. 3580 (DC) (KNF)

———————————————————— x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
RON WHYTE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT DUE
TO LACK OF PERSONAL JURISDICTION AND FORUM *NON CONVENIENS***

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 AVENUE OF THE AMERICAS    NEW YORK, NY 10036

## Table of Contents

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 2

COUNTER-STATEMENT OF FACTS ............................................................................. 3

    A.     Background Facts ............................................................................................. 3

    B.     The Plan, Awards and Agreements at Issue Here ......................................... 5

    C.     The Choice of Forum and Choice of Law Clauses in the Agreements ....... 6

    D.     Additional, Substantial New York Contacts ................................................ 9

    E.     Service of Process ............................................................................................ 9

    F.     The United Kingdom Action ........................................................................ 10

ARGUMENT .................................................................................................................. 12

    I.     THIS COURT HAS PERSONAL JURISDICTION OVER
           DEFENDANTS BY VIRTUE OF THE FORUM SELECTION
           CLAUSE IN THE AGREEMENTS ....................................................................... 12

           A.     No Long-Arm Jurisdiction or Due Process Analyses are
                Undertaken in the Face of a Forum Selection Clause
                Invoking New York Jurisdiction .................................................................... 12

           B.     The Forum Selection Clause in the Agreements is Valid
                and Applicable Here ........................................................................................ 14

           C.     The European Union Council Regulation Does Not Apply
                to this Dispute ................................................................................................. 17

    II.     UNDER A FORUM *NON CONVENIENS* ANALYSIS,
           DISMISSAL IS NOT WARRANTED .................................................................. 17

           A.     Because of the Mandatory Forum Selection Clause in
                the Agreements, Forum *Non Conveniens* Analysis is
                Inappropriate ................................................................................................... 18

           B.     Even Under a Standard Forum *Non Conveniens* Analysis, Dismissal
                is Not Warranted ............................................................................................. 19

## Table of Contents

### (Continued)

| | | Page |
|---|---|---|
| 1. | England is Not an Adequate Alternative Forum to Address this Dispute | 19 |
| 2. | Plaintiffs' Choice of Forum Must be Given Deference | 20 |
| 3. | The Private and Public Interest Factors Favor Plaintiffs' Chosen Forum | 21 |
| | a. The Private Interest Factors Weigh Against Dismissal | 22 |
| | b. The Public Interest Factors Also Favor Plaintiffs' Chosen Forum | 24 |
| CONCLUSION | | 25 |

KL3 2595017.7

## Table of Authorities

### Cases

**Page**

*Argonaut Partnership LP v. Bankers Trustee Co.*, No. 96 Civ. 1970 (MBM), No. 96 Civ. 2222 (MBM), 1997 U.S. Dist. LEXIS 1092 (S.D.N.Y. Feb. 4, 1997) ..........18

*Atlantic Mut. Ins. Co. v. M/V Humacao*, 169 F. Supp. 2d 211 (S.D.N.Y. 2001) ..............13

*Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003)..................................................................................................16, 21

*Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367 (S.D.N.Y. 2006)..................................................................................14, 15

*Brennen v. Phyto-Riker Pharms., Ltd.*, No. 01 Civ. 11815 (DLC), 2002 U.S. Dist. LEXIS 10910 (S.D.N.Y. June 20, 2002) ................................................14, 15

*Cromer Finance Ltd v. Berger*, 158 F. Supp. 2d 347 (S.D.N.Y. 2001) ......................19, 22

*Design Strategy Corp. v. Nghiem*, 14 F. Supp. 2d 298 (S.D.N.Y. 1998) ...........................24

*DiChiara v. Ample Faith Invs. Ltd.*, No. 06 Civ. 3838 (DLC), 2006 U.S. Dist. LEXIS 85972 (S.D.N.Y. Nov. 29, 2006) ....................................................................20

*Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp. 122 (S.D.N.Y. 1986)............22, 23

*Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2d Cir. 1995)................................................24

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118 (S.D.N.Y. 1997) ..................................................................................................13

*Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474 (S.D.N.Y. 2006)................................20, 21

*Int'l Business Machines Corp. v. Harrysson*, 116 F. Supp. 2d 485 (S.D.N.Y. 2000)..................................................................................................18, 19

*Int'l Business Machines Corp. v. Martson*, 37 F. Supp. 2d 613 (S.D.N.Y. 1999).............14

*JSC Surgutneftegaz v. President and Fellows of Harvard College*, No. 04 Civ. 6069 (RCC), 2005 U.S. Dist. LEXIS 15991 (S.D.N.Y. Aug. 3, 2005), *aff'd*, 167 Fed. Appx. 266, 2006 U.S. App. LEXIS 3846 (2d Cir. February 15, 2006)........18

*K I C Chems., Inc. v. Adco Chem. Co.*, No. 95 Civ. 6321 (MBM), 1996 U.S. Dist. LEXIS 3244 (S.D.N.Y. March 20, 1996)..................................................................13

KL3 2595017.7

Table of Authorities

(Continued)

Cases

Page

*Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328 (S.D.N.Y. 2005)...................................................................................................................13

*Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393 (S.D.N.Y. 2000)...................13, 14

*Lucente v. Int'l Business Machines Corp.*, 75 F. Supp. 2d 169 (S.D.N.Y. 1999), *rev'd on other grounds*, 319 F.3d 243 (2d Cir. 2002).............................................23, 24

*Murray v. British Broadcasting Corp.*, 81 F.3d 287 (2d Cir. 1996)...................................24

*Poddar v. State Bank of India*, 79 F. Supp. 2d 391 (S.D.N.Y. 2000)................................18

*Premier Lending Servs. v. J.L.J. Assocs.*, 924 F. Supp. 13 (S.D.N.Y. 1996)...................14

*Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367 (S.D.N.Y. 2001).........................18, 20, 21

*Varnelo v. Eastwind Transport, Ltd.*, No. 02 Civ. 2084 (KMW), 2003 U.S. Dist. LEXIS 1424 (S.D.N.Y. Feb. 3, 2003) ........................................................................21

*Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276 (S.D.N.Y 1992) .....15, 22

- iv -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

GUY CARPENTER & COMPANY, LLC and                    :
MARSH & McLENNAN COMPANIES, INC.,                   :

          Plaintiffs,            :           07 Civ. 3580 (DC) (KNF)

