UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                :

GUY CARPENTER & COMPANY, LLC and    :
MARSH & McLENNAN COMPANIES, INC.,   :

                     Plaintiffs,     :               07 Civ. 3580 (DC) (KNF)

               - against -       :

JULIAN SAMENGO-TURNER, RON WHYTE,  :
and MARCUS HOPKINS,           :

                   Defendants.   :

------------------------------------------------------------ x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION (I) TO STAY ALL PROCEEDINGS IN THIS
CASE, (II) IN THE ALTERNATIVE, FOR RECONSIDERATION OR
STAY OF THE COURT'S ORDER DATED MAY 24, 2007, OR (III) IN THE
FURTHER ALTERNATIVE, FOR CERTIFICATION OF THIS DISPUTE
AS ONE APPROPRIATE FOR IMMEDIATE INTERLOCUTORY APPEAL**

## Table of Contents

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 2 |
| STATEMENT OF FACTS AND PROCEDURAL HISTORY | | 3 |
| A. | The Plan, Awards and Agreements at Issue in this Action | 3 |
| B. | The Suspected Solicitation of Employees | 4 |
| C. | Commencement of this Action and Expedited Discovery Orders | 5 |
| D. | The High Court's Rejection of Defendants' Request for an Anti-Suit Injunction | 7 |
| E. | Defendants' Continued Gamesmanship | 8 |
| THE MATERIAL MISSTATEMENTS IN THE JUNE 6 MOTION | | 11 |
| ARGUMENT | | 15 |
| THE JUNE 6 MOTION SHOULD BE REJECTED IN ITS ENTIRETY | | 15 |
| A. | Defendants' Request for a Stay of this Action Should Be Denied | 15 |
| 1. | That the United States Action Was Filed Prior to the United Kingdom Action Weighs Heavily Against Granting Defendants' Request for a Stay | 16 |
| 2. | Other Factors Compel Rejection of Defendants' Request for a Stay | 17 |
| B. | Reconsideration or Stay of the May 24 Order is Not Warranted | 20 |
| 1. | Reconsideration of the May 24 Order is Not Warranted | 20 |
| 2. | A Stay of the May 24 Order is Not Warranted | 21 |
| C. | Defendants' Request for Certification of this Dispute as One Appropriate for Immediate Interlocutory Appeal Should Be Rejected | 22 |
| CONCLUSION | | 24 |

**Table of Authorities**

**Cases**

**Page**

*Aerotel, Ltd. v. IDT Corp.*, _____ F. Supp. 2d ____, Nos. 03 Civ. 6496
(RJH), 04 Civ. 10292 (RJH), 2007 WL 1334547 (S.D.N.Y.
May 4, 2007)..................................................................................15, 16, 17

*Frierson-Harris v. Hough*, No. 05 Civ. 3077 (DLC), 2007 WL 1343843
(S.D.N.Y. May 8, 2007) ........................................................................20-21

*Gache v. Balaber-Strauss*, 198 B.R. 662 (S.D.N.Y. 1996) ...........................23-24

*Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248 (S.D.N.Y. 1999) ....................17

*MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249
(S.D.N.Y. 1999).........................................................................................17

*Nelson v. Beechwood Org.*, No. 03 Civ. 4441 GEL/HBP, 2006 WL 488670
(S.D.N.Y. Feb. 23, 2006).......................................................................21

*New York Bay Co. v. State Bank of Patiala*, No. 93 Civ. 6075 (WK), 1994
WL 369406 (S.D.N.Y. Jul. 12, 1994)...............................................16, 18-19

*Port Dock and Stone Corp. v. Oldcastle Northeast, Inc.*, No. CV 05-4294
(DRH) (ETB), 2006 WL 897996 (E.D.N.Y Mar. 31, 2006) .......................22

*Ronar, Inc. v. Wallace*, 649 F. Supp. 310 (S.D.N.Y. 1986) .......................16, 17

*Sathianathan v. Smith Barney, Inc.*, No. 04 Civ. 7122DABFM, 2007 WL
1295737 (S.D.N.Y. Apr. 25, 2007) ...........................................................21

*Spencer Trask Software and Info. Servs., LLC v. Rpost Int'l Ltd.*, 206
F.R.D. 367 (S.D.N.Y. 2002)......................................................................22

*Stockbridge Funding Corp. v. Battle Fowler*, No. 91 C 10069 (FGC),
Adv. No. 92-9398 A. No. M-47 (PKC ), 1993 WL 205225 (S.D.N.Y.
June 8, 1993)..........................................................................................23, 24

*In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134
(S.D.N.Y. 2007)........................................................................................23

KL3 2598837.4

## **Table of Authorities**

**Page**

### **Statutes and Rules**

28 U.S.C. § 1292(b)......................................................................................................23

L.R. 6.3......................................................................................................................20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
GUY CARPENTER & COMPANY, LLC and                               :
MARSH & McLENNAN COMPANIES, INC.,                              :
                                                               :            07 Civ. 3580 (DC) (KNF)
                                        Plaintiffs,            :
                                                               :
                  - against -                                  :
                                                               :
JULIAN SAMENGO-TURNER, RON WHYTE,                              :
and MARCUS HOPKINS,                                            :
                                                               :
                                        Defendants.            :
                                                               :
-------------------------------------------------------------- x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION (I) TO STAY ALL PROCEEDINGS IN THIS
CASE, (II) IN THE ALTERNATIVE, FOR RECONSIDERATION OR
STAY OF THE COURT'S ORDER DATED MAY 24, 2007, OR (III) IN THE
FURTHER ALTERNATIVE, FOR CERTIFICATION OF THIS DISPUTE
AS ONE APPROPRIATE FOR IMMEDIATE INTERLOCUTORY APPEAL**

        Plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company,

Inc. ("Guy Carpenter") and Marsh & McLennan Companies, Inc. ("MMC") (together,

"plaintiffs") respectfully submit this memorandum of law in opposition to the motion of

defendants Ron Whyte ("Whyte"), Julian Samengo-Turner ("Samengo-Turner") and Marcus

Hopkins ("Hopkins," and collectively with Whyte and Samengo-Turner, "defendants") (i) to stay

all proceedings in this case in favor of proceedings initiated by defendants in the United

Kingdom subsequent to the commencement of this action seeking to deprive the Court of

authority over this action, (ii) in the alternative, for reconsideration or stay of the Order dated

May 24, 2007 (the "May 24 Order") directing defendants to comply with expedited discovery

requests and appear for depositions or to stay operation of that order, or (iii) in the further

alternative, for certification of this dispute as one appropriate for immediate interlocutory appeal, dated June 6, 2007 (the "June 6 Motion").

