**EXHIBIT 5**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————— x

GUY CARPENTER & COMPANY, LLC and
MARSH & McLENNAN COMPANIES, INC.,

          Plaintiffs,

- against -

JULIAN SAMENGO-TURNER, RON WHYTE,
and MARCUS HOPKINS,

          Defendants.

———————————————————————— x

Index No: 07 Civ. 3580

Complaint

       Plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company, Inc., ("Guy Carpenter") and Marsh & McLennan Companies, Inc. ("MMC") (collectively "plaintiffs"), by their attorneys Kramer Levin Naftalis & Frankel LLP, for their complaint against defendants Julian Samengo-Turner ("Samengo-Turner"), Ron Whyte ("Whyte"), and Marcus Hopkins ("Hopkins") (collectively, "defendants"), allege as follows:

Introduction

       1.    This is an action for breach of contract arising out of defendants' participation in the "Marsh & McLennan Companies 2000 Senior Executive Incentive and Stock Award Plan" ("the Plan") and their respective violations of the terms and conditions of the Agreements each defendant executed in connection with the November 1, 2005 awards granted under the Plan (the "Agreements"). Under the express terms of the Agreements, defendants are each required to cooperate with Marsh or any of its subsidiaries or affiliates, including Guy Carpenter, and specifically to "provide to the Company such information relating to [their] work for the Company or [their] other commercial activities as the Company may from time to time

reasonably request in order for the Company to determine whether [they] are in compliance with [their] obligations under [the Plan]." Having received from Guy Carpenter written, reasonable requests for information in accordance with this provision, defendants have refused to cooperate. Not only are such refusals unambiguous breaches of defendants' contractual obligations to provide such cooperation, but they are a blatant and unlawful attempt to prevent plaintiffs from determining whether defendants are in compliance with other terms of the Agreements. Specifically, plaintiffs have reason to believe that defendants, directly and/or in concert with other individuals at their announced, next employer, are and have been targeting, soliciting and recruiting numerous Guy Carpenter employees to terminate their employment with Guy Carpenter to join Integro Insurance Brokers. Any such activities constitute separate violations of the Agreements.

2. Further, under the express terms of the Agreements, defendants are not permitted to engage in Detrimental Activity, which includes employment with or otherwise being interested in a competitor of plaintiffs. Defendants engaged in Detrimental Activity and breached their Agreements by accepting employment with or otherwise becoming interested in Integro Insurance Brokers on or before April 5, 2007. Under the Agreements, defendants therefore are required to return compensation that they received pursuant to the Plan within one year prior to their engaging in such Detrimental Activity. Despite proper written demand, they have failed to do so.

3. Accordingly, by this action, plaintiffs seek (a) a mandatory injunction ordering defendants to cooperate with plaintiffs in accordance with their contractual obligations under the Agreements and (b) damages proximately caused by defendants' breaches of the Agreements.

KLJ 2589853.5

## The Parties, Jurisdiction and Venue

4. MMC is a Delaware corporation with its principal place of business at 1166 Avenue of the Americas, New York, New York 10036. MMC is a public company listed on the New York Stock Exchange and owns a number of the leading risk management and human capital consulting companies, including Marsh, Inc. ("Marsh"), Guy Carpenter, Mercer Human Resource Consulting and Kroll Inc.

5. Guy Carpenter is a leading risk and reinsurance intermediary and a wholly owned subsidiary of MMC. Guy Carpenter is a Delaware corporation with its principal place of business at One Madison Avenue, New York, New York 10010.

6. Upon information and belief, Samengo-Turner is a citizen of the United Kingdom and resides at 17 Kyrle Road, London, SW11 6BD, England.

7. Upon information and belief, Whyte is a citizen of the United Kingdom who resides at Oak Rise, 193 World's End Lane, Chelsfield, Kent, BR6 6AT, England.

8. Upon information and belief, Hopkins is a citizen of the United Kingdom who resides at 1 Belmont Road, London, SW4 0BZ, England.

9. This action for breach of contract arises under the terms of the Agreements. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2). MMC and Guy Carpenter are citizens of Delaware and New York and defendants are subjects of a foreign state (the United Kingdom). The amount in controversy exceeds $75,000, exclusive of interest and costs.

KL3 2589853.5

10.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391 and pursuant to paragraph VI.N of the Agreements.

Defendants' Employment With Plaintiffs

11.     Samengo-Turner's employment with Guy Carpenter commenced on or about September 23, 1991. On or about April 3, 2007 Samengo-Turner gave notice to Guy Carpenter of his resignation of employment. At the time such notice was given, Samengo-Turner co-led Guy Carpenter's global facultative reinsurance business unit, doing business under the trademark GCFac.

