**EXHIBIT 7**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x
                                                   :
GUY CARPENTER & COMPANY, LLC and                   :
MARSH & McLENNAN COMPANIES, INC.,                  :
                                                   :
                        Plaintiffs,                :         07 Civ. 3580 (DC) (KNF)
                                                   :
                - against -                        :
                                                   :
JULIAN SAMENGO-TURNER, RON WHYTE,                  :
and MARCUS HOPKINS,                                :
                                                   :
                        Defendants.                :
                                                   :
------------------------------------------------- x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR EXPEDITED DISCOVERY**


KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 AVENUE OF THE AMERICAS   NEW YORK NY 10036

Table of Contents

**Page**

Table of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................. 1

Factual Background ................................................................................................. 4

    A.    Defendants' Employment With Guy Carpenter and Hiring By Integro ................ 4

    B.    Defendants' Participation in the Plan and Defendants' Obligations Under the Agreements ............................................................................................. 6

    C.    Defendants' Failure to Cooperate ........................................................... 9

Argument ................................................................................................................ 10

Conclusion .............................................................................................................. 14

i

Table of Authorities

Page

Cases

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ......................................................10

*Renaud v. Gillick*, No. 06-1304, 2007 WL 98465 (W.D. Wash. Jan. 8, 2007) .............................10

*Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002) ......................11

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 07 Civ. 22014, 2007
WL 1121734 (S.D.N.Y. Apr. 11, 2007) .................................................................................10, 11

Rules

Fed. R. Civ. P. 26(d) 1993 Advisory Committee Note ...............................................................10

KL3 2591561.4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x
                                   :

GUY CARPENTER & COMPANY, LLC and      :
MARSH & McLENNAN COMPANIES, INC.,    :
                                     :
                   Plaintiffs,          :                07 Civ. 3580 (DC) (KNF)
                                     :

                 - against -           :

JULIAN SAMENGO-TURNER, RON WHYTE,   :
and MARCUS HOPKINS,                       :
                                     :
                 Defendants.       :
                                     :
————————————————————— x

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR EXPEDITED DISCOVERY

      Plaintiffs Guy Carpenter & Company, LLC, formerly Guy Carpenter & Company, Inc., ("Guy Carpenter") and Marsh & McLennan Companies, Inc. ("MMC") (collectively "plaintiffs"), respectfully submit this memorandum in support of their motion for an order, pursuant to Federal Rules of Civil Procedure 26, 30, 33 and 34, permitting expedited discovery in this action and specifically requiring defendants Julian Samengo-Turner ("Samengo-Turner"), Ron Whyte ("Whyte"), and Marcus Hopkins ("Hopkins") (collectively, "defendants") to respond on an expedited basis to plaintiffs' First Request for Production of Documents and First Set of Interrogatories and to appear for depositions promptly thereafter.

### Preliminary Statement

      Defendants are senior facultative reinsurance brokers who recently announced their resignations from Guy Carpenter and have accepted employment with Integro Insurance Brokers ("Integro"), a direct competitor of Guy Carpenter. During the course of their employment with Guy Carpenter, defendants agreed that during and for a specified time after

their employment with Guy Carpenter they would not recruit, solicit or otherwise encourage

plaintiffs' employees from terminating their employment with plaintiffs to join a competitor.

Despite these explicit obligations, in the weeks following defendants' announcements of their

resignations from Guy Carpenter, four other very experienced Guy Carpenter facultative

reinsurance brokers who worked in Guy Carpenter's U.K. office and reported directly or

indirectly to defendants announced that they would be leaving Guy Carpenter to join Integro.

Numerous other brokers in the same group were approached to do the same – indeed, late last

week, Guy Carpenter learned that three other brokers had been solicited by Integro; one of these

brokers announced his resignation from Guy Carpenter on May 9, 2007 and informed Guy

Carpenter that he is joining Integro.  It surely is no mere coincidence that the employees who

have resigned to join Integro or have otherwise been approached by Integro – almost half of the

brokers in the group – were supervised directly or indirectly at Guy Carpenter by defendants.  As

the most senior brokers in the facultative group (defendants Samengo-Turner and Whyte were

co-heads of the global facultative group and defendant Hopkins led the U.K. unit), defendants

are well aware of the qualifications and expertise the brokers with whom they worked at Guy

Carpenter could bring to a competitor.

