UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------x
GUY CARPENTER & COMPANY, LLC and        :
MARSH & MCLENNAN COMPANIES, INC.,       :        Hon. Denise Cote
                                        :
                       Plaintiffs,      :        Case No.: 07 Civ. 3580 (DC)
          -against-                     :
                                        :
JULIAN SAMENGO-TURNER, RON WHYTE,       :
and MARCUS HOPKINS,                     :
                                        :
                       Defendants.      :
------------------------------------------------x
```

**MEMORANDUM OF LAW OF NON-PARTIES INTEGRO USA INC.,
ROGER EGAN AND JOHN CLEMENTS IN SUPPORT OF THEIR MOTION
TO QUASH OR, IN THE ALTERNATIVE, MODIFY DEPOSITION SUBPOENAS**

CAHILL GORDON & REINDEL LLP
  Robert A. Alessi (RA 6497)
  Jason A. Otto (JO 6943)
  Mary Cait Curran (MC 8638)
Eighty Pine Street
New York, NY 10005-1702
Tel:  (212) 701-3000
Fax:  (212) 269-5420

Attorneys for Non-Parties Integro
  USA Inc., Roger Egan and John
  Clements

July 5, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................ ii

PRELIMINARY STATEMENT ...................................................... 1

BACKGROUND.......................................................................... 2

    A.    The Spring of 2005: Integro Is Born ........................................ 2

    B.    Marsh's Fierce Competition With Integro and Other Brokers ................................................................ 3

    C.    Marsh Requests Expedited Discovery of the Individual Defendants ............................................................ 6

    D.    The Related English Proceeding ........................................... 8

    E.    Plaintiffs' May 23, 2007 Document Subpoena ....................... 9

    F.    Plaintiffs' June 28, 2007 Deposition Subpoenas .................... 10

ARGUMENT.............................................................................. 10

I.    THE DEPOSITION SUBPOENAS SHOULD BE QUASHED BECAUSE THE PARTIES HAVE NOT YET SATISFIED RULE 26(f) ................................................................. 10

II.    IF THE DEPOSITION SUBPOENAS ARE NOT QUASHED, THEY SHOULD BE MODIFIED TO POSTPONE THE DEPOSITIONS UNTIL AFTER LABOR DAY TO AVOID UNDUE BURDEN ON THE INTEGRO NON-PARTIES ................................. 12

III.    IF THE DEPOSITION SUBPOENAS ARE NOT QUASHED, THEY SHOULD BE MODIFIED TO LIMIT THE SCOPE OF THE DEPOSITIONS ................................................................ 14

CONCLUSION .......................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page**

*Bodkin v. Garfinkle*, 2007 WL 1288078 (E.D.N.Y. 2007) ............................     11

*Crutcher v. Fidelity National Ins. Co.*, 2007 WL 430655 (E.D. La.
   2007) .................................................................................................     11-12

*Molefi v. Oppenheimer Trust*, 2007 WL 538547 (E.D.N.Y. 2007) ...............     11

*Puritan-Bennett Corp. v. Pruitt*, 142 F.R.D. 306 (S.D. Iowa 1992) ...............     16

*Stanziale v. Pepper Hamilton LLP*, 2007 WL 473703 (S.D.N.Y. 2007) .......     14

**Rules**

Fed. R. Civ. P.

  26(d) ..................................................................................................     11

  26(f) ...................................................................................................     1, 10-12,
                                                                 14, 17

  45(c) ...................................................................................................     *passim*

**Treatises**

*Moore's Federal Practice - Civil* § 26.143 (2007) ........................................     12

*Moore's Federal Practice - Civil* § 45.50 (2007) ..........................................     16

**Other Authorrities**

January 31, 2005 Press Release of the Office of the New York
   Attorney General ..................................................................................     2

Non-Parties Integro USA Inc., doing business as Integro Insurance Brokers ("Integro"), Roger Egan and John Clements (collectively, the "Integro Non-Parties") respectfully submit this Memorandum of Law in support of their motion, pursuant to Fed. R. Civ. P. 45(c)(3), to quash the June 28, 2007 subpoenas served by plaintiffs Guy Carpenter & Company, LLC and Marsh & McLennan Companies, Inc. (jointly, "Marsh") seeking the depositions of Messrs. Egan and Clements (the "Deposition Subpoenas") or, in the alternative, to modify the Deposition Subpoenas. (Copies of the Deposition Subpoenas are annexed as Exhibits 17 and 18 to the accompanying Affidavit of Robert A. Alessi, Esq. [the "Alessi Aff't"].)