      - against -                                   :

JULIAN SAMENGO-TURNER, RON WHYTE,      :
and MARCUS HOPKINS,                                 :

          Defendants.           :

---------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
RON WHYTE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT DUE
TO LACK OF PERSONAL JURISDICTION AND FORUM *NON CONVENIENS***

      Plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company,

Inc. ("Guy Carpenter") and Marsh & McLennan Companies, Inc. ("MMC") (together,

"plaintiffs"), respectfully submit this memorandum of law in opposition to the motion of

defendant Ron Whyte ("Whyte," and together with defendants Julian Samengo-Turner and

Marcus Hopkins, "defendants") to dismiss the complaint due to alleged lack of personal

jurisdiction and forum *non conveniens*.[1]

---

[1]    Whyte's moving brief, the Declaration of Ron Whyte, dated May 24, 2007 and the
Declaration of John P. Barry, dated May 24, 2007, are referred to as the "Whyte Br.," the
"Whyte Dec." and the "Barry Dec.," respectively. The Declaration of Andrew Gordon Brown,
dated June 7, 2007, the Declaration of Ian Charles Colquhoun, dated May 16, 2007, the
Declaration of Robert N. Holtzman, dated June 7, 2007, the Declaration of Lynsey Mansfield,
dated June 7, 2007, and the Declaration of Arlene Vaquer, dated June 6, 2007, are referred to as
the "Brown Dec.," the "Colquhoun Dec.," the "Holtzman Dec.," the "Mansfield Dec." and the
"Vaquer Dec.," respectively.

## PRELIMINARY STATEMENT

This is an action for breach of contract, stemming from defendants' violations of the terms and conditions of Agreements (the "Agreements") they executed in connection with awards made to them effective November 1, 2005 (the "Awards") under the Marsh & McLennan Companies 2000 Senior Executive Incentive and Stock Award Plan (the "Plan"). Defendants, three senior executives, recently submitted their resignations to join Integro Insurance Brokers ("Integro"), a New York-based competitor of Guy Carpenter; in conjunction therewith, defendants are believed to have solicited other employees to join Integro as well, in direct contravention of covenants they agreed to in the Agreements. In order for plaintiffs to determine the extent of defendants' noncompliance with their obligations under the Agreements, and to prevent them from soliciting other employees, plaintiffs asked defendants for their cooperation in answering certain questions in accordance with a provision in the Agreements that requires defendants to provide such cooperation. Defendants nonetheless have failed to cooperate. Further, defendants, having engaged in "Detrimental Activity" as defined in the Agreements, are required to return compensation received pursuant to the Plan within one year prior to their engagement in the Detrimental Activity, but have failed to do so. The failure by defendants to comply with their obligations under the Agreements -- not any potential breaches of other agreements -- led to the filing of this action.

Whyte's dismissal motion is premised upon fundamental misrepresentations of both fact and law -- misrepresentations defendants proffered in an unsuccessful attempt to do an end-run around this proceeding and obtain an anti-suit injunction from the British courts. Whyte misstates the forum selection provisions of the Agreements, tries to reframe this dispute as one about employment contracts with a British company, and ignores binding case law regarding the enforceability of the mandatory and exclusive New York forum selection clause in the

- 2 -

Agreements at the core of this action. Whatever other contracts with other parties defendants may have breached when they accepted employment with Integro and solicited other employees to join them there are not at issue here. The only contracts or agreements at issue in this dispute are the Agreements each defendant executed in connection with the Awards, each of which contain an exclusive New York forum selection clause. Those agreements under a stock award plan drafted and administered in New York by a New York-based company are governed principally by New York law under the exclusive jurisdiction of New York courts.

Because defendants signed the Agreements, which contain exclusive New York forum selection clauses and in which defendants expressly waived any objection to the jurisdiction of, or laying of venue in, this Court, they cannot now argue that this Court lacks personal jurisdiction over them. The argument that this action should be dismissed on forum *non conveniens* grounds is similarly unavailing, because defendants consented to New York courts as the forum for any disputes, plaintiffs are New York-based companies with an interest in having these types of agreements with executives around the world interpreted in a uniform manner, and there is no alternative forum in which plaintiffs could bring the claims asserted here.

Accordingly, plaintiffs respectfully request that Whyte's motion to dismiss the complaint due to lack of personal jurisdiction and forum *non conveniens* be denied.

## COUNTER-STATEMENT OF FACTS

A.    Background Facts

Defendants Julian Samengo-Turner, Ron Whyte and Marcus Hopkins have been employed by Marsh Services Limited ("MSL") and have worked in the facultative reinsurance group of Guy Carpenter since, respectively, September 23, 1991, September 20, 1988 and April 10, 2000. (Mansfield Dec., ¶ 3; Vaquer Dec., ¶ 5). In prior papers to the Court, plaintiffs stated that defendants have been employed by Guy Carpenter. In so stating, plaintiffs were referring to

- 3 -

the fact that defendants provided services to Guy Carpenter, which was the material issue in relation to the matters before this Court. In that sense only, defendants can be said to have "worked for" Guy Carpenter. Plaintiffs did not focus on the question of which specific company in the Guy Carpenter group was defendants' employer (in the sense of being the party to their employment contracts). In fact, although defendants have throughout their employment provided services to Guy Carpenter, their actual employer has been MSL (formerly Marsh Corporate Services Limited and prior to that J&H Marsh & McLennan (Services) Limited). This is clearly shown in defendants' respective employment contracts which were in any event attached as Exhibits A-C to the Declaration of Lynsey Mansfield dated May 10, 2007. (Mansfield Dec., ¶ 3).[2]

On or about April 3, 2007, each of defendants provided notice of his resignation to join Integro, a competitor of plaintiffs whose principal place of business is located in New York, New York. (Mansfield Dec., ¶ 4). At the time notice of their resignations was given, defendants Samengo-Turner and Whyte co-led Guy Carpenter's global facultative reinsurance business unit (including supervising, among other persons, Guy Carpenter facultative brokers in the United States), doing business under the trademark GCFac, and defendant Hopkins was head of Guy Carpenter's United Kingdom facultative reinsurance operation. (Mansfield Dec., ¶ 4; Vaquer Dec., ¶ 5).