## **PRELIMINARY STATEMENT**

This is an action for breach of contract, stemming from defendants' violations of the terms and conditions of Agreements (the "Agreements") they executed in connection with awards made to them effective November 1, 2005 (the "Awards") under the Marsh & McLennan Companies 2000 Senior Executive Incentive and Stock Award Plan (the "Plan"). Defendants, three senior executives, recently submitted their resignations to join Integro Insurance Brokers ("Integro"), a New York-based competitor of Guy Carpenter, and are believed to have solicited other employees to join Integro as well, in direct contravention of covenants to which they agreed in the Agreements.

Following defendants' failure to cooperate in answering certain questions in accordance with a provision in the Agreements that requires defendants to provide such cooperation and because of the rapid rate at which facultative brokers providing services in the United Kingdom were announcing their resignations to join Integro, joining Integro or were otherwise being aggressively solicited to join Integro, plaintiffs commenced this action and moved for expedited discovery. By order made orally on May 18, 2007 (the "May 18 Order" and, together with the May 24 Order, the "Expedited Discovery Orders"), the Court granted plaintiffs' motion for expedited discovery.

Defendants have expended considerable efforts in seeking to avoid complying with the Expedited Discovery Orders, including commencing an action before the English High Court seeking an anti-suit injunction that would have prohibited plaintiffs from pursuing this action. The High Court having rejected their application, they filed the June 6 Motion. In doing so, they raise supposed discrepancies and inconsistencies in plaintiffs' various contentions, but

- 2 -

tellingly fail to demonstrate that any alleged discrepancies have any legal significance. Indeed,

not one of these supposed discrepancies has anything to do with defendants' contractual

obligations under the Agreements or, consequently, the claims asserted by plaintiffs here. To the

contrary, the June 6 Motion is a rehash of arguments previously made to and rejected by this

Court and the High Court and presents nothing justifying the high standards for a stay of this

action, reconsideration or stay of the Court's May 24 Order or certification of this dispute as one

appropriate for immediate interlocutory appeal. Accordingly, plaintiffs respectfully request that

the June 6 Motion be denied in its entirety.[1]

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.    The Plan, Awards and Agreements at Issue in this Action

Effective November 1, 2005, MMC made special long term incentive grants

under the Plan to 122 Guy Carpenter executives, including each of defendants. (Mansfield June

7 Dec., ¶ 6; Vaquer Dec., ¶ 6).

In connection with the Awards, each defendant agreed in writing to abide by the

terms and conditions of the Plan, as well as the additional terms and conditions set forth in the

Agreements. (Mansfield May 10 Dec., Exs. E-G, Introductory Paragraph). Pursuant to the

Agreements, defendants are required to cooperate with MMC and any of its subsidiaries or

affiliates, including Guy Carpenter, to provide information to determine whether they are in

---

[1]    The Declaration of Barry H. Berke, dated June 20, 2007, is referred to as the "Berke
Dec." The Declaration of Andrew Gordon Brown, dated June 7, 2007 (the "Brown Dec."), the
Declaration of Lynsey Mansfield, dated June 7, 2007 (the "Mansfield June 7 Dec."), and the
Declaration of Arlene Vaquer, dated June 6, 2007 (the "Vaquer Dec."), were each filed by
plaintiffs in opposition to Whyte's dismissal motion, and are attached as Exhibits 1, 2 and 3,
respectively, to the Berke Declaration. The Declaration of Lynsey Mansfield, dated May 10,
2007 (the "Mansfield May 10 Dec.") was filed by plaintiffs in support of their motion for
expedited discovery and is attached as Exhibit 4 to the Berke Declaration. The Declaration of
John Barry, dated June 6, 2007, and the brief submitted by defendants in support of their June 6
Motion is referred to as "Barry Dec." and "Defs. Br.," respectively.

compliance with their obligations (the "Cooperation Clause"). (Mansfield May 10 Dec., Exs. E-G, § II.E). As such, under the Cooperation Clause, plaintiffs are entitled to inquire about defendants' suspected solicitation of employees to ascertain their compliance with two non-solicitation provisions in the Agreement. (*See* Mansfield May 10 Dec., Exs. E-G, Schedule II.D, §§ 2(a)(iv), 4). Section 2(a)(iv) gives plaintiffs the right to cancel and rescind such vested portions of the Awards under the Cancellation and Rescission of Award Clause (the "Cancellation and Rescission Clause"). (Mansfield May 10 Dec., Exs. E-G, Section I.C).

Except as noted in the following sentence, Sections VI.N and O of the Agreements provide for (i) exclusive jurisdiction and venue in the County of New York of any dispute over any matter arising from or related to the Award and (ii) the Agreements to be governed by New York law. (Mansfield May 10 Dec., Exs. E-G, §§ VI.N, VI.O). Schedule II.D, applicable to United Kingdom employees, contains its own choice-of-law provision and non-exclusive forum selection clause for matters which fall exclusively within that Schedule. (Mansfield May 10 Dec., Exs. E-G, Schedule II.D, § 6). This dispute has not arisen in connection with the Schedule; to the contrary, this dispute concerns the Cooperation Clause and the Cancellation and Rescission Clause, matters arising from or relating to the Award and not dealt with in Schedule II.D.[2]

B.    The Suspected Solicitation of Employees

On or about April 3, 2007, each of defendants provided notice of his resignation to join Integro, a competitor of plaintiffs whose principal place of business is located in New York, New York. (Mansfield June 7 Dec., ¶ 4; *see also* Mansfield May 10 Dec., Ex. D (April 5,

---

[2]    While Schedule II.D provides the definition of "Detrimental Activity" to the extent applicable (Mansfield May 10 Dec., Exs. E-G, Schedule II.D., § 2(a)), and the determination of whether Detrimental Activity pursuant to Schedule II.D has occurred must be analyzed under English law, no other aspect of this dispute is arguably related to Schedule II.D.