12.     Whyte's employment with Guy Carpenter commenced on or about September 20, 1988. On or about April 3, 2007, Whyte gave notice to Guy Carpenter of his resignation of employment. At the time such notice was given, Whyte co-led Guy Carpenter's global facultative reinsurance business unit, doing business under the trademark GCFac.

13.     Hopkins's employment with Guy Carpenter commenced on or about April 10, 2000. On or about April 3, 2007, Hopkins gave notice to Guy Carpenter of his resignation of employment. At the time such notice was given, Hopkins was head of Guy Carpenter's U.K. facultative reinsurance operation.

14.     Defendants' employment with Guy Carpenter was, and continues to be, governed by their respective employment agreements with plaintiffs.

15.     Under the terms of their respective employment agreements with plaintiffs, defendants are currently in six (6) month "notice periods," meaning that they remain employed by plaintiffs and continue to receive compensation from plaintiffs. As current

KL3 2589853.5

employees, defendants also continue to have all the fiduciary and related duties and obligations to plaintiffs that are associated with such employment.

16. In addition, by the terms of their respective employment agreements with plaintiffs, defendants are not permitted for specific periods of time during and after their notice period to solicit, entice, induce, or encourage any of plaintiffs' employees to leave plaintiffs and join a company that competes with plaintiffs.

<u>Defendants' Participation in the Plan and Defendants' Obligations Under the Agreements</u>

17. MMC offers various incentive compensation plans to its employees in order to strengthen the mutuality of interest between MMC and its employees and to provide appropriate incentives for employees to remain with MMC and its subsidiaries or affiliates.

18. During the course of their employment with plaintiffs, each of the defendants participated in the "Marsh & McLennan Companies 2000 Senior Executive Incentive and Stock Award Plan."

19. In connection with the grants of their November 2005 Awards under the Plan, each defendant agreed in writing to abide by the terms and conditions of the Plan as well as the additional terms and conditions set forth in Agreements related to the Plan. (Redacted versions of defendants' Agreements are attached as Exhibits A - C). Throughout the Agreements, MMC and its subsidiaries or affiliates are referred to together as "the Company."

20. On or about November 1, 2005, Messrs. Samengo-Turner, Whyte and Hopkins were granted Awards under the Plan, which were subject to vesting in specified percentages on various future dates. (*See* Exhibits A - C).

21. Messrs. Samengo-Turner, Whyte and Hopkins agreed to the terms of the Awards by executing the Agreements.

22. As of April 2007, 20% of the Awards granted to each defendant had vested. (*See* Exhibits A - C, Section I.A(1)). Defendants received cash payments of the vested portions of their Awards as follows: Samengo-Turner received £77,110, Whyte received £61,688 and Hopkins received £46,266.

23. Significantly, the Agreements require each defendant to "provide to the Company such information relating to [their] work for the Company or [their] other commercial activities as the Company may from time to time reasonably request in order for the Company to determine whether [they] are in compliance with [their] obligations under [the Plan]." (the "Cooperation Clause"). (*See* Exhibits A - C, Section II.E). The Cooperation Clause applies to defendants "during and after [their] employment with the Company." (*See id.*).

24. Compliance with the Cooperation Clause is mandatory; there is no prerequisite that plaintiffs demonstrate any potential breach of participants' obligations under the Agreement in order to be entitled to the benefits of the Cooperation Clause.

25. In addition, the Agreements provide for "Cancellation and Rescission" of the Awards granted under the Plan if a defendant engages in any "Detrimental Activity," as defined in the Agreements, during the 12 month period following any vesting of the Award. (*See* Exhibits A - C, Section I.C). Cancellation and Rescission includes return of amounts already distributed to a participant during the one year period preceding any such Detrimental Activity. (*See* Exhibits A - C, Section I.C(2)(a)).

-6-

26. The definition of Detrimental Activity applicable to defendants is set forth in Schedule II.D of the Agreements, since defendants' principal place of employment at the time they gave notice of their resignations was the United Kingdom. (*See* Exhibits A - C, Section II.D).

27. According to Schedule II.D of the Agreements, Detrimental Activity includes "enticing, inducing or encouraging an Employee to leave or seek to leave his or her position with the Company or any Associated Company for the purpose of being involved in or concerned with either the supply of Competitive Services or a business which competes with or is similar to a Relevant Business or which plans to compete with a Relevant Business, regardless of whether or not that Employee acts in breach of his or her contract of employment (either written or implied) with the Company or any Associated Company by doing so." (*See* Exhibits A - C, Schedule II.D, Section 2(a)(iv)).