        The rapid rate at which Guy Carpenter facultative brokers in the U.K. office are

announcing their resignations, joining Integro, or are otherwise being aggressively solicited to

join Integro caused Guy Carpenter to have serious concerns – and doubts – as to whether

defendants are complying with their covenants not to solicit such employees.  Accordingly,

plaintiffs requested that defendants provide information regarding, among other things, their

recruitment by Integro and discussions they have had with other Guy Carpenter employees since

they decided to leave Guy Carpenter.  Defendants, who remain Guy Carpenter employees for the

- 2 -

next six months pursuant to the notice period in their employment contracts, are contractually obligated to provide such information, having executed agreements with MMC and Guy Carpenter in connection with their participation in a Long Term Incentive Plan ("LTIP") in which they agreed to do so. Defendants also agreed that their obligations with regard to providing cooperation would be subject to New York law and enforceable exclusively in a state or federal court located in New York county. When defendants failed to provide any of the requested information, plaintiffs commenced this action in this Court pursuant to the parties' agreement.

By this motion for expedited discovery, plaintiffs seek to explore as quickly as possible the extent of defendants' participation in soliciting a large percentage of Guy Carpenter's U.K.-based facultative brokers. Without receiving the expedited relief requested here, consisting of narrowly tailored document requests and interrogatories in addition to requests for depositions, Guy Carpenter is at risk of losing – through unlawful means – numerous of its employees to Integro. Because defendants have failed to comply with their contractual obligations to provide cooperation and plaintiffs are now threatened with further losses of their facultative team – losses which no monetary award could ever completely rectify – defendants have willfully left plaintiffs with no recourse but to request such expedited discovery from this Court.

Moreover, while the risk of harm to plaintiffs from not receiving the expedited relief requested is great, defendants will suffer no prejudice in complying with plaintiffs' requested relief. Defendants continue to be employed and paid by Guy Carpenter during their contractual six month notice periods and therefore can provide the required cooperation during normal business hours. Guy Carpenter is already paying for their time and they have no other

- 3 -

required duties for the remainder of their notice period. Further, as noted, defendants are

contractually obligated to cooperate with plaintiffs and, by ignoring plaintiffs' initial requests,

have brought this motion for expedited relief upon themselves.

Accordingly, plaintiffs respectfully request that expedited discovery be permitted

in this action.

<u>Factual Background</u>

The facts set forth below are contained in the accompanying declaration of

Lynsey Mansfield, Head of International HR, executed on May 10, 2007 ("Mansfield Decl."),

and the accompanying exhibits.

A.    <u>Defendants' Employment With Guy Carpenter and Hiring By Integro</u>

Defendants worked in Guy Carpenter's U.K. office as senior facultative

reinsurance brokers.[1] By the terms of their respective employment agreements, defendants were

required to provide six months prior notice if they elected to terminate their employment with

Guy Carpenter. During the ensuing notice period, defendants would remain employed by Guy

Carpenter, continue to receive their full salaries, and continue to have all the fiduciary and

related duties and obligations to plaintiffs that are associated with such employment. (Mansfield

Decl. ¶ 9 and Exhs. A-C).

On or about April 3, 2007, defendants announced to Guy Carpenter their

resignations and accepted employment with Integro, an insurance brokerage firm that offers

---

[1]    Facultative reinsurance is a reinsurance custom designed by an insurer, broker, and
reinsurer to provide coverage to that insurer for a specific, individual risk that the insurer has
underwritten. Examples of such risks would be a large factory, refinery, or power plant. It may
be contrasted with treaty reinsurance, which covers a wide variety of risk underwritten in a given
year by an insurer. An example of treaty reinsurance would be coverage of all auto insurance
placed by an insurer during the course of a year within certain parameters. (Mansfield Decl. ¶ 2).