## PRELIMINARY STATEMENT

Marsh filed the above-captioned action on or about May 4, 2007 (Docket No. 1). Neither Integro, Mr. Egan (Integro's Chief Executive Officer) nor Mr. Clements (a consultant to and non-management director of Integro) are parties to this action. For the reasons summarized immediately below and discussed in more detail in the Argument section that follows, the Integro Non-Parties respectfully request that the Court:

1. Quash the Deposition Subpoenas under Fed. R. Civ. P. 45(c)(3) on the ground that the parties to this action have not yet satisfied their obligations under Fed. R. Civ. P. 26(f). (*See* Section I, below.)

2. If the Deposition Subpoenas are not quashed, modify the Subpoenas under Fed. R. Civ. P. 45(c)(3) to postpone the depositions until after Labor Day, September 3, 2007, to avoid undue burden on the Integro Non-Parties. (*See* Section II, below.)

3. If the Deposition Subpoenas are not quashed, modify the Subpoenas under Fed. R. Civ. P. 45(c)(3) to limit the scope of the depositions to the narrow issue remaining in this action and not permit plaintiffs to seek through such depositions Integro's financial, proprietary, strategic, personnel or other confidential commercial and business information. (*See* Section III, below.)

## BACKGROUND

### A.  The Spring of 2005: Integro Is Born

By the late 1990s, through acquisitions and consolidations, several major insurance brokers were acquired by Marsh, leaving Marsh as the largest and most powerful brokerage firm in the world. (*See* Alessi Aff't, Ex. 1.)  Along with the consolidation of insurance brokerage business in the hands of Marsh came the now infamous widespread conflicts of interest and other alleged anti-competitive behavior that have been the subject of multiple criminal and civil governmental investigations. *See, e.g.,* Jan. 31, 2005 N.Y. Attorney General Press Release [Alessi Aff't, Ex. 2] (announcing "a landmark agreement with the nation's leading insurance brokerage firm to resolve allegations of fraud and anti-competitive practices.  Under the agreement, [Marsh] will provide $850 million in restitution to its policyholders who were harmed by its actions and adopt a new business model designed to avoid conflicts of interest.  Marsh also issued a public statement in which it apologizes for 'unlawful' and 'shameful' conduct, and promises to adopt reforms").

Shortly thereafter, in May 2005, Integro was launched by several former Marsh executives, including Mr. Egan, who had become disenchanted with

- 2 -

Marsh's business practices and who were looking for an opportunity to build a new

type of brokerage firm from scratch. In its May 6, 2005 press release announcing its

formation, Integro explained:

> "Integro, a newly formed global, independent insurance brokerage firm,
> announced today the successful completion of a private securities
> placement. . . . 'Integro' is a Latin word that translates to 'make well,
> make better.'
>
> \*     \*     \*
>
> "In the current environment, risk managers, corporate executives and
> directors alike are increasingly concerned with the alignment of inter-
> ests with their advisors and trading partners. Mr. [Robert] Clements [In-
> tegro's Chairman] observed, 'Over the last 8 years large users of insur-
> ance watched helplessly as their competitive choice for brokers nar-
> rowed from seven serious contenders to less than three. We don't think
> that's a healthy condition, and furthermore, we don't think this is a zero
> sum game.'
>
> "The launch of Integro introduces a fresh business model for the insur-
> ance brokerage industry, which has been plagued recently by numer-
> ous regulatory investigations. . . .
>
> "Integro will offer corporate clients a choice for obtaining optimal insur-
> ance solutions, free from conflict of interest perceptions. Clients first,
> transparent business practices and dedicated, quality brokerage ser-
> vices are Integro's guiding business practices." (Alessi Aff't, Ex. 3)

**B.     <u>Marsh's Fierce Competition With Integro and Other Brokers</u>**

Marsh & McLennan Companies, Inc. touts itself as "a global profes-

sional services firm with annual revenues of approximately $12 billion. It is the parent

company of Marsh, the world's leading risk and insurance services firm[,] [and] Guy

Carpenter, the world's leading risk and reinsurance specialist[.] . . . Approximately

55,000 employees provide analysis, advice, and transactional capabilities to clients in

over 100 countries." (Alessi Aff't, Ex. 4 at 5)  It is this financial behemoth which com-

petes directly with the two-year-old Integro.  *See, e.g.,* Complaint [Alessi Aff't, Ex. 5]

¶ 34 ("Integro offers 'Competitive Services'" to Marsh).