---

[2]    In fact, defendants argued in their Memorandum of Law in Opposition to Plaintiff's Application for Expedited Discovery that "they each remained employed by GC [plaintiff Guy Carpenter]" (at 4), "GC employed Defendants in the U.K. at all relevant times" (same), and "Defendants earned certain monies from GC" (same) and made arguments concerning issues related to "solicitation or recruitment of a U.K.-based GC employee."

B.    The Plan, Awards and Agreements at Issue Here

          In an attempt to lead the Court astray and cloud the very clear issues at the heart of this dispute, Whyte repeatedly invokes MSL, defendants' employer and a United Kingdom company, whose ultimate parent company is MMC, one of the plaintiffs in this action. (Whyte Br. at 3). That relationship, and in fact MSL as an entity, is entirely irrelevant to *this* dispute; what is at issue *here* is defendants' failure to comply with their obligations under the Agreements they executed in connection with special long term incentive grants made to various Guy Carpenter senior executives under an MMC plan.

          Both Guy Carpenter and MMC have their principal place of business in New York, New York. Guy Carpenter is an indirect wholly owned subsidiary of MMC. (Mansfield Dec., ¶ 2; Vaquer Dec., ¶ 2). Neither plaintiff is a party to defendants' employment contracts with MSL. (*See* Whyte Dec., Ex. A; Barry Dec., Exs. 5-8). MSL is not a plaintiff in this action or a party to the Agreements and therefore its citizenship is irrelevant to this dispute.

          MMC offers incentive compensation plans to certain employees employed by MMC and its subsidiaries or affiliates in order to strengthen the mutuality of interest between them and MMC's shareholders and to provide appropriate incentives for such employees to remain with MMC and its subsidiaries or affiliates. One of these plans is the Plan. (Mansfield Dec., ¶ 5; Vaquer Dec., ¶ 3).

          The Plan -- under which awards have been made to senior executives of MMC and its subsidiaries (including Guy Carpenter) and affiliates -- was drafted in New York and has been administered by personnel in New York. Awards under the Plan may be paid in either cash or the equivalent value of readily tradeable MMC shares. (Vaquer Dec., ¶ 4).

          Effective November 1, 2005, MMC made special long term incentive grants under the Plan to 122 Guy Carpenter executives, including each of defendants. The original

- 5 -

agreements evidencing these grants signed by participants (including those of defendants) are maintained in New York. (Mansfield Dec., ¶ 6; Vaquer Dec., ¶ 6). These grants were made to Guy Carpenter executives based in (a) ten different states in the United States and (b) sixteen different foreign countries. (Vaquer Dec., ¶ 6).

Recommendations regarding the amounts to be granted to such individuals were made by senior management in New York with input from the local business heads. (Mansfield Dec., ¶ 6). Final approval regarding these grants was given by the Compensation Committee of the MMC Board of Directors in New York. (Mansfield Dec., ¶ 6; Vaquer Dec., ¶ 6).

C.    The Choice of Forum and Choice of Law Clauses in the Agreements

In connection with the November 2005 Awards, each defendant agreed in writing to abide by the terms and conditions of the Plan, as well as the additional terms and conditions set forth in the Agreements. (Barry Dec., Exs. 9-11 (Agreements), Introductory Paragraph). Pursuant to the Agreements, defendants are required to cooperate with MMC and any of its subsidiaries or affiliates, including Guy Carpenter, and specifically to "provide to the Company such information relating to [their] work for the Company or [their] other commercial activities as the Company may from time to time reasonably request in order for the Company to determine whether [they] are in compliance with [their] obligations under [the Plan]" (the "Cooperation Clause"). (Barry Dec., Exs. 9-11, § II.E). The Cooperation Clause applies to defendants both "during and after [their] employment with the Company." (*Id.*) Compliance with the Cooperation Clause is mandatory; there is no prerequisite that plaintiffs demonstrate any potential breach of participants' obligations under the Agreements before they may invoke the Cooperation Clause.

As such, under the Cooperation Clause, plaintiffs are entitled to inquire about defendants' suspected solicitation of employees to ascertain their compliance with two non-

KL3 2595017.7

solicitation provisions in the Agreement.  First, defendants agreed in a non-solicitation covenant contained in Schedule II.D of the Agreements that they would not "directly or indirectly . . . [e]ntice, induce or encourage an Employee to leave or seek to leave his or her position with the Company or any Associated Company for the purpose of being involved or concerned with either the supply of Competitive Services or a business which competes with either the supply of Competitive Services or a business which competes with the Relevant Business regardless of whether or not that Employee acts in breach of his or her contract of employment (either written or implied) with the Company or any Associated Company by so doing."  (Barry Dec., Exs. 9-11, Schedule II.D, § 4).

Second, solicitation of plaintiffs' employees within a twelve month period following the vesting of any portion of defendants' Awards constitutes Detrimental Activity under the Agreements (Barry Dec., Exs. 9-11, Schedule II.D, § 2(a)(iv)), giving plaintiffs the right to cancel and rescind such vested portions of the Awards under the Cancellation and Rescission of Award Clause (the "Cancellation and Rescission Clause").  (Barry Dec., Exs. 9-11, Section I.C).[3]  Accordingly, plaintiffs are entitled under the Cooperation Clause to confirm whether defendants are engaged in Detrimental Activity in order to determine whether their vested Awards properly should be cancelled and rescinded for this reason.

---

[3]    Specifically, pursuant to Schedule II.D, Detrimental Activity during the twelve month period following vesting includes, among other things, "enticing, inducing or encouraging an Employee to leave or seek to leave his or her position with the Company or any Associated Company for the purpose of being involved in or concerned with either the supply of Competitive Services or a business which competes with or is similar to a Relevant Business or which plans to compete with a Relevant Business, regardless of whether or not that Employee acts in breach of his or her contract of employment (either written or implied) with the Company or any Associated Company by doing so."  (Barry Dec., Exs. 9-11, Schedule II.D, § 2(a)(iv)).

KL3 2595017.7

Except as provided in the following paragraph, Sections VI.N and O of the

Agreements delineate the governing law and forum in connection with any dispute related to the

Award. Section VI.N provides that:

> The Company and you irrevocably submit to the *exclusive*
> jurisdiction and venue of any state or federal court located in the
> County of New York for the resolution of any dispute over any
> matter arising from or related to the Award. . . . Moreover, both
> you and the Company (i) acknowledge that the forum state in this
> Section VI.N has a reasonable relation to this Award and to the
> relationship between you and the Company and that the
> submission to the forum will apply, (ii) waive, to the extent
> permitted by law, any objection to personal jurisdiction or to the
> laying of venue of any action or proceeding covered by this
> Section VI.N in the forum stated in this Section VI.N, (iii) agree
> not to commence any such action or proceeding in any forum other
> than the forum stated in this Section VI.N.