- 4 -

2007 press release issued by Integro reflecting, among other things, defendants' joining Integro)). Prior to defendants' resignations, there were approximately thirty-two brokers in Guy Carpenter's U.K. facultative reinsurance group. (Mansfield May 10 Dec., ¶ 12). Plaintiffs have reason to believe that at least fourteen brokers in the facultative reinsurance group co-led by Samengo-Turner and Whyte (including defendants) have been recruited or approached, either directly or indirectly, by Integro; eight of these individuals (including defendants) have resigned and joined Integro. (Mansfield May 10 Dec., ¶¶ 6, 13-16).

C.    Commencement of this Action and Expedited Discovery Orders

Upon learning of defendants' hiring by Integro and the solicitation of employees who defendants supervised, plaintiffs sought information from defendants pursuant to the Cooperation Clause, but such efforts were unsuccessful because defendants failed to provide the requested information. (*See* Mansfield May 10 Dec., ¶¶ 28-30 and Exs. H-L). Plaintiffs thereafter filed this action for breach of contract on May 4, 2007. (Berke Dec., Ex. 5 (plaintiffs' complaint, without exhibits)).

In light of defendants' failure to comply with the Cooperation Clause and their suspected solicitation of employees to join them at Integro, plaintiffs moved for expedited discovery on May 15, 2007. (Berke Dec., Ex. 6 (copy of plaintiffs' brief in support of motion for expedited discovery)). On May 17, 2007, defendant Whyte filed his papers in opposition to plaintiffs' motion for expedited discovery. (Berke Dec., Ex. 7 (copy of defendants' brief in opposition to plaintiffs' motion for expedited discovery)). Whyte principally argued that expedited discovery should be denied (i) until jurisdictional and venue issues were resolved and (ii) because plaintiffs had failed to demonstrate they will suffer irreparable injury absent expedited discovery from defendants. (*Id.*).

KL3 2598837.4

On May 18, 2007, the parties appeared before the Court in connection with plaintiffs' motion for expedited discovery. Over defendants' objections, the Court granted its May 18 Order and further memorialized that ruling in the May 24 Order, which provides, in pertinent part, that "expedited discovery may proceed on the schedule described at the conference." (Berke Dec., Ex. 8). As the transcript of the May 18 conference reflects (Berke Dec., Ex. 9), the Court established the following schedule:

- Defendants' deadline to raise any additional issues regarding plaintiffs' document requests and interrogatories was May 21, 2007 (at pp. 8-9).

- Defendants' deadline to respond to plaintiffs' document requests and interrogatories was June 1, 2007 at 12 noon (at p. 6).

- Depositions of defendants were to occur, at plaintiffs' election, either the week of June 4 or June 11, 2007 (at p. 6).

On May 18, 2007, plaintiffs served on defendants plaintiffs' document requests and interrogatories (copies of such requests attached as Exs. 10 and 11, respectively, to the Berke Declaration). Defendants failed to raise any additional issues regarding plaintiffs' document requests and interrogatories by the May 21 deadline. At defendants' request and to accommodate their travel schedules, the depositions were scheduled to proceed in London on June 13, 14, and 15 rather than during the week of June 4, as permitted by the Court. (Berke Dec., ¶ 11 and Exs. 12-14 (copies of deposition notices)).

During the May 18 conference, defendants stated their intent to file a motion to dismiss this action. Critically, defendants specifically requested that the Court defer the expedited discovery until after resolution of their claims of lack of jurisdiction and forum *non conveniens*. After reviewing the choice of forum and choice of law provisions in the Agreements, the Court rejected defendants' request. (Berke Dec., ¶ 12). On May 24, 2007, only

defendant Whyte moved to dismiss this action, and that motion has now been fully briefed and is

pending before the Court.[3]

D.      The High Court's Rejection of Defendants' Request for an Anti-Suit Injunction

Plaintiffs were first advised on May 29, 2007 that defendants in this action had

commenced an action in the United Kingdom before the High Court on May 25, 2007 and sought

an anti-suit injunction by way of interim relief that would have prohibited plaintiffs from

maintaining this action in this Court.  Among other things, defendants claimed that this action

was barred by European Council Regulation 44/2001 (the "Regulation"), which provides, among

other things, that an employer must sue its employees in the courts of the jurisdiction in which

the employees are domiciled in matters relating to their individual contracts of employment;

defendants also claimed that litigation in the United States is "oppressive" because of the

availability of depositions and made arguments substantially identical to those made in Whyte's

dismissal motion.  (Brown Dec., ¶ 2).

The return date on defendants' application for interim relief in the United

Kingdom action was set for May 31, 2007, just two days after plaintiffs were made aware of that

action.  Solely to obtain an extension of time in which plaintiffs could prepare a proper response

to the United Kingdom action, plaintiffs agreed to the Consent Order previously submitted to the

Court.  (*See* Brown Dec., ¶ 3 and Ex. A).  This had the effect of staying the June 1 deadline for

defendants to respond to plaintiffs' document requests and interrogatories, although defendants

were required to lodge responsive documents with their United Kingdom counsel by June 6.

(Brown Dec., Ex. A at p. 2).

---

[3]      A copy of plaintiffs' brief in opposition to that motion is attached as Exhibit 15 to the
Berke Declaration.

In the United Kingdom action, it was clarified that defendants' actual employer has been Marsh Services Limited ("MSL"), which acts as one of the employing entities for individuals (like defendants) who provide services to various MMC affiliates (here, Guy Carpenter). (Barry Dec., Ex. G (Witness Statement of Lynsey Mansfield, submitted in United Kingdom action), ¶¶ 7, 8). Of course, MSL is not a party to this action and the Agreements at issue in this proceeding are between MMC and each defendant.