28. In addition, Detrimental Activity includes, "to any material extent undertaking, carrying on or being employed, engaged or interested in any capacity in the supply or proposed supply of Competitive Services within the Territory." (*See* Exhibits A - C, Schedule II.D, Section 2(a)(i)). Under Schedule II.D, Competitive Services is defined as "services identical to or competitive with those which at the expiry of the Relevant Period the Company or any Associated Company was supplying or negotiating or actively and directly seeking to supply to a Client for the purpose of a Relevant Business." (*See id.* at Section 5). Relevant Business is defined as "the business of the Company or any Associated Company in which, pursuant to your duties, you were materially involved at any time during the Relevant Period." (*See id.*). Relevant Period "means . . . , where your employment has ended, the period of 12 months ending on the Termination Date." (*See id.*).

29. Defendants agreed to independent non-solicitation covenants which are separately enforceable. Under Schedule II.D of the Agreements, defendants agreed not to "[e]ntice, induce or encourage an Employee to leave or seek to leave his or her position with the Company or any Associated Company for the purpose of being involved or concerned with either the supply of Competitive Services or a business which competes with either the supply of Competitive Services or a business which competes with the Relevant Business regardless of whether or not that Employee acts in breach of his or her contract of employment (either written or implied) with the Company or any Associated Company by so doing." (*See* Exhibits A - C, Schedule II.D, Section 4).

30. The Agreements further provide that "[t]he Company and [defendants] irrevocably submit to the exclusive jurisdiction and venue of any state or federal court located in the County of New York for the resolution of any dispute over any matter arising from or related to the Award . . . . Moreover, both [defendants] and the Company (i) acknowledge that the forum stated in this Section VI.N has a reasonable relation to this Award and to the relationship between [defendants] and the Company and that the submission to the forum will apply, (ii) waive, to the extent permitted by law, any objection to personal jurisdiction or to the laying of venue of any action or proceeding covered by this Section VI.N and (iii) agree not to commence any such action or proceeding in any forum other than the forum stated in this Section VI.N and (iv) agree that, to the extent permitted by law, a final and non-appealable judgment in any such action or proceeding in any such court will be conclusive and binding on [defendants] and the Company." Defendants also agreed to trial of these claims by the Court "WITHOUT A JURY." (*See* Exhibits A - C, Section VI.N).

31. The Agreements also provide that "[n]otwithstanding anything to the contrary (except with regard to the Schedule II.D, if applicable), this Agreement shall be governed by the laws of the State of New York, without regard to conflicts or choice of law rules or principles. (*See* Exhibits A - C, Section VI.O).

32. Schedule II.D, Section 6 provides that Schedule II.D "will be construed in accordance with English Law and the parties irrevocably submit to the non-exclusive jurisdiction of the English Courts to settle any disputes as may arise in connection with this Schedule. The remainder of this Agreement will continue to be governed by the laws of the state of New York." Because the Cooperation Clause in the Agreements is outside the of the scope of Schedule II.D, all disputes concerning that clause must be submitted for adjudication in a New York court and interpreted under New York law, in accordance with Section IV.O of the Agreements.

Defendants' Resignations and Hiring By Integro

33. Integro Insurance Brokers ("Integro") is an insurance brokerage firm with its principal place of business at 3 Times Square, 9th Floor, New York, New York 10036.

34. Integro offers "Competitive Services" as defined in the Agreements. (*See* Exhibits A - C, Schedule II.D, Section 5).

35. Upon information and belief, Integro was founded in May 2005 by three former MMC executives.

36. At or shortly after the time defendants announced their resignations from Guy Carpenter, plaintiffs learned that defendants were hired by Integro.

37.  On April 5, 2007, at the commencement of defendants' respective six (6) month "notice periods," Integro issued a press release announcing "the formation of an international insurance and reinsurance business unit to be based in London." The press release states that "Integro announced *the hiring* of Julian Samengo-Turner and Ron Whyte, who will lead the new unit and join the board of Integro in the U.K." Further, the press release states that "Messrs. Samengo-Turner and Whyte *formerly* led Guy Carpenter's global facultative reinsurance business unit." Regarding Hopkins, the press release states that Hopkins is "[a]lso joining Integro and its U.K. board" and that Hopkins was "*previously* head of Guy Carpenter's U.K. facultative reinsurance operation." (*See* Exhibit D, emphases added). Similarly, the April 9, 2007 edition of Business Insurance magazine attributes to Integro the announcement that the defendants have "joined" Integro and were "formerly" or "previously" with Guy Carpenter.