KL3 2591561.4

competitive services, and their respective six month notice periods began. (*Id.* ¶ 6). At the time

notice of their resignations was given, defendants Samengo-Turner and Whyte co-led Guy

Carpenter's global facultative reinsurance business unit, doing business under the trademark

GCFac, and Hopkins was head of Guy Carpenter's U.K. facultative reinsurance operation. All of

the Guy Carpenter facultative reinsurance brokers in the U.K. reported directly or indirectly to

defendants. (*Id.*¶ 7).

      Just two days later, on April 5, 2007, and notwithstanding that defendants'

employment was to continue during the six month notice period, Integro issued a press release

announcing "the formation of an international insurance and reinsurance business unit to be

based in London." The press release states that "Integro *announced the hiring of Julian*

*Samengo-Turner and Ron Whyte*, who will lead the new unit and join the board of Integro in the

U.K." Further, the press release states that "Messrs. Samengo-Turner and Whyte *formerly* led

Guy Carpenter's global facultative reinsurance business unit." Regarding Hopkins, the press

release states that Hopkins is "[a]lso *joining* Integro and its U.K. board" and that Hopkins was

"previously head of Guy Carpenter's U.K. facultative reinsurance operation." (*Id.* ¶ 10 and Exh.

D, emphases added). Similarly, the April 9, 2007 edition of Business Insurance magazine

attributes to Integro the announcement that the defendants have "joined" Integro and were

"formerly" or "previously" with Guy Carpenter. (*Id.* ¶ 11).

      Defendants have reason to believe that at least fourteen Guy Carpenter employees

in its facultative reinsurance group (including the defendants) have been recruited or approached,

either directly or indirectly, by Integro. (*Id.* ¶ 13). Soon after defendants announced their

resignations, another senior U.K. broker in the group, who directly reported to defendant

Hopkins, resigned and joined Integro. (*Id.* ¶ 14). Thereafter, on April 23, 2007, three additional

- 5 -

Guy Carpenter facultative reinsurance employees based in London gave notice to Guy Carpenter of their resignations, and plaintiffs have since learned that these three employees are joining Integro. (*Id.* ¶ 15). Plaintiffs have reason to believe that defendants aided in the solicitation and recruitment of these Guy Carpenter employees, who directly or indirectly reported to them, and also breached their contractual obligations by encouraging each other to leave Guy Carpenter.

Prior to defendants' resignations from Guy Carpenter, there were approximately thirty-two brokers in Guy Carpenter's U.K. facultative reinsurance group. (*Id.* ¶ 12). In the month of April alone, seven very experienced brokers left Guy Carpenter to join Integro, bringing the total number of brokers to twenty-five. (*Id.* ¶¶ 6, 14-15). Further, Guy Carpenter learned late last week that another three brokers in the group were approached by Integro. (*Id.* ¶ 16). On May 9, 2007, one of these employees announced his resignation from Guy Carpenter and stated that he would be joining Integro. (*Id.*).

B.    Defendants' Participation in the Plan and Defendants' Obligations Under the Agreements

During their employment with Guy Carpenter, defendants participated in the Marsh & McLennan Companies 2000 Senior Executive Incentive and Stock Award Plan (the "Plan"). In connection with November 2005 Awards granted under the Plan, each defendant agreed in writing to abide by the terms and conditions of the Plan as well as the additional terms and conditions set forth in Agreements related to the Plan (the "Agreements"). (*Id.* ¶ 17). Under the Plan, defendants were each granted Awards, which were subject to vesting in specified percentages on various future dates over a four year period. As of April 2007, 20% of the Awards granted to each defendant had vested and defendants had received cash for those portions of the Awards upon vesting. (*Id.* ¶ 19 and Exhs. E-G).