   Marsh has made clear that it is actively engaged in recruiting employ-

ees from other insurance and reinsurance brokers, including Integro.  For example,

during Marsh's May 8, 2007 conference call with securities analysts and sharehold-

ers, Marsh's senior executives referred to Marsh's success in what it called the "war

for talent" with its competitors, including Integro:

> **"Marsh is now aggressively on the offensive, focusing a dispro-
> portionate amount of our effort, energy and resources on acceler-
> ating growth.  We are actively recruiting industry-leading talent.**
> .  .  . The bottom line is that we've never been more committed to our
> strategy, more clear in our direction, or confident in our ability to exe-
> cute.

*     *     *

> "[Questioner]: .  .  . [T]here has [*sic*] been a few significant headlines of I
> guess employee defections, whether it's Integro facultative
> re[insurance] or Beecher Carlson in Atlanta.  Can you give us an up-
> date in terms of the turnover you're seeing from client-facing folks and
> how that compares to previous years and quarters?

> "[Marsh Executive]: Yes.  First, I'm going to handle the reinsurance.
> Obviously, we did have a defection to Integro in the reinsurance.  By
> the way, [what is] so fascinating is we are not having defections in the
> brokerage business to Integro.  In fact, they are coming the other way.
> I think this is a temporary blip.  What is very rewarding is that we are at-
> tracting people in the reinsurance business.  So it really isn't — **there is
> a war for talent but it's going both ways and I think, because of In-
> tegro's position, they make more of a headline about it than maybe
> others**.

*     *     *

- 4 -

> "We are, for the first time in a long time, as we get more and more pro-
> active, aggressively recruiting. *I say with great confidence we are*
> *winning the war for talent in the brokers business right now.* Our
> business model, the success that we're beginning to see — we are
> winning the war for talent. . . . *But in terms of our ability to win the*
> *war for talent, it's really going in our favor and as the year pro-*
> *gresses, you will see the impact of that.*" (Alessi Aff't, Ex. 6 at 7-8,
> 18; emphasis added)

See also The Insurance Insider (June 27, 2007) [Alessi Aff't, Ex. 16] ("Guy Carpenter

has swooped for Chris Klein, the head of rival Benfield Group's counterparty risk unit.

. . . Klein is the most recent, former Benfield executive to join Guy Carpenter follow-

ing the arrival of chief executive David Spiller in 2005. Last month, the MMC subsidi-

ary appointed the erstwhile Benfield employee Charlie Fry to head up the firm's

global operations").

       During the May 8, 2007 conference call with securities analysts and

shareholders, senior executives of Marsh acknowledged the highly competitive na-

ture of the insurance and reinsurance brokerage business, but emphasized the suc-

cess of Guy Carpenter in the reinsurance sector:

> "All in all, though, it's a tough reinsurance market. Having said that, we
> are pleased with the performance of Guy Carpenter. Revenue growth
> of 4% came from strong new business development, which more than
> made up for the declining retention rate caused by market factors. *On*
> *the retention side, Guy Carpenter did not lose any significant cli-*
> *ents in the first quarter to competitors.* It was only market conditions
> which caused lost layers or increased client retention which reduced
> Guy Carpenter's retention rate. That's a very good sign and something
> we are proud of. Guy Carpenter is well-positioned in the reinsurance
> industry." (Alessi Aff't, Ex. 6 at 3; emphasis added)

- 5 -

Marsh, however, has been engaging in increasingly intense competition with competing brokerage firms, including the young Integro. This intensification may be fueled, in part, by a perception among some market observers that Marsh is losing clients. For example, during Marsh's May 8, 2007 conference call with securities analysts and shareholders, it was suggested by one analyst that Marsh was "clearly losing [market] share to Aon," a competing insurance and reinsurance brokerage firm. (*See* Alessi Aff't, Ex. 6 at 10.) Similarly, in a May 30, 2007 Risk Manager Survey, UBS Investment Research reported that "Marsh's reputation as the top broker for upper middle market and large corporate accounts continues to decay, while Aon and Willis continue to improve. . . . [The] survey found that several risk managers may change from Marsh . . . . [S]ome risk managers . . . voiced problems [with Marsh] due to personnel issues. . . . Marsh was the incumbent broker most often in situations where the risk manager[s] indicated they were considering changing brokers." (Alessi Aff't, Ex. 10 at 2) *See also* Alessi Aff't, Ex. 20 (according to A.M. Best Company, based on 2006 results, "Marsh & McLennan remains the largest insurance brokerage worldwide in terms of overall revenues, but has surrendered to Aon Corp. the leadership based on brokerage revenues").