(Barry Dec., Exs. 9-11, § VI.N) (emphasis added). Section VI.O states: "Notwithstanding

anything to the contrary (except with regard to Schedule II.D, if applicable), this Agreement

shall be governed by the laws of the State of New York, without regard to conflicts or choice of

law rules or principles." (Barry Dec., Exs. 9-11, § VI.O).

Schedule II.D, applicable to United Kingdom employees, contains its own choice-

of-law provision and non-exclusive forum selection clause for matters which fall exclusively

within that Schedule: "This Schedule will be construed in accordance with English Law and the

parties irrevocably submit to the *non-exclusive* jurisdiction of the English Courts to settle any

disputes as may arise *in connection with this Schedule*." (Barry Dec., Exs. 9-11, Schedule II.D,

§ 6) (emphasis added).[4]  This dispute has not arisen in connection with the Schedule; to the

---

[4]     In Whyte's motion by order to show cause submitted on June 6, 2007, he complains that
plaintiffs contended in the English proceedings (described below) that the definition of
"Detrimental Activity" in Schedule II.D does not apply until after defendants' employment
terminates. Of course, if that is so -- and the language of the Agreements says just that -- then
the definition of "Detrimental Activity" is currently governed by New York law and subject to a
mandatory New York forum selection clause. Nonetheless, plaintiffs have elected to date not to
pursue that argument in this litigation because it is unnecessary -- as previously demonstrated

- 8 -

contrary, this dispute concerns the Cooperation Clause and the Cancellation and Rescission Clause, matters arising from or relating to the Award and not dealt with in Schedule II.D.  While Schedule II.D provides the definition of "Detrimental Activity" to the extent applicable (Barry Dec., Exs. 9-11, Schedule II.D., § 2(a)), and thus the determination of whether Detrimental Activity pursuant to Schedule II.D has occurred must be analyzed under English law, no other aspect of this dispute is arguably related to Schedule II.D.[5]

D.    Additional, Substantial New York Contacts

In addition to the foregoing, other significant contacts with New York are present here.  Integro, which has been issued a third-party subpoena for documentary evidence in this matter (Holtzman Dec., Ex. B), has its principal place of business in New York.  (Holtzman Dec., Ex. A (Integro Press Release)).  In addition, although Whyte portrays himself and his co-defendants as complete strangers to New York, the three senior executives traveled to New York numerous times during the past few years, in order to conduct business and attend meetings with other senior executives here.  (Mansfield Dec., ¶ 7).

E.    Service of Process

Whyte asserts that the complaint has not been served upon defendants Samengo-Turner or Hopkins, but the facts demonstrate otherwise.  As reflected in the Colquhoun Declaration, (a) Whyte was personally served with the complaint in this action on May 12, 2007

---

during the May 18 conference before the Court and as demonstrated in this brief, even if the definition of "Detrimental Activity" is to be interpreted under English law, plaintiffs properly are entitled to maintain this action in this Court.

[5]    The Cancellation and Rescission Clause is invoked if the employee engages in Detrimental Activity (whether defined in the main agreement or in Schedule II.D).  It does not follow, however, that a claim for cancellation and rescission is subject to the non-exclusive forum selection clause if Schedule II.D is invoked.  To the contrary, the interpretation of the Cancellation and Rescission Clause clearly arises out of and relates to the Award, as it involves the cancellation and rescission of the very monetary amounts that make up the Award.

and (b) efforts to personally serve defendants Samengo-Turner and Hopkins with the complaint were unsuccessful due to the unavailability of such individuals and the refusal of their United Kingdom counsel to accept service on their behalf, even after Samengo-Turner represented that process could be served on his solicitors. Defendants' counsel in this action similarly refused to accept service on behalf of defendants Samengo-Turner or Hopkins. (Holtzman Dec., ¶ 2).

On May 11, 2007, the complaint in this action was served by international certified mail on defendants Samengo-Turner and Hopkins, to the most recent residential addresses that were provided to their employer. On June 7, 2007, the complaint in this action was again served by international certified mail on defendant Samengo-Turner, to an address identified in defendants' papers in an action they commenced in the United Kingdom before the High Court. (Holtzman Dec., ¶ 3).

F.    The United Kingdom Action

Plaintiffs were first advised on May 29, 2007 that defendants in this action had commenced an action in the United Kingdom before the High Court on May 25, 2007 seeking an anti-suit injunction that would have prohibited plaintiffs from maintaining this action in this Court; that action sought effectively to deprive this Court of adjudicatory authority over this matter. Defendants' principal claim was based on European Council Regulation 44/2001 (the "Regulation"), which provides, among other things, that an employer must sue its employees in the courts of the jurisdiction in which the employees are domiciled in matters relating to their individual contracts of employment. In addition, defendants claimed, among other things, that litigation in the United States is "oppressive" because of the availability of depositions and put

- 10 -

forward a number of arguments substantively the same as those made in Whyte's motion to dismiss this action. (Brown Dec., ¶ 2).[6]

The return date on defendants' application for interim relief in the United Kingdom action was set for May 31, 2007, just two days after plaintiffs were first advised of the action. Solely to obtain an extension of time in which plaintiffs could prepare a proper response to the United Kingdom action, plaintiffs agreed to the Consent Order previously submitted to the Court. (*See* Brown Dec., ¶ 3 and Ex. A).

On June 6, 2007, a hearing was held before the High Court, and the High Court rejected defendants' request for an anti-suit injunction.[7] The judge found that the Regulation does not apply to this action by plaintiffs for the following reasons. First, plaintiffs are not and never have been defendants' employers. Defendants' employer is and always has been MSL, which is not a party to this action. Second, the Plan and the Agreements are not defendants' contracts of employment, either on their own or when taken together with their individual employment contracts, and therefore this action does not concern matters relating to an individual contract of employment. (Brown Dec., ¶ 4). The judge also expressly commented that the public policy considerations set out in recital 13 of the preamble to the Regulation (namely that in relation to employment, the weaker party (the employee) should be protected by rules of jurisdiction more favorable to his interests than the general rules provide for) had little

---

[6]    United Kingdom counsel to Guy Carpenter and MMC accepted service of process in that action (notwithstanding that similar courtesies were not extended in this action). (Brown Dec., ¶ 2).