On June 6, 2007, a hearing was held before the High Court, at which time *the High Court rejected defendants' request for an anti-suit injunction.* Incredibly, defendants bury any mention of this defeat in a single reference on page 8 of their memorandum of law. Moreover, the judge found that the Regulation does not apply to this action and specifically recognized that England was *not* the natural forum for disputes related to the Agreements and determined that the need of MMC to have a coherent strategy countered any suggestion that these proceedings in New York were vexatious or unreasonable with regard to awards under the Plan. (Brown Dec., ¶¶ 4-6).

E.     Defendants' Continued Gamesmanship

The undisputed facts -- defendants' ignoring of this Court's Expedited Discovery Orders and their attempts to switch back and forth between this Court and the United Kingdom courts any time they receive an order or ruling not to their liking from one -- reflect calculated gamesmanship by defendants.

With expedited discovery having been granted on May 18, 2007, defendants failed to expeditiously move for reconsideration, reargument, or certification of this dispute as one appropriate for immediate interlocutory appeal. Instead, defendants ran to the United Kingdom courts to thwart the Court's Expedited Discovery Orders. Rather than producing the mandated discovery after the High Court *denied* defendants' request for an anti-suit injunction,

- 8 -

they instead within hours filed the June 6 Motion -- 19 days after the May 18 Order and 13 days after the May 24 Order -- in which they seek extraordinary relief from the May 24 Order. Following the High Court's rejection of defendants' request for an anti-suit injunction, defendants refused to produce the required written discovery; Samengo-Turner and Hopkins initially produced no responses whatsoever, while Whyte initially produced formal responses to plaintiffs' document requests and interrogatories that consisted solely of objections. (Berke Dec., Exs. 16 and 17, respectively).[4]

On June 11, 2007, the parties appeared before the Court with respect to (i) the June 6 Motion and (ii) plaintiffs' request for the Court's assistance in obtaining the expedited discovery and enforcement of the Court's orders. (Berke Dec., ¶ 16). As the transcript of the June 11 conference reflects (Berke Dec., Ex. 18), the Court (i) rejected Whyte's arguments that discovery should not proceed against him and ordered him to produce documents and substantive interrogatory responses by 9:00 p.m. that night and appear for deposition on June 14, 2007 (at pp. 18, 29), (ii) ordered submissions to be filed addressing issues concerning service of process upon defendants Julian Samengo-Turner and Marcus Hopkins (at p. 23), (iii) ruled that in the event the Court determined that service had been made (or was made in time) on Samengo-Turner and Hopkins, their depositions could go forward June 20 and 21, 2007 (at pp. 25-26, 29) and (iv) refused to stay the May 24 Order and established a briefing schedule for the June 6 Motion (at pp. 26, 27).

Whyte thereafter failed to produce documents responsive to plaintiffs' document requests and substantive interrogatory answers by the 9:00 p.m. deadline on June 11, 2007.

---

[4]    In those responses, Whyte asserts that "[p]laintiffs have conceded that the factual premise under which they obtained the May 24, 2007 Order for expedited discovery was erroneous;" plaintiffs have never made any such concession here or in the action before the High Court and expressly reject that proposition.

KL3 2598837.4

(Berke Dec., ¶ 17). After being apprised of this by plaintiffs' counsel by letter June 12, 2007 (Berke Dec., Ex. 19), the Court held a telephonic conference that day with the parties. As the transcript of the June 12 telephone conference reflects (Berke Dec., Ex. 20), the Court criticized defendants' actions and ordered that responsive documents be produced no later than the time plaintiffs' counsel landed in London the next day.[5]

In the June 6 Motion, defendants asserted that the complaint had not been served upon defendants Samengo-Turner or Hopkins. In another round of gamesmanship, following the Court's request during the June 11, 2007 conference that the parties file submissions addressing service issues concerning Samengo-Turner and Hopkins, Samengo-Turner and Hopkins failed to file any such submission and Whyte took no position on this issue. (Berke Dec., ¶ 19 and Ex. 21 (Whyte's submission asserting he was taking no position)). Noting that "[d]uring the [June 11] conference, Whyte's counsel did not indicate that he would not be making an argument on this issue," the Court held that "despite the attempts of defendants Hopkins and Samengo-Turner to evade service of process, plaintiffs have served them pursuant to the Hague Service Convention and that they have actual notice of this lawsuit as well." (Berke Dec., Ex. 22 (Court's memorandum opinion and order, dated June 14, 2007) at pp. 2-3, 6). The Court also ordered that plaintiffs may depose Hopkins and Samengo-Turner on June 20 and 21, 2007.[6]

Following the High Court's rejection of their request for an anti-suit injunction, defendants did not seek immediate relief from the United Kingdom courts. *Following the*

---

[5]     Whyte finally produced substantive responses to plaintiffs' interrogatories and document requests and documents responsive to plaintiffs' document requests on June 13, 2007. Whyte's deposition occurred on June 14, 2007. (Berke Dec., ¶ 18).

[6]     On June 18 and 19, 2007, Hopkins and Samengo-Turner produced documents in response to plaintiffs' document requests and supplied responses to plaintiffs' document requests and interrogatories. Hopkins was deposed on June 20, 2007, and Samengo-Turner is to be deposed on June 21, 2007. (Berke Dec., ¶ 20).