38.  Upon information and belief, at least eleven Guy Carpenter employees in the facultative reinsurance group (including the defendants) have been recruited or approached, either directly or indirectly, by Integro. Upon information and belief, defendants aided in the solicitation and recruitment of these Guy Carpenter employees, who directly or indirectly reported to them (including each other).

Defendants' Failure to Cooperate

39.  Upon learning of defendants' hiring by Integro and the solicitation of other Guy Carpenter employees who defendants supervised, counsel for plaintiffs sent letters to each defendant dated April 5, 2007 (the "April 5 letters") seeking information pursuant to Section II.E of the Agreements to ascertain whether defendants were honoring their obligations. Specifically, pursuant to the Cooperation Clauses, plaintiffs requested that defendants answer questions relating to the circumstances surrounding defendants' hiring by Integro and

-10-

defendants' discussions of their hirings with current Guy Carpenter employees in order for plaintiffs "to establish whether or not [defendants] are in compliance with [their] obligations under the Plan and as a GC employee" (the "Requests"). Plaintiffs requested that defendants provide responses to the Requests in the April 5 letters by April 11, 2007. (*See* Exhibits E - G).

40. Plaintiffs requested that defendants provide responses to the Requests in the April 5 letters by April 11, 2007.

41. On April 11, 2007, defendants' counsel responded by letter indicating that defendants could not respond to the Requests by April 11, 2007 because Whyte and Hopkins were on vacation. However, defendants' counsel stated that they were "hoping to take detailed instructions from all three clients by mid next week and will revert as soon as we reasonably can thereafter." (*See* Exhibit H).

42. In subsequent communications by their counsel, including a letter dated April 19, 2007, defendants have failed to provide answers to the Requests or otherwise provide cooperation as required by the Cooperation Clauses. (*See* Exhibit I at 5).

43. To date, defendants have failed to cooperate and have not responded to the Requests.

<u>Defendants' Failure to Return Cash Received Under the Plan</u>

44. In the April 5 letters, plaintiffs reminded defendants that "joining Integro" amounts to Detrimental Activity in violation of their Agreements. (*See* Exhibits E - G at 1).

45. Accordingly, pursuant to Section I.C(2)(b) of the Agreements, plaintiffs requested that defendants: "(a) [r]eturn all cash and/or shares of MMC common stock that [they]

-11-

have not disposed of; and (b) [p]ay to MMC an amount equal to the cash and/or the Fair Market Value (as defined in the Plan) on the vesting date of the MMC common stock that [they] have disposed of." (*See* Exhibits E- G).

46. To date, Defendants have failed to return the cash they received despite the fact that they have engaged in Detrimental Activity.

### First Claim for Relief

47. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 46 of the complaint.

48. Defendants Samengo-Turner, Whyte and Hopkins have failed to cooperate as requested by plaintiffs constituting express breaches of Section II.E of their respective Agreements.

49. Plaintiffs have no adequate remedy at law.

### Second Claim for Relief

50. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 46 of the complaint.

51. By accepting employment with, "joining," and otherwise becoming interested in the supply or proposed supply of Competitive Services (as defined in Schedule II.D of the Agreements) via Integro, Plaintiffs have engaged in Detrimental Activity (as also defined in Schedule II.D of the Agreements).

52.  Defendants have failed, in violation of their obligations under the Agreements, to return any of the cash they received under the Plan.

WHEREFORE, Plaintiffs respectfully requests that the Court:

(i)  issue a mandatory injunction ordering defendants to comply with the Cooperation Clauses set forth the Agreements; to immediately provide responses to the Requests set forth in the April 5 letters; and to promptly provide responses to any future Requests made by plaintiffs under the Cooperation Clauses, including without limitation requests for in-person interviews by plaintiffs and their counsel;

(ii)  award to plaintiffs damages for defendants' breach of contract as a result of their failure to return the amounts paid to them under the Agreements: £77,110 from Samengo-Turner, £61,688 from Whyte, and £46,266 from Hopkins, plus interest; and

(iii)  award to plaintiffs the costs and disbursements of this action; and

(iv)  grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        May 4, 2007

Kramer Levin Naftalis & Frankel LLP

By: _____
    Barry H. Berke (BB-1421)
    Robert N. Holtzman (RH-9525)
    Rachel M. Manne (RM-7151)
1177 Avenue of the Americas
New York, New York 10022
(212) 715-9100
Attorneys for Plaintiffs