- 6 -

Defendants agreed as part of the Award to be bound by several restrictive covenants, including that during their employment at Guy Carpenter and for one year following their departure they would not solicit, entice, induce or encourage any of plaintiffs' employees to leave plaintiffs and join a company that competes with plaintiffs. (*Id.* ¶ 23 and Exhs. E-G, Schedule II.D). Moreover, under the Agreements defendants each are required to cooperate with MMC and any of its subsidiaries or affiliates, including Guy Carpenter, and specifically to "provide to the Company such information relating to [their] work for the Company or [their] other commercial activities as the Company may from time to time reasonably request in order for the Company to determine whether [they] are in compliance with [their] obligations under [the Plan]" (the "Cooperation Clause"). (*Id.* ¶ 20 and Exhs. E-G). The Cooperation Clause applies to defendants both "during and after [their] employment with the Company." (*Id.* ¶ 21 and Exhs. E-G). Compliance with the Cooperation Clause is mandatory; there is no prerequisite that plaintiffs demonstrate any potential breach of participants' obligations under the Agreements in order to be entitled to the benefits of the Cooperation Clause. (*Id.* ¶ 22).

As such, under the Cooperation Clause plaintiffs are entitled to inquire about defendants' suspected solicitation of Guy Carpenter employees to ascertain their compliance with two non-solicitation provisions in the Agreement. First, defendants agreed in a non-solicitation covenant contained in Schedule II.D of the Agreements that they would not "directly or indirectly . . . [e]ntice, induce or encourage an Employee to leave or seek to leave his or her position with the Company or any Associated Company for the purpose of being involved or concerned with either the supply of Competitive Services or a business which competes with either the supply of Competitive Services or a business which competes with the Relevant Business regardless of whether or not that Employee acts in breach of his or her contract of

employment (either written or implied) with the Company or any Associated Company by so doing." (*Id.* ¶ 23 and Exhs. E-G, Schedule II.D, Section 4). Plaintiffs properly may require defendants' cooperation to determine whether they have breached this covenant.

Second, solicitation of plaintiffs' employees within a 12 month period following the vesting of any portion of defendants' Awards constitutes Detrimental Activity under the Agreements, giving plaintiffs the right to cancel and rescind such vested portions of the Awards. (*Id.* ¶ 24). Specifically, Detrimental Activity during the 12 month period following vesting includes, among other things, "enticing, inducing or encouraging an Employee to leave or seek to leave his or her position with the Company or any Associated Company for the purpose of being involved in or concerned with either the supply of Competitive Services or a business which competes with or is similar to a Relevant Business or which plans to compete with a Relevant Business, regardless of whether or not that Employee acts in breach of his or her contract of employment (either written or implied) with the Company or any Associated Company by doing so." (*Id.* ¶ 25 and Exhs. E-G, Schedule II.D, Section 2(a)(iv)).[2] Accordingly, plaintiffs are entitled under the Cooperation Clause to confirm whether defendants are engaged in Detrimental Activity under the Agreements in order to determine whether their vested Awards properly should be cancelled and rescinded for this reason.[3]

---

[2]    The relevant definitions of Competitive Services and Relevant Business are set forth in Schedule II.D of the Agreement.

[3]    Joining or otherwise becoming interested in Integro also constitutes Detrimental Activity under the Agreements. (*Id.* ¶ 25). While not directly relevant to the instant motion, this type of Detrimental Activity is addressed in the Second Claim for Relief asserted in the Complaint.

- 8 -

C.    Defendants' Failure to Cooperate

Upon learning of defendants' hiring by Integro and the solicitation of other Guy Carpenter employees who defendants supervised, counsel for plaintiffs sent letters to each defendant dated April 5, 2007 (the "April 5 letters") seeking information pursuant to the Cooperation Clauses of the Agreements to ascertain whether defendants were honoring their obligations. Specifically, pursuant to the Cooperation Clauses, plaintiffs requested that defendants answer questions relating to the circumstances surrounding defendants' hiring by Integro and defendants' discussions regarding their departure with other Guy Carpenter employees in order for plaintiffs "to establish whether or not [defendants] are in compliance with [their] obligations under the Plan and as a GC employee" (the "Requests"). (*Id.* ¶ 28 and Exhs. H-J).