### C.    Marsh Requests Expedited Discovery of the Individual Defendants

On or about May 15, 2007, shortly after commencing this action against the three individual defendants, Marsh filed with the Court a motion seeking leave to

take expedited discovery *of those defendants*. (See Alessi Aff't, Exs. 7 & 8.) That motion requested only that "*defendants* . . . [be required] to respond on an expedited basis to plaintiffs' First Request for Production of Documents and First Set of Interrogatories and to appear for depositions promptly thereafter." (Marsh May 15, 2007 Br. [Alessi Aff't, Ex. 7] at 1; emphasis added) The aforementioned discovery requests addressed to defendants were attached as Exhibits B, C and D, respectively, to the May 15, 2007 Declaration of Marsh's counsel, Robert N. Holtzman, which was filed in support of Marsh's motion for expedited discovery. (See Alessi Aff't, Ex. 8.)

In his May 15, 2007 Declaration, Marsh's counsel stated: "Plaintiffs seek to serve document requests, interrogatories and notices of deposition *upon defendants* on an expedited basis[.]" (Holtzman Decl. [Alessi Aff't, Ex. 8] ¶ 2; emphasis added) Nowhere in Mr. Holtzman's May 15, 2007 Declaration or in any of the other papers filed by Marsh in support of its May 15, 2007 motion for expedited discovery did plaintiffs even make reference to, much less request permission to serve, discovery addressed to any non-parties. The first sentence of the Court's May 24, 2007 Order granting plaintiffs' motion for expedited discovery of defendants makes

clear that the Order is based upon, among other things, "the declaration of Robert N.

Holtzman, Esq., dated May 15, 2007[.]" (*See* Alessi Aff't, Ex. 9.)[1]

### D.     The Related English Proceeding

The Integro Non-Parties understand that there is pending in the English

High Court of Justice, Queen's Bench Division, a related proceeding captioned *Julian*

*Samengo-Turner, Ronald Dennis Whyte and Marcus Hopkins v. Marsh Services Lim-*

*ited, Guy Carpenter & Company LCC and Marsh & McLennan Companies Inc.*, Claim

No. 2007 Folio 945 (the "English Proceeding"). We understand that, by Order dated

June 19, 2007, Her Majesty's Court of Appeal granted the application of defendants

here (who are the claimants in the English Proceeding) for permission to raise on ap-

peal the question whether further prosecution of this action should be enjoined in

deference to the English Proceeding. The English Court of Appeal concluded that

defendants had "raise[d] issues which merit being addressed on appeal." (*See*

Alessi Aff't, Ex. 11.) The English Court of Appeal has set expedited oral argument on

the aforementioned appeal for July 6, 2007. (*See* Alessi Aff't, Ex. 12.) We further

understand that a trial on the scope of the defendants' obligations under their em-

---

[1]     Subsequent to May 24, 2007, counsel for Marsh appeared before or filed pa-
pers with this Court on multiple occasions. In those appearances and filings,
the focus of Marsh's discovery efforts continued to be the defendants.

ployment-related agreements with Marsh may be set in the English Proceeding for
sometime in September 2007.