[7]    For defendants to convince the judge to grant an anti-suit injunction, they had to show only that they had a good arguable case on the points they raised. In other words, they had to show a reasonable prospect of success (a standard that falls short of showing that they would be likely to succeed at a full trial). The judge found that defendants' arguments did not satisfy this test. (Brown Dec., ¶ 7).

- 11 -

bearing in this case, which concerns very senior executive officers with substantial assets and know-how. (Brown Dec., ¶ 5).

Having rejected defendants' argument based on the Regulation, the judge proceeded to consider and reject defendants' argument that he should grant an anti-suit injunction on the basis that this action is vexatious, unconscionable or oppressive. He noted that while England might be the natural forum for employee disputes, that was not the case for matters relating to the Plan, specifically recognizing the fact that the Plan was administered in New York and the need for the MMC group to have a coherent strategy with regard to awards under the Plan. The judge commented that these considerations countered the suggestion that the New York proceedings were vexatious or unconscionable. (Brown Dec., ¶ 6).

## ARGUMENT

### I.

### THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS BY VIRTUE OF THE FORUM SELECTION CLAUSE IN THE AGREEMENTS

Defendants consented to the personal jurisdiction of this Court when they signed the Agreements, which contain valid, enforceable and exclusive New York forum selection clauses. As such, there is no need for this Court to conduct a long-arm jurisdiction analysis or analyze whether due process requirements have been satisfied. Those analyses, commonly conducted to ensure the fairness of forcing a defendant to litigate in the plaintiff's chosen forum, are not properly considered when the forum has been chosen by agreement of the parties.

A.    No Long-Arm Jurisdiction or Due Process Analyses are Undertaken
in the Face of a Forum Selection Clause Invoking New York Jurisdiction

Whyte argues that the complaint should be dismissed for lack of personal jurisdiction, maintaining that plaintiffs have failed to establish long-arm jurisdiction and defendants do not have the requisite minimum contacts with New York. Whyte's discussion of

- 12 -

long-arm jurisdiction and minimum contacts has no place in this litigation, however, for there exists a valid forum selection clause governing the dispute, and therefore personal jurisdiction has been established. "[W]hen parties choose a particular forum, their selection will be enforced without the need to engage in traditional personal jurisdiction analysis, including determining whether constitutional due process requirements have been met." *Atlantic Mut. Ins. Co. v. M/V Humacao*, 169 F. Supp. 2d 211, 215 (S.D.N.Y. 2001); *see also Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333-334 n.5 (S.D.N.Y. 2005) ( "A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue . . . . Although both parties discuss at length whether New York has jurisdiction over defendant by way of New York's long-arm statute, we do not deem this analysis necessary because New York has jurisdiction on the basis of consent by defendant's being bound by the Agreement containing the forum selection clause."); *Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 403 n.12 (S.D.N.Y. 2000) (personal jurisdiction "is primarily a matter of due process fairness to defendants, protecting them from suit in jurisdictions to which they lack connection . . . there [is not] a plausible reason why a state cannot assert sovereign power over those who willingly consent to submit to its authority"); *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997) ("An enforceable forum selection clause amounts to consent to personal jurisdiction."); *K I C Chems., Inc. v. Adco Chem. Co.*, No. 95 Civ. 6321 (MBM), 1996 U.S. Dist. LEXIS 3244 at *10 (S.D.N.Y. March 20, 1996) ("[C]onsent to a forum selection clause waives a party's right to object to personal jurisdiction and venue.").

Due process is likewise not a concern in the face of a valid forum selection clause. *See Licensed Practical Nurses, Technicians & Health Care Workers of New York*, 131

- 13 -

KL3 2595017.7

F. Supp. 2d at 403 n.12 ("It can hardly be unfair to subject a defendant to suit in a place where he has voluntarily agreed to have disputes resolved.").

In *Int'l Business Machines Corp. v. Martson*, 37 F. Supp. 2d 613 (S.D.N.Y. 1999), IBM brought a breach of contract action against a former employee for violation of a stock option agreement after the employee went to work for a competitor and failed to repay to IBM profits realized from exercising options, as required under the agreement. The Court found that it had personal jurisdiction over the employee, a North Carolina resident, by virtue of a New York forum selection clause in the stock option agreement pursuant to the Long Term Performance Plan. The Court ruled that "the forum selection clause is enforceable, and the various defenses based on jurisdiction and venue are meritless." *Id.* at 617. The facts of this matter closely parallel the facts of *Martson*, and the Court should similarly find Whyte's proffered defense based on jurisdiction to be without merit.

In support of his argument, Whyte relies upon *Premier Lending Servs. v. J.L.J. Assocs.*, 924 F. Supp. 13, 17 (S.D.N.Y. 1996), in which a motion to dismiss for lack of personal jurisdiction was granted despite the presence of a New York choice-of-law provision. Whyte's reliance is misplaced because in that case, in sharp contrast to this dispute, there was no New York forum selection clause to establish personal jurisdiction.

B.    The Forum Selection Clause in the Agreements is Valid and Applicable Here

Because a valid forum selection clause is sufficient to confer personal jurisdiction over a defendant, this Court need only ensure that the forum selection clause here is enforceable and applicable in order to satisfy itself that it has personal jurisdiction over defendants.

Forum selection clauses are presumptively valid under federal law. *See Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 391 (S.D.N.Y. 2006); *Brennen v. Phyto-Riker Pharms., Ltd.*, No. 01 Civ. 11815 (DLC), 2002 U.S. Dist. LEXIS 10910

- 14 -

at *6-7 (S.D.N.Y. June 20, 2002) (Cote, J.). Enforcement of such clauses is the strong policy

preference in the Second Circuit, except where enforcement can be shown to be unreasonable or

unjust. *See Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1278 (S.D.N.Y

1992). This exception has been construed narrowly:

> [F]orum selection and choice of law clauses are 'unreasonable'
> (1) if their incorporation into the agreement was the result of fraud
> or overreaching; (2) if the complaining party 'will for all practical
> purposes be deprived of his day in court,' due to the grave
> inconvenience or unfairness of the selected forum; (3) if the
> fundamental unfairness of the chosen law may deprive the [party]
> of a remedy; or (4) if the clauses contravene a strong public policy
> of the forum state.