- 10 -

*Court's rulings on June 11 and 12, 2007*, on June 14, 2007, defendants sought leave to appeal the High Court's rejection of their application for an anti-suit injunction and a stay pending appeal. On June 19, 2007, the Court of Appeal granted permission to appeal the High Court's June 6 decision on an expedited basis, but did not grant any interim relief to defendants pending such appeal; it further decided that any request for interim relief would be heard on notice with immediate expedition. Later that day, defendants filed an application with the Court of Appeal requesting an interim injunction restraining all actions in the United States proceeding pending determination of the expedited appeal. On June 20, 2007, a hearing was held on defendants' application, and the application was rejected. (Berke Dec., ¶ 21).[7]

## THE MATERIAL MISSTATEMENTS IN THE JUNE 6 MOTION

Defendants' June 6 Motion focuses on supposed discrepancies and inconsistencies in plaintiffs' various contentions, although they fail to demonstrate that any of these alleged discrepancies have any legal significance. Indeed, in their effort to justify the extraordinary relief they seek, defendants cobble together misstatements, distortions, and irrelevancies:

1.    Identity of Employer. Defendants complain that although plaintiffs stated in this action that defendants have been employed by Guy Carpenter in its facultative reinsurance group, it came to light in the English proceeding that in fact defendants' legal employer was MSL. MSL is a services entity that serves as one of the employing entities for individuals who provide services to various MMC affiliates (Barry Dec., Ex. G, ¶¶ 7, 8). Plaintiffs' submission of defendants' respective employment contracts with MSL in connection with plaintiffs' motion

---

[7]    On or about June 12, 2007, defendants also filed with the High Court additional claims against plaintiffs and MSL seeking, among other things, a declaration that their Agreements and the employment agreements with MSL have been repudiated and that the obligations contained in those documents can no longer be enforced as a result. (Berke Dec., ¶ 22).

- 11 -

for expedited discovery demonstrates that plaintiffs did not try to hide defendants' employer in this action. (Mansfield May 10 Dec., Exs. A-C). There is, of course, no dispute that throughout their employment defendants provided services to Guy Carpenter. Moreover, any distinction between the terms "employed by" or "provided services to" is irrelevant to the claims asserted in this case, which arise out of contractual rights and obligations prescribed in the Agreements between MMC and each defendant.[8]

Indeed, during the June 11 conference, the Court confirmed that this was much ado about nothing as defendants had raised at the May 18 conference that they thought there was a good chance that the actual employer of defendants was a UK entity. (*See* Berke Dec., Ex. 18 at pp. 8-9) ("My recollection, and it is in my law clerk's notes, is that they argued they didn't know for sure, . . ., but they thought there was a good chance that the actual employer was a UK entity, which is why I spent the time I did in the prior conference going through the document on which the plaintiffs are suing to confirm that it was an agreement between the plaintiffs and the defendants. Therefore, this issue was raised before me, considered by me, and I looked at the language of the documents to confirm that I should rule as I did in rejecting the arguments.").

2.    Garden Leave and Defendants' Employment Agreements with MSL. The mention of defendants' garden leave status here was by way of background only -- no claim for relief is premised upon that status, nor is that status relevant to the contractual obligations plaintiffs seek to enforce here. Defendants' obligation to cooperate and the Cancellation and Rescission provision apply both during and subsequent to their garden leave periods.

---

[8]    In fact, defendants argued in their Memorandum of Law in Opposition to Plaintiff's Application for Expedited Discovery (Berke Dec., Ex. 7) that "they each remained employed by GC [plaintiff Guy Carpenter]" (at p. 4), "GC employed Defendants in the U.K. at all relevant times" (same), and "Defendants earned certain monies from GC" (same) and made arguments concerning issues related to "solicitation or recruitment of a U.K.-based GC employee."

- 12 -

Similarly, plaintiffs have never relied here in any manner on defendants' contracts of employment with MSL; to the contrary, all of the relief they have sought is grounded in the Agreements with MMC. Defendants' contracts of employment -- while clearly documenting defendants' employment with MSL -- were attached as exhibits in a prior submission only by way of background. A review of plaintiffs' submissions reveals that they never premised any right to relief on anything in the contracts of employment; plaintiffs' rights derive from the Agreements, which are properly subject to litigation in this Court. In this regard, plaintiffs' reference in their Memorandum of Law in support of their application for expedited discovery to "defendants' contractual obligations" (Berke Dec., Ex. 6 at p. 12) clearly references their obligations under the Agreements alone.

          3.     Law Governing Detrimental Activity. Defendants complain that plaintiffs contended in the English proceedings that the definition of "Detrimental Activity" in Schedule II.D does not apply until after their employment terminates. Of course, if that is so -- and the language of the Agreements says just that -- then the definition of "Detrimental Activity" is at this juncture governed by New York law and subject to a mandatory New York forum selection clause. Nonetheless, plaintiffs have elected to date not to pursue that argument in this litigation because it is unnecessary -- as previously demonstrated during the May 18 conference and as shown in plaintiffs' opposition to defendant Whyte's dismissal motion (Berke Dec., Ex. 15), even if the definition of "Detrimental Activity" is to be interpreted under English law, plaintiffs properly are entitled to maintain this action in this Court.[9]

---

[9]     In Whyte's reply brief in further support of his dismissal motion (at p. 8), defendants assert that "[i]f Defendants are *not* governed by Schedule II.D., then they cannot engage in 'Detrimental Activity' as defined by Schedule II.D. Plaintiffs thus would be unable to pursue this action in New York for rescission of the Bonus Contract award." (emphasis in original). Defendants offer absolutely no support for this position; of course, if the definition of

KL3 2598837.4

4.    <u>Intent to Seek Relief in UK Courts</u>.  Plaintiffs represented to the Court that they had no intention to seek relief in the United Kingdom courts.  In response to defendants' application for an anti-suit injunction, MMC and MSL (which also had been sued in the UK proceedings by defendants) filed a cross-application seeking (a) separate relief from the English courts in the event that the anti-suit injunction was granted (as noted above, the injunction was denied); and (b) assistance in enforcement of this Court's discovery orders.  (Barry Dec., Ex. F).  As the Court noted during the June 11 conference, "[plaintiffs'] proceedings in Britain were in response to what you began over there."  (Berke Dec., Ex. 18 at p. 12).  Indeed, in addressing defendants' argument that plaintiffs have been trying to use this action as a tactic for another litigation, the Court further noted that (Berke Dec., Ex. 18 at pp. 13-14):

> That might have been a very strong argument, might have been an argument worth considering carefully if you hadn't begun the proceedings in Britain.  So the landscape changed.
>
> I have no reason to believe based on how things have played out that [plaintiffs] weren't serious about litigating this case in America on the merits, and continue to be so, and that they might use the information in the litigation in England.  Now that you have begun litigation there too, I think [it] is entirely appropriate, if that is permitted by the law.