On April 11, 2007, defendants' counsel responded by letter indicating that defendants could not respond to the Requests at that time because Whyte and Hopkins were on vacation. However, defendants' counsel stated that they were "hoping to take detailed instructions from all three clients by mid next week and will revert as soon as we reasonably can thereafter." (*Id.* ¶ 29 and Exh. K).

In subsequent communications by their counsel, including a letter dated April 19, 2007, defendants have failed to provide answers to the Requests or otherwise provide cooperation as required by the Cooperation Clauses. (*Id.* ¶ 30 and Exh. L). To date, defendants have failed to cooperate and have not responded to the Requests. (*Id.* ¶ 30).

Paragraph VI.N of the Agreements provides that the provisions of the Agreement (apart from the obligations in the attached Schedule II.D) are subject to construction under New York law and that any alleged breaches can be litigated only in a state or federal court located in

New York county. Defendants also consented to the jurisdiction of those courts for that purpose and waived any right to a jury trial. (*Id.* at Exhs. E-G). Consequently, plaintiffs have brought suit against defendants in this forum.

Argument

EXPEDITED DISCOVERY IS NECESSARY<br>IN THIS CASE AND SHOULD BE GRANTED

Expedited discovery is recognized as a necessary and appropriate means for ensuring the timely and just determination of a dispute where the pace of normal pretrial procedures would prejudice one party or the other. The Federal Rules of Civil Procedure grant the Court broad powers to permit expedited discovery. *See* Fed. R. Civ. P. 26(d) 1993 Advisory Committee Note ("Discovery can begin earlier if authorized . . . by rule, order, or stipulation.").

Courts assess an application for expedited discovery under a "flexible standard of reasonableness and good cause." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting plaintiffs' motion for expedited discovery where urgent need for information sought); *see also Renaud v. Gillick*, No. 06-1304, 2007 WL 98465, at *3 (W.D. Wash. Jan. 8, 2007) (expedited discovery found to be reasonable where plaintiffs first "exercised diligence" in attempting to obtain information sought prior to applying for expedited discovery and plaintiffs' requests for such information were unanswered). As Judge Lynch in *Ayyash* stated, "[a]s the [Federal] Rules permit the Court to act by order, but do not elaborate on the basis for taking such action, it seems that the intention of the [Federal Rules] was to confide the matter [of expedited discovery] to the Court's discretion, rather than to impose a specific and rather stringent test." *Id.* (holding that it "makes little sense" to require a party seeking expedited discovery to meet the rigid preliminary injunction standard); *see also Standard Inv. Chartered, Inc. v. Nat'l Ass'n of*

- 10 -

*Secs. Dealers, Inc.*, 07 Civ. 22014, 2007 WL 1121734, at *5 (S.D.N.Y. Apr. 11, 2007) (affirming Magistrate Judge's order granting expedited discovery where Magistrate Judge did not apply strict preliminary injunction-type test); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) (rejecting argument that party seeking expedited discovery must demonstrate rigid preliminary injunction-type elements and applying flexible "good cause" standard which weighs whether "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party").

Expedited discovery is more than reasonable in this case – it is essential. While plaintiffs have made specific, reasonable requests for information relating to the circumstances surrounding defendants' hiring by Integro and defendants' conversations with current Guy Carpenter employees in accordance with the Cooperation Clauses of the Agreements, defendants have failed to comply with such requests. Meanwhile, plaintiffs have reason to believe that defendants and/or other former Guy Carpenter or MMC employees are currently soliciting and recruiting numerous Guy Carpenter employees to terminate their employment with Guy Carpenter to join Integro. (Mansfield Decl. ¶¶ 13-15). Indeed, as mentioned above, plaintiffs believe that at least fourteen Guy Carpenter brokers in the facultative reinsurance group (including the defendants) have been recruited or approached, either directly or indirectly, by Integro. (*Id.* ¶ 13). Plaintiffs believe that defendants aided in the solicitation and recruitment of some or all of these Guy Carpenter employees, who directly or indirectly reported to them, including the four who left Guy Carpenter for Integro within weeks after defendants announced their resignations. (*Id.* ¶¶ 14-15). It surely cannot be coincidence that the only facultative brokers Integro has announced hiring to date are defendants and their co-workers at GC Fac. At the very least, this fact gives plaintiffs every reason to inquire as to the circumstances of those