### E.    Plaintiffs' May 23, 2007 Document Subpoena

By subpoena dated May 23, 2007, Marsh sought documents from Inte-
gro (the "Document Subpoena"). On June 6, 2007, Integro timely served a set of Ob-
jections and Responses to the Document Subpoena. Although the parties had not
yet agreed upon the wording of a Stipulated Protective Order governing the use by
Marsh, as Integro's direct competitor, of Integro's documents, and subject to and
without waiving any of its objections to the Document Subpoena, Integro accommo-
dated plaintiffs' request that Integro produce on June 20, 2007 — prior to the com-
mencement of plaintiffs' June 21, 2007 deposition of defendant Samengo-Turner — a
set of paper documents that Integro did not then anticipate would need to be desig-
nated as confidential. (Alessi Aff't, Ex. 13)[2] Thereafter, on June 27, 2007 — again,
subject to and without waiving any of its objections to the Document Subpoena —
Integro accommodated plaintiffs' request that it produce a portion of electronically-

---

[2]    Upon discovering on June 21, 2007 that one document had been inadvertently
omitted from its June 20 production set, Integro e-mailed the document to
plaintiffs' counsel so that it could be used at defendant Julian Samengo-
Turner's deposition. (See Alessi Aff't, Ex. 14.)

retrieved documents that Integro did not then anticipate would need to be designated as confidential. (*See* Alessi Aff't, Ex. 15.)[3]

### F.    Plaintiffs' June 28, 2007 Deposition Subpoenas

On June 28, 2007, plaintiffs served upon Integro's New York office the two Deposition Subpoenas seeking the deposition of Mr. Egan on July 9, 2007, and the deposition of Mr. Clements on July 12, 2007. (*See* Alessi Aff't, Exs. 17 & 18.)

## ARGUMENT

### I.

### THE DEPOSITION SUBPOENAS SHOULD BE QUASHED BECAUSE THE PARTIES HAVE NOT YET SATISFIED RULE 26(f)

Rule 26(f) of the Federal Rules of Civil Procedure requires the parties to "confer to . . . make or arrange for the disclosures required by Rule 26(a)(1) . . . and to develop a proposed discovery plan that indicates the parties' views and pro-posals[.]" Upon completion of the Rule 26(f) conference, the parties are required to submit to the Court a written report outlining their discovery plan. Fed. R. Civ. P.

---

[3]    On June 19, 2007, without waiving any of its objections to the Document Sub-poena, Integro sent to respective counsel for plaintiffs and defendants a draft Stipulated Protective Order that it had prepared. Integro intends to work with the parties in an attempt to arrive at mutually acceptable language for that Stipulation.

26(f).  To date, the parties have not held a Rule 26(f) discovery conference; the only

conferences that the parties have held with respect to discovery have been in con-

nection with plaintiffs' motion to take expedited discovery of defendants.  Indeed, be-

cause the parties have not held a Rule 26(f) conference, the Court has directed the

parties to "confer and present a proposed scheduling order for further proceedings in

this action by July 13, 2007."  (July 2, 2007 Order [Alessi Aff't, Ex. 19] at 2)

Because the parties have not conferred pursuant to Rule 26(f), the

Deposition Subpoenas should be quashed under Rule 45(c)(3).  *See* Fed. R. Civ. P.

26(d) (except in circumstances not applicable here, "a party may not seek discovery

***from any source*** before the parties have conferred as required by Rule 26(f)") (em-

phasis added); *Bodkin v. Garfinkle*, 2007 WL 1288078, at *3 (E.D.N.Y. 2007) ("[p]rior

to the conference required by Rule 26 of the Federal Rules of Civil Procedure, Plain-

tiff served subpoenas on [non-parties].  These non-parties moved to quash. . . . Mag-

istrate Judge Lindsay granted the motion to quash on the ground that the subpoenas

were served in violation of the Federal Rules' requirement that the parties meet and

confer prior to service of such discovery"); *Molefi v. Oppenheimer Trust*, 2007 WL

538547, at *4 (E.D.N.Y. 2007) ("Rule 26(d), subject to certain exceptions not applica-

ble here, expressly bars discovery 'from any source before the parties have conferred

as required by Rule 26(f)' — an event which obviously did not take place here");

*Crutcher v. Fidelity National Ins. Co.*, 2007 WL 430655, at *2 (E.D. La. 2007) ("the

Court notes that Rule 26(d) does not state that a party may not seek discovery from

- 11 -

'any party,' it explicitly states 'any source.' Thus, the rule itself makes no distinctions between parties and non-parties. Indeed, the case law is replete with instances of courts requiring that parties seek leave of court and show good cause before issuing subpoenas to non-parties prior to a Rule 26(f) conference"); *Moore's Federal Practice - Civil* § 26.143 (2007) ("[t]he requirement that the parties confer to develop a discovery plan may be the single most important provision in the discovery architecture of Rule 26. . . . [C]ourts should be rigorous in enforcing the conference requirement").