*Beatie and Osborn*, 431 F. Supp. 2d at 392 (internal citation omitted). Whyte has made no claim

that any of the above factors are satisfied here, and therefore the New York forum selection

clause in the Agreements is valid and enforceable.

Where, as here, the forum selection clause is valid and enforceable, the sole

remaining question is whether it is applicable to the claims involved in the dispute. There can be

no serious dispute that the claims at the heart of this litigation are governed by the exclusive New

York forum selection clause, which provides, in pertinent part, that "[t]he Company and you

irrevocably submit to the exclusive jurisdiction and venue of any state or federal court located in

the County of New York for the resolution of any dispute over any matter arising from or related

to the Award." (Barry Dec., Exs. 9-11, § VI.N). As discussed above, this dispute concerns two

provisions in the Agreements: the Cooperation Clause and the Cancellation and Rescission

Clause. Each of these clauses arises from, and is related to, the Award granted under the Plan,

and therefore any dispute over matters related to either clause falls within the broad and

exclusive New York forum selection clause.

Whyte asserts that this dispute must be addressed in England, based on a misreading of the *non-exclusive* English forum selection clause in Schedule II.D of the Agreements, and based on the lack of a forum selection clause in defendants' employment contracts. The Cooperation Clause and the Cancellation and Rescission Clause are not part of Schedule II.D and address issues not discussed in that Schedule. In any event, the forum selection provision in Schedule II.D provides only for *non-exclusive* jurisdiction in the English courts (Barry Dec., Exs. 9-11, Schedule II.D, § 6) (emphasis added); whether or not plaintiffs' claims could have been pursued in an English court, they have the absolute right to maintain them in New York.[8]

Whyte's claim that the exclusive New York forum selection clause is irrelevant because defendants' United Kingdom employment contracts contain no forum selection clause is also without merit. Those agreements, between defendants and MSL, an entity not a party to this action or the Agreements, have no relevance to this dispute. Whyte cites *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003), to support his argument, but in that case, only one "of the relevant contracts to the case" contained a New York forum selection clause. *Id.* at 697. Here, by contrast, there are not several relevant contracts with respect to each defendant, but only one, and it contains a New York forum selection clause.

Similarly, whether or not the Agreements and defendants' employment contracts with MSL contain "similar post-employment non-solicitation provisions" is irrelevant here. Plaintiffs' action asserts rights only under the Agreements; they cannot and do not assert claims under such employment contracts. Moreover, and critically, the complaint in this action does not assert a breach of the non-solicitation provisions in the Agreements -- rather, it alleges breaches

---

[8]    Thus, Whyte's claim that the Agreements "mandate" that those claims be pursued in England (Whyte Br. at 16) is demonstrably false.

KL3 2595017.7

of the Cooperation and Cancellation and Rescission Clauses, provisions that do not appear in defendants' employment contracts with MSL.

C.    The European Union Council Regulation Does Not Apply to this Dispute

Whyte relies upon the Regulation for the proposition that an employer may bring proceedings only in the courts of the Member State in which the employee is domiciled. (Whyte Br. at 16.). As described above, the High Court found that the Regulation does not apply to this action by plaintiffs because (i) plaintiffs are not and never have been defendants' employers; and (ii) the Plan and the Agreements are not defendants' contracts of employment and therefore this action does not concern matters relating to an individual contract of employment. (Brown Dec., ¶ 4). This Court should adhere to the ruling of the High Court.

## II.

## UNDER A FORUM *NON CONVENIENS* ANALYSIS, DISMISSAL IS NOT WARRANTED

Whyte's argument that the Court should dismiss the complaint on forum *non conveniens* grounds fails for several reasons beginning with the very forum selection clause that gives the Court personal jurisdiction over defendants. When such a valid, enforceable forum selection clause exists, no forum *non conveniens* analysis properly is to be performed.

Even if the Court were to decide this issue under the standard forum *non conveniens* analysis, it should not dismiss this action. Under that analysis, the Court must grant substantial deference to plaintiffs' chosen forum, especially where, as here, plaintiffs have instituted suit in their home forum pursuant to a New York forum selection clause. Further, no adequate alternative forum exists in which plaintiffs could bring this entire action, due to the exclusive nature of the forum selection clause governing the claims at issue here. Finally, neither the private nor public interest factors favor dismissal on forum *non conveniens* grounds.

- 17 -

A.    Because of the Mandatory Forum Selection Clause in the
       Agreements, Forum *Non Conveniens* Analysis is Inappropriate

Whyte devotes much of his brief arguing that the complaint should be dismissed

based on the application of the doctrine of forum *non conveniens*, and leads the Court through a

traditional forum *non conveniens* analysis. To do so, however, Whyte is compelled to ignore

indistinguishable case law establishing that the "standard [forum *non conveniens*] analysis is

inapplicable when the parties have included a mandatory forum-selection clause." *JSC*

*Surgutneftegaz v. President and Fellows of Harvard College*, No. 04 Civ. 6069 (RCC), 2005

U.S. Dist. LEXIS 15991 at *16 (S.D.N.Y. Aug. 3, 2005), *aff'd*, 167 Fed. Appx. 266, 2006 U.S.

App. LEXIS 3846 (2d Cir. February 15, 2006); *see also Sun Forest Corp. v. Shvili*, 152

F. Supp. 2d 367, 386 (S.D.N.Y. 2001) ("the existence of a forum-selection clause also counsels

strongly against a court's dismissal of an action on forum non conveniens grounds"); *Poddar v.*

*State Bank of India*, 79 F. Supp. 2d 391, 393 (S.D.N.Y. 2000) (when parties signed agreement

with forum selection clause limiting jurisdiction to courts of India and the United States,

"defendant will not now be heard to complain that the United States is an inconvenient forum");

*Argonaut Partnership LP v. Bankers Trustee Co.*, No. 96 Civ. 1970 (MBM), No. 96 Civ. 2222

(MBM), 1997 U.S. Dist. LEXIS 1092 at *39 (S.D.N.Y. Feb. 4, 1997) ("A court faced with a

mandatory forum selection clause need not" conduct standard forum *non conveniens* analysis).