5.    <u>Irreparable Harm</u>.  Repeating an argument first made in their opposition to the motion for expedited discovery, defendants again cite to comments made by the Chief Executive Officer of MMC on an earnings call that certain recent departures of brokers to Integro were "a temporary blip."  But that comment in no way diminishes the irreparable harm caused by breaches of the defendants' obligations under the Agreements.  The improper solicitation of fourteen of the thirty-two brokers in Guy Carpenter's U.K. facultative reinsurance

---

"Detrimental Activity" in Schedule II.D does not apply, then the definition of "Detrimental Activity" contained in Section I(C) of the Agreements controls.

- 14 -

group clearly can simultaneously cause irreparable harm -- that is, harm for which monetary

damages would be inadequate -- while constituting "a temporary blip" to MMC, the parent

company of Guy Carpenter and other entities, which with its subsidiaries has more than 55,000

employees and annual revenues of approximately $12 billion.  (Berke Dec., Ex. 23 (excerpt from

MMC's 2006 Annual Report)).

## ARGUMENT

## THE JUNE 6 MOTION SHOULD BE REJECTED IN ITS ENTIRETY

Notwithstanding its hyperbole and distortions, defendants' June 6 Motion falls

well short of the showing necessary for obtaining the extraordinary relief sought here:  (i) a stay

of this action, (ii) reconsideration or stay of the May 24 Order or (iii) certification of this dispute

as one appropriate for immediate interlocutory appeal.

A.    Defendants' Request for a Stay of this Action Should Be Denied

As recently confirmed by this Court, a federal court "has a 'virtually unflagging

obligation . . . to exercise the jurisdiction given' to it, and should stay a proceeding only under

'exceptional circumstances.'"  *Aerotel, Ltd. v. IDT Corp.*, _____ F. Supp. 2d ____, Nos. 03 Civ.

6496 (RJH), 04 Civ. 10292 (RJH), 2007 WL 1334547, at *8 (S.D.N.Y. May 4, 2007) (quoting

*Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)).  Consistent with

this obligation, a court's discretion to stay an action pending the resolution of a related foreign

proceeding "is limited by its heavy obligation to exercise jurisdiction on the one hand, and the

need for wise judicial administration, giving regard to conservation of judicial resources and

comprehensive disposition of litigation on the other."  *Id.* at *4 (internal quotations and citations

omitted).  It is well-settled that "[t]he general rule of comity is that the domestic court should

exercise jurisdiction concurrently with the foreign court . . . .  Without a final judgment from

another court, surrender of jurisdiction is justified only under exceptional circumstances."  *Id.* at

- 15 -

\*5 (internal quotations and citations omitted). Defendants fall far short of demonstrating such exceptional circumstances.

1.    That the United States Action Was Filed Prior to the United Kingdom
Action Weighs Heavily Against Granting Defendants' Request for a Stay

Defendants suggest that the Court should stay this action "in deference to the pending expedited proceedings before the High Court of Justice in England," ignoring the fact that defendants give no deference to *this* proceeding or *this* Court. Nor do they address the fact that the English proceeding was the second-filed proceeding, pursued in order to deprive this Court of adjudicatory authority over this matter, and that the relief sought by the defendants in that action is related to stopping this proceeding, not to providing relief to plaintiffs with respect to their claims in this action.

While defendants claim "although the U.S Action was filed first, the sequence of the filings is irrelevant" (Defs. Br. at 16), well-settled case law demonstrates that the sequence of filings is an important factor in the stay analysis. *See, e.g., Aerotel*, 2007 WL 1334547, at \*7 ("If the domestic action is filed first, it should presumptively be allowed to proceed whether or not the foreign proceeding does."); *New York Bay Co. v. State Bank of Patiala*, No. 93 Civ. 6075 (WK), 1994 WL 369406, at \*5 (S.D.N.Y. Jul. 12, 1994) (refusing to stay United States action in favor of action filed three months later in India); *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 318 (S.D.N.Y. 1986) ("When as in this case, the foreign action is pending rather than decided, comity counsels that priority generally goes to the suit first filed.").

Indeed, defendants concede that the United Kingdom proceedings were initiated solely as a defensive mechanism to this action. (*See* Defs. Br. at 5). This further weighs heavily in favor of rejecting their stay request. *Aerotel*, 2007 WL 1334547, at \*7 (refusing to stay United States action in favor of Israeli action when, among other things, "[i]t is also clear that the

- 16 -

declaratory judgment action [in Israel] was filed as a reaction to the issues raised in this lawsuit"); *Ronar*, 649 F. Supp. at 318-19 (rejecting attempt to engage in forum shopping in West Germany and noting "[i]f any court is to abstain . . ., it should be the West German court rather than this one" as "[plaintiff's] action in this court was the first to be filed").

     *MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249 (S.D.N.Y. 1999), relied upon by defendants, is not to the contrary. In that case, the Court held that the action before it would be dismissed in deference to a pending suit in London. *Id.* at 254. Tellingly, in that dispute, the first action was filed before the High Court in London, and a month later, the defendant in that action filed an action in the United States. *Id.* at 251, 254. In granting the request for a stay, the Court expressly recognized a lack of prejudice to the United States plaintiff as "a plaintiff's choice of forum is entitled to much less weight when it is made after the filing of a concurrent action arising out of the same series of transactions." *Id.*; *see also Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 255 (S.D.N.Y. 1999) (sequence of actions heavily favored a stay of federal action since that action was filed in December 1998, four months after Dunkin' Donuts' answer and counterclaim were filed in the United Kingdom action and a full year after Dunkin' Donuts filed its first United Kingdom action).

    2.  <u>Other Factors Compel Rejection of Defendants' Request for a Stay</u>

     Other factors further compel the denial of a stay.