- 11 -

hirings. Rather than aggressively asserting that defendants have breached their non-solicitation agreements, plaintiffs are diligently requesting, in accordance with defendants' contractual obligations (which are entirely consistent with their ongoing duties of loyalty as employees), that defendants provide information to confirm or belie plaintiffs' beliefs about the circumstances. In light of the facts, and the rate by which Guy Carpenter brokers in this group are being recruited, no further delay should be permitted. Guy Carpenter is surely entitled to know if this assault on its business has been conducted by lawful means – or not – particularly when defendants contractually agreed to provide such information for that very purpose.

As noted above, in April 2007 alone the number of Guy Carpenter brokers in its U.K. facultative reinsurance group has dwindled from thirty-two to twenty-five. (*Id.* ¶¶ 12, 14-15). Further, Guy Carpenter learned late last week that another three brokers, who defendants supervised directly or indirectly, were approached by Integro. ¶ 16). On May 9, 2007, one of these three announced his resignation from Guy Carpenter and informed the company that he would be joining Integro. (*Id.*). Accordingly, the risk to plaintiffs of not receiving the requested expedited discovery cannot be understated – each day that plaintiffs are unable to confirm whether defendants' non-solicitation obligations are being met poses increased risks of unlawful losses of valuable employees. The injury caused by such losses cannot be fully remedied by monetary damages. By obtaining the expedited relief requested, plaintiffs aim to prevent such future unlawful solicitations.

By contrast, expedited discovery poses no material hardship for defendants. First, defendants are currently in their six month notice periods, and, as such, remain Guy Carpenter employees and continue to receive their full salaries from Guy Carpenter. They have also asserted – in claimed compliance with their notice obligations – that they are not yet reporting to

- 12 -

KL3 2591561.4

work at Integro.  Thus, the requested discovery does not – and cannot – interfere with any work obligations they have.  Defendants have no obligations whatsoever during the normal workday except to provide such information.  Defendants also continue to have a panoply of obligations to their employer, Guy Carpenter, including the obligation to make themselves available during business hours to provide important information.  It surely cannot be a meaningful burden for defendants to set out what they have been doing during recent months while they have been Guy Carpenter employees.

Second, defendants should be estopped from claiming prejudice as they have blatantly ignored their contractual obligations to cooperate.  Indeed, had defendants cooperated as required in the first instance, they may have been able to avoid the expedited demands now sought by plaintiffs.

Finally, the schedule proposed by plaintiffs is both reasonable and necessary, calling for document production within 7 days of service of those discovery demands, responses to interrogatory requests within 7 days of service of those discovery demands, and depositions on 7 days' notice.  The discovery sought by plaintiffs is narrowly tailored to the central issues in the case, focused on obtaining information relating to the circumstances surrounding defendants' hiring by Integro and defendants' discussions of their hirings with current Guy Carpenter employees.[4]

---

[4]    For the Court's convenience, copies of plaintiffs' discovery requests are annexed as Exhs. B-D to the accompanying Declaration of Robert N. Holtzman, dated May 10, 2007.

- 13 -

<u>Conclusion</u>

For the foregoing reasons, plaintiffs respectfully request that the Court grant

plaintiffs' motion for expedited discovery.

Dated:  New York, New York
   May 15, 2007

        Kramer Levin Naftalis & Frankel LLP

       By:_____

        Barry H. Berke (BB-1421)
        Robert N. Holtzman (RH-9525)
        Rachel M. Manne (RM-7151)

        1177 Avenue of the Americas
        New York, New York  10036
        (212) 715-9100
        Attorneys for Plaintiffs

KL3 2591561.4