## II.

### IF THE DEPOSITION SUBPOENAS ARE NOT QUASHED, THEY SHOULD BE MODIFIED TO POSTPONE THE DEPOSITIONS UNTIL AFTER LABOR DAY TO AVOID UNDUE BURDEN ON THE INTEGRO NON-PARTIES

If the Deposition Subpoenas are not quashed for the reasons set forth in Section I, above, we respectfully request that, in the alternative, they be modified to postpone the depositions until after Labor Day to avoid undue burden on the Integro Non-Parties. *See* Fed. R. Civ. P. 45(c)(A)(iv) (court may modify a subpoena that "subjects a person to undue burden").

Mr. Egan and his counsel are not available for a deposition on the date set forth in his Deposition Subpoena, July 9, 2007, which is the first business day following the Fourth of July holiday week. (*See* Alessi Aff't ¶ 24 & Ex. 21 ¶ 2.) Mr. Clements is not available for deposition on the July 12 date set forth in his Deposition Subpoena because he will be in France, where he has resided for the past year.

- 12 -

(*See* Alessi Aff't, Ex. 22 ¶¶ 2 & 4.)   Moreover, given that Mr. Clements will be in France for much of the summer, and given the respective business travel and vacation commitments of Messrs. Egan and Clements (and their counsel), it would be unduly burdensome to attempt to schedule the depositions for dates during the remainder of the summer.  (*See* Alessi Aff't, Ex. 21 ¶ 2 & Ex. 22 ¶ 4.)  We therefore respectfully request that, if the Deposition Subpoenas are not quashed for the reasons set forth in Section I, above, the depositions be postponed to mutually convenient dates sometime after Labor Day, September 3, 2007.[4]

Postponement of the requested depositions until after Labor Day will alleviate the burden on Messrs. Egan and Clements.  Moreover, the suggested postponement will not prejudice plaintiffs because:

(1)  Plaintiffs requested of this Court that they be granted expedited discovery of only the individual defendants;

---

[4]  As noted in the Background Section, above, Integro produced documents in response to the Document Subpoena, without waiving its objections thereto, as an accommodation to plaintiffs for use in connection with their expedited depositions of the defendants.  While Integro has expended a significant amount of time and resources as a non-party in collecting, searching, reviewing and producing documents in response to Marsh's Document Subpoena, plaintiffs' Deposition Subpoenas seek to impose an even more onerous burden upon the Integro Non-Parties.

- 13 -

(2)  Plaintiffs have now obtained the expedited discovery that they sought from defendants;

(3)  Plaintiffs never raised with this Court any need, much less an expedited need, for discovery from the Integro Non-Parties;

(4)  The parties have not yet held their Rule 26(f) conference or submitted a proposed discovery plan;

(5)  Integro has produced documents to the parties in this action and, subject to reaching agreement with the parties on a Stipulated Protective Order, plans to complete its document production;

(6)  Defendants have not yet answered the Complaint and the Court has not yet entered a Scheduling Order, as referenced in its July 2, 2007 Order (Alessi Aff't, Ex. 19); and

(7)  Plaintiffs are not facing any impending discovery deadline.

*See generally* Fed. R. Civ. P. 45(c)(1) (subpoenaing party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena"); *Stanziale v. Pepper Hamilton LLP,* 2007 WL 473703, at *4 (S.D.N.Y. 2007) ("it is 'of course the nonparty whose convenience Rule 45 is most concerned about protecting'").