Tellingly, in a case with facts similar to those involved here, IBM brought suit to

enforce its right to forfeiture of a former senior executive's incentive compensation pursuant to a

Long Term Performance Plan because the executive went to work for a competitor within six

months after exercising his options. The court in that action refused to dismiss the case on forum

*non conveniens* grounds, ruling that "mandatory forum selection clauses should control absent a

KL3 2595017.7

strong showing that they ought to be set aside." *Int'l Business Machines Corp. v. Harrysson*,

116 F. Supp. 2d 485, 486 (S.D.N.Y. 2000).

B.    Even Under a Standard Forum *Non Conveniens* Analysis, Dismissal is Not Warranted

Even if the existence of a mandatory forum selection clause did not end the

inquiry, Whyte still could not prevail under a standard forum *non conveniens* analysis.  In the

standard analysis, a court follows two steps: "First, the district court must decide whether an

adequate alternative forum exists, and if so, the district court must apply a presumption in favor

of the plaintiff's choice of forum and then weigh a variety of factors . . relating to the private

interest of the litigants and the public interest in order to determine whether that presumption is

overcome . . . ." *Cromer Finance Ltd v. Berger*, 158 F. Supp. 2d 347, 353 (S.D.N.Y. 2001)

(Cote, J.) (citing *Iragorri v. Int'l Elevator, Inc.*, 243 F.3d 678, 680 (2d Cir. 2001)).

1.    England is Not an Adequate Alternative Forum to Address this Dispute

Whyte's motion should fail based on the initial step of the standard forum *non*

*conveniens* analysis.  England is not an adequate alternative forum, or indeed even a theoretically

possible alternative forum, to hear this entire dispute.

Plaintiffs assert two claims for relief in this action, one involving defendants'

failure to abide by the Cooperation Clause in their Agreements, constituting a breach of Section

II.E. of their respective Agreements, and the other arising out of defendants' failure to return

portions of their Awards pursuant to the Cancellation and Rescission Clause, constituting a

breach of Section I.C(2) of their respective Agreements.  (Barry Dec., Ex. 2 (Complaint), ¶¶ 47-

52).  These provisions are governed by the *exclusive* forum selection clause at Section VI.N. and

are not superseded by Schedule II.D.  Thus, there is no forum other than New York in which

plaintiffs properly could bring their claim that defendants have breached the Agreements with

regard to the Cooperation Clause and the Cancellation and Rescission Clause.

- 19 -

2.    Plaintiffs' Choice of Forum Must be Given Deference

Under the standard forum *non conveniens* analysis, deference is accorded to the

plaintiff's choice of forum.  This deference is heightened when, as here, plaintiffs have chosen

their home forum.  *See DiChiara v. Ample Faith Invs. Ltd.*, No. 06 Civ. 3838 (DLC), 2006 U.S.

Dist. LEXIS 85972 at *17 (S.D.N.Y. Nov. 29, 2006) (Cote, J.) (presumption that plaintiff's

choice of forum is entitled to deference "is strongest when the plaintiff chooses to litigate in his

home forum"); *Sun Forest*, 152 F. Supp. 2d at 386 ("Given that Sun Forest, a New York

corporation with a principal place of business in the same state, 'has chosen the home forum,' the

Court must accord even 'greater deference' to Sun Forest's decision than is usually accorded to a

plaintiff's choice of forum.") (internal citation omitted).  Having chosen their home forum of

New York in which to institute these proceedings, plaintiffs' choice of forum is entitled to

heightened deference.

Whyte repeatedly invokes the phrase "forum shopping" to cast aspersion on

plaintiffs' perfectly legitimate and valid decision to bring this action in their home forum -- the

only forum, in fact, available for this entire dispute.  Because they are New York-based

companies, suing to enforce provisions of agreements with a New York forum selection clause

with respect to a plan drafted and administered in New York, it makes perfect sense that

plaintiffs would initiate this proceeding in New York.

That plaintiffs are New York-based companies distinguishes this case from those

relied upon by Whyte to argue against deference on the basis of forum shopping.  In *Gilstrap v.

Radianz Ltd.*, 443 F. Supp. 2d 474 (S.D.N.Y. 2006), the Court granted only slight deference to

the plaintiffs' choice of forum, but the plaintiffs there were residents of Houston and England

and were suing in a representative capacity on behalf of a class in which sixty percent of

members resided outside the United States, with the majority in England.  *Id.* at 479 ("[T]he

- 20 -

named plaintiffs' lack of bona fide connections to this District indicates that their choice of forum should be accorded less deference than that due a resident plaintiff seeking redress.") (internal quotation and citation omitted). In *Varnelo v. Eastwind Transport, Ltd.*, No. 02 Civ. 2084 (KMW)(AJP), 2003 U.S. Dist. LEXIS 1424 (S.D.N.Y. Feb. 3, 2003), plaintiff's chosen forum was accorded diminished deference in part because plaintiff was a citizen and resident of Russia. *Id.* at *32. In *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003), the court found it significant, in determining what level of deference to grant plaintiffs' choice of forum, that "[a]s this litigation was originally brought, not one plaintiff was a citizen or resident of the United States." *Id.* at 694.

Whyte suggests that plaintiffs have filed this action merely to gather discovery for use in a future United Kingdom action. (Whyte Br. at 13). This is nothing more than rank speculation. Plaintiffs have not initiated any United Kingdom action, vigorously (and successfully) fought defendants' attempts to seek an anti-suit injunction in the United Kingdom and fully expect to obtain complete relief on their claims in this proceeding. In fact, the only parties that have instituted a proceeding in the United Kingdom are defendants, who, in a blatant attempt to evade their responsibilities to produce discovery materials under this Court's May 24, 2007 Order, unsuccessfully sought to enjoin this action in the English courts.

3.    The Private and Public Interest Factors Favor Plaintiffs' Chosen Forum

A balancing of the public and private interest factors further compels that the Court not dismiss this action on forum *non conveniens* grounds. In order to prevail on a motion to dismiss on forum *non conveniens* grounds, a party must "demonstrate that the balance of the [private and public interest] factors is 'strongly' in their favor." *Sun Forest*, 152 F. Supp. 2d at 386 (internal citation omitted).