     Defendants fail to consider that the denial by the High Court of their request for an anti-suit injunction demonstrates that New York is the appropriate forum for this dispute. Despite defendants' attempts to downplay the New York contacts with this dispute, they are prevalent, as demonstrated in plaintiffs' brief in opposition to Whyte's dismissal motion (Berke Dec., Ex. 15), including, without limitation:

- 17 -

- Both Guy Carpenter and MMC have their principal place of business in New York. (Mansfield June 7 Dec., ¶ 2; Vaquer Dec., ¶ 2).

- The Plan -- under which awards have been made to senior executives of MMC and its subsidiaries (including Guy Carpenter) and affiliates -- was drafted in New York and has been administered by personnel in New York. (Vaquer Dec., ¶ 4).

- The original agreements evidencing the Awards, as well as the grants made effective November 1, 2005 to other Guy Carpenter executives, are maintained in New York. (Mansfield June 7 Dec., ¶ 6; Vaquer Dec., ¶ 6). Recommendations regarding the amounts to be granted to such individuals were made by senior management in New York with input from the local business heads. (Mansfield June 7 Dec., ¶ 6). Final approval regarding these grants was given by the Compensation Committee of the MMC Board of Directors in New York. (Mansfield June 7 Dec., ¶ 6; Vaquer Dec., ¶ 6).

- The Agreements are governed by exclusive New York choice of forum and choice of law provisions (other than for matters which fall exclusively within Schedule II.D). (Mansfield May 10 Dec., Exs. E-G, §§ VI.N, VI.O). Such provisions compel the conclusion that personal jurisdiction over defendants exists and that a forum *non conveniens* analysis is inappropriate. (*See* Berke Dec., Ex. 15 at pp. 12-14, 17-19).

- At the time notice of their resignations was given, defendants Samengo-Turner and Whyte co-led Guy Carpenter's global facultative reinsurance business unit, including supervising, among other persons, Guy Carpenter facultative brokers in the United States. (Mansfield June 7 Dec., ¶ 4; Vaquer Dec., ¶ 5).

- Integro, the company which defendants have joined and from whom third party discovery has been sought and will be necessary, has its principal place of business in New York. (Berke Dec., Ex. 24 (subpoena); Mansfield May 10 Dec., Ex. D (Integro Press Release)).

- Defendants traveled to New York numerous times during the past few years, in order to conduct business and attend meetings with other senior executives here. (Mansfield June 7 Dec., ¶ 7).

Further, the interests of the United States in this action are paramount. *See New York Bay*, 1994 WL 369406, at *5 (in rejecting stay, noting that "the Indian action appears to have been brought for the sole purpose of thwarting plaintiff's U.S. litigation" and thus "[i]t would undoubtedly be contrary to the national interest for a U.S. court with proper jurisdiction

over a case brought by a U.S. plaintiff against a foreign defendant to defer to such a foreign action"). At the same time the Awards at issue were made to each of defendants, MMC made grants under the Plan to 119 other Guy Carpenter executives effective November 1, 2005; these grants were made to Guy Carpenter executives based in (a) ten different states in the United States and (b) sixteen different foreign countries. (Vaquer Dec., ¶ 6). As described in plaintiffs' brief in opposition to Whyte's dismissal motion, the State of New York has a strong interest in limiting litigation to a New York forum when that litigation arises out of contracts and plans drafted and administered in New York for the worldwide employees of New York-based companies and their affiliates. (*See* Berke Dec., Ex. 15 at pp. 23-24).

In addition, despite defendants' suggestion to the contrary, England is not an adequate alternative forum, or indeed even a theoretically possible alternative forum, to hear this entire dispute. Plaintiffs assert two claims for relief in this action, one involving defendants' failure to abide by the Cooperation Clause in their Agreements, constituting a breach of Section II.E. of their respective Agreements, and the other arising out of defendants' failure to return portions of their Awards pursuant to the Cancellation and Rescission Clause, constituting a breach of Section I.C(2) of their respective Agreements. (Berke Dec., Ex. 5, ¶¶ 47-52). These provisions are governed by the *exclusive* forum selection clause at Section VI.N. and are not superseded by Schedule II.D. Thus, there is no forum other than New York in which plaintiffs properly could bring their claim that defendants have breached the Agreements with regard to the Cooperation Clause and the Cancellation and Rescission Clause.

Lastly, in granting expedited discovery in this case, the Court has already recognized that the improper solicitation of fourteen of thirty-two brokers in Guy Carpenter's facultative reinsurance group -- eight of whom have resigned and joined Integro -- constitutes

- 19 -

irreparable harm. Defendants' proposed undertakings (*see* Defs. Br. at 14) fall woefully short of

providing any comfort to plaintiffs, including, without limitation, their failure to provide that

defendants will comply with their non-solicitation and cooperation obligations under the

Agreements and their failure to represent that they have not breached any of their contractual

obligations under the Agreements, including, without limitation, their non-solicitation

obligations.[10]

B.    Reconsideration or Stay of the May 24 Order is Not Warranted

1.    Reconsideration of the May 24 Order is Not Warranted

Defendants failed to seek reconsideration within ten days after the Court's oral

May 18 Order, as required by Local Civil Rule 6.3; as a result, they now can seek to reargue only

the Court's May 24 Order, which by its terms incorporates the oral rulings of the Court on May

18. Because defendants at base challenge the Court's May 18 Order, their motion for

reconsideration is untimely.

In any event, this Court has recently confirmed the extraordinary showing a party

must make in seeking reconsideration:

> The standard for a motion for reconsideration is strict, and
> reconsideration will generally be denied unless the moving party
> can point to controlling decisions or data that the court
> overlooked – matters, in other words, that might reasonably be
> expected to alter the conclusion reached by the court . . . .
> Reconsideration should not be granted where the moving party
> seeks solely to relitigate an issue already decided . . ., and a party
> . . . may not advance new facts, issues or arguments not previously
> presented to the court. A motion for reconsideration may not treat
> the court's initial decision as the opening of a dialogue in which
> that party may then use such a motion to advance new theories or
> adduce new evidence in response to the court's rulings.