### III.

### IF THE DEPOSITION SUBPOENAS ARE NOT QUASHED, THEY SHOULD BE MODIFIED TO LIMIT THE SCOPE OF THE DEPOSITIONS

Because Marsh, a direct competitor of Integro, has boasted that it is waging and winning a "war" with Integro and other brokerage firms (*see* Alessi Aff't, Ex. 6 at 7, 18), Integro has serious concerns that Marsh will attempt to use the depositions of Messrs. Egan and Clements for the improper purpose of delv-

- 14 -

ing into Integro's financial, proprietary, strategic, personnel and other confidential

business information — information that is unrelated to the claims alleged by

Marsh in this action and receipt of which would provide an unfair competitive

edge to Marsh. Accordingly, the Integro Non-Parties respectfully request that, if

the Deposition Subpoenas are not quashed for the reasons set forth in Section I,

above, the Court modify the Subpoenas under Rule 45(c)(3)(B)(i) to limit the ar-

eas into which Marsh may inquire of Messrs. Egan and Clements during their

depositions.

        The Complaint alleges the following two claims against the defen-

dants:

> First, plaintiffs claim that defendants failed to cooperate with Marsh by
> not answering, to Marsh's satisfaction, written questions put to defen-
> dants by Marsh in letters dated April 5, 2007. (Complaint [Alessi Aff't,
> Ex. 5] ¶¶ 39-43)

> Second, plaintiffs claim that defendants engaged in "Detrimental Activ-
> ity" and, thus, are required to return to Marsh certain payments that
> they received under the Marsh Senior Executive Incentive and Stock
> Award Plan. (Complaint [Alessi Aff't, Ex. 5] ¶¶ 44-46)

Marsh has now obtained the relief sought with respect to its first claim. Indeed, it

has received from defendants much more than the requested answers to Marsh's

April 5, 2007 letters; it has received from defendants interrogatory responses,

documents and deposition testimony.

The only outstanding issue that remains in this action is the second claim.  Accordingly, to the extent the Deposition Subpoenas are not quashed, the Integro Non-Parties respectfully request that the scope of examination at Marsh's depositions of Messrs. Egan and Clements be limited to the deponents' respective interaction with the defendants in connection with the defendants' decision to join Integro upon completion of their respective Marsh "garden leave" periods. *See* Fed. R. Civ. P. 45(c)(3)(B)(i) (court may modify subpoena to require appearance "upon specified conditions" to protect "trade secret or other confidential research, development, or commercial information"); *Moore's Federal Practice -- Civil* § 45.50 (2007) ("[t]o protect parties or nonparties from potential abuse of the subpoena power, a federal district court is empowered [under Fed. R. Civ. P. 45(c)(3)] to grant a motion to quash or modify a subpoena").  *See generally Puritan-Bennett Corp. v. Pruitt*, 142 F.R.D. 306, 310 (S.D. Iowa 1992) (observing that "most courts recognize that disclosure to one's competition is more harmful than disclosure to non-competitors[,]" the court held that the deposition of a representative of the plaintiff's competitor could proceed "so long as the deposition is limited to questions relating to the statute of limitations").

- 16 -

## CONCLUSION

For the foregoing reasons and those set forth in the accompanying

Alessi Affidavit (and the exhibits annexed thereto), non-parties Integro USA Inc.,

Roger Egan and John Clements respectfully request that the Court:

1. Quash the Deposition Subpoenas under Fed. R. Civ. P. 45(c)(3) on the ground that the parties to this action have not yet satisfied their obligations under Fed. R. Civ. P. 26(f);

2. If the Deposition Subpoenas are not quashed, modify the Subpoenas under Fed. R. Civ. P. 45(c)(3) to postpone the depositions until after Labor Day, September 3, 2007, to avoid undue burden on the Integro Non-Parties; and

3. If the Deposition Subpoenas are not quashed, limit the scope of the depositions under Fed. R. Civ. P. 45(c)(3) to the narrow issue remaining in this action and not permit plaintiffs to seek through such depositions Integro's financial, proprietary, strategic, personnel or other confidential commercial and business information.

**Dated:**  **New York, New York**
**July 5, 2007**

**CAHILL GORDON & REINDEL LLP**

By: _____

   **Robert A. Alessi**
   **Jason A. Otto**
   **Mary Cait Curran**
**Eighty Pine Street**
**New York, NY 10005-1702**
**Tel:  (212) 701-3000**
**Fax:  (212) 269-5420**

**Attorneys for Non-Parties Integro USA**
   **Inc., Roger Egan and John Clements**

- 17 -