-21-

a.    The Private Interest Factors Weigh Against Dismissal

Whyte's suggestion that all the evidence in this case is located in England is wrong. While some of it may be located in the United Kingdom, there can be no doubt that certain critical evidence is located in New York, including evidence concerning the drafting, implementation, and enforcement of the Plan. Moreover, Integro, the company which defendants have joined and from whom third party discovery will be necessary, has its headquarters in New York. (Holtzman Dec., Ex. A). Accordingly, plaintiffs served a subpoena on Integro, requesting relevant documents, many of which likely are in New York. (Holtzman Dec., Ex. B). Should depositions of Integro be necessary, plaintiffs expect they will concern defendants' communications with Integro executives based at its headquarters in New York.

Moreover, what documentary evidence is in the United Kingdom will likely not be voluminous. Defendants' inconvenience will be minimized by taking the depositions of defendants in the United Kingdom.

Defendants made many business trips to New York in the last few years (Mansfield Dec., ¶ 7), so it is difficult to imagine how they will be inconvenienced by litigation in New York. *See Cromer Finance*, 158 F. Supp. 2d at 362 (when considering the burden on defendants in a forum *non conveniens* analysis, "any fair evaluation . . . must also take into account that these defendants expressed no reluctance to perform work emanating from the United States, or to travel to the United States . . . [T]hey expressed a desire to perform on a global stage when it was in their interest to do so."). In any event, to the extent defendants are inconvenienced in any way, such minor inconvenience cannot be the basis for the dismissal of an action on forum *non conveniens* grounds. *See Weiss*, 801 F. Supp. at 1279 ("Mere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum."); *Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp.

- 22 -

122, 126 (S.D.N.Y. 1986) (where parties signed forum selection clause mandating Israel as forum, "they recognized that it might be necessary for witnesses to travel to Israel if the matter eventually gave rise to litigation . . . . By agreeing to the forum-selection clause, the plaintiff agreed to accept the burden of litigating in Israel.") (internal citation omitted).

Further, the private interest factors concerning plaintiffs provide strong support for maintaining the chosen forum. Plaintiffs are New York-based companies whose executives work in offices throughout the country and around the world. In drafting the Agreements, it was reasonable for plaintiffs to include a forum selection clause and a choice-of-law clause, mandating that all disputes be litigated in New York courts using New York law, so that plaintiffs could be assured that the Agreements would be interpreted consistently and executives treated uniformly no matter where those executives work, rather than being subject to the potentially disparate rulings of the courts of numerous jurisdictions. Indeed, as described above (at pp. 5-6), at the same time the Awards at issue were made to each of defendants, MMC made grants under the Plan to 119 other Guy Carpenter executives effective November 1, 2005; these grants were made to Guy Carpenter executives based in (a) ten different states in the United States and (b) sixteen different foreign countries.

In *Lucente v. Int'l Business Machines Corp.*, 75 F. Supp. 2d 169 (S.D.N.Y. 1999), *rev'd on other grounds*, 319 F.3d 243 (2d Cir. 2002), Lucente, an Alabama resident and former IBM employee, sued IBM for breach of its obligations under two executive compensation plans. In determining whether to apply Alabama or New York law, the court recognized that

> IBM, which is headquartered in New York, employs executives who participate in its compensation plans throughout the world. Both IBM and the State of New York have a strong interest in having the provisions of these world-wide compensation plans interpreted in a uniform manner. Executive compensation plans

- 23 -

KL3 2595017.7

> would be essentially worthless if their terms meant different things
> to different participants based on a participant's residence.

*Id.* at 172; *see also Design Strategy Corp. v. Nghiem*, 14 F. Supp. 2d 298, 301-302 (S.D.N.Y.

1998) (denying motion to dismiss complaint where New York forum selection clause governed

and "[p]laintiff is a New York-based company with employees working on a contractual basis

for clients spread across the country and, as such, has a strong interest in limiting litigation

arising from employment contracts to the New York forum").

Similarly, the Second Circuit has acknowledged the important interest companies

have in limiting suits arising out of identical contracts to one single forum. In *Effron v. Sun Line*

*Cruises, Inc.*, 67 F.3d 7 (2d Cir. 1995), where a cruise ship passenger brought a personal injury

action against a ship owner, the Second Circuit held that an Athens forum selection clause in the

passenger contract should have been enforced. It noted that "appellee's complaints about the

difficulty of transporting witnesses abroad must be weighed against the difficulties that Sun Line

Greece would encounter if it were required to respond to suits in the multitude of jurisdictions

from which its passengers hail." *Id.* at 11.

      b.    The Public Interest Factors Also Favor Plaintiffs' Chosen Forum

As the *Lucente* Court found, the State of New York has a strong public interest,

independent of the interest of the private litigants involved, in limiting litigation to a New York

forum when that litigation arises out of contracts and plans drafted and administered in New

York for the worldwide employees of New York-based companies and their affiliates.

Further, courts performing a forum *non conveniens* analysis consider as a public

interest factor the avoidance of problems of applying foreign law. *See Murray v. British*

*Broadcasting Corp.*, 81 F.3d 287, 293 (2d Cir. 1996). Because the Agreements here contain a

New York choice-of-law provision for all matters outside of Schedule II.D, (Barry Dec., Exs. 9-

KL3 2595017.7

11, § VI.O), any court presented with this dispute would have to apply New York law. While this Court may need to consider English law in connection with Schedule II.D, there is no question that, if an English court were to hear this dispute, it would be faced with determining those issues centrally in dispute -- defendants' obligations under the Cooperation Clause and plaintiffs' rights under the Cancellation and Rescission Clause -- under New York law. (Barry Dec., Exs. 9-11, § VI.O). Therefore, this public interest weighs strongly against the Court's dismissal of the action.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny Whyte's motion to dismiss the complaint due to alleged lack of personal jurisdiction and forum *non conveniens.*

Dated: New York, New York
      June 8, 2007

                    KRAMER LEVIN NAFTALIS & FRANKEL LLP

                    By: /s/ Robert N. Holtzman
                            Barry H. Berke (BB-1421)
                            Robert N. Holtzman (RH-9525)
                            Steven M. Knecht (SK-8404)
                    1177 Avenue of the Americas
                    New York, New York  10036
                    (212) 715-9100

                    Attorneys for Plaintiffs

KL3 2595017.7