---

[10]    As defendants concede, MSL is not a party to this action, although it is a party to the
United Kingdom proceeding. (Defs. Br. at 9). Further, the employment agreements with MSL
regarding which defendants make arguments in the UK proceeding are not at issue here.

KL3 2598837.4

*Frierson-Harris v. Hough*, No. 05 Civ. 3077 (DLC), 2007 WL 1343843, at *1 (S.D.N.Y. May 8, 2007) (Cote, J.) (internal quotations and citations omitted); *see also Sathianathan v. Smith Barney, Inc.*, No. 04 Civ. 7122DABFM, 2007 WL 1295737, at *1 (S.D.N.Y. Apr. 25, 2007) ("[A] motion for reconsideration is not one in which a party may reargue those issues already considered when a party does not like the way the original motion was resolved.") (internal quotations and citations omitted).

Defendants fall far short of satisfying this high standard. Although defendants tellingly fail to demonstrate that any alleged discrepancies have any legal significance, their primary claim that the Expedited Discovery Orders were obtained based on erroneous assertions is, as described above (at pp. 11-15), simply wrong. Further, defendants' claims that plaintiffs have not suffered irreparable harm and that discovery should be delayed pending a decision on Whyte's dismissal motion repeats arguments first made in their opposition to the motion for expedited discovery (Berke Dec., Ex. 7) and already have been rejected by the Court. Lastly, defendants' claim that Samengo-Turner and Hopkins have never been served has been rejected by the Court. (Berke Dec., Ex. 22).

Accordingly, defendants' motion for reconsideration of the May 24 Order should be rejected. *See Nelson v. Beechwood Org.*, No. 03 Civ. 4441 GEL/HBP, 2006 WL 488670, at *2 (S.D.N.Y. Feb. 23, 2006) ("The affidavit in support of plaintiff's motion recounts some of the events that underlie plaintiff's claims and describes a number of events that have taken place during the litigation. However, plaintiff nowhere explains why my [prior discovery order] is incorrect or identifies the controlling facts and law that I allegedly overlooked.").

2.     A Stay of the May 24 Order is Not Warranted

In largely duplicative arguments, defendants assert that, even if reconsideration of the May 24 Order is not warranted, the Court should nevertheless stay that order. During the

KL3 2598837.4

June 11 conference and by operation of the Court's decision and order regarding service of

process on Samengo-Turner and Whyte, the Court has rejected this request and confirmed the

propriety of the Expedited Discovery Orders; accordingly, defendants' request for a stay of the

May 24 Order is moot. In any event, as described above, applicable law confirms that there

should not be any stay of this action pending the second-filed United Kingdom proceedings, and

the Court has previously rejected defendants' attempt to stay such order pending Whyte's

dismissal motion and defendants' arguments that plaintiffs will not suffer irreparable harm if

expedited discovery fails to proceed.

Cases cited by defendants are not to the contrary. They are easily distinguished

for among other reasons the fact that none of those cases involved the need for expedited

discovery. *See, e.g., Port Dock and Stone Corp. v. Oldcastle Northeast, Inc.*, No. CV 05-4294

(DRH) (ETB), 2006 WL 897996, at *5-6 (E.D.N.Y Mar. 31, 2006) (granting stay when, unlike

here, the defendants had raised substantial issues with regard to the viability of plaintiffs'

complaint as against two defendants and plaintiffs had failed to demonstrate that a stay would

unfairly prejudice them or cite any case law in support of their position); *Spencer Trask Software*

*and Info. Servs., LLC v. Rpost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (granting stay of

discovery when, unlike here, the defendants had substantial arguments for dismissal and court

found discovery sought outrageously broad).

C.      Defendants' Request for Certification of this Dispute as One
        Appropriate for Immediate Interlocutory Appeal Should Be Rejected

In their last gasp, defendants request that the Court amend the May 24 Order to

certify this dispute as one appropriate for immediate interlocutory appeal pursuant to 28 U.S.C.

§ 1292(b). This request similarly should be denied.

- 22 -

28 U.S.C. § 1292(b) provides, in pertinent part, that "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." As this Court has recently confirmed, "federal practice strongly disfavors discretionary interlocutory appeals" because "[a]ppeals from interlocutory orders prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007). Thus, "[i]nterlocutory appeal 'is a rare exception' where, in the discretion of the district judge, it 'may avoid protracted litigation.'" *Id.* (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).

Discovery orders of the type challenged here are generally not appropriate for certification pursuant to 28 U.S.C. § 1292(b). *See, e.g.*, *Stockbridge Funding Corp. v. Battle Fowler*, No. 91 C 10069 (FGC), Adv. No. 92-9398 A. No. M-47 (PKC), 1993 WL 205225, at *5 (S.D.N.Y. June 8, 1993) ("In applying the 'controlling question of law' requirement, courts have repeatedly held that, except in rare circumstances, discovery orders do not present 'controlling questions of law,' that will materially advance termination of the litigation."). Indeed, defendants here do not even attempt to demonstrate -- nor could they -- that (i) the May 24 Order involves an issue about which there is substantial ground for difference of opinion, (ii) a controlling question of law is involved or (iii) immediate appeal from that order may materially advance the ultimate termination of this litigation and thus this request must be denied. *See, e.g.*,

*Gache v. Balaber-Strauss*, 198 B.R. 662, 664-65 (S.D.N.Y. 1996) (finding discovery order not

appropriate for interlocutory review); *Stockbridge Funding*, 1993 WL 205225, at *7 (same).

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny

defendants' June 6 Motion in its entirety.

Dated: New York, New York
      June 20, 2007

                    KRAMER LEVIN NAFTALIS & FRANKEL LLP

                    By:   /s/ Barry H. Berke
                            Barry H. Berke (BB-1421)
                            Robert N. Holtzman (RH-9525)
                            Steven M. Knecht (SK-8404)
                    1177 Avenue of the Americas
                    New York, New York  10036
                    (212) 715-9100

                    Attorneys for Plaintiffs

KL3 2598837.4